IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

BRIAN J. MARTIN and YAHMI NUNDLEY,
individually and on behalf of all others
similarly situated,

Case No. 2:15-cv-12838

Hon. David M. Lawson

v.

Mag. Judge David R. Grand

TROTT LAW P.C. (f/k/a TROTT & TROTT,
P.C.), DAVID A. TROTT, JANE DOE, AND
JOHN DOE.

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. McGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI  48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, OH  44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Charity A. Olson (P 68295)
OLSON LAW GROUP
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
colson@olsonlawpc.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Avenue, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**FIRST AMENDED COMPLAINT**

## Introduction

1.      Effective March 1978 the United States Congress enacted the Fair

Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692, *et seq.* In so doing

Congress stated its "findings and declaration of purpose" as follows:

> It is the purpose of this subchapter to eliminate abuse debt collection
> practices by debt collectors, to insure that those debt collectors who
> refrain from using abusive debt collection practices are not
> competitively disadvantaged, *and to promote consistent State action to
> protect consumers against debt collection abuses*.

15 U.S.C. § 1692(e) (emphasis added).

2.      Following Congress' express invitation, in 1980 and in 1981 the

Michigan Legislature enacted the Michigan Occupational Code ("MOC"), M.C.L. §

339.901, *et seq.*, and the Regulation of Collection Practices Act ("RCPA"), M.C.L.

§ 445.251, *et seq.,* regulating the debt collection practices of collection agencies and

"regulated persons" respectively (collectively, "Michigan collection practices

statutes"). Like the FDCPA, 15 U.S.C. §1692e, these Michigan collection practices

statutes prohibit "misleading" communications in connection with the collection of

debts. M.C.L. §§ 339.915(e), 445.252(e). More specifically, the FDCPA and the

Michigan collection practices statutes each expressly prohibit communications

purporting to be from an attorney that are not actually communications from an

attorney. 15 U.S.C. § 1692(e)(3); M.C.L. §§ 339.915(a), 445.252(a).

2

3.      Two years after enactment of the RCPA, in 1983, the professional corporation named for many years named Trott & Trott, P.C., was incorporated.

4.      This action concerns a particular misleading communication:  a form letter sent by defendant Trott Law, P.C. (f/k/a Trott & Trott, P.C.) ("Trott PC"), Michigan's dominant foreclosure firm, to hundreds of thousands of Michigan homeowners over the past several years.

5.      Under both the FDCPA and the Michigan collection practices statutes courts apply an objective "least sophisticated consumer" standard to determine whether communications are misleading.

6.      This case falls within a category of debt collection cases referred to as "attorney letterhead" cases. The form letters from Trott PC that are the subject of this Complaint are misleading in violation of both federal and state law because they suggest to consumers that they were written by an attorney, when in fact they were not. Instead, these letters were generated and sent by non-attorney personnel with minimal or no substantive attorney involvement.

7.      A second category of claims relates to defendants' failure to comply with the statutory requirements for a "notice of debt" by incorrectly stating the amount of the debt, by omitting or misstating attorneys' fees due under the loan documents, rendering Trott PC's initial letter violative of both federal and state law for this additional reason.

8.     Finally, the reference to a looming sheriff's sale in a large subgroup of the form letters at issue, containing a solicitation of a request for a reinstatement quote, "overshadow" the notice-of-dispute rights of the debtor under the FDCPA, thereby violating the Michigan collection practices statutes as well.

## Jurisdiction and Venue

9.     This Court has jurisdiction of both the FDCPA and the Michigan collection practices statutory claims under the Class Action Fairness Act, 28  U.S.C. §§ 1332(d), 1453, and 1711–1715, in that (i) the putative class contains more than 100 members; (ii) the claims total more than $5 million; and (iii) there is minimal diversity because a number of the more than 200,000 estimated class members who were Michigan residents when Trott PC sent them the Trott PC Foreclosure Letter (defined below) up to six or more years ago have since moved their domiciles outside of Michigan.

10.     This Court also has jurisdiction of the FDCPA claims under 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. § 1692k(d); and supplemental jurisdiction of the Michigan collection practices claims under 28 U.S.C. § 1367.

11.     Venue is proper in this district because all defendants reside here, all defendants conduct business here, all plaintiffs reside here, and the conduct complained of occurred here.

**Parties & Affiliates**

12.     Plaintiff Brian J. Martin ("Martin") is an individual residing in Trenton, Michigan.

13.     Plaintiff Yahmi Nundley is an individual presently residing in Westland, Michigan.

14.     Trott & Trott, P.C., filed with the Michigan Department of Licensing and Regulatory Affairs Corporations Bureau on December 1, 2014, a certificate changing its name to "Trott Law, P.C." On that same date the firm filed an assumed name certificate for "Trott & Trott, P.C." Effective January 2, 2015, the firm filed a certificate cancelling the assumed name certificate. The firm now goes publically by the name "Trott Law, P.C."  For purposes of this Complaint the term "Trott PC" refers both to Trott & Trott, P.C., and Trott Law, P.C., which are in fact and in law the same entity.

15.     Trott PC is a professional corporation organized under Michigan law.

16.     Trott PC holds itself out as a law firm.

17.     David A. Trott ("David Trott") is an attorney licensed to practice law in Michigan, and, on information and belief, a resident of Oakland County, Michigan. He was recently elected to Congress.

5

18.     For most of the Class Period (defined below), David Trott was the majority shareholder/owner of Trott PC and President and/or Managing Partner of that firm.

19.     In late 2014, after his election to Congress, on information and belief David Trott sold his interest in Trott PC. He is no longer employed by the firm.

20.     "Jane Doe" and "John Doe" are placeholders for an indeterminate number of partners or shareholders of Trott PC that may bear individual culpability for the claims stated in this Complaint, and may be separately liable therefore.

**Trott PC's Dominance of the Michigan
Foreclosure Industry And The Nature Of Its Business**

21.     David Trott appeared on the public television series "Due Process" produced by Henry Baskin, Esq., which originally aired in or about September 2007. On that program, David Trott stated that:

a. Trott PC started in 1992 "with 12 employees,"

b. That Trott PC had "grown to nearly 500 employees,"

c. That Trott PC had about 70 lawyers; and

d. That foreclosures are "what we do."

22.     Trott PC's LinkedIn "home" page (accessed May 19, 2014) stated that the firm:

[S]pecializes in all facets of real estate finance default legal work [and that] the firm represents mortgage bankers, banks, credit unions,

6

mortgage servicers, regional property owners, investor groups and individual entrepreneurs in the state of Michigan.

23.     As of April 16, 2015, the firm's LinkedIn home page stated, in part, that the firm:

> [S]pecializes in all facets of real estate finance legal work, including default servicing, bankruptcy, eviction and litigation [and that] the firm represents mortgage servicers, banks, credit unions, investor groups, commercial and multi-family property owners, and individual entrepreneurs.

24.     David Trott was interviewed for a feature story on "power lawyers" published on December 7, 2008, by Crain's Detroit Business magazine. The article identifies David Trott as President and Managing Partner of Trott PC. According to Crain's, Trott PC:

    a.  "has had the narrow niche of foreclosure work since its inception in 1976";

    b.  is "one of the three largest foreclosure law firms in the country, based on business volume and employees";

    c.  may have handled some 40,000 "work-outs" in 2008 alone;

    d.  "offers technological services for the foreclosure process," and

    e.  "[t]he company now has more than 1,000 employees nationally."

25.     On information and belief, Trott PC employed less than 80 attorneys in 2008.

26.     In a 2014 article on "Leading Detroit Law Firms," Crain's Detroit Business reported that Trott PC had 73 attorneys combined in the following counties:  Wayne, Oakland, Macomb, Livingston, and Washtenaw. This article ranks Trott PC as the 11th largest law firm in Southeastern Michigan.

27.     On May 18, 2014, the Detroit Free Press published an article recounting a "wide-ranging interview" with David Trott, in which he "talked about his late parents and their once-small law office, and how . . . he built it into a multi-company empire, at one point employing 1,800 people."

28.     On information and belief, other large law firms in Michigan have substantially fewer staff in relation to attorneys than Trott PC. For example, if Trott PC has 500 employees, of which 61 are attorneys[1], then some 12% of its employees are attorneys (less than one in eight). If it currently employs 1,000 people, including 61 attorneys, then only some 6% of its employees are attorneys (less than one in 16).

29.     In 2012, The Managing Partner Forum, working with ALM Legal Intelligence and The National Law Journal, conducted a comprehensive survey of mid-size US law firms. (ALM Survey.) Some 196 firms, with nearly 10,000 lawyers, participated.

