UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. MARTIN and YAHMI
NUNDLEY,

                    Plaintiffs,                    Case Number 15-12838
v.                                                 Honorable David M. Lawson

TROTT LAW, P.C., DAVID A.
TROTT, JANE DOE, and JOHN DOE,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, AND ORDERING SCHEDULING CONFERENCE

Plaintiffs Brian J. Martin and Yahmi Nundley have filed the present lawsuit, as members of a putative class, alleging that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Michigan Regulation of Collection Practices Act (RCPA), Mich. Comp. Laws § 445.251, by sending certain letters to these consumers in an effort to foreclose their residential mortgages. They allege that the letters were misleading in several different respects, discussed below, and violated specific sections of the federal and state statutes. They have sued Trott Law, P.C. (formerly known as Trott & Trott, P.C.) and its former principal, David Trott, individually. Each defendant has filed a separate motion to dismiss the first amended complaint. The plaintiffs have filed a motion to amend their complaint a second time to change certain allegations, add two new counts, and add a plaintiff. The Court heard oral argument on these motions on March 3, 2016. The first amended complaint states claims in several of the counts for which relief can be granted against both defendants. However, counts III and IV, premised on the theory that the omission of attorney's fees from the dunning letters, and on the mistaken premise that

any such fees were subject to an inapplicable statutory cap, fail to state any plausible claim for relief

under either the FDCPA or the RCPA.  Furthermore, plaintiff Martin's claims under the FDCPA are

time-barred.  The proposed amended complaint, except for counts III and IV, would not be futile,

and there is no reason to disallow the other proposed additions.  Therefore, the motions to dismiss

will be granted in part and denied in part, and the motion for leave to file a second amended

complaint will be granted.

## I.  Factual Background

The lawsuit is premised on the dunning letters Trott Law sent to each of the plaintiffs.

Plaintiff Martin alleges that within a few days of May 3, 2012, he received the following letter on

letterhead of "Trott & Trott, a Professional Corporation":

Dear Borrower(s):

This office represents Bank of America, N.A., which is the creditor to which your mortgage debt is owed or the servicer for the creditor to which the debt is owed.  This matter was referred to this office to foreclose the mortgage.  As of the date of this letter the total indebtedness is:

| | |
|---|---|
| Principal Balance | $143,059.85 |
| Unpaid Interest | $ 6,035.95 |
| Late Charge | $45.45 |
| Corporate Advance | $101.75 |
| Total: | $149,243.00 |

Under the terms of your mortgage, the creditor has elected to accelerate the total indebtedness.  It may, however, be possible to reinstate the mortgage, subject to the creditor's approval, by paying all past due installments, late charges, delinquent taxes, insurance premiums, costs and fees incurred in the foreclosure.  Requests for reinstatement information must be received and approved by this office before the date of the sheriff's sale.  Please call (248) 593-1302 for information concerning reinstatement.

The debt described above will be assumed to be valid by this office, the creditor's law firm, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, dispute the validity of the debt, or any portion thereof.  If you notify

this office in writing within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain a verification of the debt and a copy of the verification will be mailed to you.  If the debt is based on a judgment, a copy of the judgment will be provided to you upon request.

If the creditor named in paragraph one of this letter is not the original creditor, and if you make a written request to this office within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to you.

Written requests should be addressed to:
FAIR DEBT COLLECTION CLERK - FC X
Trott & Trott, P.C.
31440 Northwestern Highway, Ste 200
Farmington Hills, MI 48334-2525

Please contact this office at the aforementioned number if you are on active military duty.  To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

Yours very truly,
Trott & Trott, P.C.
FORECLOSURE DEPARTMENT


NOTICE REQUIRED BY THE
FAIR DEBT COLLECTIONS PRACTICES ACT
15 U.S.C. SECTION 1692g AS AMENDED

1.  The amount of the debt is stated in paragraph one of the letter which is attached hereto.

2.  The name of the creditor to whom the debt is owed, or the servicing agent for the creditor to whom the debt is owed, is set forth in paragraph one of the letter which is attached hereto.

3.  The debt described in the letter attached hereto will be assumed to be valid by this office, the creditor's law firm, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, disputes the validity of the debt or any portion thereof.

4.  If you notify this office, in writing, within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain a verification of the debt and a copy of the verification will be mailed to you.

5.  If the creditor named in paragraph one of the Letter attached hereto is not the original creditor, and if you make a written request to this office within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to you.

6.  Any information obtained from you will be used for the purpose of foreclosing the mortgage that is in default.

7.  Written requests should be addressed to: FAIR DEBT COLLECTION CLERK - FC X

Trott & Trott, P.C.
31440 Northwestern Highway, Ste 200
Farmington Hills, MI 48334-2525

Am. Compl. Ex. A.

Plaintiff Nundley alleges that she received a similar letter within a few days of August 12,

2014, which stated:

Dear Borrower(s):

This office represents 21st Mortgage Corporation.  This matter was referred to this office to foreclose the mortgage.  Under the terms of your mortgage, our client has elected to accelerate the total indebtedness due and owing under the mortgage. Because of interest, and other charges that may vary from day to day, the total amount due may differ depending on the day of payment.

As of the date of this letter the total indebtedness is:

|  |  |
|---|---|
| Principal Balance | $68,000.00 |
| Unpaid Interest | $26,070.78 |
| Late Charge | $302.43 |
| Corporate Advance | $10.53 |
| *Total*: | $94,362.68 |

Identification of Creditor: The mortgage debt is owed to 21st Mortgage Corporation. 21st Mortgage Corporation is the servicer of the debt.  The mortgage loan payments are made to the servicer.

-4-

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt, this office will obtain a verification of the debt or a copy of the judgment, if applicable, and mail a copy of such verification or judgment to you.  If you request, in writing, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please contact this office if you are on active military duty.  To the extent the mortgage debt has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

Yours very truly,
Trott & Trott, P.C.

