IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

v.

Trott Law P.C., et al.,

      Defendants.

Case No. 2:15-cv-12838

Hon. David M. Lawson

Mag. Judge David R. Grand

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
Chrysler House
719 Griswold St, Suite 620
Detroit, MI  48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon (*admitted*)
Beau Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Charity A. Olson (P68295)
Timothy Myers (P      )
OLSON LAW GROUP
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
colson@olsonlawpc.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**PLAINTIFFS' MOTION TO STRIKE PORTION OF REPLY BRIEF
OR IN THE ALTERNATIVE FOR LEAVE TO FILE SUR-REPLY *INSTANTER***

1

Plaintiffs, by their counsel, hereby move this Court to strike a portion of the Reply Brief (ECF Doc. # 109) ("Trott Reply") filed by David Trott in support of his Motion to Dismiss State Law Claims (ECF Doc. #89) ("Second Motion to Dismiss").

In support of this Motion, Plaintiffs submit their accompanying Brief in Support, and further state as follows:

1.      The Trott Reply raises a new argument for the first time in a reply brief, which is not permitted.

2.      Trott's new argument—that this Court lacks jurisdiction over the state law claims in this action under the Class Action Fairness Act ("CAFA") under the "home state exception":

      a.  is incorrect; and

      b.  was in any event waived, since it has been available to Trott for over a year and Trott has urged this Court to exercise jurisdiction (and has in fact obtained a favorable ruling dismissing one state law claim) based upon this Court's exercise of jurisdiction over the state law claims. Binding Sixth Circuit precedent holds that the home state exception is not jurisdictional, but rather is waivable.

3.      If Trott's new argument is not stricken—or if Plaintiffs are not permitted in the alternative to file a Sur-Reply Brief to address its errors—Plaintiffs will be prejudiced.

4.      Pursuant to local rule and this Court's direction, Plaintiffs spoke with counsel for Trott who declined to stipulate to the relief requested.

WHEREFORE, Plaintiffs respectfully pray that this Court (a) strike Argument II (pp. 6-7 & n.1) of the Trott Reply; or (b) grant Plaintiffs leave, *instanter*, to file (and deemed filed) Plaintiffs' Sur-Reply Brief In Opposition To David Trott's Second Motion To Dismiss, attached as Exhibit A hereto.

BRIEF IN SUPPORT

## Background

In one-paragraph argument, David Trott's Second Motion to Dismiss argued that this Court lacks CAFA jurisdiction because Plaintiffs failed adequately to "demonstrate" that *any* of the estimated more than 250,000 absent class members (Michigan homeowners whose homes had been foreclosed upon by defendant Trott Law PC during roughly the six years preceding before this action was initiated in August 2015) are domiciled outside of Michigan. ECF Doc. # 89 at 19-20. In response, Plaintiffs pointed out that based on census data of which this Court may properly take judicial notice, it is clear that several thousand putative class members have moved out of Michigan. Plaintiffs' Response, ECF Doc. # 103 at 28-29 & n. 9.

In his reply brief, Trott argued for the first time that this court "must decline to exercise jurisdiction" exercise under CAFA's home state exception, 28 U.S.C. § 1332(d)(4)(B). Trott Reply at 6.

This is new argument. Evidence of this point is the fact that Plaintiffs nowhere addressed the home state exception in their Response (or in any brief filed in connection with Defendants' first motions to dismiss filed over a year ago). Had either Defendant ever raised this argument, Plaintiffs surely would have addressed it.

## Argument

Arguments raised for the first time in a reply brief are improper, and are deemed waived. As the Sixth Circuit, has explained, reply briefs are to *reply* to arguments made in a response brief, not to advance new lines of argument:

> The Federal Circuit has articulated the rationale for not permitting issues, raised for the first time in a reply to a response, to be raised on appeal:
>
> > Raising the issue for the first time in a reply brief does not suffice; reply **briefs *reply* to arguments made in the response brief - they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration**. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.
>
> *Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002),* (finding that plaintiff had failed to preserve an issue for review by not presenting it in its principal summary judgment brief and raising it for

the first time in its reply brief). *See also Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 675-76 (6th Cir. 2006) (Griffin, J., concurring).

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (bold emphasis added; italics in original) (finding jurisdictional argument advanced for the first time in a reply brief filed in the district court to have been waived, and thus not preserved for appeal).

Trott's home state exception argument to CAFA jurisdiction is new argument. Trott will argue instead that it was proper because it somehow "replies" to Plaintiffs' argument based on Census Bureau data. But his argument is not that the census data (which, obviously, has long been publicly available) as cited by Plaintiffs is wrong or misconstrued, but rather that it is *accurate*. But the census data that Trott now seeks to build his home state exception argument upon was available to Trott since August 2015; there was no true "trigger" contained in Plaintiffs' Response.[1] More importantly, since Trott's opening argument in his Second Motion to Dismiss is that Plaintiffs had failed to demonstrate that there is even a single out-of-state class member, then based on Trott's own thesis (lack of

---

[1] Indeed, this Court may recall having raised the jurisdictional question at oral argument on Defendants' first motions to dismiss, March 3, 2016, to which the undersigned counsel for Plaintiffs responded similarly that this Court has CAFA jurisdiction over the state law claims because at least one class member had moved out of state after foreclosure. Counsel for Trott did not contend otherwise at that time.

evidence of *any* out-of-state class member), the home state exception argument was equally available to Trott before Plaintiffs filed their Response.

