IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

BRIAN J. MARTIN, et al.,

v.

Case No. 2:15-cv-12838

Hon. David M. Lawson

TROTT LAW P.C., et al.,

Mag. Judge David R. Grand

Defendants.

---

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, OH  44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Charity A. Olson (P 68295)
OLSON LAW GROUP
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
colson@olsonlawpc.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Avenue, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

---

# PLAINTIFFS' SECOND CITATION OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DAVID TROTT'S SECOND MOTION TO DISMISS

Plaintiffs, through their counsel, respectfully submit as supplemental

authority in opposition to David Trott's argument (ECF Doc. # 89) that this Court

lacks Article III jurisdiction over Plaintiffs' Michigan Regulation of Collection

Practices Act ("RCPA") claims, the following decisions that have become available

since the filing of Plaintiffs' Response (ECF Doc. # 103, at 5-6), holding that

claims alleging violations of the parallel Fair Debt Collection Act ("FDCPA") are

sufficiently concrete to satisfy Article III standing requirements:

- *Biber v. Pioneer Credit Recovery, Inc.*, 2017 U.S. Dist. LEXIS 4890, at \*7-9 (E.D. Va. Jan. 11, 2017) ("Not surprisingly, in the wake of *Spokeo*, the overwhelming majority of courts have held that FDCPA claims similar to Biber's [15 U.S.C. § 1692e claims] are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact.") (citing cases) (Exh. A, attached);

- *Girdler v. Convergent Outsourcing, Inc.*, 2016 U.S. Dist. LEXIS 179834 at \*6-10 (D. Mass. Dec. 29, 2016) (quoting *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016), and citing cases) (Exh. B, attached);

- *Bautz v. ARS Nat'l Servs.*, 2016 U.S. Dist. LEXIS 178208 at \*2 (E.D.N.Y. Dec. 23, 2016) ("The Court now holds, consistent with Supreme Court and Second Circuit precedent, that adequately alleging a 'false, deceptive, or misleading representation' under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices.") (Exh. C, attached);

- *Carney v. Goldman*, 2016 U.S. Dist. LEXIS 177087 at \*14 (D.N.J. Dec. 22, 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful use of false, deceptive and misleading representations in connection with Defendant [law firm]'s attempts to collect a debt owed by Plaintiffs.") (citing cases) (Exh. D, attached);

- *Kaymark v. Udren Law Offices, P.C.,* 2016 U.S. Dist. LEXIS 171061 at \*14-17 (W.D. Pa. Dec. 12, 2016) (quoting Eleventh Circuit *Church* opinion and citing cases) (Exh. E, attached); and

- *Long v. Fenton & McGarvey Law Firm P.S.C.*, 2016 U.S. Dist. LEXIS 170421 at \*8 (S.D. Ind. Dec. 9, 2016) (citing cases) (Exh. F, attached).

Dated:        February 28, 2017

Respectfully submitted,

_____

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S. Main St., Suite 118
P. O. Box 7711
Ann Arbor, Michigan  48107
Phone:  (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

*/s/ Andrew J. McGuinness*

# EXHIBIT A



ATTILA BIBER et al., Plaintiffs, v. PIONEER CREDIT RECOVERY, INC., Defendant.

Case No. 1:16-cv-804

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

*2017 U.S. Dist. LEXIS 4890*

January 11, 2017, Decided
January 11, 2017, Filed

**COUNSEL:** [*1] For Attila Biber, Individually and on Behalf of all Others Similarly Situated, Plaintiff: Thomas Ray Breeden, LEAD ATTORNEY, Thomas R. Breeden PC, Manassas, VA.

For Pioneer Credit Recovery, Inc., Defendant: Deborah Jean Israel, LEAD ATTORNEY, Womble Carlyle Sandridge & Rice PLLC, Washington, DC; Alexander Paul Rothschild, Womble Carlyle Sandridge & Rice PLLC (DC), Washington, DC.

**JUDGES:** T. S. Ellis, III, United States District Judge.

**OPINION BY:** T. S. Ellis, III

**OPINION**

**MEMORANDUM OPINION**

This putative class action arises from defendant's issuance of a letter that allegedly violates the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. §§ 1692 et seq.* Plaintiff, Attila Biber, a Virginia resident who has defaulted on federal student loans, contends that defendant, Pioneer Credit Recovery, Inc. ("Pioneer"), a debt-collection corporation, violated the FDCPA by sending letters that mislead recipients into believing that their wages are about to be garnished if the recipients do not pay their debts. Pioneer has moved to dismiss the Second Amended Complaint ("SAC"), raising a facial challenge to Biber's Article III standing to bring an FDCPA claim[1] and contending that the SAC fails to state a claim upon which relief can be granted, pursuant to *Rules 12(b)(1)* and *12(b)(6), Fed. R. Civ. P.*

> 1   A facial challenge to a plaintiff's standing to bring a claim attacks a federal court's subject matter jurisdiction on the ground that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)* (quoting *Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).*

For the reasons [*2] that follow, the motions to dismiss are granted in part and denied in part.

**I.**[2]

> 2   The facts recited here are derived from the SAC. Because Pioneer has raised a "facial challenge" to subject matter jurisdiction, the familiar *Rule 12(b)(6)* standard applies to Biber's factual allegations. *See Kerns, 585 F.3d at 193* (on a *Rule 12(b)(1)* motion raising a facial challenge to subject matter jurisdiction, "the trial court must apply a standard patterned on *Rule*

2017 U.S. Dist. LEXIS 4890, *2

*12(b)(6)* and assume the truthfulness of the facts alleged" in the complaint). In this regard, the well-pled facts are taken as alleged in the complaint. *See Eastern Shore Mkts. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000).* The exhibits attached to the SAC are also properly considered. *See Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*; *Rule 10(c), Fed. R. Civ. P.*

The SAC alleges that on April 1, 2016, Pioneer sent a letter ("the Letter") to Biber and others, which was captioned in bold, capitalized letters, "Administrative Wage Garnishment Proceedings Notice." SAC ¶ 13 & Ex. A. Because the Letter, which was attached to the SAC as an exhibit, is the centerpiece and focus of Biber's SAC, it is appropriate to recite the following principal statements contained in the Letter:

o "This may be your last opportunity to make satisfactory payment arrangements on your student loan(s)";

o "If these arrangements are not made, we will begin or continue the process of verifying your employment for Administrative Wage Garnishment";

o "The United States Congress has enacted a law . . . that allows guarantors . . . to offset the wages of student loan defaulters without filing a lawsuit";

o "[A] guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment . . . [T]he amount deducted for any pay period may not exceed 15 percent of disposable pay";

o "This [statutory] provision [*3] overrides all applicable state law, and allows for the garnishment of student loan defaulter's wages";

o "Before an administrative order is issued, defaulters are given notice and an opportunity for a hearing as part of this federal wage offset program";

o "After the completion of this administrative offset process, your employer may be ordered to deduct 15% of your disposable income before you are paid. If your employer does not comply with this order, a lawsuit may be filed against your employer";

o "Because the use of this federal wage offset law could reduce your take-home pay substantially, we are providing you with the chance to establish a satisfactory payment arrangement so you can voluntarily satisfy your obligation on more reasonable terms. We are hoping we can reach a satisfactory agreement before we proceed with further action"; and

o "This is an attempt, by a debt collector, to collect a debt, and any information obtained will be used for that purpose."

o The letter further lists that the remaining principal owed totals § 41,893.53, the interest is $2,212.80, and the collect charge amounts to $9,706.95.

*Id.* Ex. A.

Biber, in the SAC, alleges that Pioneer violated the FDCPA's prohibition [*4] on a debt collector's "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt." *15 U.S.C. § 1692e.*[3] Specifically, the SAC alleges that Pioneer used false, deceptive, or misleading representations or means in the following ways:

o Pioneer "falsely represented] that it was going to perform an Administrative Wage Garnishment, without first providing the notices required by *20 U.S.C. § 1095a* and *34 C.F.R. §§ 34.1-30*";

o Pioneer "falsely implied that [the Letter] was the Notice of Proposed Garnishment required under" federal law;

o Pioneer "falsely represented [that] it had the authority to garnish wages at the

time of the letter, if payment arrangements were not made at that time";

o Pioneer "falsely represented the character, amount or legal status of [plaintiff's] debts";

o Pioneer "falsely represented and implied that the [Letter] was legal process";

o Pioneer "deprived [Biber] of statutory verification rights which [Biber] would otherwise have under *20 U.S.C. § 1095a* and *34 C.F.R. §§ 34.1-30* [such that] Plaintiff suffered an informational injury as a result of being deprived of information to which he was legally entitled"; and

o Pioneer "used unfair and unconscionable means to collect and attempt to collect from Plaintiff [*5] and the class members."

SAC ¶¶ 23, 36.

3  Notably, *§ 1692e* includes a non-exclusive list of examples of unlawful conduct. *See 15 U.S.C. §§ 1692e(1)-(16).*

Pioneer challenges the adequacy of the SAC on two grounds. First, Pioneer contends that dismissal is required pursuant to *Rule 12(b)(1), Fed. R. Civ. P.*, on the ground that Biber lacks standing to raise any of his FDCPA claims. Second, Pioneer asserts that the SAC must be dismissed pursuant to *Rule 12(b)(6), Fed. R. Civ. P.*, on the ground that the SAC lacks adequate factual allegations to support Biber's claims for relief. These motions have been fully briefed and argued, and are therefore ripe for disposition. Each motion is separately addressed.

**II**.

Analysis necessarily begins with the question of subject matter jurisdiction, for absent such jurisdiction there is no power to adjudicate any issues. In support of its *Rule 12(b)(1)* motion, Pioneer contends that the allegations in the SAC do not plausibly allege an "injury in fact," and thus Biber lacks Article III standing to bring

any of his FDCPA claims. For the reasons that follow, Pioneer's standing challenge succeeds in part and fails in part.

The legal standard for a facial challenge to subject matter jurisdiction is "patterned on *Rule 12(b)(6)*," such that "the truthfulness of the facts alleged" in the complaint must be assumed. *Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).* To establish standing, a plaintiff must "clearly [*6] . . . allege facts demonstrating" three elements: "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)* (citations omitted). Pioneer has focused its jurisdictional challenge on the first prong, contending that the SAC failed to allege an injury in fact.

As the Supreme Court reiterated in *Spokeo*, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, 136 S. Ct. at 1548* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). To be "concrete," the injury must "actually exist," though it need not be "tangible." *Id. at 1548-49* (quotation marks omitted). Importantly, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id. at 1549* (quotation marks and alterations omitted). But the Supreme Court in *Spokeo* cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically [*7] satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In this regard, in evaluating the Fair Credit Reporting Act's ("FCRA")[4] mandate that a reporting agency provide accurate information, the Supreme Court in *Spokeo* noted that a statutory violation will not always "cause harm or present any material risk of harm" sufficient to confer Article III standing. *Id. at 1550.* For example, in the Supreme Court's view, "[i]t is difficult to imagine how

2017 U.S. Dist. LEXIS 4890, *7

the dissemination of an incorrect zip code, without more, could work any concrete harm" in the FCRA context. *Id.* Yet, the Supreme Court in *Spokeo* observed that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and, in such circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

4  *15 U.S.C. § 1681 et seq.*

Not surprisingly, in the wake of *Spokeo*, the overwhelming [*8] majority of courts have held that FDCPA claims similar to Biber's are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact. The underlying logic in these opinions is (i) that Congress, in the FDCPA, created a right to accurate debt-related information and non-abusive collection practices, and (ii) that a debt collector's false, misleading, deceptive, or abusive conduct concretely harms a debtor by detrimentally affecting that debtor's decisions regarding his debt.[5] In other words, *§ 1692e* provides certain debtors a right to be free from false, deceptive, or misleading conduct or representations by debt collectors, precisely because such conduct or representations may cause harm or a material risk of harm. Thus, in many instances, violations of *§ 1692e* differ significantly from the innocuous, bare "procedural violations" described by the Supreme Court in *Spokeo*.[6] Applied here, the principles announced by the Supreme Court in *Spokeo*, and elucidated in the chorus of FDCPA cases decided following *Spokeo*, point persuasively to the conclusion that Biber has standing to raise most--but not all--of the FDCPA claims alleged in the SAC.

5  *See, e.g., Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016)* (a plaintiff alleging violations of *§ 1692g* and *§ 1692e(11)* "sufficiently alleged that she has sustained a concrete--*i.e.*, 'real'--injury because she did not receive the allegedly required disclosures" to which she was entitled pursuant to the FDCPA); *Bautz v. ARS Nat'l Servs., Inc.,     F. Supp. 3d   , 2016 U.S. Dist. LEXIS 178208, 2016 WL 7422301, at *12 (E.D.N.Y. Dec. 23, 2016)* ("[P]laintiff has pled a concrete interest for the purpose of Article III standing . . . because a material violation of FDCPA *Section 1692e* infringes plaintiff's substantive statutory right to be free from abusive

debt practices."); *Kaymark v. Udren Law Offices, P.C., No. 13-419, 2016 U.S. Dist. LEXIS 171061, 2016 WL 7187840, at *6-7 (W.D. Pa. Dec. 12, 2016)* (plaintiff had standing to allege *§ 1692e* claim because the complaint "alleged misrepresentation of the legal status and amount of [plaintiff's] debt itself" and the "alleged violation of [plaintiff's] right to truthful information and freedom of efforts to collect unauthorized debt constitute[d] a concrete injury"); *Long v. Fenton & McGarvey Law Firm P.S.C.,     F. Supp. 3d   , 2016 U.S. Dist. LEXIS 170421, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016)* (plaintiff had standing because "[p]laintiff allege[d] that she received deficient and misleading information regarding her debts, which is a harm defined and made cognizable by the FDCPA." (quotation marks omitted)); *Bowse v. Portfolio Recovery Assocs., LLC,     F. Supp. 3d   , 2016 U.S. Dist. LEXIS 151740, 2016 WL 6476545, at *3 (N.D. Ill. Nov. 2, 2016)* ("Because [plaintiff] has alleged a violation of *§ 1692e(8) of the FDCPA*, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, [plaintiff] has Article III standing to bring this suit."); *Hill v. Accounts Receivable Servs. LLC, No. 16-219 (DWF/BRT), 2016 U.S. Dist. LEXIS 150791, 2016 WL 6462119, at *4 (D. Minn. Oct. 31, 2016)* ("*[Section] 1692e* establishes a right to truthful information regarding the collection of a debt," the violation of which constituted "real harms and not merely procedural violations"), *appeal docketed*, No. 16-4356 (8th Cir. Dec. 2, 2016); *Hayes v. Convergent Healthcare Recoveries, Inc., No. 14-1467, 2016 U.S. Dist. LEXIS 139743, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016)* ("[A] violation of the right under *§ 1692e* to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Linehan v. Allianceone Receivables Mgmt., Inc., No. C15-1012, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016)* ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury." (collecting cases)); *Bernal v. NRA Grp., LLC,     F.R.D.   , 2016 U.S. Dist. LEXIS 116191,*

*2016 WL 4530321, at *4-5 (N.D. Ill. Aug. 30, 2016)* (alleged violations of *§§ 1692e & 1692f* constitute a concrete injury sufficient for Article III standing); *Sayles v. Advanced Recovery Sys., Inc., No. 3:14-cv-911, 2016 U.S. Dist. LEXIS 114718, 2016 WL 4522822, at *2-3 (S.D. Miss. Aug. 26, 2016)* [*9] (alleged violation of *§ 1692e(8)* represents a concrete injury); *Quinn v. Specialized Loan Serv'g, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967, at *3-5 (N.D. Ill. Aug. 11, 2016)* (alleged violation of *§§ 1692e(10)-(11)* is a concrete injury); *Irvine v. I.C. Sys., Inc., F. Supp. 3d. , 2016 U.S. Dist. LEXIS 99880, 2016 WL 4196812 at *3 (D. Colo. July 29, 2016)* ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices, . . . and a debt collector's violation of those rights may constitute a concrete and particularized injury." (citation omitted)); *id.* (plaintiff has standing where "plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt"); *see also Brown v. Transurban USA, Inc., 144 F. Supp. 3d 809, 827 (E.D. Va. 2015)* (pre-*Spokeo* decision holding that plaintiffs had standing to bring, *inter alia*, a *§ 1692e* claim because "[t]he 'injury in fact' suffered by Plaintiffs under the FDCPA is . . . being subjected to the allegedly 'unfair and abusive practices' of the Collection Defendants").

6  *See Spokeo, 136 S. Ct. at 1550* ("[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.").

Analysis thus turns to the SAC's individual FDCPA claims.

**A. False Representation that Pioneer Was Going to Perform an Administrative Wage Garnishment, *15 U.S.C. § 1692e et seq.***

The SAC alleges that Pioneer, by sending Biber the Letter, "falsely represent[ed] that [defendant] was going to perform an Administrative Wage Garnishment, without first providing the notices required by *20 U.S.C.*

*§ 1095a* and *34 C.F.R. §§ 34.1-30*."7 SAC ¶ 36. Biber has standing to assert this claim because the SAC alleges facts supporting a plausible inference (i) that Pioneer engaged false, misleading, or deceptive conduct by sending the Letter to Biber, (ii) that Biber was aware of the Letter, and (iii) that Biber could have been materially harmed by relying on the Letter in making debt-related decisions.8 These are concrete, particularized injuries sufficient to satisfy Article III's injury in fact requirement in the FDCPA context. Moreover, given that Pioneer sent the Letter and that the FDCPA provides for statutory damages, Biber's alleged injury is fairly traceable to Pioneer's conduct and could be redressed by a favorable court decision. *See Spokeo, 136 S. Ct. at 1547.*

7  Section *§ 1095a* provides, *inter alia*, that a debtor is entitled to the following rights before his wages may be garnished:

the [debtor] shall be provided written notice, sent by mail to the [*10] individual's last known address, a minimum of 30 days prior to the initiation of proceedings . . . informing such [debtor] of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the [debtor] under this section[.]

*20 U.S.C. § 1095a(a)(2)*; *cf. 34 C.F.R. §§ 34.1-30* (similar).

8  It is well-settled that a plaintiff need not allege that he relied on the Letter's false representations. *Neild v. Wolpoff & Abramson, LLP, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006)* ("[A] plaintiff asserting a claim under *§ 1692e* need not prove actual reliance on a false representation."). This is true even after the Supreme Court's decision in *Spokeo. See supra* note 5 and accompanying text.

Importantly, the SAC has alleged sufficient facts to support a plausible inference that Biber could have been harmed by a false, deceptive, or misleading representation in the Letter--namely, that Pioneer had

already instituted wage garnishment proceedings and that garnishment was imminent, when, in reality, Pioneer had not yet instituted such proceedings and thus had no authority to garnish wages. The following allegations plausibly support such an inference:

> o The Letters title is **ADMINISTRATIVE WAGE GARNISHMENT PROCEEDINGS NOTICE."** SAC Ex. A. This title could logically read as conveying that garnishment proceedings have already been commenced, and that the Letter is precisely what it purports to be: Pioneer's *notice* to Biber that such proceedings have begun.

> o The next [*11] two sentences of the Letter read: "This may be your last opportunity to make satisfactory payment arrangements on your student loan(s). If these arrangements are not made, we will begin *or continue* the process of verifying your employment for Administrative Wage Garnishment." *Id.* (emphasis added.) These statements could also logically be read as a representation that garnishment proceedings have already begun. For instance, the "or continue" language could mean that the garnishment proceedings themselves have already begun. And the statement that Pioneer will "verify[] [Biber's] employment for Administrative Wage Garnishment" could reasonably be read to mean that garnishment proceedings have *concluded*, and that the last step before Biber's wages are garnished is for Pioneer to identify Biber's workplace.

> o The Letter then states that "The United States Congress has enacted a law . . . that allows guarantors . . . to offset the wages of student loan defaulters without filing a lawsuit. . . . This provision overrides all applicable state law, and allows for the garnishment of student loan defaulter's wages." *Id.* These sentences could reasonably be read as explaining to Biber that the [*12] impending

garnishment is legal.

> o Furthermore, the Letter notes that "[b]efore an administrative order is issued, defaulters are given notice and an opportunity for a hearing as part of this federal wage offset program." *Id.* This sentence also could bolster Biber's claim that Pioneer falsely represented that Pioneer was about to garnish wages, because the Letter equates that Biber is entitled to notice before an *order* issues--as opposed to notice before *proceedings are initiated*. Thus, a reasonable reader could believe that garnishment proceedings had already commenced, and only a perfunctory order need issue before Biber's wages could legally be garnished. Moreover, it is reasonable to interpret this quoted sentence as claiming that the Letter itself is the required notice before a garnishment order issues. This is so for the obvious reason that the Letter's title is "Administrative Wage Garnishment Proceedings *Notice*." *Id.* (emphasis added).

> o The Letter further provides that "[a]fter the completion of this administrative offset process, your employer may be ordered to deduct 15% of your disposable income before you are paid." *Id.* This sentence, too, could reasonably be construed to mean that garnishment [*13] proceedings have already commenced, because the reference to the *completion* of an administrative offset process could reasonably be read to imply that the offset process has already begun.

Notably, nowhere does the Letter *dispel* the notion that garnishment proceedings have already commenced. Thus, it is plausible that the Letter, read in its entirety, caused a concrete, particularized harm to Biber--a false, deceptive, or misleading representation that could have materially impacted Biber's decision-making with respect to his debt payments.

