IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

BRIAN J. MARTIN, et al.,

v.                                          Case No. 2:15-cv-12838

TROTT LAW P.C., et al.,                     Hon. David M. Lawson

        Defendants.                         Mag. Judge David R. Grand

---

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, OH  44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Charity A. Olson (P 68295)
OLSON LAW GROUP
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
colson@olsonlawpc.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Avenue, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

---

## PLAINTIFFS' CITATION OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR COMBINED RULE 12(C) AND 12(F) MOTION FOR JUDGMENT ON OR TO STRIKE AFFIRMATIVE DEFENSES

Plaintiffs, through their counsel, respectfully submit the following

supplemental authority in support of their Motion seeking to dispose of certain

affirmative defenses pleaded by Defendants (ECF Doc. # 55).

At oral argument on the Motion held March 2, 2017, counsel for Defendant David A. Trott stated that his client was relying on information in the possession of his co-defendant, Trott Law PC (Trott PC), for his bona fide error affirmative defense. David Trott Affirmative Defense No. 7, ECF Doc. # 51, Page ID 1803. Counsel for Trott PC argued, *inter alia*, that her client's bona fide error affirmative defense was legally sufficient because this defense can be based on a defendant's mistaken understanding of state law. Trott PC Affirmative Defense No. 5, ECF Doc. # 52 at Page ID 1832. Counsel did not proffer any case citations to support this argument, described herself as an authority on the topic, alluded generally to unnamed cases as support, and referenced a "split" of case law on this issue.

This argument (that the FDCPA bona fide error defense is available to shield a defendant's errors of state law) had not been made in either Defendant's Response to the Motion.

To assist the Court, Plaintiffs provide the following citation of supplemental authorities on this point:

- *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) ("The Supreme Court [in *Jerman*][1] declined to address whether the defense is available for mistakes of law other than the FDCPA itself, *but the discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability*.") (citation omitted; emphasis added);

---

[1] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573 (2010).

2

- *Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 646-47 (11th Cir. 2015) (holding that bona fide error defense does not apply to mistakes of state law) (Exh. A, attached);

- *Harden v. Autovest, L.L.C.,* Case No. 1:15-cv-34, 2016 U.S. Dist. LEXIS 164728 at *1-7 (W.D. Mich. Nov. 30, 2016) (same, based upon *Jerman's* analysis and *Wise*) (citing cases) (Bell, J.) (Exh. B, attached); and

- *Moxley v. Pfundstein,* Case No. 1:10-CV-2912, 2012 U.S. Dist. LEXIS 146868 (N.D. Ohio Oct. 11, 2012) (same) (Exh. C, attached);

*See also*:

- *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 532 (6th Cir. 2014) (reversing dismissal of FDCPA claim premised on collection activity in violation of state law); and

- *Stratton v. Portfolio Recovery Associates, LLC,* 770 F.3d 443, 449 (6th Cir. 2014) ("Strict liability [under FDCPA] places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief.") (reversing dismissal of FDCPA claim based on violation of state law).

*But see*:

- *Stratton v. Portfolio Recovery Assocs., LLC,* 171 F. Supp. 3d 585 (E.D. Ky. 2016), *appeal docketed*, No. 16-5468 (6th Cir. Apr. 15, 2016)[2] (stating in *dicta*, without citation of supportive authority, that the bona fide error defense applies to mistakes of law); and

- *Newton v. Portfolio Recovery Assocs., LLC,* Case No. 2:12-cv-698, 2014 U.S. Dist. LEXIS 11490 at *16-17 (S.D. Ohio Jan. 30, 2014) (stating in *dicta* that bona fide error defense applies to errors of law other than FDCPA, relying on *Durthaler, infra*) (Exh. D, attached); and

---

[2] Oral argument is scheduled in the second *Stratton* appeal for March 16, 2017, at 9:00 a.m. The applicability of the bona fide error defense to mistakes of law other than the FDCPA was briefed by the parties on appeal.

- *Durthaler v. Accounts Receivable Mgmt.,* 854 F. Supp. 2d 485, 493 (S.D. Ohio 2012) (stating in *dicta* that the bona fide error defense applies to mistakes of law, and citing as sole support the Sixth Circuit's overturned *Jerman* decision without citation to the Supreme Court's reversal of that decision).

Dated:      March 3, 2017

Respectfully submitted,

_____
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S. Main St., Suite 118
P. O. Box 7711
Ann Arbor, Michigan  48107
Phone:  (734) 274-9374
drewmcg@topclasslaw.com

Daniel R. Karon
Beau Hollowell
KARON LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.

*/s/ Andrew J. McGuinness*

# EXHIBIT A



1 of 4 DOCUMENTS

**KEVIN PRESCOTT, Plaintiff-Appellant, versus SETERUS, INC., Defendant-Appellee.**

**No. 15-10038 Non-Argument Calendar**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

*635 Fed. Appx. 640*; *2015 U.S. App. LEXIS 20934*

**December 3, 2015, Decided**

**NOTICE:** DO NOT PUBLISHPLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** On remand at, Motion denied by *Prescott v. Seterus, Inc., 2016 U.S. Dist. LEXIS 73348 (S.D. Fla., May 18, 2016)*
Summary judgment granted by, Motion denied by, As moot *Prescott v. Seterus, Inc., 2016 U.S. Dist. LEXIS 107693 (S.D. Fla., July 7, 2016)*

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 0:13-cv-62338-BB.
*Prescott v. Seterus, Inc., 2014 U.S. Dist. LEXIS 186009 (S.D. Fla., Dec. 4, 2014)*

**COUNSEL:** For KEVIN PRESCOTT, Plaintiff - Appellant: J. Dennis Card, Jr., Consumer Law Organization, PA, HOLLYWOOD, FL.

For SETERUS, INC., Defendant - Appellee: Seric James Fallon, Groelle & Salmon, P.A., MIAMI, FL; Ernest P. Wagner, McGinnis Wutscher LLP, CHICAGO, IL; Christopher Patrick Hahn, McGinnis Wutscher, LLP, MIAMI, FL; Hector Enrique Lora, Law Office of Hector E. Lora, MIAMI, FL.

**JUDGES:** Before ED CARNES, Chief Judge, WILSON, and JULIE CARNES, Circuit Judges.

**OPINION**

[*642] PER CURIAM:

Kevin Prescott appeals the district court's grant of summary judgment to Seterus, Inc. on his claims alleging violations of the Fair Debt Collection Practices Act (FDCPA), *15 U.S.C. § 1692 et seq.*, and the Florida Consumer Collections Practice Act (FCCPA), *Fla. Stat. § 559.55 et seq.* We reverse and remand for further proceedings consistent with this opinion.

I.

In April 2004 Prescott purchased real property in Pembroke Pines, Florida. To fund the purchase, he obtained a $160,000 loan from Bank of America secured by a mortgage on the property.[1] A few sections of the security agreement that Prescott signed are relevant to his appeal.

1 Prescott actually obtained that mortgage [**2] jointly with his wife Debby Ann. As far as we can tell, however, Prescott has pursued this lawsuit on his own, so we refer to him individually.

Section 9 provides, in pertinent part, that

[i]f [] Borrower fails to perform the covenants and agreements contained in this Security Instrument, ... then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including ... (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding ... Any amounts disbursed by Lender under this [section] shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Section 14 provides that

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' [**3] fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Prescott defaulted on his mortgage on August 1, 2012. Seterus began servicing the mortgage on October 1, 2012.[2] Because Prescott was in default, Seterus prepared to initiate foreclosure proceedings against him. Seterus retained the law firm of Kahane and Associates to provide legal services associated with the foreclosure.

2   Bank of America assigned Prescott's mortgage to the Federal National Mortgage Association on

October 26, 2012. Seterus remained the loan servicer after the assignment.

[*643]   Prescott asked Seterus to reinstate his mortgage in August 2013. Under Section 19 of the security instrument, he was entitled to reinstatement if he satisfied "certain conditions," including

(a) pay[ing] Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cur[ing] any default of any other covenants or agreements; (c) [**4] pay[ing] all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) tak[ing] such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged...

On September 4, 2013, Seterus sent Prescott a letter showing the total amount he needed to pay for his loan to be reinstated. The letter stated that the reinstatement balance -- $15,569.64 -- was "good through 9/27/2013." That balance included property inspection and legal fees, among other charges. Specifically, it included $165 in incurred property inspection fees and $15 in "estimated" property inspection fees. It also included $1,125 in incurred attorney's fees and $3,175 in "estimated" attorney's fees.[3] The estimated fees were marked "estimated" and were listed in a separate section of the letter labeled "Estimated Charges Through 9/27/2013." The [**5] letter also included the following language: "This communication is from a debt collector as we sometimes act as a debt collector. We are attempting to collect a debt and information obtained will be used for that purpose."

3   Seterus obtained this estimate from Kahane and Associates. Kahane and Associates billed

635 Fed. Appx. 640, *643; 2015 U.S. App. LEXIS 20934, **5

Seterus for each "step" in the foreclosure process. The firm charged $1,125 for the first step and would have charged $3,175 for the second.

Prescott paid the full reinstatement balance on September 26, 2013, and Seterus reinstated his mortgage loan. On November 14, 2013, Seterus refunded Prescott the $3,175 in estimated legal fees because those fees were not incurred before Seterus reinstated the mortgage. Seterus did not refund Prescott the estimated property inspection fees, however, because those fees were incurred before reinstatement.[4]

> 4  Because Prescott does not address the property inspection fees in his briefs to this Court, he has abandoned any challenge to them. See *Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994).*

About a week after his loan was reinstated, Prescott filed a lawsuit against Seterus in Florida state court, asserting that the inclusion of estimated attorney's fees in his reinstatement balance violated *§§ 1692e(2)* and [**6] *1692f(1)* of the FDCPA and *§ 559.72(9)* of the FCCPA. Seterus removed the case to federal court, and the parties filed motions for summary judgment. The district court granted summary judgment for Seterus on all of Prescott's claims. He appealed. We review the district court's judgment de novo. See *LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 (11th Cir. 2010).*

II.

