UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. MARTIN, YAHMI NUNDLEY,
and KATHLEEN CADEAU,

                    Plaintiffs,                            Case Number 15-12838

v.                                                  Honorable David M. Lawson

TROTT LAW, P.C. and DAVID A. TROTT,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS OR TO STRIKE CERTAIN AFFIRMATIVE DEFENSES, AND DENYING DEFENDANT DAVID TROTT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

This second round of dispositive motions deals with the plaintiffs' second amended complaint and the defendants' answers and affirmative defenses to it. Plaintiffs Brian Martin, Yahmi Nundley, and Kathleen Cadeau, as members of a putative class, allege that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Michigan Regulation of Collection Practices Act (RCPA), Mich. Comp. Laws § 445.251, by sending certain letters to these consumers in an effort to foreclose their residential mortgages. The facts of the case are discussed at length in the Court's opinion adjudicating the first round of motions. *Martin v. Trott Law, P.C.*, 198 F. Supp. 3d 794, 797-801 (E.D. Mich. 2016). They will not be repeated here.

The plaintiffs have filed a motion for judgment on the pleadings or to strike, directed at various affirmative defenses asserted by defendants Trott Law, P.C. and David Trott in their respective answers to the second amended complaint. Defendant David Trott has filed a motion to dismiss or for summary judgment arguing that the Court does not have subject matter jurisdiction

under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and the plaintiffs lack standing to pursue claims against him individually. For the reasons that follow, the plaintiffs' motion will be granted in part and denied in part. Defendant Trott's motion will be denied.

## I. Plaintiffs' Motion to Strike or for Judgment on the Pleadings

The plaintiffs argue that the defendants' recitals of various pro forma or vestigial affirmative defenses in their answers to the second amended complaint are either defective as a matter of law, based on the Court's previous ruling on their motions to dismiss, or fail to disclose any discernible factual basis for the defenses. They contend that the defenses of "failure to state a claim," "statute of limitations," and that the defendants are not "regulated persons" under state law are precluded by the Court's rulings that the surviving claims in the complaint plausibly allege actionable violations of state and federal law, that those claims are timely, and that the defendants' behavior is controlled by the pertinent statutes. The plaintiffs contend that the bare recitations of putative defenses premised on estoppel, laches, consent, unclean hands, "bona fide error," and lack of intent, all are lacking any factual support, and have no apparent application to any of the circumstances so far disclosed by the record. The plaintiffs assert that exploration of these vestigial and unfounded defenses only will complicate and prolong discovery in the case, for no apparent productive purpose.

In responding to a complaint, a defendant generally must "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Avoidance defenses must be stated affirmatively, and the rules furnish a non-exhaustive list of certain specific affirmative defenses that must be raised in the answer. Fed. R. Civ. P. 8(c)(1). Those include the defenses of estoppel, laches, and the statute of limitations. *Ibid.*

The plaintiffs' motion is based alternatively on Rule 12(c) and Rule 12(f). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applies the same standards that govern motions to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

Under Rule 12(f), on the other hand, a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the Sixth Circuit has not addressed the subject, the rigorous pleading rules applicable to complaints as outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), generally do not apply to pleading affirmative defenses. *See The Odd State of Twiqbal Plausibility in Pleading Affirmative Defenses*, 70 Wash & Lee L. Rev. 1573, 1602-05 (2013); *see also Rosul v. Klockemann*, No. 15-00996, 2015 WL 5233187, at *6 (N.D. Ohio Sept. 8, 2015). "An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." 5 Wright & Miller, *Federal Practice and Procedure* § 1274. However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

It appears that Rule 12(f) is more suited to a challenge to the sufficiency of affirmative defenses. "A motion to strike should be granted if 'it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are

inferable from the pleadings.'" *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).

### A. Failure to State a Claim

Defendant Trott Law has agreed to withdraw this defense. Defendant David Trott has not done so. However, the Court's prior opinion on the defendants' respective motions to dismiss has settled the question whether that pleading adequately alleges plausible claims for relief under the surviving counts. That defense, therefore, will be struck.

### B. Statute of Limitations

The plaintiffs correctly point out that the Court previously held that the surviving counts of the complaint allege claims that, at least in some part, describe conduct within the relevant limitation periods. However, the scope of the plaintiff class has yet to be defined, and the particulars of the defendants' respective conduct, although alleged in some detail in the complaint, have yet to be fully explored through discovery. The parties have not yet stipulated to a time frame for the class definition, and it appears possible that at least some of the conduct potentially at issue in the case may have occurred before the earliest possible date for the commencement of that time frame (e.g., defendant David Trott asserts that the composition of the original version of the letter templates at issue occurred in 2007).

