```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3
      Brian J. Martin, et al.,
 4
                         Plaintiffs,
 5                                              Case No. 15-12838
         -v-
 6
      Trott Law P.C., et al.,
 7
                         Defendants.
 8    _____/

 9                      MOTIONS TO DISMISS
                         MOTION TO AMEND
10
                 BEFORE THE HONORABLE DAVID M. LAWSON
11                  United States District Judge
                 Theodore Levin United States Courthouse
12                  231 West Lafayette Boulevard
                         Detroit, Michigan
13                        March 3, 2016
      APPEARANCES:
14
      FOR THE PLAINTIFF:    Andrew J. McGuinness
15                          122 S Main Street, Suite 118
                            Ann Arbor, Michigan  48107
16
                            Diana Gjonaj
17                          Weitz Luxenberg, P.C.
                            719 Griswold Street, Suite 620
18                          Detroit, Michigan  48226

19    FOR THE DEFENDANT     Charity A. Olson
      TROTT LAW, P.C.:      Brock & Scott, PLLC
20                          2723 S. State Street, Suite 150
                            Ann Arbor, Michigan  48104
21
      FOR THE DEFENDANT     Bruce L. Segal
22    DAVID A. TROTT:       Joseph Aviv
                            Honigman Miller Schwartz & Cohn
23                          38500 N. Woodward Avenue, Suite 100
                            Bloomfield Hills, Michigan  48304
24
                 To Obtain a Certified Transcript Contact:
25               Rene L. Twedt, CSR-2907, CRR, RMR, RDR
                        www.transcriptorders.com
```

1

## TABLE OF CONTENTS

2  MATTER                                                          PAGE

3  MOTION TO DISMISS
   Argument by Ms. Olson....................................    4
4  Argument by Mr. Aviv.....................................   13
   Argument by Mr. McGuinness...............................   24
5  Further Argument by Ms. Olson............................   40
   Further Argument by Mr. McGuinness.......................   38
6  Further Argument by Mr. Aviv.............................   45

7  MOTION TO AMEND
   Argument by Ms. Gjonaj...................................   34
8  Argument by Mr. Segal....................................   50
   Further Argument by Ms. Gjonaj...........................   54
9
   Rulings by the Court Taken Under Advisement..............   55
10

11  CERTIFICATE OF COURT REPORTER...........................   56

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Detroit, Michigan
 2   March 3, 2016
 3   2:59 p.m.
 4                         *       *       *
 5              THE CLERK:  All rise.  The United States District
 6   Court for the Eastern District of Michigan is now in session.
 7   The Honorable David M. Lawson presiding.
 8              THE COURT:  You may be seated.
 9              THE CLERK:  Now calling the case of Martin versus
10   Trott Law, Case Number 15-12838.
11              THE COURT:  Good afternoon, counsel.  Would you put
12   your appearances on the record, please?
13              MR. McGUINNESS:  Andrew McGuinness -- sorry, your
14   Honor.
15              Andrew McGuiness for the plaintiffs.
16              MS. GJONAJ:  Diana Gjonaj for the plaintiffs.
17              THE COURT:  Pronounce your last name, please.
18              MS. GJONAJ:  Gjonaj.
19              THE COURT:  Thank you.
20              MS. OLSON:  Good afternoon, your Honor.  Charity
21   Olson appearing on behalf of Trott Law, P.C.
22              MR. AVIV:  Good afternoon, your Honor.  Joseph Aviv
23   of Honigman Miller Schwartz & Cohn on behalf of defendant,
24   Congressman David A. Trott.
25              MR. SEGAL:  And, your Honor, Bruce Segal, also
```

Motion Hearing - March 3, 2016

4

```
1    appearing on behalf of Congressman Trott, also with the
2    Honigman law firm.
3              THE COURT:  His mother named him "Congressman"?
4              MR. SEGAL:  No, your Honor.
5              THE COURT:  All right.  The matter is before the
6    Court on motions to dismiss.
7              The law firm filed a motion to dismiss.  The
8    individual filed a motion to dismiss.  And then the plaintiff
9    also filed a motion for leave to file a second amended
10   complaint.
11             I have read through your submissions.  I'm familiar
12   with the facts.  And so when you present your argument, please
13   keep that in mind.
14             Who wants to go first, the law firm or the
15   individual?
16             MS. OLSON:  I will, your Honor.
17             THE COURT:  Ms. Olson on behalf of Trott Law.
18             MS. OLSON:  Yes, your Honor.
19             THE COURT:  You may proceed.
20             I would like to limit these submissions to about ten
21   minutes each.
22             MS. OLSON:  Certainly, your Honor.
23             And I will do my best not to belabor points.  I know
24   the Court takes the submissions seriously, and I'm certainly
25   open to any questions that may be looming in light of the
```

1    review of the submissions.

2           Otherwise, just to walk through, our position is very

3    simple.  We don't believe that assuming the allegations to be

4    true, as this Court must on a 12(b)(6) motion, that plaintiffs

5    have stated viable claims under either of the three current

6    theories that are pending.

7           We call them the attorney letterhead claims, the

8    attorney -- or amount of debt claims, and then the third

9    claim, which is the overshadowing series of claims.

10          The attorney letterhead claims, we have argued and --

11     (Cell phone interruption at 3:02 p.m.)

12          THE COURT:  People have been jailed for less than

13   that, Mr. McGuinness.

14          MS. OLSON:  If I may, your Honor.

15          THE COURT:  No, just one minute.  Let's make sure we

16   don't get interrupted again.

17     (Pause in the proceedings at 3:02 p.m.)

18          THE COURT:  Is it off?

19          MR. McGUINNESS:  It's completely off, Judge.  I'm

20   sorry.

21          THE COURT:  Okay.  Go ahead.

22          MS. OLSON:  Plaintiffs argue that the letters that

23   were attached to the first amended complaint suggest, either

24   in a way that's false or misleading to the recipient of the

25   letter, that an attorney has been involved in the sending of

1    the letter when, in fact, no attorney has been involved.

2            We know what the standard is in the Sixth Circuit,

3    Judge.  You're well aware of it.  You have written extensively

4    on it in opinions that you have offered, not only in relation

5    to claims against Trott Law, but other defendants in FDCPA

6    claims.

7            The fact of the matter is, the Sixth Circuit very

8    clearly sets forth that if a communication is reasonably

9    susceptible to two different interpretations, one of which is

10   inaccurate, that can state a claim for a false and misleading

11   communication in violation of the Act.

12           As we look at these letters, though, we don't look at

13   them in a vacuum, your Honor.  We look at these letters and we

14   say, what is false, what is misleading, what is susceptible to

15   a misinterpretation as it relates to this particular letter.

16   Either an attorney sent it or an attorney didn't send it.

17           The problem, of course, is by virtue of plaintiff's

18   own complaint, which relies extensively on testimony that was

19   taken in a totally unrelated matter, plaintiff is essentially

20   relying on testimony that indicates that an attorney is

21   involved in reviewing the file, examining the file, examining

22   the information that's coming from the client before a letter

23   such as the letters that have been attached goes out.

24           So the suggestion that an attorney isn't involved is

25   not only inaccurate, it's belied by the own -- by the very

1    testimony that plaintiffs are seeking to rely upon to get past

2    the 12(b)(6) hurdle.  The fact that --

3           THE COURT:  Well, you know, I think there are --

4    there might be sort of parallel arguments here that I would

5    presume Mr. McGuinness would want not confounded.

6           One is that there is an involvement of an attorney by

7    virtue of the fact that the individual, Mr. Trott, had some

8    supervisory authority and was the principal in the firm, and

9    then there is the question about whether these individual

10    letters, on an item-by-item basis, were reviewed by an

11    attorney as opposed to administrative personnel in the firm.

12           I think those -- if you're saying that there is some

13    inconsistency there, then why don't you elaborate on that, but

14    if that's not your argument, then set me right.

15           MS. OLSON:  It's not.  And I am going to leave the

16    issue of Congressman Trott's involvement to my colleagues.

17           My issue pertains to what essentially plaintiff has

18    done to attempt to plead in the alternative.  Either the

19    letters, on the one hand, were not sent by an attorney, but

20    the least sophisticated consumer would open up the letter and

21    say, ah, an attorney sent this, and it would create this false

22    sense of urgency, this fear that there is this imminent action,

23    this parade of horribles is about to unfold.

24           In the alternative, plaintiff argues, well, it was

25    sent by an attorney, but by virtue of the fact that an

1   attorney's name isn't on the signature line, an attorney's
2   signature isn't on the signature line, somehow we have misled
3   the consumer to open and be misled as to -- as to the fact
4   that a clerical person or some non-attorney personnel in the
5   firm sent the letter.
6        The problem I have with this argument is, if the
7   letter is being sent by somebody in a firm, after it's been
8   reviewed by an attorney at the time of placement to determine
9   whether or not title is proper, whether or not all of the
10  other requirements have been met in order to proceed with
11  foreclosure, how does the fact that an attorney has either
12  physically signed the letter or not transform an otherwise
13  accurate letter into a violation of the FDCPA?
14       All of the case law in this -- in this area deals
15  with circumstances in which a court has concluded there is a
16  false sense of urgency.  Because you have essentially an
17  attorney who's lent his or her name to a letter in order to up
18  the ante, right, to get the debtor's knees knocking, as some
19  courts have said.
20       The reality is, in this circumstance, not even
21  plaintiff concedes that there was some, you know, false sense
22  of anything portrayed by virtue of informing the recipient,
23  hey, your mortgage is -- your mortgage is in default, it's
24  been referred for foreclosure.  This is what we do.
25       This isn't a situation, you look at the Clomon case

1    that we cited, you look at the Avila case that we cited, these

2    are the lead cases in this area of the law that have been

3    cited hundreds and hundreds of times by courts around the

4    country, and all of these decisions have looked at whether or

5    not there is a suggestion that an attorney is involved in a

6    process when the reality, is he or she is not, in fact.  It's

7    an illusion, it's a ruse.

8         But not even plaintiff has argued that by sending

9    this letter Trott intended to trick the consumer into thinking

10   their file had been forwarded for foreclosure when it had not,

11   in fact, been.

12        In fact, when you look at some of the other claims --

13        THE COURT:  You're saying the reason the letters were

14   sent was the very reason that it was referred for foreclosure.

15        MS. OLSON:  Right.  And so it's not analogous to

16   these other cases in which you have a collection agency

17   sending a letter on a $10 debt or a $50 debt on an attorney

18   letterhead when they have no intention, they are not

19   contemplating further activity.  There is no professional

20   judgment being exercised.

21        So the circumstances surrounding this very letter are

22   not only distinguishable based on the cases that have been

23   cited, but essentially plaintiffs concede, whether they do so

24   expressly or impliedly, that this is being sent over, that

25   there are attorneys involved, that they are exercising

Motion Hearing - March 3, 2016

