UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. MARTIN and YAHMI NUNDLEY,

                Plaintiffs,                              Case Number 15-12838
v.                                           Honorable David M. Lawson

TROTT LAW, P.C. and DAVID A. TROTT,

                Defendants.

_____/

**ORDER GRANTING UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASS,
PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT AGREEMENT,
APPOINT SETTLEMENT ADMINISTRATOR, SET HEARING DATE,
AND AUTHORIZE NOTICE TO CLASS MEMBERS**

On April 20, 2018, the plaintiffs filed their unopposed motion to certify a settlement class, preliminarily approve a class settlement agreement, appoint a settlement administrator, authorize notice of a class action settlement, and set a date for a final fairness hearing. The Court has reviewed the submissions of the parties and the terms of the proposed settlement and heard oral argument on June 28, 2018. At the end of the hearing, the Court announced from the bench its decision to grant the plaintiffs' motion.

I.

The parties seek conditional certification of a settlement class comprising "all persons to whom Trott Law PC caused to be sent any version of the Trott PC Foreclosure Letter [as defined in the settlement agreement] in connection with mortgages conveyed for residential real property located in Michigan, which was not returned as undelivered by the U.S. Post Office, dated from August 11, 2009, through the date of entry of the Preliminary Approval Order."

On August 11, 2015, the plaintiffs filed their original complaint in this case for themselves and other similarly-situated present or former homeowners in the State of Michigan. The plaintiffs

brought claims under the federal Fair Debt Collection Practices Act (FDCPA) and Michigan's

Regulation of Collection Practices Act (RCPA), alleging that the defendants' mass-produced

dunning letters violated those statutes principally by (1) taking the appearance of communications

sent by an attorney, when in fact no attorney was involved in any meaningful way in producing or

reviewing them, and (2) including language that a reasonable consumer could perceive as abrogating

or "overshadowing" their rights to request verification of the debt and to be assured that any

foreclosure proceeding would be put on hold until a responsive verification was produced. The full

factual premises of the plaintiffs' claims were discussed in the Court's prior opinion ruling on the

defendants' first round of dispositive motions. Op. & Order Granting in Part Motions to Dismiss

[38] (July 26, 2016).

The Court ruled on two rounds of dispositive motions by defendants Trott Law, P.C. and

individual defendant David Trott, a former principal of the firm. On July 26, 2016, the Court

granted in part the defendants' first motions to dismiss and dismissed some claims brought by one

plaintiff as time-barred, as well as certain other claims premised on allegedly misleading

understatements of the amounts owed by the plaintiffs. The Court rejected the defendants'

arguments that the language in the dunning letters was not misleading as a matter of law, and also

rebuffed defendant David Trott's position that he was exempt from the requirements of the pertinent

statutes. The Court subsequently denied motions for reconsideration by both the plaintiffs and

defendants. On July 12, 2017, the Court issued a second opinion granting in part a motion for

judgment on the pleadings by the plaintiffs and denying a second motion to dismiss by David Trott.

The Court once again rejected Trott's position that he was exempt from regulation under the relevant

statutes. The Court also struck some vestigial affirmative defenses from the answers of both

-2-

defendants, while allowing other more substantive defenses to stand.  The Court also rejected Trott's belatedly asserted defense that the Court lacked jurisdiction over the case under the Class Action Fairness Act (CAFA).  The Court later summarily denied David Trott's motion for reconsideration.

The Court set the litigation back on track after disposing of the second round of dispositive motions, and the parties proceeded to engage in what eventually turned out to be a monumental and torturous process of attempting to marshal and produce a titanic volume of ESI discovery materials responsive to the plaintiffs' document demands.  By late October 2017, the parties reported to the Court during a status conference that defendant Trott Law, P.C. already had spent more than $700,000 on the ESI discovery process, and the parties had yet to compile a consensus inventory of the material to be produced.  At that point the Court strongly encouraged the parties to consider a second round of facilitative mediation, bearing in mind the extreme costs to both parties that likely would be incurred in order fully to conclude the contemplated ESI discovery.  In March 2018, the parties met with the assigned mediator over the course of three full days, and their efforts resulted in a settlement in principle of all claims in the case.  The parties reported to the Court that a significant factor that motivated the settlement was the anticipation that the discovery process would have involved approximately $250,000 per month in costs into the foreseeable future.  The parties eventually agreed on a term sheet for the settlement, and they filed their motion for conditional class certification and preliminary approval of the settlement on April 20, 2018.