---

[1] A search of the member directory of the Michigan Bar Association at www.michbar.org on April 15, 2015, revealed 61 attorneys listed with Trott PC.

30.     The ALM Survey found that in 2012 law firms averaged 83 support staff per 100 lawyers (ratio of .83 staff to one lawyer). If Trott PC has a total of 61 lawyers, and had an average ratio of support staff to lawyers, it would have approximately 51 support staff for a total of 112 employees (rather than 500 or more).

31.     Alternatively, if Trott PC has 1,000 employees and had an average ratio of support staff to attorneys among mid-sized American law firms it would employ approximately 546 attorneys rather than 61.

32.     American Processing Company, LLC (APC), is a Michigan corporation incorporated in June 2005.

33.     APC provides processing services for law firms engaged in the foreclosure services industry.

34.     APC, at the time of its incorporation, was owned by Trott PC, David Trott, and/or certain family members of David Trott.

35.     In October 2009, APC filed assumed name registrations with the State of Michigan for the names "National Default Exchange" and "NDeX."

36.     In this Complaint, the acronym "APC" refers to APC, National Default Exchange, and NDeX, or any of them.

37.     In or about March 2006, APC signed an exclusive services contract with Trott PC for a 15-year term, expiring in or about March 2021. On information

9

and belief, among the principal terms of the APC/Trott PC exclusive services agreement are those whereby:

    a. Trott PC agrees to use exclusively the services of APC for foreclosure services processing, unless a Trott PC client specifies that Trott PC use another provider; and

    b. Trott PC agrees to pay APC a pre-negotiated fixed fee for each file it refers to APC for processing.

38.    On March 14, 2006, Trott PC and David Trott sold an 81% interest in APC to Dolan Media Group, k/k/a The Dolan Company (collectively, Dolan), for approximately $40 million. After this transaction, Trott PC and/or David Trott and/or his immediate family members, directly or through an entity they or he created identified as APC Investments, LLC, retained approximately an 18% interest in APC.

39.    In the fourth quarter of 2007, Dolan paid Trott PC $12.5 million for approximately a 9.1% interest in APC.

40.    On December 31, 2009, Dolan acquired approximately 5.2% of the equity interest in APC from David Trott and certain other partners of Trott PC for an aggregate purchase price of $8 million plus additional consideration of Dolan stock.

41.    On January 4, 2010, Dolan acquired 2.4 % of APC owned by David Trott or his affiliates for $5 million.

42.     As of December 31, 2007, 348 of APC's 505 employees worked at Trott PC's headquarters, located at 31440 Northwestern Highway, Farmington Hills, Michigan. This office building is owned by NW13, LLC (NW13).

43.     David Trott owned a 75% interest in NW13 from at least 2008 into 2012.

44.     In 2012, Trott PC leased 25,000 square feet of its headquarters to APC for $565,909. As of May 2014, David Trott continued to own 60% of NW13.

45.     According to State of Michigan records, until September 19, 2011, David Trott was the resident agent for APC and the registered office for APC was 31440 Northwestern Hwy, Ste 300, Farmington Hills, Michigan  48334. As indicated on Exhibits A and B, attached, this address is in the same office building as Trott PC.

46.     According to Trott PC's 2014 Annual Report filed with the State of Michigan in May 2014, David Trott was Trott PC's resident agent, and the firm's registered office was at the same building address as that of APC, with a suite number 200 (Trott PC) instead of 300 (APC).

47.     David Trott was Chairman of APC prior to February 2, 2013.

48.     Dolan and/or APC have had one or more employment agreement(s) with David Trott in one or more executive officer position(s) since 2007, and have paid him compensation pursuant to such employment agreement(s).

49.     In 2007 and 2008, David Trott served as President of APC, and "led its sales and marketing efforts."

50.     David Trott was an executive officer of Dolan until May 17, 2012.

51.     According to a report published in the Detroit Free Press on May 18, 2014, David Trott was paid some $264,000 per year through February 2013 for his services at APC and/or Dolan, not counting stock options and other forms of compensation.

52.     During the Class Period (defined below), APC paid Net Director, LLC, and American Servicing Corporation for services provided to APC. David Trott has, over the Class Period, directly or indirectly held ownership interests in these two companies, including a 50% ownership interest in American Servicing Corporation until June 1, 2010.

53.     On information and belief, on or about August 31, 2013, Dolan sold that portion of APC covering its Michigan services, referred to as "NDeX Michigan," back to David Trott, individually or through his family members, and/or to Trott PC. The sale price has not been publically disclosed. On information and belief, Trott PC and David Trott owned, as recently as June 2014, directly or indirectly a majority interest in NDeX Michigan.

54.     According to Dolan's 2007 Form 10-K filed with the SEC, Trott PC handled 64% of all foreclosures in Michigan in calendar 2007.

55.     According to an article published by the Detroit Free Press on May 18, 2014, after interviewing David Trott ("U.S. House candidate David Trott made millions in mortgage crisis"), Trott PC handled "as many as 80,00 [foreclosures] in Michigan in a single year, by his own count." The Detroit Free Press identifies the single year as 2009.

56.     According to Dolan's SEC filings, Dolan through APC and/or other affiliates received the following sums for "mortgage default process services" provided to Trott PC in the following years, and recorded the following accounts receivables due from Trott PC for such services at year end:

| Year | Payments | Year-end A/R |
|------|----------|--------------|
| 2008 | $41,266,000 | $4,052,000 |
| 2009 | $43,534,000 | $4,380,000 |
| 2010 | $43,162,000 | $3,327,000 |
| 2011 | $33,451,000 | $4,450,000 |
| 2012 | $25,249,000 | $3,212,000 |

57.     On information and belief, the level of payments made by Trott PC to APC over the period 2008-2012 reflect the relative volume of Trott PC's handling of foreclosure by advertisement proceedings in Michigan over those years.

58.     By comparing Dolan/APC's income from Trott PC in 2009 with the 80,000 foreclosure proceedings David Trott says Trott PC handled that year, Trott

PC's foreclosure volume for 2008, 2010, 2011, and 2012 can be estimated from

Dolan's SEC filings data. (This calculation, while believed reliable, is only an

estimate. For example, the per-file processing charge paid by Trott PC to APC may

have changed over the time period. Moreover, some clients may have required Trott

PC to use a mortgage default process servicer other than APC to varying degrees

over this time period.) Public data is not known to be available for 2013 or 2014.

59.    Based on this calculation[2], plaintiffs are able to estimate that following

foreclosure volumes in Michigan by Trott PC for the following calendar years:

| | |
|---|---|
| 2008: | 76,297 |
| 2009: | 79,999 |
| 2010: | 76,802 |
| 2011: | 63,059 |
| 2012: | 43,793 |
| Total | 339,950 |

60.    On information and belief, the vast majority of non-commercial

residential property foreclosures conducted by Trott PC in Michigan have been

---

[2] The calculation is as follows:  (i) per/year APC fees received from Trott PC
derived from SEC form 10-K data, by taking year-end accounts receivables, adding
calendar year payments, and subtracting previous year-end accounts receivable to
get net dollar volume per calendar year; (ii) divide 2009 net dollar volume by the
80,000 foreclosures David Trott says Trott PC processed that year to yield a per-
foreclosure fee of $548.28; and (iii) dividing the net dollar volume for each
remaining calendar year by $548.28 to get an estimated foreclosure volume for each
year. 2007 year-end accounts receivables was reported as $3,486,000. Net dollar
volumes per calendar year for the period 2008-2012 were calculated as
$41,832,000; $43,862,000; 42,109,000; $34,574,000; and $24,011,000,
respectively.

pursuant to Michigan's foreclosure by advertisement statute, M.C.L. § 600.3201, *et seq.*

61.     Based on the foregoing calculations, on information and belief it is estimated that Trott PC has handled over 200,000 foreclosures by advertisement proceedings in Michigan over the Class Period (defined below).

62.     On information and belief, in each foreclosure by advertisement proceeding in Michigan handled by Trott PC since at least 2007, Trott PC has sent a letter to the debtor/mortgagor in substantial conformity with Exhibits A and B to this Complaint, in that each such letter:

      a.  Was on firm letterhead;

      b.  Displayed David Trott's surname;

      c.  Identified Trott PC's client as the creditor or servicing agent;

      d.  Stated that Trott PC was retained by its client to foreclose the debtor's mortgage;

      e.  Purports to state a "total indebtedness";

      f.  Did not disclaim that it was from an attorney;

      g.  Was (with rare exception) unsigned by an individual Trott PC lawyer; and

      h.  Contained the typographic text "Trott & Trott, P.C.," or "Trott Law PC," and frequently the additional text "FORECLOSURE DEPARTMENT," at the end of the letter in the signature block.