Am. Compl. Ex. B.

Both letters began with the legend: "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE."  Each of these letters, the plaintiffs allege in their amended complaint, violate specific provisions of the FDCPA and the RCPA.

In counts I and II, the plaintiffs allege that because the letters purport to be sent by an attorney, but in reality were sent by administrative personnel without any attorney review or supervision, the defendants violated section 1692e(3) of the FDCPA, 15 U.S.C. § 1692e(3) (prohibiting any "false representation or implication that any individual is an attorney or that any communication is from an attorney"), and section (a) of the RCPA, Mich. Comp. Laws § 445.252(a) (prohibiting communication in any "misleading or deceptive manner, such as using the stationery of an attorney . . . unless the regulated person is an attorney").  In counts III and IV, they allege that the letters did not state the correct amount of the debt, because they underestimated the amounts

-5-

owed by *not* including certain attorney's fees.  *See* 15 U.S.C. § 1692g(a)(1) (requiring the written notice from a debt collector to a consumer to recite accurately "the amount of the debt") *see also* Mich. Comp. Laws § 445.252(a) ("A regulated person shall not [communicate] with a debtor in a misleading or deceptive manner.").  In counts V and VI, the plaintiffs allege that certain language in the letters "overshadowed" the rights the plaintiffs had under both laws to contest the debts.  *See* 15 U.S.C. § 1692g(b) ("Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."); *see also* Mich. Comp. Laws § 445.252(f) (prohibiting misrepresentation of "(i) [t]he legal status of a legal action being taken or threatened [or] (ii) [t]he legal rights of the creditor or debtor").  The amended complaint also includes count VII, which does not contain any substantive claims and merely recites the plaintiffs' prayer for declaratory relief holding the defendant's practices to be unlawful.

The defendants take issue with each of the plaintiffs' claims, arguing that the letters are not deceptive, and they do not contravene any of the specific provisions of the statutes.  In addition, defendant Trott contends that he cannot be found personally liable under the FDCPA, and he is not a "regulated person" under the RCPA.  Finally, both defendants argue that plaintiff Martin did not file his complaint within the one-year statute of limitations prescribed by the FDCPA.

## II.  Motion to Dismiss

The defendants' motions are brought under Federal Rule of Civil Procedure 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel.*

-6-

*Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).  "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief.  *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be accepted unless they are plausibly supported by the pleaded facts.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).  However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss."  *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be considered without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not its associated documents). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594, 1598

(2016) (quoting 15 U.S.C. § 1692(e)).  "The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables 'the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'"  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (citing S. Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698).  As the Sixth Circuit has noted, "the FDCPA is 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem."  *Barany-Snyder v. Weiner*, 539 F.3d 327, 611 (6th Cir. 2008) (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)).

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer."  *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)), *rev'd on other grounds sub nom. Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).

The State of Michigan's Regulation of Collection Practices Act (RCPA) prohibits any "regulated person" from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt," Mich. Comp. Laws § 445.252(e), and from "[m]isrepresenting in a communication with a debtor [either] [t]he legal status of a legal action being taken or threatened [or] [t]he legal rights of the creditor or debtor," Mich. Comp. Laws § 445.252(f). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency

including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name."

"In order to establish a claim under § 1692e: (1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§ 1692e's prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)).

The parties do not appear to dispute three of the four elements that the plaintiff must allege to show liability under the FDCPA: that the named plaintiffs and putative class members are "consumers" as defined under the Act, the collection letters sent to the plaintiffs were attempts to collect "debts" that had been incurred primarily for personal or household purposes, and that, at least as to defendant Trott Law, P.C., the law firm qualifies as both a "debt collector" and a "regulated person" subject to regulation under the FDCPA and Michigan's RCPA. *Wallace*, 683 F.3d at 326. As to the third element, the firm's letters even declared in bold face type that "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." Am. Compl., Ex. A, Letter dated May 3, 2012 (Pg ID 184); Ex. B, Letter dated Aug. 12, 2014 (Pg ID 189). The only element of liability that the parties seriously dispute is the fourth: whether any representations made in the letters sent to the plaintiffs were false, misleading, deceptive, or otherwise unlawful under the relevant statutes. Individual defendant David Trott also contends that the amended complaint does not allege sufficient facts to establish that he acted as either a "debt collector" or a "regulated person."

-10-

A.  "Attorney Letterhead" Claims

In Counts I and II of the first amended complaint, plaintiffs Brian Martin and Yahmi Nundley raise claims against David Trott individually and Trott Law, P.C. for allegedly deceptive uses of "attorney letterhead," exemplified by Exhibits A and B that were attached to the complaint. The defendants argue variously that the claims fail as a matter of law because (1) the letterhead used in the letters identifies the firm only as "Trott & Trott, P.C.," and the complaint alleges only that the letters are not signed by anyone claiming to be an attorney; (2) the statement that the account was referred to the firm for foreclosure is not deceptive because it is simply a statement of why the firm was retained, and moreover was true; (3) the plaintiffs specifically allege that lawyers at the firm are required to "review all of the file specific information that goes into the [Trott PC Foreclosure] letter," and to "approve" letters before they are sent, Am. Compl. ¶ 80; and (3) if recipients of the collection letters inferred that they were sent by a law firm, then that impression would not be misleading simply because it was correct; the law firm was retained to foreclose the mortgages, and it sent the letters to that end.

The plaintiffs have alleged that the defendants sent Exhibit A to plaintiff Martin on May 3, 2012 and Exhibit B to plaintiff Nundley on August 12, 2014.  The letterhead used identifies the letters as originating from "Trott & Trott, A Professional Corporation," and it uses the mailing address of the Trott law firm in Farmington Hills, Michigan.  *E.g.*, Am. Compl., Ex. A, Letter dated May 3, 2012 (Pg ID 184)  The letters do not bear the signature of any individual, but instead include a generic closing similar to the following:

    Yours very truly,
    Trott & Trott, P.C.
    FORECLOSURE DEPARTMENT

-11-

Ex. A (Pg ID 184); *see also* Ex. B (omitting the words "FORECLOSURE DEPARTMENT").  Each letter stated that the Trott firm was retained by the entity identified as the creditor or loan servicer "to foreclose the mortgage" described in the letter.