This becomes evident when one analyses Trott's reply argument more carefully. He argues: "[E]ven if the Court were to accept Plaintiffs' reasoning, it must decline to exercise jurisdiction because, under CAFA, 'a district court shall decline to exercise jurisdiction [if] ... two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" Trott Reply at 6. But this argument does not depend upon "accepting Plaintiffs' reasoning." It depends on an argument that less than one-third of the putative class reside outside of Michigan. Plaintiffs have never argued—one way or another—that more (or less) than one-third of the class reside outside of Michigan. In Paragraph 10 of the Complaint (as noted in Trott's opening brief), Plaintiffs simply alleged that "a number" of class members had moved outside of Michigan. *See* ECF Doc. # 89 at 19-20. And in their Response, Plaintiffs argued that "at least one" class member had moved out of state. ECF Doc. # 103 at 29. As for the census estimate that Trott belatedly relies on for his new home-state-exception argument, Plaintiffs' Response argued:

> Notably, this estimate is based on overall population data, and is likely to underestimate substantially the actual number of Class members who had moved out of state. This is because the Class consists exclusively of residents facing foreclosure. It stands to reason that a group of hundreds of thousands of people dislocated by losing

their homes is many times more likely that members of the general
population to relocate out of state.

*Id*. at 4. In short, Plaintiffs did not argue that *only* 1.8% of the class moved out of

state, but that in light of the thousands of out-of-state changes of permanent

residence that the census average indicates, at least one class member must have

done so. This is no basis for new argument in Reply. "[I]t is not the office of a reply

brief to raise issues for the first time. *Sundberg v. Keller Ladder*, 189 F. Supp. 2d

671, 682-683 (E.D. Mich. 2002) (Lawson, J.).

As argued more fully in Plaintiffs' Sur-Reply (Exhibit A, attached), the home

state exception to CAFA is not "jurisdictional" in the subject matter sense that it

cannot be waived. "[T]he local-controversy and home-state exceptions do not

deprive a court of jurisdiction." *Clark v. Lender Processing Servs*., Case No. 13-

3799, slip. op. at 7 (6th Cir. April 14, 2014) (finding home state exception waivable)

(Exhibit A-1, attached). *See also, Mason v. Lockwood, Andrews & Newnam, P.C.*,

842 F.3d 383 (6th Cir. 2016) (adopting holding of *Clark* that the CAFA exceptions

in 28 U.S.C. 1332(d)(4)—which includes the home state exception—are not

jurisdictional). Accordingly, Trott improperly raised this challenge to this Court's

CAFA jurisdiction in his Reply brief, and it should be stricken.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully ask this Court to strike Argument II from David Trott's Reply Brief in support of his Second Motion to Dismiss, ECF Doc. #109.  In the alternative, Plaintiffs ask for leave to file, *instanter*, their Sur-Reply Brief in Opposition to David Trott's Second Motion To Dismiss, attached as Exhibit A hereto, and to deem that brief filed.

Dated:  January 23, 2017                 Respectfully submitted,


Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
Chrysler House
719 Griswold St, Suite 890
Detroit, MI  48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon (*admitted*)
Beau Hollowell
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

*/s/ Andrew J. McGuinness*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

BRIAN J. MARTIN, et al.,

v.

TROTT LAW P.C., et al.,

     Defendants.

Case No. 2:15-cv-12838

Hon. David M. Lawson

Mag. Judge David R. Grand

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
719 Griswold St., Suite 620
Detroit, MI 48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, OH 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Charity A. Olson (P 68295)
OLSON LAW GROUP
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
colson@olsonlawpc.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Avenue, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

# PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO DAVID TROTT'S SECOND MOTION TO DISMISS

## Argument

In his Reply Brief in support of his second motion to dismiss filed in this action—again seeking dismissal of the Michigan Regulation of Collection Practices Act ("RCPA"), M.C.L. § 445.251, *et seq.,* claims, Defendant David Trott ("Trott") argues that this Court lacks jurisdiction over those claims under the Class Action Fairness Act based upon a new argument:

> [E]ven if the Court were to accept reasoning Plaintiffs' [based on census data], it must decline to exercise jurisdiction because, under CAFA, "a district court shall decline to exercise jurisdiction [if] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

ECF Doc. # 109 at 6. 28 U.S.C. § 1332(d)(4)(B) is known as the "home state exception." *Clark v. Lender Processing Services*, 562 Fed. Appx. 460 at 465; 2014 U.S. App. LEXIS 7022 at *10 (6th Cir. 2014) (Exh. 1, attached). Trott is wrong; this Court properly maintains its original jurisdiction under CAFA over the RCPA claims.