Seeking to avoid this result, Pioneer contends (i) that the SAC fails to allege that Biber ever received or opened the letter, and (ii) that Biber has alleged a mere procedural violation that does not give rise to standing. The first argument is unpersuasive because the SAC, read as a whole, supports the plausible inference that Biber read and was aware of the letter. Biber has not only engaged counsel and brought this action, but he alleges in the SAC that Pioneer sent the Letter *to Biber.* SAC ¶ 13 ("Prior to initiating wage withholding . . . [Defendant] sends a letter to Plaintiff [which] is attached hereto as Exhibit A"). Moreover, the Letter itself [*14] is specifically addressed to Biber. *Id.* Ex. A.

Pioneer's second argument is also unconvincing, as Biber plausibly suffers a concrete, particularized harm to a legally protected interest when a debt collector's false, deceptive, or misleading representations could detrimentally affect Biber's decision-making with respect to his debt. Indeed, even cases cited by Pioneer stand for this very proposition. *See, e.g., Tourgeman v. Collins Financial Services, Inc.,    F. Supp. 3d   , 2016 U.S. Dist. LEXIS 97356, 2016 WL 3919633 (S.D. Cal. June 16, 2016), appeal docketed,* 16-56190 (9th Cir. Aug. 19, 2016). In *Tourgeman,* the plaintiff asserted two FDCPA claims: the first was based on the defendant's state court complaint that had misidentified the plaintiff's creditor, whereas the second FDCPA claim was based on a letter that defendant had sent after the *Tourgeman* litigation had commenced in federal court. *2016 U.S. Dist. LEXIS 97356, [WL] at *2-3.* In the *Tourgeman* court's view, the keys to establishing standing were (i) whether that plaintiff knew about the defendant's allegedly false statements, and (ii) whether the plaintiff could have been harmed by relying on those statements. *See id.* Given this, the *Tourgeman* court correctly concluded that plaintiff had standing to assert the first FDCPA claim, but lacked standing with respect to the second FDCPA claim.[9] This same [*15] logic elucidated in *Tourgeman* and elsewhere[10] obtains in the instant case, as the SAC plausibly alleges that Biber could have reasonably interpreted the Letter to misrepresent that Pioneer had already commenced garnishment proceedings and that garnishment could be imminent, which interpretation could have materially and adversely affected Biber's decisions regarding debt repayment.

[9]  With respect to the second FDCPA claim, the *Tourgeman* court concluded that the plaintiff there, unlike the plaintiff in the instant case,

lacked standing because that the *Tourgeman* plaintiff "did not receive the letter, and did not even become aware of it until litigation was underway, months after it was mailed, and he admittedly suffered neither pecuniary loss nor mental distress related to it." *2016 U.S. Dist. LEXIS 97356, 2016 WL 3919633 at *3.* Importantly, however, the *Tourgeman* court observed that had that plaintiff actually received the letter, the mere "potential risk" of detrimental reliance on the letter "could suffice to demonstrate Article III standing." *Id.*

[10]  *See supra* note 5 and accompanying text.

Thus, Pioneer's standing challenge must fail with respect to this FDCPA claim.

**B. False Implication that the Letter was a Notice of Proposed Garnishment Required by Federal Law,** *15 U.S.C. § 1692e et seq.*

Next, Biber contends that Pioneer "falsely implied that [the Letter] was the Notice of Proposed Garnishment required under *20 U.S.C. §1095a* and *34 C.F.R. §§34.1-30.*" SAC ¶ 36. This claim survives Pioneer's standing challenge for essentially the same reasons as those stated above. *See supra* Part II.A.

**C. False Representation that Pioneer had Authority to Garnish Wages at the Time of the Letter,** *15 U.S.C. § 1692e et seq.*

Biber further alleges that Pioneer "falsely represented [that Pioneer] had the authority to garnish wages *at the time of the letter,* if payment arranges were not made at that time in violation of *15 U.S.C. § 1692e, 1692e(4),*[11] *1692e(5)*[12] and *1692e(10).*"[13] SAC ¶ 36(A) (emphasis added). This [*16] claim also survives Pioneer's *Rule 12(b)(1)* motion, for substantially similar reasons to those stated above. *See supra* Part II.A. Indeed, the SAC plausibly alleges that Pioneer falsely, deceptively, or misleadingly represented to have authority, at the time it sent the Letter, to obtain an order of garnishment, when in fact Pioneer could not garnish wages without first providing Biber the requisite *§ 1095a* notice and commencing administrative proceedings.

[11]  This subsection provides that it is a "false, deceptive, or misleading representation" to imply "that nonpayment of any debt will result in the . . . garnishment . . . of any property or wages of any

person *unless* such action is lawful and the debt collector or creditor intends to take such action." *§ 1692e(4)* (emphasis added).

12   This provision prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." *§ 1692e(5)*.

13   This provision essentially repeats *§ 1692e*, stating that it is unlawful for a debt collector to employ "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *§ 1692e(10)*.

**D. False Representation of the Character, Amount or Legal Status of the Debts, *15 U.S.C. § 1692e et seq.***

The SAC alleges that Pioneer "falsely represented the character, amount, or legal status of the debts in violation of *15 U.S.C. § 1692e, 1692e(2)(A)*[14] and *§ 1692e(10)*." SAC ¶ 36(B). This claim also survives Pioneer's standing challenge because, as stated above, Biber has plausibly alleged that the Letter falsely, deceptively, or misleadingly represents that debt collection through garnishment was imminent, whereas, in reality, garnishment could not occur until after Pioneer had provided Biber the requisite notice of debtor rights and initiated garnishment proceedings.[15] Such an allegation is sufficient to establish standing under the FDCPA, as Pioneer's allegedly false, misleading, or deceptive statement regarding [*17] the legal status of Biber's debt constitutes a concrete and particularized harm to Biber. Accordingly, for essentially the same reasons described above, Biber has standing to assert this *§ 1692e(2)(A)* claim. *See supra* Part II.A.

14   *Section 1692e(2)(A)* prohibits false misrepresentations of "the character, amount, or legal status of any debt." *§ 1692e(2)(A)*.

15   *See, e.g., Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1102 (D. Ore. 2000) (granting summary judgment to plaintiff on *§ 1692e(2)(A)* claim where debt collector falsely represented that collector could garnish wages within five days).

**E. False Implication that the Letter was Legal Process, *15 U.S.C. § 1692e et seq.***

The SAC also alleges that Pioneer "falsely represented and implied that the [Letter] was legal process . . . in violation of *15 U.S.C. § 1692e, 1692e(10)* and *1692e(13)*."[16] SAC ¶ 36(C). This claim must be dismissed for the simple reason that the Letter does not purport to be legal process.

16   *Section 1692e(13)* prohibits any "false representation or implication that documents are legal process." *§ 1692e(13)*.

To begin with, the parties agree that the FDCPA does not define the term, "legal process." Yet, most cases where courts have sustained a potential *§ 1692e(13)* claim involved allegations--not present in the instant case--(i) that the debt collectors' correspondence was accompanied by actual service of process,[17] (ii) that the debt collectors held out the correspondence as if it were a summons or complaint,[18] or (iii) that the debt collectors' correspondence carried the official imprimatur of a court or government agency.[19] Nothing of the sort is alleged here.

17   *Wald v. Morris, Carlson, & Hoelscher, P.A., No. 09-CV-2286, 2010 U.S. Dist. LEXIS 121367, 2010 WL 4736829, at *4 (D. Minn. Nov.16, 2010)* (finding genuine issue as to whether debt collector gave false impression of legal process by sending summons and complaint by mail and not including the acknowledgment of service required by state law for service by mail to be effective); *N. Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1334 (M.D. Fla. 2009)* ("By including [a] Letter and Stipulation (which was printed using the case style) with [a] summons and . . . complaint served by the process server, the Letter and Stipulation were arguably given an 'official imprimatur' that they do not actually possess and [plaintiff] could have been misled as to his or her legal options."); *Pescatrice v. Robert J. Orovitz, P.A., No. 07-60653-CIV, 2007 U.S. Dist. LEXIS 77402, 2007 WL 3034929, at *1, *3 (S.D. Fla. Oct. 17, 2007)* (plaintiff stated a claim for simulation of legal process by alleging that a proposed "Stipulation for Entry of Final Judgment Execution Withheld" was served upon her along with complaint).

18   *See, e.g., Zimmerman v. Portfolio Recovery Assocs., LLC, 276 F.R.D. 174, 176-179 (S.D.N.Y. 2011)* (finding that plaintiff may have believed a lawsuit had been filed when the debt collector sent documents identical to those generated for

use in actual litigation, namely: (1) a summons purporting to require plaintiff to respond in a state court; (2) a complaint bearing a case caption and setting forth a cause of action; and (3) an affidavit); *Wiener v. Bloomfield, 901 F. Supp. 771, 776-77 (S.D.N.Y. 1995)* (noting that plaintiff "probably would assume that the imposing and formal-looking court documents [plaintiff received] were in fact legal process."); *Tolentino v. Friedman, 833 F. Supp. 697 (N.D. Ill. 1993)* (finding that an attorney's "Important Notice," which was mailed along with a summons and complaint, gave the false impression that the attorney was affiliated with the court and that the "Important Notice" was part of the legal process). 19 *See, e.g., N. Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1334 (M.D. Fla. 2009)* (noting that legal process involves the "official imprimatur" of a court); *In re. Murray, 552 B.R. 1, 7 (Bankr. D. Mass. 2016)* (dismissing *§ 1692e(13)* claim arising from a debt collector's letter because "[t]here is nothing about the letter that even remotely suggests it was issued by a court let alone an attempt by a court to induce [plaintiff] to comply with the demand for payment"); *Wiener, 901 F. Supp. at 776-77; Tolentino, 833 F. Supp. 697.*

Indeed, Biber lacks standing to bring his "false implication of [*18] legal process" claim because (i) there was no service of process accompanying the Letter, (ii) the Letter does not purport to bring Biber into court or an administrative hearing, and (iii) the Letter does not plausibly carry the official imprimatur of a court or administrative agency. Rather, the Letter is written on Pioneer's letterhead and plainly states that it is "an attempt, by a debt collector, to collect a debt." SAC Ex. A.

Accordingly, this claim must be dismissed for lack of standing.[20]

20 Biber concedes that the classic *§ 1692e(13)* violation is a defendant's attempt to dress up an ordinary collection letter in the trappings of a judicial summons or complaint. Yet Biber, seeking to avoid the conclusion reached here, argues that the Letter nevertheless purports to be "legal process," contending (i) that the letter falsely purports to be a *§ 1095a* notice form, (ii)

that a *§ 1095a* form itself constitutes legal process, and (iii) that, by extension, the Letter falsely represents that it is legal process. This argument is unpersuasive; the Letter simply does not and cannot constitute process. *See* C.J.S. Process *§ 1* ("A notice," such as a *§ 1095a* notice, "may properly be designated as a process where it is given by authority of law for the *purpose of acquiring jurisdiction* of the defendant or of *bringing him or her into court* to answer" (emphasis added)).

## F. Deprivation of Statutory Verification Rights.

In a section entitled "Factual Allegations," the SAC also alleges that Pioneer "deprived [plaintiff] of statutory verification rights which [plaintiff] would otherwise have" such that Biber "suffered an informational injury as a result of being deprived of information to which he was legally entitled[.]" SAC ¶ 23. In this regard, Biber contends that Pioneer "created a material risk of financial harm that Congress intended to prevent by enacting *20 U.S.C. §1095a*" because the Letter created the risk that Biber "might make payment decisions that he might not have made had he been apprised of all the rights [*19] described in the statutorily required form." *Id.* This "deprivation of statutory verification rights" claim must also fail for lack of standing. Put simply, Biber was not yet entitled to disclosure of debtors' rights under *20 U.S.C. § 1095a* and *34 C.F.R. § 34* when Biber received the Letter, and thus there was no injury in fact with respect to Biber's "deprivation of statutory verification rights" claim.

Crucially, *§ 1095a* and *34 C.F.R. § 34* contemplate that a debt collector will provide a student loan debtor 30-days' notice, including an explanation of certain debtor rights, before the debt collector may initiate garnishment proceedings.[21] These provisions, however, do not preclude a debt collector from communicating with a debtor before sending the 30-day notice; the rule is simply that, if the debt collector is going to initiate garnishment proceedings, the collector must send the debtor notice at least 30 days in advance.[22] In this respect, it is pellucid that Biber was not entitled to such *§ 1095a* or *§ 34* notice because the SAC concedes that Pioneer *did not* intend to initiate garnishment proceedings. In other words, the SAC alleges that the 30-day notice requirement had not yet been triggered. In this respect, the SAC alleges

o that Pioneer "falsely [*20] implied" that the Letter was the required 30-day notice, SAC ¶ 36;

o that Pioneer uses a separate form--i.e., *not* the Letter--when Pioneer sends its *actual* 30-day notice, *id.* ¶ 20 & Ex. B;

o that the "purpose and effect" of the Letter is "to *mislead* consumers into believing that administrative wage-garnishment is imminent," *id.* ¶ 22 (emphasis added); and

o that Pioneer, by sending the Letter, "falsely represented] that [Pioneer] was going to perform an Administrative Wage Garnishment." *Id.* ¶ 36.

These allegations belie Biber's "deprivation of statutory verification rights" claim, as the SAC effectively alleges that Biber was deprived of information to which he did not yet have a right.

21  *See 20 U.S.C. § 1095a(a)(2)* ("[T]he [debtor] shall be provided written notice, sent by mail to the [debtor]'s last known address, a minimum of 30 days prior to the initiation of [garnishment] proceedings[.]"); *34 C.F.R. § 34.4* (similar).

22  Of course, as explained above, *§ 1692e* independently regulates debt collection activities by preventing a debt collector from using "any false, deceptive, or misleading representation or means[.]" *15 U.S.C. § 1692e.*

Accordingly, Biber's "deprivation of statutory verification rights" claim fails for lack of standing.

## G. Unfair and Unconscionable Means to Collect, *15 U.S.C. § 1692f.*

Finally, the SAC alleges that Pioneer "used unfair and unconscionable means to collect and attempt to collect from Biber and the class members, in violation of *15 U.S.C. § 1692f.*" SAC ¶ 36(D). Although this claim survives Pioneer's standing challenge, *see supra* Part II.A, for the reasons state *infra* Part III.G, this claim must be dismissed pursuant to *Rule 12(b)(6), Fed. R. Civ. P.*

* * * *

Given that Biber [*21] has standing to assert several FDCPA claims in the SAC, analysis turns to Pioneer's *Rule 12(b)(6)* challenge.

## III.

The *Rule 12(b)(6)* standard is well-settled and may be succinctly stated: a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* To state a valid FDCPA claim, Biber must allege facts supporting the plausible inference that "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Penn v. Cumberland, 883 F. Supp. 2d 581, 586-87 (E.D. Va. 2012).* Pioneer's *Rule 12(b)(6)* motion challenges only the third prong.

As stated above, Biber's FDCPA claims invoke two statutory provisions: (i) *Section 1692e*, which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt," *15 U.S.C. § 1692e*; and (ii) *Section 1692f*, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt," *id. § 1692f.* In evaluating such claims, the Fourth Circuit applies the "least sophisticated consumer" standard. *See United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 138 (4th Cir. 1996); Fariasantos v. Rosenberg & Assocs., LLC, 2 F. Supp. 3d 813, 818 (E.D. Va. 2014).* This standard "protect[s] naïve customers," but it does not impose "liability for bizarre or idiosyncratic interpretations [*22] of collection notices[.]" *Nat'l Fin. Servs., 98 F.3d at 138.* Indeed, the "least sophisticated consumer" standard "preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care." *Id.* Thus, a collection notice "must be examined as a whole, not sentence-by-sentence, because the least sophisticated consumer standard does not go so far as to provide solace to the willfully blind or non-observant." *Vitullo v. Mancini, 684 F. Supp. 2d 747, 756 (E.D. Va. 2010)* (quotation marks omitted). Rather, "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Id.*

Under this standard, "a statement is false or misleading if 'it can be reasonably read to have two or more meanings, one of which is inaccurate.'" *Goodrow v. Friedman & MacFadyen, P.A., 788 F. Supp. 2d 464, 472 (E.D. Va. 2011)* (quoting *Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006)* (citation omitted)). In this regard, "[t]he test requires a court to consider a statement's 'capacity . . . to mislead,' such that 'evidence of actual deception is unnecessary.'" *Id.* (quoting *Nat'l Fin. Servs., 98 F.3d at 139*). Moreover, the alleged misrepresentation must be "material." *Lembach v. Bierman, 528 F. App'x 297, 303 (4th Cir. 2013)*. A material representation is one that could "affect a consumer's ability to make intelligent decisions with respect to the alleged debt." *Penn, 883 F. Supp. 2d 581, 589 (E.D. Va. 2012)*.

Given these standards, Pioneer's *Rule 12(b)(6)* motion must be granted in part and denied in part.

## A. False Representation that Pioneer Was [*23] Going to Perform an Administrative Wage Garnishment, *15 U.S.C. § 1692e et seq.*

For essentially the same reasons as those stated *supra* Part II.A, Biber's claim that Pioneer "falsely represent[ed] that [defendant] was going to perform an Administrative Wage Garnishment" states a claim upon which relief may be granted. *See* SAC ¶ 36. Read in its entirety through the "least sophisticated consumer" lens, the Letter plausibly constitutes a materially false, deceptive, or misleading representation that could "reasonably be read to have to or more meanings, one of which is inaccurate." *Goodrow, 788 F. Supp. 2d at 472* (quoting *§ 1692e*); *see supra* Part II.A (detailing the Letter's contents). Indeed, Biber has alleged sufficient facts to nudge his claim--that the Letter misrepresented that wage garnishment proceedings were imminent--from possible to plausible. Moreover, the SAC plausibly alleges that misrepresentation could have "affect[ed] [the] consumer's ability to make intelligent decisions with respect to the alleged debt." *Penn, 883 F. Supp. 2d at 589*. Thus, Pioneer's *Rule 12(b)(6)* motion must be denied with respect to this claim.

## B. False Implication that the Letter was a Notice of Proposed Garnishment Required by Federal Law, *15 U.S.C. § 1692e et seq.*

Biber's claim that Pioneer "falsely implied that [the Letter] was the Notice of Proposed [*24] Garnishment

required under *20 U.S.C. §1095a* and *34 C.F.R. §§34.1-30*" also survives, for essentially the same reasons to those stated above. *See* SAC ¶ 36; *supra* Parts II.A & III.A.

## C. False Representation that Pioneer had Authority to Garnish Wages at the Time of the Letter, *15 U.S.C. § 1692e et seq.*

For substantially similar reasons, Biber's claim that Pioneer "falsely represented [that Pioneer] had the authority to garnish wages at the time of the letter, if payment arranges were not made at that time," also survives Pioneer's *Rule 12(b)(6)* motion. *See* SAC ¶ 36(A); *supra* Parts II.A & III.A.

## D. False Representation of the Character, Amount or Legal Status of the Debts, *15 U.S.C. § 1692e et seq.*

Next, the SAC states a plausible claim that Pioneer "falsely represented the character, amount, or legal status of the debts[.]" SAC ¶ 36(B); *see also 15 U.S.C. § 1692e(2)(A)*. In this respect, the SAC alleges sufficient facts to support a plausible claim that Pioneer falsely represented the debt's "legal status." *15 U.S.C. § 1692e(2)(A)*. Indeed, as noted *supra* Part II.D, the SAC has stated a plausible claim that the Letter falsely represents that garnishment was imminent, which is sufficient to state a claim under the FDCPA. Accordingly, for essentially the same reasons described above, Biber's *§ 1692e(2)(A)* claim survives Pioneer's *Rule 12(b)(6)* challenge. *See supra* Parts [*25] II.A & II.D.

## E. False Implication that the Letter was Legal Process, *15 U.S.C. § 1692e et seq.*

As stated above, Biber lacks standing to raise his "legal process" claim, and thus there is no subject matter jurisdiction to adjudicate Pioneer's *Rule 12(b)(6)* motion. *See supra* Part II.E; *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013)* ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). This claim must therefore be dismissed pursuant to *Rule 12(b)(1), Fed. R. Civ. P.*

## F. Deprivation of Statutory Verification Rights.

Similarly, because Biber lacks standing to raise his "deprivation of statutory verification rights" claim, that

claim must be dismissed pursuant to *Rule 12(b)(1). See supra* Part II.F; *OpenBand, 713 F.3d at 185*.

**G. Unfair and Unconscionable Means to Collect, *15 U.S.C. § 1692f***

Finally, the SAC includes a conclusory allegation that Pioneer "used unfair and unconscionable means to collect and attempt to collect from Biber and the class members, in violation of *15 U.S.C. § 1692f*." SAC ¶ 36(D). This claim fails to pass muster under *Rule 12(b)(6)*, as it is axiomatic that a *§ 1692f* cause of action may not be based on the "same alleged misconduct that undergirds [a*] § 1692e* claim." *Lembach, 528 F. App'x at 304*. Thus, courts routinely dismiss *§ 1692f* claims where the plaintiff "does not allege any conduct in [a *§ 1692f* claim] separate from the conduct that forms the basis of the *§ 1692e* claims." *Penn, 883 F. Supp. 2d at 594*. Importantly, [*26] the SAC does not allege any facts unique to his *§ 1692f* claim. Put differently, Biber does not identify which of Pioneer's actions were "unfair and unconscionable," in violation of *§ 1692f*, as opposed to "false, deceptive, or misleading," in violation of *§ 1692e*. Accordingly, pursuant to *Rule 12(b)(6)*, Biber's *§ 1692f* claim must be dismissed.