Prescott first contends that Seterus violated *§§ 1692(2)* and *1692f(1)* of the FDCPA by including estimated attorney's fees in his reinstatement balance. We agree.

The FDCPA "regulates what debt collectors can do in collecting debts." *Miljkovic* [*644] *v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015).* Because Congress enacted the statute primarily to protect consumers, we evaluate the circumstances giving rise to an alleged FDCPA violation from the perspective of the least sophisticated consumer. See *Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258-59 (11th Cir. 2014); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).* The least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc, 601 F.3d at 1194; see also Jeter 760 F.2d at*

*1175 n.6* (the least sophisticated consumer is "on the low side of reasonable capacity"). That standard protects "naïve consumers" and "prevents liability for bizarre or idiosyncratic interpretations of collections notices by preserving a quotient of reasonableness." *LeBlanc, 601 F.3d at 1194.*

*Section 1692f* of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect [**7] or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *15 U.S.C. § 1692f(1).* Prescott contends that he was not expressly obligated under the security agreement to pay for estimated attorney's fees. We agree.

The security agreement does obligate Prescott to pay for attorney's fees and other expenses that Seterus actually incurred as a result of his default, but nothing in it explicitly states that Prescott must pay estimated fees for future legal services. The question is whether the least sophisticated consumer would have nonetheless understood the agreement to obligate Prescott to pay such fees. See *LeBlanc, 601 F.3d at 1200-01.* The answer is no.

In order to reinstate his loan, Section 19 of the security agreement required that Prescott pay all past-due amounts, including the fees and costs incurred as a result of his default; completely cure any defaults; and "take such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under the Security Instrument and [Prescott's] obligation to pay the sums [**8] secured by [the] Security Instrument shall continue unchanged." According to Seterus and the district court, that quoted language allowed Seterus to charge Prescott estimated attorney's fees to cover any legal expenses that it might have incurred between September 4 (when it mailed the reinstatement letter) and September 27 (when the reinstatement quote expired).

The least sophisticated consumer would not have understood the language of Section 19 of the agreement to reach so broadly. The remainder of the agreement obligated the borrower to pay only those fees "incurred" or "disbursed" by the lender for "services performed in connection with [his] default." That past-tense language does not encompass forward-looking estimated fees. See *Kaymark v. Bank of Am., 783 F.3d 168, 175 (3d Cir.*

*2015*) (finding that the "most natural reading" of similar language, when viewed "through the lens of the least-sophisticated consumer," was "that [the lender] was not authorized to collect fees for not-yet-performed legal services and expenses"); see also *Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 609-10 (11th Cir. 2014)* (holding that a debt collector violated *§ 1692f* by charging the debtor a 33-and-1/3% "collection fee" where the agreement at issue only demanded that he pay "all costs of collection"). Because the least sophisticated consumer [**9] would not have understood that the security agreement "expressly authorized" [*645] Seterus to charge estimated fees for legal services not yet rendered, we reverse the district court's grant of summary judgment on Prescott's *§ 1692f(1)* claim.

Prescott also contends that the estimated attorney's fees charged by Seterus violated *§ 1692e* of the FDCPA. We agree. That section provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." *15 U.S.C. § 1692e(2)*.

In granting summary judgment to Seterus on that claim, the district court focused on the fact that Seterus had not misrepresented the nature of the estimated fees in the reinstatement letter. It is true that Seterus clearly separated the estimated fees from those already incurred and conspicuously marked those charges as "estimated." Even the least sophisticated consumer would have understood that the estimated fees were just that -- estimates. See *Elyazidi v. Suntrust Bank, 780 F.3d 227, 235 (4th Cir. 2015)*. So it is clear that Seterus did not falsely [**10] misrepresent the character of those fees as prohibited by *§ 1692e(2)(A)*.

But *§ 1692e(2)* also prohibits the false representation of any "compensation which may be lawfully received by any debt collector for the collection of a debt." *15 U.S.C. § 1692e(2)(B)*. Seterus violated that provision when it demanded that Prescott pay estimated attorney's fees before it would reinstate his loan, because Seterus could not "lawfully receive" those fees under the terms of the security agreement.[5] That is true even if Seterus believed it was entitled to those fees. See *Wise v. Zwicker & Assocs., P.C., 780 F.3d 710, 713 (6th Cir. 2015)* (noting

that, under *§ 1692e*, "if a debt collector seeks fees to which it is not entitled, it has committed a prima facie violation of the Act, even if there was no clear prior judicial statement that it was not entitled to collect the fees"); *Stratton v. Portfolio Recovery Assocs., LLC, 770 F.3d 443, 449 (6th Cir. 2014)* (describing the FDCPA as "plac[ing] the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief"). We therefore reverse the district court's grant of summary judgment to Seterus on Prescott's *§ 1692e(2)* claim.

> 5   In its brief to this Court, Seterus insists that it included the estimated attorney's fees in the reinstatement balance [**11] as a "convenience" to Prescott, so that he could be certain that his payment would satisfy his reinstatement obligations even if Seterus incurred additional fees during the period covered by the reinstatement letter. Had he paid less, Seterus argues, it may have nonetheless reinstated his loan. But the least sophisticated consumer could not have gleaned that from the reinstatement letter, which clearly said that "[t]he amount required to reinstate [the] loan" was $15,569.64 -- an amount including $3,175 in estimated attorney's fees.

Finally, Prescott contends that the inclusion of estimated legal fees in the reinstatement letter violated the FCCPA, a Florida law under which individuals collecting consumer debts cannot "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *Fla. Stat. § 559.72(9)*. The district court's summary judgment order stated that it "reached the same conclusion" with respect to this claim as it did on Prescott's FDCPA claims. [*646] Because Seterus is not entitled to summary judgment on Prescott's FDCPA claims, the summary judgment against him on his [**12] FCCPA claim cannot stand either, at least not on the grounds stated.

Although the Florida statute is modeled after the FDCPA, see *Fla. Stat. § 559.77(5)*, the two statutes are not identical. For example, the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge that the threatened means of

635 Fed. Appx. 640, *646; 2015 U.S. App. LEXIS 20934, **12

enforcing the debt was unavailable." *LeBlanc, 601 F.3d at 1192 n.12*. Some evidence in the record suggests that Seterus may not have known that it could not charge estimated fees under the security agreement. Because the district court based its FCCPA ruling solely on its FDCPA rulings, however, we will allow the district court to consider that issue in the first instance on remand.

III.

Seterus contends that even if we reach the result that we have, it should nonetheless prevail because it is entitled to summary judgment on other grounds. It is true that we "may affirm for any reason supported by the record, even if not relied on by the district court." *Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 778 n.3 (11th Cir. 2002)*. But Seterus is not entitled to summary judgment on either of the alternative grounds it suggests.

Seterus first argues that we should affirm the district court's grant of summary judgment in its favor because Prescott failed to present sufficient evidence [**13] that it is a "debt collector," as defined by the FDCPA and the FCCPA. See *15 U.S.C. § 1692a(6)* (defining a debt collector as one whose "principal purpose . . . is the collection of debts" or one "who regularly collects or attempts to collect . . . debts owed . . . to another"); *Fla. Stat. § 559.55(7)* (same). The district court did not directly address this issue, noting only that the parties had stipulated that Seterus "acquired [Prescott's] mortgage after it was in default."

Although Seterus denied being a debt collector in its answer to Prescott's complaint, it did not move for summary judgment on that ground. We decline in this instance to affirm the district court's grant of summary judgment on a ground that Seterus failed to raise before that court. See *Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004)* ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

Seterus also argues that its actions resulted from "bona fide error," relieving it of liability under the FDCPA and the FCCPA. The FDCPA "typically subjects debt collectors to liability even when violations are not knowing or intentional," but it "affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." [**14] *Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270-71 (11th Cir. 2011)*. Section *1692k(c)* insulates debt collectors from liability "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *15 U.S.C. § 1692k(c)*; see *Fla. Stat. § 559.77(3)* (same). The Supreme Court has held that the FDCPA's bona fide error defense does not encompass "mistakes of law" or "misinterpretations of the requirements of the Act." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581, 587, 130 S. Ct. 1605, 1611, 1615, 176 L. Ed. 2d 519 (2010)*. Instead, the bona fide error defense protects against liability for "errors like clerical or factual mistakes." *Id. at 587, 130 S. Ct. at 1614*.

[*647] Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security agreement. That violation may have resulted from a "mistaken interpretation of the legal requirements of the FDCPA" or from a mistaken interpretation of the agreement itself. See *id. at 576, 130 S. Ct. at 1608*. Either way, the violation did not result from a factual or clerical error. Because under Jerman the bona fide error defense does not excuse Seterus' faulty legal reasoning, we cannot affirm the district court's grant of summary judgment to Seterus on that basis.

The district court's judgment is **REVERSED** and the case is **REMANDED** [**15] for further proceedings consistent with this opinion.[6]

6   Seterus' motion to strike certain portions of Prescott's reply brief is **DENIED** as moot.

# EXHIBIT B



**DANIEL M. HARDEN, Plaintiff, v. AUTOVEST, L.L.C., Defendant.**

**File No. 1:15-cv-34**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2016 U.S. Dist. LEXIS 164728*

**November 30, 2016, Decided**
**November 30, 2016, Filed**

**PRIOR HISTORY:** *Harden v. Autovest, L.L.C., 2015 U.S. Dist. LEXIS 98584 (W.D. Mich., 2015)*

**COUNSEL:** [*1] For Daniel M. Harden, for himself and a class, plaintiff: Michael O. Nelson, LEAD ATTORNEY, Grand Rapids, MI; Curtis Charles Warner, Warner Law Firm, LLC, Park Ridge, IL.