Of course, the fact that the defendants first may have conceived some of the particulars of their allegedly deceptive dunning letters outside the limitations period does not absolve them from liability if they personally were involved in the ongoing use of those forms during more recent years. Also, there may be a dispute as to when the statute of limitations began to run. But the temporal

scope of the potential liability in the case has not yet been fixed, and the determination of what conduct lies within and outside the relevant limitations period is not one amenable to resolution on the bare pleadings, without the benefit of a factual record to establish who did what, and when, and what were the results of their actions. The "statute of limitations" defense therefore may yet be pertinent to the decision of issues remaining in the case. At this early stage of the proceedings, it does not "appear[] to a certainty" that the plaintiffs would succeed in defeating every conceivable nuance of the limitations defense "despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Engineers*, 783 F.3d at 1050. The Court will deny the plaintiffs' motion with respect to the statute of limitations defense.

### C. "Regulated Person"

This affirmative defense is defective as a matter of law as pleaded by both defendants, because it purports to put at issue the question whether David Trott and his law firm qualify as "regulated persons" under Michigan state law. However, the defendants' arguments in their briefing merely regurgitate positions previously (and repeatedly) advanced in their several earlier motions, which the Court's previous opinion addressed directly:

> The defendants insist that neither David Trott nor his law firm qualify as "regulated persons" subject to the prohibitions of the Michigan RCPA because the firm is a "collection agency" exempted from regulation under the Act, and neither he nor his firm acted "in [their] own name" when communicating with the plaintiffs and attempting to collect their debts. Those arguments are non-starters. The question has not squarely been addressed by either the Sixth Circuit or the Michigan state appellate courts, but every judge in this district that has confronted the question has held that a "law firm and its employees 'fit squarely within the definition of a regulated person' under the MCPA" regardless of whether the firm's collection activities were carried out "in its own name" or on behalf of its clients.

*Martin*, 198 F. Supp. 3d at 811 (collecting cases).

In his response, David Trott relies solely on the Court's analysis on following pages of the opinion, which he contends "left open the question" whether he is a "regulated person" under state law. But the section of the opinion on which he relies did not address the "regulated person" concept under the RCPA. Instead, the Court there separately addressed his argument that he is not a "debt collector" as defined under the FDCPA, based on his premise that he did not personally compose, sign, or mail the offending letters. *See id.* at 811-12. The Court concluded that "the allegations that Trott personally drafted, approved, and directed the use of the form letters or 'templates' at issue in this case are not 'legal conclusions,'" but instead are "facts that may be proven, or not, depending on the evidence that the plaintiffs ultimately may present." And it found that, if proven, those facts sufficiently would establish Trott's personal involvement in the debt collection activities at issue for him to be found liable under controlling circuit law. *E.g.*, *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

Trott has not offered any other factual or legal basis for his position that the Court "left open" any question regarding his status as a "regulated person" under state law. And the Court's opinion did not leave open that question; it expressly rejected both of the defendants' positions that they were exempt from regulation under the pertinent state law as "non-starters." Because the defendants cannot succeed on this defense, the Court will grant the plaintiffs' motion to strike it.

## D. Intent

The plaintiffs argue that this defense should be struck because the defendants' intent is not an element of a claim under either the FDCPA or RCPA. On one point, the plaintiffs are correct. "Under the FDCPA, a plaintiff does not need to prove knowledge or intent to establish liability, nor must he show actual damages, which 'places the risk of penalties on the debt collector that engages

in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief.'" *Wise v. Zwicker & Assocs.*, P.C., 780 F.3d 710, 713 (6th Cir. 2015) (citing *Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443, 449 (6th Cir. 2014)). "In other words, if a debt collector seeks fees to which it is not entitled, it has committed a *prima facie* violation of the Act, even if there was no clear prior judicial statement that it was not entitled to collect the fees." *Ibid.*

Moreover, even if intent were an element, a defendant need not plead affirmatively that an essential element of a plaintiff's claim is lacking. *See* Fed. R. Civ. P. 8(c)(1) (requiring only that "a party must affirmatively state any avoidance or affirmative defense").

However, the FDCPA states that whether the conduct in question is "intentional" should be weighed when assessing the extent of damages. 15 U.S.C. § 1692k(b)(1) ("In determining the amount of liability . . ., the court shall consider . . . the extent to which such noncompliance was intentional . . . ."). In addition, intent is relevant to the award of statutory damages, because the statute allows the Court to exercise its discretion in awarding "such additional damages as the court may allow, but not exceeding $1,000," for each named plaintiff, and "such [further] amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a).