```
1    professional judgment.

2           So on that basis, the suggestion that this letter

3    can be read one of two ways, and as long as one of them

4    is potentially inaccurate, we have a cause of action.

5    Unfortunately, based on the facts, based on the pleadings,

6    based on the testimony -- and this is testimony that

7    plaintiffs interjected.  This is not something that we have

8    tried to bring in improperly in order to support our motions.

9    This is the testimony:  The testimony is that the attorneys

10   are involved in the files.  The testimony is, these letters

11   are sent.

12          The suggestion that the only way to avoid this claim

13   would have been for Trott Law to include a disclaimer in the

14   letter saying no attorney's involved, that would be false,

15   that would be misleading.  So again, I just think these facts

16   are distinguishable from other attorney-letterhead claims that

17   we have seen.

18          As it relates to the second claim, your Honor, and

19   this is the claim that -- and again, this claim is pled in the

20   alternative, I presume in an effort to get around a 12(b)(6)

21   motion, essentially saying either you didn't add fees in the

22   amounts that you set forth or you did add fees and they were

23   overstated.

24          The problem is, again, when you take the legal theory

25   away and you look at the facts, the underpinning of that
```

Motion Hearing - March 3, 2016

1    particular claim, there's no facts in the record, there's no

2    facts in the pleading for the Court to even take as true on

3    its face to know whether or not these people owed fees, to

4    know whether or not fees were included.

5         So as much as plaintiffs want to suggest that, you

6    know, we can plead in the alternative and either way gets us

7    over this hurdle, at the end of the day, there is no factual

8    underpinning for the claim.  And that is essentially the focus

9    of Twombly as we know it.

10        The last claim, the overshadowing claim, again, pled

11   in the alternative is, look, you know, we have put the 1692g

12   validation language in there.  There is no disagreement, I

13   believe, amongst the parties that the language is technically

14   accurate.

15        Plaintiffs, in response to our motion, your Honor,

16   they argued, you know, counsel for Trott Law has it wrong,

17   because even if it's technically accurate, if it's confusing,

18   if it overshadows, it states a cause of action.  I absolutely

19   agree, that's what the case law says.  I'm not suggesting that

20   technical accuracy is some sort of shield for an FDCPA claim.

21        But what I am saying is this:  You look at the Lamar

22   case, the Lamar case dealt with conflicting deadlines, the

23   possibility of conflicting deadlines.  And the Sixth Circuit

24   said, hey, while you can't confuse consumers, you are not

25   under an affirmative duty to begin to sort of lay out and

1    explain these conflicting deadlines in the way that's been

2    suggested by plaintiff in this particular case, your Honor.

3         The Lamar Court, in a case involving a sort of

4    parallel lawsuit that had been filed with a shorter response

5    period, the Court looked at it and said, fairly emphatically,

6    that the FDCPA, notwithstanding its broad sort of consumer

7    protection mandate, would not require a debt collector to

8    otherwise get in the business, essentially, of rendering legal

9    advice and putting in some sort of reconciling language in

10   order to explain.

11        At the end of the day, the 30-day disclosures are

12   there for the least sophisticated consumer to pick up the

13   phone, write the letter, do any of the things that the statute

14   presumes.

15        The fact, again, that the matter has been sent to the

16   firm for foreclosure proceedings in the absence of a firm date

17   for a sheriff's sale, again, your Honor, it doesn't, at the

18   end of the day, confuse the least sophisticated consumer as to

19   what he or she needs to do to exercise those rights in the

20   30-day period.

21        So at the end of the day, we don't feel that a claim

22   has been stated as to either, or as to any of the three

23   claims, and we would ask that the Court grant our motion to

24   dismiss for the reasons briefed.

25        THE COURT:  You're also standing on the statute of

```
 1   limitations argument with respect to plaintiff Martin, is that
 2   correct?
 3          MS. OLSON:  Yes, that's correct.  Certainly as it
 4   relates to the federal claims, your Honor.
 5          THE COURT:  All right.  And then I'll give you a
 6   chance to address the amendment motion after the plaintiffs
 7   have a chance to discuss that, and you can raise that when you
 8   also present your rebuttal argument.
 9          MS. OLSON:  Thank you, your Honor.
10          THE COURT:  All right.  Thank you, Ms. Olson.
11          Mr. Segal, Mr. Aviv, which one of you is arguing?
12          MR. AVIV:  I will, your Honor.
13          THE COURT:  Very well.  Mr. Aviv, go ahead.
14          MR. AVIV:  Good afternoon, your Honor.
15          THE COURT:  Good afternoon.
16          MR. AVIV:  May it please the Court, we adopt
17   Ms. Olson's arguments.  And if you accept Ms. Olson's
18   arguments, then, of course, the case against Congressman Trott
19   falls, as well.
20          THE COURT:  You know, Mr. Aviv, I have great respect
21   for our Article I officials; this case is not against a
22   congressman.
23          MR. AVIV:  I understand that, Judge.
24          THE COURT:  Mr. Trott was not a congressman at the
25   time these actions arise, and I think it would not be useful
```

Motion Hearing - March 3, 2016

14