II.

-3-

The pertinent terms of the revised proposed settlement agreement are as follows. The defendants agree to pay $7.5 million into a settlement fund for the benefit of the class. Defendant Trott Law, P.C. also agrees to add certain clarifying language to its foreclosure letters responsive to both the "attorney letterhead" and "overshadowing" claims. The plaintiffs agree to a dismissal with prejudice of all their claims and the class claims.

The parties estimate, based on a preliminary production of records identifying the class members, that the class would include approximately 250,000 persons. The gross settlement fund therefore represents a minimal possible recovery of $30 per person for each class member. However, the parties assert that, based on historical experience with typical return rates for class notices in similar cases, they expect the actual recovery per claimant to range from $100 to $175 each, depending on the number of claims made. The parties also submitted to the Court an addendum stating that they entered into a supplemental agreement for the settlement which allows each defendant "the option of terminating the Settlement Agreement, at their sole option, prior to the [final approval hearing] if the number of Class Members who timely submit valid Requests for Exclusion exceeds five (5) percent of the Settlement Class."

The plaintiffs indicate in their motion that they intend to apply for incentive awards for the named plaintiffs of $5,000 each, and that class counsel intends to seek approval for an award of attorney fees of "up to 33 1/3 percent of the common fund" plus litigation expenses.

The parties propose the appointment of Epiq Class Action & Claims Solutions, Inc. as the settlement administrator, which would implement a plan for providing notice and receiving claims from class members including: (1) post card notices including a postage-paid claim "short form" mailed to all class members identified in the records provided by the defendants; (2) "banner

advertisements on websites designed to achieve eight million impressions in Michigan and an additional four million impressions nationally"; and (3) creation of a settlement website that will include information about the settlement and an online "long form" claim submission feature which will allow class members to submit a claim using a unique identifier derived from the address of their residential property.

<div align="center">III.</div>

"Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). "Further, a class action must fit under at least one of the categories identified in Rule 23(b)." *Ibid.* "The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23." *Id.* at 278-79 (quoting *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)).

The Court will certify conditionally the proposed settlement class under Federal Rule of Civil Procedure 23(b)(3), based on the parties' representations. *First*, the proposed class comprising approximately 250,000 current or former homeowners in the State of Michigan to whom the defendants sent their form dunning letters certainly meets the requirement of being so numerous that joinder of all those persons as individual plaintiffs would be impracticable.

*Second*, there are prominent common questions of law and fact affecting all of the class members that are pertinent to the defendants' liability. The core question in this case is whether the language used in several specific iterations of the defendants' form letters would be misleading to such an extent that a reasonable consumer receiving them would be misled as to the extent of his or her rights to contest a foreclosure and how long he or she might have to do so. In order to decide

that question, a jury would have to consider the perspective of a hypothetical reasonable consumer receiving the letters, without regard to any actual perception by any of the hundreds of thousands of plaintiff class members.  That central common issue would govern the defendants' liability on all of the FDCPA and RCPA claims.

*Third*, because the claims and defenses of the parties principally would concern the propriety of the defendants' systematic actions and application of their policies, they are sufficiently typical of all class members to be addressed in common.  Since the plaintiffs sought statutory damages only in their complaint and never have alleged any actual damages, no assessment of the individual circumstances of any class members would be required.  Either all of the plaintiffs are entitled to relief or none of them are; and whatever relief they should receive would be common to them all in the form of a statutory damage award per occurrence of the unlawful conduct.  For the same reasons, the common questions in this case entirely predominate over any individualized issues, since there are no issues that would implicate the individual circumstances of class members.

Under Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"  *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)).  "The Rule requires that 'the class members have interests that are not antagonistic to one another.'"  *Ibid.*  "Thus, 'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'"  *Ibid.* (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).  "These requirements are scrutinized more

-6-

closely, not less, in cases involving a settlement class," because "'the need for the adequacy of representation finding is particularly acute in settlement class situations.'" *Ibid.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 795 (1995)).

Here, the named individual plaintiffs and class representatives adequately are positioned to represent the class, and their interests sufficiently are aligned with them, since the named plaintiffs themselves are current or former Michigan homeowners who received form dunning letters materially identical to those sent to other class members within the class period.  None of the named plaintiffs have interests that might clash with those of the absent class members.  Moreover, class counsel is well qualified and has prosecuted this action vigorously on behalf of the putative class.