**The Trott PC Foreclosure Letter**

63.     On or about May 3, 2012, Trott PC, David Trott, Jane Doe, and John

Doe caused to be sent to plaintiff Martin by U.S. Mail a letter informing him that

Trott PC had been retained by Bank of America to foreclose on a home that Martin

and his wife owned located at 1844 Pinetree Drive in Trenton, Michigan. A true and

correct copy of this letter (redacted) is attached as Exhibit A hereto.

64.     Exhibit A was an attempt to collect a debt allegedly owed by Martin on

a note secured by a mortgage on his home.

65.     On or about August 12, 2014, Trott PC, David Trott, Jane Doe, and

John Doe caused to be sent to plaintiff Yahmi Nundley by U.S. Mail a letter

informing Ms. Nundley that Trott PC had been retained by 21st Mortgage

Corporation to foreclose on a home that she owned located at 29143 Carlton Street

in Inkster, Michigan. A true and correct copy of this letter (redacted) is attached as

Exhibit B hereto.

66.     Exhibit B was an attempt to collect a debt allegedly owed by Nundley

on a note secured by a mortgage on her home.

67.     The May 3, 2012, Trott PC letter to Martin and the August 12, 2014,

Trott PC letter to Nundley are form letters, in that they were generated based on a

standard form of letter used by Trott PC to initiate correspondence with Michigan

residents whose mortgages Trott PC had been retained to foreclose. This form letter

(as distinct from Exhibits A and B, which are two instances of it) is referred to herein as the "Trott PC Foreclosure Letter".

68.     The Trott PC Foreclosure Letter is sometimes referred to as a § 1692g notice or "initial communication," with reference to 15 U.S.C. § 1692g, or "notice of debt."

69.     On information and belief, form letters such as the Trott PC Foreclosure Letter are referred to internally at Trott PC as "default templates" or are generated using such "default templates."

70.     Using the May 3, 2012, Trott PC foreclosure letter to Martin as an example, on information and belief account-specific information such as the addressee, the "RE:" line, the Trott PC file number, the loan number, the principal balance, the unpaid interest, the late charges, any "corporate advance" (if applicable) and "total" was "merged" or "cut and pasted" into the Trott PC Foreclosure Letter to generate such letters to Michigan residents.

71.     On information and belief, the Trott PC Foreclosure Letter has remained substantively consistent throughout the Class Period, with minor changes that do not materially affect the claims presented in this Complaint.

72.     On information and belief, the Trott PC Foreclosure Letter, since at least 2007:

     a.  Has been printed on Trott PC letterhead;

b. Has displayed David Trott's surname;

c. Has recited that Trott PC "is the creditor's law firm," and/or that Trott

   PC "represents" the creditor or servicer;

d. Has recited that "this matter was referred to this office to foreclose the mortgage" or that "[t]he creditor has referred this matter to this office with instructions to commence foreclosure proceedings against the property," or similar text;

e. Has not disclaimed that it was from an attorney;

f. Has not been signed by an individual attorney at Trott PC, but instead

g. Frequently contains a department designation in the closing (e.g., the "FORECLOSURE DEPARTMENT" as in Exhibits A and B); and

h. Contains a signature block reading "Yours very truly, Trott & Trott, P.C. [Trott Law, P.C.]"

73.     Plaintiffs received and reviewed Exhibits A and B, respectively,

shortly after they were sent by or on behalf of Trott PC.

## The Misleading Character of the Trott PC Foreclosure Letter

74.     On information and belief Exhibit A was not specifically authored by

an attorney. In other words, an attorney did not write Exhibit A.

75.     On information and belief Exhibit B was not specifically authored by

an attorney. In other words, an attorney did not write Exhibit B.

76.     On information and belief, the Martin file was not meaningfully reviewed by an attorney at Trott PC in connection with Exhibit A being generated and sent by or on behalf of Trott PC to Martin.

77.     On information and belief, the Nundley file was not meaningfully reviewed by an attorney at Trott PC in connection with Exhibit B being generated and sent by or on behalf of Trott PC to Nundley.

78.     On May 19, 2015, Andrew Wayne, who identified himself as a "senior title attorney" at Trott PC for seven years, gave a deposition in connection with Case No. 2:15-cv-10747, then pending in the United States District Court for the Eastern District of Michigan ("Wayne Deposition"). Mr. Wayne was represented by counsel.[3]

79.     Wayne testified regarding a December 8, 2014, Trott PC Foreclosure letter sent to Earl Wilson. Wayne testified that he was the title attorney assigned to the Wilson foreclosure.

80.     Wayne described the process followed by Trott PC leading up to the mailing of a Trott PC Foreclosure Letter:

    a.  The firm's mortgage client first contacts a "pre-sales team";

---

[3] Counsel for plaintiffs in the instant action did not attend the deposition. Wayne's testimony is hearsay, but portions thereof are admissible as admissions of a party opponent. Plaintiffs do not concede or admit the accuracy of Wayne's testimony in any respect, but rather reserve all rights to challenge that testimony.

    b. That team "put[s] . . . information requested by [the client] into [the Trott PC] proprietary case management system";

    c. Non-attorney "processors" put file information into form (or template) Trott PC Foreclosure Letters. The templates used are the same regardless of firm client. Wayne did not draft the template. He does not know how the processors know to put information such as principal balance into individual letters;

    d. For files he is assigned, Wayne testified that he "review[s] all of the file specific information that goes into the [Trott PC Foreclosure] letter," meaning

        i. The borrower's name and address, the
        ii. The borrower's loan number and the Trott file number;
       iii. the servicer name and the creditor name; and
       iv. the indebtedness, meaning "[t]he amount that the borrower owed at the time";

    e. No attorney other than Wayne approves the letters before they go out on the files he was assigned;

    f. Wayne was twice unable to answer why he was assigned to "approve" Trott PC Foreclosure letters, other than to state that "it's part of our employee processes."

    g. Wayne acknowledged that the Trott PC Foreclosure letters are unsigned. When asked who the letters are from, he testified "Trott & Trott, P.C.";

    h. Wayne testified that he signs letters that he writes, thereby acknowledging that he does not write the Trott PC Foreclosure Letters for foreclosure files to which he is assigned.

    i. Wayne specifically testified: "I am not the person who wrote the [Wilson] letter."[4]

---

[4] Plaintiffs do not allege that senior title attorneys at Trott Law PC do not possess or exercise professional skill and judgment in other aspects of their work at the firm.

81.     The standard procedure described by Wayne for the processing of Trott PC Foreclosure Letters does not involve meaningful attorney review.

82.     On information and belief any review of Trott PC Foreclosure Letters by a Trott PC attorney before they are sent out is clerical, ministerial, or administrative in nature.

83.     On information and belief, Trott PC Foreclosure Letters are almost never signed, and in the rare instances when they are this fact is discernable from Trott PC's records and files.

84.     On information and belief, Exhibits A and B were processed, in whole or in part, by APC, or contained information processed by APC.

85.     Exhibit A was not from an attorney.

86.     Exhibit B was not from an attorney.

87.     15 U.S.C. § 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."

88.     MCL § 445.252(a) prohibits "[c]ommunicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney . . . unless the regulated person is an attorney . . . ."

89.     By using Trott PC letterhead, including David Trott's surname, and by containing the other elements recited above, Exhibits A and B falsely suggest to the least sophisticated consumer that they were each from an attorney.

90.     By reciting that Trott PC "represents" the creditor or mortgage servicer, and that "this matter was referred to this office to foreclose the mortgage," Exhibits A and B falsely suggest to the least sophisticated consumer that that they were each from an attorney.

91.     By including a signature block stating:  "Yours very truly, Trott & Trott, P.C.," Exhibits A and B falsely suggest to the least sophisticated consumer that they were each from an attorney.

92.     The least sophisticated consumer reading Exhibits A or B could reasonably conclude that they were from an attorney or, conversely, that they were not from an attorney. Exhibits A and B are each misleading for this additional reason.

93.     Exhibits A and B and the Trott PC Foreclosure Letter are misleading to gullible or naïve consumers.

94.     The misleading character of Exhibits A and B is not based on a bizarre or idiosyncratic reading of these letters.

95.     The Trott PC Foreclosure Letter sent to each putative class member throughout the Class Period was misleading to the least sophisticated consumer for each of the reasons articulated herein as to Exhibits A and B.