The plaintiffs assert that all of the form foreclosure letters sent on the firm's letterhead bore the type of generic signatures used in the exemplars attached to the complaint and were not signed by any attorney at Trott Law before they were sent.  Am. Compl. ¶ 83.  They allege that most of these letters were not subject to any sort of "meaningful review" by any attorney, but instead were generated *en masse* by non-attorney employees of Trott Law or its subsidiaries, using word processing templates and loan account data merged into those templates electronically to create finished letters.  *Id.* ¶ 81-84.  The plaintiffs contend that the use of the firm's letterhead and the generic signature "Trott & Trott, P.C." on those letters was deceptive and violated state and federal law because the letters would lead a reasonable consumer to the false impression that they were "from an attorney," when in fact they were generated and sent by administrative personnel not engaged in the practice of law.

"Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA."  *Barany-Snyder*, 539 F.3d at 611 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)).  "The Act protects 'all consumers,' the 'shrewd' as well as the gullible, from practices that would mislead the 'reasonable unsophisticated consumer,' one with some level of understanding and one willing to read the document with some care."  *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015) (citations omitted).  However, "[d]unning letters that appear misleading only by way of 'bizarre,'

-12-

'idiosyncratic,' or 'nonsensical' readings do not violate the Act." *Ibid.* (quoting *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007)).

The first amended complaint adequately alleges facts to establish that the letters in Exhibit A and B were misleading because they could give the least sophisticated consumer who received them the impression that they were "from an attorney," *see* 15 U.S.C. § 1692e(3), when, according to the allegations of the complaint, no attorney was involved in any "meaningful way" in drafting, reviewing, or sending the letters. *See also* Mich. Comp. Laws Ann. § 445.252(a) (prohibiting the use of "the stationery of an attorney or credit bureau unless the regulated person is an attorney."). If the plaintiffs can prove, as they allege, that attorneys at the Trott Law firm "played virtually no day-to-day role in the debt collection process," and that the letters sent to the plaintiffs and class members were generated by rote, by non-attorney employees of the firm or its subsidiaries, without any substantive review by any lawyer employed by the firm, then the defendants may be liable under the FDCPA for sending letters purporting to be "from an attorney," when, in fact, those communications "were not 'from' [any attorney employed by the firm] in any meaningful sense of that word." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

The defendants resist these claims by arguing that (1) the letters would not suggest to the recipients that they are "from an attorney"; and (2) if the letters did suggest that, then they were not "misleading" or "deceptive," because the firm admits that it sent them.

"[W]hether a letter is misleading raises a question of fact," and "[g]enerally speaking, 'a jury should determine whether the letter is deceptive and misleading.'" *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (quoting *Kistner*, 518 F.3d at 441). The Exhibit A letter,

-13-

which was sent to plaintiff Martin, was printed on the letterhead of the defendant law firm, prominently features the name of the firm and its business address, and explicitly states that "[t]he debt described above will be assumed to be valid by this office, *the creditor's law firm*, unless you, the debtor/consumer, within thirty (30) days after the receipt of this notice, dispute the validity of the debt, or any portion thereof." *E.g.*, Ex. A, Letter dated May 3, 2012 (Pg ID 184) (emphasis added). The defendants make much of the fact that the Exhibit B letter omits the phrase "the creditor's law firm," and that neither letter was signed by any individual attorney. However, each letter stated that the Trott firm had been retained by the creditor or loan servicer "to foreclose the mortgage" described in the letter. Am. Compl., Ex. A, Letter dated May 3, 2012 (Pg ID 184) ("This office represents Bank of America, N.A., which is the creditor to which your mortgage debt is owed or the servicer to which the debt is owed. This matter was referred to this office to foreclose the mortgage."); Ex. B, Letter dated Aug. 12, 2014 (Pg ID 189) ("This office represents 21st Mortgage Corporation. This matter was referred to this office to foreclose the mortgage."). Even the least sophisticated consumer could be expected to know that a "foreclosure" is a legal proceeding that ordinarily would be prosecuted on behalf of a creditor by a lawyer, and it would be reasonable for the consumer therefore to conclude that the letters, which stated that the firm had been retained "to foreclose the mortgage," were sent by a law firm or a lawyer employed by one.

The defendants contend that the identification of the firm only as a "Professional Corporation" or as "Trott & Trott, P.C." would not lead any reasonable consumer to presume that it was sent from a law firm. But the defendants do not deny the allegation that the Trott firm has gone to considerable effort to promote itself as a dominant player in the market for legal services in Michigan foreclosure cases. The complaint alleges, in particular, that a 2008 business magazine

-14-

interview with David Trott described his firm as "one of the three largest foreclosure law firms in the country, based on business volume and employees"  Compl. ¶ 24.  The defendants contend that their letters were not "misleading" essentially because they successfully obfuscated the law firm's identity and the nature of its business.  But even an unsophisticated consumer, if he or she was not already aware of the firm's reputation, readily could ascertain by spending a few moments on the Internet that "Trott & Trott, P.C." is, in fact, a law firm.  The firm's public filings with the Michigan Secretary of State, likewise available on the Internet to any consumer with only momentary effort, also plainly disclose the nature of its business. *E.g.*, Trott & Trott, P.C. Articles of Incorporation (Oct. 17, 1983), available at http://www.dleg.state.mi.us/bcs_corp/sr_corp.asp ("The purpose for which the Corporation is organized is to engage solely in the Practice of Law.").  Finally, any consumer readily could ascertain the nature of the firm either by visiting the business location identified in the letter or simply by calling the phone number provided.