## I.   TROTT HAS FAILED TO MEET HIS BURDEN OF SHOWING THAT THE HOME STATE EXCEPTION APPLIES.

A party seeking to establish the court's original jurisdiction under CAFA must establish the "basic requirements" of that jurisdiction: (i) at least $5 million in controversy; (ii) at least 100 putative class members; and (iii) "minimal diversity"—i.e., that at least one putative class member resides in a different state from at least one defendant. Response, ECF Doc. # 103 at 27-28; 28 U.S.C.

§ 1332(d)(2)(A) & (5)(B). *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383 (published; pagination not yet available), 2016 U.S. App. LEXIS 20554 at *2 (6th Cir. 2016) (citing with approval *Clark*). As demonstrated in the Response, Plaintiffs have met this initial burden.

Once these basic criteria are met the court has original jurisdiction, and a party seeking to avoid the court's exercise of that jurisdiction has the burden of establishing the required elements of any exception:

> Consistent with the plain language of the statute . . . we conclude that . . . once federal jurisdiction has been established under [28 U.S.C. § 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B).

*Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1024 (9th Cir. Cal. 2007) (cited and adopted by *Mason*, 2016 U.S. App. LEXIS 20554 at *9); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009) ("[O]nce CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show that the local controversy exception should apply.") (same).

Trott, as the party objecting to CAFA jurisdiction over the RCPA claims, has wholly failed to meet his burden of establishing each element of the home state exception. In *Myrick v. Wellpoint, Inc*., 764 F.3d 662 (7th Cir. 2014) (Easterbrook, J.), the court faced a similar situation. Plaintiffs sought to represent a class of Illinois policyholders and sought remand of state law claims based on the home state exception. They pointed to Census Bureau data (as Trott now does in his

2

Reply) showing a roughly 2% annual out-of-state migration, to argue that more than two-thirds of the class were domiciled in the home state at the time of removal.

The court rejected this argument. It held that the district court properly exercised its original jurisdiction under CAFA because the moving party had failed to present any evidence that at least two-thirds of the class were citizens of the home state. *Id*. at 665. Similarly, Trott has adduced no such evidence here. Accordingly, as in *Myrick*, his assertion of the home state exception to this Court's CAFA jurisdiction over the RCPA claims must fail.[1]

## II.   EVEN IF THE HOME STATE EXCEPTION WERE APPLICABLE, WAIVER AND ESTOPPEL PRECLUDE ITS APPLICATION.

As the Sixth Circuit held in *Clark v. Lender Processing Services*, 562 Fed. Appx. 460; 2014 U.S. App. LEXIS 7022 (6th Cir. 2014), a party who delays assertion of the home state exception in federal court until after the court has ruled on a dispositive motion waives the home state exception. Trott filed his first motion to dismiss over 13 months ago.[2] In that motion, Trott sought (and eventually obtained) a ruling by this Court on the merits of Plaintiffs' RCPA claims. *Id*., Arguments I, III, IV & V(c).

---

[1] Notably, *Myrick* relies, *id*. at 664, on *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675 (7th Cir. 2006), another case cited favorably by the Sixth Circuit in *Mason*. 2016 U.S. App. LEXIS 20554 at *9.

[2] ECF Doc. # 15, filed December 21, 2015.

3

Having waited over a year to raise the home state exception—after having first sought this Court's exercise of jurisdiction over the merits of Plaintiffs' RCPA claims—Trott has waived the home state exception to this Court's CAFA jurisdiction. *Cf. Clark,* 562 Fed. Appx. 460, 465, 2014 U.S. App. LEXIS 7022 at *10-12 (failure to assert home state exception until after ruling on dispositive motions waives assertion of home state exception to CAFA jurisdiction over state law fair debt collection claims). Trott's untimely assertion of the exception, coupled with the parties' and this Court's substantial expenditure of time, resources, and effort over the past 13 months in motion practice and discovery attendant to the RCPA claims, supports a finding of waiver in this case.

Indeed, this case presents and even stronger reason for finding that the home state exception is unavailable to the moving party than *Clark*, because here that party (Trott) previously obtained a *favorable* ruling by this Court on one of Plaintiffs' RCPA claims. Opinion and Order Granting In Part And Denying In Part Motions To Dismiss, ECF Doc. # 38 at 15-17 (dismissing Count IV of First Amended Complaint, RCPA "Amount of Debt" claim). Accordingly, in addition to waiver based upon delay and attendant prejudice, Trott is estopped from asserting the home state exception at this juncture.[3]

---

[3] As noted in the Response, ECF Doc. # 103 at 30 & n.11, Trott *continues* to seek this Court's rulings on the merits of Plaintiffs' RCPA claims, further demonstrating both waiver and estoppel.

## CONCLUSION

Because this Court plainly has original jurisdiction under CAFA over the

RCPA claims, Trott has failed to submit any evidence establishing the requirements

of the home state exception, and in any event waited too long to assert it, and for

the reasons and stated in their Response, Plaintiffs respectfully ask this Court to

deny Defendant David A. Trott's Motion to Dismiss State-Law Claims and

Requests for Declaratory and Injunctive Relief.