**IV**.

In sum, Pioneer's *Rule 12(b)(1)* and *12(b)(6)* motions to dismiss must be granted in part and denied in part.

Specifically, Pioneer's motion to dismiss pursuant to

*Rule 12(b)(1)* must be granted with respect to the following claims:

    o False Implication that the Letter was Legal Process, *15 U.S.C. § 1692e et seq.*; and

    o Deprivation of Statutory Verification Rights.

The motion to dismiss pursuant to *Rule 12(b)(6)* must be granted with respect to the following claim:

    o Unfair and Unconscionable Means to Collect, *15. U.S.C. § 1692f*.

Both the *Rule 12(b)(1)* and the *Rule 12(b)(6)* motions must be denied in all other respects.

An appropriate Order will issue.

Alexandria, Virginia
January 11, 2017

/s/ T. S. Ellis, III

T. S. Ellis, III

United States District Judge

# EXHIBIT B



**FAITH GIRDLER, Plaintiff, v. CONVERGENT OUTSOURCING, INC., Defendant.**

**Civil Action No. 15-cv-13359-DJC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*2016 U.S. Dist. LEXIS 179834*

**December 29, 2016, Decided**
**December 29, 2016, Filed**

**COUNSEL:** [*1] For Faith Girdler, Plaintiff: Craig Thor Kimmel, LEAD ATTORNEY, Kimmel & Silverman, Ambler, PA; Joseph C. Hoeffel, LEAD ATTORNEY, PRO HAC VICE, Kimmel & Silverman, P.C., Ambler, PA; Angela K. Troccoli, Kimmel & Silverman, PC, Danielson, CT.

For Convergent Outsourcing, Inc., Defendant: John J. O'Connor, LEAD ATTORNEY, Peabody & Arnold LLP, Boston, MA.

**JUDGES:** Denise J. Casper, United States District Judge.

**OPINION BY:** Denise J. Casper

**OPINION**

**MEMORANDUM AND ORDER**

**CASPER, J.**

**I. Introduction**

Plaintiff Faith Girdler ("Girdler") asserts claims against Defendant Convergent Outsourcing, Inc. ("Convergent") for violations of the *Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.* ("FDCPA"). D. 17. Girdler alleges that Convergent used false, deceptive or misleading representations or means by failing to identify itself as a debt collector attempting to collect her debt in violation of *§ 1692e & (11)* (Count I) and failed to provide her the required written notice of her debt in violation of *§ 1692g(a)* (Count II). Id. at 5-7. Convergent has moved for summary judgment on all counts, D. 19, and Girdler has opposed, D. 24. Convergent has also filed supplemental authority regarding Article III standing. D. 27, 31, 33, 34. For the reasons stated below, the motion for summary judgment [*2] is DENIED in part and ALLOWED in part.

**II. Standard of Review**

Summary judgment must be granted where there is no genuine dispute of any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. The movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)* (citations omitted); see *Celotex v. Catrett 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, *Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016)* (citation omitted), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in

her favor," *Borges ex rel. S.M.B.W. v. Serrano--Isern, 605 F.3d 1, 5 (1st Cir. 2010)* (citations omitted). The Court views the record in the light most favorable to the non-movant and draws reasonable inferences in their favor. *Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009)* (citation omitted).

## III. Discussion

### A. Standing as to Count I

Girdler's claims are based upon phone calls made by Convergent to Girdler and a written notice that Girdler asserts she did not receive. D. 17 at 3-4; D. 22-1, 22-2. Convergent argues that Girdler lacks standing where she failed to follow the dispute procedures prescribed by [*3] the FDCPA. D. 20 at 4. Convergent also argues that Girdler lacks standing in light of recent Supreme Court precedent because she has not suffered an injury in fact. D. 27 at 2.

While Convergent does not point to the section of the FDCPA that contains the applicable dispute procedures, the cases it relies upon, D. 20 at 4, discuss *§ 1692g*. Among other things, *§ 1692g* requires a debt collector, within five days after the initial communication--unless done so in that communication--to notify the consumer in writing that unless they dispute the validity of their debt thirty days after receipt of the notice "the debt will be assumed to be valid by the debt collector." See *§ 1692g(a)*. Failure to dispute the debt is not an admission of liability. *§ 1692g(c)*. In applying *§ 1692g*, however, courts have dismissed FDCPA suits based upon an allegation that "the debt sought to be collected is not valid" and where the consumer failed to follow the debt validation dispute procedure prior to filing suit. See, e.g., *Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002)* [*4] and cases cited. Although failure to dispute a debt permits a debt collector to assume that the debt is valid, such failure does not necessarily bar a plaintiff from bringing suit under the FDCPA. See *Hudson v. Babilonia, No. 14-cv-01646-MPS, 2016 U.S. Dist. LEXIS 77016, 2016 WL 3264150, at *22 (D. Conn. June 14, 2016)* (concluding that failure to contest a debt pursuant to *§ 1692g(b)* does not bar a debtor from bringing FDCPA claims and denying summary judgment in debt collector's favor). Here, Girdler is not asserting claims regarding the debt itself, but rather the practices Convergent used in attempting to collect the debt. See *§ 1692e*. Accordingly, Girdler's failure to dispute the debt does not otherwise bar

her claims. See *Hudson, 2016 U.S. Dist. LEXIS 77016, 2016 WL 3264150, at *22.*

Convergent also argues that Girdler lacks standing based upon the Supreme Court's recent decision in *Spokeo, Inc. v. Robins,    U.S.    , 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)* because she has not suffered a concrete harm to establish injury in fact, D. 27 at 2-4--"the [f]irst and foremost of standing's three elements," *Spokeo, 136 S. Ct. at 1547* (alteration in original) (internal quotation marks and citation omitted). Because the Court dismisses Count II on other grounds, as discussed below, it will only address injury in fact as to Count I for violations of *§ 1692e.*

"To establish injury in fact, a plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id. at 1548* (citation omitted). In Spokeo, an online people search engine posted allegedly false information regarding an individual in violation [*5] of certain provisions of the *Fair Credit Reporting Act* "concerning the creation and use of consumer reports." See *id. at 1544-45*. The Ninth Circuit reversed the district court's dismissal for lack of standing and the Supreme Court vacated and remanded for further development where the Ninth Circuit addressed the "particularization" but not the "concreteness" requirement to determine injury in fact. See *id. at 1544, 1550*. As discussed in Spokeo, "[t]o be 'concrete,' an injury 'must actually exist,' that is, it must be 'real, and not abstract.'" *Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)* (internal quotation mark omitted) (quoting *Spokeo, 136 S. Ct. at 1548*). The Second Circuit, in concluding that plaintiff had standing to bring certain claims for violations of the Truth in Lending Act for failure to disclose particular consumer rights, summarized the holding in Spokeo: "we understand Spokeo, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." See *id. at 190* (quoting *Spokeo, 136 S. Ct. at 1549*). "But even where Congress has accorded procedural rights to protect a concrete interest, [*6] a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." Id. (citing *Spokeo, 136 S. Ct. at 1549*).

2016 U.S. Dist. LEXIS 179834, *6

Based upon the record before the Court, Girdler has met her burden as to Count I "to proffer evidence sufficient to manifest" a concrete and particularized injury. See *id.* at 192 (citing *Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).* According to the FDCPA, a debt collector must disclose in the initial communication with the consumer that it is a debt collector "attempting to collect a debt and that any information obtained will be used for that purpose." See *Kagan v. Selene Fin. L.P., No. 15-cv-5936-KMK, 2016 U.S. Dist. LEXIS 134482, 2016 WL 5660255, at *7 & n.7 (S.D.N.Y. Sept. 28, 2016)* (quoting *§ 1692e(11)).* Debt collectors must also disclose in all subsequent communications with the consumer that the communication is from a debt collector. See id. This disclosure requirement is contingent upon the debt collector affirmatively identifying the debtor as the one being contacted. See *§§ 1692b(2), 1692c(b).* Here, a reasonable jury could find that, based upon the uncontested transcripts of the applicable telephone calls, D. 22-1 at 2-3, Convergent used "false, deceptive, or misleading representation[s] or means" in failing to disclose to Girdler that it was a debt collector [*7] attempting to collect a debt and that the information obtained would be used for that purpose, see *§ 1692e.* A jury could find that Convergent first communicated with Girdler by phone on June 23, 2015 and confirmed that they had indeed contacted Girdler, but did not disclose that it was a debt collector attempting to collect a debt or for what purpose any information obtained during the call would be used. See D. 22-1 at 2. Likewise, a jury could find that during Convergent's June 25, 2015 phone call, it failed to disclose that it was a debt collector and used improper representations or means in describing the call as a "courtesy call" prior to attempting to confirm Girdler's address. See id. at 3.

Convergent's purported conduct thus presents a risk of harm to Girdler's concrete interest established by the FDCPA to be free of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *§ 1692e.* That is, such a violation harms Girdler's interest to be informed of the identity of the debt collector and the purpose of the call so as to allow her to make fair decisions regarding how to respond. See *Horowitz v. GC Servs. Ltd. P'ship, No. 14-cv-2512-MMA-RBB, 2016 U.S. Dist. LEXIS 172359, 2016 WL 7188238, at *7 (S.D. Cal. Dec. 12, 2016)* (citations omitted). [*8] As reasoned by the Eleventh Circuit, "through the FDCPA, Congress has created a new right--the right to receive the required disclosures in communications governed by the FDCPA--and a new injury--not receiving such disclosures." *Church v. Accretive Health, Inc., 654 F. App'x 990, 994 (11th Cir. 2016)* (per curiam).

In *Church,* the Eleventh Circuit, in affirming the district court's ruling on summary judgment, concluded that where a debt collector's written communication failed to include the disclosures required by *§§ 1692e(11)* and *1692g(a),* Church established standing as she had suffered "a concrete--*i.e.*, 'real'--injury because she did not receive the allegedly required disclosures." Id. The Eleventh Circuit explained that:

> The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA.

*Id.* (citing *Spokeo, 136 S. Ct. at 1549* and *Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)* (concluding that plaintiff who lost no actual housing opportunity had standing to [*9] bring Fair Housing Act claims where she alleged that the defendant violated her legal right to truthful housing information)); see *Linehan v. Allianceone Receivables Mgmt., Inc., No. 15-cv-1012-JCC, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016)* (discussing how where "[t]he goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury" (citations omitted)).

This Court's conclusion that Girdler has established standing as to Count I is consistent with that of other courts which have addressed standing as to a *§ 1692e* claim. See, e.g., *Horowitz, 2016 U.S. Dist. LEXIS 172359, 2016 WL 7188238, at *7* (concluding at summary judgment that plaintiff had established standing for violation of *§ 1692e(11));* *Linehan, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *7-8* (denying

2016 U.S. Dist. LEXIS 179834, *9

motion to dismiss *§ 1692e(11)* for lack of standing and collecting cases); *Quinn v. Specialized Loan Servicing, LLC, No. 16-cv-2021, 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967, at *4-5 (N.D. Ill. August 11, 2016)* (same as to *§ 1692e(10) & (11)*).

**B. Merits of Count I**

As to the merits of Count I, based upon the undisputed phone call transcripts discussed above, D. 22-1 at 2-3, there is a triable question of fact as to whether Convergent identified Girdler as the debtor, triggering its *§ 1692e(11)* disclosure obligations, and acted improperly within the meaning of *§ 1692e* during the calls, D. 24 at 7-9. Likewise, because there is a question as [*10] to Convergent's identification of Girdler, there is a triable issue as to whether it was permissible for Convergent to identify itself as a debt collector or risk violation of *§ 1692c(b)*. D. 20 at 4-5; see *Edwards v. Niagara Credit Sols., Inc., 584 F.3d 1350, 1354 (11th Cir. 2009)* (addressing the "bona fide error" defense provided for in *§ 1692k(c)* in regards to *§§ 1692e* and *1692c*). As such, Convergent's motion is denied as to this Count.

The Court notes that if such violations are found, Girdler would be entitled to the sum of any actual damages she sustained as well as statutory damages, as the Court may allow, not to exceed $1,000. See *§ 1692k(a)(1), (a)(2)(A)*; *Goodman v. People's Bank, 209 F. App'x 111, 114 (3d Cir. 2006)* (citations omitted) (limiting statutory damages under the FDCPA to $1,000 per successful court action and not per violation); *Sweetland v. Stevens & James, Inc., 563 F. Supp. 2d 300, 303 (D. Me. 2008)* (discussing categories of actual damages). Additionally, if successful, Girdler would be entitled to reasonable attorneys' fees and costs, as determined by the Court, pursuant to *§ 1692k(a)(3)*.

**C. Merits of Count II**

As to Count II, Girdler alleges that Convergent failed to disclose in writing the information required by *§ 1692g(a)*. D. 17 ¶ 20. Pursuant to *§ 1692g(a)*, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice" containing information [*11] regarding the debt and the consumer's rights. While Girdler asserts that she never received the letter at issue and contests that Convergent

ever mailed it, D. 23 ¶¶ 4-6; D. 25 ¶¶ 4-6, she does not dispute that Convergent's "normal business procedures" would result in "caus[ing] its letter to be sent," D. 23 ¶ 4; D. 25 ¶ 4 (alteration in original). Notably, Girdler does not contest that Convergent's account records indicate that the letter was properly mailed on June 26, 2015 and do not indicate that the letter was returned. D. 23 ¶ 6; D. 25 ¶ 6. Where, as here, a debt collector presents records showing that it is its ordinary business practice to automatically send letters to debtors and presents electronic records indicating that the letter was properly sent, there is a presumption that the consumer received the letter. See, e.g., *Mahon v. Credit Bureau of Placer Cnty. Inc., 171 F.3d 1197, 1201-02 (9th Cir. 1999)*; *United States Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 952 n.2 (1st Cir. 1987)* (citations omitted).

Girdler does not present any evidence to rebut such a presumption. Rather, Girdler contends that any presumption that Convergent complied with *§ 1692g(a)* is inapplicable because Convergent used the wrong mailing address. D. 24 at 9-10. Girdler admits that the letter at issue addressed to her had the correct street address and zip code, but asserts that [*12] it erroneously lists the city as Boston as opposed to Jamaica Plain. Id.; D. 23 ¶ 5; D. 25 ¶ 5. Girdler admits, D. 23 ¶ 5; D. 25 ¶ 5, and the Court takes judicial notice, see *United States v. Bello, 194 F.3d 18, 23 (1st Cir.1999)* (discussing *Fed. R. Evid. 201(b)(2)*), that Jamaica Plain is one of the neighborhoods of Boston. Regardless of whether Girdler's mail normally lists Jamaica Plain as the city, D. 24 at 9-10, the correct name, street address and zip code is listed on the letter. There is thus no triable issue of material fact rebutting the presumption that the letter sent by Convergent was received by Girdler. Accordingly, Convergent is entitled to summary judgment on Count II.

**IV. Conclusion**

For the aforementioned reasons, Convergent's motion for summary judgment, D. 19, is DENIED in part and ALLOWED in part. Convergent's motion is DENIED as to Count I and ALLOWED as to Count II.

**So Ordered**.

/s/ Denise J. Casper

United States District Judge

# EXHIBIT C



**VIRGINIA T. BAUTZ, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiffs, VERSUS ARS NATIONAL SERVICES, INC., Defendant.**

**No 16-CV-768 (JFB) (SIL)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2016 U.S. Dist. LEXIS 178208*

**December 23, 2016, Decided
December 23, 2016, Filed**

**COUNSEL:** [*1] For Virginia T. Bautz, on behalf of herself and all others similarly situated, Plaintiff: Gus Michael Farinella, LEAD ATTORNEY, Law Offices of Gus Michael Farinella P.C., Floral Park, NY; Ryan L Gentile, Law Offices of Gus Michael Farinella, Floral Park, NY.

For ARS National Services, Inc., Defendant: Peter G. Siachos, LEAD ATTORNEY, Yevgeny Roymisher, Gordon & Rees LLP, Florham Park, NJ.

**JUDGES:** JOSEPH F. BIANCO, United States District Judge.

**OPINION BY:** JOSEPH F. BIANCO

**OPINION**

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge:

Plaintiff Virginia T. Bautz ("plaintiff" or "Bautz") brings this putative class action against ARS National Services, Inc. ("defendant" or "ARS") under the *Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 et seq.*

Defendant now moves to dismiss plaintiff's complaint, pursuant to *Federal Rule of Civil Procedure 12(b)(1)*, for lack of standing. Because the Court concludes that plaintiff has sufficiently alleged (1) a substantive violation of the FDCPA that demonstrates a concrete and particularized injury-in-fact; or, alternatively, (2) a procedural violation of the FDCPA that poses a "risk of real harm" to plaintiff's statutory interests, *Strubel v. Comenity Bank, 842 F.3d 181, 189 (2d Cir. 2016)* (citing *Spokeo Inc. v. Robins, U.S. , 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016))*, defendant's motion is denied.

Plaintiff alleges that defendant violated *Section 1692e of the FDCPA* by including a [*2] "false, deceptive, or misleading representation" in a letter to her concerning the collection of outstanding credit card debt, and the Court previously determined that plaintiff had plausibly stated a claim that the representation at issue was materially misleading to the least sophisticated consumer. The Court now holds, consistent with Supreme Court and Second Circuit precedent, that adequately alleging a "false, deceptive, or misleading representation" under *Section 1692e* that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices. The Supreme Court's

2016 U.S. Dist. LEXIS 178208, *2

decision in *Spokeo*, as well as the Second Circuit's decision in *Strubel*, do not suggest otherwise; rather, both cases addressed alleged *procedural* violations of statutes, which do not automatically confer standing absent a concrete harm that satisfies the injury-in-fact requirement of Article III. In contrast, here, the claim involves an alleged materially false and misleading statement that is a *substantive* violation of *Section 1692e*, and confers standing upon the plaintiff without [*3] running afoul of the guidance in *Spokeo* and *Strubel*. In any event, even assuming *arguendo* that plaintiff's alleged *Section 1692e* claim could somehow be considered to be a procedural, rather than substantive, violation of the FDCPA, the Court holds that plaintiff still has standing, under *Spokeo* and *Strubel*, because, as to the particular alleged violation in this case, she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying [statutory] interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.'" *Strubel, 842 F.3d at 189* (brackets omitted) (quoting *Spokeo, 136 S. Ct. at 1549*). The Court emphasizes that its analysis is limited to this claim under *Section 1692e of the FDCPA*, and it offers no view on whether other provisions of the FDCPA confer substantive rights.

I. BACKGROUND

A. The FDCPA

Because the instant motion and the Court's analysis address plaintiff's interests under the FDCPA, a brief discussion of the purpose and structure of the relevant statutory scheme is required.

Congress enacted the FDCPA because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the [*4] loss of jobs, and to invasions of individual privacy." *15 U.S.C. § 1692(a)*. The statute's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id. § 1692(e)*. To that end, the FDCPA prohibits, *inter alia*, "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any

debt collector for the collection of a debt," and, more generally, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id. §§ 1692e(2), (10)*. Such "conduct is a violation" of the FDCPA. *Id. § 1692e*.

As a remedy for statutory infractions, the FDCPA permits recovery in individual actions for damages equal to the plaintiff's actual loss and/or statutory damages of no more than $1,000, *id. §§ 1692k(a)(1)-(2)(A)*; and in class actions for "(i) such amount for each named plaintiff as could be recovered" in an individual action, "and (ii) such amount as the court may allow [*5] for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector," *id. § 1692k(a)(2)(B)*. In addition, a successful individual or class action may recover "the costs of the action, together with a reasonable attorney's fees as determined by the court." *Id. § 1692k(a)(3)*.

B. Facts

The following facts are taken from the complaint. The Court assumes them to be true for the purpose of deciding this motion and construes them in the light most favorable to the plaintiff as the non-moving party.

Prior to December 2015, plaintiff incurred a credit card debt owed to Department Stores National Bank ("DSNB"). (Compl., ECF No. 1, ¶ 13.) On or about December 31, 2015, defendant, a debt collector, mailed or caused to be mailed to plaintiff a letter (the "Letter") that attempted to collect that debt. (*Id.* ¶¶ 10-12, 18; *id.*, Ex. A.) The Letter stated that plaintiff had an outstanding debt of $849.35 and "offer[ed] to settle [her] account for the reduced amount of $467.15. That's a savings of $382.20." (*Id.* ¶¶ 22-23; *id.*, Ex. A.) In addition, it said that "Department Stores National Bank will report forgiveness of debt as required by IRS [*6] [i.e., Internal Revenue Service] regulations." (*Id.* ¶ 24; *id.*, Ex. A.)