For Autovest, L.L.C., defendant: Kathleen H. Klaus, Maddin Hauser Wartell Roth & Heller PC, Southfield, MI.

**JUDGES:** HON. ROBERT HOLMES BELL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ROBERT HOLMES BELL

**OPINION**

Plaintiff Daniel Harden brings this action against Defendant Autovest, LLC (Autovest), claiming that Defendant filed a time-barred debt collection action against him in state court, in violation of the *Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.* Before the Court are Autovest's motions in limine (ECF Nos. 119, 146), Harden's motion in limine (ECF No. 129), and Autovest's motion to dismiss Plaintiff's claim for attorney's fees (ECF No. 152).

**A. Bona Fide Error Defense**

Several of the motions in limine raise issues related to Autovest's "bona fide error" defense. "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to [*2] avoid any such error." *15 U.S.C. § 1692k(c)*.

Autovest apparently intends to show that the filing of its action against Plaintiff in state court was the result of a bona fide error because its counsel informed it that Michigan law provided for a 6-year statute of limitations. This Court held that the applicable statute of limitations was four years. (7/29/2015 Op., ECF No. 22.) The Court asked the parties to brief the issue of whether the bona fide error defense is available to Defendant in the circumstances of this case, where Defendant claims that it made a mistake regarding the requirements of state law. The parties have done so.

In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 538 F.3d 469 (6th Cir. 2008)* ("*Jerman I*"), the Sixth Circuit held that the bona fide error defense is generally available for mistakes of law. *Id. at 476*; accord *Durthaler v. Accounts Receivable Mgmt., Inc., 854 F. Supp. 2d 485, 493 (S.D. Ohio 2012)* (citing *Jerman I*); *Rice v. Javitch Block & Rathbone, LLP, Nos. 2:04-cv-00951, 2:04-cv-00972, 2011 U.S. Dist. LEXIS 98703, 2011 WL 3861701, at *6 (S.D. Ohio Aug. 31,*

2011) (same). However, the Sixth Circuit's decision was reversed by the Supreme Court. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010)* ("*Jerman II*"). The Supreme Court held that the bona fide error defense does not apply to a mistake in the interpretation of the FDCPA. *Id. at 605-06.* It declined to decide whether the defense would apply to other mistakes of law, such as a mistake of state law. *Id. at 580 n.4.*

Some courts have extended [*3] the reasoning in *Jerman II* to mistakes of state law. *See, e.g., Moxley v. Pfundstein, 2012 U.S. Dist. LEXIS 146868, 2012 WL 4848973 (N.D. Ohio Oct. 11, 2012)* (misinterpretation of Ohio law is not a bona fide error); *McDermott v. Marcus, Errico, Emmer & Brooks, PC, 911 F. Supp. 2d 1, 82 (D. Mass 2012)* ("Three principles used to support the holding in *Jerman* lead to the conclusion that *section 1692k(c)* does not encompass mistakes based on state law."); *New v. Gemini Capital Corp., 859 F. Supp. 2d 990, 998 (S.D. Iowa 2012)* (reasoning of *Jerman II* applies to mistakes of state law); *Ballou v. Law Offices Howard Lee Schiff, PC, 713 F. Supp. 2d 79 (D. Conn. 2010)* (same); *see also Chung v. Shapiro & Denardo, LLC, 2015 U.S. Dist. LEXIS 76860, 2015 WL 3746332 (D.N.J. June 15, 2015)* (mistakes of law do not provide immunity). The Sixth Circuit has also suggested, but has not expressly held, that the reasoning in *Jerman II* extends to mistakes of state law. *See Wise v. Zwicker & Assocs., PC, 780 F.3d 710, 713 (6th Cir. 2015)* ("The Supreme Court declined to address whether the defense is available for mistakes of law other than the FDCPA itself, but the discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability.") (citation omitted).

In contrast, other courts in this Circuit have held that the bona fide error defense is available to mistakes of state law, even after *Jerman II. See, e.g., Stratton v. Portfolio Recovery Assocs. , LLC, 171 F. Supp. 3d 585 (E.D. Ky. 2016)* ("This affirmative defense applies to both mistakes of state law and clerical errors.") (citing *Wise*); *Newton v. Portfolio Recovery Assocs., LLC, 2014 U.S. Dist. LEXIS 11490, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014)* (citing *Durthaler*, but noting that mistakes in interpretation of the FDCPA are not bona fide errors). Autovest relies upon a case outside the Sixth Circuit, *Gray v. Suttell & Assocs., 123 F. Supp. 3d 1283 (E.D. Wash. 2015). See* [*4] *id. at 1289* ("The trend in the case law appears to be toward allowing the bona fide

error defense where the law is not clear[.]"). But *Gray* relies on cases decided before *Jerman II*, and does not address the reasons given by the Supreme Court that would apply to all mistakes of law, including mistakes of state law. *See McDermott, 911 F. Supp. 2d at 82.*

The Court is persuaded that the bona fide error defense does not extend to mistakes of state law. In *Jerman II*, the Supreme Court gave several reasons for its holding that a mistake in what is required by the FDCPA is not subject to the bona fide error defense. Among them are: (1) "the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally"; (2) "when Congress has intended to provide a mistake-of-law defense to civil liability, it has often done so more explicitly than [in the FDCPA]"; (3) violations of the FDCPA need not be "willful," "a term more often understood in the civil context to excuse mistakes of law"; (4) the aspect of the bona-fide error defense requiring "procedures reasonably adapted to avoid any such error" is "more naturally read to apply to processes that have mechanical or other such 'regular orderly' [*5] steps to avoid mistakes," but "legal reasoning is not a mechanical or strictly linear process"; (5) "the uniform interpretations of three Courts of Appeals holding that the TILA defense[, which is identical to the bona-fide error defense in the FDCPA,] does not extend to mistakes of law"; (6) concern that "nonlawyer debt collectors could obtain blanket immunity for mistaken interpretations of the FDCPA simply by seeking the advice of legal counsel"; and (7) concern that "consumers will have little incentive to bring enforcement actions 'where the law [i]s at all unsettled, because in such circumstances a debt collector could easily claim bona fide error of law.'" *Jerman II, 559 U.S. at 581-603* (citations omitted). All of these reasons also apply to mistakes of state law. The Supreme Court did not, as Autovest suggests, distinguish errors in interpretation of the FDCPA from errors of state law. Rather, the Court held that the issue of errors of state law was not before the Court. *Id. at 580 n.4.* Thus, the reasoning in *Jerman II* is consistent with the conclusion that a mistake of state law is not a bona fide error.

Autovest contends that the Supreme Court held that errors regarding a violation of the FDCPA can never be not intentional, [*6] but Autovest makes no compelling argument for why a violation of the FDCPA is intentional when it involves a mistaken interpretation of the FDCPA, but not intentional when it involves a mistaken

interpretation of state law. *See Jerman II, 559 U.S. at 582* ("Our law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."). Whether the mistake is in interpretation of state law or a mistake in interpretation of the FDCPA, it is still a mistake of law, and has the same effect on a party's intent with respect to the violation.

Thus, the Court concludes that the bona fide error defense is not available to Autovest. Its alleged mistake in interpreting the applicable statute of limitations under Michigan law is not an error to which the defense would apply.

## B. Autovest's First Motion in Limine

### 1. Secretary of State records

Autovest asks the Court to exclude as evidence records introduced by Plaintiff from the Secretary of State that are not properly authenticated and for which no foundation is laid. Harden does not object to these requirements per se; rather, he asserts that he will introduce records [*7] that have been certified. Certified records from the Secretary of State are self-authenticating and are not hearsay. *People v. Khoshaba, No. 257484, 2006 Mich. App. LEXIS 1128, 2006 WL 932408, at *4 (Mich. Ct. App. Apr. 11, 2006)* (citing *Mich. R. Evid. 803(8), 902(1)*); *see United States v. Crute, 238 F. App'x 903, 905 (3d Cir. 2007)* (state vehicle registration records are excluded from hearsay under *Fed. R. Evid. 803(8)*); *see also Fed. R. 902(4)* (describing certified copies of official records as self-authenticating). Accordingly, the Court will permit Harden to introduce certified records or certified copies of records from the Secretary of State.

### 2. Evidence of Litigation in Other States

Autovest contends that Harden seeks to introduce evidence that it has filed time-barred actions in states outside of Michigan. Autovest contends that this evidence is irrelevant and is more prejudicial than probative. Harden contends that the evidence is relevant to Autovest's bona fide error defense. Because the bona fide error defense is not available, however, the Court agrees that this evidence is not relevant to the issues in dispute in this matter, namely, whether Autovest sought to recover a debt from Plaintiff that is covered by the FDCPA. At this stage of the proceedings, there is no dispute that Autovest filed a time-barred action against

Plaintiff. Thus, Autovest's motion will be granted as to this evidence. [*8]

## C. Autovest's Second Motion in Limine & Motion to Dismiss

Autovest seeks to exclude Harden's claim for attorney's fees and costs under the FDCPA, which, "in the case of a successful action," provides for recovery of "the costs of the action together with a reasonable attorney's fee as determined by the court." *15 U.S.C. § 1692k(a)(3)*. First, Autovest notes that Harden did not disclose that he was seeking such fees or costs as damages. Because the amount of attorney's fees and costs will not be presented to the jury, and is not an issue for trial, the Court will defer a ruling on this issue. Autovest can re-raise the issue in an objection to a post-trial motion for attorney's fees and costs.

Second, Autovest contends that Harden lacks standing to pursue attorney's fees and costs under *Article III of the Constitution*, because Harden assigned the right to these fees to his attorney. Autovest has also filed a motion to dismiss Harden's claim for attorney's fees for the same reason.