Although proof of intent may well be an element of the plaintiffs' damages presentation, the defendants are prudent in informing the plaintiffs of their intention to offer evidence in avoidance of statutory damages. The Court, therefore, will deny the plaintiffs' motion to strike this affirmative defense.

## E. *Bona Fide* Error

The FDCPA states that a "debt collector may not be held liable in any action brought under [this Act] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). "Mistake" is an appropriate affirmative defense to an FDCPA claim.

The plaintiffs argue that the defendants have not pleaded sufficient facts to support this defense, and that it appears that the focus is on a mistake of law, which is not a defense to an FDCPA claim. "Notably, in *Jerman v. Carlisle*, 559 U.S. 573 (2010), the Supreme Court held that mistakes of law regarding the FDCPA itself constitute violations of the Act for which a debt-collector attorney may not invoke the Act's bona fide error defense." *Wise*, 780 F.3d at 713 (citing *Jerman*, 559 U.S. at 604-05; 15 U.S.C. § 1692k(c)). "The Supreme Court declined to address whether the defense is available for mistakes of law other than the FDCPA itself, but the discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability." *Ibid.* (citing *Jerman*, 559 U.S. at 580 n.4).

When pleading this defense, Rule 9(b) requires that "a party must state with particularity the circumstances constituting . . . mistake." Here, however, the defendants have articulated some set of facts on which it appears they could prevail, at least as to some of the claims, by some plaintiffs, that ultimately may be involved in the case. The plaintiffs contend that the sending of the allegedly deceptive letters could not be found to be a result of "bona fide error" if the jury concludes that the "least sophisticated consumer" would have been confused by the wording of the letters, and where it is essentially undisputed that the defendants intentionally caused the letters to be composed and

mailed to class members. However, the defendants have taken the position that, at least as to the "attorney letterhead" claims, if any of the letters were not, in fact, "meaningfully reviewed" by an attorney before they were sent, then that lack of review was contrary to their established policies, and occurred despite diligent efforts to enforce those policies. If they can support that position with adequate evidence, as to some or all of the letters that the evidence may establish were not in fact "meaningfully reviewed" by any lawyer, then they may be able to obtain some relief on their "bona fide error" defense.

Although the defendants have offered little in the way of positive evidence to sustain their present position, the plaintiffs have not, at this early stage of the case, shown that it "appears to a certainty" that the defendants will be categorically unable to support any permutation of this affirmative defense on any conceivable "state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Engineers*, 783 F.3d at 1050. The motion to strike this defense will be denied.

## F. No Actual Damages

The plaintiffs correctly point out that they are not required either to plead or to prove that they suffered any "actual damages" in order to establish liability under the FDCPA. And, as discussed below, the absence of any pleading of pecuniary loss also does not deprive either individual plaintiff of standing to pursue their claims. However, the statute plainly allows for the award of actual damages, if any have occurred, and, notwithstanding that the named plaintiffs have not suffered any, other potential class member may have. The assertion that no actual damages were incurred (by these plaintiffs, or perhaps by any members of the putative class) plainly is relevant to the ultimate calculation of any damages award, which may include both actual damages and

"statutory damages" of up to $1,000 for each individual plaintiff. The motion to strike this defense will be denied.

## G. Estoppel

Defendant Trott Law has agreed to withdraw this affirmative defense. Defendant Trott contends that plaintiff Martin is well aware of the basis of the "estoppel" defense, which is premised on Martin's prior lawsuit against Bank of America. Trott asserts that the existence of that previous lawsuit bars Martin from "relitigating" the FDCPA claims at issue in this case, although he does not discuss any of the particulars of the case, or explain how, exactly, the elements of claim or issue preclusion would be satisfied with respect to any issues that he believes were raised or decided in that earlier case.

The doctrine of *res judicata*, also know as claim preclusion, "instructs that a final judgment on the merits 'foreclos[es] successive litigation of the very same claim.'" *Bravo-Fernandez v. United States*, --- U.S. ---, 137 S. Ct. 352, 357 (2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "The allied doctrine of issue preclusion[, also known as collateral estoppel,] ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment." *Id.* at 358.