```
 1    in this case to use that appellation here, even understanding
 2    his new status, following the events of this case.
 3              MR. AVIV:  And I shan't.  Actually, it came out of my
 4    mouth without my thinking about it.
 5              THE COURT:  I know.  That happens from time to time,
 6    and I don't mean to criticize you personally for that.  I'm
 7    just suggesting a way to approach it.
 8              MR. AVIV:  Yes.
 9              And so what I'm suggesting is that if you accept
10    Ms. Olson's arguments, then the case against Mr. Trott falls,
11    as well.
12              THE COURT:  Yes, I agree.
13              MR. AVIV:  But we have additional arguments.  And
14    it's going to take me a bit more time to develop them, your
15    Honor, because this is the very first time -- there has been,
16    gosh, a dozen cases against Trott Law, but this is the first
17    and only time that the individual shareholder, Mr. Trott, has
18    been sued.  So I think it's important to understand the issues
19    and come forward with a strong ruling here.
20              So the specific -- the only material facts alleged
21    against Mr. Trott in the first amended complaint is that he
22    was a shareholder of Trott & Trot,t P.C.  He was a shareholder
23    until 2014.  At that time he left the firm and the name of the
24    firm changed.
25              The firm had -- during the time that he was there, it
```

Motion Hearing - March 3, 2016

1    is alleged that the firm had 61 to 73 attorneys, depending

2    which paragraph of the complaint you look at.  And the State

3    corporate information updates that your Honor can take

4    judicial notice of, they are official papers filed with

5    the State, shows that throughout the proposed class period

6    Trott, P.C. had between five and seven shareholders.

7         And in 2012, the year that the Martin letter was

8    sent, in 2012 Trott, P.C. had three directors, and by that

9    time Mr. Trott was no longer the president of the corporation,

10   and was no longer an officer of the corporation.

11        Now, plaintiff Martin's claims are based on a letter

12   sent on May 3, 2012, more than three years before the

13   complaint was filed; and plaintiff Nundley's letter was sent

14   in August 2014, two years after Mr. Trott was no longer an

15   officer of the corporation.  The one letter was attached as

16   Exhibit A, the other letter is attached as Exhibit B.  And

17   the only violations of the FDCPA and the RCPA alleged in the

18   complaint are the sending of these two letters attached as

19   Exhibits A and B.

20        So we start with the -- with the statute, Section

21   813(a) of the federal -- of the FDCPA, the civil liabilities

22   section.  And it imposes liability on any debt collector who

23   fails to comply with any provision of this title with respect

24   to any person.

25        So to state a claim, the plaintiffs must establish

 1    two different prongs, two different requirements:  Both that

 2    Mr. Trott was a debt collector and that he violated the Act

 3    with respect to these plaintiffs.  Each prong must be

 4    satisfied.

 5              And I think in the first amended complaint and in the

 6    response in opposition, the plaintiffs seem to fuse these two

 7    requirements into one.  They are two separate requirements.

 8              And regarding the debt collection requirement in the

 9    statute, your Honor, what must be shown is that Mr. Trott is

10    actually a debt collector, not an indirect debt collector, as

11    plaintiffs seemed to argue.

12              If you look at the statute in the definitions

13    section, 803, the term, debt collector, is not defined as a

14    person directly or indirectly engaged in the business of

15    collecting debts.  The direct or indirect language doesn't

16    modify the noun, person.

17              THE COURT:  You mean it is defined.  You said it was

18    not defined.

19              MR. AVIV:  What I said, the term, debt collector, is

20    not defined as a person directly on indirectly engaged in the

21    business of collecting debts, not defined.  The term, directly

22    or indirectly, doesn't modify the noun, person; it modifies

23    the verb, collect.

24              What the statute says is, debt collector means any

25    person who collects or attempts to collect, directly or

```
1    indirectly, debts owed to another.
2            THE COURT:  Right.  I don't think there is any
3    dispute about how that statute ought to be read.
4            MR. AVIV:  So, for example --
5            THE COURT:  Adverbs modify verbs.
6            MR. AVIV:  Right.  So, for example, a lawyer who
7    sends a letter that says Bank of America is owed money can't
8    say that he is not collecting a debt, because the statutory
9    use of the word, indirectly, modifies the verb, collect.
10           THE COURT:  How do you -- how do you deal with the
11   allegations in paragraph 152?
12           MR. AVIV:  Well, those allegations are entirely
13   conclusory, and they are exactly the type of allegations that
14   were held by the Supreme Court in Iqbal to be disentitled to
15   any assumption of truth.
16           I mean, the allegation is that -- is that Mr. Trott
17   had supervisory control or authority over the business
18   practices of Trott, P.C. because of his position as managing
19   member, managing president and/or CEO, this whole list of
20   titles with an and/or tying that to --
21           THE COURT:  Well, actually, it says more than that.
22   It says, "On information and belief, David Trott was
23   personally involved in creating, reviewing and approving the
24   form foreclosure letters --" and I'm paraphrasing this part --
25   involved in the complaint, and in the adoption or
```

Motion Hearing - March 3, 2016

```
 1    implementation of the procedures by which those form letters
 2    were sent to the named plaintiffs and class members.
 3              I don't see how that is a conclusory allegation.  It
 4    makes an allegation of fact.
 5              MR. AVIV:  How is he involved?
 6              THE COURT:  I mean, maybe it's not true, but --
 7              MR. AVIV:  But how was he involved?  What did he do?
 8    There is no allegation that he drafted these letters.  There
 9    is no allegation that he drafted -- that he sent the letters
10    to the plaintiff.  The allegation is that he is involved in
11    the business practices that create this form letter, but there
12    is no allegation as to how he was involved.
13              And in Iqbal, what you had is you had an allegation
14    that the Attorney General was the principal architect.  You had
15    the allegation that the FBI Director was personally involved
16    in creating the discriminatory policy that was challenged
17    there.  Personally involved, that -- that's the allegation in
18    Iqbal.
19              And the Court said, that's not a factual allegation,
20    that's a conclusion.  How was he personally involved?
21              And so, so what they really rely on is the Kistner
22    case.  I mean, that's -- that's really their entire -- their
23    entire case, the Kistner case.
24              And let's talk about the Kistner case for a second.
25    What Kistner did was, it analyzed the first prong of the
```

```
 1    statute, the debt collector prong.
 2            And before I get to Kistner, because I do want to
 3    make this point, your Honor, there is no -- there is no
 4    indirect control person liability under the statute.  If you
 5    control the debt collector, that doesn't make you a debt
 6    collector.
 7            For example, I just argued a case involving the
 8    Delaware Securities Act, and the Act says that any person
 9    who makes a statement of material fact -- I'm sorry -- any
10    purchaser, seller or offerer who makes a statement that is
11    false, materially false, is liable.  And then it imposes
12    liability on every person who directly or indirectly controls
13    the buyer or the seller.  Directly or indirectly controls.
14    Federal Securities Act, same thing.
15            There is no control person liability in the FDCPA,
16    which is exactly what they are alleging, that he controls
17    everything.  And if Congress knew how to put that liability
18    in the Securities Act, it certainly knew how to put that
19    liability in the FDCPA.
20            So we get to Kistner and what -- Kistner, again,
21    dealt with the first prong, debt collector.  And it was an
22    issue that came to the Sixth Circuit after the grant of
23    summary judgment for Mr. Margelefsky by the United States
24    District Court for the Northern District of Ohio.  And the
25    Sixth Circuit criticized the District Court because the
```

Motion Hearing - March 3, 2016

1    District Court had not analyzed what makes a debt collector.

2    And the Sixth Circuit said, that's a question of law.  A

3    question of law.  And because it's a question of law, they did

4    not remand it back to the District Court, they decided that

5    question of law in the Sixth Circuit, what is a debt

6    collector.

7          And in that case -- and of course, the Sixth Circuit

8    did not follow the opinion of the erudite Richard Posner of

9    the Seventh Circuit, who had held that you can't sue the

10   shareholder of a corporate debt collector without piercing the

11   corporate veil.

12         I mean, Judge Posner was so upset about that case

13   that he said it was, in effect, malicious prosecution and the

14   plaintiff should have been sanctioned for suing the individual

15   shareholder.  But that's Seventh Circuit law.

16         The Sixth Circuit, in its wisdom, did not follow

17   Judge Posner, and what it held is, it followed the District

18   Court decisions in the various districts of the circuit.

19         And if I can give you the exact language, because I

20   think it's important --

21         THE COURT:  From Kistner?

22         MR. AVIV:  From Kistner.

23         THE COURT:  It says, he may be personally liable

24   on the basis of his participation in the debt collection

25   activities of the firm more generally; is that the language

Motion Hearing - March 3, 2016

1   you're referring to?

2           MR. AVIV:  Says, where a shareholder, officer or

3   employee of a corporation is personally involved in the debt

4   collection at issue, personally involved, he may be held

5   personally liable as a debt collector without piercing the

6   corporate veil.

7           Personally involved, not indirectly involved.  So you

8   look at the specific findings that the Kistner Court made.

9           Number one, Margelefsky personally drafted the form

10  letter that was then sent to the plaintiff.

11          Number two, he was one of only two attorneys at the

12  firm.

13          Number three, he was the only member of the LLC.

14          Number four, he personally oversaw compliance with

15  applicable collection laws and he personally got involved when

16  the intervention by a lawyer became necessary.

17          THE COURT:  And we know all of this because the case

18  came to the Sixth Circuit on summary judgment after discovery

19  occurred, isn't that correct?

20          MR. AVIV:  Yes, it did.  But as I said before, the

21  Court was determining the issue as a matter of law, as a

22  question of law.

23          THE COURT:  No, I understand that, Mr. Aviv.  And I

24  understand the distinction you are trying to draw.  But you

25  are citing factors that the Court considered -- or at least

1    you think I ought to consider -- in making that application of

2    fact to law that were developed in the record.  And we're a

3    step or two ahead of that -- or behind that, I should say, in

4    this case on a 12(b)(6) motion, right?

5        MR. AVIV:  Well, I of course concede that those facts

6    were developed as a result of admissions made by Margelefsky

7    at a deposition, that is correct.  But what they demonstrate

8    is the kind of facts that need to be alleged in a complaint in

9    order to survive, as a question of law, the issue of whether

10   the defendant is a debt collector.  That's a question of law.

11       And -- and all I'm asking you to do is look at the

12   complaint and just at the complaint, don't look at the

13   conclusions, because they are not entitled to any presumption

14   of truth.  Look at the facts alleged.

15       So what are the facts alleged?  Unlike in Kistner, in

16   this case, there is no allegation -- there is no allegation

17   in the complaint that Trott had any role in drafting the

18   letters that were sent to the plaintiffs, or that he had any

19   involvement in the collection of plaintiffs' debts, or that he

20   was personally engaged in the collection of debts in general.

21   No such allegation.

22       Unlike in Kistner, there is -- he was not -- he is

23   not one of two attorneys in a law firm, he is one of between

24   61 and 73 attorneys.

25       Unlike in Kistner, he was not the sole member of a

1    limited liability company or the sole shareholder of Trott,

2    P.C.

3            From the beginning of the proposed class period until

4    the time he left the firm, the firm had between five and seven

5    shareholders.  It's not a sole shareholder firm.

6            Unlike in Kistner, there is no allegation that he was

7    personally involved in overseeing compliance under applicable

8    collection laws.  There is no allegation like that.

9            Unlike in Kistner, there is no allegation that

10   Congressman Trott was personally involved in any debt

11   collection when the intervention by a lawyer became necessary.

12   He never acted as a lawyer.

13           THE COURT:  Mr. Aviv, I --

14           MR. AVIV:  There is no allegation --

15           THE COURT:  Excuse me, Mr. Aviv.  I understand your

16   argument and you're over your time.  Would you like to sum up,

17   please?

18           MR. AVIV:  Your Honor, I think the complaint should

19   be dismissed and I think judgment should be entered forthwith.

20   There is no just reason to delay.  Thank you.

21           THE COURT:  All right.  If you win and your client

22   is dismissed, I may ask you for additional briefing on that

23   Rule 54 issue.

24           MR. AVIV:  Thank you, your Honor.

25           THE COURT:  Thank you.