The plaintiffs also have satisfied the requirements of Rule 23(b)(3) by showing that "'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).  "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'"  *Id.* at 468 (quoting *Amchem*, 521 U.S. at 594; *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)).  "'If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.'"  *Ibid.* (quoting *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)).  The plaintiffs "need not prove that every element can be established by

classwide proof," but "the key is to identify the substantive issues that will control the outcome." *Ibid.* (quotations omitted).

As noted above, *all* of the claims in this case are common to each member of the class, and there are no individual claims that the plaintiffs seek to adjudicate.    Therefore, class claims predominate.  Because of the relatively small amount of individual claims, class administration is far superior to any other method of adjudication.

"In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Ibid.* (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).  That is because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class."  *Cole*, 839 F.3d at 541.  "In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and . . . ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Ibid.*  "[T]he ascertainability requirement . . . necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Ibid.* (quoting *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

The plaintiffs also have established that the membership of the proposed class is sufficiently ascertainable for certification under Rule 23(b)(3), as shown by the identification of approximately 250,000 known class members from the defendants' records.

The proposed settlement class will be conditionally certified.

-8-

IV.

The Federal Rules of Civil Procedure require court approval of settlements in class actions. Fed. R. Civ. P. 23(e).  Rule 23(e) states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Rule 23(e)(2) states that a settlement that would bind class members may be approved "only after a hearing and on finding that it is fair, reasonable, and adequate."  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1), and "[a]ny class member may object to the proposal if it requires court approval under" Rule 23(e), Fed. R. Civ. P. 23(e)(5).  The approval of a proposed settlement ordinarily involves a two-stage procedure.  "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation. . . .  Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."  Manual for Complex Litigation (4th ed.) §§ 21.632-.633 (2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).

In deciding whether to approve a class action settlement, the "ultimate issue" for the Court is whether the proposed settlement "is fair, adequate and reasonable."  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).  District courts must "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in the light of all the relevant circumstances."  *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).  "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of

class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

As an initial matter, it appears that the absent class members stand to receive approximately 2/3 of the total common settlement fund, if the Court approves the fee request for class counsel of "up to 33 1/3 percent." It is difficult to determine the exact amount that eventually would be paid the class members who submit claims, but the estimated payout of $100 to $175 each, while modest, is not trivial, and appears fairly calculated to repair the nominal injuries to the statutory rights of class members, who never have sought any actual damages.

As to the factors guiding the determination whether the proposed settlement is adequate, reasonable, and fair to the class, *first*, the risk of fraud and collusion is low. The parties have litigated the merits of the claims over nearly three years, through two rounds of vigorously contested dispositive motions. Both sides sought and secured some victories in those battles. The parties also engaged in a lengthy mediation presided over by an experienced professional mediator, over the course of three days. At the end of those negotiations they achieved consensus on a settlement that addresses the claims and defenses of all parties.

*Second*, the litigation is complex and the expense and duration already has been substantial, and would grow more so if the case proceeded to trial. The cumulative 113 pages of the Court's two opinions on the parties' dispositive motions is ample testament to the multiplicity and complexity of the legal issues presented by the litigation, and that was without the Court having occasion to dive deeply into any disputes over the parties' Sisyphean discovery ordeal.

*Third*, the parties have engaged in extensive formal discovery throughout the pendency of this litigation to explore the basis of the plaintiffs' claims.  Depositions of all the named plaintiffs and defendant Trott Law, P.C.'s principals and some of its attorneys were completed.  The parties also substantially progressed toward the production of millions of pages of electronic discovery, at tremendous expense to both sides.  All indications are that completion of that process could involve a total span of time and costs of production and discovery review that would approach or even exceed the total contemplated class recovery agreed to in the settlement.

*Fourth*, the plaintiffs' prospects for success on the merits appear good, but not certain.  The plaintiffs repelled motions to dismiss on some of their claims, but others were dismissed either as untimely or without merit.  The defendants, similarly, had some affirmative defenses stricken, but were allowed to proceed with others.  The core questions in the case turn on an assessment by the jury of how a reasonable consumer would understand the language of the letters in question, and the import of that language is open to debate.  A jury readily could find that the letters were deceptive, or that they were not.  Moreover, a jury also would have to assess circumstances such as whether any attorney was meaningfully involved in review of the letters before they were sent, and the defendants consistently have held to the position that the letters sent on attorney letterhead were not deceptive because their attorneys were so involved.