96.     Whether or not a communication in connection with the collection of a debt is from an attorney is material to consumers, as indicated by Congress' and the Michigan Legislature's adoption of specific statutory text focusing on this question and establishing violations for misleading consumer on this issue in the FDCPA and the Michigan collection statutes, respectively.

### Violations of 15 U.S.C. § 1692g(a)(1), § 1692f(1), and Michigan Collection Statutes

97.     As stated by one Michigan court:

The FDCPA is extraordinarily broad and is treated as a strict liability statute in which a single violation is sufficient to establish liability. In addition, as a remedial statute, the FDCPA is liberally construed in favor of the consumer

*Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.,* 2005 U.S. Dist. LEXIS 32404, 6-7 (W.D. Mich. Sept. 8, 2005) (Bell, J; citations omitted).

98.     The FDCPA requires that within five days of an "initial communication" a debt collector transmit certain required information, including a statement of the amount of debt owed and the debtor's rights to dispute it.

99.     15 U.S.C. § 1692g provides, in pertinent part:

§ 1692g.  Validation of debts

(a)      Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

   (1) the amount of the debt;
   . . .
   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b)      Disputed debts.  . . . Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

100.   Trott PC, throughout the Class Period, attempted to comply with the requirements of 15 U.S.C. § 1692g by including the required information in its initial letter to the mortgagor, the Trott PC Foreclosure Letter, as reflected in Exhibits A and B, attached.

101.   On April 21, 2009, Trott PC sent a form Trott PC Foreclosure Letter to Tracey Keveligham relating to a residence located at 2553 Lamplighter Lane, Bloomfield Township, Michigan.[5] A true and correct copy of this letter is attached as Exhibit C hereto.

102.   The April 21, 2009 Trott PC Foreclosure Letter constituted a notice of debt regarding the Lamplighter Lane property. The letter showed "total indebtedness" of $326,841.41. This included a line item for "corporate advance" in the amount of $1,744.15.

103.   Approximately two weeks later, Trott PC sent Keveligham a reinstatement quote dated May 8, 2009, for the Lamplighter Lane property. A true and correct copy of this letter is attached as Exhibit D hereto.

104.   The May 8, 2009, reinstatement quote listed corporate advances of $1,761.65, and a new line item for "Recoverable Legal fees & Costs Good Through May 8, 2009" in the amount of $1,373.00.

---

[5] As noted in the "Proposed Class" section, *infra*, plaintiffs do not seek to represent Ms. Keveligham as a member of the class, but cite her publically-available documents in order to demonstrate defendants' business practices upon which their claims are based.

105.   As shown by comparing Exhibits C and D, on information and belief Trott PC failed to include the amount then due for attorneys' fees in the April 21, 2009, notice of debt letter to. Keveligham.[6]

106.   On information and belief, in the Trott PC Foreclosure Letters sent to class members the "total indebtedness" shown does not accurately reflect accrued attorneys' fees owed as of the date of the letters.

107.   As reflected in the May 8, 2009, Keveligham reinstatement quote (Exhibit D), Trott PC has the capability to calculate attorneys' fees owed by the debtor under the associated mortgage at a given point in time. This is so whether or not Trott PC has billed its client for such fees.

108.   On information and belief, all or virtually all (meaning with at most trivial exception) mortgages involving Michigan residences as to which Trott PC initiated foreclosure processing require a defaulting mortgagor to pay the mortgagee's attorneys' fees associated with default, acceleration, and foreclosure proceedings.

109.   On information and belief, the mortgages covering residential properties in Michigan are form documents. These form documents are frequently

---

[6] Reference is made to the Trott PC May 8, 2009, reinstatement quote to Keveligham in order to plead facts plausibly demonstrating that defendants (i) omitted attorneys' fees from the Trott PC Foreclosure Letters, and (ii) had the capacity to quantify attorneys' fees payable by mortgagees as part of the debt at a given date. This Complaint does not seek to premise a claim for relief on reinstatement quotes *per se*.

promulgated to comply with requirements of the Fannie Mae, Freddie Mac, HUD,

VA, or other governmental or quasi-governmental entities involved in financing

residential mortgages.

110.   By way of example, the 2553 Lamplighter Lane mortgage of

Keveligham foreclosed upon by Trott PC, a true and correct copy of which is

attached as Exhibit E hereto, utilized a "MICHIGAN--Single Family-- Fannie

Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01" commonly used in

Michigan. Paragraphs 9, 14 and 22 of this form mortgage provide for the lender to

collect attorneys' fees associated with protecting the lender's rights, with an event

of default and acceleration of the debt, and with invocation of the power of

sale/foreclosure rights, respectively.

111.   On information and belief, throughout the Class Period, defendants

failed to include the amount of attorneys' fees due to the debtor in the Trott PC

Foreclosure Letters, which operated as the notice of debt under 15 U.S.C. § 1692g.

112.   Alternatively, on information and belief, throughout the Class Period

defendants included in the Trott PC Foreclosure Letters attorneys' fees in excess of

the amount allowed under the associated mortgages and Michigan law.

113.   15 U.S.C. § 1692f prohibits, in pertinent part:

(1) The collection of any amount (including any interest, fee, charge,
or expense incidental to the principal obligation) unless such amount is

expressly authorized by the agreement creating the debt or permitted by law.

114.   In the Wayne Deposition, attorney Wayne identified various attorneys' fees included in the Wilson December 8, 2014, foreclosure notice under the line item "corporate advance" and included in the "total indebtedness."

115.   Wayne testified that total attorneys' fees included in these amounts were $562.50.

116.   Under Michigan law, and therefore under mortgages securing an interest in Michigan residential property, attorneys' fees recoverable from the debtor in a foreclosure by advertisement are capped at $37.50 before the sale and $75.00 at the sale. M.C.L. § 600.2431(2).

117.   By including an inaccurate, incomplete, or excessive "total indebtedness" amount in Exhibits A and B and in the Trott PC Foreclosure Letters (by omitting or overstating attorneys' fees then owed), these communications were false, misleading, and incomplete in violation of the FDCPA and the Michigan collection statutes, whether or not plaintiffs or class members sought a reinstatement quote.

118.   By routinely falsely stating the total indebtedness, defendants "[made] an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt …" in violation of the MOC and the RCPA.

## Overshadowing

119.   As set forth above, pursuant to 15 U.S.C. § 1692g(b), under the FDCPA a debt communication cannot "overshadow" a debtor's rights to seek validation or to dispute a debt in whole or in part.

120.   On information and belief, a high percentage (in excess of 50%) of the Trott PC Foreclosure Letters over the Class Period solicit a request for a reinstatement quote.

121.   For example, in Exhibit A, attached, the solicitation of a request for reinstatement quote takes the following form in its second paragraph:

> Under the terms of your mortgage, the creditor has elected to accelerate the total Indebtedness. It may, however, be possible to reinstate the mortgage, subject to the creditor's approval, by paying all past due installments late charges, delinquent taxes, insurance premiums, costs and fees incurred in the foreclosure. Requests for reinstatement information must be received and approved by this office before the date of the sheriff's sale. Please call (248) 593-1302 for information concerning reinstatement.

122.   The form of Trott PC Foreclosure Letter that solicits a request for a reinstatement quote is referred to hereinafter as "Trott PC Foreclosure Letter—SRRQ."

123.   Since 2007, the group of mailings by defendants of the Trott PC Foreclosure Letter—SRRQ comprise a subset of the larger universe of mailings of all Trott PC Foreclosure Letters.

124.   On information and belief, Trott PC's mailings of the Trott PC Foreclosure Letter—SRRQ can be identified from the broader universe of Trott PC Foreclosure letters by automated means using Trott PC's data systems and records or those of third parties.

125.   Exhibits A and the Trott PC Foreclosure Letter—SRRQ overshadow debtors' validation and dispute rights in at least the following ways:

    a.   The first paragraph of the letter informs the homeowner that "[t]his matter was referred to this office to foreclose the mortgage."

    b.   The second paragraph proceeds to declare all amounts due under the mortgage to be accelerated, but holds out the promise of reinstating the mortgage if the debtor acts promptly.

    c.   Specifically, the second paragraph of the letter (before any validation rights are mentioned) emphasizes that the debtor's request for reinstatement information (for which the debtor is asked to call the provided telephone number) "must be received and approved by this office before the date of the sheriff's sale."

    d.   In context, the letter suggests that a sheriff's sale may be pending and that the debtor risks losing his or her home if he or she takes 30 days to dispute the debt, or even to request validation.

    e.   Nowhere in the letter or the attachment do defendants inform the debtor that no sheriff's sale will occur before the termination of the federally mandated 30-day dispute/validation period.

    f.   The least sophisticated consumer:

        i.   Is not presumed to be represented by counsel;

        ii.   Does not know the requirements of Michigan's non-judicial foreclosure statutes, or how they are applied;

       iii.  Does not know, based on the information supplied in the Trott PC Foreclosure Letter, what (if any) of the required steps for foreclosure Trott PC had already taken (e.g., publication in a newspaper of record, or for how many weeks);

       iv.  Indeed, would not even understand whether the "foreclosure" referred to by Trott PC was judicial or non-judicial, or whether a court had *already* entered a judgment of foreclosure (thereby increasing the perceived threat of a looming sheriff's sale).

    g.  Under these circumstances—especially given the emphasis on an unspecified reinstatement deadline that might be looming—the least sophisticated consumer would conclude that she runs the risk of losing the home if she takes advantage of her federally mandated dispute or validation rights.