Counts I and II of the amended complaint sufficiently plead violations of the FDCPA and RCPA, respectively.

### B.  "Amount of Debt" Claims

In Counts III and IV, the complaint alleges that the form foreclosure letters sent to the individual plaintiffs and class members did not state the amount of attorney fees then owing as a result of the referral of the plaintiffs' loans for foreclosure. Am. Compl. ¶¶ 195-96, 198.  They also allege that, to the extent that the total debt stated in the foreclosure letters included amounts for attorney fees beyond those allowed under Michigan law, the letters were an unlawful attempt to collect excess or illegal fees contrary to 15 U.S.C. § 1692f(1) (prohibiting "The collection of any

-15-

amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.").

The defendants argue that the claims based on misrepresentation of the amount of debt owed due to the alleged omissions of attorney fees are defective as a matter of law because the plaintiffs do not suggest any facts, or point to any provisions of their mortgage documents, to establish that they did, in fact, owe attorney fees in any amount when the letters were sent. Moreover, the FDCPA, they insist, does not prohibit a debt collector from seeking *less than* the amount owed.

The defendants have the better argument. The plaintiffs contend that the Exhibit A and Exhibit B letters failed properly to state "the amount of the debt" owed by them, because the letters did not include "the total accrued attorneys' fees due from the debtor as of the date of the letter." But they have not cited any authority for the apparently novel proposition that a collection letter can be "misleading" or violate 15 U.S.C. § 1692f(1) or § 1692g(a)(1) by failing accurately to state the "amount of the debt," where it merely omits sums that the plaintiffs presume were due at the time of the sending, but which were not stated or demanded by the debt collector in the notice letter. To the extent that the plaintiffs allege that the defendants violated the FDCPA by seeking to collect *less than* the total amount actually due, the claims in Counts III and IV must be dismissed as failing to set forth any plausible violation of either the FDCPA or RCPA. Even the most inept consumer could not possibly be misled or deceived to believe that he owed any amount he did not actually owe where the collection notice was silent as to "attorney fees" and made no demand for any such amounts.

The plaintiffs also allege that the collection letters were misleading because they included as components of the principal, interest, or other line items amounts that actually represented

-16-

accrued attorney fees, and that the defendants sought thereby to collect such attorney fees in excess of the amounts allowed by the applicable statutory attorney fee cap. In particular, the Exhibit A letter includes as part of the stated debt $101.75 categorized as "corporate advance," and the plaintiffs allege that line item actually included attorney fees, which they contend are capped at no more than $75 in a foreclosure by advertisement proceeding under Michigan Compiled Laws § 600.2431(2). However, the Sixth Circuit has held that where "no [foreclosure] sale occurs, the Michigan statute does not govern the attorney's fee applicable to reinstatement," and where "[t]he attorney's fees [were] included in reinstatement quotes; they [are not] subject to Michigan Compiled Laws § 600.2431(2)." *Kevelighan v. Orlans Associates, P.C.*, 498 F. App'x 469, 475, 2012 WL 3090836, at *5 (6th Cir. 2012).

Counts III and IV will be dismissed.

### C. "Overshadowing" Claims

In Counts V and VI, the plaintiffs allege that one of the versions of the form foreclosure letter used by Trott Law contained the following standard language:

> Under the terms of your mortgage, the creditor has elected to accelerate the total Indebtedness. It may, however, be possible to reinstate the mortgage, subject to the creditor's approval, by paying all past due installments, late charges, delinquent taxes, insurance premiums, costs and fees incurred in the foreclosure. Requests for reinstatement information must be received and approved by this office before the date of the sheriff's sale. Please call (248) 593-1302 for information concerning reinstatement.

Am. Compl., Ex. A, Letter dated May 3, 2012 (Pg ID 184).

Each of the letters also contained a statutory notice of the debtor's right to dispute the debt identified in the letter required under 15 U.S.C. § 1692g(a), similar to the following:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume

-17-

this debt is valid.  If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt, this office will obtain verification of the debt or a copy of the judgment, if applicable, and mail a copy of such verification or judgment to you.  If you request, in writing, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Ex. B, Letter dated Aug. 12, 2014 (Pg ID 189).  The notice in Exhibit A was similarly worded, but it also referred to "this office" as "the creditor's law firm."  Ex. A, Letter dated May 3, 2012 (Pg ID 184).  The Exhibit B letter did not refer to "the creditor's law firm."

The plaintiffs contend that the statutory notice of the right to dispute the debt that was included in the letter was negated by the urgent terms of the solicitation to request a reinstatement quote, contrary to 15 U.S.C. § 1692g(b), which forbids actions and communications within a 30-day window that "overshadow or [are] inconsistent with the disclosure of the consumer's right to dispute the debt."  Similarly, the RCPA prohibits misrepresentation of "(i) [t]he legal status of a legal action being taken or threatened [or] (ii) [t]he legal rights of the creditor or debtor."  Mich. Comp. Laws § 445.252(f)   The plaintiffs contend that the reinstatement language was improper because it suggested to the debtor that a sheriff's sale of the home was imminent, and that there might not be time to pursue the right to dispute the debt without risking the loss of the home in the meantime.

The defendants argue that all of the "overshadowing" claims must be dismissed because (1) the Nundley letter does not have any language relating to any reinstatement quote or sheriff's sale, and the complaint does not raise any "overshadowing" claim based on the Nundley letter; (2) the complaint alleges that both the Martin and Nundley letters were "initial communications" under 15 U.S.C. § 1692g, and the prohibition on "overshadowing" communications only applies to "subsequent" communications sent after the initial notice of debt; and (3) there is no "overshadowing" provision under the RCPA, and the representation that a reinstatement quote must

-18-

be sought "before the sheriff's sale" was not likely to create any mistaken impression about the status of any legal proceedings or the extent of the debtor's legal rights. They also assert that the "overshadowing" claims fail as a matter of law because they depend upon a "bizarre and idiosyncratic reading" of the language in the Exhibit A foreclosure letter, which plainly included the required statutory notice of the debtor's right to dispute the debt, and which did not expressly state or suggest that any legal proceedings were imminent or had been commenced that could be perceived by a reasonable consumer as impairing the dispute rights.