Dated:        January 23, 2016

Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S. Main St., Suite 118
P. O. Box 7711
Ann Arbor, Michigan  48107
Phone:  (734) 274-9374
drewmcg@topclasslaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
MILBERG LLP
719 Griswold St., Suite 620
Detroit, Michigan  48226
Phone: (313) 309-1760
pnovak@milberg.com
dgjonaj@milberg.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

*/s/ Andrew J. McGuinness*

# EXHIBIT 1



2 of 2 DOCUMENTS

**LINDA CLARK; JOHN W. WHITEMAN; MICHAEL C. RYSH; DOROTHY L. RYSH, Plaintiffs-Appellants, and LAURA YEAGER; MICHAEL YEAGER, Plaintiffs, v. LENDER PROCESSING SERVICES; LPS DEFAULT SOLUTIONS; DOCX, LLC; LERNER, SAMPSON & ROTHFUSS; MANLEY, DEAS KOCHALSKI, LLC, Defendants-Appellees, and REIMER, ARNOVITZ, CHERNEK & JEFFREY CO., Defendant.**

**14a0276n.06**

**No. 13-3799**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*562 Fed. Appx. 460*; *2014 U.S. App. LEXIS 7022*; *2014 FED App. 0276N (6th Cir.)*

**April 14, 2014, Filed**

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** [**1]
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.
*Clark v. Lender Processing Servs., 949 F. Supp. 2d 763, 2013 U.S. Dist. LEXIS 80442 (N.D. Ohio, 2013)*

**COUNSEL:** For LINDA CLARK, JOHN W. WHITEMAN, MICHAEL C. RYSH, DOROTHY L. RYSH, Plaintiffs - Appellants: Grace M. Doberdruk, Dann, Doberdruk & Wellen, Cleveland, OH; Marc E. Dann, Law Office, Shaker Heights, OH.

For LENDER PROCESSING SERVICES, LPS DEFAULT SOLUTIONS, Defendants - Appellees: John P. Gilligan, Albert G. Lin, Ice Miller, Columbus, OH; Fred O. Goldberg, Michel O. Weisz, Berger Singerman, Miami, FL.

For DOCX, LLC, Defendant - Appellee: Fred O. Goldberg, Michel O. Weisz, Berger Singerman, Miami, FL; Albert G. Lin, Ice Miller, Columbus, OH.

For LERNER, SAMPSON & ROTHFUSS, Defendant - Appellee: Rick D. DeBlasis, Cynthia M. Fischer, Lerner, Sampson & Rothfuss, Cincinnati, OH.

For MANLEY, DEAS KOCHALSKI, LLC, Defendant - Appellee: Rodger L. Eckelberry, Elizabeth Ann Braverman, Baker & Hostetler, Columbus, OH.

**JUDGES:** BEFORE: COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

562 Fed. Appx. 460, *; 2014 U.S. App. LEXIS 7022, **1;
2014 FED App. 0276N (6th Cir.)

**OPINION BY:** ROGERS

**OPINION**

[*461] ROGERS, Circuit Judge. The plaintiffs are Ohio homeowners who were defendants in foreclosure suits filed during the financial [**2] crisis. Their underlying challenge is to the effectiveness of the series of assignments of mortgage documents, which plaintiffs say led to violations of federal and state law. However, statements made by the defendants in this case that they had a right to foreclose under Ohio law were not materially misleading so as to violate federal fair debt collection law (at least as to the two appellants in this case who brought such federal law claims), [*462] because the foreclosing parties *did* have standing to foreclose, despite any irregularities in the assignments. The plaintiffs' state law claims moreover cannot succeed because the defendants--a vendor that provides services to mortgage servicers and lenders, its subsidiaries, and two law firms--are not suppliers involved in consumer transactions for purposes of the Ohio Consumer Sales Practices Act. For these reasons, the district court properly granted summary judgment to the defendants.

The background, facts, and procedural history of this suit are well set out by the district court as follows:

[T]he named Plaintiffs are individuals whose homes were foreclosed in cases where it appears beyond dispute that the mortgage assignments, affidavits, [**3] and transfers were fabricated by one or more of the loan processing Defendants, and the financial institutions bringing the foreclosure actions were represented by one of the law firm Defendants. Plaintiffs bring a putative class action claiming that Defendants violated the FDCPA and OCSPA by filing state court foreclosure lawsuits on behalf of trustees of securitized trusts. Plaintiffs' theory of the case is that the foreclosing trusts lacked standing to bring foreclosure actions against Plaintiffs because (1) the transfer of their mortgages to non-party securitized trusts did not comply with the alleged deadlines in the applicable Pooling and Servicing Agreements ("PSAs"), and (2) Defendants conspired to create the appearance of standing, after the trusts had lost standing, by using allonges to notes, mortgage assignments, and other mortgage documents that were defectively executed, thereby breaking the chain of title. Plaintiffs bring this action on behalf of a proposed class consisting of:

All Ohio homeowners who were (a) defendants in judicial foreclosure actions on first lien mortgages that were purportedly held by securitization trusts, and that were knowingly initiated and prosecuted [**4] by Defendants on behalf of parties that lacked legal standing to do so, and (b) who were damaged by Defendants' abusive debt collection practices, including: (i) preparing, executing, and notarizing fraudulent court documents and assignments of mortgages and other property records that were used to initiate and prosecute such foreclosures, and (ii) imposing inflated, unfair, unreasonable and/or fabricated fees for "default management services" (the "Class").