Plaintiff alleges that the language in the Letter "is deceptive and misleading and violated the FDCPA," that defendant's "debt collection practice is largely automated and utilizes standardized form letters," and that defendant mailed or caused to be mailed similar correspondence "over the course of the past year to hundreds of New York consumers . . . ." (*Id.* ¶¶ 25, 27, 30.) Specifically, plaintiff asserts that the statement that "'Department

2016 U.S. Dist. LEXIS 178208, *6

Stores National Bank will report forgiveness of debt as required by IRS regulations' [the "IRS Language"] could reasonably be understood by the least sophisticated consumer to mean that IRS regulations require that Department Stores National bank report all forgiveness of debt." (*Id.* ¶ 38.) Plaintiff claims that the IRS Language "giv[es] erroneous and incomplete tax information because in actual fact and according to IRS regulations, Department Stores National Bank '**will not**' report to the IRS forgiveness of debt of less than $600." (*Id.* ¶ 39.) Because the Letter offered to settle plaintiff's debt for only $382.20, plaintiff alleges that the IRS Language was "an attempt by ARS to [*7] make consumers think that the IRS requires the reporting of all forgiveness of debt." (*Id.* ¶ 42.) Plaintiff further claims that "[s]uch a statement in a collection letter suggests to the least sophisticated consumer that failure to pay will get the consumer into trouble with the IRS," and that the "least sophisticated consumer would likely be deceived into [falsely] believing that there would be a tax consequence if she accepted Defendant's offer . . . ." (*Id.* ¶¶ 44-45.)

Accordingly, plaintiff asserts that defendant violated the FDCPA, *15 U.S.C. §§ 1692e, 1692e(2)*, and *1692e(10)*; and seeks statutory damages, attorney's fees, and costs on behalf of herself and a putative class pursuant to *15 U.S.C. § 1692k*. (*Id.* at 9.)

C. Procedural History

Plaintiff commenced this action on February 15, 2016. (ECF No. 1.) On June 2, 2016, defendant filed its first motion to dismiss the complaint for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. (ECF No. 13.) That motion was fully briefed on July 14, 2016 (ECF No. 15), and the Court held oral argument on August 24, 2016 (ECF No. 17.)

The Court denied the first motion to dismiss in an oral ruling on August 31, 2016. (ECF No. 19.) It held that plaintiff had sufficiently pled that the Letter contained a "false, deceptive, or misleading [*8] representation" under an "an objective test based on the understanding of the least sophisticated consumer." (Tr. of Aug. 31, 2016 Oral Ruling, ECF No. 21, at 3:5-6, 18-22 (citing *Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993)*, and *Vu v. Diversified Collection Servs., Inc., 293 F.R.D. 343, 359 (E.D.N.Y. 2013))*.) Specifically, the Court concluded that "the combination of the term 'will report', as well as the term 'as required'" in the IRS Language "reasonably communicates to the least

sophisticated consumer that any forgiveness of debt without any qualifications or conditions will be reported to the IRS because it is required by the IRS regulations." (*Id.* at 4:25-5:5.) In addition, the Court determined that plaintiff had adequately alleged that the IRS Language was "material," and therefore actionable under the FDCPA, because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option." (*Id.* at 6:21-7:1 (citing *Velez v. Enhanced Recovery Co., LLC, No. 16-CV-164, 2016 U.S. Dist. LEXIS 57832, 2016 WL 1730721, at *3 (E.D. Pa. May 2, 2016)*.) The Court observed that the "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (*Id.* at 7:16-19 (quoting [*9] *Kaff v. Nationwide Credit, Inc., No. 13-CV-5413 (SLT) (VVP), 2015 U.S. Dist. LEXIS 182048, 2015 WL 12660327, at *7 (E.D.N.Y. Mar. 31, 2015)*.)

Defendant subsequently filed the instant motion to dismiss for lack of subject matter jurisdiction on September 30, 2016. (ECF No. 22.) Plaintiff submitted her opposition on October 31, 2016 (ECF No. 23), and defendant filed its reply on November 14, 2016 (ECF No. 24). On December 5, 2016, defendant submitted a supplemental authority letter providing a copy of the Second Circuit's recent decision in *Strubel, 842 F.3d at 181*. (ECF No. 25.) The Court held argument on December 7, 2016 (ECF No. 26) and has carefully considered the parties' submissions.

II. Standard of Review

When a court reviews a motion to dismiss for lack of subject matter jurisdiction under *Rule 12(b)(1)*, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004)*. The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)*. "In resolving a motion to dismiss for lack of subject matter jurisdiction under *Rule 12(b)(1)*, a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue, *Makarova v. United States, 201 F.3d 110, 113 (2d Cir.*

2016 U.S. Dist. LEXIS 178208, *9

2000) (citing *Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)),* but a court "may not rely on conclusory or hearsay [*10] statements contained in the affidavits," *Attica Cent. Sch., 386 F.3d at 110.*

Federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is absent. *See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000).* Unlike personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte. Id.* "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.* ; *see also* Fed. R. Civ. P. 12(h)(3). Where, as here, the "case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" each of Article III's constitutional standing requirements. *Spokeo, 136 S. Ct. at 1547.*

III. DISCUSSION

Defendant argues that this Court lacks subject matter jurisdiction because plaintiff has failed to allege the injury-in-fact necessary to establish Article III standing. For the reasons set forth below, the Court disagrees.

A. Applicable Law

"The jurisdiction of federal courts is defined and limited by *Article III of the Constitution*[, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen, 392 U.S. 83, 94, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968).* "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009)* (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471-72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)).* "It is axiomatic that there are three Article III standing requirements: (1) the plaintiff must [*11] have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (brackets and citation omitted); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y., 356 F.3d 365, 373 (2d Cir. 2004)* ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citation omitted)).

Article III's injury-in-fact component requires that a plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003)* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).* Further, the alleged injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Id.* (citations omitted).

"Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." *Strubel, 842 F.3d at 188* (citing *Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)* (recognizing that injury required by Art. [*12] III may be based on "statutes creating legal rights"), and *Lujan, 504 U.S. at 578* (recognizing Congress's authority to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law")). However, even where Congress has codified a statutory right, a plaintiff must still allege that she has suffered a concrete and particularized injury connected to that interest. *Id.* ; *see also Spokeo, 136 S. Ct. at 1547-48.* In other words, the creation of a statutory interest does not vitiate Article III's standing requirements.

In *Spokeo,* the Supreme Court addressed whether the respondent had standing to assert a claim under the Fair Credit Reporting Act (the "FCRA"), *15 U.S.C. §§ 1681 et seq. 136 S. Ct. at 1544.* The respondent alleged that the petitioner had violated the FCRA by including false information about him in a consumer report. *136 S. Ct. at 1546.* The Court noted that, although a concrete injury need not be tangible to satisfy Article III,

Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury [*13] even in the context of a statutory violation.

*Id. at 1549*. Accordingly, "a bare procedural violation, divorced from any concrete harm, [would not] satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst., 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)* ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."), and *Lujan, 504 U.S. at 572*)).

Nevertheless, the Supreme Court recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* As examples, the Court cited two of its precedents concerning statutes that conferred informational rights of access: (1) *Federal Election Commission v. Akins, 524 U.S. 11, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998)*, which held that voters had standing to seek disclosure of information pursuant to the Federal Election Campaign Act, *id. at 20-25*; and (2) *Public Citizen v. United States Department of Justice, 491 U.S. 440, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989)*, which held that the failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue," *id. at 449*.

The Supreme Court ultimately concluded that the FCRA embodied Congress's intent to "curb the dissemination of false [*14] information by adopting procedures designed to decrease that risk," but that the respondent could not "satisfy the demands of Article III by alleging a bare procedural violation." *Id. at 1550*. The Court remanded to the Ninth Circuit for a determination as to "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement," and it cautioned that those violations may not constitute injury-in-fact because, for example, the misinformation at issue might turn out to be accurate or too insignificant to "cause harm or present any material risk of harm." *Id.* ("It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." (footnote omitted)).

The Second Circuit recently applied *Spokeo* in *Strubel* to a suit brought under the *Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.* There, the plaintiff sought statutory damages for an allegedly deficient credit card agreement, arguing that the defendant had failed to disclose that

> (1) cardholders wishing to stop payment on an automatic payment plan had to satisfy certain obligations; (2) [the defendant] was statutorily obliged not only to acknowledge [*15] billing error claims within 30 days of receipt but also to advise of any corrections made during that time; (3) certain identified rights pertained only to disputed credit card purchases for which full payment had not yet been made, and did not apply to cash advances or checks that accessed credit card accounts; and (4) consumers dissatisfied with a credit card purchase had to contact [the defendant] in writing or electronically.

*Strubel, 842 F.3d at 186-86*. The defendant relied on *Spokeo* to argue that plaintiff lacked standing to assert these claims because they were procedural in nature.

As a threshold matter, the Second Circuit held that it did "not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Id. at 189*. Instead, the Supreme Court made clear that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing," *id.*, and "where Congress conferred [a] procedural right to protect a plaintiff's concrete interests," the critical inquiry is whether "the procedural violation presents a 'risk of real harm' to that concrete interest," *id. at 190* (quoting *Spokeo, 136 S. Ct. at 1549*).

Under that framework, the Second [*16] Circuit concluded that the plaintiff had standing to assert two of her four TILA claims concerning "required notice that (1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full, and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically." *Id.* The Court found that

> [t]hese disclosure requirements do not operate in a vacuum . . . Rather, each serves to protect a consumer's concrete interest in "avoiding the uninformed use of credit," a core object of the TILA. . . . For that reason, a creditor's alleged violation

of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. Having alleged such procedural violations, Strubel was not required to allege "any *additional* harm" to demonstrate the concrete injury necessary for standing.

*Id. at 190-91* (brackets, citations, and footnote omitted). Moreover, the Second Circuit held, with respect to those claims, that the plaintiff sought

to vindicate interests particular to her--specifically, access to disclosures of her own obligations . . . The failure to provide such required disclosure [*17] of consumer obligations thus affects Strubel "in a personal and individual way," and her suit is not "a vehicle for the vindication of the value interests of concerned bystanders" or the public at large.

*Id. at 191* (citations omitted).

In contrast, the Court found that the plaintiff did not have standing as to her claims concerning notice of automatic payment plans and reported billing error. The Second Circuit determined that the defendant "did not offer an automatic payment plan at the time Strubel held the credit card at issue," and that the plaintiff thus could not "establish that [the defendant's] failure to make this disclosure created a 'material risk of harm'--or, indeed, any risk of harm at all--to Strubel's interest in avoiding the uninformed use of credit." *Id. at 191-92* (quoting *Spokeo, 136 S. Ct. at 1550*). With respect to the billing error claim, the Second Circuit found that "the bare procedural violation alleged by Strubel presents an insufficient risk of harm to satisfy the concrete injury requirement of standing" because the "plaintiff fail[ed] to show either (1) that the creditor's challenged notice caused her to alter her credit behavior from what it would have been upon proper notice, or (2) that, upon reported billing error, [*18] the creditor failed to honor its statutory response obligations to consumers." *Id. at 194* (footnote omitted). Moreover, the plaintiff "concede[d] that she never had reason to report any billing error in her credit card statements. Thus, she [did] not--and [could not]--claim concrete injury . . . ." *Id. at 193*.

Read together, *Spokeo* and *Strubel* re-affirm the long-standing principle that Congress can recognize new interests--either tangible or intangible--through legislation and confer private rights of action to protect those interests. However, identifying a statutory violation does not automatically establish injury-in-fact for purposes of Article III standing. Where a plaintiff sues to enforce a statutory right, the test for standing under *Spokeo* and *Strubel* is two-fold. *First*, a court must determine whether the purported infraction is procedural in nature. *Second*, if so, a court must determine whether that procedural violation presents a "material risk of harm" to the underlying interest(s) that Congress sought to protect by enacting the apposite statute. If a plaintiff satisfies this standard, then she need not allege "any additional harm"--pecuniary or otherwise--beyond the procedural violation itself.

B. Analysis [*19]

Defendant argues that plaintiff does not have standing to assert her FDCPA claims because she has "failed to allege a concrete and particularized injury-in-fact" connected to the IRS Language, which defendant characterizes as a "voluntary disclosure" that "merely inform[ed] Ms. Bautz that DSNB will comply with federal law and the Internal Revenue Service (IRS) regulations." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s Br."), ECF No. 22-1, at 1.) Defendant invokes *Spokeo*, and *Strubel* in its supplemental authority letter, to advance that argument, claiming that plaintiff's complaint asserts a "bare procedural violation" of the FDCPA. (Def.'s Br. at 5; Def.'s Letter of Dec. 5, 2016 ("Def.'s Suppl. Letter"), ECF No. 25, at 1.)

For the reasons stated below, that reliance is misplaced, and the Court concludes that plaintiff has alleged (1) a substantive violation of the FDCPA resulting in a concrete and particularized injury; or, alternatively, (2) a procedural violation of the FDCPA that poses a "material risk of harm" to plaintiff's statutory interests sufficient to satisfy Article III's injury-in-fact requirement.

1. Substantive Violation

a. Concrete [*20] Injury

As a threshold matter, the test articulated in *Spokeo* and *Strubel* and summarized *supra* concerns procedural

violations of statutory schemes. In such cases, a court must determine whether the purported infraction presents a "risk of real harm" to concrete statutory interests, *Strubel, 842 F.3d at 189* (quoting *Spokeo, 136 S. Ct. at 1549*), or instead implicates "a procedural right *in vacuo*," *id.* (quoting *Summers, 555 U.S. at 496*).

However, as noted, *Spokeo* did not disturb the Supreme Court's prior precedent recognizing that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *136 S. Ct. at 1549* (quoting *Lujan, 504 U.S. at 578*); *see also id. at 1553* (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. . . . A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." (citing *Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)* (recognizing standing for a violation of the Fair Housing Act), and *Tennessee Elec. Power Co. v. TVA, 306 U.S. 118, 137-38, 59 S. Ct. 366, 83 L. Ed. 543 (1939)* (recognizing that standing can exist where "the right invaded is a legal right,--one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers [*21] a privilege"))). The Court cited approvingly Justice Kennedy's concurrence in *Lujan*, which "explained that 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id. at 1549* (quoting *Lujan, 504 U.S. at 580* (Kennedy, J., concurring)). Moreover, the Court emphasized that, in determining whether a violation of a statutorily-protected interest constitutes a *de facto* injury, "both history and the judgment of Congress play important roles," and courts must therefore consider (1) whether the statutory violation bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and (2) Congress's judgment in establishing the statutory right. *Id. Strubel* similarly observed that "Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." *842 F.3d at 188* (citing *Warth, 422 U.S. at 500*).

Thus, in cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim without need to allege a "material risk of harm" because the infringement of that right constitutes, in and [*22] of itself, a concrete injury. *See, e.g., Church v. Accretive Health, Inc., 654 F. App'x 990, 995 & n.2 (11th Cir. 2016)* (per curiam); *Matera v. Google Inc., No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, 2016 WL 5339806, at *11-12 (N.D. Cal. Sept. 23, 2016)*; *Prindle v. Carrington Mortg. Servs., LLC, No. 3:13-CV-1349-J-34PDB, 2016 U.S. Dist. LEXIS 108386, 2016 WL 4369424, at *8 (M.D. Fla. Aug. 16, 2016)*. Put differently, there is a meaningful distinction between the direct violation of a specific statutory interest that Congress has recognized--for example, the right to truthful information in debt collection communications--and an ancillary procedural infraction that may or may not materially harm that interest. The former, if sufficiently alleged, establishes concrete injury for purposes of Article III, whereas the latter, under *Spokeo* and *Strubel*, requires a "real risk of harm" to the underlying right to ensure that the plaintiff does not seek relief for a "bare procedural violation" that is not constitutionally cognizable.

Accordingly, the Supreme Court found standing in a Fair Housing Act ("FHA") case where "'testers' . . . who, without an intent to rent or purchase a home or apartment, pose[d] as renters or purchasers for the purpose of collecting evidence of unlawful steering practices" that evidenced racial discrimination. *Havens, 455 U.S. at 373*. The Court emphasized that "congressional intention cannot be overlooked in determining whether testers [*23] have standing to sue" and found that *Section 804(d) of the FHA* "establishes an enforceable right to truthful information concerning the availability of housing." *Id. ; see also id. at 374 n.14* ("Congress' decision to confer a broad right of truthful information concerning housing availability was undoubtedly influenced by congressional awareness that the intentional provision of misinformation offered a means of maintaining segregated housing."). Thus, a "tester who has been the object of a misrepresentation made unlawful under *§ 804(d)* has suffered injury *in precisely the form* the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [FHA's] provisions." *Id. at 373-74* (emphasis added).

Moreover, the fact that a "tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, [did] not negate

the simple fact of injury within the meaning of *§ 804(d).*" *Id.* at 374. In other words, the Supreme Court did not require the testers to allege reliance on the discriminatory misinformation and consequential tangible harm, such as pecuniary damages: The mere act of providing misinformation was, in this context, sufficient to [*24] establish injury-in-fact. *See also Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 903-04 (2d Cir. 1993)* (plaintiffs had standing under the FHA to challenge discriminatory advertisements even though the defendants alleged, and the Second Circuit accepted as true *arguendo*, that plaintiffs were not in the market for housing when they saw those advertisements).

As with the FHA, Congress enacted the FDCPA to remedy a distinct problem: "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *15 U.S.C. § 1692(e).* To that end, in *Section 1692e* Congress specifically precluded the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id. § 1692e*, and to "accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices," *Benzemann v. Citibank N.A., 806 F.3d 98, 100 (2d Cir. 2015)* (citing *15 U.S.C. § 1692k*). Thus, through *Section 1692e of the FDCPA*, Congress established "an enforceable right to truthful information concerning" debt collection practices, *Havens, 455 U.S. at 373*, a decision that "was undoubtedly influenced by congressional awareness that the intentional provision of [*25] misinformation" related to such practices, *id. at 374 n.14*, "contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," *15 U.S.C. § 1692(a).*

The Second Circuit has "'consistently interpreted the statute with [these] congressional object[s] in mind,'" and "because the FDCPA is 'primarily a consumer protection statute,'" courts "must construe its terms 'in liberal fashion [to achieve] the underlying Congressional purpose.'" *Avila v. Riexinger & Assocs., LLC, 817 F.3d 72, 75 (2d Cir. 2016)* (citations omitted). Accordingly, prior to *Spokeo*, the Second Circuit held that "actual damages are not required for standing under the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003)* (finding that the fact "that plaintiff did not ever pay any attorneys' fees . . . [did] not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he [could] show that [defendant debt collector] *attempted* to collect money in violation of the FDCPA"). Other circuit courts adopted the same position because the FDCPA "is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." *Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998)* ("Indeed, the FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually [*26] exists."); *see also Baker v. G. C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982).* Citing this precept, the district court in *Kaff*--a decision this Court cited in its oral ruling denying defendant's first motion to dismiss--found standing to assert an *FDCPA Section 1692e* claim arising from a statement similar to the IRS Language because the plaintiff had a "right under the FDCPA to be free of abusive debt collection practices and that right was infringed when he received a collection letter which potentially increased the amount of debt collected by falsely misrepresenting the law." *2015 U.S. Dist. LEXIS 182048, 2015 WL 12660327, at *2 n.1.*

Here, the Court has already determined that plaintiff sufficiently alleged a material violation of the FDCPA based on the IRS Language because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option." (Tr. of Aug. 31, 2016 Oral Ruling at 6:21-7:1.) The Court also found that "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (*Id.* at 7:16-19). Thus, defendant is wrong to claim that plaintiff [*27] has not alleged a concrete injury because she failed to identify "any actual damages" stemming from the IRS Language, such as that "she paid the Debt [that plaintiff owed] or that the Letter influenced her decision to pay the Debt in any way." (Def.'s Br. at 8, 13; *see also id.* at 14 ("Ms. Bautz has identified no economic harm; no particularized damage to her; no concrete injury in the Complaint. She pleads that she did not respond to the Letter, she did not call ARS and she did not speak to anyone from ARS concerning alternative arrangements to settle the Debt if she cannot make the offered payments-as proposed to her in the Letter. In fact,

the Complaint fails to provide any idea at all as to what she may have done in response to the Letter or how she felt when she received it.").) Under *Miller*, making a false statement in connection with an attempt to collect a debt is sufficient harm for standing purposes. In other words, a plaintiff who receives such a misrepresentation "has suffered injury in precisely the form *[Section 1692e of the FDCPA]* was intended to guard against," *Havens, 455 U.S. at 373-74*, and adequately alleging a "false, deceptive, or misleading representation" that is materially misleading to the least sophisticated consumer [*28] thus satisfies the concrete injury component of Article III.[1]

> 1   To the extent that defendant argues that the IRS Language allegation is "frivolous" or immaterial (Def.'s Br. at 9), that argument is foreclosed by this Court's August 31, 2016 oral ruling denying defendant's 12(b)(6) motion to dismiss. *See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009)* ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" (citation omitted)).

Further, neither *Spokeo* nor *Strubel* abrogated this principle. Contrary to defendant's view that *Spokeo* "definitively holds that a bare statutory violation, 'divorced from any concrete harm,' is not enough to create standing" (Def.'s Br. at 14), the Supreme Court clearly identified "bare *procedural* violations, divorced from any concrete harm" as a species of alleged injury that would not satisfy Article III standing, *136 S. Ct. at 1549* (emphasis added). While the Court said that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," and that "Article III standing requires a concrete injury even in the context of a statutory violation," *id.*,[2] the Court recognized, as discussed above, that a statutory infraction may result in *de facto* injury-in-fact where historical practice and congressional judgment support finding a substantive right. This Court has already outlined Congress's rationale for enacting the FDCPA and granting a right to be free from abusive debt practices, and "[f]raudulent and negligent misrepresentation [*29] have been recognized as legally cognizable harms under the common law since at least the publication of the First Restatement of the

Law of Torts." *Prindle, 2016 U.S. Dist. LEXIS 108386, 2016 WL 4369424, at *8 n.9*; *see also, e.g.*, *Neal v. Clark, 95 U.S. 704, 709, 24 L. Ed. 586 (1877)* (discussing the meaning of common-law fraud).