The retainer agreement between Harden and his attorney states that:

> Client assigns over to Attorneys any right to all attorney's fees and costs that are obtainable under *15 U.S.C. § 1692k*. If through settlement or court award attorney's fees and costs are obtained in this matter, Client [*9] expressly disclaims these amounts of attorney's fees and costs and agrees that such attorney's fees and costs are to be paid by the Defendant directly to Attorneys.

(ECF No. 136.) Although this provision assigns Harden's rights to attorney's fees and costs that are "obtainable" and that "are obtained," it does not assign Harden's right to recovery of those fees and costs. Autovest's interpretation of the agreement is wholly inconsistent with the language and plain intent of the parties. Autovest's interpretation would render attorney's fees and costs unobtainable, because if Harden cannot recover the attorney's fees and costs, then no one can. Harden's attorney is not a party to this action, and does not have standing to bring a claim on his own behalf under the

2016 U.S. Dist. LEXIS 164728, *9

FDCPA. Harden and his attorney could not have intended that this clause would prevent Harden and/or his attorney from obtaining any attorney's fees and costs. Thus, the motion in limine and motion to dismiss will be denied.

**D. Harden's Motion in Limine**

In his motion in limine, Harden seeks to exclude the expert testimony of Richard Roosen, counsel for Autovest at the time that it filed its collection lawsuit against Plaintiff. Roosen [*10] will allegedly testify about the advice that he gave Autovest regarding the statute of limitations. This testimony is necessary for, and relevant to, Autovest's bona fide error defense. Harden seeks to exclude this testimony because Roosen was not properly disclosed as an expert. The Court finds that this testimony is irrelevant because the bona fide error defense is not available to Defendant. Consequently, Harden's motion will be granted on relevance grounds.

An order will be entered consistent with this opinion.

Dated: November 30, 2016

/s/ Robert Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE

**ORDER**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Defendant's motion to exclude evidence of non-certified records from the Secretary of State and evidence of actions filed in other states (ECF No. 119) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to exclude the testimony of Richard Roosen (ECF No. 129) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motions to dismiss Plaintiff's claim for attorney's fees and costs (ECF No. 152) and to exclude evidence of attorney's fees and costs (ECF No. 146) are **DENIED**.

Dated: November 30, 2016

/s/ Robert [*11]  Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE

# EXHIBIT C



**MARY MOXLEY, Plaintiff, v. JOSEPH A. PFUNDSTEIN, Defendant.**

**CASE NO. 1:10-CV-2912**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2012 U.S. Dist. LEXIS 146868*

**October 11, 2012, Decided**
**October 11, 2012, Filed**

**PRIOR HISTORY:** *Moxley v. Pfundstein, 801 F. Supp. 2d 598, 2011 U.S. Dist. LEXIS 75633 (N.D. Ohio, 2011)*

**COUNSEL:** [*1] For Mary Moxley, Plaintiff: Robert J. Berk, Cleveland, OH.

For Joseph A Pfundstein, Defendant: Richard M. Conte, Pepper Pike, OH.

**JUDGES:** Kenneth S. McHargh, United States Magistrate Judge.

**OPINION BY:** Kenneth S. McHargh

**OPINION**

**MEMORANDUM OPINION**

On December 23, 2010, Plaintiff filed its Complaint against Defendant alleging Defendant violated the Fair Debt Collection Practices Act, *15 U.S.C. § 1692 et seq.* (the "FDCPA"). (Doc. 1). On March 8, 2012, the parties consented to the undersigned's jurisdiction over this matter. (Doc. 24). Now pending before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 28). The motion has been fully briefed by the parties and is ripe for review. For the reasons that follow, the undersigned **GRANTS** Plaintiff's motion.

**I. BACKGROUND**

The Court accurately set forth the factual and procedural background of this case in its Memorandum Opinion signed July 13, 2011, denying Defendant's Motion for Judgment on the Pleadings. (Doc. 18). Therefore, the undersigned herein restates the background information from the prior ruling.

Plaintiff Mary Moxley ("Plaintiff") entered into a "Consumer ML Loan Agreement" (the Consumer Loan Agreement") with All Kind Check Cashing d/b/a Cash Stop on November [*2] 5, 2009 to borrow $279.96. The Consumer Loan Agreement contained an attorney fee shifting provision. The provision purported to allow Cash Stop to charge Plaintiff attorney fees incurred to collect under the contract in the event of Plaintiff's default. The attorney fee provision stated:

Collection, Dishonor, and other Charges: You agree to pay a fee of Twenty Dollars ($20.00) plus any amount passed on from any banks or other financial institutions for each check

or negotiable instrument you issue in connection with this contract that is returned or dishonored for any reason. In addition, except as expressly prohibited by law, you agree to pay the reasonable attorneys' fees and other costs [L]ender has incurred to collect this contract in the event of your default.

When Plaintiff defaulted on the loan, Cash Stop hired Defendant to collect Plaintiff's debt under the Consumer Loan Agreement. Defendant is an attorney and a bill collector.

Defendant filed a complaint against Plaintiff in the Cleveland, Ohio Municipal Court on November 4, 2010 to collect Plaintiff's debt. The complaint requested judgment in the amount of $319.96, which included default charges and other fees, plus cost[s] [*3] and interest at the rate of 24.9% from the loan due date. In addition, the complaint sought $50.00 for attorney fees. The complaint stated, "In addition, whereas the defendant(s) agreed in the contract to pay reasonable attorneys' fees, the plaintiff requests $50.00." Defendant voluntarily dismissed the Municipal Court case on January 6, 2011.

Apparently believing that the best defense is a good offense, Plaintiff filed the instant Complaint in federal court on December 23, 2010. She pled that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692(e)* [sic] when Defendant included a prayer for attorney fees in its state court complaint. Plaintiff seeks more than $6,000.00 in damages for a mere $50.00 in attorney fees. The Complaint's single cause of action states:

Defendants [sic] violated

the FDCPA *§ 1692(e)* [sic] by using "false, deceptive, and misleading representation and means in connection with the collection of [sic] Plaintiff's debt. The FDCPA also prohibits false or misleading implications made by a lawyer to a lay person [citation omitted].

(Doc. 18 at 1-2). Plaintiff now moves the Court to enter summary judgment against Defendant.

## II. STANDARD OF [*4] REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*.[1] Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Ky., 490 F.2d 1273, 1275 (6th Cir. 1974)*. The Supreme Court held that:

. . . *Rule 56(c)*[2] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Rule 56* requires the opposing party:

to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Id. at 324*.

1   Civil *Rule 56* was totally revised by amendment effective December 2010. The

advisory committee note makes it clear that the standard for [*5] granting summary judgment remains unchanged. *See, e.g., Diaz v. Mitchell's Salon and Day Spa, Inc., No. 1:09CV882, 2011 U.S. Dist. LEXIS 9878, 2011 WL 379097, at *1 (S.D. Ohio Feb. 2, 2011)*. However, the specific language of the Rule has been modified.

2  Now *Rule 56(a)*.

The Sixth Circuit in *Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989)*, has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*, and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)*, as establishing a "new era" of favorable regard for summary judgment motions. *Street* points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. *Street, 886 F.2d at 1479*. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id*.

In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party [*6] opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990)*. However, "*Rule 56* does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . . *Rule 56* allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 379-80 (6th Cir. 2007)* (*citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 916 n. 7 (5th Cir. 1992)*) (alterations in original). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995)* (*quoting Street, 886 F.2d at 1480*). But, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. (*citing Anderson, 477 U.S. at 252*).

### III. LAW & ANALYSIS

#### A. Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act provides that "a debt collector [*7] may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *15 U.S.C. § 1692e (2006)*. In order to state a claim for a violation of the FDCPA, a plaintiff must show that (1) he/she is a consumer as defined by the act; (2) the debt arose out of a transaction entered into "primarily for personal, family, or household purposes"; (3) the defendant is a "debt collector" as defined by the act; and (4) the defendant violated a provision of the act. *Whittiker v. Deutsche Bank Nat'l Trust Co., 605 F.Supp.2d 914, 926 (N.D.Ohio 2009)*.

Defendant agrees that Plaintiff is a consumer, that the debt in question arose out of a transaction entered into primarily for family, personal or household purposes, and that he is a debt collector. Therefore, Plaintiff has satisfied the first three elements of a claim under the act. Defendant however contends Plaintiff is not entitled to summary judgment because there is a genuine dispute as to whether he violated the FDCPA.

#### B. Violation of FDCPA

Violations of the FDCPA are evaluated using the least sophisticated consumer test. *Turner v. Lerner, Sampson, & Rothfuss, 776 F.Supp.2d 498, 505 (N.D. Ohio 2011)* [*8] (citing *Lewis v. ACB Bus. Servs, Inc., 135 F.3d 389, 400 (6th Cir. 1998)*). Under this objective standard, "a false statement that is not deceptive applying the objective 'least sophisticated consumer test' is not a violation of the FDCPA." *Whittiker, 605 F. Supp. 2d at 929* (*citing Lewis, 135 F.3d at 401-02*). In determining whether the test is satisfied, the Court must analyze the defendant's alleged conduct from the perspective of an unsophisticated consumer. *Id*.

Plaintiff contends Defendant violated the FDCPA by requesting attorney fees in the amount of $50.00 as part of its complaint against Plaintiff in Cleveland Municipal Court. "Under Ohio law, creditors are not permitted to recover attorney fees incurred in connection with debt collection suits involving 'personal, family, or household' debt." *Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783, 802 (S.D.Ohio 2006)* (*citing OHIO REV. CODE § 1301.21[3] and Gionis v. Javitch, Block & Rathbone, 405 F. Supp. 2d 856, 862 (S.D.Ohio 2005)*). Therefore, seeking to collect such fees as part of one's prayer for relief has been deemed to violate the FDCPA because an

unsophisticated consumer could construe the request as an absolute entitlement [*9] to these fees, even though they are not recoverable under *Ohio Revised Code § 1301.21*.[4] *Foster, 463 F.Supp.2d at 802*. Defendant does not directly challenge this case law.