The boilerplate recitation of this defense is not adequate to give that plaintiff fair notice of the nature of the defense. Defendant Trott vaguely alludes in his brief to litigation between Martin and Bank of America, and he asserts that the earlier litigation occurred after Trott Law, P.C. notified Martin that the firm "represented" the Bank. But he has not identified any particulars of the time frame or forum of that litigation, and he does not refute the plaintiffs' assertion that Trott and his law firm were not named as parties in that earlier case. In any event, the previous lawsuit

presumably concerned the foreclosure (or attempt to foreclose, if one was made) of Martin's residence, and, if that is true, then it conclusively would have resolved nothing more or less than the right to possession of the property. Trott has not asserted that the Bank was in any way involved in the creation or sending of the dunning letters at issue here, beyond retaining Trott and his law firm for the purpose of sending the letters, and presumably supplying borrower contact information to facilitate that process. There is, therefore, no readily conceivable set of facts on which Trott could prevail on any claim that the issues relating to his law firm's handling of the communications through those letters ever conclusively were decided by a judgment of any other court, in any prior proceeding.

The Court will strike this defense.

### H. Laches

Defendant Trott Law has agreed to withdraw this defense. Defendant David Trott stands by his assertion of it, relying on state court decisions for the proposition that the equitable doctrine of laches may in some cases apply to bar claims brought within the statutory limitations period.

"'Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party.'" *Operating Engineers*, 783 F.3d at 1053 (quoting *Brown-Graves Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000)). The Sixth Circuit "recognize[s] a strong presumption against asserting a laches defense to shorten a statute of limitations," and has "cautioned that only rarely might a laches defense bar relief before the applicable statute of limitations has run." *Id.* at 1054 (citing *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 233 (6th Cir. 2007); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985); *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298,

321 (6th Cir. 2001)). "Recently, the Supreme Court held that, where Congress has established a statute of limitations (such as the three-year limitations period in the Copyright Act), laches may not be invoked to bar damages relief if the action was brought within the limitations period." *Ibid.* (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, --- U.S. ---, 134 S. Ct. 1962, 1972-74 (2014)). "Laches, the Court explained, 'is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.'" *Ibid.* (quoting *Petrella*, 134 S. Ct. at 1973).

Defendant Trott has made no effort to establish either that the plaintiffs indulged in "inexcusable delay" in filing their complaint, or that he was in any way "prejudiced" by any such supposed delay. He offers nothing to rebut the strong presumption that prevails in this circuit "against asserting a laches defense to shorten a statute of limitations," and he has made no effort to explain how this case is one of those rare cases in which "a laches defense bar[s] relief before the applicable statute of limitations has run." *Operating Engineers*, 783 F.3d at 1054.

The only authority that defendant Trott cites to sustain his "laches" defense is *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich. App. 429, 761 N.W.2d 846 (2008), which he relies upon for the proposition that "laches may bar a legal claim even if the statutory period of limitations has not yet expired." 281 Mich. App. at 457, 761 N.W.2d at 864. But Trott ignores the requirement, which the *Tenneco* court explicitly recognized, that "[f]or laches to apply, inexcusable delay in bringing suit must have resulted in prejudice." *Ibid.* Here, Trott has made no attempt to explain either how a one- to two-year delay within a six-year limitations period constituted "inexcusable delay," or how he was prejudiced by any such delay.

Moreover, *Tenneco* readily is distinguishable on the facts, because there the court of appeals found that the plaintiff insured had made no attempt ever to notify its insurer of the alleged breach, and that it filed suit for an alleged failure to defend the insured in lawsuits that had been concluded by the plaintiff's entry into settlements at times well outside the relevant limitations period. As the court noted "all events giving rise to [the defendant insurer's] alleged duties of performance with respect to defending plaintiff against environmental 'suits' or indemnifying plaintiff for property damage claims plaintiff became legally obligated to pay, except in one instance, *occurred more than six years before this lawsuit was filed* in June 2003." *Tenneco*, 281 Mich. App. at 461, 761 N.W.2d at 866 (emphasis added). The *Tenneco* court concluded that, notwithstanding the plaintiff insured's prolonged litigation of and eventual execution of settlements in the subject lawsuits, it never had notified the insurer of the cases or made any demand for performance of the contractual duty to defend. The court therefore found that the "plaintiff's breach of the notice condition combined with *an inexcusable delay of longer than the statutory limitations period* in filing suit created the 'exceptional circumstances' or 'compelling equities' for laches to bar this claim," and it held that the plaintiff's claims were "time-barred *either* by the statute of limitations *or* by laches." *Tenneco*, 281 Mich. App. at 458-462, 761 N.W.2d at 865-67 (emphasis added).

In this case, the complaint was filed well within the applicable statutory limitations period, and the defendant has not pointed to any information in the record — or any evidence that reasonably could be expected to result from development of it — to sustain his position that the doctrine of laches could have any conceivable application to any claims in the case.