```
 1              Mr. McGuinness.

 2              MR. McGUINNESS:  Good afternoon, your Honor.  I'll

 3    try to be brief.

 4              Let me address a couple of what I think are

 5    overarching problems with both these arguments.  They pay lip

 6    service to three propositions, but they really ignore them.

 7              On a 12(b)(6) you have to construe the pleadings in

 8    favor of the plaintiff.

 9              Ms. Olson wants to interpret --

10              THE COURT:  Well, that's not the Iqbal rule.

11              MR. McGUINNESS:  The factual allegations.

12              THE COURT:  Sure.

13              MR. McGUINNESS:  But still, in terms of one of the

14    key factual issues in the case, whether or not these letters

15    are misleading, I mean, that's going to be a determination --

16    unless we persuade you in our favor on summary judgment or

17    they persuade you in their favor on summary judgment

18    otherwise -- for the jury to resolve.

19              And viewed that way, the issue isn't whether

20    Ms. Olson thinks the letters are clear, to her point, it's

21    whether or not they are capable of the opposite interpretation,

22    interpreted in favor of the plaintiffs, as is required.  And

23    we cited those cases.  It's a well-known proposition.  The

24    allegations have to be accepted as true.

25              You have cited 152.  I want to reserve talking about
```

Motion Hearing - March 3, 2016

1    the individual liability of the individual defendant before

2    I go through the broader argument for dismissing the whole

3    complaint.

4         But there are numerous allegations of Mr. Trott's

5    involvement, but just limiting it right now to the overarching

6    issue of attorney's fees, we -- I have cited to you in our

7    response the numerous paragraphs of the complaint where we say

8    that those fees were owed, 106, 111 to 12.  I don't want to

9    repeat all these paragraphs here, but -- and we have cited, we

10   have gone beyond that, Judge.

11        THE COURT:  How can -- how can a letter be misleading

12   when it alleges or where it tells the debtor that the debtor

13   owes less than he actually does?

14        MR. McGUINNESS:  Well, take a look at the Kevelighan

15   case that we brought in very narrowly just some select parts

16   of that.

17        On day one, here's the amount owed.  They interpret --

18   I think misinterpret -- some requests for validation as a

19   request for a reinstatement quote, and within a couple of

20   weeks the attorney's fees have multiplied enormously.

21        So on that basis, we initially pled that they were

22   not following the McCalla decision -- which has been cited by

23   them many, many times, by the law firm, for propositions that

24   they like -- for the proposition that they have to state the

25   amount of the debt.  They weren't forgiving that amount of

Motion Hearing - March 3, 2016

26

1    debt.

2         We have provided you and made allegations, specific

3    factual allegations which are true that these are foreign

4    mortgages.  They have to be approved by HUD or FNMA or all the

5    other organizations.  They all provide for attorney's fees in

6    the event of a foreclosure.

7         I'm quite confident that the Trott Law firm, which

8    has described itself as a foreclosure firm and the primary

9    foreclosure firm in the state for many decades, doesn't do

10   foreclosures for free, Judge.  So it's just not the case that

11   those fees were somehow waived.

12        But even if that were true, and even if you concluded

13   that they didn't have to then put that amount owed under the

14   contract, under the mortgage in the amount of the debt, even

15   though that's what we believe the FDCPA requires, and the

16   RCPA, you have the situation of the Wilson case where, based

17   on the testimony, sworn testimony -- because you gave

18   Mr. Parker a 30(b)(6) in that case, and I'm happy you did,

19   because when I finally got my hands on the transcript, I

20   didn't realize it had been filed in that case as a public

21   record -- just on that transcript they added $500 under that

22   corporate advance term.

23        And -- and I'm now flipping into the -- slightly into

24   the individual allegation.  We pled -- I shared with Mr. Aviv

25   before this oral argument, I have only seen him once before

Motion Hearing - March 3, 2016

27

1    in my life.  It was the same day and the only time I ever laid

2    eyes on David Trott, and it was in the Kevelighan courtroom.

3    I wasn't counsel in that case, but I was watching it.

4            And that's the case where Judge Duggan ruled, and we

5    put this in the complaint, that you can't get more than 3,750

6    before the foreclosure under the Michigan foreclosure by

7    advertisement statute.

8            So they are either not stating the correct amount or

9    they are overstating the amount.  We need discovery to figure

10   that out.  We certainly have that second claim.

11           I want to go back briefly to the attorney letterhead

12   claim.  We think that there are multiple indications

13   sufficient in this -- in both letters to indicate -- and I

14   want to just correct Ms. Olson, if it's actually a correction.

15   She suggested that we were arguing in the alternative that

16   these letters were not -- excuse me -- were from attorneys,

17   but somebody might have mistakenly thought they were not from

18   attorneys.  That's not what we're arguing.  That's what they

19   are arguing.

20           They are arguing that they could not reasonably be

21   interpreted to be from a lawyer, but they are.  You, your

22   Honor, required that they file an answer to the complaint the

23   same date they filed their motions to dismiss.  In both of

24   those answers, and we've cited the paragraphs, they say they

25   were from attorneys.

 1          But in their argument in this motion they said, oh,

 2     they can't reasonably be interpreted to be from attorneys.

 3     That's an admission of liability.  I mean, that's -- that's

 4     just flat-out right in with the Kistner case, if it can be

 5     interpreted two ways, one of which is wrong, it's -- it's

 6     misleading under the FDCPA.

 7          But beyond that, we argue -- so we're pointing out

 8     their concession.

 9          Beyond that, the indications for both, either the

10     name David Trott and the firm Trott & Trott that's been the

11     primary foreclosure firm forever, the font on the letterhead,

12     the fact that it's Trott & Trott, which is a common -- the

13     ampersand, two people from the same family, professional

14     corporation, David Trott argues in his reply brief, well, a

15     professional corporation could be a chiropractor, could be a

16     dentist, could be an optometrist, could be a podiatrist.

17          You know, that's just a silly argument, Judge.  I

18     mean, nobody is going to interpret P.C. or professional

19     corporation on what appears to be a lawyer letterhead to be

20     a podiatrist.  The use of the word client, firm, represent,

21     foreclosure, and in the Martin letter it says, we're the

22     creditor's law firm.

23          So these are just sort of extreme arguments.  They

24     are welcome to them, they can make them to you on summary

25     judgment or in front of a jury, but they are ignoring the