*Fifth*, class counsel and the named plaintiffs who actively participated in the litigation and the mediation express their strong endorsements of the settlement.

*Sixth*, the views of absent class members are not yet known since notice has not been given, but the notice period will provide ample opportunity for them to weigh in.

-11-

Finally, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding the wastage of considerable time and enormous expense by the parties and the Court, possibly only to reach the same end.

The Court has reviewed the motion and the proposed settlement agreement. The proposed settlement appears to be a result of arm's-length negotiation that is likely to be in the best interest of class members. Based on the submissions to date, the settlement appears to be fair, reasonable, and adequate. However, the Court reserves the final approval of the settlement and the determination regarding the attorney's fees and costs incurred by the plaintiffs to a later time, as contemplated by Rule 23(h) and Rule 54(d)(2) of the Federal Rules of Civil Procedure.

V.

The Court also finds reasonable the plan for notifying absent class members proposed by the parties. The parties propose the appointment of Epiq Class Action & Claims Solutions, Inc. as the settlement administrator, which would implement a plan for providing notice and receiving claims from class members including: (1) post card notices including a postage-paid claim "short form" mailed to all class members identified in the records provided by the defendants; (2) "banner advertisements on websites designed to achieve eight million impressions in Michigan and an additional four million impressions nationally"; and (3) creation of a settlement website that will include information about the settlement and an online "long form" claim submission feature which will allow class members to submit a claim using a unique identifier derived from the address of their residential property. Rule 23 states that "the court may direct appropriate notice to the class," Fed. R. Civ. P. 23(c)(2)(A), and "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1). The Court has reviewed

-12-

the contents of the proposed notice to absent class members, which plaintiffs' counsel has provided to the Court. The notice is reasonably clear and otherwise conforms to the requirements of Rule 23(c)(2)(A) and 23(e). The proposed notice must be amended, however, to include the deadline dates prescribed by this order.

Finally, Epiq Class Action & Claims Solutions, Inc. appears to be a capable settlement administrator, having competently administered multiple class settlements over the years.

VI.

Accordingly, it is **ORDERED** that the plaintiffs' unopposed motion to certify a settlement class and for preliminary approval of the proposed settlement agreement and procedure for providing class notice [165] is **GRANTED** for the reasons stated on the record. The proposed settlement agreement is **PRELIMINARILY APPROVED**, subject to objections by absent class members and except for the determination of the attorney's fees and costs.

It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(b)(3), the following settlement class is conditionally certified in this case:

> All persons to whom Trott Law PC caused to be sent any version of the Trott PC Foreclosure Letter, as defined in the proposed settlement agreement, in connection with mortgages conveyed for residential real property located in Michigan, which was not returned as undelivered by the U.S. Post Office, dated from August 11, 2009, through June 29, 2018.

It is further **ORDERED** that counsel of record for the named plaintiffs, namely attorneys Andrew J. McGuinness and Andrew N. Friedman, are appointed as counsel for the designated settlement class. Plaintiffs Brian J. Martin and Yahmi Nundley are appointed as the class representatives.

-13-

It is further **ORDERED** that Epiq Class Action & Claims Solutions, Inc. is **APPROVED** as the claims administrator for the settlement. The Court further **APPROVES** the deposit of the settlement funds into an escrow account to be held pending final disposition of all settlement claims, or until further order of the Court.

It is further **ORDERED** that **on or before July 13, 2018**, the defendants shall provide notice of this proposed class settlement to the appropriate state and federal authorities. The defendants must file proof that they have provided the required notice with the Court, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

It is further **ORDERED** that plaintiffs' counsel or their designated representative shall cause notice of the proposed settlement to be given to class members in the following manner:

    (a) **On or before July 13, 2018**, a copy of the Notice of Class Action Settlement Agreement, substantially in the form attached as Exhibit 1-C of the plaintiff's unopposed motion for preliminary approval of class settlement and notice, must be mailed by first-class mail, with postage prepaid, to each class member. The class administrator shall ensure that the publication of internet advertisements and the creation of a claims website are accomplished by that same date.

    (b) The notice to class members must explain that objections to, and requests to be excluded from, the class settlement must be filed with the Court and the parties' counsel **on or before August 27, 2018**.