126. By overshadowing Martin's and class members' dispute and validation rights under 15 U.S.C. § 1692g(b), defendants simultaneously violated the MOC and/or the RCPA by

    a.  "Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt …", and by

    b.  "Misrepresenting in a communication with a debtor" both:

       i.  "The legal status of a legal action being taken or threatened";

       and

       ii.  "The legal rights of the creditor or debtor."

M.C.L. §§ 331.915(e); 331.915(f)(i) &(ii) ; 445.252(e) & (f).

**Willfulness**

127.   On February 26, 2008—more than seven years prior to the filing of the Complaint in this matter—the United States Court of Appeals for the Sixth Circuit issued a published opinion in *Amanda Kistner v. The Law Offices of Michael P. Margelefsky, LLC and Michael P. Margelefsky,* 518 F.3d 433 (6th Cir. 2008). In the *Kistner* decision, the court states: "This court has not previously had occasion to decide an "attorney letterhead" case under the FDCPA." *Id.* at 438.

128.   The Sixth Circuit in *Kistner* held that a form debt collection letter on law firm letterhead sent to "thousands" of debtors that was block signed "ACCOUNT REPRESENATIVE" which did not disclaim that it was from an attorney suggested to the least sophisticated consumer that it was sent by an attorney, and therefor was potentially misleading where no attorney specifically reviewed or authored the letter.

129.   Alternatively, the *Kistner* court held that a debt collection letter sent to a consumer on law firm letterhead that was not individually signed by an attorney could reasonably be construed either to have been sent or, conversely, not to have been sent by an attorney and was therefore was potentially misleading to the least sophisticated consumer.

130.   The *Kistner* court further held that an individual named member of a limited liability company who engaged in the following conduct was a "debt collector":

      a.  Drafting of the form letter that was sent to plaintiffs and putative class members;

      b.  Being the sole member of the LLC;

      c.  Negotiating  terms with the mailing service provider used in the debt-collection practice;

      d.  Overseeing "compliance with applicable collection laws"; and

      e.   Becoming involved when the "intervention of a lawyer becomes necessary."

The *Kistner* court determined that such an individual may be held individually liable as a matter of law under the FDCPA without piercing the corporate veil.

131.   *Kistner* reversed summary judgment entered on the FDCPA claim and on a related state statutory claim in favor of both the corporate and the individual defendants and remanded the case to the district court for trial.

132.   On information and belief, in 2009 and throughout the Class Period Trott PC and David Trott held out Trott PC as Michigan's foremost foreclosure law firm.

133.   On information and belief, in 2009 and throughout the Class Period Trott PC and David Trott marketed their services by promoting Trott PC as having special expertise in the area of mortgage default services and foreclosures.

134.   As reflected in Exhibits A and B and in the Trott PC Foreclosure Letter, defendants included a disclosure required by the FDCPA in these form letters:

> THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

135.   The inclusion of the aforesaid notice reflects defendants' recognition throughout the Class Period that Trott PC's communications relating to the initiation of foreclosure by advertisement proceedings in connection with Michigan residents are subject to the FDCPA, as communications relating to attempts to collect debts by a debt collector under that statute.

136.   On information belief, David Trott, Jane Doe, John Doe, and Trott PC—at least since the United States Supreme Court decided in *Heintz v. Jenkins*, 514 U.S. 291 (1995), that the FDCPA applies to lawyers who regularly engage in debt collection—monitored published and unpublished FDCPA, MOC, RCPA and other consumer rights case law issued by the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, the United States District

Courts for the Eastern and Western Districts of Michigan, and other courts on a periodic basis.

137.   To the extent that defendants did not monitor published Supreme Court and Sixth Circuit Court of Appeals debt collection practices case law their failure to do so was more than merely careless in view of the focus of Trott PC's practice and the volume of default services and related foreclosure proceedings the firm handles.

138.   On information and belief, prior to the publication of the *Kistner* case by the Sixth Circuit, Trott PC, David Trott, Jane Doe, and John Doe caused initial foreclosure letters to be sent to Michigan homeowners substantially in the form attached as Exhibit F hereto (December 10, 2007, Trott PC foreclosure letter to Gregory Keith, Jr.).

139.   A comparison between Exhibit F, attached (Trott PC Foreclosure letter sent the month before *Kistner* was issued) and Exhibit A, attached (Martin foreclosure letter sent more than five years later) reveals that defendants made no material change to the Trott PC Foreclosure Letter post-*Kistner*.

140.   Notwithstanding the publication of the *Kistner* decision, defendants continued to cause the Trott PC Foreclosure Letter—on Trott PC letterhead—to be sent to Michigan residents on information and belief by non-attorney collection staff without meaningful attorney review.

141.   Defendants' conduct is "willful" as that term is used in M.C.L.

§ 445.257(2) because in continuing to send the Trott PC Foreclosure Letter in its

pre-*Kistner* form for years after publication of that decision they "'ran a risk of

violating the law substantially greater than the risk associated with a reading that

was merely careless.'" *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620 (6th Cir.

2012) (quoting *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 57 (2007) (construing "willful"

under Fair Credit Reporting Act).

142.   In June 2000, the United States Courts of Appeal for the Seventh

Circuit held:

> The dunning letter said that the "unpaid principal balance" of the loan
> (emphasis added) was $ 178,844.65, but added that "this amount does
> not include accrued but unpaid interest, unpaid late charges, escrow
> advances or other charges for preservation and protection of the
> lender's interest in the property, as authorized by your loan agreement.
> The amount to reinstate or pay off your loan changes daily. You may
> call our office for complete reinstatement and payoff figures." An 800
> number is given.
>
> The statement does not comply with the [FDCPA] . . . . The unpaid
> principal balance is not the debt; it is only a part of the debt; the Act
> requires statement of the debt. The requirement is not satisfied by
> listing a phone number.

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872,

875 (7th Cir. 2000) (Posner, C.J.) ("*McCalla*"). *McCalla* involved a claim against a

law firm for violating 15 U.S.C. § 1692g(a)(1) by not listing "the amount of the

debt."

143.   Attorneys employed at Trott PC have argued in briefs filed in this Court that courts in this District follow *McCalla*. In other words, Trott PC lawyers have argued *McCalla* in support of motions to dismiss FDCPA cases filed against Trott PC.

144.   Trott PC has been on at least constructive notice since June 2000 that it is required under 15 U.S.C. § 1692g(a)(1) to list accrued attorneys' fees in the "total indebtedness" listed in the Trott PC Foreclosure Letter in order to state the required "amount of the debt."

145.   Michigan law has long expressly limited recovery of attorneys' fees in foreclosure by advertisement proceedings. On July 7, 2010, this Court, in a case naming Trott &Trott P.C. as a defendant and in which, on information and belief, David Trott attended at least one hearing, rejected the argument that a "reasonable" attorneys' fee provision in a mortgage trumped state law. Citing prior circuit precedent, Judge Duggan ruled:

> In each of the underlying mortgages in this case, defendants began foreclosure by advertisement but the respective plaintiffs either reinstated or sought to reinstate before sale was made. In such circumstances, plaintiffs assert that Michigan law limits recovery of attorney fees to $ 37.50. . . .

> In seeking dismissal of plaintiffs' FDCPA claims, defendants contend that the express mortgage provisions allowing recovery of reasonable attorney fees as a condition to reinstatement justify their conduct and trump the Michigan statute relied on by plaintiffs. Although the FDCPA generally allows collection of amounts "expressly authorized by the agreement[s] creating the debt," 15

37

U.S.C.A. § 1692f(1), an attempt to collect an amount prohibited by law (but nonetheless expressly authorized by an agreement) gives rise to a cognizable FDCPA claim. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332, 336 (6th Cir. 2008) (dismissing similar claims but only because the defendant never actually attempted to collect the attorney fees); *see also* 15 U.S.C.A. § 1692f (prohibiting all "unfair or unconscionable means" of collecting debts).Therefore, the viability of plaintiffs' claims depends on whether Michigan law actually prohibits attorney fees exceeding the amount set forth in the aforementioned statute [M.C.L. § 600.2431(2)].