"Section 1692g(a) [of the FDCPA] provides that the initial communication sent to a consumer must contain: (1) the amount of the debt, (2) the creditor's name, (3) a statement that unless the consumer disputes the validity of the debt within thirty days of receipt of the notice, the debt collector will assume the debt to be valid, (4) a statement that if the consumer does dispute the debt in writing within thirty days, the debt collector will obtain verification of the debt or a copy of the judgment, and (5) a statement that, upon the consumer's written request, the debt collector will provide the consumer with the name and address of the original creditor, if different from that of the current creditor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999).

"If the consumer notifies the debt collector in writing within the thirty-day period described in [subsection 1692g(a)] that [the debt] is disputed, or that the consumer requests the name and address of the original creditor, the debt collector [must] cease collection of [the debt] until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). "Collection activities and communications that do not otherwise violate this subchapter may continue during the

-19-

30-day period referred to in [subsection 1692g(a)] unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor." *Ibid.* "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Ibid.*

"Under the Act, notice of the thirty-day validation period is necessary, but not sufficient to satisfy § 1692g(a)." *Smith*, 167 F.3d at 1054. "A debt collector must 'effectively convey' the notice to the debtor." *Ibid.* (quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). The Court must apply the "'least sophisticated debtor' standard to determine whether a communication 'effectively conveys' notice of the thirty-day validation period for purposes of § 1692g." *Ibid.* (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992)). The relevant inquiry is "whether [the debt collector's letter] would lead the least sophisticated debtor to believe that he did not have thirty days in which to dispute the validity of the debt. If the letter reduces this time frame, it violates the Act." *Ibid.*

As discussed further below, all of plaintiff Martin's claims under the FDCPA plainly are time-barred and must be dismissed, because the letter on which they are premised was sent on May 3, 2012, well outside the one year limitations period. The complaint in this case was filed on August 11, 2015, so no valid FDCPA claims raised therein could be premised on collection activities before August 11, 2014. Count V of the amended complaint alleges that the urgent solicitation included in the Martin letter for the debtor to request a reinstatement quote, and the implication that a sheriff's sale of the property could be imminent, "overshadowed" the statutory notice of the debtor's right to dispute the debt, and could create in the mind of the least sophisticated consumer a

misapprehension that making a validation request would not immediately halt the collection proceedings, as mandated by 15 U.S.C. § 1692g(b). Because Martin's individual claims in Count V are premised solely on Exhibit A, they are untimely and must be dismissed.

However, Martin also alleges in Count VI of the amended complaint that the solicitation of a request for a reinstatement quote was misleading or deceptive under the RCPA, because it would mislead or deceive a reasonable consumer about the status of a legal proceeding or his legal rights to dispute the debt and, by making a validation request, to halt the collection proceedings. The defendants do not contend that any of the RCPA claims raised in the complaint are time-barred. The language in the letter is not imperative, and its terms are not overly urgent. However, the Exhibit A letter does state that Trott Law was retained "to foreclose the mortgage," and the language stating that a request for reinstatement must be submitted by the debtor and received by Trott Law "before the sheriff's sale" reasonably could be read to imply that foreclosure proceedings already were in process or that a sheriff's sale of the property was scheduled. On the other hand, the letter does not state explicitly that a reinstatement quote would have to be received by a date certain, and it does not state that collection efforts would continue despite the receipt of a timely request for validation from the plaintiff. Nevertheless, it cannot be said as a matter of law that no ordinary consumer reading the Exhibit A letter would be misled into thinking that foreclosure proceedings or a sheriff's sale already were in process and could not be halted except by requesting a reinstatement quote — i.e., that the debtor did not have time to exercise his or her statutory right to request a validation of the debt, or that such a request would not halt collection efforts. Generally the determination whether the language of a letter is misleading is for the jury, taking into account the reasonable perception of an ordinary consumer, *Buchanan*, 776 F.3d 397, and the language of the letter in this

case is not so unassailably lucid as to entitle the defendants to a judgment on the pleadings on the basis that it could not possibly be found to be misleading.

Count VI of the amended complaint states a viable claim.

### D.  Statute of Limitations

"'An action to enforce any liability [under the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.'" *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 429 (6th Cir. 2015) (quoting 15 U.S.C. § 1692k(d)).  The debtor's cause of action based on defects apparent in a letter sent by a debt collector accrues at the time that the debtor receives the letter.  *Id.* at 430.

Plaintiff Brian Martin's individual claims under the FDCPA, which were pleaded in counts I, III, and V of the first amended complaint, plainly are time-barred under the FDCPA's one-year statute of limitations and must be dismissed.  Moreover, the plaintiffs concede that Martin does not intend to pursue any such individual claims.  They contend that he is, nevertheless, still a viable plaintiff and prospective class representative for class members who may have timely claims under those counts, because he has pleaded viable and timely claims under the RCPA in counts II, IV, and VI premised on the same facts.  The defendants do not argue that any of the RCPA claims are time-barred, and the question of Martin's suitability as a class representative is not before the Court. Nonetheless, Martin's claims in counts I, III, and V will be dismissed.