[Compl. ¶ 1].

Plaintiffs allege that "[t]wo categories of defendants acted in concert and conspired in furtherance of the fraudulent scheme to generate enormous profits from default servicing fees by knowingly initiating foreclosure actions on behalf of entities that lacked standing to bring such actions." [Compl. ¶ 2]. The first category of Defendants is the loan processing Defendants, [Lender Processing Services].

562 Fed. Appx. 460, *462; 2014 U.S. App. LEXIS 7022, **4;
2014 FED App. 0276N (6th Cir.)

Plaintiffs allege that the loan processing defendants are "vendors or sub-servicers to the vast majority of national mortgage services to manage all default servicing for those servicers." (*Id.*) The second category of Defendants is an alleged network of law firms, here [Manley, Deas Kochalski, LLC] and [Lerner, Sampson [**5] & Rothfuss]. Plaintiffs allege that law firm Defendants "specialize in prosecuting a high volume of foreclosure cases, and are commonly known as 'foreclosure mills.'" (*Id.*) Plaintiffs allege that the law firm Defendants entered into a "Network Agreement" with [Lender Processing] which "requires these law firms to pay *quid* [*463] *pro quo* consideration to [Lender Processing] for referrals of foreclosure cases and other default related matters . . ." (*Id.*) Plaintiffs further allege that law firm Defendants "were not only retained by defendant [Lender Processing], they were also supervised and directed by [Lender Processing], and knowingly used forged and fabricated documents created by or at the direction of [Lender Processing] and/or its subsidiaries." (*Id.*)

The [complaint] describes the national housing collapse, the mortgage foreclosure crisis, and the role of the [Lender Processing] Defendants who allegedly fabricated mortgage assignments, fraudulently endorsed affidavits, backdated mortgage transfers and did whatever was necessary to support standing for its clients (i.e., the financial institutions bringing foreclosure actions against defaulting mortgagors). The [complaint] also describes [**6] the role of the law firm Defendants who allegedly paid the [Lender Processing] Defendants for foreclosure referrals and allegedly knew or should have known these standing-supporting documents were fabricated and their clients lacked standing. The crux of Plaintiffs' allegations is as follows:

The Defendants have engaged in a widespread conspiracy to deceive the Ohio courts and borrowers by engaging in unfair and deceptive debt collection practices, including fabricating thousands of mortgage assignments and affidavits. **These fraudulent documents purported to establish the required intervening note endorsement and transfers of the mortgages to the trusts, thereby giving the illusion of "standing".** If these transfers had actually occurred on the dates the documents were fabricated, they would have been void inasmuch as they were not made pursuant to the terms of the governing documents and the Trustees were not permitted to accept late and out of time assignments.

In furtherance of this deceptive scheme, from at least 2006 until the present, Defendants have knowingly and intentionally prepared and filed or caused to be filed these fabricated mortgage assignments and other mortgage documents [**7] with courts and county recorder of deed's office across the country, including in Ohio, and have produced them to borrowers across the nation, including in Ohio.

From at least 2006 to the present, [Lender Processing] and its network of law firms have used

562 Fed. Appx. 460, *463; 2014 U.S. App. LEXIS 7022, **7;
2014 FED App. 0276N (6th Cir.)

these fabricated note indorsements, mortgage assignments and affidavits to conceal the fact that the trusts, which purport to hold the notes and mortgages, are missing critical documents, namely, properly endorsed notes and valid mortgage assignments that were supposed to have been delivered to the trusts within 90 days of the closing of the trust.

These note endorsements and mortgage assignments were materially false and misrepresented that Defendants' clients had standing to foreclose when they did not. Defendants knew or should have known of the falsity of the representations in these documents, yet Defendants used these fabricated documents to foreclose on Ohio homeowners, with the intent to deceive borrowers and the courts who justifiably believed that these fabricated and forged documents were valid.

[Compl. ¶¶ 11-14] (emphasis in original, footnote omitted).

[*464] Plaintiffs allege that many of the Ohio homeowners who comprise the Class [**8] were unaware that the documents were forged and that the foreclosing parties lacked standing. Plaintiffs allege that, as a result, homeowners have lost their homes in foreclosures

initiated and prosecuted by Defendants. Further, Plaintiffs allege that "thousands of Ohio homeowners have been wrongfully required to defend frivolous foreclosure actions and have incurred substantial legal fees and inflated and/or fabricated foreclosure-related fees charged by Defendants when the plaintiff lacked the standing to institute the foreclosure proceedings against them in the first instance." [Compl. ¶¶ 15-16]. In sum, Plaintiffs claim that the above-described "unfair and deceptive debt collection practices violate the FDCPA and the OCSPA and have been perpetrated on an institutionalized basis through the knowing participation and coordination of each Defendant." [Compl. ¶ 17].