> 2   *Spokeo*'s citation to *Summers* and *Lujan* for these propositions is instructive. In *Summers*, the plaintiffs asserted they had "suffered procedural injury" because they were "denied the ability to file comments on some Forest Service actions and w[ould] continue to be so denied." *555 U.S. at 496*. However, the Supreme Court found that "a procedural right *in vacuo* . . . is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Id.* (citation omitted). Likewise, in *Lujan*, the plaintiffs argued that they had a "procedural right" under the Endangered Species Act to "file suit in federal court to challenge [an agency's] failure to" consult with the Secretary of the Interior as to the impact of an agency's actions on endangered wildlife. *504 U.S. at 572* (brackets omitted). The Supreme Court held that the plaintiffs lacked standing because this was "not a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs," but rather a suit "raising only a generally available grievance about government--claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . ." *Id. at 572-73*.

> As discussed *supra* and *infra*, unlike *Summers* and *Lujan*, plaintiff has asserted a violation of a substantive statutory right that resulted in harm to her, and not the public generally. Accordingly, she has pled a concrete and particular injury that supports Article III standing.

Moreover, the FDCPA provision at issue here--*15 U.S.C. § 1692e*--differs from the FCRA section discussed in *Spokeo*, which "imposes a host of [procedural] requirements concerning the creation and use of consumer reports" that consumer reporting agencies must follow, *136 S. Ct. at 1545*, and the TILA provisions and regulations at issue in *Strubel*, which impose certain

mandatory disclosure requirements on creditors, *842 F.3d at 186-87*. Instead of requiring that debt collectors follow certain technical specifications, *Section 1692e of the FDCPA*, like *Section 804(d) of the FHA*, created a "new private right[] and authorize[d] private plaintiffs to sue based simply on the violation of [that] private right[]," *Spokeo, 136 S. Ct. at 1553* (Thomas, J., concurring)--namely, the right to be free from "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *15 U.S.C. § 1692e*.

Accordingly, the majority of post *Spokeo* decisions that have analyzed standing under the FDCPA have found that alleging a "use [of] any false, [*30] deceptive, or misleading representation or means in connection with the collection of any debt," *15 U.S.C. § 1692e*, establishes a concrete injury. In *Church, 654 F. App'x at 990*, the Eleventh Circuit--which is the only federal appellate court to have addressed this issue as of this ruling--analogized the FDCPA to the FHA claim raised in *Havens*. The court found that "[j]ust as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information [in *Havens*], so too has [the plaintiff] alleged injury to her statutorily-created right to information pursuant to the FDCPA" by virtue of pleading that she received a debt collection letter that did not contain statutorily-mandated disclosures. *Id. at 994*. Notwithstanding that the plaintiff "did not allege that she suffered actual damages . . . [but] simply allege[d] that upon receiving the letter in question, she 'was very angry' and 'cried a lot,'" the Eleventh Circuit held that the plaintiff "sufficiently alleged that she has sustained a concrete--*i.e.*, 'real'--injury because she did not receive the allegedly required disclosures." *Id. at 991, 995*. The court distinguished *Spokeo*, finding it "inapplicable to the allegations at hand, because [the plaintiff] has not alleged a procedural violation. [*31] Rather, Congress provided [the plaintiff] with a substantive right to receive certain disclosures and [the plaintiff] has alleged that [the defendant] violated that substantive right." *Id. at 995 n.2*.

Several district courts have taken the same approach, finding that the "FDCPA unambiguously grants recipients of debt-collection communications . . . a right to be free from abusive collection practices," and that a plausible allegation that the defendant violated that right through use of a false, deceptive, or misleading debt collection communication establishes concrete harm. *Prindle, 2016 U.S. Dist. LEXIS 108386, 2016 WL*

*4369424, at *11*; *see also, e.g.*, *Kaymark v. Udren Law Offices, P.C.*, No. CV 13-419, 2016 U.S. Dist. LEXIS 171061, 2016 WL 7187840, at *7 (W.D. Pa. Dec. 12, 2016)* ("Under these circumstances, [the defendant's] alleged violation of [the plaintiff's] right to truthful information and freedom from efforts to collect unauthorized debt constitutes a concrete injury and satisfies Article III's injury-in-fact requirement." (footnote omitted)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, No. 115CV01924LJMDKL, 2016 U.S. Dist. LEXIS 170421, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016)*; *Linehan v. AllianceOne Receivables Mgmt., Inc.*, No. C15-1012-JCC, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *7-8 (W.D. Wash. Sept. 13, 2016)* ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete [*32] injury.") (collecting cases); *Irvine v. I.C. Sys., Inc.*, No. 14-CV-01329-PAB-KMT, 2016 U.S. Dist. LEXIS 99880, 2016 WL 4196812, at *3 (D. Colo. July 29, 2016)* ("Plaintiff's lawsuit does not seek to merely vindicate an interest in defendant's procedural compliance with the FDCPA; rather, plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt.").[3]

> 3   In addition, plaintiff's opposition brief aggregates the extensive and ever-growing array of district court decisions adopting this position. (Pl.'s Resp. Br. Opposing Def.'s Mot. for Dismissal, ECF No. 23, at 24-28.)

In contrast, the district court cases that defendant cites are not compelling. (Def.'s Br. at 12-13.) In *Chad & Courtney Provo v. Rady Children's Hospital - San Diego*, No. 15CV00081-JM(BGS), 2016 U.S. Dist. LEXIS 120174, 2016 WL 4625556 (S.D. Cal. Sept. 6, 2016)*, the court dismissed an FDCPA claim alleging a *Section 1692e* violation because "the only harm Plaintiffs [pled was] . . . 'undue stress, anxiety, and frustration,'" *2016 U.S. Dist. LEXIS 120174, [WL] at *2*, and "Plaintiffs failed to allege an injury that 'actually exist[ed]' and that affected them 'in a personal and individual way,'" *id.* (quoting *Spokeo, 136 S. Ct. at 1548*). The court further found that although "Plaintiffs state[d] in their opposition . . . that unsophisticated debtors may face harm as a result of receiving this sort of letter, they did not plead in the FAC that they themselves suffered this type of harm." *Id.* For the reasons discussed above, *Chad* misapprehends

*Spokeo*'s ruling, which was limited to procedural violations, [*33] and incorrectly concludes that the plaintiffs were required to allege actual harm.[4] In addition, to the extent that *Chad* found a lack of particularity, it is distinguishable as discussed *infra*. Further, in *Jackson v. Abendroth & Russell, P.C., No. 416CV00113RGEHCA, 2016 U.S. Dist. LEXIS 125986, 2016 WL 4942074 (S.D. Iowa Sept. 12, 2016)*, the court found that "bare procedural violations of *FDCPA sections 1692g(a)* and *(b)* do not amount to a concrete injury," but "recognize[d] that violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact." *2016 U.S. Dist. LEXIS 125986, [WL] at *11* (citing, e.g., *Bernal v. NRA Grp., LLC, No. 16 C 1904, 2016 U.S. Dist. LEXIS 116191, 2016 WL 4530321, at *4-5 (N.D. Ill. Aug. 30, 2016)* (finding alleged violations of *section 1692e* and *section 1692f* constitute a concrete injury sufficient for Article III standing)). Accordingly, *Jackson*'s "holding is confined to the context of this case and the disclosure requirements in *section 1692g of the FDCPA*; it does not express judgment on whether a violation of any other FDCPA provision constitutes an injury in fact sufficient for Article III standing." *Id.* Similarly, this Court's analysis is limited to *Section 1692e* and offers no view on whether other FDCPA provisions confer substantive statutory rights.

> 4  Insofar as *Chad* also determined that intangible harms are insufficient to establish Article III injury-in-fact, such a finding is clearly contrary to *Spokeo*, which re-affirmed its precedents *Akins* and *Public Citizens* holding that intangible informational injuries are constitutionally cognizable. *Spokeo, 136 S. Ct. at 1549-50.*

Finally, defendant relies on *Dolan v. Select Portfolio Servicing, No. 03-CV-3285 PKC AKT, 2016 U.S. Dist. LEXIS 101201, 2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016)*, to argue that the IRS Language constitutes a technical procedural violation and that [*34] *Church* is inconsistent with *Spokeo*. (Def.'s Br. at 8-9; Def.'s Reply Br., ECF No. 24, at 7-9.) However, *Dolan* analyzed standing under a provision of the Real Estate Settlement Procedures Act ("RESPA"), *12 U.S.C. § 2605*, and found that the injuries alleged in that case constituted "bare procedural statutory violations" that did not satisfy Article III. *2016 U.S. Dist. LEXIS 101201, [WL] at *6*. On that basis, it is inapposite because, as discussed above, the Court agrees with the weight of post-*Spokeo*

authority holding that *Section 1692e of the FDCPA*, unlike other statutory schemes, creates a substantive right to be free from abusive debt communications.[5] *See Long, 2016 U.S. Dist. LEXIS 170421, 2016 WL 7179367, at *3* ("While courts have found that violations of other statutes, such as the Cable Communications Policy Act ('CCPA') or FCRA, do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."). Although *Dolan* disagreed with *Church*'s holding in a footnote, finding "that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, *i.e.*, *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church* and, more relevantly, [*35] under *Section 2605 of RESPA*," *2016 U.S. Dist. LEXIS 101201, [WL] at *6 n.7*, this Court is not bound by that *dictum* and respectfully disagrees with *Dolan*'s characterization of the important rights that Congress sought to protect through the FDCPA.[6] On the contrary, this Court finds that *Section 1692e of the FDCPA* creates a "new legal interest[] by statute, the invasion of which can support standing . . . ." *Strubel, 842 F.3d at 188*.

> 5  For that reason, defendant's string cite of decisions finding a lack of standing based on procedural violations of other statutes (Def.'s Br. at 10-11, 15 16) is also largely inapposite. The one FDCPA-related decision in that chain, *Tourgeman v. Collins Financial. Services, Inc., No. 08-CV-1392 CAB (NLS), 2016 U.S. Dist. LEXIS 97356, 2016 WL 3919633 (S.D. Cal. June 16, 2016), appeal docketed*, No. 16-56190 (9th Cir. Aug. 19, 2016), found no standing for an alleged *Section 1692e* violation because the plaintiff never even "received the offending communication" at issue. *2016 U.S. Dist. LEXIS 97356, [WL] at *2*. *Tourgeman* is thus factually dissimilar from the instant case, where there is no dispute that plaintiff received the Letter.
>
> 6  Accordingly, the Court also disagrees with defendant's claim that the IRS language did "not result in an injury comparable to the injury in *Havens* . . . ." (Def.'s Reply Br. at 8-9.)

In sum, the Court finds that plaintiff has pled a concrete interest for the purpose of Article III standing based on her receipt of the IRS Language in the Letter because a material violation of *FDCPA Section 1692e*

infringes plaintiff's substantive statutory right to be free from abusive debt practices.

b. Particularity

*Spokeo* also emphasized that Article III's injury-in-fact component requires that an alleged harm be both concrete and particular, and "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *136 S. Ct. at 1548.* In other words, a plaintiff must "sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons." *Strubel, 842 F.3d at 191 n.10* (citing *Sierra Club v. Morton, 405 U.S. 727, 734-40, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972)).*

Here, defendant contends that plaintiff does not allege that the IRS Language

> affected her personally at [*36] all. Instead, and contrary to the recent law of this Circuit, Ms. Bautz asserts that a voluntary disclosure of possible IRS regulation applicability "tends to give erroneous and/or incomplete tax advice to consumers"--not to Ms. Bautz herself. *Complaint*, ¶ 43. The Complaint also alleges that the Letter "suggests to the least sophisticated consumer that failure to pay will get the consumer into trouble with the IRS." *Id.* at ¶ 44. Therefore, Plaintiff's Complaint suffers from a fundamental lack of particularized injury to confer standing under recent Second Circuit and Supreme Court jurisprudence.

Def.'s Suppl. Letter at 2.

This argument is meritless. Like the plaintiff in *Strubel*, who, with respect to the claims for which the Second Circuit found standing, "sue[d] to vindicate interests particular to her--specifically, access to disclosures of her own obligations," *842 F.3d at 191*, plaintiff filed this action based on the Letter, which was addressed to her, stated that she had an outstanding debt of $849.35, and "offer[ed] to settle [her] account for the reduced amount of $467.15. That's a savings of $382.20." (Compl. ¶¶ 22-23; *id.*, Ex. A.) Thus, the Letter affected plaintiff "in a personal and individual way, and her [*37] suit is not a vehicle for the vindication of the value interests of concerned bystanders or the public at large."

*Strubel, 842 F.3d at 191* (citing *Lujan, 504 U.S. at 560 n.1*, and *Valley Forge Christian Coll., 454 U.S. at 473*). Insofar as defendant argues that plaintiff's "injury is not particularized because it is not distinct from that sustained by other members of the putative class," that argument is also foreclosed by *Strubel*, which held that "*Fed. R. Civ. P. 23(a)(3)* conditions class actions on the claims or defenses of representative parties being 'typical of the claims or defenses of the class.'" *Id. at 191 n.10*. Thus, defendant's "urged interpretation of particularized injury would render class actions inherently incompatible with Article III, a conclusion for which it cites no support in law." *Id.*; *see also Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008)* (noting how the FDCPA "enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others").[7]

> 7 Defendant also argues that the alleged FDCPA violation at issue was procedural because it included the IRS Language in the Letter pursuant to bulletins issued by the Consumer Financial Protection Bureau ("CFPB"). Defendant claims that "CFPB Bulletins 2013-07 and 2013-08 state that debt collectors may not misrepresent the consequences and circumstances of forgiveness of debt, may not misrepresent the consequences and circumstances of forgiveness of debt and must take steps to ensure that any claims that they make about the effect of paying debts are not deceptive." (Def.'s Br. at 18.) However, those bulletins do not impose a mandatory requirement on defendant to disclose the possible tax consequences of repaying a debt, and defendant's decision to include the IRS Language in the Letter was thus volitional and not pursuant to a procedural obligation. *Cf. Strubel, 842 F.3d at 186-87* (discussing codified CFPB regulations delineating procedural requirements under TILA). Indeed, defendant characterized the IRS Language in its brief and at oral argument as a "voluntary disclosure." (Def.'s Br. at 1.)

Therefore, for the foregoing reasons, the Court finds that plaintiff has met Article III's injury-in-fact requirement by alleging a concrete and particular harm based on a violation a substantive [*38] statutory right.

2. Procedural Violation

Assuming *arguendo* that the IRS Language constitutes a procedural violation of the FDCPA, the Court finds that plaintiff has met the test set forth in *Spokeo* and *Strubel* because she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'" *Strubel, 842 F.3d at 189* (quoting *Spokeo, 136 S. Ct. at 1549*).

As already discussed, the Court previously concluded that the IRS Language presents a material risk of injury to plaintiff's interests under the FDCPA--freedom from deceptive debt collection practices--because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option," and "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (Tr. of Aug. 31, 2016 Oral Ruling at 6:21-7:1, 7:16-19.) Thus, the plaintiff's complaint parallels the TILA claims for which the Second Circuit found standing in [*39] *Strubel* because the requirement that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," *15 U.S.C. § 1692e*, is "a core object of the [FDCPA]," *Strubel, 842 F.3d at 190*, which has the purpose of "eliminat[ing] abusive debt collection practices by debt collectors," *15 U.S.C. § 1692(e)*. Including a materially false, deceptive, or misleading statement in a debt collection communication would, by definition, cause an individual "to lose the very . . . rights that the law affords him." *Strubel, 842 F.3d at 190*. Accordingly, "[h]aving alleged such procedural violations, [plaintiff] was not required to allege 'any *additional* harm' to demonstrate the concrete injury necessary for standing," *id. at 191* (quoting *Spokeo, 136*

*S. Ct. at 1549*), and, as noted *supra*, defendant is therefore incorrect to claim that plaintiff has not alleged a concrete injury because she failed to identify "any actual damages" stemming from the IRS Language (Def.'s Br. at 8, 13-14).

Further, plaintiff's claim is distinct from those in *Strubel* that lacked standing. Unlike the automatic payment plan challenge--where it was "undisputed that [the defendant] did not offer an automatic payment plan at the time Strubel held the credit card at issue," *842 F.3d at 191*--there is no such factual gap here [*40] because defendant does not assert that plaintiff failed to receive the Letter. Similarly, plaintiff has showed that defendant "failed to honor its statutory response obligations to consumers" by alleging that ARS included a false, deceptive, or misleading statement in the Letter, and thus plaintiff's claim is also dissimilar from the billing error challenge in *Strubel. Id. at 194* (footnote omitted).

Accordingly, plaintiff has adequately pled a violation of the FDCPA that poses a "material risk of harm" to her statutory interests and has, thus, satisfied the injury-in-fact requirement of Article III.[8]

> 8   As discussed *supra*, the Court also finds this injury to be sufficiently particular.

IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 22) is denied.

SO ORDERED.

JOSEPH F. BIANCO

United States District Judge

Dated: December 23, 2016

Central Islip, NY

# EXHIBIT D



**BRIAN P. CARNEY and WILLIAM C. GUMPPER, JR., on behalf of themselves and all others similarly situated, Plaintiffs, v. RUSSELL P. GOLDMAN, P.C., et al., Defendants.**

**Civil Action No. 15-260-BRM-DEA**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2016 U.S. Dist. LEXIS 177087*

**December 22, 2016, Decided**
**December 22, 2016, Filed**

**NOTICE:**   NOT FOR PUBLICATION

**COUNSEL:**  [*1] For BRIAN P. CARNEY, on behalf of himself and all others similarly situated, WILLIAM C. GUMPPER, JR., on behalf of himself and all others similarly situated, Plaintiffs: JOSEPH K. JONES, LEAD ATTORNEY, BENJAMIN JARRET WOLF, Jones, Wolf & Kapasi, LLC, Fairfield, NJ.

For RUSSELL P. GOLDMAN, P.C., Defendant: ANN FRANCES KIERNAN, LEAD ATTORNEY, NEW BRUNSWICK, NJ.

**JUDGES:** HON. BRIAN R. MARTINOTTI, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** BRIAN R. MARTINOTTI

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss, pursuant to *Fed. R. Civ. P. 12(b)(1)*, filed by Defendant Russell P. Goldman, P.C. ("Goldman" or the "Defendant"). (ECF No. 31.) Plaintiffs Brian P. Carney ("Carney") and William C. Gumpper, Jr. ("Gumpper") (collectively, the "Plaintiffs") oppose the motion. (ECF No. 33.) The Court

heard oral argument on December 21, 2016. For the reasons set forth below, Defendant's motion is **DENIED**.

**I. BACKGROUND**[1]

> 1   The facts set forth in this Opinion are taken from Plaintiffs' Amended Complaint, the parties' briefs and related filings.

**A. PROCEDURAL HISTORY**

Plaintiffs commenced this putative class action on January 13, 2015 (ECF No. 1), alleging Goldman, a law firm engaged by the State of New Jersey to collect defaulted student loan debts, violated the *Fair Debt Collection Practices Act, 15. U.S.C. §1692, et seq.* ("FDCPA"). Goldman filed an Answer to Plaintiffs' Complaint on February [*2] 19, 2015 (Dkt. No. 5), and the parties began to engage in discovery.

In October 2015, Carney filed in the United States Bankruptcy Court a voluntary petition under Chapter 13, Title 11 of the U.S. Code. (ECF Nos. 12-14.) As a result, this case was stayed as to Carney. (ECF No. 15.) By further Order, dated November 12, 2015, the entire case was stayed pending the United States Supreme Court's decision in *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*. (ECF No. 20.)

The Supreme Court issued its decision in *Spokeo* on

2016 U.S. Dist. LEXIS 177087, *2

May 16, 2016. Shortly thereafter, the Honorable Freda L. Wolfson, U.S.D.J., granted Plaintiffs leave to file an amended complaint and set a deadline for Defendants to file an answer or motion to dismiss. (ECF No. 24.) Plaintiffs filed their Amended Complaint on June 17, 2016. (ECF No. 27.) This motion followed.

## B. FACTUAL BACKGROUND

From 2007 to 2010, Carney borrowed approximately $92,000.00 from the New Jersey Higher Education Student Assistance Authority ("HESAA") in four (4) separate loan transactions. (Am. Compl. (ECF No. 27) at ¶¶ 32-40, Exs. A-D.) Gumpper, Carney's step-father, cosigned three (3) of the loans, in the total amount of approximately $69,000.00. (*Id.*; Exs. A-C.)

In connection with these loans, Carney and [*3] Gumpper each signed a promissory note(s) in favor of HESAA which states, in pertinent part, as follows: "I will pay all charges, collection costs and all other costs that are permitted under this Note for the collection of this loan, which the lender or subsequent holder of this Promissory Note incurs in collecting this loan." (Am. Compl. at ¶ 72.)