> 3   Effective June 29, 2011, *Ohio Revised Code § 1301.21* was repealed and redesignated under a new section number, *§ 1319.02*. H.R. 9, 129th Gen. Assemb., Reg. Sess. (Ohio 2011).
> 4   *See* n. 3 *supra*.

Instead, Defendant maintains he was entitled to recover attorney fees pursuant a different Ohio statute. With regard to attorney fee awards, Ohio courts generally adhere to the "American rule," which requires each party to bear its own fees. *McConnell v. Hunt Sports Ent., 132 Ohio App. 3d 657, 699, 725 N.E.2d 1193 (Ohio Ct. App. 10 Dist. 1999)*. However, there are three well-recognized exceptions to this rule: (1) where a contract provision shifts the assignment of costs; (2) where there is a finding of bad faith; and (3) where a statutory provision specifically permits for attorney fees to be awarded to a prevailing party. *Id*. Defendant asserts his actions were not violative of the FDCPA because *at the time* he filed the underlying complaint there was a *possibility* that attorney fees were recoverable pursuant to *Ohio Revised Code § 1321.57(H)(1)*.[5] [*10] This statute states in relevant part:

> In addition to the interest and charges provided for by this section, no further or other amount, whether in the form of broker's fees, placement fees, or any other fees whatsoever, shall be charged or received by the registrant, except costs and disbursements in connection with any suit to collect a loan or any lawful activity to realize on a security interest or mortgage after default, including reasonable attorney fees incurred by the registrant as a result of the suit or activity *and to which the registrant becomes entitled by law* . . . .

*OHIO REV. CODE § 1321.57(H)(1)* (emphasis added). Defendant points to the ruling in *Ohio Neighborhood Finance Inc. v. Evert, 2010 Ohio 797, 2010 WL 739938, at *2 (Ohio Ct. App. 5 Dist. 2010)* to support his interpretation of this statute.

> 5   Although the Consumer Loan Agreement between the parties contained a fee shifting provision, Judge Nugent already determined that this provision is void as a matter of Ohio law. (Doc. 18 at 7-9). Consequently, Defendant is not alleging that his request for fees was permitted by the contract.

Yet, this argument has already been considered and explicitly rejected by this [*11] Court. In Judge Nugent's Memorandum Opinion denying Defendant's Motion for Judgment on the Pleadings, the judge specifically held that *Ohio Revised Code § 1321.57(H)(1)* did not create an independent basis for Defendant to recover attorney fees from Plaintiff. (Doc. 18 at 6). The Court explained the statute only allowed recovery of attorney fees where they were *otherwise* permitted by law. In other words, while the statute contains language permitting recovery of attorney fees, it also restricts recovery to only those fees which the registrant is entitled to by law. As Judge Nugent aptly noted, "if the statute was read to create an independent right to attorney fees, the phrase 'and to which the registrant becomes entitled by law' would be virtually meaningless." *Id*. Likewise, Judge Nugent found Defendant's reliance upon *Ohio Neighborhood* to be misplaced because although the court acknowledged that *Ohio Revised Code § 1321.57(H)(1)* allowed for attorney's fees, it did not reach the question of whether Ohio law permitted the type of attorney fee shifting provision at issue in this case. Nor did the court review whether the statute created an independent entitlement to attorney fees. In [*12] fact, the court ultimately declined to award attorney fees.

In light of the Court's prior rulings on these issues, the undersigned declines to re-evaluate Defendant's arguments. The "law of the case" doctrine "discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings." *Bowles v. Russell, 432 F.3d 668, 676 (6th Cir. 2005)* (*citing U.S. v. Graham, 327 F.3d 460, 464 (6th Cir. 2003)*). Although the doctrine is only discretionary when applied to the same court's decisions, the undersigned sees no reason to disturb Judge Nugent's prior rulings as Defendant has not shown how they were clearly erroneous. *Id. at 677* (*citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L. Ed. 2d 811 (1988)*). Therefore, the undersigned adopts Judge Nugent's findings.

Lastly, in a final attempt to justify his actions, Defendant argues that his good faith belief that his actions were lawful *at the time committed* is sufficient to create a question as to whether he violated the FDCPA. Without explicitly stating so, it appears Defendant believes his conduct is excused under the bona fide error defense found within *15 U.S.C. § 1692k(c)* of the [*13] FDCPA.[6] To the extent Defendant relies upon this defense, it is not available to him. "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 538 F.3d 469, 476-77 (6th Cir. 2008) overruled on other grounds by 559 U.S. 573, 130 S.Ct. 1605, 176 L. Ed. 2d 519 (2010).*

> 6   Defendant notes that at the time he filed the underlying complaint, he had a good faith belief that attorney fees were recoverable under *Ohio Revised Code § 1321.57(H)(1)*. Defendant also maintains because there is no case law, even to date, explicitly disallowing the recovery of attorney fees under this statute, he should not be punished for failing to predict that seeking attorney fees pursuant to this statute would be in violation of the FDCPA.

The Supreme Court has held that a mistake of law is not a bona fide error. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S.Ct. 1605, 1606-08, 176 L.Ed.2d 519 (2010)* ("*Jerman II*"). Defendant alleges he sought [*14] to recover attorney fees from Plaintiff because he believed he was entitled to do so pursuant to *Ohio Revised Code § 1321.57(H)(1)*. However, Defendant's belief was wrong. As previously held, this statute does not create an independent basis for

a bill collector to seek attorney fees from a debtor. Defendant's misinterpretation of the law, a mistake of law, is not the type of mistake covered by the bona fide error defense. *See Jerman II, 130 S. Ct. at 1611-1613*; *see also Kempa v. CadleRock Joint Ventures, L.P., No. 10-11696, 2011 U.S. Dist. LEXIS 18575, 2011 WL 761500, at *3-5 (E.D.Mich. Feb. 25, 2011)* (finding defendant was not protected by the bona fide error defense because defendant committed acts believing incorrectly that it had the right to do so under the law, constituting a mistake of law which is not a bona fide error under *Jerman II*).

Because the FDCPA has been generally recognized as a strict-liability statute, even a good-faith error can give rise to liability. *See Gamby v. Equifax Info. Servs. LLC, 462 F. App'x 552, 556 (6th Cir. 2012)*. Accordingly, the undersigned finds Defendant violated the FDCPA by seeking to recover attorney fees in the underlying action, when such fees were not permitted by Ohio [*15] law.

## IV. DECISION

For the reasons herein stated, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, (Doc. 28). Accordingly, a hearing on damages will be held at **10:00 a.m., Wednesday, November 7, 2012**, in Courtroom 9B, Carl B. Stokes United States Courthouse, 801 West Superior Avenue, Cleveland, Ohio.

/s/ Kenneth S. McHargh

Kenneth S. McHargh

United States Magistrate Judge

Date: October 11, 2012.

# EXHIBIT D



**VERNICE NEWTON, Plaintiff, v. PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.**

**Case No. 2:12-cv-698**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION**

*2014 U.S. Dist. LEXIS 11490*

**January 30, 2014, Filed**

**COUNSEL:** [*1] For Vernice Newton, Plaintiff: J Daniel Scharville, Kahn & Associates LLC - 3, Independence, OH.

For Portfolio Recovery Associates, LLC, Defendant: Ryan Steven Lett, LEAD ATTORNEY, Frost Brown Todd LLC, Cincinnati, OH.

**JUDGES:** GEORGE C. SMITH, UNITED STATES DISTRICT JUDGE. Magistrate Judge Abel.

**OPINION BY:** GEORGE C. SMITH

**OPINION**

**OPINION AND ORDER**

This matter is before the Court on Defendant Portfolio Recovery Associates, LLC's Motion for Summary Judgment (Doc. 16). The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court **GRANTS** Defendant's motion.

**I. Background**

This matter arises under the Federal Fair Debt Collection Practices Act, *15 U.S.C. § 1692 et seq.* ("FDCPA"). Defendant is a company that purchases "charged-off"[1] [*2] consumer debt and attempts to collect the debt by calling the debtor on each account. Using proprietary software, Defendant maintains records of all activity on an account, including call logs. The call logs record a variety of information, including the account number on which the call was placed, the date and time, the duration, and a result code. Certain calls are automatically recorded. Information within the system is searchable based on specified parameters.

> 1   To "charge off" a debt is to treat the account receivable as a loss or expense because payment is unlikely. Black's Law Dictionary (9th ed. 2009). That is, the debt is treated as a "bad debt." *Id.*

In July 2011, Defendant purchased a charged off account in the name of Maureen B. Newton from Capital One Bank (USA), National Association ("Capital One"). At the time of the transfer, the end balance on the account (the "Capital One Debt") was documented as $947.68. Maureen Newton is Plaintiff Vernice Newton's wife. The couple moved to Ohio in 2002. Prior to that, the couple resided in Nevada and then Texas. Defendant has presented evidence that, after purchasing the Capital One Debt, Defendant sent a written notice, dated August [*3] 29, 2011, to Maureen's last-known address. The notice contained the language required by *15 U.S.C. § 1692g(a)(1-5)*, and the notice was not returned to Defendant.

2014 U.S. Dist. LEXIS 11490, *3

Defendant has produced a call log (the "Newton Call Log") showing all calls initiated by Defendant to the telephone number xxx-xxx-5016 (the "5016 Number"), which is the number Plaintiff shares with his wife. The Newton Call Log demonstrates that all 18 calls to the 5016 Number that were initiated by Defendant occurred between November 23, 2011, and March 7, 2012. The Newton Call Log also demonstrates that each of these calls was in regard to the Capital One Debt, and that of the 18 calls, 10 resulted in Defendant connecting to voicemail or a person at the 5016 Number. Defendant has also produced transcripts of four recorded calls to the 5016 Number in which Plaintiff was the speaker. These calls occurred on January 27, 2012, February 8, 2012, February 10, 2012, and March 7, 2012.