*I.* Right to a Jury Trial

The parties appear to agree that this is not an affirmative defense subject to a motion to strike under Rule 12(f).  It also is not an issue of fact or law pertinent to any of the plaintiffs' claims that appropriately may be presented via a motion under Rule 12(c) or decided on the pleadings at this stage of the case.  The question more appropriately may be raised by the parties as part of the final pretrial proceedings in the case, after all relevant information about the putative plaintiff class and the scope of their claims and defenses has been disclosed.

II.  Motion to Dismiss or for Summary Judgment

Defendant David Trott argues that all of the claims brought against him in the second amended complaint by individual plaintiffs Brian Martin, Yahmi Nundley, and Kathleen Cadeau must be dismissed because (1) the plaintiffs lack Article III standing to pursue their claims, since they have merely alleged "procedural violations" of the FDCPA and RCPA, and their deposition testimony establishes that they have not suffered any "actual damages" as a result of the alleged nominal statutory transgressions; (2) the plaintiffs lack "statutory standing" to pursue any claims under the RCPA, because they do not allege, and have not testified, that they suffered any "injury, loss, or damage," and they are not persons "from whom money was collected" as a result of any alleged deceptive practices by defendant Trott, *see* Mich. Comp. Laws § 445.257(1); (3) the plaintiffs have failed to put forth any support for their assertions that the Court has jurisdiction under the Class Action Fairness Act, because they admitted at their depositions that "they do not know anyone else who received a complained-of letter, much less who moved out of Michigan"; and (4) the Court should decline to exercise supplemental jurisdiction over the state-law claims, because the issues and potential recovery sought on those claims heavily predominate over the questions and

amounts at issue on the FDCPA claims, where the plaintiffs have valued their collective FDCPA claims at $500,000, and their state law class claims at more than $5 million.

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Ibid.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid.*

"In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 760 (citing *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

### A.  Subject Matter Jurisdiction Under CAFA

In The Class Action Fairness Act, Congress "loosened the requirements for diversity jurisdiction, authorizing federal district courts to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 386 (6th Cir. 2016) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, --- U.S. ---, 134 S. Ct. 736, 739 (2014);

*Standard Fire Ins. Co. v. Knowles*, --- U.S. ---, 133 S. Ct. 1345, 1348 (2013); 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  Defendant Trott does not dispute that this case involves a potential class of more than 100 members, that some potential class members' citizenship is diverse from the defendants', and the amount in controversy exceeds the jurisdictional threshold.  Instead, he points to the "home state exception" and contends that it applies here to deprive the Court of subject matter jurisdiction.

Under that exception, "[a] district court shall decline to exercise jurisdiction [over] a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  That statutory language, however, does not deprive the Court of jurisdiction.  *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465 (6th Cir. 2014) ("The statute speaks only of a district court's *declining* jurisdiction if the exceptions apply. This language clearly indicates that the exceptions do not deprive the court of jurisdiction it otherwise possesses because a court could not 'decline' jurisdiction that it never had in the first place.").  Instead, that exception "require[s] a court to decline jurisdiction [when] 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Ibid.* (quoting 28 U.S.C. § 1332(d)(4)(B)).

Trott's argument that the home state exception applies is based on deposition testimony of the named plaintiffs expressing ignorance of the number of letter recipients who have moved out of the state, and published census data that tracks migration of the general population in and out of various states.  That evidence is hardly compelling.  The party seeking relief under one of the enumerated exceptions in section 1332(d)(4) "bears the burden of establishing each element of the

exception by a preponderance of the evidence." *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 388 (6th Cir. 2016). Here, Trott has pointed to nothing beyond this speculation and general census trends to support his assertion that more than two-thirds of the prospective members of the (as yet undefined) plaintiff classes presently are citizens of Michigan. That may be true, or it may not be. As yet, the record contains no actual evidence to suggest even a reasonable inference that the circumstances must be either way.