```
 1    proposition that you have to construe the pleadings in
 2    favor of the plaintiff, take the facts as true, and most
 3    importantly, the least sophisticated consumer standard.  It's
 4    certainly reasonable to think that the least sophisticated
 5    consumer would think that these were from a lawyer.
 6              We have talked about the attorney fee situation.
 7              I want to talk about overshadowing, and I want to
 8    take a little more time on this, because I think --
 9              THE COURT:  You don't have a lot of time.
10              MR. McGUINNESS:  I understand, your Honor.
11              They have made some really extreme arguments in this
12    case.  And I don't want to go over them, but I do think that
13    the fact that they are making so many extreme arguments, just
14    for example, that you have to construe the statute narrowly
15    because it's trying to hold a party who wouldn't otherwise be
16    held liable, that's just directly contrary to published Sixth
17    Circuit law, and I have cited that in the response.  It's the
18    opposite of the FDCPA and the RCPA law.
19              But there is this argument that David Trott is making
20    on the overshadowing claim, Ms. Olson does not make it for the
21    firm, that it doesn't apply to the initial communication.  And
22    they make a textual argument based on the 2006 amendment which
23    is currently in effect, it's just -- it's a suggestion, your
24    Honor, first of all, just to start with the punch line, that
25    you can overshadow like heck as long as you do it in the
```

1    initial communication.  You can just fool people all you want.

2    But it says within the 30-day period after you get the initial

3    communication you can't overshadow, therefore, you can do it

4    in the initial communication.

5         That's essentially the argument that David Trott is

6    making both in his opening brief and in his reply brief.  It's

7    just a silly argument.

8         And, you know, the Ninth Circuit in Swanson, which is

9    the lead overshadowing case in 1988, quote, "To be effective

10   the notice must not be overshadowed or contradicted by other

11   messages or notices appearing in the initial communication

12   from the collection agency."

13        That language is picked up by the Lamar case, the

14   Sixth Circuit case that they like because it overruled or it

15   found insufficient an overshadowing claim.  And we haven't had

16   another one -- well, we had a recent one, the Gillis case.

17        And then the Pollard case out of the First Circuit,

18   which we cite in the footnote, post the 2006 amendment, has

19   applied that overshadowing provision of 1692g, subpart (b),

20   to initial communications.

21        It's just, you know, that they make these arguments,

22   and then two courts, the Third Circuit and the Second Circuit,

23   the Third in the Caprio case, 709 F.3d. 142, it's a 2013 case,

24   have held -- and then the Solomon -- Ellis versus Solomon case

25   out of the Second Circuit, 591 F.3d. 130, both have held that

Motion Hearing - March 3, 2016

1    when Congress put the overshadowing provision expressly in

2    1692g it was, it was doing so by codifying the common law of

3    Swanson and the other cases.

4          But the big thing about these, this overshadowing

5    claim, and I would like to -- you know, we put in this Federal

6    Trade Commission advisory opinion dated March of 2008, and I

7    want to just point out to the Court that these things are a

8    big deal.

9          In the Jerman, Jerman case versus Carlisle, 559 U.S.

10   573, Supreme Court case in 2010, the Supreme Court, seven to

11   two, reversed the Sixth Circuit that held that the bona fide

12   error defense could apply to an error of law in the FDCPA.

13   That's a case out of the Sixth Circuit.

14         And one of the things that the Court does is talk

15   about the Sixth Circuit's interpretation that, well, there is

16   a safe harbor in the FDCPA for FDC advisory committee opinions.

17         And so the Court in Jerman goes on -- and I don't

18   want to read this to you and take up the time, but it's

19   dealing with the issue that there is this mechanism.  There

20   was a lot of argument at oral argument about it.  Justice

21   Breyer was focused on it.  These are big things.  There aren't

22   a lot of them.

23         In the one that we brought to the Court's attention,

24   it's -- it's a foreclosure firm out of Cleveland asking the

25   FDC for an advisory opinion so that they get a safe harbor,

```
 1      can we put reinstatement -- requests for reinstatement,
 2      quotes, settlement options, in a foreclosure -- in the initial
 3      communication for a foreclosure letter.
 4           And the -- and the FDC rules, it's not a per se
 5      violation, but then they go on, nevertheless, collectors must
 6      take care that communicating information about settlement
 7      options does not undermine the consumer protections in 15
 8      U.S.C. 1692g(a).  That's the validation rights.
 9           They go on to say, it may not overshadow or be
10      inconsistent with the disclosure.  Debt collectors that
11      provide consumers with information in addition to the
12      mandatory disclosure violate 16 -- I'm sorry -- 15 U.S.C.
13      1692g(a) if the additional information effectively obscures
14      the consumer's right to dispute his or her debt and obtain
15      verification from the collector.
16           So what they have done here is, you have got the least
17      sophisticated consumer getting the first foreclosure notice
18      from a law firm, their biggest asset, their shelter, they are
19      freaked out, it's a very scary and tough situation.  And for
20      this subset, this is a subclass, the SRRQ, solicitation of
21      request for reinstatement quote, they are telling them, you
22      have got this 30 days, but you may have the opportunity to
23      reinstate your mortgage.  You have to do it before the --
24      before the sale, before the sheriff's sale, however.  So there
25      is a sense of urgency there.
```

```
 1              In her brief, in the Trott Law brief in response --
 2     I'm sorry -- in their opening brief, here's a sentence I think
 3     is really important:  Exhibit A, the Martin letter, does not
 4     affirmatively state nor reasonably imply that foreclosure
 5     proceedings have been commenced as of the date of the letter
 6     or that such proceedings have any effect whatsoever on the
 7     plaintiff's right to seek validation during the 30-day
 8     validation notice.
 9              Judge, if that's true, all they had to do is to say
10     that in the letter.  She has now, in this sentence, indicated
11     a really easy way to avoid any possibility of confusion.  And
12     she says, well, we don't -- you can't -- it's not right for
13     you to require us to put corrective disclosures.
14              But in the Buchanan versus Northland Group case,
15     Sixth Circuit 2015 reversing the dismissal of an FDCPA case
16     out of a different judge in this court, that's exactly what
17     Judge Sutton said.  It would have been easy to fix this.  And
18     he offered different language.  In fact, he took it out of a
19     subsequent version of the letter at issue from the debt
20     collector.  He says, it's not that hard to do.  But here --
21              THE COURT:  All right, Mr. McGuinness.  I think I
22     understand your argument.  Your time is up.
23              Would you like to spend some time on your motion to
24     amend?
25              MR. McGUINNESS:  I'm going to let Ms. Gjonaj argue
```

```
 1     that, if that's okay.
 2            MR. AVIV:  Your Honor, would it be possible to make a
 3     short reply?
 4            THE COURT:  I'm going to hear the motion to amend and
 5     then I'll hear your replies.
 6            MS. GJONAJ:  Thank you, your Honor.
 7            We are seeking leave to file a second amended
 8     complaint to add a claim under the federal and state debt
 9     collection statutes based on defendants' use of the term,
10     corporate advances, in the debt collection letters that it
11     sent to homeowners.
12            The claim here mirrors the corporate advance claim
13     that was in the Wilson case where this Court sustained --
14            THE COURT:  I'm familiar.
15            MS. GJONAJ:  Okay.  And the Court sustained the legal
16     viability of the claim.
17            I'll try to keep this short.
18            But the plaintiff Martin and plaintiff Cadeau in this
19     case both received letters from Trott Law that have the line
20     item charged for corporate advances.  And just as in the
21     Wilson case, the term, corporate advance, doesn't appear
22     anywhere in the mortgage note or -- or I'm sorry -- the
23     mortgage for Martin or for Cadeau.
24            Now, defendants have pointed to this single use of
25     the word, advanced, in the Martin mortgage and say that this
```

1   somehow changes the analysis from the Wilson case; however,

2   the cases analyzed by this Court in Wilson, which found that

3   the letters were misleading, did so where the term was used to

4   mask an attempt to collect attorney's fees and found that the

5   phrase didn't adequately disclose the nature of the debt.

6          Similarly, here, where you look at the Martin

7   mortgage, it simply states the lender secures the payment of

8   all other sums with interest advanced under paragraph 7 of the

9   mortgage.  That's that one reference to the word, advanced, in

10  the Martin mortgage.

11         Now, when you look to paragraph 7 of the mortgage

12  it makes no mention of attorney's fees whatsoever.  So if a

13  consumer were to receive this letter, then go back to their

14  mortgage and try to make sense of it, a consumer would still

15  be confused and would have no idea that it includes the

16  attorney's fees.

17         Now, for the -- for plaintiff Cadeau's claim,

18  defendants haven't pointed to a single reason why she should

19  not be able to pursue a claim against Trott Law.  The claim

20  precisely tracks the Wilson ruling.  And David Trott, however,

21  takes issue with the date of the Cadeau letter and that it was

22  sent in October after he had left the firm.

23         But to be clear, your Honor, the plaintiff is not

24  individually seeking a corporate advance claim against David

25  Trott; rather, she is seeking to represent a class.