It is further **ORDERED** that plaintiffs' counsel shall file proof of mailing of the class notice in conformity with this order **on or before July 27, 2018**.

It is further **ORDERED** that the expenses of printing and mailing and publishing all notices required hereby shall be paid as described in the settlement agreement.

It is further **ORDERED** that the notice of class settlement must inform the absent class members that Proofs of Claim and supporting documentation must be submitted **on or before August 27, 2018**. Proofs of Claim sent by mail shall be deemed submitted when postmarked if

mailed by first class, registered or certified mail, postage prepaid, addressed in accordance with the instructions in the Proof of Claim.  All other Proofs of Claim shall be deemed submitted at the time of actual receipt.

It is further **ORDERED** that, **on or before September 6, 2018**, plaintiffs' counsel must file a motion for final approval of the settlement identifying absent class members who opt out or object. The defendants' response, if the motion is opposed, must be filed **on or before September 13, 2018**, and the plaintiffs' reply, if any, must be filed **on or before September 20, 2018**.

It is further **ORDERED** that a hearing shall be held at **1:00 p.m.** on **Thursday, September 27, 2018** in Room 716 of the Theodore Levin United States Courthouse, 231 West Lafayette Blvd., Detroit, Michigan 48226, to consider any objections to the settlement agreement and to determine whether the settlement agreement should be finally approved as having been negotiated in good faith and as being fair, reasonable, and in the best interest of the class members.

It is further **ORDERED** that any class member may appear at the settlement hearing and be heard to the extent allowed by this Court, either in support of or in opposition to the good faith, fairness, reasonableness, and adequacy of the proposed settlement or the plaintiffs' counsel's application for an award of attorney's fees, reimbursement of expenses, and an incentive award to each of the representative plaintiffs.  However, no class member shall be entitled to be heard or entitled to contest the approval of the terms and conditions of the proposed settlement or the judgment to be entered pursuant thereto approving the same, or the plaintiffs' counsel's fee, expense and incentive award application, unless, **on or before August 27, 2018**, such person: (a) has filed with the Clerk of Court a notice of such person's intention to appear, together with a statement that indicates the basis for such opposition along with any supporting documentation, and (b) has served

-15-

copies of such notice, statement, and documentation, together with copies of any other pleadings that such person has filed with the Clerk of the Court and each parties' counsel at the following addresses:

> Clerk of the Court
> United States District Court
> 231 Lafayette Boulevard
> Detroit, MI 48226
> Re: Brian Martin, *et al.* v. Trott Law, P.C.
> Case Number 15-12838
>
> <u>Counsel for the Plaintiffs</u>
>
> Andrew J. McGuinness
> 122 S Main St, Suite 118
> P O Box 7711
> Ann Arbor, MI 48107
>
> <u>Counsel for the Defendants</u>
>
> Kathleen H. Klaus
> Maddin Hauser
> 28400 Northwestern Highway, 2nd Floor
> Southfield, MI 48034
>
> Bruce L. Segal
> Honigman & Miller
> 38500 N. Woodward Avenue, Suite 100
> Bloomfield Hills, MI 48304

Any class member who does not serve and file an objection to the proposed settlement of the litigation or the fee, expense and incentive award application, in the manner provided for herein, shall be deemed to have waived the right to object, including the right to appeal, and shall be forever foreclosed from making any objection to the settlement, the fee, expense and incentive award application, or to any order or judgment filed or entered thereon, as applicable. Counsel for the plaintiffs must notify all absent class members of this requirement.

-16-

It is further **ORDERED** that applications for incentive awards, attorney's fees, or reimbursable expenses under Rule 23(h) must be filed **on or before September 6, 2018**.  Counsel must provide notice to class members in accordance with Fed. R. Civ. P. 23(h)(1).

It is further **ORDERED** that class counsel shall be responsible for maintaining a file of all responses to the notice of settlement and any and all other written communications received from the class members.   Class counsel immediately shall provide copies of such responses and communications to defendants' counsel.

It is further **ORDERED** that the Court reserves the right to adjourn the settlement hearing from time to time without further notice and to approve the settlement agreement at or after the settlement hearing.

<div style="margin-left:40%">

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

</div>

Dated:   June 29, 2018

<table>
<tr><td align="center">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 29, 2018.

s/Deborah Tofil
DEBORAH TOFIL
</td></tr>
</table>

<div align="center">-17-</div>