. . .

. . . As written, then, the plain language sets a statutory maximum for the collection of attorney fees in foreclosure by advertisement. Therefore the Court concludes that plaintiffs sufficiently allege unfair debt collection practices when they assert that defendants attempted to collect attorney fees in excess of the amounts allowed under Michigan law.

*Keveligham v. Trott & Trott PLLC*, 771 F. Supp. 2d 763; 774-776 (E.D. Mich. July 7, 2010) (footnotes omitted). (The *Keveligham* court subsequently dismissed this claim as premised on communications it determined not to be subject to the FDCPA (reinstatement quotes), a result affirmed on other grounds in *dicta* in an unreported decision in an appeal from which Trott Law was dismissed.)

146.   Defendants' failure to cause Exhibits A and B and the Trott PC Foreclosure Letter accurately to list "the amount of the debt" inclusive of accrued attorneys' fees was more than merely careless in light of the plain language of the statute and the *McCalla* decision or M.C.L. § 600.2431(2).

## Individual Responsibility of David Trott

147.   On information and belief, David Trott as late as summer/early fall of 2014 owned an 80% interest in Trott PC.

148.   An October 30, 2012, Oakland County Legal News article identified David Trott as President and Managing Partner of Trott PC. David Trott was President of Trott PC at least through October 2011.

149.   On information and belief, David Trott was the Chief Executive Officer of Trott PC in June 2014 and had held that position for the past several years. On information and belief, he held that position at least through August 11, 2014.

150.   On a web site which, on information and belief, is or was subject to the control of David Trott, the following statement was posted in June 2014 regarding David Trott's management of Trott PC: "As an innovator, Dave applied his unique problem solving ability to evolving technologies, accounting services, E-mail optimization and staffing processes." Thus David Trott's own description of his activities at Trott PC paint him as a hands-on owner/manager.

151.   On information and belief, in his capacities as owner, Managing Partner, Managing Member, President and/or CEO of Trott PC, David Trott has had direct supervisory control and involvement until recently in the following throughout most of the Class Period:

    a.  The operations of Trott PC;

    b.  Establishing compliance policies and protocols for Trott PC, including compliance with state and federal collection practices laws;

    c.  Establishing the processes and work flow of Trott PC's foreclosure and "loss mitigation" services;

    d.  Appointing, supervising, and receiving reports from other managers and attorneys in management positions at Trott PC involved in the foreclosure services offered by the firm; and

    e.  Review and direct or indirect approval of form letters used in Trott PC's foreclosure services area, including the Trott PC Foreclosure Letter.

152.  On information and belief, David Trott was personally involved in creating, reviewing, and/or approving the Trott PC Foreclosure Letter and the Trott PC Foreclosure Letter—SRRQ, and in the adoption or implementation of the procedures whereby these form letters were sent to plaintiffs and to class members.

153.  On information and belief Jane Doe and John Doe are or were other Trott PC partners, shareholders, or members with substantial managerial and responsibility that materially participated in causing the Trott PC Foreclosure Letters and the Trott PC Foreclosure Letter—SRRQ to be sent to plaintiffs and to class members.

**Class Allegations**

154.  Plaintiffs seeks certification of the following class(es) under Federal Rule of Civil Procedure 23(b)(3), as may be refined from time to time in its Motion

for Class Certification, or any motion to amend or modify such certification based

on further investigation or discovery:

> All individuals to whom Trott PC caused to be sent any version of the
> Trott PC Foreclosure Letter in connection with mortgages conveyed
> for residential real property located in Michigan, which was not
> returned as undelivered by the U.S. Post Office, dated from August 11,
> 2009, through the date that the Court issues an order certifying any
> class requiring notice in this matter, and through the date of entry of
> final judgment as to any class for which notice is not required under
> Federal Rule of Civil Procedure 23.

This proposed class is referred to herein as the "Class," and the time period

indicated as the "Class Period."

155.    Pursuant to Rule 23 (c)(5), plaintiffs seek certification of the following

subclasses:

> a.  All individuals to whom Trott PC caused to be sent any version of the
>     Trott PC Foreclosure Letter in connection with mortgages conveyed
>     for residential real property located in Michigan, which was not
>     returned as undelivered by the U.S. Post Office, dated from August 11,
>     2014, through the date that the Court issues an order certifying any
>     class requiring notice in this matter, and through the date of entry of
>     final judgment as to any class for which notice is not required under
>     Federal Rule of Civil Procedure 23 ("FDCPA Subclass");

> b.  All individuals to whom Trott PC caused to be sent any version of the
>     Trott PC Foreclosure Letter—SRRQ soliciting a request for
>     reinstatement quote in connection with mortgages conveyed for
>     residential real property located in Michigan, which was not returned
>     as undelivered by the U.S. Post Office, dated from August 11, 2009,
>     through the date that the Court issues an order certifying any class
>     requiring notice in this matter, and through the date of entry of final
>     judgment as to any class for which notice is not required under Federal
>     Rule of Civil Procedure 23 ("Overshadowing Subclass").

156.   Excluded from the Class and from each Subclass are any current employees of Trott PC and any individual who has either (i) litigated a claim against a defendant based upon the Trott PC Foreclosure Letter to final judgment, or (ii) signed a release encompassing the claims presented in this Complaint, to the extent released.

157.   Plaintiffs reserve the right to extend the Class Period to reflect any tolling of applicable statutes of limitations based upon other previously pending class actions encompassing any claim stated herein.

158.   On information and belief, the Class is so numerous that joinder is impracticable in that it comprises over 200,000 individuals.

159.   On information and belief, the FDCPA Subclass is so numerous that joinder is impracticable in that it comprises over 3,000 individuals.

160.   On information and belief, the Overshadowing Subclass is so numerous that joinder is impracticable in that it comprises over 75,000 individuals.

161.   Plaintiffs' claim are typical of all class members in that plaintiffs and each putative class member were sent a substantially identical form of the Trott PC Foreclosure Letter that was misleading and incomplete in at least the ways set forth in this Complaint. Plaintiff Martin's overshadowing claim is typical of that of all Overshadowing Subclass members in that he and each putative Overshadowing

Subclass member were sent a substantively identical Trott PC Foreclosure Letter—SRRQ, and each of their validation rights was violated in the ways alleged. Plaintiffs' claims arise from the same events or practices or course of conduct that gives rise to the claims of other class members, and their claims are based on the same legal theories.

162.   One or more common issues of law or fact are presented by the Class claims and each of the Subclass claims, including, *inter alia*:

a.   Whether the Trott PC Foreclosure Letter is misleading in any of the ways alleged in this Complaint;

b.   Whether the Trott PC Foreclosure Letter was sent by an attorney;

c.   Whether the least sophisticated consumer might reasonably believe the Trott PC Foreclosure Letter to have been sent by an attorney;

d.   Whether the least sophisticated consumer might reasonably believe the Trott PC Foreclosure Letter not to have been sent by an attorney;

e.   Whether the Trott PC Foreclosure Letter failed accurately to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1) or 15 U.S.C. § 1692f(1);

f.   Whether the content and structure of the Trott PC Foreclosure Letter-SRRQ sent to the Overshadowing Subclass members overshadowed their validation rights under 15 U.S.C. § 1692g(b) and therefore the Michigan debt collection statutes;

g.   Whether this Court should enter a declaratory judgment declaring that the Trott PC Foreclosure Letter violates the FDCPA and the Michigan debt collection statutes as alleged;

    h.   Whether this Court should enjoin defendants Trott PC, Jane Doe, and John Doe's violations of the debt collection statutes as alleged;

    i.   Whether David Trott, Jane Doe, and John Doe are each individually liable for the violations of the federal and state debt collection statutory violations alleged;

    j.   Whether Trott PC's, David Trott's, and the remaining defendants' violations of the Michigan debt collection statutes were "willful";

    k.   What the net worth of Trott PC, David Trott, and the other defendants are for applying the FDCPA $500,000 statutory cap for absent class members;

    l.   Whether the FDCPA Subclass members should be awarded statutory damages, attorneys' fees, and costs of suit under the FDCPA; and

    m.   Whether each class member should be awarded statutory damages under the Michigan debt collection statutes in the amount of $50, plus a civil fine of $150 per class member together with attorneys' fees and costs of suit.