### E.  Individual Claims against Defendant David Trott

Defendant David A. Trott argues that the first amended complaint must be dismissed because it fails to allege any facts to establish that he "had any personal involvement with the Plaintiffs or

in the collection of Plaintiffs' debts." He argues that he is not a "regulated person" under the RCPA, because the complaint alleges that he was engaged in "debt collection" activities, and, if that is true, then he would fall under the definition of a licensed "collection agency," which is a type of entity separately regulated under Chapter 9 of the Michigan Occupational Code and excluded from the coverage of the RCPA. Trott argues, in the alternative, that if he is not a "collection agency" exempted from regulation under the RCPA, then he still does not qualify as a "regulated person" because there is no allegation that as an attorney he engaged in any collection activities "in his own name." Trott also argues that the complaint fails to allege facts to show that he qualifies as a "debt collector" under the FDCPA, because the plaintiffs do not allege that Trott personally was involved with sending any of the letters received by the named plaintiffs, or any other particular recipients, and personal liability of a corporate officer or employee under the FDCPA cannot be premised solely on the allegations that Trott had general supervisory authority or control over the operations of his law firm.

The plaintiffs included in their first amended complaint an extensive recitation of background facts generally directed to establishing that defendant David A. Trott and his law firm, Trott Law, P.C. (formerly known as Trott & Trott, P.C.) have played a dominant role in the market for legal services in foreclosure cases in the State of Michigan since 1983. *See* Am. Compl. ¶¶ 3, 13, 14-18, 21-24. The plaintiffs assert, based on various metrics derived from public information about the law firm and news articles about Trott and his firm, that "Trott PC has handled over 200,000 foreclosure by advertisement proceedings in Michigan" since August 11, 2009. *Id.* ¶¶ 61, 154. The plaintiffs contend that "in each foreclosure by advertisement proceeding in Michigan handled by Trott PC since at least 2007, Trott PC has sent a letter to the debtor/mortgagor in

-23-

substantial conformity with Exhibits A and B" that were attached to the amended complaint.  *Id.* ¶ 62.

The plaintiffs allege that, although the letters were sent on Trott Law's letterhead and purported to originate from the "Foreclosure Department" of the law firm, the letters were in fact produced and mailed *en masse* by a separate, non-legal subsidiary company set up and operated by David Trott for the sole purpose of providing foreclosure document processing services to his law firm and its many clients.  Am. Compl. ¶ 31-37.  That entity is referred to variously in the complaint by its registered name, American Processing Company, LLC ("APC"), and by its assumed name "National Default Exchange" or "NDeX."  *Id.* ¶¶ 32-36.

The plaintiffs allege that in his capacity as the majority shareholder, managing member, President, and Chief Executive Officer of Trott Law, defendant David Trott directly controlled and supervised operations at the firm, including by establishing "compliance policies and protocols" and "processes and work flow [for] Trott PC's foreclosure and 'loss mitigation' services," "[a]ppointing, supervising, and receiving reports from other managers and attorneys in management positions at Trott PC involved in the foreclosure services offered by the firm," and "[r]eview[ing] and direct[ly] or indirect[ly] approv[ing] form letters used in Trott PC's foreclosure services" operations, including those used to produce the exemplar letters attached to the complaint.  Am. Compl. ¶¶ 147-51.  In particular, the plaintiffs allege "[o]n information and belief, [that] David Trott was personally involved in creating, reviewing, and/or approving the [form foreclosure letters involved in the complaint], and in the adoption or implementation of the procedures whereby these form letters were sent to plaintiffs and to class members."  *Id.* ¶ 152.

The plaintiffs concede that in late 2014, David Trott sold his interest in Trott PC, and that he no longer has an interest in the law firm. They do not allege that Trott had any personal involvement with any correspondence or collection efforts involving the named plaintiffs or class members after he sold his interest in the law firm.

Under the FDCPA, "[a] 'debt collector' is 'any person . . . who regularly collects or attempts to collect . . . debts owed or . . . due another' for profit." *Gillie*, 785 F.3d at 1097 (quoting § 1692a(6)). "[A] lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). "[I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection," and foreclosure proceedings plainly qualify as such activity under the FDCPA. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name."

The defendants insist that neither David Trott nor his law firm qualify as "regulated persons" subject to the prohibitions of the Michigan RCPA because the firm is a "collection agency" exempted from regulation under the Act, and neither he nor his firm acted "in [their] own name" when communicating with the plaintiffs and attempting to collect their debts. Those arguments are non-starters. The question has not squarely been addressed by either the Sixth Circuit or the Michigan state appellate courts, but every judge in this district that has confronted the question has held that a "law firm and its employees 'fit squarely within the definition of a regulated person'

-25-

under the MCPA" regardless of whether the firm's collection activities were carried out "in its own name" or on behalf of its clients. *Carpenter v. Monroe Fin. Recovery Grp., LLC*, 119 F. Supp. 3d 623 (E.D. Mich. 2015); *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953 (E.D. Mich. 2015); *Ward v. G. Reynolds Sims & Assoc.*, No. 12-12078, 2013 WL 364012 (E.D. Mich. Jan. 30, 2013); *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, No. 07-12016, 2007 WL 4326825 (E.D. Mich. Dec. 10, 2007).

Trott also argues that the complaint fails to allege sufficient facts to establish that he qualifies as a "debt collector" under the FDCPA, because, so he contends, it does not adequately allege that he personally was involved in any of the collection activities relating to the plaintiffs or putative class members. In his briefing, Trott embarks on a discursive survey of the case law relating to "control person" liability in unrelated areas such as securities regulation, and he maintain that, at most, the complaint alleges merely that he was generally involved in unspecified "supervisory" activities at the firm, but that the plaintiffs do not offer any specific facts to establish that he personally was involved in any statutory violations. The defendant's arguments, however, disregard the central factual allegations of the pleadings and misconstrue the relevant case law.