*Clark v. Lender Processing Servs., Inc.*, 949 F. Supp. 2d 763, 767-69 (N.D. Ohio 2013).

The plaintiffs originally filed this lawsuit as a putative class action in Ohio state court. Their complaint asserted a claim under the Ohio Consumer Sales Practices Act (OCSPA) and other state law causes of action. The defendants removed [**9] to federal court under the Class Action Fairness Act, *28 U.S.C. § 1332(d)*. The plaintiffs then amended their complaint to add a claim under the federal Fair Debt Collection Practices Act (FDCPA). After the plaintiffs voluntarily dismissed certain claims against some of the defendants, the Ryshes had claims under the FDCPA, and all of the present plaintiff-appellants had claims under the OCSPA. The district court granted the defendants' motion to dismiss

562 Fed. Appx. 460, *464; 2014 U.S. App. LEXIS 7022, **9;
2014 FED App. 0276N (6th Cir.)

these claims based on several alternative arguments. The district court first reasoned that the plaintiffs did not have standing to challenge the transfer of the mortgages to the trusts. This holding was based on the rule that a person that is not a party to an assignment may not challenge that transfer. By way of example, the final transfer involving Clark's mortgage was between JP Morgan and Bank of New York. Because Clark had no involvement in that transaction, she lacked standing to challenge it. The district court next held that Whiteman and the Ryshes' claims were impermissible collateral attacks on the state foreclosure cases, and that their claims were barred by res judicata because Whiteman and the Ryshes had already challenged [**10] Deutsche Bank's standing to foreclose in their state foreclosure cases, and doing so again in the guise of a consumer protection claim was impermissible. Next, the court concluded that the Ryshes had failed to state an FDCPA claim because Lender Processing was not a "debt collector" because its business is too far removed from the business of debt collection and because it did not make any materially misleading statements. Finally, the court reasoned that the plaintiffs' OCSPA claims failed because the OSCPA excludes transactions between "financial institutions" and their customers and because the defendants were not "suppliers" of consumer goods because they do not offer services to consumers. The plaintiffs appeal.

First, notwithstanding plaintiffs' arguments on appeal, the district court had jurisdiction over the plaintiffs' state-law claims under the Class Action Fairness Act, *28 U.S.C. § 1332(d)*. The plaintiffs argue that the district court only had federal-question jurisdiction over the FDCPA claims and supplemental jurisdiction over the OCSPA claims. According to the plaintiffs, the district court should have remanded the case back to state court [*465] after the district court dismissed [**11] the plaintiffs' FDCPA claim because "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. . . . Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply, 465 F.3d 719, 728 (6th Cir. 2006)* (internal quotation marks and citations omitted). But that argument fails because the district court had original jurisdiction under the Class Action Fairness Act. That act provides that "[t]he district courts shall have original jurisdiction of any civil action in which the

matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which [there is minimal diversity]." *28 U.S.C. § 1332(d)(2)*.

The plaintiffs do not dispute that this case met the requirements of *§ 1332(d)(1)*, but rather argue that the Class Action Fairness Act could not have provided jurisdiction because the "home state" and "local controversy" exceptions found in *§ 1332(d)(4)* apply. Those exceptions require a court to decline jurisdiction when "greater [**12] than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed" and certain other requirements are met or when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id. § 1332(d)(4)*. However, the local-controversy and home-state exceptions do not deprive a court of jurisdiction. *See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011)*; *Visendi v. Bank of Am., N.A., 733 F.3d 863, 869-70 (9th Cir. 2013)*. The statute speaks only of a district court's *declining* jurisdiction if the exceptions apply. This language clearly indicates that the exceptions do not deprive the court of jurisdiction it otherwise possesses because a court could not "decline" jurisdiction that it never had in the first place. While perhaps the exceptions may have applied, the plaintiffs did not make that argument to the district court. Because the exceptions are not jurisdictional and the plaintiffs did not alert the district court of their potential [**13] applicability, this court will not consider whether they should have applied on appeal. *See Visendi, 733 F.3d at 869-70*. Because the applicability of the home-state or local-controversy did not deprive the district court of jurisdiction under the Class Action Fairness Act, it had federal jurisdiction and did not need to rely on supplemental jurisdiction to consider the plaintiffs' OCSPA claims.

The Ryshes are the only plaintiffs still parties on appeal raising FDCPA claims, and their claims are without merit. Because Deutsche Bank held the Ryshes' note, the defendants did not make materially misleading statements about the bank's right to foreclose. At bottom, the Ryshes' consumer protection claims are premised on the argument that the defendants lied and cheated to establish their bank-client's standing to foreclose. The Ryshes argue that defendants forged signatures on assignments of mortgages and lied about complying with

the terms of the pooling agreements. But if Deutsche Bank had standing to foreclose in spite of those alleged misrepresentations, then the defendants' statements were not materially misleading.