At some point, Plaintiffs apparently stopped making payments on the loans and, "[o]n or before June 7, 2014, HESAA placed and/or referred [Plaintiffs'] alleged obligations with Goldman for the purpose of collection." (ECF No. 27 at ¶ 52.) Consequently, on June 27, 2014, Goldman sent demand letters to Carney and Gumpper seeking to collect the amounts they allegedly owed to HESAA. (*Id.* at ¶¶ 53-58, Exs. E-F.)[2] The letter to Carney asserted the amount of $139,757.52 was due and owing to HESAA, "which includes interest and collection costs." (*Id.* at ¶¶ 54-55, Ex. E.) Similarly, the letter to Gumpper asserted the amount of $110,251.01 was due and owing to HESAA, "which includes interest and collection costs." (*Id.* at ¶¶ 57-58, Ex. F.) Goldman sent a third letter to Carney on or about July 23, 2014. (*Id.* at ¶¶ 59-60; Ex. G.) Like the prior letters, [*4] the July 23, 2014 letter indicated a past due amount of $139,757.52, which included "collection costs" of $21,211.03. (*Id.*)

> 2    Goldman allegedly "sent collection letters attempting to collect debts to more than 50 consumers residing within the State of New Jersey similar to the letter[s]" received by Plaintiffs. (Am. Compl. at ¶ 84.)

Plaintiffs allege "[t]he collection cost of $21,211.03 represents the contingency fee agreement between Goldman and HESAA rather than a pre-paid, flat fee." (*Id.* at ¶71.) Plaintiffs further allege that "[a]t the time Goldman sent the June 27, 2014 letters, Plaintiffs did not owe HESAA attorneys' fees in the amount of $21,211.03" because "Goldman had not billed HESAA for attorney fees, . . . HESAA had not paid attorneys' fees to Goldman," and HESAA had not been awarded collection costs or attorneys' fees by any Court in any jurisdiction, relating to the alleged debts. (*Id.* at ¶¶ 73-78.)

Several months after sending these demand letters, Goldman filed a complaint against Plaintiffs in the Superior Court of New Jersey, Law Division, Middlesex County, under Docket No. L-5827-14 (the "State Court Action"). (Am. Compl. at ¶ 80; Ex. H (Goldman's complaint in the State Court Action, dated September 25, 2014).) In the State Court Action, Goldman asserted Carney owed an unpaid "principal balance [] of $111,637.00, together with accrued unpaid interest of $8,855.31" and requested "an [*5] award for collection costs and attorneys' fees . . . of $21,211.03." (Am. Compl. at Ex. H, ¶¶ 3-4.) Goldman also sought to recover from Gumpper the amount of "$87,837.12, together with accrued unpaid interest" and "an award for collection costs and attorneys' fees . . . of $16,689.05." (*Id.* at ¶¶ 6-7.) In the Superior Court Action, Goldman was awarded Final Judgment by Default on September 28, 2015, and Judgment was entered against Carney for $149,122.91 and against Gumpper for $117,415.45. (Declaration of Russell P. Goldman (ECF No. 31-1) at ¶ 4; Ex. B.)

To date, neither Carney nor Gumpper has made any payment to Goldman. (ECF No. 27 at ¶¶ 69-70.) However, "members of the class have made payment of attorneys' fees, which were not due and owing." (*Id.* at ¶ 83.)

## II. LEGAL STANDARD

"*Article III of the Constitution* limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman, 549 U.S. 437, 439, 127 S. Ct. 1194, 167 L. Ed. 2d 29 (2007)*. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, 136 S. Ct. at 1547*. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele, 757 F.3d 347, 360*

*(3d Cir. 2014)* (citing *Davis v. FEC, 554 U.S. 724, 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008))*.

A motion to dismiss for lack of standing is properly brought pursuant to *Fed. R. Civ. P. 12(b)(1)*, because standing [*6] is a matter of jurisdiction. *Ballentine v. United States, 486 F.3d 806, 810, 48 V.I. 1059 (3d Cir. 2007)* (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands, 218 F. 3d 232, 240 (3d Cir. 2000)* ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc., 434 F. 2d 727, 733 (3d Cir. 1970)* ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")).

"Pursuant to *Rule 12(b)(1)*, the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine, 486 F. 3d at 810* (citing *Warth v. Seldin, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *Storino v. Borough of Point Pleasant Beach, 322 F. 3d 293, 296 (3d Cir. 2003))*. Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas, 75 F. 3d 834, 838 (3d Cir. 1996)* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*. However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan, 504 U.S. at 561*.

Article III "standing consists of three elements." *Spokeo, 136 S. Ct. at 1547* (quoting *Lujan, 504 U.S. at 560*). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears [*7] the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990))*.

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements. *Spokeo, 136 S. Ct. at 1547* (quoting *Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998))*. "To establish injury

in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id. at 1548* (quoting *Lujan, 504 U.S. at 560*). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term -- 'real,' and not 'abstract.'"). "Concreteness, therefore, is quite different from particularization." *Id.*

In *Spokeo*, the Supreme Court held that intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Spokeo, 136 S. Ct. at 1549*. However, "Article III standing requires a concrete [*8] injury even in the context of a statutory violation." *Id.* As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of *Article III*." *Id.* (citing *Summers, 555 U.S. at 496* ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing")) (additional citation omitted).

### III. DECISION

Defendant argues that Plaintiffs "cannot satisfy th[e] requirement [for Article III standing], since they received completely accurate information from Goldman and, therefore, cannot establish any actual injury." (ECF No. 31-2 at 6.)[3] According to Defendant, "[t]he information it provided in the demand letters was completely consistent with the amount claimed by the State in the Superior Court [Action] and with the judgment entered by the Superior Court. Since the receipt of truthful information cannot cause any injury under the FDCPA, Carney and Gumpper have no standing to sue. . ." (*Id.* at 5.) Goldman contends Plaintiffs only "suffered 'an informational injury' and 'a risk of economic injury'" because they never made a payment to Goldman. (*Id.* at 4, 8.)[4] Goldman argues "[t]he alleged 'risk [*9] of economic injury' is mere speculation about the possibility of bad things that might happen in the future, and a long way from the actual, concrete injury required by *Spokeo*." (*Id.* at 9,

Case 2:15-cv-12838-DML-DRG   ECF No. 117   filed 02/28/17   PageID.3450   Page 41 of 60

Page 4
2016 U.S. Dist. LEXIS 177087, *9

n.2.)

    3    Although couched in terms of standing, Defendant's arguments seem to focus primarily on the merits of Plaintiffs' claims, which are more appropriately raised in the context of a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss. Because Defendant moved to dismiss only for lack of subject matter jurisdiction, pursuant to *Fed. R. Civ. P. 12(b)(1)* (*see* ECF No. 31), the Court will only consider Defendant's arguments as they relate to standing.

    4  At the same time, however, Goldman concedes that "members of the class allegedly have made payments of improper attorney's fees." (ECF No. 31-2 at 4.)

Plaintiffs respond that, pursuant to "the agreement[s] between Plaintiffs and HESAA, the subject collection costs had not incurred at the time Defendant sent its debt collection letter." (ECF No. 33 at 1.) Rather, Plaintiffs contend "the collection costs were a contingency fee and, at the time the debt collection letter was sent by Defendant, Plaintiffs did not owe HESAA attorney fees, Defendant had not charged HESAA attorney fees, HESAA had not paid Defendant a commission, HESAA had not been awarded collection costs by any court and[] no action had been filed seeking attorney fees." (*Id.* (citation omitted).) Indeed, Plaintiffs note "Defendant was actually required to commence a separate court action, and obtain a judgment from a court, in order to be granted these very same collection costs . . . and it did not obtain a judgment until *over a year* [] after Defendant sent Plaintiffs the subject debt collection letter." (*Id.* (emphasis in original, citation omitted).) Essentially, "Plaintiffs allege that Defendant may, [*10] at some point, have been entitled to collection costs, just not at the time it sent its misleading debt collection letter to Plaintiffs." (*Id.* at 13.) Finally, Plaintiffs argue they have Article III standing because they suffered a concrete injury "[d]ue to Defendant's failure to provide Plaintiffs with the true and accurate information concerning the amount of the debt it was attempting to collect" and "were exposed to the risk of an economic injury due to the risk [of] paying collection costs that had not been incurred, not awarded by any court and were not due." (*Id.* at 15-16.) This Court agrees.

The Third Circuit recently discussed *Spokeo's* impact on Article III standing in a case related to the

unauthorized tracking and dissemination of the online activity of a class of children. *See In re Nickelodeon Consumer Privacy Litig., 827 F. 3d 262 (3d Cir. 2016)*. There, the defendant argued that because the children could not show injury beyond the statutory violations, they could not meet the injury-in-fact requirement for Article III standing. *Id. at 272-73*. The Third Circuit interpreted *Spokeo* to say that "even certain kinds of 'intangible' harms can be 'concrete' for purposes of *Article III*. . . . What a plaintiff cannot do . . . is treat a 'bare procedural violation . . . [that] may result [*11] in no harm' as an Article III injury-in-fact." *Id. at 273-74* (quoting *Spokeo, 136 S. Ct. at 1550*). The Third Circuit also observed that "in some cases an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 273-74* (explaining "[i]ntangible harms that may give rise to standing include harms that 'may be difficult to prove or measure,' such as unlawful denial of access to information subject to disclosure.") (citations omitted). Specifically, the Third Circuit addressed the Supreme Court's deference to Congress, noting that "*Spokeo* directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit,' [and] Congress's judgment on such matters is . . . 'instructive and important.'" *Id. at 273* (quoting *Spokeo, 136 S.Ct. at 1549*).

Ultimately, the Third Circuit found that "[n]one of these pronouncements calls into question whether the plaintiffs in th[at] case ha[d] Article III standing." *Id. at 274*. The Third Circuit explained:

    The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, [*12] *i.e.*, the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as a providing a basis for a lawsuit," *[In re Google Inc., 806 F. 3d 125 (3d Cir. 2015)]* noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's

Case 2:15-cv-12838-DML-DRG   ECF No. 117   filed 02/28/17   PageID.3451   Page 42 of 60

Page 5
2016 U.S. Dist. LEXIS 177087, *12

judgment, ought to remain private.

*Id. at 274.*

Like the statute at issue in *Nickelodeon*, Congress enacted the FDCPA as a result of "abundance evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. *15 U.S.C. § 1692(b).* The stated purpose of the FDCPA was to eliminate abusive debt collection practices and to promote further action to protect consumers against debt collection abuses. *Id.* "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First National Collection Bureau, 16-cv-2291, 2016 U.S. Dist. LEXIS 157575 (D.N.J. Nov. 10, 2016) at *23.* Further, the harm claimed by Plaintiffs is precisely that which the FDCPA was intended to guard against. *Id.* (citing *Havens Realty Corp. v. Coleman, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)).*

Here, Plaintiffs allege that [*13] Defendant made false, deceptive, and misleading statements and representations, and employed unfair and deceptive means, to collect or attempt to collect a debt in violation of the FDCPA by "demanding an amount for collection cost[s] in its initial and subsequent collection letters to Plaintiffs and other[s] similarly situated when said collection costs were not yet, if at all, due" to Goldman or HESAA. (ECF No. 27 at ¶ 97.) Plaintiffs allegedly "suffered an informational injury" and "a risk of economic injury due to Goldman's violation of *[Section] 1692e of the FDCPA.*" (*Id.* at ¶¶ 95-96.) The Court finds Plaintiffs' alleged an injury-in-fact is sufficient to confer Article III standing.

District Judge Walls of this Court was recently confronted with a similar situation as here, and arrived at the same conclusion. *See Blaha, 16-cv-2291, 2016 U.S. Dist. LEXIS 157575, at *20 (Nov. 10, 2016).* In *Blaha,* like here, defendants moved to dismiss plaintiff's FDCPA claim arguing the "allegations that Defendants committed statutory violations of the FDCPA do not meet the injury-in-fact requirement." *Id. at *20.* There, like here, "Defendants stress[ed] that Plaintiff can only show a 'hypothetical and speculative' injury because she does [not] claim to have relied on the allegedly misleading [*14] statements made in the [Defendants' collection] letter and she never made any payments to Defendants as

a result of the letter." *Id.* After considering the legislative history of the FDCPA, among other things, "the Court [was] unpersuaded by the argument that Plaintiff has alleged a bare procedural violation that does not give rise to an injury-in-fact" and, accordingly, denied defendants' motion to dismiss for lack of standing. *Id. at *22.*

This Court likewise finds Plaintiffs have sufficiently alleged an injury-in-fact harm for purposes of Article III standing. The purported injury here is clearly particularized, as Carney and Gumpper each complain that Defendant made false, misleading and deceptive representations to them "[b]y representing to Plaintiffs . . . that an amount was due for collection costs when said collection costs were not yet, if at all, due. . . ." (ECF No. 27 at ¶¶ 97-98.) While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.,* the unlawful use of false, deceptive and misleading representations in connection with Defendant's attempts to collect a debt owed by Plaintiffs. Insofar as *Spokeo* directs the Court to consider [*15] whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress from debt collectors for the very conduct alleged here. *See Nickelodeon, 827 F. 3d at 274.* Indeed, in the short time since *Spokeo* was decided, district and circuit courts around the country have rejected similar challenges to standing in FDCPA cases. *See, e.g., Blaha, 16-cv-2291, 2016 U.S. Dist. LEXIS 157575 at *23 (Nov. 10, 2016); Church v. Accretive Health, Inc., 654 Fed. App'x 990 (11th Cir. 2016); Prindle v. Carrington Mort. Servs., LLC, 3:13-cv-1349, 2016 U.S. Dist. LEXIS 108386, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016); Daubert v. NRA Grp., LLC, 3:15-cv-718, 2016 U.S. Dist. LEXIS 105909, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016); Lane v. Bayview Loan Servicing, LLC, 15-cv-10446, 2016 U.S. Dist. LEXIS 89258, 2016 WL 3671467 (N.D. Ill. July 11, 2016); Quinn v. Specialized Loan Servicing, LLC, 16-cv-2021, 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016).*

The FDCPA unambiguously grants recipients of debt-collection letters (such as Plaintiffs) a right to be free from abusive collection practices. In other words, the FDCPA "create[s] a private duty owed personally to" a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt. *See Spokeo, 136 S. Ct. at 1554 (Thomas, J., concurring).* Because Plaintiffs have a personal

statutory right to be free from abusive debt-collection practices, and because Plaintiffs have alleged facts plausibly showing Defendant violated [*16] that right, Plaintiffs "need not allege any additional harm." *See id. at 1549* (emphasis omitted).

In sum, the Court finds Plaintiffs have sufficiently pled an injury-in-fact that is both particularized and concrete, and meets the requirements of *Article III*. As Plaintiffs have standing to bring their claims, Defendant's Motion to Dismiss for lack of subject matter jurisdiction must be **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate Order will follow.

**Date: December 22, 2016**

*/s/ Brian R. Martinotti*

**HON. BRIAN R. MARTINOTTI**

**UNITED STATES DISTRICT JUDGE**

### ORDER

**THIS MATTER** having been opened to the Court by Defendant Russell P. Goldman, P.C., seeking an order pursuant to *Fed. R. Civ. P. 12(b)(1)* dismissing the Amended Complaint for lack of subject matter jurisdiction; and the Court having considered the parties' submissions in support of and in opposition to Defendant's motion; and the Court having heard oral argument on December 21, 2016; and for the reasons set forth in this Court's accompanying Opinion; and for good cause having been shown;

**IT IS** on this 22nd day of December, 2016,

**ORDERED** that Defendant's motion to dismiss [ECF No. 31] is **DENIED**.

**Date: December 22, 2016**

*/s/ Brian* [*17] *R. Martinotti*

**HON. BRIAN R. MARTINOTTI**

**UNITED STATES DISTRICT JUDGE**

# EXHIBIT E



**DALE KAYMARK, Individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, Plaintiff, v. UDREN LAW OFFICES, P.C., Defendant.**

**Civil Action No. 13-419**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2016 U.S. Dist. LEXIS 171061*

**December 12, 2016, Decided**
**December 12, 2016, Filed**

**PRIOR HISTORY:** *Kaymark v. Bank of Am., N.A., 11 F. Supp. 3d 496, 2013 U.S. Dist. LEXIS 186633 (W.D. Pa., 2013)*

**COUNSEL:** [*1] For DALE KAYMARK, individually and on behalf of other similarly situated current and former homeowners in Pennsylvania, Plaintiff: Michael P. Malakoff, LEAD ATTORNEY, Michael P. Malakoff, PC, Pittsburgh, PA; Trent A. Echard, Strassburger McKenna Gutnick & Gefsky, Pittsburgh, PA.

For BANK OF AMERICA, N.A., and, Defendant: Jonathan J. Bart, LEAD ATTORNEY, Wilentz Goldman & Spitzer, P.A., Philadelphia, PA; Thomas L. Allen, LEAD ATTORNEY, Reed Smith, Pittsburgh, PA; Andrew J. Soven, Reed Smith LLP, Philadelphia, PA.

For UDREN LAW OFFICES, P.C., Defendant: Jonathan J. Bart, LEAD ATTORNEY, Wilentz Goldman & Spitzer, P.A., Philadelphia, PA.

**JUDGES:** Cathy Bissoon, United States District Judge.

**OPINION BY:** Cathy Bissoon

**OPINION**

## MEMORANDUM ORDER

Pending before the Court is a Renewed Motion to Dismiss (**Doc. 75**), filed by Defendant Udren Law Offices, P.C. ("Udren") pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. For the reasons that follow, Udren's Motion will be DENIED.

## I. MEMORANDUM

### A. Factual Background

The well-pled facts averred in the Amended Complaint (Doc. 23), accepted as true with all reasonable inferences taken in the light most favorable to Plaintiff as the non-moving party, set forth the following. Plaintiff Dale Kaymark ("Kaymark" or "Plaintiff") refinanced [*2] his home in Coraopolis, Pennsylvania, in December 2006, executing a note for $245,600 and granting Bank of America, N.A. ("BOA") a mortgage. The mortgage was insured by Fannie Mae ("FNMA"). The terms of the mortgage state, in relevant part:

Lender may charge Borrower fees for services *performed in connection with* Borrower's default and for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement,

2016 U.S. Dist. LEXIS 171061, *2

including, but not limited to, attorneys' fees, property inspection and valuation fees.

     . . . .

     If the default is not cured as specified, . . . Lender shall be entitled to collect all expenses *incurred* in pursuing the remedies provided in this Section [ ], including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

(Doc. 23-3, ¶¶ 14, 22) (emphasis added).

     Kaymark experienced a drop in income in June of 2011, and failed to make his mortgage payments. On August 1, 2011, BOA sent Kaymark an "Act 91 Notice" of pre-foreclosure delinquency pursuant to Pennsylvania's

Housing Finance Agency Law, *35 P.S. § 1680.403c*, which requires mortgage-holders considering foreclosure to send homeowners a notice as a prerequisite to initiating [*3] formal action. An Act 91 notice must, among other things, include an itemized breakdown of the total amount past due as of the date of the notice and inform the homeowner that he is entitled to thirty days plus three additional days for mailing to meet with a consumer credit counseling agency to attempt to resolve the delinquency. Id.; see (Doc. 23-1).

     Over a year later, on September 13, 2012, Udren, on behalf of BOA, filed a verified Foreclosure Complaint against Kaymark in the Court of Common Pleas of Allegheny County, Pennsylvania. (Doc. 23-2). The body of the Foreclosure Complaint included an itemized list of the total debt, stating that the following items were due as of July 12, 2012:

| Unpaid Principal Balance | $213,224.26 |
| Accumulated Interest (07/01/2011-07/12/2012) | $13,452.47 |
| Accumulated Late Charges | $177.74 |
| Escrow Deficit / (Reserve) | $1,935.45 |
| Title Report | $325.00 |
| Attorney Fees | $1,650.00 |
| Property Inspection | $75.00 |
| Grand Total | $230,839.92 |

     Id. at ¶ 6. Immediately following this itemized list, the Foreclosure Complaint stated that "[t]he above figures are calculated as of 07/12/2012[.]" Id. Kaymark alleges that the $1,650 in attorneys' fees, $325 in title report fees, and $75 in property inspection fees [*4]  (or $2,050 total) were not actually incurred as of July 12, two months before the foreclosure action was filed on September 13, 2012.

     Kaymark contested the foreclosure action, which, at the time of the Amended Complaint, was still pending in the Allegheny County Court of Common Pleas.[1] As such, Kaymark has never paid the disputed fees.

          1   According to the state court docket sheet, BOA discontinued the foreclosure action against

Kaymark without prejudice in March 2016. (Doc. 76-2).

**B. Procedural Background**

     In February 2013, Kaymark filed a complaint on behalf of himself and a putative class against BOA and Udren in the Court of Common Pleas of Allegheny County. In the original complaint, Kaymark alleged that BOA and Udren violated the Pennsylvania Loan Interest and Protection Law ("Act 6"), *41 P.S. § 101 et seq.*, because the Foreclosure Complaint sought attorneys' fees which were not "actually incurred" upon commencement of the foreclosure action. Id. *§ 406*. BOA and Udren removed the case to this Court and filed motions to dismiss on the grounds that Kaymark's mortgage exceeded the maximum baseline figure to be governed

2016 U.S. Dist. LEXIS 171061, *4

under Act 6.

In response, Kaymark filed an Amended Complaint, asserting the following four counts on the basis of the alleged misrepresentations in the Foreclosure Complaint and/or Act 91 Notice: Count I, against BOA, for violating § 2270.4(b)(5)(ii), (v), (x), and [*5] (6)(i) of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 et seq.; Count II, against Udren, for violating §§ 1692e(2)(A), (5), (10), and 1692f(1) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); Count III, against both BOA and Udren, for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq., by virtue of the violations of the FCEUA or by engaging in certain "unfair or deceptive acts or practices," in violation of § 201-2(4)(v) and (xxi); and Count IV, against BOA, for common law breach of contract. (Doc. 23).