In August 2012, Plaintiff filed a Verified Complaint, alleging that Defendant violated the FDCPA. In particular, Plaintiff's Verified Complaint alleged that Defendant violated *15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g*, by repeatedly calling Plaintiff [*4] at three different numbers, including his mobile telephone number, in reference to a Mastercard credit card debt from 1993, failing to advise him that making a payment could restart the statute of limitations, and failing to meet its notification obligations in relation to its attempt to collect the Mastercard debt. Plaintiff seeks statutory damages and costs and reasonable attorneys' fees pursuant to *15 U.S.C. § 1692k*. In March 2013, Defendant filed its Motion for Summary Judgment, which is fully briefed and ripe for disposition. Defendant also requests attorneys' fees as a sanction against Plaintiff.

**II. Summary Judgment Standard**

The standard governing summary judgment is set forth in *Rule 56 of the Federal Rules of Civil Procedure*, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. Summary judgment [*5] is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc., 328 F.3d 870, 873 (6th Cir. 2003)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*; *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*.

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita, 475 U.S. at 587*. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, 477 U.S. at 251-53*. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978)*. The Court's duty is to determine only whether sufficient evidence has been presented [*6] to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby, 477 U.S. at 249*; *Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003)*.

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)* (quoting *Liberty Lobby, 477 U.S. at 257*). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby, 477 U.S. at 252*. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.., 8 F.3d 335, 340 (6th Cir. 1993)*. The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a [*7] verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby, 477 U.S. at 251-52*; *see also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994)*.

Moreover, "[t]he trial court no longer has a duty to

2014 U.S. Dist. LEXIS 11490, *7

search the entire record to establish that it is bereft of a genuine issue of material fact." *Street, 886 F.2d at 1479-80*. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)*.

## III. Discussion

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *15 U.S.C. § 1692(e)*. Thus, Congress enacted the FDCPA to address "abusive, deceptive, and unfair debt collection practices." *15 U.S.C. § 1692(a)*.

"Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct [*8] violates the FDCPA." *Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 611-12 (6th Cir. 2009)* (quoting *Barany--Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008)*). Under the least sophisticated consumer test, the issue is whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them. *Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011)*. This test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 438 (6th Cir. 2008)*. "The least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Smith v. Computer Credit, Inc., 167 F.3d 1052, 1054 (6th Cir. 1999)* (quoting *Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222, 1227 (9th Cir. 1988)*).

Defendant argues that it is entitled to summary judgment on each of Plaintiff's claims under the FDCPA. In response to Defendant's Motion for Summary Judgment, Plaintiff argues that there are genuine issues of material fact [*9] as to his claims that Defendant violated *15 U.S.C. §§ 1692d, 1692e*, and *1692f*. Plaintiff does not directly respond to Defendant's argument that it is entitled to summary judgment as to his *§ 1692g* claim. Plaintiff's claims will be addressed in turn. After

addressing Plaintiff's claims, the Court will discuss Defendant's request for attorneys' fees.

### A. *Section 1692d* Claim

Title *15 U.S.C. § 1692d* provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The section lists specific examples of conduct that violates this provision, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *15 U.S.C. § 1692d(5)*.

Plaintiff asserts that he has shown Defendant's intent to harass him in view of the excessive frequency of the telephone calls from Defendant to the 5016 Number, and because Defendant continued to call him after he told Defendant that he was unwilling to pay the debt. Plaintiff also argues that his harassment claim is not appropriate [*10] for dismissal at the summary judgment stage because it is closely tied to the underlying circumstances, and, as such, is ultimately a decision for the jury to determine. Defendant argues that the Newton Call Log cannot reasonably be viewed as demonstrating excessive call frequency, that the evidence that Defendant called the 5016 Number after Plaintiff told Defendant that he would not pay on the debt does not sufficiently support his claim of harassment, and that this claim can be resolved at the summary judgment stage.

In applying *§ 1692d*, "[c]ourts have followed the Federal Trade Commission's interpretations, finding that the term 'repeatedly' means 'calling with excessive frequency under the circumstances,' and that 'continuously' means 'making a series of calls, one right after the other.'" *Hicks v. America's Recovery Solutions, LLC, 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011)* (citations omitted). "There is no bright line rule regarding the number of calls which creates the inference of intent." *Hicks, 816 F. Supp. 2d at 515*. Even so, "Congress has indicated its desire for the courts to structure the confines of *§ 1692d*." *Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006)* [*11] (citing *Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985)*). The issue ultimately resolves to whether "the nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass without any other evidence of the debt collector's motive

in calling." *Durthaler v. Accounts Receivable Mgmt., Inc., 854 F. Supp. 2d 485, 489 (S.D. Ohio 2012)* (Sargus, J.) (quoting *Brown v. Hosto & Buchan, PLLC, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010))*.

Although the question of "whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury," dismissal of a *§ 1692d* claim is appropriate "if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Harvey, 453 F.3d at 330* (quoting *Jeter, 760 F.2d at 1179*). For example, in *Durthaler*, this Court analyzed the anti-harassment provision of the FDCPA, and found that while there is no bright-line rule that volume of calls can never be sufficient to demonstrate an intent to harass, the 32 calls placed in 73 days in that case were insufficient, without more, to demonstrate an intent to harass. [*12] *Id. at 489*. In reaching its conclusion in *Durthaler*, it was noted that there was no evidence "that the calls were made at an inconvenient time or place, that they were made after the Plaintiff repeatedly requested that they stop, or that they were made after the Plaintiff informed the Defendant that he was represented by counsel or a debt management company." *Id. at 492*. Thus, even when viewed in favor of the plaintiff, the call frequency found in *Durthaler* does not, in and of itself, have the natural consequence of harassing or abusing a debtor in violation of the FDCPA. Accordingly, and contrary to Plaintiff's argument, summary judgment on a *§ 1692d* claim is appropriate if no reasonable jury could conclude that the evidence demonstrates an intent to harass.

Here, Plaintiff suggests that Defendant has violated *§ 1692d(5)* by calling the 5016 Number excessively in an attempt to collect the Capital One Debt, and he argues that Defendant acted in a harassing manner because Defendant continued to call the 5016 Number even though he told Defendant that he would not pay the debt and that he did not recall the origin or details of the debt. These arguments are not persuasive. Plaintiff does [*13] not dispute that the evidence shows that Defendant only called the 5016 Number 18 times, and never even twice on the same day, during a time-frame of approximately four months. (Doc. 16-4). This frequency of calls simply does not support an inference of intent to harass. *See Durthaler*. Furthermore, as in *Durthaler*, there is no evidence that the calls were made at an inconvenient time or place, that they were made after Plaintiff repeatedly requested that they stop, or that they were made after Plaintiff informed Defendant that he was represented by

counsel or a debt management company.

The Court is unconvinced by Plaintiff's argument that Defendant harassed him by continuing to call despite his statements that he would not pay. In making this argument, Plaintiff does not address the fact that Defendant continued to pursue repayment of the debt by his wife. In this regard, Plaintiff does not challenge Defendant's assertion that he shared the 5016 Number with his wife, and that Defendant was trying to collect the Capital One Debt from his wife. The record contains transcripts of four of the answered calls to the 5016 Number, and on each of these occurrences Plaintiff answered and Defendant's [*14] representative initially asked to speak with Maureen. During three of the four conversations, Plaintiff challenged the basis of Plaintiff's attempt to collect on the Capital One Debt, stating in part that he and his wife "have no Capital One account," that Defendant has "the wrong information," and that he was "not going (inaudible) people call my house and harass me about a 13 year old debt." (Doc. 16-8, Tr. of Mar. 7, 2012 Tele. Conversation; Doc. 16-6, Tr. of Feb. 10, 2012 Tele. Conversation; Doc. 16-5, Tr. of Jan. 27, 2012 Tele. Conversation).

The fact that Defendant continued to call the 5016 Number despite Plaintiff's challenge to the underlying basis of the debt, and stated unwillingness to pay the debt, does not demonstrate an intent to harass, especially in view of the fact that Defendant was primarily attempting to obtain payment from Plaintiff's wife. In this regard, Plaintiff has not shown that Defendant had no basis to seek collection from his wife on the Capital One Debt. Furthermore, the FDCPA expressly provides that, to be effective, a consumer's request that a debt collector cease further communications must be in writing. *See 15 U.S.C. § 1692c(c)* ("If a consumer notifies [*15] a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except [for limited purposes].").

Therefore, Plaintiff's claim under *§ 1692d* fails as a matter of law.