Moreover, Trott's assertion that the Court has no jurisdiction is inconsistent with the position he has taken earlier in the case. Previously, he invoked the authority of the Court to adjudicate the dispute when he moved under Ruled 12(b)(6) to exercise its jurisdiction, grant his dispositive motion, and render judgment as a matter of law in his favor on the merits of those claims. There is no general bar to parties taking inconsistent positions in a lawsuit, but a party that wants a federal court to decline jurisdiction under one of CAFA's exceptions must timely assert his objection, and if he does not do so, then he may not raise it later. *See Clark*, 562 F. App'x at 465 ("Because the exceptions are not jurisdictional and the plaintiffs did not alert the district court of their potential applicability, this court will not consider whether they should have applied on appeal."). "[M]otions to dismiss under CAFA's home state exception must [] be made within a reasonable time." *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013). "While what is reasonable will vary according to the relevant facts, it is preferable that such motions be made at the earliest practicable time." *Ibid.*

In this case, Trott contends that he had "no reason to suspect" that there was a basis for his motion to dismiss before the individual plaintiffs' depositions. But he has not pointed to any testimony by Martin or Nundley that disclosed any knowledge about the present citizenship of any

other class members. Moreover, he certainly had access over the past two years to ample information — from the records of his former law firm that sent the many thousands of dunning letters involved in this case — from which to infer basic facts about the state of residence of potential class members at least as of the time when his firm sent the letters. The only other information on which he relies is derived from published census data on rates of migration, which certainly also were available to him. *See Gold*, 730 F.3d at 142 ("We note at the outset that we are skeptical of the contention that nearly three years is a reasonable time for an employer to determine where its sales force lives, particularly where, as here, the sales force in question is limited to those who worked in the very 'home state' at issue."). Trott has not explained any reason why he could not have timely raised, at the very outset of this case, the same arguments that he now makes, based on the same facts on which he now relies.

There is no basis in the present record to apply CAFA's home state exception based on defendant Trott's tardy request.

### B. Supplemental Jurisdiction

Defendant Trott also asks the Court to decline to exercise supplemental jurisdiction over the plaintiffs' state law claims brought under Michigan's Regulation of Collection Practices Act, because the main thrust of the case has to do with the FDCPA, which heavily predominates. Under 28 U.S.C. § 1367(c), the district court may decline to exercise supplemental jurisdiction over state law claims under certain circumstances. That statute generally is invoked when the state law claims are brought in this court as pendant to federal question claims, which have been dismissed. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 280 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when

that court has dismissed all of the claims over which it has original jurisdiction"). It has no application, however, when state law claims are brought in federal court under diversity jurisdiction. *Foster v. Fed. Exp. Corp.*, No. 04-10325, 2005 WL 3369484, at *2 (E.D. Mich. Dec. 12, 2005) (stating that "the Court may not remand [or dismiss] the state law claims after the federal claim is dismissed because it has an obligation to exercise jurisdiction independently invoked by the defendant on the basis of diversity of citizenship") (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

In this case, the plaintiffs invoked the Court's diversity jurisdiction under CAFA. Even if the home state exception applied, there would be no basis to dismiss the state law claims under section 1367(c), because that exception does not deprive the Court of subject matter jurisdiction. *Clark*, 562 F. App'x at 465 ("Because the applicability of the home-state or local-controversy did not deprive the district court of jurisdiction under the Class Action Fairness Act, it had federal jurisdiction and did not need to rely on supplemental jurisdiction to consider the plaintiffs' [state law consumer protection act] claims.").

## C.  Article III Standing

Defendant Trott insists that the plaintiffs have no standing to pursue their statutory claims against him because they have suffered no actual damages and they have not established a concrete injury. However, the three named plaintiffs adequately have alleged facts to establish that they have standing to pursue their individual claims against David Trott for violation of their rights under FDCPA and RCPA, and any testimony by them to the effect that they did not suffer any direct pecuniary loss ("actual damages") does not vitiate that standing.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ibid.*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid.* "Concreteness, therefore, is quite different from particularization." *Ibid.* "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549.

The plaintiffs' allegations and the information so far presented in the record satisfies all of the elements. *First*, it is undisputed that the defendants sent the dunning letters in question to the named plaintiffs. Therefore, if the communications produced an "injury in fact," that injury certainly is "fairly traceable to the challenged conduct of the defendant[s]." *Second*, there is no question that the FDCPA provides a remedy likely to redress that injury, where it authorizes an award of any "actual damages," plus an amount of "statutory damages," up to $1,000, in an amount to be determined by the Court, based on consideration of several factors bearing on the culpability of the defendant's conduct under the circumstances. 15 U.S.C. § 1692k(a), (b).