```
1              To the extent that this argument is based on

2    whether --

3              THE COURT:  How can she possibly represent a class

4    without having a personal stake in the claim herself?

5              MS. GJONAJ:  Well, this is going to the Fallick

6    issue, which actually Drew is prepared to address, as well.

7              THE COURT:  You're arguing the motion, counsel.

8              MS. GJONAJ:  Sure.  So the Fallick issue that we go

9    into in more detail in the Martin overshadowing claim, a

10   plaintiff can seek to represent a class of individuals that

11   are similarly harmed during the time that Trott was at the

12   firm.

13             So while the Cadeau letter was sent after he may have

14   left the firm, it's the same harm.  So under Fallick this is

15   something that would be considered at class certification and

16   not at this point.

17             THE COURT:  Yes, except right now you're asking to

18   amend a complaint to add a plaintiff to file a claim against

19   an individual against whom she has no valid claim.  So why

20   should I allow you to amend to add -- to permit her to sue

21   that defendant?

22             MS. GJONAJ:  Well, your Honor, because --

23             THE COURT:  We're well before class certification.

24   We're not dealing with class certification now.  We're simply

25   dealing with Rule 15, and futility certainly is a basis to
```

```
 1    deny an amendment.  And if you concede that she has no claim
 2    against David Trott individually, why should I let her join
 3    the lawsuit?
 4          MS. GJONAJ:  Well, your Honor, because she does have
 5    a claim against Trott Law.
 6          THE COURT:  Sure.  But, so you're asking that she be
 7    allowed to join the lawsuit and sue that defendant only, is
 8    that what you're saying?
 9          MS. GJONAJ:  That she should -- well, that she should
10    individually, and on behalf of the class, be able to sue Trott
11    Law.  And since it is a similar harm and we're talking about
12    the same type of form letters that were sent before and after
13    David Trott left the firm, that she could adequately represent
14    a class of individuals that received the letter while Trott,
15    David Trott, was still with the firm.
16          THE COURT:  Okay.  Thank you.  Anything else?
17          MS. GJONAJ:  If you would like, I can touch briefly
18    on prejudice and undue delay.
19          THE COURT:  No, I don't think you need to talk about
20    that.
21          MS. GJONAJ:  Okay.
22          THE COURT:  All right.  Anything else?
23          MS. GJONAJ:  That is all, your Honor.
24          THE COURT:  Thank you.
25          Mr. McGuinness, I neglected to ask you a question.
```

1   Do you concede that Mr. Martin's claims under federal law are

2   barred by the statute of limitations?

3          MR. McGUINNESS:  He doesn't have a claim in the

4   complaint against -- under the FDCPA, he hasn't brought that

5   claim.  He has brought an RCPA claim and he is seeking --

6   Ms. Nundley has brought an FDCPA claim, but --

7          THE COURT:  No, I understand that, but my question

8   is:  Do you concede that he has no claim under the federal

9   statute?

10         MR. McGUINNESS:  Absolutely, Judge.  We have not --

11  we have not pled a claim on his behalf.  We have not pled a

12  claim against David Trott with the new Cadeau plaintiff in

13  the second amended complaint under the FDCPA.  But under

14  Fallick, both of those individuals can represent a broader

15  class.

16         And in fact, in the David Trott -- I'm sorry --

17  Martin, to establish his RCPA claim against both defendants on

18  that same theory would be saying, you misrepresented the legal

19  status of my -- of my debt in that initial communication when

20  you violated federal law at the time you sent it.  That states

21  a claim under the RCPA.  And there is a six-year statute, as

22  Judge Cleland has held, under the RCPA.

23         So it's a predicate to his RCPA claim, therefore, he

24  has got every incentive, as does she, to establish those

25  claims against both defendants.  And under Fallick that's what

1    the rule --

2              THE COURT:  What jurisdiction do I have to entertain

3    a state law claim by a non-diverse party?

4              MR. McGUINNESS:  Under the CAFA, Judge.  We're --

5    nobody has even argued that point.  We put it in our brief.

6    We laid it out.  We have alleged about 250,000 class members.

7    The claims are $200 a piece under the RCPA.  That's well over

8    the $5,000,000 threshold, it's well over the 100 putative

9    class member threshold, and at least one of those --

10             THE COURT:  But he has no federal claim and there is

11   no diversity, not even minimal diversity.

12             MR. McGUINNESS:  He has minimal diversity.  You just

13   need to have somebody in the class.  And certainly of these

14   people who --

15             THE COURT:  But I haven't certified a class.

16             MR. McGUINNESS:  No, but under CAFA, Judge, it's the

17   pleading.  And if you plead a class that -- obviously, people

18   who have -- 200,000 people who have had their houses foreclosed

19   upon, Judge, at least a few of those people have left the

20   state.  That's what we plead in the first amended complaint.

21             THE COURT:  Okay.  Thank you, Mr. McGuinness.

22             MR. McGUINNESS:  And so we have minimal jurisdiction

23   under --

24             THE COURT:  Ms. Olson, do you have any rebuttal?

25             And please address the amendment motion, if you wish.

1      MS. OLSON:  I will, your Honor.  And I will be

2    concise and brief.

3          Attorney letterhead claim, I don't believe that

4    there has been any articulation as to how these letters are

5    misleading.  Essentially, the argument I hear is, if there is

6    an attorney involved in the file, and plaintiffs concede the

7    attorneys are involved in reviewing everything, because they

8    have already attached the deposition transcript which

9    establishes our point, that they have to sign it, they have

10   to sign this letter, and they have to have this name on the

11   letter, otherwise it's false and misleading under 1692e, or in

12   the alternative, if the letter is sent and it's not signed by

13   an attorney and doesn't have an attorney name, then we have to

14   have a disclaimer of attorney involvement notwithstanding the

15   fact that an attorney is involved.  That's the type of bizarre

16   and idiosyncratic read of a letter that the Sixth Circuit has,

17   you know, dictated shouldn't survive a 12(b)(6).

18         And I understand that these are difficult issues,

19   your Honor, but in this instance, neither of those lead to a

20   situation where there is sufficient factual allegations to

21   establish how that letter is misleading, given what we know

22   about the process, given what plaintiff has conceded.

23         Second point I want to make, you asked plaintiffs'

24   counsel pointedly, how is it misleading not to charge certain

25   fees?  Right?  How is it misleading to put an amount that's

Motion Hearing - March 3, 2016

41

1    actually less than what you owe?  And I didn't hear a

2    response.  I heard reference to the fact that plaintiffs have

3    repeatedly alleged that such fees were owed.

4         Document 22, page ID 651, plaintiffs' counsel cites a

5    number of paragraphs within the complaint.  I have looked at

6    them.  Again, I don't see any factual allegations that these

7    folks owed fees or not.  Plaintiffs' counsel can surmise and

8    guess that fees were owed, but I respectfully submit to the

9    Court that that's not the standard.  That's not how you move

10   this claim in such a way for purposes of the 12(b)(6) standard.

11        Lastly, your Honor, the overshadowing claim, I stand

12   by my previous arguments that we are not under any duty under

13   Sixth Circuit precedent to include or interject reconciling

14   language.

15        The quote at issue and the quote that plaintiffs take

16   issue with, your Honor, is this:  "Requests for reinstatement

17   information must received and approved by this office before

18   the date of the sheriff's sale."  Okay?

19        There is nothing in the letter that says that the

20   sheriff's sale has been commenced.  There is nothing in the

21   letter that says that a request for reinstatement will somehow

22   preclude or foreclose, no pun intended, the recipient of this

23   letter from otherwise exercising all of the rights that are

24   available to them under 1692g.

25        And so the suggestion, again, that because we're

1    referencing that we have been retained, we're referencing that

2    we have been retained for purposes of foreclosure, that that

3    somehow creates confusion when juxtaposed against the 1692g

4    language.  Again, I just think that's a stretch, understanding

5    that the threshold is low not only under 12(b)(6), but under

6    the least sophisticated consumer standard.

7         And so, again, I think there is nothing in the

8    letter, read as whole -- we can't just pull a sentence out,

9    we can't pull a paragraph -- read as a whole, there is nothing

10   in that that would discourage or confuse even the most least

11   sophisticated consumer from understanding that if I want

12   validation of the debt, I've got to do this within 30 days.

13   If I want to request reinstatement, I have got to call the

14   phone number.  That's all it says.  It doesn't say that doing

15   one forecloses the other and I don't believe it reasonably

16   implies that.

17        As it relates to the second amended complaint, Judge,

18   truthfully, I mean, we have briefed all of these issues and

19   then the corporate advance claims come in.  This is a claim

20   that I believe we addressed during our very first meeting with

21   the Court.  And the Court, I think, asked fairly pointedly,

22   are you looking to include this claim?  Is this case related?

23   What's going on?

24        And I think that was done in part -- I certainly read

25   it so that we would understand where this case was going, set

1    up a briefing schedule, and do the things we have done.

2         At the time that meeting was held, certainly at the

3    time that complaint was filed, this claim was out there.  It's

4    in the letter.  This isn't a circumstance that this is later

5    discovered evidence or something that plaintiffs have in good

6    faith come across and have decided to add.

7         They have made a strategic decision not to add this

8    claim, and now, five, six months into the case when we have

9    done all of the briefing on the motions to dismiss, in the

10   eleventh hour, now that claim reappears.  It's as if we're

11   going to start this entire process over again as it relates to

12   a potential second amended filing.

13        I don't understand the reasons why it wasn't included

14   previously, but the point remains, anything in the second

15   amended complaint that's been proposed that relates to this

16   claim one, two and three, we stand on the arguments we have

17   made for purposes of the dispositive briefing.

18        As it relates to the corporate advance theory, I

19   didn't have the benefit of being part of the Wilson case from

20   its inception.  We certainly understand and respect the

21   Court's ruling as it relates to the corporate advance claim.

22        THE COURT:  Right.  But if I grant the motion, then

23   you'll have an opportunity to revisit it.

24        MS. OLSON:  We certainly will have an opportunity to

25   revisit it.  I just didn't want the Court to think that we