163.   These and other common issues are central to the claims of the Class and permit them to be resolved "in one stroke" on a classwide basis.

164.   Plaintiffs are adequate representatives of the Class in that they have no conflict with other putative class members, understand their obligations as class representatives, and are represented by experienced class counsel with the expertise vigorously and competently to prosecute the class claims. Plaintiffs and their counsel will fairly and adequately represent the interest of the Class and the Subclasses.

165.   The claims of the Class and of the Subclasses present a predominance of common over individual issues. More particularly:

    a.   In part because the least-sophisticated-consumer standard applicable to the claims is an objective one, whether or not the Trott PC Foreclosure Letter is misleading under the FDCPA and the Michigan debt collection statues presents overwhelmingly predominant common issues of fact and law, and

    b.   In part because the United States Court of Appeals for the Sixth Circuit has held that both the FDCPA and the RCPA are "strict liability" statutes, there are no defenses unique to individual class members that would create a predominance of individual issues.

166.   Litigation of these claims on a classwide basis is superior to individual litigation because, *inter alia:*

    a.   The amounts at issue in an individual case are so small that individual lawsuits would otherwise be economically infeasible for the vast majority of class members;

    b.   Individual lawsuits would overburden the Court; and

    c.   Individual class members do not typically have an interest in controlling litigation of their own claims.

167.   Class members will be identifiable from records in the possession or control of Trott PC, David Trott, Jane Doe, or John Doe, or that they have the effective power to obtain.

168.   Counsel for plaintiffs does not anticipate any significant case management issues that would militate against certifying the Class and the Subclasses.

169.   Additionally and in the alternative, plaintiffs request certification of a

Class and Subclasses under Federal Rule of Civil Procedure 23(b)(2) for declaratory

and injunctive relief.

## COUNT I

FAIR DEBT COLLECTION PRACTICES ACT – ATTORNEY LETTERHEAD CLAIMS

15 U.S.C. § 1692, *et seq.*

(Against All Defendants)

170.   Plaintiffs incorporate by this reference the preceding paragraphs of this

Complaint as if fully set forth herein.

171.   Trott PC, David Trott, Jane Doe, and John Doe are or have been

regularly engaged, directly and indirectly, in the collection of mortgage debts.

172.   Trott PC, David Trott, Jane Doe, and John Doe are or have been "debt

collectors" under the FDCPA. *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 459

(6th Cir. 2013) (reversing dismissal of FDCPA claim against law firm that initiated

foreclosure proceedings on the ground that it was not a "debt collector").

173.   Exhibits A and B and the Trott PC Foreclosure Letter are

communications in connection with the collection of residential mortgage debts.

174.   Plaintiffs and class members are consumers.

175.   The Trott PC Foreclosure Letter is misleading, false, and/or deceptive in violation of 28 U.S.C. §§ 1692e, 1692e(3) & 1692e(10) for at least the reasons set forth in this Complaint.

176.   David Trott, as Managing Member, President, and/or CEO of Trott PC during most of the Class Period, materially participated, directly and indirectly, in formulating and implementing the Trott PC business practices that caused the Trott PC Foreclosure Letter to be composed and sent to Nundley and to members of the FDCPA Subclass, and in drafting, approving, authorizing, or directing the issuance on behalf of Trott PC of the Trott PC Foreclosure Letter to Nundley and to members of  the FDCPA Subclass, such that he is individually liable for violating the FDCPA and for Trott PC's violations of the FDCPA.

177.   On information and belief, Jane Doe and John Doe have each materially participated, directly or indirectly, in drafting, approving, authorizing, or directing the issuance on behalf of Trott PC of the Trott PC Foreclosure Letter during the Class Period to Nundley and to members of the FDCPA Subclass, such that they are individually liable for violating the FDCPA and for Trott PC's violations of the FDCPA.

178.   Trott PC, David Trott, Jane Doe, and John Doe have profited from and were enriched by the acts and practices alleged herein to violate the FDCPA.

WHEREFORE, plaintiffs pray that this Court:

- Certify the FDCPA Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and pursuant to Rule 23(c)(5);

- Designate them as representatives of the FDCPA Subclass;

- Designate plaintiffs' counsel as for the FDCPA Subclass;

- Enter judgment in favor of plaintiff Nundley and for each intervening FDCPA plaintiff in the amount of $1,000.00, plus applicable pre-judgment interest;

- Enter judgment in favor of the FDCPA Subclass, and against each defendant in the amount of $500,000, or 1% of their respective net worth (whichever is less), to be distributed *pro rata* (net of any attorneys' fees and costs reimbursement awarded by this Court to class counsel) to each subclass member who does not properly request to be excluded from the FDCPA Subclass;

- Enter an award in favor of plaintiffs and the FDCPA Subclass and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT II

REGULATION OF COLLECTION PRACTICES ACT – ATTORNEY LETTERHEAD CLAIMS

Michigan Compiled Laws § 445.251, *et seq.*

(Against All Defendants)

179.   Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

180.   Plaintiffs' residential real estate mortgage and the debt secured thereby, and those of class members, were primarily for personal or household

48

purposes for purposes of M.C.L. § 445.251(a). Plaintiffs and all class members are consumers.

181.   Trott PC, David Trott, Jane Doe, and John Doe are each "regulated persons" under the RCPA.

182.   Exhibits A and B and the Trott PC Foreclosure Letter are communications conveying information regarding residential mortgage debts.

183.   Plaintiffs and all class members suffered harm to their statutory rights under the RCPA to be free from misleading communications in connection with the collection of a debt.

184.   In light of the RCPA's purpose to avoid misleading communications by regulated persons, plaintiffs and all class members suffered an injury under the RCPA because Exhibit A and B and the Trott PC Foreclosure Letter suggests that the letters were sent by an attorney when they were not, rendering the letters misleading and causing actual and potential confusion, anxiety, and mental distress to plaintiffs and class members.

185.   In light of the RCPA's purpose to avoid misleading communications by regulated persons, plaintiffs and all class members suffered an injury under the RCPA because Exhibits A and B and the Trott PC Foreclosure Letter are subject to two possible reasonable interpretations—that they were and that they were not

authored by an attorney—rendering the letters misleading and causing actual and potential confusion, anxiety, and mental distress to plaintiffs and class members.

186.   Plaintiffs and all class members had money collected from them by the use of Exhibits A and B and the Trott PC Foreclosure Letter in at least one of the following ways:

      a.   Foreclosure of their homes via a sheriff's sale as threatened in the letters, with the proceeds of the sale applied to the mortgage debt due;

      b.   Reinstatement of the mortgage declared to be default in the letters by payment of allegedly past-due amounts and fees, as solicited by the letters; or

      c.   Redemption of the foreclosed real property within the statutory period by payment on the debtor's behalf of the amounts statutorily required.

187.   Exhibits A and B and the Trott PC Foreclosure Letters sent to class members are misleading for at least the reasons set forth in this Complaint in violation of M.C.L. § 445.252(e).

188.   Exhibits A and B and the Trott PC Foreclosure Letter sent to class members violate M.C.L. § 445.252(a) because they are on attorney letterhead when in fact they were not sent by an attorney.

189.   In violation of M.C.L. § 445.252(q), Trott PC has failed to implement procedures designed to prevent its employees from violating the RCPA as alleged in this Complaint.

190.   Trott PC's , David Trott's, and Jane Doe's and John Doe's violations of the RCPA are willful.

191.   David Trott, as Managing Member, President, and/or CEO of Trott PC throughout most of the Class Period was directly and indirectly involved in formulating and implementing the Trott PC business practices that caused Exhibits A and B and the Trott PC Foreclosure Letter to be constructed and sent to plaintiffs and to class members, such that he is individually liable, directly and indirectly, for violating the RCPA and for Trott PC's violations of the RCPA.

192.   Trott PC, David Trott, and Jane Doe and John Doe profited from and were enriched by the acts and practices alleged herein to violate the RCPA.

WHEREFORE, plaintiffs pray that this Court:

- Certify the Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

- Designate plaintiffs as class representatives;

- Designate plaintiffs' counsel as class counsel;

- Enjoin defendants from engaging in further violations of the RCPA in connection with the Trott PC Foreclosure Letter in any of the ways alleged in this Complaint as determined by the Court or at trial;

- Enter judgment in favor of plaintiffs and the Class, and against defendants jointly and severally, in the amount of $200 for each plaintiff and for each class member who does not properly request exclusion from the Class;

- Enter an award in favor of plaintiffs and the Class and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT III

FAIR DEBT COLLECTION PRACTICES ACT –
FAILURE ACCURATELY TO STATE THE AMOUNT OF THE DEBT

15 U.S.C. § 1692, *et seq.*

(Against All Defendants)

193.   Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

194.   Defendants caused Exhibits A and B and the Trott PC Foreclosure Letter to be sent to plaintiffs and the members of the proposed Class without including the total accrued attorneys' fees due from the debtor as of the date of the letter.