"[C]ontrary to [the defendant's] argument that he cannot be personally liable because he did not participate in sending the specific letter to [the plaintiff], he may be personally liable on the basis of his participation in the debt collection activities of the [firm] more generally." *Kistner*, 518 F.3d at 437. In his reply brief, Trott concedes that it is well established in the Sixth Circuit that "'where a shareholder, officer, or employee of a corporation is *personally involved in the debt collection at*

-26-

*issue*, he may be held personally liable as a debt collector without piercing the corporate veil.'" *Id.* at 436 (quoting *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F. Supp. 2d 615, 618 (D. Utah 2005)) (emphasis added). The plaintiffs here plainly allege that Trott was "personally involved" in the collection activities at issue and that he therefore qualifies as a "debt collector" subject to regulation under the Act. In particular, the plaintiffs specifically allege "[o]n information and belief, [that] David Trott was *personally involved in creating, reviewing, and/or approving the [form foreclosure letters involved in the complaint]*, and in the adoption or implementation of the procedures by which those form letters were sent to the named plaintiffs and class members." *Id.* ¶ 152 (emphasis added). Trott urges the Court to disregard those allegations as "conclusory." But the allegations that Trott personally drafted, approved, and directed the use of the form letters or "templates" at issue in this case are not "legal conclusions." They are facts that may be proven, or not, depending on the evidence that the plaintiffs ultimately may present. And those allegations are bolstered by the other specific facts in the complaint tending to show that Trott had the position and authority, in his capacity as a majority owner, CEO, and President of the law firm, to do what the plaintiffs' allege, at least until he divested his interest in the firm in December 2014.

The plaintiffs allege that the letters at issue were false, misleading, and deceptive because of the form and language used in all of them and not, except in the case of the "corporate advance" claims, based on any particular circumstances of the plaintiffs' debts. If, as the plaintiffs contend, David Trott personally planned, implemented, and directed collection activities that systematically violated the plaintiffs' rights under the FDCPA by sending misleading communications to hundreds of thousands of mortgage holders regarding their debts, then the plaintiffs have viable claims against him for his personal involvement in those systemic violations of the Act.

-27-

Trott argues that he cannot be held liable under the rule of *Kistner* because several of the specific factors considered in that case are not present here; e.g., he is not the only or one of a handful of members of the firm, the letters at issue did not bear his individual signature, and they did not direct payments to be addressed personally to him. But those are not "factors" that must be satisfied in order for liability to attach to a lawyer or corporate officer; they are circumstances that in that case tended to prove one element of liability that the plaintiff must establish. The plaintiffs must allege one crucial premise: that the defendant is "personally liable on the basis of his participation in the debt collection activities of the [firm]." *Kistner*, 518 F.3d at 437. Here they adequately have done so based on the specific facts set out in the amended complaint.

Nevertheless, it appears to be undisputed that David Trott left the Trott firm in December 2014; that, upon his departure, the firm was renamed from "Trott & Trott, P.C." to "Trott Law, P.C."; and that, after his departure, Trott had no further personal involvement in any collection activities carried out by the firm. Therefore, he cannot be held liable for anything that occurred after he divested his interest in Trott Law, and the amended complaint must be read with that limitation in mind.

### III.  Motion to Amend Complaint

In their proposed second amended complaint, the plaintiffs seek to make a number of formal adjustments to the class definitions and operative time periods alleged under the various counts of the complaint in order to clarify them. They also want to add two substantive counts (Counts VII and VIII) based on additional alleged defects in the foreclosure letters. The proposed amended pleading would (1) add Kathleen Cadeau as a named individual plaintiff, and include as Exhibit C a third example foreclosure letter sent to her on October 28, 2015; (2) expand the scope of the

general class to more than 250,00 members — up from 200,000; (3) backdate the time period for the general class to December 30, 2008, from August 11, 2009; (4) revise the "Attorney Letterhead" subclass (Counts I & II; 200,000 class members) to cover letters sent since August 11, 2014 under the FDCPA and since August 11, 2009 under the RCPA; (5) revise the "Amount of Debt" subclass (Counts III & IV; 250,000 members) to cover letters sent since December 30, 2013 under the FDCPA and since December 30, 2008 under the RCPA; (6) revise the "Overshadowing subclass (Counts V & VI; 75,000 members) to cover letters sent since August 11, 2014 under the FDCPA and since August 11, 2009 under the RCPA; and (7) define a new "Corporate Advance" subclass (Counts VII & VIII; 10,000 members) based on letters sent since March 10, 2014 under the FDCPA and since March 10, 2009 under the RCPA.  Finally, in Counts III and IV, the plaintiffs seek to revise their allegations to clarify that David Trott individually was involved with producing and sending Exhibits A & B but was not involved with the to-be-added Exhibit C.

The defendants oppose the motion, arguing that the new claims raised in Counts VII and VIII of the proposed second amended complaint would be futile because (1) plaintiff Martin's mortgage plainly allows for the recovery of "advanced" funds; and (2) the mere allegation that plaintiff Cadeau's mortgage does not include the specific phrase "corporate advance" is insufficient as a matter of law plausibly to allege that recovery of advanced funds was prohibited, since, as the Martin mortgage demonstrates, such recovery may be allowed under the instrument even in the absence of that specific wording.  They also contend that they will be prejudiced notwithstanding that discovery in the case was stayed pending the resolution of the motions to dismiss, because the inclusion of the new corporate advance claims will necessitate further motion practice.  They also

contend that there is no apparent justification for the purely strategic omission by the plaintiffs of the "corporate advance" claims from their earlier pleadings.

Motions to amend before trial are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) requires a party seeking to amend its pleadings at this stage of the proceedings to obtain leave of court. Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001).

As noted, a court may deny a motion for leave to amend when the proposed amendment would be futile. *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980). Sensibly, a court may deny the motion to amend if it concludes that the pleading as amended could not withstand a motion to dismiss. That saves the parties and the court the expense of having to confront a claim doomed to failure from its outset. *Head*, 870 F.2d at 1123 (quoting *Martin*, 801 F.2d at 248).