To state a claim under the FDCPA, a plaintiff must show that a defendant [**14] violated one of the substantive provisions of the FDCPA while engaging in debt collection [*466] activity. *Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 459-60 (6th Cir. 2013).* Section 1692e forbids "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Furthermore, this court has held that a statement must be more than just misleading--it "must be *materially* false or misleading to violate *Section 1692e.*" *Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012).* "The materiality standard . . . means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id. at 326-27.*

Here the statements made by the defendants were not false (much less materially misleading) because the complaint makes clear that Deutsche Bank had the right to foreclose against the Ryshes. When a homeowner has to borrow money to purchase a home, that borrower typically executes a promissory note and a mortgage. "The promissory note is a contract by which the [borrower] promises to repay the loan to the [lender]. The security instrument [or mortgage] gives that [lender] the right to foreclose [**15] on the property if the [borrower] defaults on the loan obligation." Zachary A. Kisber, *Reevaluating MERS in the Wake of the Foreclosure Crisis*, 42 Real Es. L.J. 183, 186 (2013). Under Ohio law, possession of either the note or the mortgage gives a party standing to foreclose. *CitiMortgage, Inc. v. Patterson, 2012 Ohio 5894, 984 N.E.2d 392, 397-98 (Ohio Ct. App. 2012)* (citing *Fed. Home Loan Mortg. Co. v. Schwartzwald, 134 Ohio St. 3d 13, 2012 Ohio 5017, 979 N.E.2d 1214, 1220 (Ohio 2012)).* In other words, if Deutsche Bank owned or held the Ryshes' note or mortgage, and the Ryshes defaulted, then it was perfectly justified in filing a foreclosure suit.

Deutsche Bank appears to have been the holder of the Ryshes' note because it was endorsed in blank. "Under *R.C. 1303.31(A)*, the 'holder' of a negotiable instrument is a '[p]erson entitled to enforce' the instrument. A 'holder' includes a person who is in possession of an instrument payable to bearer. *R.C.*

*1301.01(T)(1)(a).* When an instrument is endorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed [made payable to a particular person]." *Deutsche Bank Nat'l Trust Co. v. Najar*, No. 98502, 2013-Ohio-1657, 2013 WL 1791372 at *6 (Ohio Ct. App. April. 25, 2013) [**16] (internal quotations marks, citations, and footnotes omitted). In other words, the person in physical possession of a note endorsed in blank may enforce it. Here there appears to be no dispute that the Ryshes' note was endorsed in blank and that Deutsche Bank had physical possession of the note at the time it initiated foreclosure proceedings. Tellingly, the allegations in the complaint focus on shenanigans that arose during the transfer of the Ryshes' mortgage, but only generally assert that the note was improperly transferred. *See, e.g.*, Compl. ¶¶ 212-16, 217-22.

On these facts, the defendant did not make materially misleading statements. In similar cases, courts in this circuit have held that an FDCPA complaint will survive a motion to dismiss "where a plaintiff alleges that the plaintiff in an underlying debt collection says that it was the owner of a debt, all the while knowing that [it] did not have the means of proving that debt." *Turner v. Lerner, Sampson & Rothfuss, 776 F. Supp. 2d 498, 506 (N.D. Ohio 2011)* (internal quotation marks omitted). Conversely, an FDCPA claim should be dismissed if the plaintiff in the underlying debt collection action could in fact prove that it [**17] owed the debt. Based on its possession of the Ryshes' note, Deutsche Bank appears to have been able to prove debt ownership.

[*467] The Ryshes could not have been misled by anything the defendants said or did in this case. In *Wallace*, this court held that an FDCPA claim could proceed when a misstatement could mislead or confuse a consumer. *683 F.3d at 327.* The plaintiff in that case alleged that a statement misrepresenting which party held her note "caused her confusion and delay in trying to contact the proper party concerning payment of her loan and resolution of her problem." *Id.* No similar allegations appear in this complaint. *Wallace* went on to explain that whether a lender has "standing to bring a foreclosure action" is not "dispositive of whether a statement was materially misleading." *Id. at 327 n.2.* But here, the Ryshes contend that defendants' statements were misleading solely because those statements implied that Deutsche Bank had standing when it did not. The complaint says:

Case 2:15-cv-12838-DML-DRG   ECF No. 113   filed 01/23/17   PageID.3385   Page 27 of 28

Page 7

562 Fed. Appx. 460, *467; 2014 U.S. App. LEXIS 7022, **17;
2014 FED App. 0276N (6th Cir.)

Defendants' communications were deceptive . . . as they misrepresented who held and/or owned plaintiffs' notes and mortgages at the time the underlying foreclosure actions were filed, thus concealing the fact [**18] that their clients lacked the legal capacity to bring the suits. Indeed, the plaintiffs in the underlying foreclosure actions (i.e., Defendants' clients) stated that they were the owners, of holders of, and/or entitled to enforce the Plaintiffs' debts, all the while knowing that they did not have the means of proving their ownership, holder status, or entitlement to enforce the debt. In fact, Defendants knowingly created and executed false and misleading assignments of the notes to their clients in furtherance of this scheme.