BOA and Udren again moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge issued a Report and Recommendation ("R&R") to grant the motions on December 11, 2013. The R&R reasoned, inter alia, that Kaymark's FDCPA claim that Defendants were not authorized to list not-yet-incurred flat fees in the Foreclosure Complaint was "rather hypertechnical," and that "nowhere do the loan documents or any state or federal law prohibit listing attorneys' fees and other fixed costs at the time of filing the complaint, but are reasonably expected to be incurred." It also explained that Kaymark "pled himself out of the state causes of action" because he did [*6] not show any actual loss or damage. (Doc. 41). Therefore, the R&R recommending granting the Motions to Dismiss in their entirety, with prejudice.

On March 31, 2014, the R&R was adopted as the Opinion of the Court. (Doc. 55). Agreeing that the inclusion of not-yet-incurred fees was not prohibited by the mortgage contract or other state or federal laws, the Court dismissed the FDCPA claim. The Court also concluded that Kaymark failed to demonstrate an actual loss as a result of the alleged misrepresentations and, therefore, that he failed to state a claim under the UTPCPL or the FCEUA. For the same reasons (i.e., failure to plead actual loss), the District Court dismissed Kaymark's breach of contract claim against BOA. Id.

Kaymark timely appealed the Court's decision to the

United States Court of Appeals for the Third Circuit. (Doc. 57). On April 7, 2015, the Court of Appeals affirmed the Court's dismissal of Kaymark's claims under Section 1692e(5) of the FDCPA, and his state law claims for violations of the UTPCPL and FCEUA, and breach of contract. Kaymark v. Bank of Am., N.A., 783 F.3d 168 (3d Cir. 2015); (Doc. 60). However, the Court of Appeals reversed the Court's dismissal of Kaymark's claims against Udren under Sections 1692e(2)(A), (10), and 1692(f)(1) of the FDCPA, and remanded for further proceedings. [*7] Id.

On June 5, 2015, at Udren's request, this Court entered an order staying the proceedings pending the filing of a petition for certiorari by Udren. (Doc. 63). On January 11, 2016, the United States Supreme Court denied Udren's certiorari petition. Udren Law Offices, P.C. v. Kaymark, 136 S. Ct. 794, 193 L. Ed. 2d 710 (2016). This court lifted the stay on March 22, 2016. (Doc. 66).

On May 6, 2016, Udren filed the instant Renewed Motion to Dismiss the Amended Complaint and Brief in Support seeking dismissal of the remaining FDCPA claims in their entirety under Federal Rule of Civil Procedure 12(b)(6) on "materiality" grounds. (Docs. 75, 76). Kaymark filed a response in opposition on May 27, 2016. (Doc. 79). Subsequently, Udren filed a reply brief, and both parties filed sur-reply briefs in support of their respective positions. (Docs. 81, 84, 87).

In addition, on May 18, 2016, Udren filed a Notice of Supplemental Authority attaching a copy of the United States Supreme Court's May 16, 2016 opinion in Spokeo, Inc. v. Robins, U.S. , 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). (Doc. 78). Udren contends that Spokeo undermines Kaymark's Article III standing in this case and further supports the alleged lack of materiality of the remaining FDCPA claims. Id. at 1-2. Kaymark filed a response in opposition to the notice of supplemental authority on June 3, 2016. (Doc. 80). On July 7, 2016, Udren filed a second [*8] Notice of Supplemental Authority attaching an opinion from the Court of Appeals for the Second Circuit remanding a case alleging a violation of the Fair and Accurate Credit Transactions Act ("FACTA") to allow the plaintiffs an opportunity to comport with the pleading standards set forth in Spokeo and to allow the district court to address any standing questions in the first instance. See (Doc. 88) (attaching Cruper-Weinmann v. Paris Baguette Am., Inc., et al., 653

*F. App'x 81 (2d Cir. 2016)).*[2] On July 8, 2016, Kaymark filed a Response to Notice of Supplemental Authority attaching a copy of *In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir. 2016)*, a June 2016 decision of the United States Court of Appeals for the Third Circuit interpreting Spokeo. (Doc. 89).

> 2   Notably, Udren's citation to Cruper-Weinmann in its second Notice of Supplemental Authority (Doc. 88) does not provide any additional substantive support for Udren's standing argument. Cruper-Weinmann involved two FACTA class actions alleging that certain retailers unlawfully printed credit card numbers and/or expiration dates on customers' store receipts. In Cruper-Weinmann, the Court reversed district court orders dismissing plaintiffs' claims, permitted plaintiffs to replead their claims to comport with Spokeo, and allowed the district court to determine standing in the first instance.

The Motion to Dismiss and related issues are now fully briefed and ripe for disposition. For the reasons set forth below, the Court will deny Defendant's Motion to Dismiss.

## C. Legal Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." [*9] *Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).* In deciding a *Rule 12(b)(6)* motion to dismiss, the Court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).*

## 1. Standing

In a Notice of Supplemental Authority, Udren argues that the United States Supreme Court's May 16, 2016 opinion in *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*, undermines Kaymark's Article III

standing in this case because the Amended Complaint does not allege a "concrete injury" as required by Spokeo. (Doc. 78).

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).* The standing doctrine "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, 136 S. Ct. at 1547.* Article III standing requires the party invoking jurisdiction to meet three elements:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely . . . that the injury will [*10] be redressed by a favorable decision.

*Bock v. Pressler & Pressler, LLP,      F. App'x    , 2016 U.S. App. LEXIS 13681, 2016 WL 4011150, at *1 (3d Cir. July 27, 2016)* (quoting *Lujan, 504 U.S. at 560-61* (alterations in original)); *Spokeo, 136 S. Ct. at 1547.* In Spokeo, the Supreme Court addressed "whether the violation of a procedural right granted by statute presents an injury sufficient to constitute an 'injury in fact' and satisfy the '[f]irst and foremost of standing's three elements.'" *Bock, 2016 U.S. App. LEXIS 13681, 2016 WL 4011150, at *1* (quoting *Spokeo, 136 S. Ct. at 1547).*

Although the Supreme Court in Spokeo did not change the rule for establishing standing, "it used strong language indicating that a thorough discussion of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact." Id. (citing *Spokeo, 136 S. Ct. at 1545).* The Court emphasized that "the requirements of particularization and concreteness required separate analyses and that neither requirement alone was sufficient." Id.; see also *Spokeo, 136 S. Ct. at 1548* ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"). An alleged statutory violation is not always sufficient to demonstrate a concrete injury. *Spokeo, 136 S. Ct. at 1549.*

A plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. The Court confirmed, however, [*11] that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements . . . . [it] may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. (internal quotations omitted); see also id. ("'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); *Bock, 2016 U.S. App. LEXIS 13681, 2016 WL 4011150, at *1*. In the case of alleged procedural violations, the question is "whether the particular procedural violations alleged . . . entail a degree of risk sufficient to meet the concreteness requirement." *Spokeo, 136 S. Ct. at 1550*.

The Court of Appeals for the Third Circuit recently addressed Spokeo's impact on Article III standing in *In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir. 2016)*; see also (Doc. 89) (addressing In re Nickelodeon). In that case, the Court of Appeals acknowledged that under Spokeo, "even certain kinds of 'intangible' harms can be 'concrete' for purposes of Article III . . . . What a plaintiff cannot do . . . is treat a 'bare procedural violation . . . [that] may result in no harm' as an Article III injury-in-fact." *In re Nickelodeon, 827 F.3d at 273-74* (quoting [*12] *Spokeo, 136 S. Ct. at 1550*). The Court of Appeals stated that "in some cases an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id. at 273*. The Court of Appeals noted the Supreme Court's deference to Congress, stating that "Spokeo directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for lawsuit,'" and that "Congress's judgment on such matters is . . . 'instructive and important.'" Id. (quoting *Spokeo, 136 S. Ct. at 1540*); see also *Bock, 2016 U.S. App. LEXIS 13681, 2016 WL 4011150, at *2*.

It is the district court's duty to determine in the first instance whether a plaintiff has Article III standing, including whether the elements of concreteness and particularization are satisfied. See, e.g., *Bock, 2016 U.S. App. LEXIS 13681, 2016 WL 4011150, at *2* (remanding case to district court to determine standing); *Church v.*

*Accretive Health, Inc., 654 F. App'x 990, 992-93 (11th Cir. July 7, 2016)* (noting that standing is a jurisdictional issue that must be addressed prior to and independent of the merits of plaintiff's claims); *Cruper-Weinmann, 653 F. App'x at 81-82*; see also *Fed. R. Civ. P. 12(h)(3)* ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing. *Spokeo, 136 S. Ct. at 1547*.

Udren contends that Spokeo undermines Kaymark's Article III standing in this case [*13] because Kaymark "has merely alleged a bare statutory violation of the FDCPA" and, therefore, has not alleged a "concrete" injury and was never at risk of a concrete injury. (Doc. 78). Udren describes the alleged FDCPA violation as a "technical error in a court pleading" that will "result, at most, in the plaintiff not receiving what he has demanded." Id. Udren attempts to distinguish a court pleading from a collection letter, stating that the former, "while not immune from the FDCPA, has a different purpose." Id. Udren contends that "[a]ny error in a pleading concerning the timing of a calculation which is undisputedly due upon judgment states no 'concrete' injury, in contrast to an error concerning a statement of the defendants' rights." Id.

Kaymark disagrees that the alleged FDCPA violation is a "mere technicality," stating that the violation "does not concern the timing of a calculation at all," but the "misrepresentation of the legal status and amount of the debt." (Doc. 80). Kaymark disputes that the attorneys' fees at issue would become "indisputably due upon judgment" because the amount alleged represents the maximum allowable fee, not the actual fee or a guaranteed fee. Id. Kaymark [*14] also rejects Udren's distinction between a formal pleading and a debt collection letter, reasoning that, if a misrepresentation of the status of a debt contained in a debt collection letter violates the FDCPA, then "the same holding is required when the misrepresentations are made in a more formal foreclosure complaint." Id. In this regard, Kaymark points out the Notice at the beginning of the Foreclosure Complaint informing Kaymark, inter alia, that the amount of his debt "is as stated in the attached document [the Foreclosure Complaint itself]," that Udren "is deemed to be a debt collector," and that "this Notice and the attached document [the Foreclosure Complaint] is an attempt to collect a debt." Id. (citing Doc. 23-2, at 5).

Kaymark describes the FDCPA violation at issue as substantive and not the type of "bare procedural violation" eschewed in Spokeo.[3]

> 3  Kaymark also argues that the Court of Appeals implicitly found Article III standing as a precondition for reaching the merits of Udren's first appeal in this case. See (Doc. 89, at 1) (citing *Kaymark v Bank of Am., 783 F.3d 168 (3d Cir. 2015)).*

After careful review, the Court agrees with Kaymark that the Amended Complaint pleads a "concrete" injury sufficient to satisfy the injury-in-fact standard clarified in *Spokeo*.[4] Although the Court of Appeals for the Third Circuit has not applied Spokeo in a case alleging FDCPA violations, recent decisions from neighboring jurisdictions [*15] are instructive. Notably, in *Church v. Accretive Health, Inc., 654 F. App'x 990 (11th Cir. 2016)*, the Court of Appeals for the Eleventh Circuit held that a plaintiff-debtor who had failed to receive required disclosures had sufficiently alleged a concrete injury to confer standing to pursue claims under the FDCPA. *Id. at 995*. In finding that the plaintiff had satisfied the concreteness requirement, the court of appeals in Church explained:

> Church has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete--*i.e.*, "real"--injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. . . . Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a [*16] concrete injury, and thus, satisfies the injury-in-fact requirement.

Id. (internal citations and footnotes omitted). In reasoning that the FDCPA created a statutory right to information, Church likened the case to the Supreme Court's decision in *Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982)*, in which the Court held that the Fair Housing Act ("FHA") created a statutory right to truthful housing information. In Havens, the Supreme Court found that a tester-plaintiff who had been given false information regarding housing availability had sufficiently alleged injury-in-fact to assert a violation of the FHA even though she had never intended to rent an apartment and, thus, the only injury asserted was that she was given the false information. See *Havens, 455 U.S. at 373-74*. The Havens Court explained that the FHA "establishes an enforceable right to truthful information concerning the availability of housing" and that a "tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." Id. The Court of Appeals in Church held that "[j]ust as the tester-plaintiff [in Havens] had [*17] alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily-created right to information pursuant to the FDCPA." *Church, 654 F. App'x at 994*.

> 4  Concreteness is the only element of the standing analysis that Udren has challenged in this case. The Court has reviewed the other elements of standing and finds that the case is otherwise properly before the court.

In addition to Church, the wide majority of district courts to address the issue post-Spokeo have found that similar alleged violations of the FDCPA constitute concrete injuries within the meaning of Article III. See, e.g., *Munoz v. Cal. Bus. Bureau, Inc., 2016 U.S. Dist. LEXIS 151495, 2016 WL 6517655, at *5 (E.D. Cal. Nov. 1, 2016)* ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."); *Hill v. Accounts Receivable Servs., LLC, 2016 U.S. Dist. LEXIS 150791, 2016 WL 6462119, at **4-5 (D. Minn. Oct. 31, 2016)* (debt collector's alleged violations of plaintiff's rights to truthful information and freedom from efforts to collect unauthorized debt under the FDCPA constituted a

concrete injury in fact); *Saenz v. Buckeye Check Cashing of Ill., 2016 U.S. Dist. LEXIS 127784, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016)* (Plaintiff "was harmed by receiving a deficient and allegedly misleading communication from [defendant] -- a harm defined and made cognizable by the [FDCPA], but a concrete harm nonetheless."); *Bernal v. NRA Group, LLC, 2016 U.S. Dist. LEXIS 116191, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016)* ("The type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete."); *Dittig v. Elevate Recoveries, LLC, 2016 U.S. Dist. LEXIS 112991, 2016 WL 4447818, at *4 n.1 (W.D. Pa. Aug. 24, 2016)* (finding "standing based on the alleged violations of the statutorily-created [*18] rights set forth in the FDCPA"); *Prindle v. Carrington Mortg. Servs., LLC, 2016 U.S. Dist. LEXIS 108386, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016)* (injury caused by alleged violation of *§ 1692e of the FDCPA* constituted concrete harm even in the absence of additional harm such as economic loss).

In accordance with these well-reasoned decisions, this Court agrees that the injury alleged in the Amended Complaint is one that "Congress has elevated to the status of a legally cognizable injury through the FDCPA." *Church, 654 Fed. Appx. 990, 2016 WL 3611543, at *3.* The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right "to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt." *Munoz, 2016 U.S. Dist. LEXIS 151495, 2016 WL 6517655, at *5*; see also *Hill, 2016 U.S. Dist. LEXIS 150791, 2016 WL 6462119, at *4* (*Section 1692e of the FDCPA* establishes a right to truthful information regarding the collection of a debt, and *Section 1692f* establishes a right to be free from the collection of unauthorized fees.). This is not a case asserting a "bare procedural violation" such as an erroneous zip code or, as Udren suggests, a mere technical error concerning the timing of a calculation. Rather, as Kaymark asserts, this action involves an alleged misrepresentation of the legal status and amount of the debt itself. Under these circumstances, Udren's alleged violation of Kaymark's right to truthful information and freedom from efforts [*19] to collect unauthorized debt constitutes a concrete injury and satisfies Article III's injury-in-fact requirement.[5]

5   Contrary to Udren's suggestion, the fact that

the alleged misrepresentations at issue occur in a court pleading as opposed to a debt collection letter does not make the alleged harm less concrete or otherwise change this result. As the Court of Appeals for the Third Circuit already concluded in reversing the dismissal of the FDCPA counts at issue, "the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview." *Kaymark, 783 F.3d at 177*; see also *Hill, 2016 U.S. Dist. LEXIS 150791, 2016 WL 6462119, at **4-5* (*§ 1692e* and *§ 1692f* claims satisfied concreteness requirement where defendant allegedly misrepresented amount of interest owed in a complaint filed against plaintiff in conciliation court).

## 2. Failure to State a Claim -- Materiality

As set forth above, the Court of Appeals for the Third Circuit reversed this Court's prior dismissal of Kaymark's claims under *Sections 1692e(2)(A)*, and *(10)*, and *1692f(1)*. In so concluding, the court cited its intervening decision in *McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240 (3d Cir. 2014)*, in which it held that nearly-indistinguishable conduct in a debt-collection letter, rather than a foreclosure complaint, violated the FDCPA. *Kaymark, 783 F.3d at 174-75.* The court noted that, as in McLaughlin, the Foreclosure Complaint in this case informed Kaymark of specific amounts due for specific items as of a particular date but did not convey that the disputed fees were estimates or imprecise amounts. *Id. at 175.* Consequently, "the Foreclosure Complaint conceivably misrepresented the amount of the debt owed" in violation of *§ 1692e(2)(A)* and *(10)*, and Kaymark sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized" by the mortgage contract or permitted by law in violation of *§ 1692f(1).* Id. In so holding, the Court explained that the Foreclosure Complaint must be viewed "through the lens of the least-sophisticated consumer and [*20] in the light most favorable to Kaymark." Id. The Court further concluded that "a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." *Id. at 177.*

Despite the ruling by our Court of Appeals in this case, Udren again moves to dismiss the same claims under *Rule 12(b)(6)* (Doc. 75). Specifically, Udren

contends that the alleged FDCPA violations are not "material" under the law. Id. In its supporting brief, Udren notes that subsequent to its ruling in Kaymark, our Court of Appeals held for the first time in *Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015)*, that materiality is, in fact, an essential element of an FDCPA claim. (Doc. 76, at 6). See *Jensen, 791 F.3d at 416* ("[W]e agree with the District Court's conclusion that misstatements must be material to be actionable under *§ 1692e*."). Although this Court addressed materiality in its first opinion dismissing the Amended Complaint, and the parties raised the materiality issue on appeal of that decision, Udren contends that, because the Court of Appeals did not specifically discuss materiality in deciding to reverse and subsequently adopted a materiality analysis in Jensen, this Court's original materiality analysis remains valid and requires dismissal of Kaymark's remaining [*21] FDCPA claims. (Doc. 76, at 5-6). After careful consideration, this Court disagrees.

As an initial matter, the Court finds it incongruous that the Court of Appeals would take the time to issue a precedential opinion affirming the dismissal of all but three of Kaymark's original claims only to have those claims dismissed again on the basis of an issue (materiality) already briefed and argued before both Courts and expressly ruled upon by this Court. A more logical reading of Kaymark is that it was not necessary for the Court of Appeals to address the materiality issue because, even if a materiality standard applied, the claims at issue met that standard and therefore were not subject to 12(b)(6) dismissal on that basis. Indeed, as Kaymark notes in its briefing, the Court of Appeals in Jensen cited its decisions in McLaughlin and Kaymark as support for its position that the materiality standard "is not a particularly high bar." *Jensen, 791 F.3d at 421-22*; see also (Doc. 79, at 2).

Moreover, even if the materiality question remains open, the Court finds that Kaymark has plausibly met that standard in this case. The Court of Appeals in Jensen made clear that the materiality standard "is simply a corollary of the well-established [*22] 'least sophisticated debtor' standard, which courts have routinely applied" to FDCPA violations such as those alleged here. *Jensen, 791 F.3d at 418*. The least sophisticated debtor standard focuses on "whether a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." *Id. at 420*. As the Court of Appeals explained:

[A] false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes.

It is therefore clear that the materiality requirement is simply *another way of phrasing* the legal standard we *already* employ when analyzing claims under *§ 1692e*, so that the *same* analysis can be applied to communications containing false statements. . . . Because we view the materiality requirement as *a different way of expressing* the least sophisticated debtor standard, we are satisfied that adopting a materiality requirement for claims brought under *§ 1692e* is consistent with Congress's intent in this regard. Indeed, refusing to adopt this materiality requirement would be inconsistent with decades of our own jurisprudence [*23] employing the least sophisticated debtor standard.

*Id. at 421* (emphasis added). The Court noted that "our recognition that an element of materiality is subsumed in our analytical framework does nothing to dilute the protection Congress intended. A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material." Id.

Jensen emphasized that "this materiality standard does not turn on what an ordinary individual might reasonably understand from a debt collector's communication." Id. Rather, "[b]ecause the materiality requirement is a corollary of the least sophisticated debtor standard, the relevant 'decisionmaking body' here is the least sophisticated debtor. Thus, a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." Id. Again, the Court of Appeals cited its decisions in both McLaughlin and Kaymark in support of its assertion that the materiality/least sophisticated debtor standard "is not a particularly high bar." *Id. at 421-22*. The Court of Appeals distinguished cases such as McLaughlin and Kaymark, which involved debt collectors who represented estimates of the amount the debtors

ultimately would owe as the [*24] *actual* amount owed as of the date of communication, from "claims based on hypertechnical misstatements under *§ 1692e* that would not affect the actions of even the least sophisticated debtor." Id. Only the latter claims are precluded by the materiality requirement.