**B.** *Section 1692e* **Claim**

Pursuant to *15 U.S.C. § 1692e*, a "debt collector may not use any false, deceptive, or misleading representation

or means in connection with the collection of any debt." This section contains a list of conduct that constitutes a violation of the section. For example, it is a violation for a debt collector to make a "false representation of . . . the character, amount, or legal status of any debt," or to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *15 U.S.C. § 1692e(2), (10).* Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer. *See Hartman, supra.* That is, "[w]hether a debt collector's actions are false, deceptive, or misleading under [\*16] *§ 1692e* is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012).* The statement must be materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer. *Id. at 326-27.* The claim under *§ 1692e* must not be "based on frivolous misinterpretations or nonsensical interpretations of being led astray." *Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 514 (6th Cir. 2007).*

Under *§ 1692k(c)*, however, a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." This bona fide error defense applies to mistakes of law as well as to clerical errors. *Durthaler, 854 F. Supp. 2d at 493* (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 538 F.3d 469, 476 (6th Cir. 2008)).* The Supreme Court has held, however, that the bona fide [\*17] error defense does not excuse "violations resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010).* "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Jerman, at 476-77.*

In the case at bar, Plaintiff argues that one of Defendant's representatives made false or misleading

statements in connection with the attempted collection of the Capital One Debt. As the sole basis of support for this argument, Plaintiff cites his conversation with Defendant's representative on January 27, 2012 (the "January 27 conversation"). The following is a transcript of that conversation:

> VN[2]: Hello.
> PRA[3]: Hi, may I speak with Maureen?
> VN: Who is this?
> PRA: This is Rita.
> . . .
> VN: Where are you from? The pharmacy?
> PRA: No, Sir. I'm calling from Portfolio Recovery Associates.
> . . .
> VN: What is that?
> PRA: [\*18] I'm handling a personal business matter for Ms. Maureen.
> VN: Hey, baby, listen -- Maureen's my wife.
> PRA: OK. And your name? I'll be glad to speak with you.
> VN: My name is Vernice.
> . . .
> PRA: OK. Last name Newton as well Sir?
> VN: Yeah.
> PRA: OK. Well, my name is Rita like I said, and I'm calling from Portfolio Recovery Associates in regards to the Capital One Visa account that's been forwarded here for collections.
> VN: Nah, baby, we never had no Capital One Visa.
> PRA: OK. Your wife is Maureen B. Newton?
> VN: Yeah.
> . . .
> PRA: Now this account was actually opened in '99. She paid on it until 2001 and then she stopped making her payments. She even had --
> VN: (Inaudible) in 2001?
> PRA: Right. She even had this included in her bankruptcy.
> VN: (Inaudible) account that -- that's going on 11 years old.
> PRA: Yes, Sir. She still has a balance.

2014 U.S. Dist. LEXIS 11490, *18

VN: And the statute of limitations hasn't run out on it?

PRA: She still has a balance due on the account.

VN: Yeah, I think the statute of limitations hasn't run out on it?

PRA: The statute of limitations just means we can't sue you for it.

VN: And the statute of limitations means if you can't sue me for it why would I owe a balance?

PRA: Because you didn't pay it all.

. . .

VN: I'm [*19] trying to figure out, you know, that -- she didn't owe any credit card from Capital One.

PRA: Yes, Sir, she even had this in her bankruptcy.

VN: I had it.

PRA: OK.

VN: In my bankruptcy.

PRA: OK. And her name is on it.

. . .

PRA: OK. This doesn't even have your name on it. I mean this --

VN: Then I don't know how they got (inaudible)

PRA: It has Maureen B. Newton on it.

VN: It got it switched up, you know, that's what happened. It just got switched up. Maureen never had a credit card. She ain't had a credit card, you understand, since the early 90's. You understand? And that was with --

PR: OK. This is in '99 and then paid on until 2001

VN: OK, if you're looking at '99 and 2009 that's 10. And that's going on 13 years ago. You understand. There's no way I'm going to let you keep calling me, harassing me about a debt that is 13 years old.

PRA: Sir, this account, this account is still owed.

VN: Hey, if it's owed or not --

PRA: (Inaudible) services?

VN: (Inaudible) what?

PRA: You used the services.

VN: I (inaudible) is it owed, all I have to do is call the Attorney General and find

out how (inaudible) is it owed.

PRA: OK, well like I say, I mean --

VN: You know, because I'm not going to allow you to keep on calling [*20] me --

PRA: This is an account that was opened --

VN: I'm not going (inaudible) people call my house and harass me about a 13 year old debt.

PRA: OK, then just take care of it and we won't have to call you.

VN: No, I'm not going to take care of no debt, man. I don't know nothing about you.

PRA: Sir, I don't know anything about you either.

VN: (Inaudible) they pass these debts along for people to try to collect on them where they can make some commission and all that kind of stuff (inaudible)

PRA: OK, let me tell you, let me tell you --

VN: And all that kind of stuff. I ain't going to have that.

PRA: I get paid the same whether you pay your account or not.

VN: You know --

PRA: It's not affecting me, it's affecting you.

VN: (Inaudible) because you're getting paid off of somebody else that (inaudible) pay it.

PRA: No, Sir.

VN: I'm not going to pay you.

PRA: I'm not asking you to pay me. This is your account.

VN: (Inaudible) out of my household.

PRA: This is your wife's account.

VN: Hey, her husband, then it's my debt -- we married. We ain't separated.

PRA: Correct. So if you don't want to take care of it then --

VN: Her debt is my debt.

PRA: You're correct.

VN: And as I told you just then you're not going to get [*21] one penny.

PRA: Alright. Then I'll go ahead and notate the account that I did speak with you.

VN: Yeah, you go ahead and do that

2014 U.S. Dist. LEXIS 11490, *21

(inaudible)

  PRA: (Inaudible) without payments on the account?

    VN: I already done taken care of (audible).

  PRA: Sir, this is not taken care of.

  VN: This is (inaudible).

  PRA: This is not taken care of, Sir.

  VN: Hey, this is already -- well, I tell you what, I bet you don't get paid!

  PRA: Well, like I said, if you don't want to take care of your business then that's fine, but that's on you.

  VN: I'm not going to pay it. It's not that I don't want to or can't, I'm not going to pay you!

  PRA: I'm not asking you to pay me, Sir. This is your debt, not mine. You're not paying me you're paying for something that you used.

  VN: OK, I'm going to pay for something that's old and wore out?

    PRA: It wasn't old and wore out whenever you opened the account and used its services, Sir.

  VN: Bye, bye. Thank you for your time. Bye, bye.

(Doc. 16-5, Tr. of Jan. 27, 2012 Tele. Conversation).

    2   "VN" refers to Vernice Newton.
    3   "PRA" refers to a representative of Portfolio Recovery Associates.

  Plaintiff argues that during the January 27 conversation, Defendant's representative repeatedly misrepresented that [*22] the Capital One Debt belonged to him and that he was liable to pay the debt. Defendant argues that Plaintiff's claim under *§ 1692e* fails because Defendant made no misrepresentation and, even if it had, Plaintiff knew that it was not attempting to collect a debt from him. Defendant argues that even the least sophisticated consumer in Plaintiff's position would know that his wife, and not him, was the target of Defendant's collection efforts.

  Defendant essentially argues that Plaintiff's claim under *§ 1692e* fails as a matter of law because he knew he was not a "consumer" and therefore lacks standing to bring such a claim. In support, Defendant cites *Kaniewski*

*v. National Action Financial Svs., 678 F. Supp. 2d 541 (E.D. Mich. 2009)*, and *Hill v. Javitch, Block & Rathbone, LLP, 574 F. Supp. 2d 819 (S.D. Ohio 2008)* (Beckwith, C.J.). In *Kaniewski*, the court reasoned that a plaintiff who knew that the defendant was not attempting to collect on a debt owed by him could not sustain an FDCPA claim under *§ 1692e* as a matter of law. *Id. at 546* (citing *Kujawa v. Palisades Collection, LLC, 614 F. Supp. 2d 788 (E.D. Mich. 2008)*). Similarly, in *Hill*, this Court held that the plaintiff failed [*23] to state a claim under *§ 1692f* of the FDCPA where he "clearly understood" that the communications were not directed at him and "[e]ven the least sophisticated consumer would have understood" that the defendant "was not attempting to collect a debt from [the plaintiff]." *Id. at 826*. Thus, even the least sophisticated consumer would not be misled by a debt collector if the individual knew that the collection effort was not directed at him or her. Defendant alleges that the rationale underlying these cases applies here.

  The case at bar is distinguishable from *Kaniewski* and *Hill*; however, the principles expressed therein are instructive here. To begin the January 27 conversation, Defendant's representative indicated that she was calling in an attempt to collect on a debt owed by Plaintiff's wife. As the conversation progressed, however, Plaintiff eventually stated that any debt of his wife is also a debt of his. Plaintiff did not indicate that he had legally assumed the debt; rather it is clear that the basis of his statement was his belief that he has an obligation to help repay any debt owed by his wife.[4] Defendant's representative generally concurred with Plaintiff's statements concerning [*24] his obligations in relation to his wife's debt. Even though Defendant's representative generally agreed with Plaintiff on that point, she repeatedly made statements emphasizing that she was attempting to collect on a debt owed by Plaintiff's wife, based on her identity as account holder of the Capital One Debt. Ultimately, and based on Plaintiff's assertions, Defendant's representative indicated that Plaintiff also should repay the Capital One Debt, and consequently requested that Plaintiff make a payment as to the debt. Thus, by the conclusion of the January 27 conversation, both parties were proceeding with the understanding that if Plaintiff's wife owed the debt, Plaintiff also owed the debt. Based on that understanding, Defendant's representative requested that Plaintiff and/or his wife repay it, referring to them collectively as "you".

4   Under Ohio law, which is where Plaintiff has resided since 2002, one spouse is not liable for the debts of the other, absent some other applicable theory of liability. *Nesper v. Bank of America, No. OT-03-012, 2004-Ohio-1660, 2004 WL 628783 (Ohio Ct. App. Mar. 31, 2004)* (citing *Ohio Rev. Code § 3103.08*). In Texas, which is one of the states where Plaintiff resided  [*25] in prior to 2002, "one spouse is not liable for the other's debt unless the other incurred it as the one's agent or the one failed to support the other and the debt is for necessaries. *Tedder v. Gardner Aldrich, LLP, 11-0767, 421 S.W.3d 651, 2013 Tex. LEXIS 393, 2013 WL 2150081 (Tex. May 17, 2013)* (citing *Section 3.201 of the Texas Family Code*). Thus, an individual's obligations, as they relate to his or her spouse's debt, depend on the underlying facts of the debt. Because the underlying facts of the Capital One Debt are unknown, it is not clear, based on the state of the evidence, whether Plaintiff was legally obligated to repay the Capital One Debt.