*Third*, the undisputed facts here adequately establish that the injury alleged was "particularized" to the named individual plaintiffs. Here, there is no dispute that the individual

plaintiffs received the letters in question. The injury, therefore, if it was sufficiently "concrete," indisputably was "particularized" to them. The facts of this case are distinguishable from those where courts have found a lack of particularity. For instance, in *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016), the Sixth Circuit concluded that the plaintiffs lacked standing to pursue claims that their ERISA-governed benefit plan imposed certain unlawful restrictions on benefit payments, because they never alleged that they personally had been affected in any way by the benefit caps. It was not sufficient to allege that absent class members suffered an injury. *Soehnlen*, 844 F.3d at 582 (holding that the named plaintiffs "'cannot acquire such standing merely by virtue of bringing a class action'") (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)). In this case, by contrast, the plaintiffs specifically assert, and it is undisputed, that the allegedly misleading dunning letters were mailed and directed particularly to them, and concerned the status of their individual legal rights and home mortgage debts.

Finally, the facts alleged and so far disclosed by the record adequately establish that the named plaintiffs' injuries were sufficiently "concrete" to confer standing. Contrary to the defendants' position, the fact that the plaintiffs do not allege or seek to recover any "actual damages" (i.e., direct pecuniary loss) resulting from their receipt of the dunning letters does not defeat that conclusion. As noted above, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. But "'[c]oncrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize . . . intangible injuries can nevertheless be concrete." *Id.* at 1549.

The FDCPA confers a statutory right on the plaintiffs: The right, when dealing with the defendant as a debt collector, to receive from him nothing more — and nothing less — than accurate

and fairly presented information regarding the extent of their debts, their legal rights, and the status of any legal proceedings related to collection of those debts. When it enacted the statute, "'Congress [exercised its] power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). As the defendant correctly points out, "Article III standing requires a concrete injury even in the context of a statutory violation," and, therefore, a plaintiff cannot merely "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Ibid.* But "[t]his does not mean . . . that *the risk of real harm* cannot satisfy the requirement of concreteness." *Ibid.* (emphasis added). "For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se*) (1938)). "Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Ibid.* "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Ibid.* The pertinent inquiry is "whether the particular procedural violations alleged in [such a] case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

In this case, the plaintiffs adequately have alleged and seek to recover for a distinct injury to their statutory right: They contend that they were *deceived* by the information presented to them by the defendants, and *misled* about the extent of their debts and the status of legal proceedings related to collection of them. The defendant's alleged prevarications — or, alternatively, his abstinence from truth-telling where truth is compelled by the law — is sufficient in itself to constitute a "concrete" injury to the plaintiffs' rights. *See Federal Election Comm'n v. Akins*, 524

U.S. 11, 20-25 (1998) (holding that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue") (cited with approval in *Spokeo*, 136 S. Ct. at 1549-50).

The Court already has held in its prior opinion that a jury reasonably could conclude that the letters at issue in this case were objectively misleading to the "least sophisticated consumer." There is a readily apparent "real risk of harm" in such a situation that a debtor presented with such deceptive communications, deprived of an accurate understanding of his situation by the defendants' misinformation, could make decisions detrimental to his personal financial position or legal rights that he otherwise would make, if he were fully and accurately informed. "An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir.), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016); *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not [the false statement about attorney fees] would have led [the debtor] to alter his course of action, it would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest."). That, of course, is exactly the harm that Congress sought to prevent by enacting the FDCPA and prohibiting deceptive conduct and communications by debt collectors such as the defendant. 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt

collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."); § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."); *Barany-Snyder v. Weiner*, 539 F.3d 327, 611 (6th Cir. 2008) (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992) ("[T]he FDCPA is 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem.").

As the Supreme Court explicitly recognized in *Spokeo*, there is no requirement in the FDCPA, or in Article III jurisprudence, that a plaintiff must in every case allege some form of direct pecuniary loss in order to establish a sufficiently concrete injury to support standing. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, *a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified*." *Spokeo*, 136 S. Ct. at 1549 (emphasis added). This is such a case, and, for all of the reasons discussed above, the injury to the plaintiffs' statutory rights alleged here is sufficient to make out a concrete and particularized injury. Nothing more is required.

Other courts have subscribed to this view. The Eleventh Circuit has held on similar facts that the allegation of misleading disclosures in violation of the FDCPA was sufficient in itself to show a concrete injury and to establish that the plaintiffs had standing to pursue their claims, regardless of the fact that they did not seek to recover for any direct pecuniary loss resulting from the deception. *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994-95 (11th Cir. 2016) ("The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not

receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete."). Similarly, in *Anda v. Roosen Varchetti & Olivier, PLLC*, No. 14-295, 2016 WL 7157414 (W.D. Mich. Oct. 31, 2016), the district court denied the defendant's motion to dismiss premised on the same standing defect that the defendant contends requires dismissal in this case. The court noted that "Courts following *Spokeo* have held that the allegation of a failure to accurately disclose information required by the FDCPA is sufficient to confer standing." 2016 WL 7157414, at *5 (collecting cases; citations omitted).