```
 1    weren't mindful and didn't take care to read your Honor's
 2    order as it relates to that particular claim.  But the reality
 3    is, I think the window of opportunity for that claim was in
 4    front of plaintiffs on numerous occasions.
 5            THE COURT:  Well, is it the -- are you citing as
 6    prejudice the fact that you would have to engage in another
 7    round of Rule 12 motions if that amendment motion is granted?
 8            MS. OLSON:  There would be certain prejudice.
 9            THE COURT:  Is that the prejudice?
10            MS. OLSON:  And I conceded in our response to the
11    thing, I'm not suggesting that that creates some sort of
12    prejudice that couldn't be remedied in terms of, you know,
13    costs for the time we have spent briefing and those types of
14    things.  The Court could certainly fashion relief in a way
15    that would be equitable to all concerned.
16            But again, as it relates to this particular claim,
17    you know, I think we have -- I think we have briefed the
18    claims.  I think we are where we are and --
19            THE COURT:  All right.
20            MS. OLSON: I'm just troubled that this is, you know,
21    mid February, we're putting a claim in that has been out there
22    from the beginning, and a claim that plaintiffs' counsel, you
23    know, squaredly looked both you and everyone else in this room
24    in the face and said, this isn't going to be part of this case.
25            THE COURT:  Actually, I think it's March.
```

```
 1              MS. OLSON:  March, yes.  Well, the claim came in
 2    February.
 3              THE COURT:  Right.  Okay.
 4              MS. OLSON:  Thank you, your Honor.  We do think --
 5    we do think that the claim should be dismissed.  Thank you.
 6              THE COURT:  Thank you.
 7              Mr. Aviv.
 8              MR. AVIV:  Yes, your Honor.  With your permission and
 9    accommodation, I would like to reply to Mr. McGuinness's
10    argument.
11              THE COURT:  Sure, no, that's what I'm asking you to
12    do.
13              MR. AVIV:  But Mr. Segal will respond to the motion
14    to amend.
15              THE COURT:  Oh, all right.  Go ahead.
16              MR. AVIV:  If that's okay.
17              And I'll be very brief.  The snow is coming and
18    there's a debate to listen to tonight, so.
19              THE COURT:  Well, for some of us.
20              MR. AVIV:  For some of us.  It's entertaining.
21              THE COURT:  For some of us.
22              MR. AVIV:  Entertaining and alarming.
23              The only response I heard from Mr. McGuinness on my
24    argument, on Mr. Trott's argument that there are -- that there
25    is nothing alleged against him to make the complaint survive
```

 1    is Rule 8.  But we're way beyond Rule 8.

 2            And the only quote that I will -- I will remind your

 3    Honor, I'm sure you remember, is that while paragraphs 151

 4    and 152, the only paragraphs that allege anything against

 5    Mr. Trott, may be consistent with his liability, that doesn't

 6    do the trick.

 7            And what the Supreme Court specifically held in Iqbal

 8    is, where a complaint pleads facts that are merely consistent

 9    with a defendant's liability, it stops short of the line

10    between possibility and plausibility of entitlement to relief.

11    And he has not alleged facts showing a plausibility of

12    liability.

13            The second thing I want to respond to, you -- in

14    response to your question about Martin's FDCPA claims, and

15    he indicated that Martin has RCPA claims, and therefore, he

16    should be allowed to remain in the lawsuit.  I didn't get a

17    chance to argue that.

18            He has no RCPA claims.  And the reason he doesn't

19    have RCPA claims is because he hasn't alleged facts showing

20    that David Trott is a regulated person.

21            Now, excuse me for being a statutory textualist, but

22    again, we need to look at the statute.  And what the statute,

23    the way it defines a regulated person is, a person whose

24    collection activities are confined and are directly related to

25    the operation of a business other than that of a collection

1    agency.

2              And then it goes on, the statute, to define what a

3    collection agency is.  And a collection agency means, a person

4    directly or indirectly -- here, by the way, your Honor, it's a

5    person directly or indirectly, and in the FDCPA, it's not a

6    person directly or indirectly.

7              Anyway, a collection agency, a person directly or

8    indirectly engaged in collecting or attempting to collect a

9    claim owed or due or asserted to be owed or due another

10   arising out of an express or implied agreement.  That's the

11   definition of a collection agency.

12             Well, what they plead in their complaint, in

13   paragraph 171, is that both Trott, P.C. and Congressman Trott

14   are or have been regularly engaged, directly or indirectly,

15   in the collection of debts, of mortgage debts.

16             So their complaint puts Trott squarely within the

17   statutory definition of a collection agency.  And if he is

18   squarely within the definition of a collection agency, under

19   their allegation, then the RCPA simply does not apply to him.

20             Now, let's -- let me make the other argument.  Let's

21   ignore that conclusory allegation.  Let's ignore it.  They

22   still don't show that Trott is a regulated person, because the

23   definition would be -- the issue is not, can an attorney be a

24   regulated person.  An attorney can be a regulated person.  In

25   fact --

```
 1              THE COURT:  In fact, the statute specifically says
 2    that.
 3              MR. AVIV:  Inclusive.  Although it's a real badly,
 4    badly drafted statute, because that's an inclusion, but it
 5    can't be the business of a collection agency.
 6              But let's forget that for a second being.  An
 7    attorney can be a regulated person if, if the attorney is
 8    handling claims for -- on behalf of a client or in his own
 9    name.  And there is no allegation that David Trott handled
10    this claim or handled any claims in general.  And if he isn't
11    handling claims, I mean, there is not even an allegation that
12    reviewed any account, if there is no allegation that he
13    handled claims, he cannot be a regulated person, and
14    therefore, the RCPA doesn't apply.
15              Last point, your Honor, very quickly.  I just want to
16    say something about Fallick, because they are using Fallick to
17    allow Martin to remain and assert class claims against David
18    Trott.
19              So what exactly happened in Fallick is that the Sixth
20    Circuit first found that the plaintiff in that case could
21    proceed -- he had -- what the plaintiff had was claims for
22    breach of fiduciary duty and equitable relief under ERISA.
23    And the Sixth Circuit found that plaintiff had stated those
24    claims upon which relief can be granted.  So the plaintiff
25    had ERISA claims.
```

```
 1              It also found that, that he purported to represent
 2    both his class, his plan, and other plans and the participants
 3    in the other plans had the very same ERISA claim that he had.
 4    And as a result, the Sixth Circuit said, whether he can proceed
 5    to represent a class that had his claims, but belonged to
 6    different plans is a Rule 23 issue, it's not a standing issue.
 7              Here we don't have that.  We don't have a plaintiff,
 8    because his claim is barred by the statute of limitations.
 9              THE COURT:  Well, the point Mr. McGuinness makes is
10    that it doesn't matter because he is not seeking to advance
11    any federal claims, he is invoking the federal jurisdiction
12    under CAFA, making allegations that Mr. Martin has state
13    law claims on behalf of a class that falls within the
14    jurisdictional parameters of CAFA, and therefore, he can stay
15    in the lawsuit there.
16              And oh, by the way, he should also be able to
17    represent a class of people who have federal claims, as well,
18    and that is a Rule 23 issue.  And he might be right about
19    that, but --
20              MR. AVIV:  Well, I don't know any case -- I don't
21    know any case that allows a plaintiff to be a class plaintiff
22    when the plaintiff doesn't have his own federal claims.  I
23    don't understand, and I know of no case, where you could --
24    you can have no federal claim and yet assert a federal class
25    action claim.
```

```
 1            THE COURT:  Sure.  But that's not a Rule 12 issue.  I
 2    think you're right.  It's a Rule 23 issue.
 3            MR. AVIV:  His appropriateness --
 4            THE COURT:  He may not be an adequate class
 5    representative.
 6            MR. AVIV:  But what I'm suggesting is, he has to be
 7    dismissed from the -- actually, it's not whether he is dropped
 8    from the case.  The issue is, is David Trott dismissed from
 9    the case.  And if plaintiff doesn't have a claim against David
10    Trott, he can't keep David Trott in the case by bringing a
11    putative class action.
12            THE COURT:  Well, yeah, but then there is Nundley,
13    and that's -- the question is whether or not the merits of
14    your motion succeeds as to her, I think.
15            MR. AVIV:  Yes.  Okay.  Thank you, your Honor.
16            THE COURT:  All right.
17            Mr. Segal, you have been very patient.
18            MR. SEGAL:  I will be very brief, your Honor.
19            THE COURT:  All right.
20            MR. SEGAL:  But I will answer one question, which is,
21    that there is quite a bit of authority that says that the
22    plaintiff who doesn't have a claim against a defendant doesn't
23    have standing, and that Rule 23 doesn't usurp the Constitution.
24            I would refer your Honor to the DaimlerChrysler Corp
25    case.  And these would have been in our brief, but they
```

```
 1     were --
 2              THE COURT:  But that's beside the point.
 3              MR. SEGAL:  Well, not really, your Honor, because --
 4              THE COURT:  Yes, really.  So let's move on to the
 5     amendment part.
 6              MR. SEGAL:  This is with regard to the amendment,
 7     your Honor.
 8              THE COURT:  Oh, because you're saying that it's --
 9              MR. SEGAL:  Mr. Martin has no claims.
10              THE COURT:  Right.  Against Mr. Trott.
11              MR. SEGAL:  Yes.
12              THE COURT:  Yeah, okay.
13              MR. SEGAL:  Your Honor, there is the DaimlerChrysler
14     Corp versus Cuno case.  These arguments were raised in their
15     reply brief; otherwise, they would have been in our initial
16     response brief, your Honor.  That's the only reason I brought
17     them in now, because they were only raised in the reply.
18              But the DaimlerChrysler case is 547 U.S. 332.  The
19     Court said, "We see no reason to read the language of Gibbs so
20     broadly, particularly since our standing cases confirm that a
21     plaintiff must demonstrate standing for each claim he seeks to
22     press."
23              Then, your Honor, there is the Sixth Circuit case of
24     Neighborhood Action Coalition versus City of Canton, Ohio;
25     that's 882 F.2d. 1012, it's a Sixth Circuit case.  The Court
```

1    said, "In Allen v. Wright," that's a U.S. Supreme Court case,

2    468 U.S. 737, "the Court held that standing to sue requires a

3    showing of personal injury which is fairly traceable to the

4    defendant's illegal conduct and which is likely to be

5    addressed by judicial relief.

6         "Moreover, this Circuit requires that plaintiffs who

7    represent a class allege and show that they personally have

8    been injured, not that the injury has been suffered by other

9    unidentified members of the class to which they belong and

10   which they purport to represent."

11        Then in Liberty Capital Group LLC versus Capwill,

12   your Honor, it's at 148 Fed. Appx. 413, the Sixth Circuit

13   said, "A class plaintiff such as Lazar cannot represent those

14   having causes of action against other defendants against whom

15   the plaintiff has no cause of action and from whose hands he

16   has suffered no injury.  This is true even though the plaintiff

17   may have suffered an injury identical to that of the other

18   parties he is representing."

19        So I think both the Supreme Court and the Sixth

20   Circuit have adequately addressed the issue that they try to

21   raise with regard to bringing claims on behalf of Mr. Martin

22   when he himself has no claim, your Honor.

23        THE COURT:  We're not talking about Mr. Martin, I

24   don't think.

25        MR. SEGAL:  Excuse me?

Motion Hearing - March 3, 2016

53

```
1              THE COURT:  Oh, I see.  You're saying Mr. Martin with
2    respect to the amendment, because that would be --
3              MR. SEGAL:  Correct.  He has no --
4              THE COURT:  What about, do you have any arguments
5    with respect to the motion to amend other than that?
6              MR. SEGAL:  Yes, your Honor.
7              Quite specifically, I have read the Wilson case.
8    I have gone back, I have read the mortgage documents in the
9    Wilson case.  I have read the Martin documents.  The Martin
10   documents refer to his liability for the payment of advances.
11   There was no mention of advance liability in the Wilson case.
12             And if you look at the two, you look at what's
13   alleged, there is really no way that a person who, no matter
14   how unsophisticated you are, if you read your mortgage and you
15   see, I'm liable for advances, and you get a letter that says,
16   here's a $100 -- $101.75 liability for a corporate advance,
17   that you can't look at it and say, oh, yes, it ties exactly
18   in with paragraph 2 of my mortgage.
19             It's not a misrepresentation.  It's not something
20   that either the RCPA or the FDCPA were meant to cover.  And
21   since -- other than that, since the new plaintiff does not
22   allege any claims against Mr. Trott, for the same reasons that
23   Mr. Martin is not entitled to add the corporate claims, she is
24   not entitled to add any claims against him, your Honor.
25             THE COURT:  All right.  Thank you.
```

Motion Hearing - March 3, 2016                                    54

1            MR. SEGAL:  Thank you.

2            THE COURT:  Well, counsel, I think you have one last

3      shot if you have any reply to the motion to amend.

4            No, Mr. McGuinness, not you.

5            MR. McGUINNESS:  Okay.

6            THE COURT:  Don't feel obliged.

7            MS. GJONAJ:  Pardon?

8            THE COURT:  I say, don't feel obliged.

9            MS. GJONAJ:  Just a couple quick points.

10           THE COURT:  You might want to address the reason why

11     you didn't raise this earlier or include it in either the

12     complaint or the first amended complaint.

13           MS. GJONAJ:  Sure.  Well, we did discuss this at the

14     first status conference that we had and plaintiffs reasonably

15     relied and absolutely knew of the Wilson case that was pending

16     and relied on the prosecution of those claims in the Wilson

17     case.

18           We further relied on the Supreme Court decision in

19     American Pipe, which defendants haven't touched on at all,

20     which says that the statute of limitations is tolled while a

21     class action is pending.  In American Pipe it specifically

22     says this is to avoid duplicative filings of the same claim.

23           So here I don't see how they could argue undue delay

24     when this motion to amend was filed only 18 days after Trott

25     Law settled the Wilson case on a non-class basis.

```
 1              And just to touch quickly on the prejudice that
 2   Trott Law mentioned, the Sixth Circuit, in Phelps v McClellan,
 3   that's 30 F.3d. 658, states that the -- in that case the Court
 4   found that the fact alone that the party would need to defend
 5   against a new claim is not enough to establish prejudice.  In
 6   that case they allowed an amendment where the delay was only
 7   two months -- was two months after the event.
 8              I think that's all I have, your Honor.
 9              THE COURT:  All right.  Thank you.
10              MS. GJONAJ:  Thank you.
11              THE COURT:  The motions are submitted.  I'll get you
12   a written decision in due course.
13              Anything further for the record from the plaintiffs?
14              MR. McGUINNESS:  No, your Honor.  Thank you.
15              THE COURT:  Thank you.  Defendants?
16              MR. AVIV:  Thank you, your Honor.
17              MS. OLSON:  Thank you, your Honor.
18              MR. SEGAL:  Thank you, your Honor.
19              THE COURT:  All right.  Good luck getting out of
20   town this afternoon.
21              You may recess court.
22              THE CLERK:  All rise.  Court is now in recess.
23                  (Proceedings adjourned at 4:13 p.m.)
24                       *      *      *
25
```

Motion Hearing - March 3, 2016

1

2                          CERTIFICATE OF COURT REPORTER

3

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    _____        January 16, 2018
             s/ Rene L. Twedt
     RENE L. TWEDT, CSR-2907, CRR, RMR, RDR   Date
8        Federal Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25