195.   In so doing, defendants failed to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1);

196.   Alternatively, by including in the "total indebtedness" in the Trott PC Foreclosure Letter amounts for attorneys' fees or other expenses in excess of those permitted by Michigan law, defendants sought to collect unauthorized fees or costs in violation of 15 U.S.C. § 1692f(1).

WHEREFORE, plaintiffs pray that this Court:

- Certify the FDCPA Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and pursuant to Rule 23(c)(5);

- Designate plaintiffs as subclass representatives;

- Designate plaintiffs' counsel as subclass counsel;

- Enter judgment in favor of plaintiff Nundley and for each intervening FDCPA plaintiff in the amount of $1,000.00, plus applicable pre-judgment interest;

- Enter judgment in favor of the Subclass, and against each defendant in the amount of $500,000, or 1% of their respective net worth (whichever is less), to be distributed *pro rata* (net of any attorneys' fees and costs reimbursement awarded by this Court to class counsel) to each subclass member who does not properly request to be excluded from the Subclass;

- Enter an award in favor of plaintiffs and the Subclass and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT IV

REGULATION OF COLLECTION PRACTICES ACT –
FAILURE ACCURATELY TO STATE THE AMOUNT OF THE DEBT

Michigan Compiled Laws § 445.251, *et seq.*

(Against All Defendants)

197. Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

198.   By omitting accrued attorneys' fees from the "total indebtedness" figure listed in Exhibits A and B and in the Trott PC Foreclosure Letter, or alternatively by seeking fees or costs in excess of those authorized by the mortgage and law, defendants communicated with debtors "in a misleading or deceptive manner" in violation of M.C.L. § 445.252(a), and made "an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt" in violation of M.C.L. § 445.252(e).

WHEREFORE, plaintiffs pray that this Court:

- Certify the Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

- Designate plaintiffs as class representatives;

- Designate plaintiffs' counsel as class counsel;

- Enjoin defendants from engaging in further violations of the RCPA in connection with the Trott PC Foreclosure Letter in any of the ways alleged in this Complaint as determined by the Court or at trial;

- Enter judgment in favor of plaintiffs and the Class, and against defendants jointly and severally, in the amount of $200 for each plaintiff and for each class member who does not properly request exclusion from the Class;

- Enter an award in favor of plaintiffs and the Class and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT V

FAIR DEBT COLLECTION PRACTICES ACT –
CLAIMS BASED ON OVERSHADOWING

15 U.S.C. § 1692, *et seq.*

(Against All Defendants)

199.   Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

200.   As set forth in the "Overshadowing" section of this Complaint, *supra*, Exhibit A and the Trott PC Foreclosure Letter—SRRQ, in their content and structure, overshadow the ostensible notice of debtors' dispute and validation rights contained in those letters.

201.   Exhibits A and the Trott PC Foreclosure Letter —SRRQ constitute "communications during the 30-day period [that] overshadow or [are] inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor" in violation of 15 U.S.C. § 1692g(b).

WHEREFORE, plaintiffs pray that this Court:

- Certify the Overshadowing Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2) and Rule 23(b)(3), and pursuant to Rule 23(c)(5);

- Designate plaintiffs as subclass representatives;

- Designate plaintiffs' counsel as subclass counsel;

- Enter a declaratory judgment that the Trott PC Foreclosure Letter—SRRQ violates the FDCPA by overshadowing the notice of consumers' dispute and validation rights;

- Enter judgment in favor of each intervening Overshadowing Subclass plaintiff who was sent a Trott PC Foreclosure Letter—SRRQ within the past year in the amount of $1,000.00, plus applicable pre-judgment interest;

- Enter judgment in favor of the Overshadowing Subclass, and against each defendant in the amount of $500,000, or 1% of their respective net worth (whichever is less), to be distributed *pro rata* (net of any attorneys' fees and costs reimbursement awarded by this Court to class counsel) to each Overshadowing Subclass member who does not properly request to be excluded from the such Subclass;

- Enter an award in favor of the Overshadowing Subclass and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT VI

REGULATION OF COLLECTION PRACTICES ACT –
CLAIMS BASED ON OVERSHADOWING

Michigan Compiled Laws § 445.251, *et seq.*

(Against All Defendants)

202.   Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

203.   Defendants caused Exhibits A and the Trott PC Foreclosure Letter—SRRQ to be sent to plaintiff Martin and the Overshadowing Subclass members, and

in so doing "misrepresent[ed] in a communication with a debtor 1 or more of the following:  (i) The legal status of a legal action being taken or threatened; [or] (ii) The legal rights of the creditor or debtor" in violation of M.C.L. § 445.242(f), and communicated in a misleading manner and made misleading or deceptive statements in violation of M.C.L. §§ 445.252(a) & (e), by, *inter alia*:

    a.  Suggesting that a sheriff's sale was imminent; by failing to disclose whether a judicial or non-judicial foreclosure proceeding had been initiated; and by failing to indicate when a sheriff's sale might be scheduled in relation to debtors' validation rights; and

    b.  By overshadowing plaintiffs' and class members' validation rights under federal law as set forth above.

WHEREFORE, plaintiffs pray that this Court:

- Certify the Overshadowing Subclass pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and Rule 23(c)(5);

- Designate plaintiffs as subclass representatives;

- Designate plaintiffs' counsel as subclass counsel;

- Enjoin defendants from engaging in further violations of the RCPA in connection with the Trott PC Foreclosure Letter—SRRQ in any of the ways alleged in this Complaint as determined by the Court or at trial;

- Enter judgment in favor of plaintiff Martin and the Overshadowing Subclass, and against defendants jointly and severally, in the amount of $200 for each plaintiff and for each Overshadowing Subclass member who does not properly request exclusion from the Class;

- Enter an award in favor of plaintiffs and the Overshadowing Subclass and against defendants for attorneys' fees and costs of suit, including notice costs and any fees and costs associated with any appeal; and

- Award such other and further relief as may be just and appropriate.

## COUNT VII

DECLARATORY RELIEF

28 U.S.C. §§ 2201& 2202

(Against All Defendants)

204.   Plaintiffs incorporate by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

205.   There is an actual controversy between plaintiffs and the Class on one hand, and defendants on the other, regarding the whether the Trott PC Foreclosure Letter and Trott PC Foreclosure Letter-SRRQ violate the FDCPA and the RCPA as alleged.

206.   Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

207.   On information and belief, Trott PC, Jane Doe, and John Doe continue to send foreclosure letters that violate of the FDCPA and the RCPA as alleged herein.

WHEREFORE, plaintiffs pray that this Court enter a judgment declaring that:

a.  the Trott PC Foreclosure Letter violates the FDCP by misleading the least sophisticated consumer as to whether or not it was sent by an attorney;

b.  the Trott PC Foreclosure Letter violates the RCPA by misleading the least sophisticated consumer as to whether or not it was sent by an attorney;

c.  the Trott PC Foreclosure Letter violates Section 1692g(a)(1) or 15 U.S.C. § 1692f(1) of the FDCPA by failing accurately to state the amount of the debt;

d.  the Trott PC Foreclosure Letter violates the RCPA because it "[made] an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt …" by failing accurately to state the amount of the debt;

e.  the Trott PC Foreclosure Letter—SRRQ violates the FDCPA by overshadowing debtor' dispute and validation rights;

f.  the Trott PC Foreclosure Letter—SRRQ violates the RCPA by misleading debtors about "[t]he legal status of a legal action being taken or threatened," and about "[t]he legal rights of the creditor or debtor," M.C.L. §§ 445.252(e) & (f); and

g.  such other and further declaratory relief to which plaintiffs and the class are entitled.

## JURY DEMAND

Plaintiffs request a trial by jury for every issue so triable.

Dated:        November 25, 2015

Respectfully submitted,


 _/s/Andrew J. McGuinness_
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S. Main St., Suite 118
P. O. Box 7711
Ann Arbor, Michigan  48107
Phone:  (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, Michigan  48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed
Class*

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy

of the foregoing was filed with the Court using the ECF system, which will send

notification of such filing to all parties who have appeared through their attorneys

of record.

*/s/Andrew J. McGuinness*