Delay alone does not justify denial of a motion brought under Rule 15(a). *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). Nor does the Rule establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors*

*Corp.*, 203 F.2d 789, 793-94 (6th Cir. 1953) (reviewing a district court's denial of a motion to amend after the entry of summary judgment). But the party seeking to amend must "act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (internal quotation marks omitted). Where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459. And courts will deny leave to amend where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973).

The proposed second amended complaint would make only minor and formalistic changes to the pleading of counts I through VI and the scope of several of the proposed class definitions. For the same reasons discussed above, counts I and II of the proposed second amended complaint adequately plead viable individual claims by plaintiff Nundley, and counts II and VI set forth viable individual claims by plaintiff Martin. However, the proposed amendment alters nothing in the substance of counts III and IV, and it offers no basis to resurrect plaintiff Martin's time-barred claims under FDCPA. The amendments to counts I, II, and VI of the second amended complaint will be allowed.

The plaintiffs also propose to add two new claims in counts VII and VIII of the proposed second amended complaint, under the FDCPA and RCPA, premised on the allegedly misleading use of the phrase "corporate advance" to conceal amounts that actually represent accrued attorney fees

that the defendants allegedly sought to recover.  (They would move their non-substantive count for declaratory relief to count IX.)  The amendment would add a new plaintiff, Kathleen Cadeau, who allegedly received a letter from Trott Law, P.C. in October 2015, which is attached as Exhibit C to the proposed second amended complaint.

The proposed second amended complaint raises viable and timely claims under the FDCPA and the RCPA in the new Counts VII and VIII.  The plaintiffs concede that plaintiff Cadeau does not have any individual claim against defendant David Trott individually, but they contend that, because the proposed class period extends to cover collection activities that occurred before he divested his interest in the Trott Law firm, the class claims in part would implicate him.  The claims raised in Counts VII and VIII plainly are viable following this Court's ruling in *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953 (E.D. Mich. 2015), where the Court denied the same institutional defendant's motion for summary judgment in a similar class action case and held that there was a genuine issue of material fact as to whether the phrase "corporate advance," a "term of art," used in the defendant's dunning letter, would be materially misleading to the least informed consumer:

> There is no dispute that the words "corporate advances" do not appear anywhere in the mortgage and the phrase, a term of art, is unlikely to be self-evident to an unsophisticated consumer.  Certainly, a jury could find that the letter would be misleading to an unsophisticated consumer, and it might affect his decisionmaking — that is, whether to pay or challenge that portion of the debt.  In fact, it is unlikely that an unsophisticated consumer — any consumer, really — could respond to the dunning letter without any information about what "corporate advances" mean.

118 F. Supp. 3d at 964.  The defendants contend that the claims here are distinguishable because plaintiff Martin's mortgage did include a reference to funds "advanced" to cover legal proceedings by the creditor.  But there is no evidence that the mortgages in this case were any clearer than the instrument at issue in *Wilson* in explaining that the specific phrase "corporate advance," which was

-32-

used only in the collection notice, could include attorney fees.  There is no basis on which to distinguish the cases as a matter of law, and the ultimate determination whether the language of the "corporate advance" letter in this case is misleading must be deferred until the record is further developed, or perhaps, as in *Wilson*, reserved for the jury at trial.

The defendants contend that they will be "prejudiced" because they will have to defend against the new claims, and the plaintiffs offer no good reason to justify the delay in bringing them. But in their oppositions to the motion to amend the defendants do not address, or even mention, the plaintiffs' position that their earlier omission of the "corporate advance" claims was prompted solely by the pendency of the proceedings in *Wilson*, because they were included within the scope of the class proposed for certification, where the class claims were based on the use of the same language, in the same form letter, over the same period, by the same defendant.

The plaintiffs certainly were justified in awaiting the outcome of *Wilson* under the rule of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), which held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 346-47 (1983) (applying the *American Pipe* rule to "all members of the putative class [who] file individual actions in the event that class certification is denied . . . within the time that remains on the limitations period").  The plaintiffs cannot be faulted for any "undue delay" where they filed their motion to amend here less than 20 days after the entry of an order of dismissal in the earlier filed class case.  Moreover, the defendants have not offered any factual basis and did not develop any substantial argument in support of their position that they would be "prejudiced" by the addition of the new counts at this stage of the case.

-33-

Discovery has not even begun and the proceedings have been on hold since the defendants filed their motions to dismiss, so there is no basis for their contention that they would be unfairly prejudiced if the Court allows the amendment.

## IV.  Conclusion

Plaintiff Brian Martin's claims are based on the Exhibit A letter, which he received around May 3, 2012.  He did not commence this lawsuit until August 11, 2015, and therefore his claims under the FDCPA (counts I, III, V) are barred by its one-year statute of limitations.  Plaintiff Yahmi Nundley has stated a viable claim in count I, but neither party has stated a claim for which relief can be granted in counts III or IV.  Nundley has not pleaded a claim in count V. The plaintiffs argue that Martin can still maintain status as a class representative for the claims in count V.  However, no class has been certified, and Martin's status as a class representative, whatever that turns out to be, cannot resurrect his own time-barred claim.  The plaintiffs have cited no authority holding otherwise.  The plaintiffs' motion to file a second amended complaint is timely and the proposed additional counts are not futile.

Accordingly, it is **ORDERED** that the defendants' motions to dismiss the first amendment complaint [dkt. #15, 17] are **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that count I of the first amended complaint is **DISMISSED WITH PREJUDICE** as to plaintiff Brian Martin, **ONLY**; counts III, IV, and V are **DISMISSED WITH PREJUDICE** in their entirety; and the motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiffs' motion for leave to file a second amended complaint [dkt. #27] is **GRANTED IN PART**.  The plaintiffs may file a second amended complaint, without including the counts dismissed herein, **on or before August 8, 2016**.

-34-

It is further **ORDERED** that counsel for the parties appear for a status conference **on August 15, 2016 at 10:00 a.m.** to discuss further case management dates.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 26, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2016.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

-35-