Compl. ¶ 270. As the *Wallace* court explained, a lender could have standing to foreclose but nevertheless make a misleading statement in the course of trying to collect a debt. But here, where the only misleading aspect of a communication or statement is that the statement implies that the lender has standing to foreclose when it did not, whether or not the lender does in fact have the right to foreclose appears to settle the matter.

For similar reasons, the plaintiffs claim under § 1692f claim fails. *Section 1692f* is a catchall provision that forbids a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Other courts [**19] have held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under *§§ 1692e* or *1692f*." *Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010).* In other words, if a 1692f claim is premised on a false or misleading representation, the misrepresentation must be material. *See Lembach v. Bierman, 528 F. App'x 297, 303-04 (4th Cir. 2013).* As discussed above, there appears to be no dispute that Deutsche Bank was in possession of the Ryshes' note and that note was endorsed in blank, and so any misrepresentation was not material. Therefore, summary judgment was proper with respect to the Ryshes' FDCPA claims.

The plaintiffs moreover cannot bring an OCSPA

claim because the defendants were not suppliers engaged in consumer transactions. The OCSPA forbids a "supplier" from committing an "unfair or deceptive act or practice in connection with a consumer transaction." *O.R.C. § 1345.02.* Supplier is in turn defined as a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." *Id. § 1345.01(C).* Consumer transaction "means a sale, [**20] lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are [*468] primarily personal, family, or household." *Id. § 1345.01(A).*

In *Anderson v. Barclay's Capital Real Estate, Inc., 136 Ohio St. 3d 31, 2013 Ohio 933, 989 N.E.2d 997 (Ohio 2013),* the Ohio Supreme Court held that a mortgage servicer is not a supplier involved in consumer transactions under the OCSPA. The court explained that mortgage servicers do not engage in consumer transactions because they contract with financial institutions to provide those institutions services rather than to "transfer a service to the borrower." *Id. at 1001.* "[A] mortgage servicer neither sells nor gives the borrower the services it provides to the owner of the mortgage and note." *Id.* Furthermore, mortgage servicers are not suppliers because they do not "cause a consumer transaction to happen or . . . seek to enter into a consumer transaction." *Id. at 1003.*

Although *Anderson* does not directly control this case because Lender Processing and its subsidiaries are not mortgage servicers, the reasoning in *Anderson* applies by analogy to companies like Lender Processing. When a homeowner defaults on [**21] a mortgage, a mortgage servicer or lender can hire Lender Processing to manage the foreclosure process. The *Anderson* court's opinion limited its discussion to traditional mortgage servicers (i.e., businesses that collect monthly mortgage payments on behalf of lenders), and so the opinion does not directly address companies like Lender Processing (i.e., vendors that help lenders manage the foreclosure process). But *Anderson* teaches that the plain language of the OSCPA should be taken seriously: companies not in the business of "effecting or soliciting consumer transactions" are not suppliers engaging in consumer transactions. Like a traditional mortgage servicer, Lender Processing falls into a category of businesses that do not seek to provide consumers with services. Rather, both mortgage servicers and companies like Lender Processing offer their services

562 Fed. Appx. 460, *468; 2014 U.S. App. LEXIS 7022, **21;
2014 FED App. 0276N (6th Cir.)

to lenders. As is the case when a mortgage servicer collects a monthly mortgage payment on behalf of a financial institution, Lender Processing helps initiate and manage foreclosure proceedings on behalf of a financial institution. In fact, mortgage servicers offer at least some marginal service to consumers because they collect money [**22] from those consumers on behalf of a lender. Consumers would only interact with Lender Processing because its lender-client had hired the company to help initiate and manage a foreclosure. Managing a process that ends with a consumer losing her home could scarcely be considered a "service" for the consumer.

The plaintiffs do cite pre-*Anderson* decisions that indicated that companies involved in the collection of consumer debts are suppliers. *See, e.g., Celebrezze v. United Research, Inc., 19 Ohio App. 3d 49, 19 Ohio B. 131, 482 N.E.2d 1260 (Ohio Ct. App. 1984)*. Traditional mortgage servicing, which involves the collection of monthly payments, is also a type of debt collection. Nevertheless, the debt-collection cases cited by the plaintiffs did not play a role in the *Anderson* court's

reasoning, and a dissent criticized the court for failing to consider those cases. *See Anderson, 989 N.E.2d at 1005* (O'Neill, J, dissenting). If a mortgage servicer's involvement in debt collection was not relevant in *Anderson*, there is no reason to believe that the Ohio Supreme Court would treat a company like Lender Processing any differently. This reasoning applies not just to Lender Processing, but also to its subsidiaries and the defendant [**23] law firms. In *Glazer v. Chase Home Fin. L.L.C., No. 99875, 2013-Ohio-5584, 2013 WL 7869273, at *11 (Ohio Ct. App. Dec. 19, 2013)*, an Ohio court held that an OCSPA claim fails against a defendant law firm when that law firm acted solely as the [*469] agent of a company not involved in a consumer transaction. Because the defendants were not suppliers engaged in consumer transactions, plaintiffs' OCSPA claim fails.

We need not reach the other bases relied upon by the district court for denying relief. For the foregoing reasons, we AFFIRM the judgment of the district court.