Despite Udren's arguments, the fact that this action involves a foreclosure complaint as opposed to a debt collection letter does not impact the materiality analysis. Again, the Court of Appeals has already rejected the notion that the distinction is relevant in this case. See *Kaymark, 783 F.3d at 179* ("Given our holding in McLaughlin based on nearly-indistinguishable facts, we conclude that the fact that the debt collection activity at issue here involves a foreclosure complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview under McLaughlin."). Moreover, as set forth above, the Court of Appeals cited the FDCPA violations alleged in both McLaughlin and Kaymark as examples of representations that meet the materiality bar. *Jensen, 791 F.3d at 421-22.*[6]

> [6] In support of its argument in this regard, Udren cites to several decisions outside of this circuit, including the decision of the Court of Appeals for the Fourth Circuit in *Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015).* In Elyazidi, the court of appeals affirmed the dismissal of a debtor's FDCPA claims based on attorney's fees sought in a "warrant in debt" (a form of standardized pleading for debt collectors) on immateriality grounds. Id. Udren contends that the Court of Appeals for the Third Circuit's citation to Elyazidi in Jensen supports dismissal of Kaymark's claims here. This argument is unpersuasive. In addition to the fact that *Elyazidi* is not binding on this court, it is factually dissimilar in important respects. Moreover, Jensen does not cite Elyazidi for its specific facts, but as an example of a sister court that has recognized a materiality standard in FDCPA cases. Indeed, directly after citing Elyazidi's formulation of the materiality standard, the Jensen court cites McLaughlin and Kaymark as examples of cases that satisfy the standard's "low bar." *Jensen, 791 F.3d at 421.*

This Court likewise is not bound, as Udren urges, to the materiality analysis set forth in its original opinion.

To the [*25] contrary, even if the Court of Appeals did not address the materiality question as Udren contends, this Court's prior analysis of the issue does not comport with the materiality standard announced in *Jensen.* In particular, this Court in its prior opinion focused primarily on whether Kaymark himself altered his position or relied in any way on Udren's itemization of fixed attorneys' fees and other costs in the foreclosure complaint. *Kaymark, 11 F. Supp. 3d at 515.* As set forth in Jensen, however, the relevant inquiry "does not turn on what an ordinary individual might reasonably understand from a debt collector's communication." *Jensen, 791 F.3d at 421.* Rather, the relevant decision-making body is the least sophisticated debtor. Id. Similarly, the pertinent question is not whether the statements at issue actually influenced the debtor, but whether the statements are *capable of* influencing the decision of the least sophisticated debtor.

This Court's prior characterization of Kaymark's FDCPA claims as "rather hypertechnical" also is not dispositive. Clearly, the Court of Appeals disagrees with this description as evidenced in Jensen when it distinguished the claims asserted in this case (and McLaughlin) from claims based "on hypertechnical [*26] misstatements," such as an incorrect signature on a subpoena, that "would not affect the actions of even the least sophisticated debtor." *Jensen, 791 F.3d at 422.* Contrary to Udren's repeated assertions, the alleged violations here are not technicalities or mere "scrivener's errors," but misrepresentations of the legal status and amount of the debt. Udren's persistent attempts to frame the representations at issue in the light most favorable to itself contravene the mandate of the Court of Appeals as well as the 12(b)(6) standard. See *Kaymark, 783 F.3d at 175* ("While such language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark."); see also *Gorman v. Messerli & Kramer, P.A., Civil No. 15-1890 (JRT/HB), 2016 U.S. Dist. LEXIS 23474, 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016).*[7]

> [7] In Gorman, the court denied a law firm debt collector's 12(b)(6) motion to dismiss debtor's FDCPA claims based on the inclusion in a debt collection letter of $35 in unauthorized costs. Although the court acknowledged that $35 was a small sum in comparison to an "already hefty" bill, it found that inclusion of such an

unauthorized charge in the dunning letter was material. The court cited Kaymark favorably in its opinion and explained, inter alia, that "a debt collector's false statements . . . asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost always be considered material because of the FDCPA's stated aim to halt 'the use of abusive, deceptive and unfair debt collection practices by many debt collectors." *Id. at \*\*4-5* (citing *15 U.S.C. § 1692(a)*).

For the reasons set forth above, when viewed in the light most favorable to Kaymark, the estimated/anticipated, but not-yet-incurred, fee demands in the Foreclosure Complaint are "capable of influencing the decision of the least sophisticated debtor." Accordingly, Udren's motion to dismiss the remaining FDCPA claims on materiality grounds must be denied.

For the reasons set forth above, Udren's Motion to Dismiss is denied.

## II. ORDER

For the [*27] reasons stated above, Defendant's Renewed Motion to Dismiss the Amended Complaint (Doc. 75) is DENIED. The case is hereby remanded to Magistrate Judge Cynthia Reed Eddy to conduct all pretrial proceedings in the matter.

IT IS SO ORDERED.

December 12, 2016

/s/ Cathy Bissoon

Cathy Bissoon

United States District Judge

# EXHIBIT F



JANET LONG, individually and on behalf of all similarly situated, Plaintiff, v. FENTON & MCGARVEY LAW FIRM P.S.C., a Kentucky corporation, and JEFFERSON CAPITAL SYSTEMS, LLC, a Georgia limited liability company, Defendants.

No. 1:15-cv-01924-LJM-DKL

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

*2016 U.S. Dist. LEXIS 170421*

December 9, 2016, Decided
December 9, 2016, Filed

**SUBSEQUENT HISTORY:** Class certification granted by *Long v. Fenton & McGarvey Law Firm P.S.C., 2016 U.S. Dist. LEXIS 172507 (S.D. Ind., Dec. 14, 2016)*

**COUNSEL:** [*1] For Janet Long, individually and on behalf of all others situated, Plaintiff: Angie K. Robertson, Mary E. Philipps, David J. Philipps, PHILIPPS AND PHILIPPS, LTD., Palos Hills, IL USA; John Thomas Steinkamp, JOHN T. STEINKAMP AND ASSOCIATES, Indianapolis, IN USA.

For Fenton & Mcgarvey Law Firm, P.S.C., a Kentucky corporation, Jefferson Capital Systems, Llc, a Georgia limited liability company, Defendants: David M. Schultz, James Constantine Vlahakis, Jennifer Jay Kalas, HINSHAW & CULBERTSON, Schererville, IN USA.

**JUDGES:** LARRY J. McKINNEY, United States District Judge.

**OPINION BY:** LARRY J. McKINNEY

**OPINION**

**ORDER ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND**

**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

This matter pends on the Defendants', Jefferson Capital Systems LLC's ("Jefferson Capital") and Fenton & McGarvey Law Firm P.S.C. ("Fenton & McGarvey," and collectively, the "Defendants"), Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Partial Judgment on the Pleadings (the "Motion").[1] Dkt. No. 46. In the Motion, Defendants seek to dismiss the Complaint filed by Plaintiff, Janet Long, individually and on behalf of all others similarly situated ("Plaintiff"), based on a lack of subject [*2] matter jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(1)* ("*Rule 12(b)(1)*"), and based upon the pleadings, pursuant to *Federal Rule of Civil Procedure 12(c)* ("*Rule 12(c)*"). *Id.* Defendants assert that (1) Plaintiff lacks standing to bring a claim under the Fair Debt Collection Practices Act, *15 U.S.C. § 1692, et seq.* ("FDCPA") because she (1) did not suffer a concrete injury in fact, and (2) fails to state a claim under the FDCPA upon which relief may be granted. *See generally*, Dkt. No. 47.

1   Jefferson Capital filed the Motion individually on June 7, 2016, Dkt. No. 46, and Fenton & McGarvey also moved to dismiss by adopting and incorporating Jefferson Capital's motion and

2016 U.S. Dist. LEXIS 170421, *2

briefs on June 10, 2016. Dkt. No. 53. For the purposes of this Order, the Court will treat these motions as one unified motion by the Defendants.

# I. BACKGROUND

In 2015, Plaintiff fell behind on credit card payments for credit cards created through Comenity Bank. Dkt. No. 1, ¶ 7. Plaintiff believes that Jefferson Capital acquired the debts she owed to Comenity Bank after her debts became delinquent. *Id.* After being hired by Jefferson Capital to help collect on the debts that Jefferson Capital owned, Fenton & McGarvey sent Plaintiff two initial form collection letters (the "Letters") on August 19, 2015, which state "Please be advised that Fenton & McGarvey Law Firm, P.S.C. has been retained by Jefferson Capital Systems, LLC to collect its account with you." *Id.* at ¶ 7; Ex. A & B. The Letters further declared that the "original creditor" for the debts was Comenity Bank. *Id.* The body of the Letters made no other references to Jefferson Capital, Comenity [*3] Bank, or Fenton & McGarvey. *Id.*

In her Complaint, Plaintiff alleges that the Letters failed to sufficiently explain (1) Jefferson Capital's relationship to the debts, (2) the distinction between Jefferson Capital and Comenity Bank, and (3) Jefferson Capital's reasoning for retaining Fenton & McGarvey to collects the debts. *Id.* at ¶ 7. In light of this lack of explanation, Plaintiff claims that the Letters would confuse a consumer and "would cause a consumer to not know to whom the debts were currently owed." *Id.* at ¶ 8. Plaintiff further alleges that the Letters violate *15 U.S.C. § 1692g* of the FDCPA ("*Section 1692g*") because the Letters "failed to identify effectively what [Jefferson Capital] was the current creditor to whom the debt was owed," rendering the Defendants liable to Plaintiff for statutory damages and other relief. Dkt. No. 1, ¶¶ 12-13.

# II. ARTICLE III STANDING

Defendants argue that Plaintiff lacks standing under *Article III of the Constitution* because Plaintiff failed to allege that she suffered a concrete injury in fact. Dkt. No. 47, at 9-16. Specifically, Defendants argue that Plaintiff did not allege that she incurred any actual harm resulting from the Defendants' alleged failure to clearly identify Jefferson Capital as the current [*4] creditor, *Id.* at 10, and that any claim of an injury is merely hypothetical rather than present or imminent. *Id.* at 16. Defendants rely heavily on the recent Supreme Court decision in

*Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*, to support their argument that Plaintiff lacks Article III standing. *Id.* at 3-5, 11-12.

"The jurisdiction of the federal courts is limited to 'Cases' and 'Controversies' as described in *Article III, Section 2 of the Constitution.*" *Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 587 (7th Cir. 2016)*. *See also, Spokeo, 136 S. Ct. at 1547*. If a plaintiff does not allege any case or controversy exists, the plaintiff lacks standing to challenge a defendant's alleged misconduct. *Diedrich, 839 F.3d at 587*. To meet "the 'irreducible constitutional minimum' of standing," a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, 136 S. Ct. at 1547* (citing *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*). As the party seeking federal jurisdiction, the plaintiff bears the burden of establishing that these three elements are met. *See Spokeo, 136 S. Ct. at 1547* (citing *FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)*); *see also, Diedrich, 839 F.3d at 588*; *Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009)*.

In *Spokeo*, the plaintiff claimed that a consumer reporting agency operating a "'[#x2bb]people search engine'" violated the Fair Credit Reporting Act of 1970 ("FCRA") by disseminating inaccurate credit information about the plaintiff. *Spokeo, 136 S. Ct. at 1544*. The Court in *Spokeo* primarily focused upon the [*5] injury in fact element to find Article III standing. To find that an injury in fact exists, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, 136 S. Ct. at 1548* (quoting *Lujan, 504 U.S. at 560, 112 S. Ct. 2130*).

"A 'concrete' injury must be 'de facto': that is, it must actually exist." *Spokeo, 136 S. Ct. at 1548*. A concrete injury may either be a tangible or intangible harm. *Id. at 1549*; *see also, Diedrich, 839 F.3d at 588*. History and Congress can be instructive when finding whether an intangible harm constitutes an injury in fact. *Spokeo, 136 S. Ct. at 1549*. "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" because it has the ability to define injuries and raise intangible harms that were previously inadequate under the law to the status of concrete, de

facto injuries, "giving rise to a case or controversy where none existed before." *Id.* However, not every violation of a statutory right satisfies the injury-in-fact requirement for Article III standing. *Id.*; *see also, Diedrich, 839 F.3d at 588*. "Article III standing requires a concrete injury even in the context of a statutory violation"; therefore, merely alleging "a bare procedural violation, divorced from [*6] any concrete harm" will not satisfy the injury-in-fact requirement. *Spokeo, 136 S. Ct. at 1549.* *See also, Diedrich, 839 F.3d at 588*. While the Court in *Spokeo* stated that "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact," a "bare procedural violation" that does not result in any harm to the plaintiff does not satisfy the concreteness requirement for an injury in fact nor establish Article III standing. *Spokeo, 136 S. Ct. at 1549-50.*

Although the Seventh Circuit has not yet fully analyzed whether a violation of the FDCPA establishes a concrete injury under *Spokeo,* several district courts within the Seventh Circuit and other Circuit Courts have addressed this issue and have held that violations of the FDCPA constitute concrete injuries in fact, sufficient to find Article III standing. *See Church v. Accretive Health, Inc., 654 Fed. Appx. 990, 994 (11th Cir. 2016)*; *George v. Wright, Lerch & Litow, LLP Attorneys at Law, No. 1:15-cv-00811-JMS-DML, 2016 U.S. Dist. LEXIS 164096, 2016 WL 6963990, at *2-3 (S.D. Ind. Nov. 29, 2016)*; *Everett v. Fin. Recovery Servs., Inc., No. 1:16-cv-01806-JMS-MPB, at *4, 2016 U.S. Dist. LEXIS 163233 (S.D. Ind. Nov. 28, 2016)*; *Lane v. Bayview Loan Servicing, LLC, No. 15-cv-10446, 2016 U.S. Dist. LEXIS 89258, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016)* (citing *Church, 654 Fed. Appx. at 994*); *Saenz v. Buckeye Check Cashing of Ill., No. 16-cv-06052, 2016 U.S. Dist. LEXIS 127784, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016)* ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt [*7] (in a communication directed to the plaintiff consumer) a cognizable injury"); *Quinn v. Specialized Loan Servicing, LLC, No. 16-cv-2021, 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967, at *4-5 (N.D. Ill. Aug. 11, 2016)*; *Paz v. Portfolio Recovery Assocs., LLC, No. 15-c-5073, 2016 U.S. Dist. LEXIS 160779, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016)*. Even prior to *Spokeo,* the Seventh Circuit found that the FDCPA created legal rights and injuries when the FDCPA is violated. *See Janetos v. Fulton Friedman & Gullace, LLP, 825 F.3d 317, 324*

*(7th Cir. 2016)* ("With that specific disclosure requirement [in *Section 1692g*], Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize"); *Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998)* ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages. ... [T]he Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not"); *see also, Mogg v. Jacobs, No. 15-cv-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396 (S.D. Ill. Mar. 15, 2016)* (citing *Keele, 149 F.3d at 593-94*; *Sterk v. Redbox Automated Retail, LLC, 770 F.3d 618, 623 (7th Cir. 2014)*) (denying a motion to stay a case brought under the FDCPA pending the Supreme Court's decision in *Spokeo* because the alleged injuries were "arguably beyond a bare violation of the FDCPA").

While courts have found that violations of other statutes, such as the Cable Communications Policy Act ("CCPA") or FCRA, do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly [*8] found to establish concrete injuries. *See Tyus v. United States Postal Serv., No. 15-cv-01467, 2016 U.S. Dist. LEXIS 144849, 2016 WL 6108942, at *5-6 (E.D. Wis. Oct. 19, 2016)* (distinguishing *Church* because, unlike the FDCPA that entitles consumers to receive certain information, the violations of the FCRA alleged did not indicate that plaintiffs failed to receive any information to which they were entitled*); see also, Rasa Hayes v. Convergent Healthcare Recoveries, Inc., No. 14-1467, 2016 U.S. Dist. LEXIS 139743, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016)* ("Unlike *Spokeo,* where a 'violation of one of the FCRA's procedural requirements may result in no harm,' a violation of the right under [the FDCPA] to be free from false or misleading representations from debt collectors creates a harm, or a risk of harm, sufficient to meet the requirement of concreteness.").

Although the Defendants cite to *Gubala v. Time Warner Cable, Inc., No. 15-cv-1078-pp, 2016 U.S. Dist. LEXIS 79820, 2016 WL 3390415 (E.D. Wis. June 17, 2016)*, to support its argument that Plaintiff lacks Article III standing, Dkt. No. 63, at 4-10, *Gubala* addresses the CCPA rather than the FDCPA. Because *Gubala* discusses whether violations of the CCPA constitute concrete injuries, and does not consider violations of the FDCPA, the Defendants' reliance on *Gubala* in this instance is misplaced.

2016 U.S. Dist. LEXIS 170421, *8

In this case, Plaintiff has Article III standing to bring her claims against the Defendants under the FDCPA. The FDCPA established [*9] a new right to receive required disclosures from debt collectors and a new injury for failure to receive such disclosures. *See Church, 654 Fed. Appx. at 994*; *George, 2016 U.S. Dist. LEXIS 164096, 2016 WL 6963990, at \*2-3*; *Saenz, 2016 U.S. Dist. LEXIS 127784, 2016 WL 5080747, at \*2*. Plaintiff alleges that she received deficient and misleading information regarding her debts, which is a "harm defined and made cognizable" by the FDCPA. *Saenz, 2016 U.S. Dist. LEXIS 127784, 2016 WL 5080747, at \*2*. Because the alleged injury is a defined and cognizable harm under the FDCPA, it is more than a bare procedural violation of the statute. Therefore, the harm alleged by Plaintiff is a concrete injury in fact sufficient to find Article III standing.

### III. FAILURE TO STATE A CLAIM

Having established that Plaintiff has standing under the FDCPA, the Court now turns to Defendants' claim that Plaintiff failed to state a claim, pursuant to *Rule 12(c)*. In the Complaint, Plaintiff asserts that the Letters are confusing because they do not clearly communicate the current creditor that owns Plaintiff's debts. Dkt. No. 1, ¶¶ 7-8. Defendants argue that because the Letters contain the name of the current creditor and communicate the current creditor in a sufficiently clear manner, Plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted. Dkt. No. 47, at 17-22.

The Court decides motions [*10] brought under *Rule 12(c)* by the same standard as that for a motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)* ("*Rule 12(b)(6)*"). *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, 335 F.3d 643, 647 (7th Cir. 2003)*. The Court may consider only the pleadings and must view the allegations in the light most favorable to the non-moving party. *See id.* The pleadings include the complaint, the answers, and any documents attached thereto as exhibits. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452-53 (7th Cir. 1998)*; *Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994)* (stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"). The Court may also take judicial notice of matters of public record and not subject to reasonable dispute. *See*

*Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012)* (citations omitted). Furthermore, "[a] judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed." *All Am. Ins. Co. v. Broeren Russo Constr., Inc., 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000)*.

Generally, the Court will presume the facts as alleged by Plaintiff to be true, but it is not bound by Plaintiff's legal characterization of facts. *See Nat'l Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 358 (7th Cir. 1987)*. Under *Rule 12(b)(6)*, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of Plaintiff. *See Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995)*.

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, to survive a motion to dismiss for failure to state [*11] a claim upon which relief may be granted, a plaintiff must provide the grounds for his entitlement to relief with more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Id. at 555* (citing *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)*). The "allegations must be enough to raise a right to relief above the speculative level." *Id.* The touchstone is whether the Complaint gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). Legal conclusions or conclusory allegations are insufficient to state a claim for relief. *McCauley v. City of Chicago, 671 F.3d 611, 617 (7th Cir. 2011)*.

When assessing a claim made under the FDCPA, the Court must "view the claim through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc., 455 F.3d 754, 758 (7th Cir. 2006)* (quoting *Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)*). When looking specifically at a *Section 1692g* claim, whether a debt collector's notice would be confusing to an unsophisticated consumer is a question of fact. *See McMillan, 455 F.3d at 758*; *see also, Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 776 (7th Cir. 2007)* (stating that the deceptive character of a debt collector's dunning letter is viewed as a question of fact in the Seventh Circuit, despite other circuits evaluating it as a question of law); *Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 636 (7th Cir.*

*2012)*. "However, as a matter of law, [the Court] shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan, 455 F.3d at 758*. [*12] A debt collector's notice will not be deemed a violation of *Section 1692g*, "unless 'a significant fraction of the population would be ... mislead'" by the notice. *Id.* (quoting *Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 414 (7th Cir. 2005))*.

Because the Seventh Circuit treats confusion under *Section 1692g* as a question of fact, "dismissal is typically not available under *12(b)(6)* [or *Rule 12(c)*], which is appropriate only when there is no set of facts consistent with the pleadings under which the plaintiff could obtain relief." *McMillan, 455 F.3d at 759*. The Seventh Circuit has cautioned district courts against determining whether a debt collector's communication is confusing as a matter of law under the FDCPA because "[#x2bb]district court judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects.'" *Id.* (quoting *Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 501-503 (7th Cir. 1999))*.

Although the Defendants argue that the Letters are sufficiently clear to find that an unsophisticated consumer could not be confused by the text of the Letters as a matter of law, the Court is not persuaded by this argument. Based upon the text of the Letters, without

more, a significant fraction of the population could question whether the current creditor is Jefferson Capital, Fenton & McGarvey, or Comenity Bank without requiring a "bizarre, peculiar, or idiosyncratic [*13] interpretation." *See McMillan, 455 F.3d at 758*. Accordingly, the Court finds that the violation of *Section 1692g* alleged in the Complaint is a question of fact and, therefore, cannot dismiss the Complaint for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings.

IT IS SO ORDERED this 9th day of December, 2016.

/s/ Larry J. McKinney

LARRY J. McKINNEY, JUDGE

United States District Court

Southern District of Indiana