Unlike the *Kaniewski* and *Hill* cases, Defendant attempted to collect from Plaintiff. Even so, Defendant's representative's statements and requests for payment cannot be viewed as an attempt to mislead Plaintiff, nor did they in fact mislead him, because they were consistent with his own statements, which reasonably reflected a belief that he is at least morally obligated to repay any debt of his wife.[5] Thus, any misstatement by Defendant's representative during the January 27 conversation, as to the nature of the debt, can be directly attributed to Plaintiff's assertions,  [*26] and do not demonstrate any intent to deceive. The purpose of the FDCPA is to eliminate "abusive, deceptive, and unfair debt collection practices," not to punish a debt collector for statements made during the collection process that are consistent with previously made, and facially reasonable, statements of the target consumer or the consumer's spouse. Therefore, the Court resolves that Defendant is not liable for statements made during the January 27 conversation because it did not engage in abusive, deceptive, or unfair debt collection practices as it relates to its attempt to collect the Capital One Debt.

5   Even if an individual has no legal obligation to pay the debt of his or her spouse, nothing precludes him or her from voluntarily accepting a moral obligation to repay the spouse's debt. This principle is particularly noteworthy in circumstances where the applicable statute of limitations precludes legal action against a debtor, which appears to be the case here, because when the debt collector cannot take legal action against a debtor, it may still seek to collect the debt by attempting to appeal to the moral compass of the debtor, and by logical extension, a debtor's spouse,  [*27] who indicates a willingness to repay legitimate debts of the spouse.

Accordingly, Defendant is entitled to summary judgment as it relates to Plaintiff's *§ 1692e* claim.

**C. *Section 1692f* Claim**

Title *15 U.S.C. § 1692f* provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Defendant argues that Plaintiff's *§ 1692f* claim fails because even the least sophisticated consumer in his position would know he was not the target of Defendant's collection attempts, and because Plaintiff has not identified any conduct that is not already governed by another FDCPA section.

As discussed above, Defendant is correct that a plaintiff has no standing to bring a *§ 1692f* claim when he "clearly understood" that the communications were not directed at him and "[e]ven the least sophisticated consumer would have understood" that the defendant "was not attempting to collect a debt from [the plaintiff]." *Hill, supra.* But the facts in the case at bar do not establish that Plaintiff understood that Defendant was not attempting to seek payment from him for a debt. While the facts support a finding that it was clearly understood that Defendant was attempting  [*28] to collect from Plaintiff's wife, the evidence also supports a finding that Defendant attempted to collect from Plaintiff. Thus, Defendant's argument that Plaintiff lacks standing to bring his *§ 1692f* claim is without merit.

The Court, however, agrees with Defendant's argument that the *§ 1692f* claim fails because Plaintiff has not identified any conduct that would not be covered by a different FDCPA provision. *Section 1692f* "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by *§§ 1692d* & *1692e*." *Edwards v. McCormick, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001)* (Marbley, J.). That is, "*§ 1692f* allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Id.* (quoting *Adams v. Law*

*Offices of Stuckert & Yates, 926 F. Supp. 521, 528 (E.D. Pa. 1996)*. In support of his *§ 1692f* claim, Plaintiff argues that Defendant violated this provision by attempting to collect a debt from him that he did not owe, by not disclosing that the debt was barred by the statute of limitations, and by not resending a second *§ 1692g* notice to him.

Because the factual bases of the alleged violations of *§ 1692f* are covered by another FDCPA provision, [*29] they do not support Plaintiff's claim under *§ 1692f*. Plaintiff alleges that Defendant acted unfairly or unconscionably by attempting to collect the Capital One Debt from him. The factual basis of this claim, however, is that Defendant made misrepresentations to him as part of the collection attempt. As such, this alleged misconduct is addressed by *§ 1692e*, which has been discussed above.

Similarly, any misconduct as it relates to allegedly not disclosing that the debt is outside of the statute of limitations, would be governed by *§ 1692e*, insofar as it is considered a misrepresentation of the legal status of the debt. Moreover, filing a complaint to collect a debt that has been extinguished by the passage of time violates *§ 1692e(2)*, which prohibits false representations about the character or legal status of any debt. *Deere v. Javitch, Block & Rathbone LLP, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006)* (Beckwith, C.J.); *see Harvey, 453 F.3d at 332* ("Although we have never addressed the issue and express no opinion on the question, we note that courts in other circuits have held that the filing of a lawsuit to collect a debt that is barred by the statute of limitations violates several [*30] subsections of *15 U.S.C. § 1692e*, which prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'"). But in this case, Defendant did not file an action against Plaintiff, and Plaintiff fails to cite any case law finding that it is "unfair or unconscionable" conduct for a debt collector not to disclose whether the statute of limitations would prohibit any legal action to collect a particular debt. Contrary to Plaintiff's suggestion, the FDCPA does not place an affirmative duty on a debt collector to disclose to a consumer the applicability of the statute of limitations in relation to a debt. *See Scheiner v. Portfolio Recovery Associates, No. 1:12-cv-518, 2013 U.S. Dist. LEXIS 184624 (S.D. Ohio Nov. 5, 2013)* (noting that "[s]ilence regarding the expiration of the statute of limitations (especially when plaintiff was already aware the statute

had expired) is not an actionable false representation of the legal status of a debt."). Thus, Plaintiff's arguments in relation to the statute of limitations are unpersuasive.

Lastly, insofar as Plaintiff alleges a violation of *§ 1692g*, such conduct is covered by that provision, not *§ 1692f*, [*31] and will be discussed below.

**D. *Section 1692g* Claim**

The FDCPA provides that a debt collector must communicate with a consumer in connection with the collection of a debt and send the consumer a written notice containing information about the debt. *See 15 U.S.C. § 1692g*. The undisputed evidence shows that, after Defendant purchased the Capital One Debt, it sent a written notice pursuant to *§ 1692g* to Maureen Newton's last known address, which was in Abilene, Texas, and that the notice was not returned to Defendant in the mail. Plaintiff asserts that Defendant knew or should have known that the notice was never received because the 5016 Number has an Ohio area code, Defendant sent the *§ 1692g* notice to a Texas address, and Plaintiff indicated that he did not recall the debt. While Plaintiff suggests that the notice should have been sent to another address, he does not dispute the evidence submitted by Defendant demonstrating that the notice was sent to his wife's last known address and that the notice was not returned. Under these circumstances, there is a presumption of delivery. *See Johnson v. Midland Credit Management Inc., No. 1:05-cv-1094, 2006 U.S. Dist. LEXIS 60133, 2006 WL 2473004, at *12-13 (N.D. Ohio Aug. 24, 2006)*. [*32] Even though Plaintiff disputed the origin of the debt during the January 27 conversation, he did not indicate that his wife did not receive the notice. Plaintiff fails to present sufficient evidence that the presumption of delivery was rebutted, and that Defendant was aware that the first notice was not delivered. *See id.* ("where the debtor rebuts the presumption of delivery by showing the notice was sent to an incorrect address and returned as undeliverable, the plain language and purpose of the FDCPA requires additional action by the debt collector to send a notice reasonably calculated to reach the consumer."). In other words, Plaintiff simply speculates that Defendant knew or should have known that the *§ 1692g* notice was not received. Speculation is not a sufficient basis to demonstrate a genuine issue of fact. Based on the evidence, Plaintiff cannot demonstrate a violation of *§ 1692g*.

**E. Defendant's Request for Attorneys' Fees**

2014 U.S. Dist. LEXIS 11490, *32

In the conclusion sections of Defendant's primary and reply briefs in support of its Motion for Summary Judgment, it requests attorneys' fees as a sanction against Plaintiff pursuant to *15 U.S.C. § 1692k(a)(3)*. Defendant does not, however, fully develop the [*33] basis of its request for sanctions against Plaintiff.

*Section 1692k(a)(3)* provides in part that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Because Plaintiff has made non-frivolous arguments in connection with his claims, Defendant is not entitled to attorneys' fees. Although ultimately meritless, Plaintiff did not bring his action in bad faith or for the purpose of harassment. Even though Defendant has not demonstrated an entitlement to attorneys' fees under *§ 1692k(a)(3)*, there is an issue relating to Plaintiff's prosecution of this matter that must be addressed.

As noted by Defendant, the alleged facts underlying Plaintiff's claims of misconduct have repeatedly changed during the course of this litigation -- from the Verified Complaint, to his discovery responses, to his deposition, and finally to his response to Defendant's Motion for Summary Judgment. At first glance, it appears that Plaintiff may have been confused about the identity of multiple debt collectors in relation to their attempt to collect [*34] different debts. In other words, Plaintiff may have misidentified another debt collector that was allegedly engaging in misconduct and misplaced his blame for that conduct against Defendant. More troubling to the Court, however, is Plaintiff's statements at his deposition indicating that he did not review the Verified

Complaint, or his responses to Defendant's first set of interrogatories, despite attesting to their veracity, suggesting the possibility that counsel for Plaintiff prepared the documents without ensuring that he reviewed them before he attested to their truthfulness. Whether this lack of review contributed to the changes in Plaintiff's factual allegations of misconduct against Defendant is unclear, but it is a possibility. While the Court will not impose any sanctions relating to this conduct, in part because the reason for its occurrence is unknown, it is compelled to instruct counsel for Plaintiff to advise him not to indicate the veracity of statements in a document that he has not reviewed.

**IV. Conclusion**

For the forgoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 51). Defendant is entitled to summary judgment as to all of Plaintiff's claims [*35] under the FDCPA. Accordingly, the Clerk shall enter **FINAL JUDGMENT** in favor of Defendant.

The Clerk shall remove Document 16 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED**.

*/s/ George C. Smith*

**GEORGE C. SMITH, JUDGE**

**UNITED STATES DISTRICT COURT**