This case also is distinguishable from others where the allegations made out nothing more than a "mere procedural violation," which did not result in any misleading or deceptive communication. For example, in *Johnston v. Midland Credit Mgmt.*, No. 16-437, 2017 WL 370929 (W.D. Mich. Jan. 26, 2017), the district court found that the plaintiff had failed to make out any sufficiently concrete injury where, despite the inclusion of certain obviously counter-factual and confusing statements in the letter, the amount of the debt stated was accurate, and the plaintiff could not have been misled by the letter about his legal rights or obligation to pay the amount owed.

### D. "Statutory" Standing

Defendant Trott also argues that the plaintiffs have failed to establish that they have "statutory standing" under the Michigan RCPA, because they have not alleged or testified that they suffered any "injury, loss, or damage" as a result of the defendants' conduct. *See* Mich. Comp. Laws § 445.257(1) ("A person *who suffers injury, loss, or damage*, or from whom money was collected by the use of a method, act, or practice in violation of this act may bring an action for damages or other equitable relief.") (emphasis added). For all of the same reasons discussed above, the plaintiffs

adequately have made out an "injury" to their statutory rights under state law, which parallel those guaranteed under the FDCPA.

The defendant contends that the plaintiffs cannot show that they suffered an "injury" sufficient to warrant recovery under the statute unless they can prove some form of direct pecuniary or non-economic loss. However, in *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571 (6th Cir. 2015), the Sixth Circuit squarely rejected the defendant's reasoning equating "injury" or "loss" with "actual damages," when construing a similar requirement under the Michigan Consumer Protection Act that a plaintiff must prove that he "suffered loss" in order to recover damages or attorney fees for a statutory violation. *See* Mich. Comp. Laws § 445.911(2) ("[A] person who *suffers loss* as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.") (emphasis added). As the Sixth Circuit observed, "the weight of authority in Michigan is contrary" to the proposition that proving a "loss" requires a showing of "actual damages." *CFE Racing*, 793 F.3d at 597. Instead, the court of appeals concluded that the fact of the plaintiff's "loss" conclusively was proved by the jury's finding that its statutory trademark rights had been violated by the defendant's use of its infringing mark, notwithstanding the jury's assessment of its damages at a value of zero dollars. The court of appeals concluded, therefore, "[c]onsistent with the interpretation that 'loss' incorporates the common law concept of injury" under Michigan law, that the plaintiff was entitled to recover both statutory damages of $250 and its reasonable attorney fees. *Id.* at 598.

Finally, at the tail end of his reply brief, the defendant attempts to rouse the specter of looming "substantial questions" under state law as to whether the plaintiffs can proceed at all in a class action litigation to recover statutory damages only under the RCPA, in the face of a provision

in a state court rule — Michigan Court Rule 3.501(A)(5) — That argument is foreclosed, however, by well-established precedent holding that it is the federal procedural rules that govern cases in federal courts, not their state counterparts. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 546 6th Cir. 2014) ("We agree with the district court's conclusion that MCR 3.501(A)(5) does not apply in this case."). The Sixth Circuit noted in *American Copper & Brass* that "the Supreme Court [has] held in a case involving a conflict between Rule 23 and a New York procedural rule prohibiting class actions in cases involving a statutory penalty [that] a 'Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping,'" and it "therefore reject[ed] [the defendant's] argument that the district court erred in declining to apply MCR 3.501(A)(5)." 757 F.3d at 546 (affirming denial of motion to dismiss class action claims under the TCPA premised on Mich. Ct. Rule 3.501(A)(5)) (citing *Shady Grove*, 559 U.S. at 416).

The plaintiffs may proceed with their claims under the Michigan RCPA.

### III. Conclusion

Although some of the defendants' affirmative defenses are demonstrably insufficient, most of them are properly raised. The Court has subject matter jurisdiction over the named plaintiffs' claims against defendant David Trott.

Accordingly, it is **ORDERED** that the plaintiffs' motion for judgment on the pleadings or to strike certain affirmative defenses [dkt. #55] is **GRANTED IN PART AND DENIED IN PART**. The following affirmative defenses raised by defendant Trott Law are stricken: failure to state a claim; estoppel, waiver, consent, laches and/or unclean hands; regulated person. The following

affirmative defenses raised by defendant David Trott are stricken: failure to state a claim; estoppel; laches; regulated person.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that the motion to dismiss or for summary judgment by defendant David Trott [dkt. #89] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 12, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 12, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI