UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

# PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS, FOR REIMBURSEMENT OF EXPENSES, AND BRIEF IN SUPPORT

i

Plaintiffs respectfully move this Court for entry of an order that:

- Awards Plaintiffs' counsel attorneys' fees in the amount of $2,499,750;

- Directs reimbursement of Plaintiffs' counsel in the amount of $109,014.79 for expenses reasonably and necessarily incurred in prosecuting this action;

- Further authorizes payments of up to an additional $166,994.09 in claims administration expenses actually incurred; and

- Awards each Class Representative a service award in the amount of $5,000; with

- Each of these amounts to be paid from the Settlement Common Fund in accord with the Class Action Settlement Agreement as approved or modified by this Court.

In support of their Motion, Plaintiffs submit the attached Brief in Support and accompanying Exhibits.

Dated: August 28, 2018

Respectfully submitted,

/s/Andrew J. McGuinness
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

ii

Andrew N. Friedman (admitted)
Sally M. Handmaker (admitted)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Ave NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Class*

# TABLE OF CONTENTS

ISSUES PRESENTED.................................................................................v

CONTROLLING OR MOST PERTINENT AUTHORITY ................................ vi

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................4

I.    Plaintiffs' counsel are entitled to an award of attorneys' fees from the Settlement Common Fund .......................................4

II.   Plaintiffs' counsel's request for a one-third attorneys' fee of the common fund is reasonable ..................................................5

IV.  The fee requested satisfies the Sixth Circuit's standard for evaluating fee requests. ........................................................9

    A.   The class is receiving an excellent settlement benefit. ..............9

    B.   Society benefits from rewarding lawyers like Plaintiffs' counsel who, when fairly rewarded, incentivize other lawyers to do similar good work................................10

    C.   Plaintiffs' counsel risked their time and money for a contingent fee......................................................................11

    D.   Plaintiffs' counsel provided valuable hourly services.............12

    E.   This litigation was complicated and included extremely challenging ESI issues. ................................................12

    F.   All counsel are highly respected lawyers. ...............................13

V.   Plaintiffs' counsel incurred reasonable expenses necessary to achieve settlement. ..............................................................14

VI.  Plaintiffs' counsel seeks reasonable service awards for the class representatives. ..................................................................15

CONCLUSION ..................................................................................18

CERTIFICATE OF SERVICE ..............................................................20

## <u>ISSUES PRESENTED</u>

1.      Should the Court award Plaintiffs' counsels' attorneys' fees in the amount of $2,499,750, equal to 33 1/3% of the Settlement Common Fund?

2.      Should the Court authorize reimbursement of Plaintiffs' counsels' expenses of $109,014.79?

3.      Should the Court further authorize the payment of up to another anticipated $166,994.09 in claims administration expenses to the claims administrator?

4.      Should the Court grant the Class Representatives service awards of $5,000 each?

Plaintiffs answer "Yes" to each of these questions.

Plaintiffs are informed and believe that Defendants do not oppose this Motion.

## <u>CONTROLLING OR MOST PERTINENT AUTHORITY</u>

**Page(s)**

**CASES**

*Bateman Eichler, Hill Richard, Inc. v. Berner*,
    472 U.S. 299 (1985)...........................................................................................11

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980)..........................................................................................4

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) .................................................................7

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...............................................5, 14

*Gascho v. Global Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ........................................................5, 7

*Moore v. Aerotek*,
    Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148 (S.D. Ohio
    June 30, 2017)...................................................................9, 11, 12, 14

*Moulton v. United States Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) ...........................................................18

*Smillie v. Park Chemical Co.*,
    710 F.2d 271 (6th Cir. 1983) ..................................................5, 9, 13

**OTHER AUTHORITIES**

4 *Conte & Newberg on Class Actions*, § 14:6 (4th ed. 2002)...................................7

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND SERVICE AWARDS, AND FOR REIMBURSEMENT OF EXPENSES

## <u>INTRODUCTION</u>

Plaintiffs' counsel has obtained a $7.5 million cash recovery for the Class.[1] Because of their efforts to achieve this Settlement Fund—a result believed to be unprecedented in Michigan an FDCPA and RCPA case against a foreclosure law firm—they respectfully submit this memorandum of law in support of their Rule 23(h) motion for an award of attorneys' fees of 33 1/3% of the Settlement Common Fund. Plaintiffs' counsel also request reimbursement of the $109,014.79 in litigation expenses that they reasonably and necessarily incurred prosecuting and resolving the Litigation, as well $5,000 service awards for each Class Representative.

This is a class action against Trott Law PC, f/k/a Trott & Trott P.C. ("Trott Law"), and David A. Trott alleging their violation of the FDCPA and the RCPA based on language in form letters that Trott Law sent to Michigan homeowners to initiate nonjudicial mortgage foreclosures. *See* Declaration of Co-Lead Counsel, Exhibit 1. Plaintiffs in their Second Amended Complaint (Corrected) allege that

---

[1] Unless otherwise noted, capitalized terms have the meanings set out in the Settlement Agreement dated April 20, 2018, filed as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Brief in Support. (ECF #165.)

Trott Law's letters violated both federal and state laws in three principal ways. First, by suggesting to homeowners that they were "from" an attorney, i.e., that they were meaningfully reviewed by an attorney who was meaningfully involved in their being sent. Plaintiffs allege that in fact real attorneys—doing what attorneys are professionally trained to do and acting as such—were not so involved, and did not conduct a meaningful review of homeowner's debt files or accounts before the letters were sent by, under the direction of, or on behalf of Defendants. Second, Plaintiffs allege that by referencing an impending sheriff's sale in a subset of the foreclosure letters containing a solicitation for a request for a reinstatement quote, these letters "overshadowed" the validation rights of homeowners under the FDCPA, thereby violating the RCPA as well. Third, by using the undefined term "Corporate Advance" in a subset of the letters, Plaintiffs allege that Defendants' letters were misleading and confusing in violation of federal and state fair debt collection statutes.

After more than three years of heated litigation that included three dismissal motions, analyzing over 22,000 pages, taking and defending 10 depositions, interviewing experts, preparing for class certification briefing, and three mediations with Judge Rosen, the parties resolved this case for an $7.5 million in cash. The proposed Settlement represents a tremendous Class recovery and Plaintiffs' counsel achieved it through skill and persistence, all while facing the

specter of losing all of their time and investment if the case was not successful.

Defendants insisted that they had not sent homeowners misleading foreclosure letters. And Defendants fought the applicability of *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), to the RCPA class claims in an effort to curtail the class recovery. Despite Plaintiffs' confidence that this Court properly resolved the *Shady Grove* issue, Defendants were sure to appeal the Court's order, as well as other rulings or verdicts. Defendants also fought vigorously Plaintiffs' willful-violation claims under the RCPA to avoid civil fines.

Finally, discovery suggests that Trott Law may not be collectable for some part of an enhanced RCPA statutory damages award, further limiting the class potential recovery if David Trott was successful in asserting his individual defenses. Considering these risks, Plaintiffs' counsel respectfully submit that this Settlement reflects a successful outcome on behalf of the Class based upon their tireless work and the quality of their representation.

Considering all this, Plaintiffs' submit that payment to Plaintiffs' counsel in the amount of 33 1/3% of the Settlement Common Fund, and reimbursement of their counsel's expenses of $109,014.79, is fair and reasonable. This fee is well within the percentage range of attorneys' fees awarded in consumer class actions and other comparable class actions in this district and nationally. And while

Plaintiffs seek a fee award based on the percentage-of-the=fund approach, the requested fee represents a multiplier of only 1.03, when courts typically award multipliers of two to five times counsel's lodestar in similar cases.

## ARGUMENT

I. PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE SETTLEMENT COMMON FUND.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004) (describing bases "for a class to recover attorneys' fees pursuant to the common fund doctrine"). "The award of attorney's fees is not a special or discretionary remedy; instead, the award of attorney's fees is intended to encourage consumers to act as 'private attorneys general' to enforce the FDCPA." *Mann v. Acclaim Financial Services, Inc.*, 348 F. Supp.2d 923, 926-27 (S.D. Ohio 2004); *see also In re: Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2012 WL 12875983, at *4 (E.D. Tenn. July 11, 2012) (attorneys' fees in successful cases should encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.).

II.    PLAINTIFFS' COUNSEL'S REQUEST FOR A ONE-THIRD
       ATTORNEYS' FEE OF THE COMMON FUND IS REASONABLE.

"An award of attorneys [*sic*] fees lies within the sound discretion of the

district court." *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Plaintiffs' counsel ask this Court to employ the percentage-of-the-fund method

with a lodestar cross-check for their fee's reasonableness because "courts in the

Sixth Circuit have indicated their preference for the percentage-of-the-fund method

in common-fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532

(E.D. Mich. 2003); *see also Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 517

(6th Cir. 1993) (observing that "use of either the lodestar or percentage of the fund

method of calculating attorney's fees is appropriate in common-fund cases").

Where the district court chooses "a percentage of the fund calculation, [it

should] value the benefit to the class based on the total relief class counsel makes

available to all the class members." *Gascho v. Global Fitness Holdings, LLC*, 822

F.3d 269, 278 (6th Cir. 2016). In particular, "courts must calculate the ratio

between attorney's fees and benefit to the class. Attorney's fees are the numerator

and the denominator is the dollar amount of the Total Benefit to the class (which

includes the 'benefit to class members,' the attorney' fees and may include costs of

administration)." *Id.* at 282. This means that courts are to calculates attorneys' fees

without first deducting expenses from the denominator.

5

When courts use the percentage-of-the-fund method, often they approve a one-third fee request. *See, e.g., In re Rio Hair Naturalizer Prods. Liab. Litig.,* 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (Rosen, J.) ("more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *Simpson v. Citizens Bank*, Nos. 2:12-cv-10267, 2:12-cv-11604, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) (Hood, C.J.) ("Class Counsel's request for 33% of the common fund created by their efforts well within the benchmark range and in line with what is often awarded in this Circuit."); *In re Southeastern Milk Antitrust Litig.*, No. 2:03-MD-1000, 2013 WL 2155387, at *3 (E.D. Tenn. July 11, 2012) (approving fee request where "attorneys' fees requested represent one-third of the settlement fund . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.").

Other class-action settlements in this Court also support the reasonableness of Plaintiffs' counsel's one-third fee request here. *See, e.g.*, *Bourne v. Ansara Rest. Group, Inc.*, No. 16-10332, 2016 WL 7405804, at *3 (E.D. Mich. Dec. 22, 2016) (Lawson, J.) (approving "a third of the potential gross recovery and creation of the common benefit fund" in FLSA class action); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (Cohn, J.) (awarding one-third of the settlement fund as "fair and fully

6

justified," "within the range of fees ordinarily awarded," and "within the range of fee awards in settlements of this type."); *Allan v. Realcomp II, Ltd.*, No. 10-cv-14046, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014) (Murphy, J.) (finding award of one-third of the common fund reasonable).

A one-third fee is also consistent with arrangements in the private marketplace for many contingency cases where clients typically agree to a fee based on the amount their attorneys recover. *See, e.g.*, 4 *Conte & Newberg on Class Actions*, § 14:6 at 551 (4th ed. 2002) ("fee awards in class actions average around one-third of the recovery.").

And although "[a] percentage of the fund cross-check is optional," *Gascho*, 822 F.2d at 281, here, cross-checking Plaintiffs' counsel's fee request against their net lodestar enhances the reasonableness of their request. *See, e.g., Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (affirming fee award where "district court based its fee award on a percentage of the common fund and then cross-checked the fee against class counsel's lodestar); *Bourne v. Ansara Rest. Group, Inc.*, No. 16-10332, 2016 WL 7405804, at *3 (E.D. Mich. Dec. 22, 2016) (Lawson, J.) ("The lodestar, although not the better method to determine the attorney's fee, provides valuable cross-check in the amount requested, which represented a third of the potential gross recovery and creation of the common benefit fund.").

Percentage-of-the-fund recoveries in complex class actions often result in

fees representing multiples of Plaintiffs' counsel's lodestar. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767–78 (S.D. Ohio 2007) ("Most courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5."); *Manners v. American General Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (awarding multiplier of 3.8 and observing that "this multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10.").

After more than three years of litigation, Plaintiffs' counsel achieved an excellent result that is currently estimated to pay class members who submit approved claims almost $90—nearly 180% of the allowable statutory damages for non-willful RCPA violations, and nearly 25% of the statutory cap for willful RCPA violations.

Here, cross-checking Plaintiffs' counsel's net lodestar (based on their current hourly rates[2]) reflects effectively no multiplier at all.[3] Plaintiffs' counsel's

---

[2] Because "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed," *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute." *Id.*

[3] Declaration of Co-Lead Counsel, Exh. 1 at ¶ 18 (calculating a 1.03 multiplier).

close-to straight time request supports its modesty, especially when considering the work that remains to complete the settlement.[4]

## IV.   THE FEE REQUESTED SATISFIES THE SIXTH CIRCUIT'S STANDARD FOR EVALUATING FEE REQUESTS.

In *Smillie v. Park Chemical Co*., 710 F.2d 271 (6th Cir. 1983) the court of appeals articulated six factors for considering the reasonableness of an attorneys' fees awarded from a common fund: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent-fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *Id*. at 275.

### A.   The class is receiving an excellent settlement benefit.

"The value of the benefit rendered to the plaintiff class is among the most important factors to be considered." *Moore v. Aerotek*, Nos. 2:15-cv-2701, 2:16-cv-1066, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017). To calculate it, "the court should analyze the merits of the case and the risks associated with continued litigation." *Id*.

---

[4] Class Counsel reviewed detailed time records and reduced the gross lodestar by $77,000 to account for the time spent bringing Co-Lead Counsel Cohen Milstein up to speed after the withdrawal of Milberg. *See* Exhibit 1 ¶¶ 13-18. Had that time been included, the fee request would have constituted a negative multiplier.

This is the first known class-action case involving a multimillion dollar class action settlement against Michigan's predominant foreclosure law firm and its former owner and president. The Settlement provides $7.5 million for small claims that the quarter million class members would likely have been unable to pursue alone. The settlement also achieves important injunctive relief, with strenuously-debated language changes to the letter (which required a third mediation session). The Settlement Common Fund represents payouts of approximately 180% of the most readily achievable theoretical recovery for the RCPA class.[5] And the $7.5 million settlement is even more impressive considering the real risks in collecting from Trott Law in the event that the individual Defendant were to succeed in exiting the case on summary judgment at the close of discovery, and Plaintiffs were to succeed in persuading a jury that some or all of the violations were willful.

**B.   Society benefits from rewarding lawyers like Plaintiffs' counsel who, when fairly rewarded, incentivize other lawyers to do similar good work.**

"[A]dequate compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law."

---

[5] Plaintiffs focus on the RCPA claim because (i) the vast majority of the Class only has that claim due to the FDCPA's much shorter statute of limitations; and (ii) the FDCPA sets a $500,000 (or 1% of net worth, whichever is less) cap on class damages. 15 U.S.C. § 1692k(a)(1)(B). In fact, if Plaintiffs established liability and the jury awarded the maximum allowable award, FDCPA damages would have been less than $5 per FDCPA subclass member.

*Bateman Eichler, Hill Richard, Inc. v. Berner*, 472 U.S. 299, 310 (1985). "There is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action matters enable this." *Moore*, 2017 WL 2838148, at *8. So "[i]f attorneys are to be encouraged to handle litigation of this nature, attorneys must be awarded fair and reasonable compensation for their efforts." *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991).

Sixth Circuit courts often identify FDCPA cases as especially purposeful and important to society. *See, e.g., Brent v. Midland Funding, LLC*, No. 11 CV 1332 2011 WL 3862363, at *19 (N.D. Ohio Sept. 1, 2011) (Settlement "resulted in substantial relief for low-income debtors, whose claims under the FDCPA for false affidavits would ordinarily not provide a sufficient monetary incentive to litigate on an individual basis. The risk Class Counsel undertook in pursuing this litigation militates in favor of the fee award.").

### C.    Plaintiffs' counsel risked their time and money for a contingent fee.

"Where counsel has made significant investments of time, advanced costs, and received no compensation, this typically weighs in favor of grant[ing] the requested attorneys' fees." *Moore*, 2017 WL 2834148, at *8. This is especially true where a "case carries a very real possibility of an unsuccessful outcome, and by their very nature contingency fee arrangements indicate that there is a certain

degree of risk in obtaining a recovery." *Id*. While Plaintiffs' counsel believed in their case from the start (after more than a year of investigation), Defendants fought hard, denying Plaintiffs' claims at every turn. Before long, Plaintiffs' counsel had spent over three years of their time and money fighting for their clients and the Class.

### D.    Plaintiffs' counsel provided valuable hourly services.

Examining the value of the services that Plaintiffs' counsel provided on an hourly basis "may be done by performing a 'crosscheck' of the requested fees using Class Counsel's lodestar." *Moore*, 2017 WL 2838148, at \*7. Doing this "ensure[s] that a fee award is roughly aligned with the amount of work the attorneys contributed." *Id*. (internal quotations and citation omitted). Plaintiffs' counsel's ample and necessary lodestar demonstrates the hard work that they performed.

### E.    This litigation was complicated and included extremely challenging ESI issues.

This litigation involved complex legal and factual issues. As one example, the applicability of *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co*., 559 U.S. 393 (2010), to the RCPA class claims was vigorously contested. Had that issue been resolved against Plaintiffs, in this Court or on appeal, it would have significantly reduced any Class recovery. But Plaintiffs' counsel's creativity preserved a large portion of the recovery to which Approved Claimants are now

entitled. *See, e.g.*, *Franklin*, 2011 WL 3557033, at *19 (complexity of the litigation supported the requested fee award in a case involving "two rounds of complex motion practice that took over three years to resolve, including novel FDCPA issues."). The argued application of the CAFA home-state exception and the proper exercise of this Court's acknowledge supplemental jurisdiction over the state law claims; and the jury question of what constitutes "meaningful review" in the context of this case, were additional complex challenges.

This action also presented vexing ESI issues, of which this Court is well aware given its close monitoring of the parties' ESI progress (or lack thereof) through nearly monthly status conferences during the discovery phase. Even with these problems, Plaintiffs' counsel reviewed over 22,000 documents and took or defended ten depositions. Exhibit 1 ¶ 7. This case generated a voluminous and heated motion practice as well. *Ibid.*

F.     **All counsel are highly respected lawyers.**

Counsel's skill and extensive experience in complex litigation helps determine fair compensation. *See, e.g.*, *Smillie*, 710 F.2d at 275 (evaluating "the professional skill and standing of counsel involved on both sides."). Plaintiffs' counsel are experienced consumer law and class actions lawyers. Exhibit 2-5 (Declaration of Andrew N. Friedman, Exhibit 2; Declaration of Andrew J. McGuinness, Exhibit 3; Declaration of Daniel R. Karon, Exhibit 4; Declaration of

Sanford P. Dumain, Exhibit 5). Likewise, defense counsel are highly respected and skilled attorneys who zealously advocated their clients' positions. The Court recognized as much when commenting, during the preliminary approval hearing that "you have, I believe, done a very impressive job in a very complicated case" and congratulating counsel "on a job well done in resolving the case." Preliminary Approval H'rg Tr. at 18:19-21; 19:10-11. *See also Moore*, WL 2838148, at *8 (internal quotations and citations omitted) ("[T]he ability . . . to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award.").

V.    PLAINTIFFS' COUNSEL INCURRED REASONABLE EXPENSES NECESSARY TO ACHIEVE SETTLEMENT.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *In re F&M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778, 1999 WL 35771208 (E.D. Mich. June 29, 1999).

Plaintiffs' counsel request reimbursement of their reasonable out-of-pocket expenses, which total $109,014.79. *See* Exhibit 1 ¶ 21; Exhibit 2 ¶ 8 (Friedman Fee

Decl.); Exhibit 3 ¶ 8 (McGuinness Fee Decl.); Exhibit 4 ¶ 7 (Karon Fee Decl.), and

Exhibit 5 ¶ 7 (Dumain Fee Decl.). Also, the Class Notice informed Class Members

that Plaintiff's counsel would seek reimbursement of their expenses. *See Beattie v.*

*CenturyTel, Inc.*, No. 02-10277, 2010 WL 11545032 (E.D. Mich. July 9, 2010)

(Lawson J.) (notice of the fee and expense request was adequate and given to the

class in a reasonable manner as required by Rule 23(h)(1)).

## VI.   PLAINTIFFS' COUNSEL SEEKS REASONABLE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES.

The Sixth Circuit recognizes that class representatives who have been

extensively involved in common-fund cases deserve compensation above and

beyond amounts to which they are entitled solely by virtue of being members of

the class. *See Hadix*, 322 F.3d at 897 ("Incentive awards are typically awards to

class representatives for their often extensive involvement with a lawsuit.

Numerous courts have authorized incentive awards."). Service awards "are usually

viewed as extensions of the common-fund doctrine; [t]hus, when a class-action

litigation has created a communal pool of funds to be distributed to the class

members, courts have approved incentive awards to be drawn out of that common

pool." *Id*.

Consistent with these observations, courts often approve service awards

where plaintiffs were "instrumental in bringing [a] lawsuit forward" and where

they "perform[] numerous tasks in association with [the]litigation." *Brotherton v.*

15

*Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio. 2001) (approving $50,000 service award). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 service awards for each class representative because they took "actions [that] protected the interests of the Class Members and . . . resulted in a Settlement that provide[d] substantial economic and non-economic benefits for the Class Members [and] devoted a substantial amount of time and effort . . . in pursuing [the] litigation."); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. at 373–74 (approving incentive awards from $35,000 to $55,000 out of a $18 million settlement fund).

The Settlement Agreement seeks only $5,000 service awards for each Class Representative to be paid from the Settlement Common Fund because of the essential work that they performed for the class. Exhibit 1 ¶¶ 27-41. But to ensure that requested incentive awards "are not in fact a bounty [,] counsel must provide the district court with specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 311 (6th Cir. 2016).

Plaintiffs' declarations support all the good work that they performed, Exhibits 6-8, as confirmed in detail by Co-Lead Class Counsel. Exhibit 1 ¶¶ 28-41. This documentation demonstrates each Class Representative's participation in multiple interviews, written discovery, submission to deposition, meetings with

16

Plaintiffs' counsel, and attendance at mediation. Lead Plaintiff Brian Martin

devoted 130 hours of his time, missed work on an unpaid basis, and attended two

mediation sessions, including the second marathon session lasting over 12 hours.[6]

Class Representatives Nundley and Cadeau each spent less time, but they each also

essentially forfeited a $1,000 statutory damage claim available only to named

plaintiffs (and not absent class members or Martin) under the FDCPA, in order to

avoid any suggestion of preferential treatment. Exh. 1 ¶¶ 35, 40. Their depositions

appeared to take an emotional toll on them as well, as observed by Co-Lead

Counsel. Exh. 1 ¶¶ 33, 38.[7]

---

[6] In his response in opposition to Plaintiffs' Motion to Modify Mediation Order to allow the Class Representatives to be available at mediation by telephone, David Trott cited several cases for the proposition that named plaintiffs are not infrequently required to attend settlement conferences in person. Most of those citations were to decisions citing such personal attendance as a basis for granting service awards.

[7] Together, the declarations demonstrate tireless work and commitment to "the interests of unnamed class members who by definition are not present during the negotiations," *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013), and establish no "danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.*

The Sixth Circuit has accepted service awards of $10,000 each in a less lucrative settlement. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (Sutton, J.) (affirming "$10,000 to the seven class representatives" against a $4.45 million settlement). Here, Plaintiffs seek service awards of half that amount.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court award Plaintiffs' counsel attorneys' fees in the amount of $2,400,750; authorize reimbursement to Plaintiffs' counsel of $109,014.79 in expenses; authorize the additional payment of up to $166,994.09 to the Settlement Administrator; and approve $5,000 service awards for each Class Representative.

Dated: August 28, 2018.

Respectfully submitted,

*/s/Andrew J. McGuinness*
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (admitted)
Sally M. Handmaker (admitted)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Ave NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on the above date he filed the attached document with the Court using the ECF system, which will send notification of his filing to all parties who have appeared through their attorneys of record.

<u>/s/Andrew J. McGuinness</u>
Andrew J. McGuinness

# INDEX OF EXHIBITS

| Exhibit | Title/Description |
| --- | --- |
| 1. | Declaration of Co-Lead Counsel |
| 2. | Declaration of Andrew N. Friedman |
| 3. | Declaration of Andrew J. McGuinness |
| 4. | Declaration of Daniel R. Karon |
| 5. | Declaration of Sanford P. Dumain |
| 6. | Declaration of Brian Martin |
| 7. | Declaration of Yahmi Nundley |
| 8. | Declaration of Kathy Cadeau |

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor Southfield,
MI  48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**DECLARATION OF CO-LEAD CLASS COUNSEL IN SUPPORT
OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
SERVICE AWARDS, AND FOR REIMBURSEMENT OF EXPENSES**

I, Andrew J. McGuinness, declare:

1.      I am one of the attorneys of record in the above-captioned lawsuit ("Action") against Trott Law P.C. and David A. Trott (collectively, "Defendants"). I have practiced law for thirty years. I make this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees and Service Awards, and for Reimbursement of Expenses (the "Motion").

2.      I have been appointed by this Court as Co-Lead Class Counsel for a proposed class settlement in this Action, along with Andrew N. Friedman of Cohen Milstein Sellers & Toll PLLC.

3.      This is a class action by Plaintiffs and the Class against Trott Law PC, f/k/a Trott & Trott P.C. ("Trott Law") and David A. Trott (collectively, "Defendants") alleging, *inter alia*, that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Regulation of Collection Practices Act ("RCPA") based on certain standard language contained in form letters sent by Trott Law to Michigan homeowners to initiate non-judicial foreclosures of their mortgages.

4.      Specifically, Plaintiffs allege that Trott Law's letters violated both federal and state laws in three principal ways. First, by suggesting to homeowners that they were "from" an attorney, i.e., that they were meaningfully reviewed by an attorney who was meaningfully involved in their being sent. Plaintiffs allege that in

2

fact real attorneys—doing what attorneys are professionally trained to do and acting as such—were not so involved, and did not conduct a meaningful review of homeowner's debt files or accounts before the letters were sent by, under the direction of, or on behalf of Defendants. Second, Plaintiffs allege that by referencing an impending sheriff's sale in a subset of the foreclosure letters containing a solicitation for a request for a reinstatement quote, these letters "overshadowed" the validation rights of homeowners under the FDCPA, thereby violating the RCPA as well. Third, by using the undefined term "Corporate Advance" in a subset of the letters, Plaintiffs allege that Defendants' letters were misleading and confusing in violation of federal and state fair debt collection statutes.

5.      After years of hard-fought litigation, the parties were able to resolve this matter by agreeing to a $7.5 million common fund cash settlement.

6.      A true and correct copy of the Settlement Agreement in this case is attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement. (ECF # 165, Pg ID 4161 *et seq.*)

7.      Plaintiffs' counsel vigorously pursued this litigation on behalf of the Class for over three years. During the course of the litigation, among other things, Plaintiffs' counsel: (1) conducted an extensive factual investigation of the claims, including extensive review of Pacer records regarding past litigation against

Defendants and other public records, and interviews with former Trott Law employees; (2) promulgated extensive written discovery, including third-party discovery, six document requests to Trott Law and five document requests to David Trott, numerous interrogatories and requests to admit, and extensive negotiations with Defendants' counsel over the scope of this discovery and their objections to it; (3) engaged in substantial discovery motion practice, including a motion for protective order, defending two motions to quash subpoenas, motions to compel, and a motion to expand the default deposition limit of ten deposition; (4) reviewed and analyzed over 22,000 pages of documents; (5) took or defended ten fact depositions of current or former Trott Law employees and of Plaintiffs; (6) researched and interviewed multiple consulting and potential trial experts; (7) successfully opposed Defendants' multiple motions to dismiss[1] and for summary judgment; (8) worked closely and extensively with Plaintiffs' ESI/litigation support vendor, Meta-e; (9) filed an early class certification motion, and developed an evidentiary record to support Plaintiffs' upcoming renewed motion for certification; and (10) engaged in extensive settlement negotiations, including three days of mediation before the Honorable Gerald E. Rosen (ret.) of JAMS/Detroit.

---

[1] Including Trott Law's Motion to Strike RCPA Class, which David Trott joined. This Court struck that motion *sua sponte.* David Trott also filed two motions to reconsider the Court's rulings on his dispositive motions, as to one of which the Court directed Plaintiffs to file a response.

4

8.     As permitted by the Class Settlement Agreement, Plaintiffs are seeking a fee award of one-third of the Common Settlement Fund, based upon the approved Sixth Circuit calculation methodology, of $2,499,750.00.

9.     While Plaintiffs are petitioning this Court for a fee award based on a percentage-of-fund calculation consistent with the Class Settlement Agreement and Sixth Circuit law, they are supplying the Court with each Plaintiffs' counsel's lodestars data as a "cross-check" to verify the reasonableness of the percentage award requested.

10.     As this Court is aware, courts frequently award Plaintiffs' counsel a positive "multiplier" of their lodestar (e.g., X 3) in successful consumer and other contingent class litigation.

11.     In performing their work on behalf of the Class in this Action, Plaintiffs' counsel and their professional staff expended 4,256.45 hours (not including Meta-e hours), yielding a combined gross lodestar fee totaling $2,505,877.00.

12.     This lodestar figure does not include: (i) Class Counsel's discussions and other communications with dozens of putative Class members since the mailing of the nearly 249,000 Postcard Notices by the claims administrator earlier this summer; (ii) substantial work to be done after the submission of this fee petition relating to claims administration, preparing a final approval motion, and

preparing for the final approval hearing, etc.; and (iii) work done relating to this fee petition.

13.     In this action, one of Plaintiffs'' co-counsel firms, Milberg LLP, left the Action in January 2017 after they closed their Detroit office and elected not to remain in the case.

14.     In July 2017, the Cohen, Milstein firm joined the Action as co-counsel.

15.     I worked closely with both Milberg and Cohen, Milstein during their respective periods of involvement in the Action.

16.     I have reviewed my own detailed time records and those of the Milberg, the Cohen Milstein firm, and the Karon LLC firms. Based on this review, and my intimate familiarity with the Action throughout, I estimate that there were approximately 120 hours of attorney time, accounting for roughly $77,000 in fees, which represent potential duplication of effort associated with Milberg leaving the case and Cohen Milstein joining the Action.

17.     Accordingly, Plaintiffs propose that this Court use an adjusted ("*net*") lodestar of $2,428,877 as a cross-check to determine the reasonableness of Plaintiffs' fee request ($2,505,877 - $77,000 = $2,428,877).

18.     This requested attorneys' fee represents a multiplier of less than 1.03 times the net lodestar in this Action ($2,499,750 requested $\div$ $2,428,877 net

lodestar = 1.029.) A 1.03 multiplier is below the range of positive multipliers typically awarded when a fee in excess of lodestar is requested based on the lodestar approach to calculating a reasonable fee.

19.     The lodestar crosscheck supports the reasonableness of the fee request.

20.     Plaintiffs' counsel's detailed time records supporting the work performed and expenses incurred in this Action can be provided for *in camera* review under seal upon the Court's request.

21.     Plaintiffs' counsel collectively request reimbursement of $109,014.79 for expenses reasonably and necessarily incurred over the course of more than three years in this Action. The total expenses incurred by the Class are very modest for a complex consumer class action of the scope of this Action. Moreover, the expenses sought are of the type routinely billed to clients in non-contingent litigation.

22.     This Court, in its Preliminary Approval Order, previously approved payments from the Settlement Common Fund ("Fund") of notice and claims administration expenses. *See* Preliminary Approval Order, ECF No. 171, and Class Settlement Agreement at Paragraph 3.1.2.

23.     The Fund is currently being held in the IOLTA account at the Maddin, Hauser firm, counsel for Defendant Trott Law.

24.     Pursuant to the Preliminary Approval Order, interim notice and claims administration costs of $239,005.91 have been paid from the Fund so far. These payments are for invoices provided to all counsel from the claims administrator and reviewed by Class Counsel to confirm compliance with the estimates and contract previously provided by the claims administrator.

25.     The claims administrator has advised counsel that it now projects a 20% claims rate. Based on this updated figure, the claims administrator has informed me that total claims administration expenses (including payment of claims) for this Action are currently not expected to exceed $406,000.

26.     Accordingly, Class Counsel at this time are seeking the Court's authorization for payment of up to an additional $166,994.09 in claims administration expenses, if and as actually incurred ($406,000 - $239,005.91 = $166,994,09). Invoices received after the Fund is transferred to a Qualified Settlement Fund to be established by the claims administrator after final approval, as provided in the Class Settlement Agreement, would be paid from that account.

27.     Plaintiffs are also seeking service award of $5,000.00 each for each of the Class Representatives, as provided in the Class Settlement Agreement. These awards are entirely justified under the circumstances.

28.     Brian Martin has met with lead Class Counsel multiple times since 2014 in the preparation for and prosecution of this Action, and assisted me and co-

counsel in multiple ways. He provided detailed records relating to his mortgage loan and foreclosure, and to an unrelated lawsuit against the bank dismissed by Judge Rosen. In addition to gathering these records, he met with me and co-counsel for numerous hours to prepare for his deposition. I sent him major pleadings (including each complaint) for his review and approval prior to the filing of same. I sent him major motions and opinions of the Court, which I am confident based upon my many interactions with him that he reviewed.

29.    Mr. Martin was extremely helpful in mediation negotiations. He helped Mr. Friedman and I formulate proposals and strategy. He was directly involved during the marathon second mediation in formulating Plaintiffs' specific request for injunctive relief. He appeared for deposition at the Honigman offices in Bloomfield Hills and at two mediation sessions on personal time, taking either vacation days or unpaid leave days in order to do so. He required documentation of this Court's order requiring his attendance at the initial mediation to show his employer in order to get off work for these events, subjecting himself to potential embarrassment or adverse treatment.

30.    Mr. Martin reports that he spent a total of approximately 130 hours on behalf of the Class in this Action. *See* Declaration of Brian Martin, Exhibit 6.

31.    Yahmi Nundley has an elementary-school-age son and gave birth to a beautiful baby girl in December 2017 (only a few months before she was ordered

to attend the initial mediation session in this Action). She played a critical role on behalf of the Class as the only Representative with both FDCPA and RCPA claims against the individual Defendant.

32.     Ms. Nundley met with lead Class Counsel multiple times since 2015 in the preparation for and prosecution of this Action, and assisted me and co-counsel in multiple ways. She provided detailed records relating to her mortgage loan and foreclosure, and met with us multiple times in preparation for her deposition. I sent her major pleadings (including each complaint) for her review and approval prior to the filing of same. I sent her major motions and opinions of the Court, which I am confident based upon my several interactions with her that she reviewed.

33.     Ms. Nundley's foreclosure was an emotional experience for her, as revealed several times at her deposition, under examination by Defendants' counsel, when she became visibly and audibly upset at having to recount details of her experience.

34.     Ms. Nundley was helpful during the initial mediation session, which she attended with her baby and her young son. She helped Mr. Friedman and I formulate proposals and strategy. She also appeared for deposition at the Honigman offices in Bloomfield Hills on personal time, taking either vacation days or unpaid leave days in order to do so. She asked that I supply her documentation

of her required personal appearance at least once during the Action in order to show her employer (at a new job) so that she could get off work to attend, thereby subjecting herself to potential embarrassment or adverse treatment.

35.     Ms. Nundley reports that she spent a total of approximately 100 hours on behalf of the Class in this Action. *See* Declaration of Yahmi Nundley, Exhibit 7. Significantly, Ms. Nundley approved the Class Action Settlement under which she would receive the same *pro rata* payment as all other class members, even though, under the FDCPA, she would have been entitled to up to $1,000 as a named plaintiff in statutory damages had she succeeded on that claim at trial. She did so in order to avoid any suggestion that she approved the settlement based upon preferential treatment.

36.     Kathleen Cadeau is a single mother with an older and an elementary-school-age son, and played an important role on behalf of the Class as the only Representative with a FDCPA claim against Trott Law based on the "Corporate Advance" claim presented in the Second Amended Complaint (Corrected).

37.     Ms. Cadeau met with lead Class Counsel multiple times since 2016 in connection with the prosecution of this Action, and assisted me and co-counsel in multiple ways. She provided detailed records relating to her mortgage loan and foreclosure, and met with us multiple times in preparation for her deposition. I sent her major pleadings (including the Second Amended Complaint) for her review

and/or approval prior to the filing of same. I sent her major motions and opinions of the Court, which I am confident based upon my several interactions with her that she reviewed.

38.     Ms. Cadeau's bankruptcy and attendant foreclosure were painful experiences for her, as revealed several times at her deposition under examination by Defendants' counsel, when she became visibly and audibly upset at having to recount details of these experiences.

39.     Ms. Cadeau was helpful during the initial mediation session. She helped Mr. Friedman and I formulate proposals and strategy. She also appeared for deposition at the Honigman offices in Bloomfield Hills on personal time, taking either vacation days or unpaid leave days in order to do so. She asked that I supply her documentation of her required personal appearance at least once during the Action in order to show her employer (at a new job) so that she could get off work to attend, thereby subjecting herself to potential embarrassment or adverse treatment.

40.     Ms. Cadeau reports that she spent a total of approximately 45 hours on behalf of the Class in this Action. *See* Declaration of Kathleen Cadeau, Exhibit 8. Significantly, Ms. Cadeau approved the Class Action Settlement under which she would receive the same pro-rata payment as all other class members, even though, under the FDCPA, she would have been entitled to up to $1,000 in

statutory damages as a named plaintiff had she succeeded on that claim at trial. She did so in order to avoid any suggestion that she approved the settlement based upon preferential treatment.

41.     As detailed above, each of the Class Representatives spent substantial time and effort on behalf of the class. Each also exposed himself or herself to embarrassment, adverse job consequences, and emotional disruption by taking on the role of Class Representative. Ms. Nundley and Ms. Cadeau each agreed to share the Net Settlement Fund on a pro-rata basis along with all other Class Members, despite having FDCPA statutory damages claims in amounts greater than those of absent Class Members. The proposed $5,000 service awards to each of the three Class Representatives are fair and reasonable based upon their substantial time, effort and sacrifices on behalf of the Class

42.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28, 2018.

_____
Andrew J. McGuinness

13

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

      Case No. 2:15-cv-12838

v.

      Hon. David M. Lawson

Trott Law P.C., et al.,

      Mag. Judge David R. Grand

      Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

# DECLARATION OF ANDREW N. FRIEDMAN IN SUPPORT
# OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
# EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

I, Andrew N. Friedman, declare:

1.     I am one of the attorneys of record in the above-captioned lawsuit ("Action") against Trott Law P.C. and David A. Trott (collectively, "Defendants"). I have practiced law since 1983. I am a partner with the firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") in Washington, D.C. and the Co-Chair of the Consumer Protection practice group. I have been litigating class actions at Cohen Milstein since 1985. I make this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives (the "Motion").

2.     My firm acted as Plaintiffs' Co-Lead Counsel in this case along with Andrew J. McGuinness, Esq. and, along with Mr. McGuiness, was appointed as counsel for the designated settlement class. My firm has advanced costs of the litigation and have yet to receive any reimbursement.

3.     Over the course of my firm's involvement, we (and our co-lead counsel) have analyzed and developed plaintiffs' legal theories and causes of action, conducted discovery, coordinated the production and review of a massive amount of Electronically Stored Information (ESI), engaged in robust motions practice, and, ultimately, played a significant role, through mediation, in resolving the case in a manner favorable to the Class. We have worked hard to ensure that numerous claims would survive the Defendants' dispositive motions and attempts to limit recovery on a class-wide basis. Also, we have worked to resolve several hard-fought discovery

disputes with efficiency and effectiveness. Additionally, we and our colleagues reviewed and maintained databases to house large volumes of documents.

    4.    The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's attorneys and professional support staff who were involved in this litigation through August 22, 2018. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for my firm's attorneys and professional support staff included in Exhibit A are the usual and customary hourly rates charged for their services in similar complex litigation. In addition, my firm has submitted fee petitions in other cases in which our hourly rates were expressly approved as reasonable, including in the Sixth Circuit. *See, e.g., In Re: Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-md-2508-HSM-CHS (E.D. Tenn. May 26, 2017) (granting attorneys' fees of one-third of the settlement fund at Cohen Milstein's 2017 rates as "fair and reasonable and fully justified, and within the range of fees ordinarily awarded in this district and throughout the Sixth Circuit" for a rate identical to Mr. Friedman's 2017 rates for a partner who graduated law school his same year and identical to Ms. Handmaker Guido's 2017 rates for an associate who graduated law school her same year); *In re Anthem, Inc. Data Breach Litig.*, 5:15-md-02617 (N.D. Cal. Aug. 16, 2018) (finding that the overall rates charged by the firms,

including Cohen Milstein's rates submitted for Mr. Friedman and Ms. Handmaker

Guido, were "reasonable in light of prevailing market rates in this district and that

Class Counsel have submitted adequate documentation justifying those rates."); *In Re*

*Broadcom Corp. Stockholder Litig.*, No. 15-cv-00979-JVS-PJWx (C.D. Cal. Feb. 27,

2017) (finding Cohen Milstein's 2017 rates "to be high but reasonable," noting

attached declarations and exhibits demonstrated "that the firm's attorneys are

experienced and successful litigators" and that "other courts have recently approved

the firm's proposed rates" and concluding that the "rates are also reasonable for the

market" for a rate identical to Mr. Friedman's 2017 rates for a partner who graduated

law school his same year).

5.      The total number of hours reasonably expended on this litigation by

my firm through August 22, 2018 is 746.25.  The total lodestar for my firm at current

rates is $418,342.50.  My firm conducted internal audits to ensure that the lodestar

submitted is accurate.  Expense items are billed separately and are not duplicated in

my firm's lodestar.

6.      The expenses my firm incurred in litigating this action are reflected in

the books and records of my firm.  These books and records are prepared from

expense vouchers, receipts, and check records and other source materials and

accurately reflect the expenses incurred.

7.      We at Cohen Milstein work on a host of complex litigation matters.

Devotion of our considerable time, energy and resources to this matter has been in

lieu of that which might have been devoted to other matters

8.  My firm incurred a total of $60,776.90 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as Exhibit B.

9.  A true and correct copy of my firm's resume is attached as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28, 2018

_____
Andrew N. Friedman

# Exhibit A

BRIAN J. MARTIN, ET AL., V. TROTT LAW P.C., ET AL.
Case No. 2:15-cv-12838

## LODESTAR REPORT

FIRM NAME:  Cohen Milstein Sellers & Toll PLLC

REPORTING PERIOD: July 19, 2017 through August 22, 2018

| Legal Professional | | Billing Rate | Number of Hours | Lodestar ($) |
|---|---|---|---|---|
| Becker-Cohen, Miriam | SA | $280 | 10.75 | $3,010.00 |
| Branch, Joshua | SA | $280 | 1.5 | $420.0 |
| Dreschel, D. Allen | LF | $350 | 6.25 | $2,187.50 |
| Friedman, Andrew N. | P | $900 | 175.75 | $158,175.00 |
| Handmaker Guido, Sally | A | $530 | 393 | $208,290.00 |
| Hannaway, James | LC | $290 | 6.5 | $1,885.00 |
| Li, Gary | DC | $390 | 1.5 | $585.00 |
| | | | | |
| PARALEGALS | | | | |
| Hamdan, Shireen | PL | $290 | 105.75 | $30,667.50 |
| Wozniak, Mariah | PL | $290 | 45.25 | $13,122.50 |
| | | | | |
| **Total** | | | **746.25** | **$418,342.50** |

P = Partner
A = Associate
OC = Of Counsel
PL = Paralegal
DC = Discovery Counsel
SA = Summer Associate
LF = Legal Fellow
LC = Law Clerk

# Exhibit B

BRIAN J. MARTIN, ET AL., V. TROTT LAW P.C., ET AL.
Case No. 2:15-cv-12838

**EXPENSE REPORT**

FIRM NAME:  Cohen Milstein Sellers & Toll PLLC

REPORTING PERIOD:  July 19, 2017 through August 22, 2018

| DESCRIPTION | TOTAL |
|---|---|
| Court Reporter Fees | $678.75 |
| Other Court Fees | $519.00 |
| Transcripts/Deposition | $2,901.84 |
| Litigation Support | $27,173.95 |
| Research Publications | $170.00 |
| In-House Duplicating (color and b&w) | $1.00 |
| Long Distance Telephone (Internal) | $41.72 |
| Long Distance (Third Party) | $157.69 |
| Mail: | |
| Air Courier | $157.31 |
| Local Courier | $29.70 |
| Postage | $13.70 |
| Lexis/Westlaw | $4,977.80 |
| Mediation | $15,587.00 |
| Travel Expenses: | |
| Transportation | $4,700.16 |
| Hotel | $1,292.96 |
| Taxis, Tips | $291.85 |
| Meals | $488.76 |
| Parking Charges | $100.00 |
| Secretarial Overtime | $249.50 |
| Business Meals | $26.11 |
| Local Transportation | $90.05 |
| **TOTAL EXPENSES** | **$60,776.90** |

# Exhibit C

COHENMILSTEIN

## COHEN MILSTEIN SELLERS & TOLL PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international. Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant past and present cases include:

- HEMT MBS Litigation (No. 1:08-cv-05653, U.S. District Court for the Southern District of New York). On May 10, 2016, U.S. District Judge Paul A. Crotty finally approved a $110 million settlement in the mortgage-backed securities class action brought by investors against Credit Suisse AG and its affiliates. This settlement ends claims brought by the New Jersey Carpenters Health Fund and other investors who claimed that the offering documents for the mortgage-backed securities at issue violated the Securities Act as they contained false and misleading misstatements concerning compliance with underwriting standards.

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) (D. Kan.). Cohen Milstein serves as co-lead counsel on behalf of a class of direct purchasers of chemicals used to make many everyday products, from mattress foam to carpet cushion, who were overcharged as a result of a nationwide price-fixing conspiracy. On February 25, 2016, Cohen Milstein reached an agreement with The Dow Chemical Company to settle the case against Dow for $835 million. Combined with earlier settlements obtained from Bayer, Huntsman, and BASF, the Dow settlement pushed the total settlements in the case to $974 million. The settlement was approved on July 29, 2016.

- RALI MBS Litigation (Civ. No. 08-8781, U.S. District Court for the Southern District of New York). On July 31, 2015, Judge Katherine Failla gave final approval to a $235 million settlement with underwriters Citigroup Global Markets Inc., Goldman Sachs & Co., and UBS Securities LLC. She also approved a plan for distribution to investors of those funds as well as the previously approved $100 million settlement with RALI, its affiliates, and the individual Defendants that was reached in in 2013. This global settlement marks an end to a long and complicated class action over MBS offerings that RALI and certain of its affiliates issued and sold to the New Jersey Carpenters Health Fund and other investors from 2006 through 2007. The case took seven years of intense litigation to resolve.

- In re: Bear Stearns Mortgage Pass-Through Certificates Litigation (No. 08-08093, U.S. District Court for the Southern District of New York). On May 27, 2015, U.S. District Judge Laura Taylor Swain finally approved a class action settlement with JPMorgan Chase & Co., which agreed to pay $500 million and up to an additional $5 million in litigation-related expenses to resolve claims arising from the sale of $27.2 billion of mortgage-backed securities issued by Bear Stearns & Co. during 2006 and 2007 in 22 separate public offerings.

- Harborview MBS Litigation (No. 08-5093, U.S. District Court for the Southern District of New York). In February 2014, Cohen Milstein reached a settlement with the Royal Bank of Scotland (RBS) in the Harborview MBS Litigation, resolving claims that RBS duped investors into buying securities backed by shoddy home loans. The $275 million settlement is the fifth largest class action settlement in a federal MBS case. This case is one of eight significant MBS actions that Cohen Milstein has been named lead or co-lead counsel by courts and one of three that were nearly thrown out by the court, only to be revived in 2012.

- In Re Electronic Books Antitrust Litigation (No. 11-md-02293, U.S. District Court for the Southern District of New York). In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc. Combined with $166 million in previous settlements with five defendant publishing companies, consumers could receive more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and

- Countrywide MBS Litigation (2:10-cv-00302, U.S. District Court in the Central District of California). In April 2013, Plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement. It is the nation's largest MBS-federal securities class action settlement. The settlement was approved in December 2013 and brings to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS. The settlement is also one of the largest (top 20) class action securities settlements of all time.

- In re Beacon Associates Litigation (No. 09-cv-0777, United States District Court for the Southern District of New York). Class action settlement of $219 million for trustees and participants in ERISA-covered employee benefit plans whose assets were lost through investments made on their behalf by Beacon Associates LLC I & II in the investment schemes of Bernard Madoff.

- In re Plasma-Derivative Protein Therapies Antitrust Litigation (No. 09 C 7666, United States District Court for the Northern District of Illinois). After four years of litigation, in October of 2013, CSL Limited, CSL Behring LLC, CSL Plasma, Inc. (collectively, "CSL"), and the Plasma Protein Therapeutics Association ("PPTA") agreed to pay $64 million dollars to settle a lawsuit brought by the University of Utah Hospital and other health care providers alleging that CSL, the PPTA, and Baxter agreed between 2003-2009 to restrict the supply of immunoglobulin and albumin, and thereby increase the prices of those therapies. Two months later, Baxter International Inc. and Baxter Healthcare Corp. (collectively "Baxter") agreed to pay an additional $64 million to settle these claims – bringing the total recovery to the class to $128 million.

- Keepseagle v. Vilsack Civil Action No. 1:99CV03119 (D.D.C.). A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA. A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision. On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- In re Parmalat Securities Litigation No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million. At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared. I wish I had counsel this good in front of me in every case." Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and we were appointed as co-lead counsel. Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat. New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal. This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- Dukes v. Wal-Mart Stores, Inc. No. C-01-2252 (N.D. Cal.). Cohen Milstein is co-lead counsel in this sex discrimination case. In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998. This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees. That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011. Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court.

Since then, the 2004 action has been amended to address the Wal-Mart regional package stores in
California, and other regional class cases have been or are soon to be filed. This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- Rubin v. MF Global, Ltd. (08-CV-02233, S.D.N.Y.). Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co- lead plaintiffs in the case. In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings. In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist. Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- Hughes v. Huron Consulting Group (09-CV-04734, N.D. Ill.). Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal. In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss in their entirety and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition- related payments, which allowed plaintiffs to move forward with discovery. The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al. Civil Action No. 00-015 (Knox County Superior Court, Me.). In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The Firm served as co-lead counsel.

- In re StarLink Corn Products, Liability Litigation MDL No. 1403. (N.D. Ill.). Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- Snyder v. Nationwide Mutual Insurance Company No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen Milstein

served as one of plaintiffs' principal counsel in this case involving the holders of persons held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al. No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- Kruman v. Christie's International PLC, et al. Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- Roberts v. Texaco, Inc. 94-Civ. 2015 (S.D.N.Y.). Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia*, "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- Trotter v. Perdue Farms, Inc. Case No. 99-893 (RRM) (JJF) (MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply. The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law.   In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. Cohen Milstein was co-lead counsel.

**Awards & Recognition**

- In 2018, *Law360* named Steven J. Toll a **"Titan of the Plaintiffs Bar."**
- In 2018, Lawdragon named seven Cohen Milstein attorneys to the 2018 **"Lawdragon 500,"** an annual list of the **500 Leading Lawyers in America**.
- In 2018, Theodore J. Leopold was recognized as an **"Energy and Environmental Trailblazer"** by *The National Law Journal.*
- In 2018, *Law360* named Cohen Milstein a **"Practice Group of the Year: Privacy."**
- In 2017, *Law360* named Steven J. Toll a **Class Action MVP**, recognizing his leadership role in many of the country's most significant class actions for the year.
- In 2017, the *Daily Business Review (DBR)*, South Florida's leading legal industry publication, named Theodore J. Leopold *DBR's* **"Most Effective Lawyer of 2017: Class Action**."
- In 2017, Joel Laitman and Christopher Lometti, members of Cohen Milstein's Securities Litigation & Investor Protection practice group, and Betsy Miller and Victoria Nugent, co-chairs of the firm's Public Client practice group, were named **The National Law Journal's "Plaintiffs' Lawyers Trailblazers."**
- In 2017, **The Best Lawyers in America 2018© recognized seven Cohen Milstein partners,** including Judge Martha A. Geer, Karen L. Handorf, Leslie M. Kroeger, Stephan A. LeClainche, Theodore J. Leopold, Joseph M. Sellers, and Christine E. Webber for their respective practices of law.
- In 2017, Law360 named Cohen Milstein partners, S. Douglas Bunch and Kalpana Kotagal as **"Rising Stars."**
- In 2017, The Legal 500 named Cohen Milstein a **Leading Firm** in "Antitrust: Civil Litigation / Class Actions" and "Dispute Resolution: Securities Litigation – Plaintiff."
- In 2017, The Legal 500 named Richard A. Koffman, Co-Chair of Cohen Milstein's Antitrust Practice to its **"Legal 500 Hall of Fame."**
- In 2017, Legal 500 named Sharon K. Robertson and Brent W. Johnson as **"Legal 500 Next Generation Lawyer"** in the area of Antitrust: Civil Litigation/Class Actions.
- In 2017, Super Lawyers named Brent W. Johnson as a "Rising Star" and a **"Top Rated Antitrust Litigation Attorney in Washington, DC."**
- In 2017, Super Lawyers named Leslie M. Kroeger, Stephan A. Le Clainche, and Theodore J. Leopold "Florida Super Lawyers" and Nicholas C. Johnson and Adam J. Langino "Florida Rising Stars."
- In 2017, Super Lawyers' names Christopher Cormier a 2017 "Rising Star" and **"Top Rated Antitrust Litigation Attorney in Denver, CO."**
- In 2017, the Coalition for Independent Living Options Inc. presented Michael Dolce a Special Acknowledgment Award for his Commitment to Ending Sex Crimes against People with Disabilities
- In 2017, Adam J. Langino was Elected American Association for Justice's Newsletter Chair for the Product Liability Section
- In 2017, Florida Trend Named Manuel J. Dominguez a **"Legal Elite."**
- In 2017, Nicholas C. Johnson was elected President of the F. Malcolm Cunningham, Sr. Bar Association.
- In 2017, Leslie M. Kroeger was elected Treasurer to the Florida Justice Association.
- In 2017, Nicholas C. Johnson was reappointed Director the Palm Beach County Bar Association's North County Section Board of Directors until June 2019.
- In 2017, Law360 selected Cohen Milstein as a **"Competition Practice Group of the Year"** and a **"Class Action Practice Group of the Year."**
- In 2017, South Florida Legal Guide Names Theodore J. Leopold as a **"Top Lawyer",** and Diana L. Martin and Adam Langino a **"Top Up and Comer".**
- In 2016, Women in Wealth Awards selects Carol V. Gilden Selected as "Best in Securities Litigation Law - Illinois & Excellence Award for Investor Protection Law"
- In 2016, Law360 named Cohen Milstein's Richard A. Koffman a Competition Law MVP.
- In 2016, Cohen Milstein Partner Martha Geer was selected as a 2016 North Carolina Leaders in the Law Honoree.
- In 2016, the Washington Lawyers' Committee for Civil Rights and Urban Affairs named Cohen Milstein Sellers & Toll a recipient of its 2016 Outstanding Achievement Award.

plaintiff class action antitrust firms in the United States.

- In 2016, Agnieszka Fryszman, Joel Laitman, Chris Lometti, Kit Pierson, Joe Sellers and Steve Toll were named to the **2016 Lawdragon 500 Leading Lawyers in America.**
- In 2016, Law360 named Cohen Milstein Partner Julie Goldsmith Reiser one of the **"25 Most Influential Women in Securities Law."**
- In 2016, Cohen Milstein is named to the **National Law Journal's "Plaintiffs Hot List"** for the fifth time in six years.
- In 2016, Law360 names Cohen Milstein as one of the top firms for female attorneys.
- In 2015, Law360 selects Cohen Milstein as the sole plaintiff firm to be selected in two **"Practice Groups of the Year"** categories and one of only five class action firms recognized.
- In 2015, Cohen Milstein was named an **Elite Trial Lawyer Firm by the National Law Journal** for the second year in a row.
- In 2015, Cohen Milstein Partner Steven J. Toll named a **Law360 MVP in Securities Law.**
- In 2015, Cohen Milstein is selected as a **"Most Feared Plaintiffs Firm" by Law360** for the third year in a row.
- In 2015, Richard Koffman was named, for the fifth consecutive year, in the Legal 500 United States **"Leading Lawyers" in "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".**
- In 2015, Cohen Milstein's Denver office was named **"Antitrust Law Firm of the Year – Colorado"** by Global Law Experts.
- In 2015, Partners Theodore J. Leopold and Leslie M. Kroeger and Of Counsel Attorney Stephan A. LeClainche were selected "Florida Super Lawyers" and Adam J. Langino was selected "Florida Rising Star."
- In 2015, Cohen Milstein attorneys Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers.**
- In 2015, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Johanna Hickman, Kalpana Kotagal, Emmy Levens, and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.
- In 2015, for the fourth time in five years, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**
- In 2015, Cohen Milstein Partner Carol V. Gilden was selected as **"Pension Funds Litigation Attorney of the Year in Illinois"** for the second year in a row by the Corporate INTL Legal Awards.
- In 2014, Cohen Milstein's Antitrust Practice was selected as a **Practice Group of the Year by Law360.** In 2014, Cohen Milstein Partner Kit Pierson was selected as an MVP by Law360.
- In 2014, Cohen Milstein was named a **"Most Feared Plaintiffs Firm"** by Law360 for the second year in a row. In 2014, Cohen Milstein was selected as an **Elite Trial Lawyer** firm by the National Law Journal.
- Cohen Milstein Partners Steven J. Toll, Joseph M. Sellers, Kit A. Pierson, and Agnieszka M. Fryszman Selected to the **2014 Lawdragon 500.**
- Joseph M. Sellers, Theodore J. Leopold, and Leslie M. Kroeger Make **"Best Lawyers'** List" for 2015.
- Released in 2014, the 2013 SCAS 50 Report on Total Securities Class Action Settlements once again ranked Cohen Milstein as a top firm.
- In 2014, Theodore J. Leopold, a partner at Cohen Milstein, was been selected to the Top 100 Miami Florida Super Lawyers list. Partner Leslie M. Kroeger was selected to the **2014 Florida Super Lawyers** list and Diana L. Martin was selected to the **Florida Rising Stars** list.
- In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were both recognized in the 2014 edition of **Florida Trend's Florida Legal Elite™.** Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.
- In 2014, Cohen Milstein was selected to the selected to the **National Law Journal's Midsize Hot List.**
- In 2014, Cohen Milstein was recognized as a **"Highly Recommended Washington, DC Litigation Firm"** by
- Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2014, Cohen Milstein was ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500** for the sixth year in a row.

- "**Leading Lawyers**" list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".
- In 2014, Cohen Milstein attorneys Christopher Cormier, Agnieszka Fryszman, Julie Goldsmith Reiser, Joseph Sellers, Daniel Sommers, and Steven Toll were recognized **as Local Litigation Stars** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2014, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers**.
- In 2014, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Jeffrey Dubner, Johanna Hickman, Joshua Kolsky, Kalpana Kotagal, Emmy Levens, Michelle Yau and David Young were selected as **Washington DC Rising Stars** by Super Lawyers.
- In 2014, Cohen Milstein Partner Carol V. Gilden was selected as the Illinois Pension Fund Attorney of the Year.
- In 2014, Best Lawyers named Cohen Milstein Partner Joseph Sellers D.C. Litigation - Labor & Employment Lawyer of the Year.
- In 2013, for the third-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.
- In 2013, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360.
- In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.
- In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.
- In 2013, Cohen Milstein attorney Michelle Yau was selected as **Washington DC Rising Stars** by Super Lawyers. In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**. She has been selected every year since 2005.
- In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.
- In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.
- In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by
- Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.
- In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.
- In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**. Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.
- In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**. Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.
- In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**. Mr. Sommers was also selected for this prestigious award in 2011.
- In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**. Ms. Webber was also selected for this prestigious award in 2007.
- In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**. In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.
- In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**. Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.
- In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.
- In 2011, Partner Joseph M. Sellers was selected as a "**Visionary**" by The *National Law Journal.*

- In 2011, Partner J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.

- In 2011, Partner Joseph M. Sellers and Of Counsel Joel Laitman were selected as a finalist for the **2011 Trial Lawyer of the Year Award** from the Public Justice Foundation.
- In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.
- In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**. Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**. Partner Carol Gilden was selected as an **Illinois Super Lawyer**.
- In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**. The Firm was named one of the "six firms that best reflect the pro bono tradition."
- In 2010, Partner Joseph M. Sellers was selected as one of "**The Decade's Most Influential Lawyers**" by *The National Law Journal.*
- In 2010, Partner Steven J. Toll was named one of Law360's "**Most Admired Attorneys**". In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.
- In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.
- In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.
- In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.
- In 2009, Partner Steven J. Toll was named a **Top Attorney in Corporate Litigation for Securities Litigation** by Super Lawyers.
- In 2009, Partners Joseph M. Sellers and Christine E. Webber were named as **Top Washington Lawyers** by the Washingtonian Magazine.
- In 2009, Cohen Milstein was recognized as **one of the top 50 law offices in Washington D.C. for diversity efforts**.
- In 2009, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the third year in a row.
- Cohen Milstein ranked as a **2009 Leading Plaintiff Class Action Antitrust Firm in the United States** by *The Legal500*.
- The **2008 SCAS Report on Total Securities Class Action Settlements** ranked Cohen Milstein as a top firm for the second year in a row.
- In 2008, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the second year in a row.
- In 2008, Managing Partner Steven J. Toll was named one of Lawdragon's **100 Lawyers You Need to Know in Securities Litigation.**

# Attorney Profiles – Partners

## Steven J. Toll

Steven J. Toll is Managing Partner at Cohen Milstein, a member of the Executive Committee, and Co-Chair of the firm's Securities Fraud & Investor Protection practice group. In this role, Mr. Toll guides the firm's mediation efforts and strategy, and has been lead or principal counsel on some of the most high-profile stock fraud lawsuits in the past 30 years, arguing important matters before the highest courts in the land.

Mr. Toll has built a distinguished career and reputation as a fierce advocate of the rights of shareholders and has guided mediation efforts on the firm's largest and most important matters (both securities fraud and other consumer type cases), a role in which he has earned the trust of mediators, as well as the respect of defense counsel. Mr. Toll has been involved in settling some of the most important mortgage-backed securities (MBS) class-action lawsuits in the aftermath of the financial crisis, including: Countrywide Financial Corp., which settled for $500 million in 2013; Residential Accredited Loans Inc. (RALI), which settled for $335 million in 2014; and the Harborview MBS suit, which settled for $275 million. He also negotiated a $90 million settlement of a suit against MF Global.

Among Mr. Toll's current matters is the Harman class action suit, where Mr. Toll argued and won an important ruling from the U.S. Court of Appeals for the District of Columbia Circuit. The Circuit Court reinstated the suit against electronics maker Harman International Industries; the ruling is significant in that it places limits on the protection allowed by the safe harbor rule for forward-looking statements.

Currently, Mr. Toll is also co-lead counsel in the BP Securities class action securities fraud lawsuit that arose from the devastating Deepwater oil spill in the Gulf of Mexico. The Fifth Circuit Court of Appeals recently affirmed the certification of the class of investors alleged to have been injured by BP's misrepresenting the amount of oil spilling into the Gulf of Mexico, and thus minimizing the extent of the cost and financial impact to BP of the clean up and resulting damages.

Mr. Toll is co-lead counsel in the consumer class action suit against Lumber Liquidators, a lawsuit that alleges the nationwide retailer sold Chinese-made laminate flooring containing hazardous levels of the carcinogen formaldehyde while falsely labeling their products as meeting or exceeding California emissions standards, a story that was profiled twice on 60 Minutes in 2015.

Mr. Toll is also leading Cohen Milstein's efforts in a $400 million derivative shareholder suit brought against the directors and officers of Bank Leumi, an Israeli bank, asserting that bank officers violated their fiduciary duties in conspiring to aid American taxpayers in hiding income from the IRS.

Mr. Toll has provided a great deal of pro bono legal work during a career at Cohen Milstein that spans more than three decades. In addition, he has been an active supporter of Children's Hospital National Medical Center for decades, setting up an endowment in his daughter's name to help the Hospital's leukemia patients and their families (his daughter passed away from leukemia in 1987), plus more recently establishing regular programs for music and laughter for the children during their hospital stays. He and his family also founded Lolly's Locks, a nonprofit organization that provides high-quality wigs to women cancer patients suffering from hair loss as a side effect of chemotherapy. Lolly's Locks was established in memory of Mr. Toll's late wife, Lolly, who passed away in 2012, after a 15-month battle with cancer.

Mr. Toll is a graduate of the Wharton School of the University of Pennsylvania, earning a B.S. cum laude, and received his J.D. from Georgetown University Law Center, where he was Special Project Editor of The Tax Lawyer. His name has appeared regularly on Law360's annual lists of MVP's, Leading Attorneys, and Most Admired Attorneys.

## Joseph M. Sellers

Joseph M. Sellers is a Partner at Cohen Milstein, Chair of the firm's Executive Committee and Chair of the Civil Rights & Employment Practice Group, a practice he founded. In a career spanning nearly four decades, Mr. Sellers has represented victims of discrimination and other illegal employment practices individually and through class actions. He brings to his practice a deep commitment and broad background in fighting discrimination in all its forms. That experience includes decades of representing clients in litigation to enforce their civil rights, participating in drafting and efforts to pass landmark civil rights legislation, testifying before Congress on various civil rights issues, training government lawyers on the trial of civil rights cases, teaching civil rights law at various law schools and lecturing extensively on civil rights and employment matters.

Mr. Sellers, who joined the firm in 1997, has been practicing civil rights law for more than 35 years, during which time he has represented individuals and classes of people who have been victims of civil rights violations or denied other rights in the workplace. He has tried to judgment before courts and juries several civil rights class actions and a number of individual cases and has argued more than 30 appeals in the federal and state appellate courts, including the United States Supreme Court. He has served as class counsel, and typically lead counsel, in more than 75 civil rights and employment class actions.

His clients have included persons denied the rights and opportunities of employment because of race, national origin, religion, age, disability and sex, including sexual orientation and identity. He has represented victims of race discrimination in the denial of equal access to credit, in the rates charged for insurance and in the equal access to health clubs, retail stores, restaurants and other public places. He has challenged housing discrimination on the basis of race and the denial of housing and public accommodations to people with disabilities.

Some of the noteworthy matters he has handled include: Walmart v. Dukes (U.S. S.Ct.), delivered argument on behalf of class of women who alleged sex discrimination in pay and promotions in case establishing new rules governing class certification; Randolph v. Greentree Financial (U.S. S.Ct.), delivered argument on behalf of consumer challenging enforcement of arbitration agreement in case establishing rules governing the enforceability of arbitration agreements; Beck. v. Boeing Company (W.D. Wash.), co-lead counsel on behalf of class of more than 28,000 women employees alleging sex discrimination in pay and overtime decisions; Conway, et al. v. Deutsch (E.D. Va.), co-lead counsel on behalf of class of female covert case officers at the CIA alleging sex discrimination in promotions and job assignments; Johnson, et al. v. Freeh (D.D.C.), co- lead counsel on behalf of class of African-American FBI special agents alleging racial discrimination in promotion and job assignments; Keepseagle v. Veneman (D.D.C.), lead counsel on behalf of class of Native American farmers and ranchers alleging denial of equal access to credit by USDA; Neal v. Director, D.C Dept. of Corrections (D.D.C.), co-lead counsel in which he tried first sexual harassment class action to a jury, on behalf of a class of women correctional employees and women and men subject to retaliation;Doe v. D.C. Fire Department (D.D.C.), in which he established after trial that an applicant with HIV could properly serve as a firefighter; Floyd-Mayers v. American Cab Co. (D.D.C.), in which he represented persons who alleged they were denied taxi service because of their race and the race of the residents at the location to which they asked to be driven; and Trotter, et al. v. Perdue Farms

(D. Del.), lead counsel on behalf of chicken processing workers alleging violations of federal wage and hour and employee benefits law.

Prior to joining Cohen Milstein, Mr. Sellers served for over 15 years as the Director of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, an organization providing pro bono representation in a broad range of civil rights and related poverty issues. He was a member of the transition teams of Obama/Biden in 2008 and Clinton/Gore in 1992 and 1993, and served as a Co-Chair of the Special Committee on Race and Ethnicity of the D.C. Circuit Task Force on Gender, Race and Ethnic Bias to which he was appointed by the judges of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia.

Throughout his career, Mr. Sellers has also been active in legislative matters. He helped to draft and worked for the passage of the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 and the Lily Ledbetter Fair Pay Restoration Act of 2009. He has testified more than 20 times before Committees of the United States Senate and House of Representatives on various civil rights and employment matters.

A teacher and mentor, Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases, and was an Adjunct Professor at the Washington College of Law at American University, where he taught Employment Discrimination law, and at the Georgetown University Law Center, where he taught Professional Responsibility. In addition, he has lectured extensively throughout the country on various civil rights and employment topics.

Mr. Sellers has been recognized as one of the top lawyers in Washington and as one of the top plaintiffs' employment lawyers in the U.S. In 2010, The National Law Journal named him one of "The Decade's Most Influential Lawyers," in 2011 The Legal Times named him a "Legal Visionary," and in 2012 the Washington Lawyers' Committee for Civil Rights and Urban Affairs awarded him the Wiley Branton Award for leadership in civil rights. He is a professionally trained mediator and has served as the President of the Washington Council of Lawyers.

Mr. Sellers received his B.A. in American History and Literature from Brown University, and earned his J.D. from Case Western Reserve School of Law, where he served as Research Editor of the Case Western Reserve Law Review.

### Andrew N. Friedman

Andrew N. Friedman is a Partner at Cohen Milstein, and is Co-Chair of the firm's Consumer Protection practice group. Practicing in the class action field since 1985, Mr. Friedman specializes in litigating complex, multi-state class action lawsuits against manufacturers and consumer service providers such as banks, insurers, credit card companies and others. He is widely recognized as a leader in enforcing consumer rights and known as a hands-on lawyer who is ready to take litigation all the way through trial.

Over the years, Mr. Friedman has been lead or co-lead counsel in numerous important cases, bringing relief to millions of consumers and recovering hundreds of millions of dollars in class actions. He was one of the principal counsel in cases against Nationwide and Country Life, which asserted sales marketing abuses in the marketing of so-called "vanishing premium policies," where insurance agents sold insurance policies to unsuspecting consumers promising that after a relatively short time the dividends generated from the policy would be so high as to be able to fully pay the premiums. In fact, the calculations of the

policies were based on unrealistic interest rate projections and, therefore, the premiums never "vanished." The Nationwide case resulted in a settlement valued at between $85 million and $103 million, while a settlement with Country Life made $44 million in benefits available to policyholders.

Mr. Friedman was co-lead counsel in Keithly v. Intelius, Inc. (W.D. Wash.), where he negotiated two nationwide settlements with Intelius, Inc., relating to negative option programs and improper post-transaction marketing. The combined settlements made $12 million in cash and a total of $3.5 million in vouchers available to the Class.

Mr. Friedman has also litigated important consumer product lawsuits, including one against Thomson Consumer Electronics, which resulted in a settlement that made up to $100 million available for persons who paid for unreimbursed repairs to defective televisions. In addition, Mr. Friedman was one of the principal counsel in the Dex-Cool Litigation, a nationwide lawsuit alleging that General Motors sold millions of cars with defective coolant that gummed up and caused corrosion to engines. GM settled ahead of trial, offering relief of cash payments of up to $800 per repair.

More recently, Mr. Friedman litigated a lawsuit against Symantec, Corp., and Digital River, Inc., a four-year long nationwide class action battle regarding the marketing of a re-download service in conjunction with the sale of Norton software. The case settled in a $60 million all-cash deal one month before the case was about to go to trial – one of the most significant consumer settlements in years.

Prior to his current role as Co-Chair and member of the Consumer Protection group, Mr. Friedman was a member of the Securities Litigation & Investor Protection practice, litigating many important matters, including the Globalstar Securities Litigation in which he served as one of the lead trial counsel. The case settled for $20 million during the second week of the trial. In addition, Mr. Friedman served as one of co-lead or principal counsel in Norman Frank et al. v. David L. Paul (a recovery of over $18 million); In re Jiffy Lube Securities Litigation (D. Md.) (a recovery of over $12 million); and In re Immunex Securities Litigation (W.D. Wash.) (a recovery of $14 million).

Currently, Mr. Friedman is litigating such notable matters as:

- Anthem Data Breach Litigation: Mr. Friedman is co-lead counsel in a high-profile class action lawsuit against Anthem Inc. over its massive data breach that compromised the personal identification (including social security numbers, date of birth, medical ID number, etc.) and health information of 80 million insured customers. The lawsuit alleges Anthem, the second- largest insurance company in the nation, failed to ensure its data systems were protected, failed to prevent and stop the breach from happening and failed to disclose to its customers material facts regarding the breach. Mr. Friedman is involved in all aspects of the litigation.
- Sallie Mae Litigation: Cohen Milstein is co-lead counsel in a series of cases alleging that Sallie Mae charged usurious interest rates and improper late fees to California students. Mr. Friedman is overseeing all aspects of the litigation.
- Home Depot Data Breach Litigation: Mr. Friedman is a member of the Plaintiffs' Steering Committee representing financial institutions and heads the expert committee in a class action lawsuit arising out of the Home Depot data breach, a cyber attack that affected hundreds of financial institutions and more than 40 million consumers.

Mr. Friedman is a noted speaker who has appeared on numerous panels for legal education seminars and institutional investor conferences on the issues of consumer and securities class actions. In 2011,

LawDragon named him one of the Leading Plaintiffs' Lawyers. His work has been cited in the media and he was profiled in the April 14, 2000, Washington Business Journal.

Prior to joining Cohen Milstein, Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.

Mr. Friedman attended Tufts University, graduating magna cum laude and was elected Phi Beta Kappa, with a B.A. in Psychology. He earned his J.D. from the National Law Center, George Washington University.

**Daniel S. Sommers**

Daniel S. Sommers is a Partner at Cohen Milstein, a member of the firm's Executive Committee and Co-Chair of the Securities Litigation & Investor Protection practice group. During his nearly three decade career at Cohen Milstein, Mr. Sommers has taken leadership roles in litigating large, complex and significant securities cases. He provides litigation counsel to the firm's institutional investor clients, including for example, the New York State Common Retirement Fund, the Ohio Public Employees Retirement System, the State Teachers Retirement System of Ohio, the Arkansas Public Employees Retirement System and numerous Taft-Hartley pension funds. Many of his cases have resulted in important rulings and legal precedents, as well as in significant recoveries for investors totaling hundreds of millions of dollars. Some of his notable matters include:

- Bear Stearns Mortgage Pass Through Securities Litigation: Co-lead counsel in a $505 million landmark settlement (including a $5 million expense fund) of a securities class action suit alleging that Bear Stearns violated securities laws in the sale of mortgage backed securities to investors. This case represents the largest recovery ever obtained in a securities class action on behalf of investors in mortgage-backed securities.
- Converium/Scor Securities Litigation (Netherlands): Co-lead counsel in a groundbreaking $58.4 million securities class action recovery, in which the Amsterdam Court of Appeal declared binding a world- wide class action settlement of claims of non-U.S. investors who purchased Converium shares outside of the United States. The ruling was a major victory for worldwide investors because it successfully implemented the Dutch Collective Settlement Statute even though the underlying transactions had limited contact with the Netherlands.
- Fannie Mae Securities Litigation: Played a significant role in a high profile securities class action against Fannie Mae, several of its former executives and KPMG involving allegations of falsified financial statements. The $153 million settlement amount represents the largest recovery in a securities fraud class action ever obtained in the United States District Court for the District of Columbia.
- CP Ships Ltd. Securities Litigation: Co-lead counsel in a class action lawsuit alleging that CP Ships, a
- Canadian company headquartered in England but with substantial operations in Tampa, Florida, issued false financial statements. Mr. Sommers argued an appeal in the U.S. Court of Appeals for the Eleventh Circuit, successfully opposing objections to a settlement that provided non-U.S. investors with the protections of the federal securities laws.

Mr. Sommers has obtained significant recoveries for investors in numerous other securities class action cases in federal courts throughout the United States including: Steiner v. Southmark Corporation (N.D. Tex.) (over $70 million recovery); In re PictureTel Inc. Securities Litigation (D. Mass.) ($12 million recovery); In re Physician Corporation of America Securities Litigation (S.D. Fla.) ($10.2 million recovery); In re Gilat

Satellite Securities Litigation (E.D.N.Y.) ($20 million recovery); In re Pozen Inc. Securities Litigation (M.D.N.C.) ($11.2 million recovery); In re Nextel Communications Securities Litigation (D.N.J.) (up to $27 million recovery); In re PSINet Inc. Securities Litigation (E.D. Va.) ($17.8 million recovery); In re Cascade International Inc. Securities Litigation, (S.D. Fla.) (global recovery of approximately $10 million); In re GT Solar Securities Litigation (D.N.H.) (recovery of $10.5 million);Mulligan v. Impax Laboratories, Inc. (E.D. Va.) (recovery of $8 million); Plumbers & Pipefitters National Pension Fund v. Orthofix, N.V. (S.D.N.Y) (recovery of $11 million) and In re ECI Telecom Securities Ltd. Litigation (E.D. Va.) ($21.75 million recovery).  He has also handled significant appellate matters including arguing before the United States Court of Appeals for the Ninth Circuit in Hemmer Group v. Southwest Water Company, where he obtained a reversal of the district court's order dismissing investors' claims under the Securities Act of 1933.  In addition, he was co-lead counsel for investors before the United States Supreme Court in Broudo v. Dura Pharmaceuticals, Inc., 544 U.S. 336 (2005) (addressing the standards for pleading loss causation).

Mr. Sommers is also experienced in non-class action litigation.  He represented TBG Inc., a multi-billion dollar privately-held overseas corporation, in a multi-party, complex action alleging fraud in a corporate acquisition and represented individuals in connection with investigations brought by the United States Securities and Exchange Commission.  He also has represented publicly traded corporations in the prosecution and defense of claims.  Mr. Sommers has litigated cases covering a wide-range of industries including the financial services, computer software, pharmaceutical, insurance, real estate and telecommunications industries among others. In addition, he has substantial experience in cases presenting complex accounting and auditing issues.

Mr. Sommers is recognized as a thought leader on the subjects of securities and class action litigation and is a frequent speaker on those topics both to other lawyers and institutional investors. He has been quoted on these topics in a variety of publications, such as The Wall Street Journal, The Washington Post, BNA/Bloomberg, and Law360.  Mr. Sommers is a member of the advisory board of the Bloomberg/BNA Securities Litigation & Law Report and served on Law360's Securities Editorial Advisory Board. Benchmark Plaintiff has recognized him as a litigation star in multiple years. He has been named a Washington, D.C. Super Lawyer each year from 2011 through 2016, and has been awarded Martindale-Hubbell's highest rating of AV Preeminent®. He served as Chairman and Vice-Chairman of the Investor Rights Committee of the Corporation, Finance and Securities Law Section, District of Columbia Bar, and through the years has been a guest lecturer at Columbus School of Law at the Catholic University of America; Georgetown Law Center; and George Washington University Law School.

Mr. Sommers attended Union College, where he earned a B.A. magna cum laude in Political Science, and graduated from George Washington University Law School.

**Daniel A. Small**

Daniel A. Small has been a Partner at Cohen Milstein for more than 20 years and chaired or co-chaired the firm's Antitrust practice group from 2008 to 2014. He is a member of the firm's Executive Committee.

When he arrived at Cohen Milstein 26 years ago, Mr. Small was assigned to work on securities fraud cases. One year later, he received an assignment in an antitrust case and has worked virtually full time on antitrust cases ever since. He has represented plaintiff classes as lead or co-lead counsel numerous times and has tried cases before juries and has argued cases in several appellate courts, including the United States Supreme Court. He also has defended unions against antitrust claims and represented a key duplication machine manufacturer on its monopolization claims against the dominant competitor.

Mr. Small has obtained favorable settlements and judgments totaling hundreds of millions of dollars and has been involved with a broad array of markets, everything from computer software and hardware to wild blueberries and hospital nurses. He has developed a sophisticated understanding of how conspiracies and monopolies operate in a range of complex markets. He has spent years studying the economic issues that underpin his cases, and the challenges of using antitrust litigation to achieve just compensation for victims, and to encourage and facilitate freer and more open markets in this country.

His work in complex civil litigation has made him one of the most respected and feared litigants in the class action antitrust space: The Legal 500 has recognized Mr. Small and Cohen Milstein as a "Leading Plaintiffs Antitrust Class Action Lawyer/Firm" annually since 2009; Benchmark Plaintiff has repeatedly awarded him "National Litigation Star – Antitrust"; and in 2014, he was named a "Leading Competition Lawyer" by the International Who's Who of Competition Lawyers & Economists.

Currently, Mr. Small is litigating the following notable matters, among others:

- VFX/Animation Workers Litigation: Cohen Milstein is one of three court-appointed co-lead firms in litigation alleging that the major animation studios conspired to suppress the pay of special effects and animation workers. The litigation has survived a motion to dismiss and the plaintiffs recently filed a motion for class certification.
- Prime Healthcare Services Litigation: Cohen Milstein is defending the Service Employees International Union (SEIU) in an antitrust conspiracy action brought by Prime Healthcare Services, a hospital chain in Southern California, alleging that SEIU conspired with Kaiser Permanente to drive Prime and certain other hospitals out of the market. Cohen Milstein led the successful effort to have the complaint and amended complaint dismissed in the Southern District of California. The case is on appeal in the Ninth Circuit where Mr. Small recently argued on behalf of the SEIU and its local union, UHW.
- Google Wi-Fi Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its Street View vehicles collected payload data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation survived a motion to dismiss, which was affirmed on an interlocutory appeal to the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery.
- Michigan Blue Cross Litigation: Cohen Milstein is co-lead counsel in this class action challenging Michigan Blue Cross's use of most favored nation provisions in its provider agreements with hospitals in Michigan. The class plaintiffs secured a $30 million settlement, which was approved by the United States District Court for the Eastern District of Michigan. Mr.

Small defended the settlement on appeal, arguing recently before the Sixth Circuit Court of Appeals.

Past successes include:

- In re Buspirone Antitrust Litigation: $90 million settlement. Cohen Milstein served as co-lead counsel in a class action lawsuit alleging that Bristol Myers-Squibb Co., the manufacturer of the prescription drug Buspar, conspired to keep generic versions of the drug out of the market.
- Pease v. Jasper Wyman & Son, et al.: $56 million judgment. Cohen Milstein was lead counsel representing a class of wild blueberry growers in Maine who sued four blueberry processors for conspiring to depress blueberry prices. The litigation was tried before a jury in Maine state court, where Mr. Small was co-lead trial counsel. The jury found the processors liable for 100% of the damages estimated by the plaintiffs' expert and awarded the growers $18.68 million in damages, which was trebled under Maine antitrust law.

Mr. Small attended Colgate University, where he graduated with a B.A., cum laude, in History. He earned his J.D. at American University's Washington College of Law. Following law school, Mr. Small clerked for the Honorable Judge Roger Vinson, United States District Court for the Northern District of Florida, from 1986 to
1988. He serves on the Advisory Board of the American Antitrust Institute and is chair of the selection committee for the annual Jerry S. Cohen Memorial Writing Award for Antitrust Scholarship.

## Christine E. Webber

Christine E. Webber is a Partner at Cohen Milstein, and a member of the Civil Rights & Employment practice group. In that role, Ms. Webber represents victims of discrimination and other illegal employment practices in class and collective actions. She has participated during her career in litigating groundbreaking sex discrimination lawsuits. Ms. Webber is a hands-on litigator, known for her ability to work closely with economic and statistical expert witnesses and to identify the types of sophisticated statistical analyses that will be most helpful to her clients' claims.

Ms. Webber is a tenacious and resourceful litigator with a fierce commitment to fighting discrimination and protecting workers. In the face of adversity she continues to find new ways to protect her clients' rights. Following the Supreme Court's ruling decertifying the class in Dukes v. Wal-Mart—a case brought on behalf of a nationwide class of women suing Wal-Mart for sex discrimination in pay and promotion—Ms. Webber has been counsel in several regional class cases pursuing these claims for former Dukes class members. Ms. Webber was co-lead counsel in Rindfleisch v. Gentiva Health Services (N.D. Ga.) in which nurses and other home health care providers were held to be non-exempt because they were not paid on a bona fide salaried or fee basis. Following this successful summary judgment ruling, the case was decertified, and Ms. Webber continues to represent individuals seeking their unpaid overtime. In Tomkins v. Amedisys, Inc., a lawsuit challenging similar practices as the Gentiva litigation, Ms. Webber represented approximately 2,000 nurses, physical therapists and occupational therapists pursuing wage and hour claims against Amedisys; the case settled recently for $8 million.

Ms. Webber's past successes include In re Tyson Foods FLSA MDL (M.D. Ga.), a collective action involving Fair Labor Standards Act (FLSA) claims at over 40 Tyson chicken processing plants, which ultimately resolved the claims of 17,000 chicken processing workers who had been denied compensation for donning and doffing required safety and sanitary equipment. In Hnot v. Willis Group Insurance (S.D.N.Y.), Ms.

Webber represented a class of women vice presidents in Willis' Northeast region, who complained of discrimination with respect to their salary and bonuses. This "glass ceiling" case settled in 2007 for $8.5 million plus attorneys' fees, an average payment of $50,000 per woman. A subsequent case, Cronas v. Willis Group, pursued similar claims for a later time period with similar success. Ms. Webber was also counsel to the plaintiff class in Keepseagle v. Vilsack, a historic settlement between Native American farmers and the United States Department of Agriculture (USDA). The Keepseagle settlement agreement required the USDA to pay $680 million in damages to thousands of Native Americans, to forgive up to $80 million in outstanding farm loan debt and to improve the farm loan services the USDA provides to Native Americans. Ms. Webber was part of the team recognized by Public Justice as finalists for their Trial Lawyer of the Year award in 2011 for the work done in Keepseagle.

Prior to joining Cohen Milstein in 1997, Ms. Webber received a Women's Law and Public Policy fellowship which funded the first of her four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. There, she worked on employment discrimination cases, focusing in particular on the sexual harassment class action Neal v. Director, D.C. Department of Corrections, et al. Ms. Webber participated in the trial of this groundbreaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case Cooper v. Paychex (E.D. Va.), and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber is co-chair of the National Employment Lawyers' Association's Class Action Committee, a position she has held since 1999. She speaks and writes frequently on employment discrimination, wage and hour issues, and class actions.

Ms. Webber attended Harvard University, graduating *magna cum laude*, with an A.B. in Government, and earned her J.D., *magna cum laude*, Order of the Coif, at the University of Michigan Law School. Following law school, she clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

### Richard A. Koffman

Richard A. Koffman is a Partner at Cohen Milstein and Co-Chair of the Antitrust practice group. He litigates antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization, and other unlawful conduct. Mr. Koffman joined Cohen Milstein after serving as Senior Trial Attorney in the U.S. Department of Justice's Antitrust and Civil Rights Divisions. He views his role in litigating antitrust suits as an extension of the public interest work he pursued at the DOJ in promoting competition and fighting discrimination.

Mr. Koffman has served as lead or co-lead counsel in many landmark antitrust class actions, including:

- Urethanes (Polyether Polyols) Antitrust Litigation: Co-lead counsel for plaintiffs in an antitrust class action alleging a conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants settled pre-trial for a total of $139 million. After a four-week trial, the jury returned a $400 million verdict for plaintiffs against the final defendant, The Dow Chemical Co., which the district court trebled to more than $1 billion. Dow ultimately settled for $835 million while the case was on appeal, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Plasma-Derivative Protein Therapies Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin – life-saving therapies

derived from blood plasma. Mr. Koffman and his team obtained settlements totaling $128 million to compensate customers who were overcharged for these vital therapies.

- Polyester Staple Antitrust Litigation: Co-lead counsel for plaintiffs alleging a conspiracy to fix prices for polyester staple fiber; the case settled for $46 million.

Current cases include:

- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays.
- Sports Broadcasting Antitrust Litigation: Counsel for plaintiffs in class actions alleging that the system of geographical broadcasting territories employed by Major League Baseball and the National Hockey League amount to unlawful market allocation under Section 1 of the Sherman Act.
- Mixed Martial Arts (MMA) Antitrust Litigation: Co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC — commonly known as the Ultimate Fighting Championship — has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied defendant's motion to dismiss the case in September 2015.
- People of the State of California v. American Express: Counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting its participating merchants from encouraging consumers' use of less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers.

The Legal 500 has recognized Mr. Koffman as a Leading Lawyer for "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust" for five years in a row, describing him as a "strong brief writer and an excellent oral advocate." Mr. Koffman was also named as one of the world's leading competition lawyers by Global Competition Review in the U.S. Plaintiffs section of Who's Who Legal: Competition 2016.

Mr. Koffman attended Wesleyan University, where he received a B.A. with honors, and is a graduate of Yale Law School, where he was Senior Editor of the Yale Law Journal. After law school, Mr. Koffman served as a law clerk to two Federal Judges: James B. McMillan, of the U.S. District Court for the Western District of North Carolina and Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit.

### Agnieszka Fryszman

Agnieszka Fryszman is a Partner at Cohen Milstein, and is Chair of the firm's Human Rights practice group. She has been recognized as leading one of the best private international human rights practices in the world.

Ms. Fryzman represents individuals who have been victims of torture, human trafficking, forced and slave labor and other violations of international law. A recognized expert and leader in the field of human rights

law, Ms. Fryszman regularly litigates cases against corporate giants. She was a member of the legal team that successfully represented survivors of Nazi-era forced and slave labor against the German and Austrian companies that allegedly profited from their labor. These cases were resolved by international negotiations that resulted in multi-billion dollar settlements. She also represented, pro bono, Holocaust survivors suing Swiss banks that collaborated with the Nazi regime during World War II. This litigation led academics to revise their assessment of Switzerland's relationship with Nazi Germany and exposed the extent of business participation in the Holocaust.

Ms. Fryszman earned the National Law Journal Pro Bono Award for efforts on behalf of Nepali laborers injured or killed at U.S. military bases in Iraq and Afghanistan. Her team obtained several judgments and significant settlements on behalf of the families.

In addition, she currently represents victims of a human trafficking ring that allegedly lured men from Nepal with the promise of employment at luxury hotels, but instead took them against their will to work for U.S. military contractors in Iraq. Ms. Fryszman investigated and initiated suit against military contractor KBR, filing one of the first complaints under the Trafficking Victims Protection Act. She has also represented men and women who were trafficked by diplomats, in the fishing industry, and to work cleaning houses in Northern Virginia. In one recent case, after Ms. Fryszman obtained a full recovery for her client in a civil suit, the Department of Justice brought criminal charges, resulting in guilty pleas by the perpetrators. Her work on behalf of the former "comfort women," women and girls trafficked into sexual slavery by the government of Japan during World War II, was recognized with the "Fierce Sister" award from the National Asian Pacific American Women's Forum.

Ms. Fryszman represented, pro bono, victims of the September 11 attack on the Pentagon and obtained one of the highest awards for an injured survivor from the Victim's Compensation Fund. Ms. Fryszman also represented, pro bono, two individuals detained by the United States at Guantanamo Bay who were ultimately cleared without charge.

Prior to joining Cohen Milstein in 1998, Ms. Fryszman served as counsel to the United States House of Representatives Committee on the Judiciary, Subcommittee on Commercial and Administrative Law, and before that counsel to Representative Henry Waxman, Ranking Member on the House Government Reform and Oversight Committee. Earlier in her career, she was legislative director to U.S. Representative Jack Reed. Ms. Fryszman has received some of the legal profession's highest honors. Since 2009, LawDragon 500 has named her perennially to its list of Leading Lawyers in America. Benchmark Plaintiff has named her a Leading Star Plaintiffs' Litigator and one of the Top 150 Women in Litigation. For her pro bono work, she was awarded the Beacon of Justice Award by the National Legal Aid and Defender Association and the Frederick Douglass Human Rights Award from the Southern Center for Human Rights. She was also a finalist for the Public Justice Foundation's Trial Lawyer of the Year Award for her work on Wiwa v. Royal Dutch Shell. Ms. Fryszman joined the legal team in that case to prepare it for trial, resulting in a multi-million dollar settlement on the morning of jury selection.

Ms. Fryszman graduated from Brown University with an A.B. in International Relations, and earned her law degree from Georgetown University, graduating magna cum laude, Order of the Coif. At law school, she was a Public Interest Law Scholar.

**Julie Goldsmith Reiser**

Julie Goldsmith Reiser is a Partner at Cohen Milstein, and a member of the Securities Litigation Investor

Protection Practice Group. Ms. Reiser's practice focuses on representing public pension plans and other institutional investors in high-stakes securities litigation.

Known for her hands-on approach, strong advocacy and critical thinking, Ms. Reiser has led successful litigation teams in several complex actions, including a $500 million settlement related to Countrywide's issuance of mortgage-backed securities ("MBS") and the recent Fifth Circuit affirmation of an investor class in the BP securities fraud litigation stemming from the 2010 Deepwater Horizon oil spill. In those cases, Ms. Reiser's clients have benefited from her oral and written advocacy, her judgment, and her ability to work tirelessly and collegially as a member of a litigation team. Over the years, Ms. Reiser has become a recognized leader in the securities plaintiffs' bar, demonstrating a keen understanding of complex financial and economic issues and using her intuition and strategic thinking to develop strong legal theories that align with the evidence.

Currently, Ms. Reiser is litigating the following notable matters:

- In re BP Securities Litigation: Ms. Reiser represents the New York State Common Retirement Fund as co-lead plaintiff in a securities class action filed in 2010, alleging that BP injured investors by intentionally downplaying the severity of the Deepwater Horizon oil spill and preventing investors from learning the magnitude of the disaster. Ms. Reiser has taken the lead in all aspects of this litigation: case development, motion practice, oversight and implementation of discovery strategies, depositions, expert discovery and argument. After successfully arguing for class certification to the district court, Ms. Reiser presented plaintiffs' defense of that court's decision to the Fifth Circuit U.S. Court of Appeals, which affirmed the class. Trial in this matter is set for July 2016.
- Countrywide Mortgage Backed Securities Litigation: Ms. Reiser represented the Iowa, Oregon and Orange County public retirement systems in class action litigation related to Countrywide's issuance of mortgage- backed securities, which culminated in a landmark $500 million settlement. Over the course of the litigation, Ms. Reiser argued on investors' behalf at the motion to dismiss stage. She also handled various arguments related to discovery disputes, and oversaw merits and expert discovery. She took a majority of the fact depositions and was recognized for having teased a number of salient points from witnesses during the depositions. Ms. Reiser also took the lead in working with experts to maximize damages. The case is ongoing.

Ms. Reiser's successes include:

- Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.: Ms. Reiser developed and litigated this novel class action, challenging trustee inaction in preventing investor losses. She represented the Arkansas Public Employees Retirement System, IPERS and Chicago Laborers in the case, which settled for $69 million. Ms. Reiser worked with plaintiffs' statistician to develop a sampling methodology for testing whether mortgages were underwritten properly and with plaintiffs' economist in the bid for class certification and approach to damages. At the final hearing, Judge Katherine B. Forrest commended the investors' legal team: "This is a very, very good result for the plaintiffs … [and] is something of which plaintiff counsel can be proud."
- In re SCOR Holding (Switzerland) Securities Litigation: Ms. Reiser served as co-lead counsel in this landmark ruling, which was the first trans-Atlantic resolution of a U.S. securities class action in a Dutch court. The ruling made it easier for U.S. and European investors to use Dutch law in the future to protect their interests. Ms. Reiser helped secure a $140 million settlement.

- In re Parmalat Securities Litigation: Ms. Reiser acted as co-lead counsel representing investors in the largest fraud in European corporate history. Ms. Reiser secured a $90 million settlement.

In addition, Ms. Reiser has represented plaintiffs in employment cases. In Wade v. Kroger (W.D. Ky.), she represented African American employees who received a $16 million settlement to resolve claims that the retailer Kroger had discriminated against them in pay and promotions. She was also involved in Beck v. The Boeing Co. (W. D. Wash.), a case alleging sex discrimination in compensation and promotions that settled for $72.5 million.

Ms. Reiser is a noted speaker, often called on to discuss important issues such as the class standing doctrine. Ms. Reiser is the author of "Pre-Dispute Arbitration Clauses: Taking the Alternative Out of Dispute Resolution," Bloomberg BNA, Class Action Litigation Report, December 11, 2015. After its publication, Paul Bland, Executive Director of Public Justice wrote: "This is invaluable advocacy that takes industry-side advocacy and exposes its flaws and failings. I'm very glad to see this kind of very high quality advocacy and critical thinking."

Ms. Reiser also is the co-author of "Omnicare: Negligence is the New Strict Liability When Pleading Omissions Under the Securities Act," Bloomberg BNA, Corporate Law & Accountability Report, April 10, 2015; the author of "Dodd Frank's Protections for Senior Citizens: An Important, Yet Insufficient Step," University of Cincinnati Law Review, Volume 81, Issue 2, May 30, 2013; "Why Courts Should Favor Certification of MBS Actions," ABA Securities Litigation Journal, Volume 22, Number 1, Fall 2011; and the co-author of "The Misapplication of American Pipe Tolling Principles," ABA Securities Litigation Journal, Volume 21, Number 2, Winter 2011. She also co-authored Opt-Outs: Making Private Enforcement of the Securities Laws Even Better, featured in the Winter/Spring 2008 edition of the ABA's Class Action and Derivative Suit Committee Newsletter and Companies in the Cross Hairs: When Plaintiffs Lawyers Choose Their Targets, They Look for These Employment Practices, The Legal Times, February 21, 2005.

Ms. Reiser attended Vassar College, graduating with honors, and earned her J.D. at the University of Virginia School of Law. She has served as a board member at Seattle Works and the Pacific Northwest Ballet.

**Theodore J. Leopold**

Theodore J. Leopold is a Partner at Cohen Milstein, and a member of the firm's Executive Committee. Mr. Leopold, who joined the Firm in 2014, is Chair of the Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practices and Co-Chair of the Consumer Protection practice.

Mr. Leopold's practice is devoted solely to trial work, with a focus on complex product liability, managed care abuse, consumer class actions and catastrophic injury and wrongful death litigation. Mr. Leopold has tried cases throughout the country and has recovered multi-million dollar verdicts, including jury verdicts in the eight-figure and nine-figure amounts.

In his role, Mr. Leopold litigates high-stakes, complex lawsuits on behalf of consumer safety issues, particularly as it relates to product defects, automobile safety and managed care matters. In 2010, he obtained a $131 million jury verdict against the Ford Motor Company, the ninth-largest verdict against an automobile company in U.S. history.

Mr. Leopold was on the steering committee in the National Managed Care Class Action and the Plaintiffs'

settlement committee for the Ford/Firestone National Class Action. Currently, he serves on the Plaintiffs' trial team in the Rail Freight Fuel Surcharge Antitrust Litigation, as lead counsel in the HCA Class Action and as co- lead counsel in the Red Light Class Action.

Currently, Mr. Leopold is litigating the following notable matters:

- HCA: Mr. Leopold is lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Mr. Leopold is lead attorney in the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Mr. Leopold represents relators in a Qui Tam matter involving the anti-kickback statute. The lawsuit alleges that the AIDS Healthcare Foundation, the nation's largest provider of HIV/AIDS medical care, improperly payed illegal kickbacks for patient referrals, and then fraudulently billed government healthcare programs. The case is ongoing.
- Carrier v. Trinity: Mr. Leopold represents the Carrier family in this wrongful death matter. The death occurred as a result of the guardrail safety device failing. Instead of protecting the driver, the guardrail intruded into the passenger compartment of the vehicle and impaling the driver, causing her death. The case is ongoing.

Examples of some of Mr. Leopold's litigation successes are:

- Mincey v. Takata: Mr. Leopold was the lead attorney in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic when the driver's side airbag deployed too aggressively during a vehicle collision. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia. The suit charged that the Takata Corporation, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. Evidence uncovered by Mr. Leopold showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016.
- Caterpillar Antitrust Litigation: Mr. Leopold was co-lead counsel in a class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Mr. Leopold developed the case and led all aspects of the litigation.
- Cole v. Ford Co.: Mr. Leopold was co-trial attorney for the family of former New York Mets infielder Brian Cole who was killed when the Ford Explorer he was in rolled over and he was ejected from his seat. The lawsuit charged that the defective seat belt in his Ford Explorer failed to keep him in his seat. Following a trial jury the jury found for the Cole family in the amount of $131 million.
- Quinlan v. Toyota Motor Corporation: Mr. Leopold was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential.
- Chipps v. Humana: Mr. Leopold tried one of the first managed care cases in the country. The case involved the wrongful denial of physical and occupational therapy for a 6 year old child with cerebral palsy. The jury returned the largest punitive damage award on behalf of an individual in Florida history.
- Salvato v. Marion County Sherriff: Mr. Leopold represented the Salvato family in the wrongful

death case of Joshua Salvato, an unarmed 21-year-old, who was shot and killed by two Marion County Sherriff's deputies in 2014. The jury verdict returned restitution in the amount of $2.3 million, charging one deputy with excess force and the other for willfully inflicting suffering on Mr. Salvato.

Mr. Leopold is the past president of Public Justice, a national organization headquartered in Washington, D.C. that fights for justice through precedent-setting and socially significant individual and class action litigation. He is consistently recognized by leading publications such as Super Lawyers and The Best Lawyers in America. In addition, he has been nominated for "Trial Lawyer of the Year" by the Public Justice Foundation for his ground breaking litigation involving the managed care industry, and his work has been featured in the National Law Journal's "Top Verdicts of the Year."

Mr. Leopold lectures frequently at professional gatherings on such issues as personal injury, product liability, class action litigation, trial tactics and consumer justice. He is also author and co-author of several legal publications, including Florida Insurance Law and Practice (Thomson/West). Additionally, Mr. Leopold has earned the Florida Bar Civil Trial Certification, the highest level of recognition by the Florida Bar for competency and experience within civil trial law.

Mr. Leopold is a graduate of University of Miami, where he received a B.A., and earned his J.D. from Cumberland School of Law, Samford University.

**Carol V. Gilden**

Carol V. Gilden is a Partner in the Securities Litigation & Investor Protection Practice Group at Cohen Milstein. She represents public pension funds, Taft-Hartley pension and health and welfare funds, and other institutional investors in securities class actions, transaction and derivative litigation, and individual actions, as well as in foreign securities litigation. She also litigates other types of complex litigation matters and class action cases in state and federal courts nationwide.

Ms. Gilden began her career at the Securities and Exchange Commission (SEC), in the Enforcement Division, spending five years investigating and litigating cases involving securities fraud. Prior to joining Cohen Milstein in 2007, Ms. Gilden served as the head of the securities class action practice at a prominent mid-sized Chicago law firm and the vice chair of its class action department. Ms. Gilden's guiding principle is that those who commit fraud on the financial markets should be held accountable. She is a strong advocate for investors and pension funds who have been defrauded by deceptive practices that permeate the financial markets. Her special focus is on complex litigation calling for strategic thinking, tenacity and the ability to persevere through the many stages of litigation. Over the course of her 30-year career in the profession, she has successfully litigated and worked on cases that have resulted in aggregate recoveries in excess of several billion dollars for investors.

Ms. Gilden is an accomplished litigator, with extensive experience handling all phases in a case, including investigative, motion practice (lead plaintiff motions, motions to dismiss, class certification and summary judgment), discovery (fact and expert), oral argument, appeal, and settlement negotiations. She has been lead and co-lead counsel in many notable matters, including the MF Global litigation ($90 million settlement), a precedent–setting case in which the U.S. Court of Appeals for the Second Circuit sided with the plaintiffs and held that companies cannot make false or misleading statements in their offering documents, and then hide behind risk disclosures related to those facts in their attempt to escape liability. The National Law Journal singled out Ms. Gilden's work on the case in connection with its selection of

Cohen Milstein as a Hot Plaintiffs' Firm for that year.

Another notable case in which Ms. Gilden served as lead counsel, the IntraLinks Litigation, was one of the first securities class actions to be certified following the Supreme Court's decision in Halliburton II. That case was successfully resolved for $14 million. Other recent cases that she has led and which have been successfully resolved, include the Huron Securities Litigation ($40 million settlement, the ITT Securities Litigation ($16.96 million settlement) and In re RehabCare Group, Inc. Shareholders Litigation, where Ms. Gilden was co-lead counsel and settled the case for a cash payment to shareholders and significant deal reforms including enhanced disclosures and an amended merger agreement.

Ms. Gilden has been on the Executive Committee of other high-profile cases, including the Global Crossing Securities Litigation (settlements of $448 million) and the Merrill Lynch Analyst cases ($125 million settlement), as well as on the litigation team of the Waste Management Litigation ($220 million settlement). Under her leadership, her former firm was an active member of the litigation teams in the AOL Time Warner Securities litigation ($2.5 billion settlement), CMS Securities Litigation ($200 million settlement) and the Salomon Analyst Litigation/In re AT&T ($75 million settlement). Further, Ms. Gilden was lead counsel in an opt-out securities litigation action in connection with the McKesson/HBOC merger, Pacha, et al. v. McKesson Corporation, et al., which settled for a substantial, confidential sum.

Ms. Gilden has earned the trust of her clients who know she will go to the mat for them, from start to finish in their cases. She draws respect from colleagues as well as adversaries who perennially have placed her in the highest ranks of the profession, including being named an Illinois Super Lawyer repeatedly over the last 10 years, "Pension Fund Attorney of the Year, Illinois" by the Global Corporate International Magazine in 2014 and 2015 and being recognized for Excellence in Law by the Worldwide Registry. She has been featured on the cover of the Chicago Lawyer in connection with a feature article on securities class actions. She is a much sought-after speaker at legal and pension fund conferences and has been frequently quoted in the national media on market scandals, recent developments and trends in securities law and high profile securities fraud cases.

Ms. Gilden is currently representing the Chicago Public School Teachers' Pension Fund, along with other institutions, in a high profile lawsuit charging 12 Wall Street banks with conspiring to engineer and maintain a collusive and anti-competitive stranglehold over the market for interest rate swaps in violation of the antitrust laws—an action that harms investors in one of the world's biggest financial markets. She also is representing the Cleveland Bakers and Teamsters Pension and Health and Welfare Funds and other institutions in another, high profile antitrust action alleging that two dozen financial institutions with an inside role at the auction for United States Treasuries conspired to manipulate yields and prices to their own benefit.

In addition, Ms. Gilden serves as co-lead counsel in City of Chicago v. Hotels.com, et al, a high-profile and much-watched lawsuit in Cook County Circuit Court, alleging that online travel companies, Expedia, Hotels.com, Orbitz, Priceline and Travelocity failed to properly remit hotel taxes to the City of Chicago for hotel bookings. Ms. Gilden has argued and won numerous motions at the trial level on behalf of the City of Chicago, including the parties' cross motions for summary judgment, which involved six days of argument on liability and another half day of argument on damages. Settlements have been obtained from three of the four defendant groups. A judgment has been entered in the case on behalf of the City of Chicago for approximately $29 million against the remaining defendant group, Expedia. The case is currently on appeal.

Ms. Gilden served as the first (and to this day, only) woman President of the National Association of Shareholder and Consumer Attorneys, the preeminent trade association for securities class action attorneys, as well as the organization's first woman Treasurer. As President of NASCAT, Ms. Gilden made repeated visits to Capitol Hill advocating for strong investor protection. . She also engaged in outreach to the institutional investor community on needed reforms to reverse the erosion of investor rights. Under Ms. Gilden's leadership, NASCAT also filed amicus briefs in connection with major securities cases before the Supreme Court and other courts. Prior to becoming President, she served as the President-Elect. She continues to serve on NASCAT's Executive Committee.

Ms. Gilden was selected to serve on the Corporate Governance and Markets Advisory Councils to the Board of Directors for the Council for Institutional Investors (CII) during 2013-2015. CII is a nonprofit association of pension and other employee benefits funds, endowments and foundations and a voice for effective corporate governance and strong shareholder rights.

Ms. Gilden regularly lectures at legal conferences around the country on securities litigation and class action law, and is a frequent speaker at institutional investor conferences and symposiums regarding securities law developments, shareholder rights and regulatory reform. She has authored and co-authored numerous scholarly articles and course materials on securities fraud cases, class actions, derivative litigation and related topics.

Ms. Gilden attended the University of Illinois, earning a B.S. in Business Administration, and received her J.D. from Chicago-Kent College of Law, where she graduated with honors and was a member of the Chicago-Kent Law Review.

**Kit A. Pierson**

Kit A. Pierson is a Partner at Cohen Milstein and Co-chair of the firm's Antitrust Practice Group, as well as Co- Chair of the Pro Bono Committee. Under his leadership, the Legal 500 has recognized Cohen Milstein as a Leading Plaintiff Class Action Firm for seven years in a row and Law360 selected the Antitrust Practice Group as a Competition Law Practice Group of the Year in 2013 and 2014.

Mr. Pierson has served as lead or co-lead counsel in many antitrust cases on behalf of the victims of corporations engaged in price-fixing, market monopolization and other unlawful conduct. Prior to joining Cohen Milstein in 2009, Mr. Pierson spent more than 20 years primarily representing defendants in a broad range of complex matters. Some of the companies he represented included Microsoft Corp., 3M Corp. and other major corporations, national associations and individuals in class actions and other antitrust litigation. As a result of his experience as a defense lawyer, Mr. Pierson possesses deep insight into defense strategies, understands the dynamics of the other side and is someone who has earned the respect and credibility of opposing counsel.

Mr. Pierson is a hands-on litigator who has litigated and tried antitrust lawsuits and other complex civil cases in many jurisdictions, helping to win settlements and judgments cumulatively totaling more than $1.5 billion in the past several years. Currently, he is lead or co-lead counsel in many antitrust cases at the firm. Some of his current cases include:

- Domestic Drywall Litigation: Cohen Milstein is co-lead counsel in an antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices. Mr. Pierson

is running the case for Cohen Milstein and in 2015 took the lead for the direct purchaser plaintiffs in arguing against the defendants' summary judgment motions (which were denied by the Court for four of the five defendants). Settlements for $45 million were also reached with two other defendants. The case is ongoing.

- Ductile Iron Pipe Fittings Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings—McWane Inc., Sigma Corporation and Star Pipe Products—and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Pierson is directing the team of attorneys that is now taking and completing fact depositions. The litigation is ongoing.

- Cast Iron Soil Pipe & Fittings Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy and other anticompetitive actions. Mr. Pierson is directing the litigation team, which is currently concluding fact discovery. The litigation is ongoing. Mr. Pierson's successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam.  Four defendants—Bayer, BASF, Huntsman and Lyondell— settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Pierson was one of the trial lawyers for the class, the jury returned a $400 million verdict for the plaintiffs, which is trebled under federal antitrust law to more than $1 billion, the largest verdict in the country in 2013, as reported by the National Law Journal. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, and the case against Dow Chemical was settled for $835 while the matter was pending before the United States Supreme Court (resulting in a total recovery of $974.5 million in the case).

- Community Health Care System Litigation: Cohen Milstein is co-counsel representing an emergency room doctor and nurse in a whistleblower lawsuit alleging Community Health Care System defrauded the federal government in connection with health care bills. Cohen Milstein was co-counsel representing an emergency room doctor and nurse who brought claims against CHC under the False Claims Act. Mr. Pierson led Cohen Milstein's team in the case, which was brought under the False Claims Act. The case was resolved for $94 million.

- Electronic Books Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Apple and five of the leading U.S. publishers conspired to raise the retail prices of e-books. Mr. Pierson led the Cohen Milstein team, which secured class certification, defeated motions to exclude the class expert, and successfully moved for exclusion of most of Apple's expert testimony.  The five publishing defendants settled for $166 million and a settlement was reached with Apple shortly before trial for an additional $450 million.

- Guantanamo Litigation: Mr. Pierson represented Alla Ali Bin Ali Ahmed, a young man who had been arrested with many others while residing in a house in Pakistan and was then incarcerated in Guantanamo without a judicial hearing for more than seven years. After filing a habeas corpus petition, Mr. Pierson represented Mr. Ahmed at a multi-day evidentiary hearing before a United States District Court judge. At the conclusion of the hearing, the District Court ruled that the evidentiary record did not support Mr. Ahmed's detention and ordered that he be released from Guantanamo and returned to his home country.

Mr. Pierson was named one of the 500 leading lawyers in the United States in 2013 and 2014 by LawDragon 500 and was one of six lawyers selected by Law360 in 2014 as an MVP in the field of competition law. A champion for civil rights, he is a member of the Board of Trustees for the Lawyers' Committee for Civil Rights Under the Law, a national organization, and a Member of the ACLU of Maryland's Committee on Litigation and Legal Priorities. Mr. Pierson attended Macalester College, earning a B.A., magna cum laude, in Economics and Political Science, and graduated from the University of Michigan Law School, magna cum laude, where he was a Note Editor of the Michigan Law Review and a member of the Order of the Coif. Following law school, he served as a Law Clerk for the Honorable Harry T. Edwards, United States Court of Appeals for the District of Columbia Circuit, from 1983-1984 and as a law clerk for the Honorable Chief Judge John Feikens, United States District Court for the Eastern District of Michigan, from 1984-1985.

**J. Douglas Richards**

J. Douglas Richards is a Partner in the Antitrust practice group, having joined the firm in 2009. Mr. Richards has had a long, extensive and eclectic career, litigating on behalf of defendants for 16 years, serving as a government regulator at the Commodity Futures Trading Commission ("CFTC") and representing plaintiffs for the past 16 years. As a result, he brings a global understanding of antitrust litigation.

Mr. Richards' extensive experience litigating both Commodity Exchange Act and Sherman Act claims and his expertise in the antitrust class action field is widely recognized. He was named one of twenty-two antitrust "Litigation Stars" nationally, as one of the world's leading competition lawyers by The International Who's Who of Competition Lawyers and Economists (2014), and has received the highest available peer ranking for many years from Martindale-Hubbell. Mr. Richards has been appointed co-lead counsel in numerous large antitrust class actions in the Southern District of New York (SDNY) and nationally. Mr. Richards has argued dozens of appeals, among them a number of antitrust matters that have helped shape the landscape of antitrust law, including Bell Atlantic v. Twombly, 550 U.S. 544 (2007) before both the Second Circuit and the United States Supreme Court, and Second Circuit cases like In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370 (2d Cir. 2005), cert. denied, 127 S.Ct. 3001 (2007), and Kruman v. Christie's Int'l PLC, 284 F.3d 384 (2d Cir. 2002).

Mr. Richards possesses extensive experience in the Commodity Exchange Act field, having served as Deputy General Counsel of the Commodity Futures Trading Commission ("CFTC") from 1997 to 2000. During that time, Mr. Richards assumed responsibility for all litigation by and against the CFTC (including personally arguing numerous appeals on behalf of the CFTC), and for two of those years simultaneously managed the CFTC's adjudicatory functions. In 1999, the Commission awarded Mr. Richards a Special Service Award for performing those two roles at the same time and successfully eliminating a long-standing backlog of Commission adjudicatory matters.

Mr. Richards is a leading lawyer nationwide in pharmaceutical antitrust litigation, a specialization that requires a deep understanding of the drug industry, patent law, FDA regulation and trade regulation. Starting in 2000 with the Cipro litigation, Mr. Richards was co-lead counsel on several antitrust lawsuits challenging the pharmaceutical industry's practice known as pay-for-delay, or reverse payments. Many of those cases hit a roadblock in the courts, when the courts adopted a scope of patent rule. Following the Supreme Court's decision in Actavis in 2012, the Supreme Court overruled the legal standards that had been adopted in the lower courts of appeals and opened the door for further litigation. In the wake of Actavis, Mr. Richards leads a team of litigators that have filed new pay-for-delay reverse payments cases.

Mr. Richards graduated with honors from the University of Chicago, majoring in Economics, and earned his J.D. from Harvard Law School. Prior to joining Cohen Milstein, Mr. Richards served as head of the antitrust class action group at two major plaintiffs firms and, before that and his government service at the CFTC, Mr. Richards served as a litigation partner in a boutique law firm. He is a noted speaker at professional conferences, discussing the trends in commodities and pharmaceuticals antitrust law. He has written extensively about antitrust laws, including chapters for books edited by the American Antitrust Institute covering issues of class action practice, law reviews, and other scholarly publications.

## Karen L. Handorf

Karen L. Handorf is a Partner at Cohen Milstein, and chair of the Firm's Employee Benefits (ERISA) Practice Group. She joined the Firm in 2007, following a distinguished career in government service, litigating ERISA cases in federal appellate and district courts. In her role as head of the Employee Benefits Practice, Ms. Handorf represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases in the district courts and on appeal.

Ms. Handorf is involved in litigation and appeals involving a broad range of employee benefits issues including church plans. In Kaplan v. St. Peter's Healthcare System, she represents a class of 2,800 participants in an alleged church plan, a case in which the Court of Appeals upheld the rights of St. Peter's pension fund participants to a fully funded pension plan. In addition, she currently leads a team of litigators in a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. Ms. Handorf is overseeing and developing these cases.

Prior to joining Cohen Milstein, Ms. Handorf was an attorney for the U.S. Department of Labor (DOL), where she litigated ERISA cases in federal appellate and district courts for 25 years. While at the DOL, she played a major role in formulating the Government's position on ERISA issues expressed in amicus briefs filed by the Solicitor General in the United States Supreme Court.

She began her ERISA career as a trial attorney in the Plan Benefits Security Division (PBSD), where she litigated actions brought by the Secretary of Labor for violations of the fiduciary standards of ERISA and handled appellate matters. In 1989, she was appointed Counsel for Decentralized and Special Litigation responsible for supervising the DOL's ERISA appellate litigation, district court litigation brought by regional offices of the Solicitor of Labor and administrative litigation involving the civil penalty provisions of ERISA. At the DOL, Ms. Handorf established and supervised PBSD's amicus brief writing program, which addressed a wide range of novel and difficult ERISA issues in both state and federal court. In 2001, she was appointed Deputy Associate Solicitor of PBSD. As the Deputy Associate Solicitor, she was responsible for overseeing litigation brought by the Secretary of Labor and legal advice provided to the Employee Benefit Security Administration, which administers Title I of ERISA. In 2005, she returned to her position as supervisor of the ERISA appellate and amicus brief writing program, serving as Counsel for Appellate and Special Litigation.

Currently, Ms. Handorf is litigating a series of church plan cases, including:

- Saint Peter's Healthcare System Church Plan Litigation: Cohen Milstein is co-lead counsel in Kaplan v. St. Peter's Healthcare System alleging that the defendants wrongfully claim their pension plan is exempt from ERISA protection. Ms. Handorf argued the case before the U.S. Court of Appeals for the Third Circuit, which unanimously ruled that St, Peter's pension plan does not qualify as a

"church plan." The Third Circuit further noted that as of 2012, religiously affiliated hospitals accounted for seven of the nation's 10 largest nonprofit healthcare systems and that to construe the church plan exemption to apply to such hospitals would defeat the purpose of ERISA. The ruling is likely to set the tone for other church plan litigation.

Her past successes include:

- Goodyear Litigation: Ms. Handorf represented a class of 30,000 Goodyear union retirees in Redington v. Goodyear (N.D. Ohio), in which Cohen Milstein obtained approval of a class action settlement between the retirees, Goodyear and the United Steel Workers, resulting in the establishment of a $1 billion trust through which retiree health care benefits will be provided in the future.

Ms. Handorf is a recipient of the Department of Labor Distinguished Career Service Award, and received Exceptional Achievement Awards for her work on ERISA 401(k) plan remedies, the amicus brief in the Enron litigation, retiree health care, the amicus program in general, the appellate brief in the Department's Tower litigation, termination annuities litigation and multiple employer welfare arrangement (MEWAs) litigation.

Ms. Handorf has been recognized for her expertise by her colleagues in the ERISA bar, who named her a Fellow of the American College of Employee Benefits Counsel. She is a frequent speaker on ERISA issues for the ABA, various bar associations and private seminars, and serves as plaintiffs' co-chair of preemption subcommittee of the Employee Benefits Committee of the ABA's Labor Section. In 2016, she was named to the Best Lawyers in America.

Ms. Handorf attended the University of Wisconsin-River Falls, where she received a B.S. in Speech and History, and earned her law degree from the University of Wisconsin Law School.

**Martha Geer**

Judge Martha Geer is a Partner at Cohen Milstein and will be head of the firm's new Raleigh, North Carolina office. She joined the firm in May 2016 after a distinguished career on the North Carolina Court of Appeals. Judge Geer's background – almost two decades as a respected litigator and appellate advocate handling complex civil litigation followed by more than 13 years as a rarely-reversed appellate judge – is a composite of experience few attorneys have. Her combined litigation and judicial experience gives her a unique perspective and insight that will benefit her clients at the trial level and on appeal. In returning to private practice, Judge Geer will practice across all of the firm's areas of expertise, working at both the trial and the appellate levels.

Judge Geer was first elected to the North Carolina Court of Appeals in 2002, receiving more than a million votes statewide. In 2010, because of her reputation as a fair and impartial judge, she garnered bipartisan support that resulted in her winning re-election by a 20-point margin. During her tenure on the Court, Judge Geer has heard more than 3,800 appeals, authored more than 1,350 opinions, and had her opinions reversed less than 2% of the time. As one of the most experienced Court of Appeals judges, Judge Geer has been responsible for hearing and deciding appeals on a wide variety of issues involving almost every area of law. She also served on the Court's Executive Committee, which works with the Chief Judge in administration of the Court. During her service on the Court, she was named Outstanding Appellate Judge by the North Carolina Advocates for Justice.

Judge Geer's time on the bench has enhanced her ability to understand what judges – trial and appellate – need and want to know in order for clients to prevail at both the trial and appellate levels. Because of the similarity of intermediate appellate courts across jurisdictions, her experience and knowledge gained in North Carolina is valuable in litigation and appeals pending in all jurisdictions including the federal courts, making her a unique resource for clients.  In addition, Judge Geer's reputation as an intelligent, practical, fair, and unbiased judge increases her credibility when arguing before other judges whether at the trial level or on appeal.

Illustrating the diversity of practice areas involved in her opinions, in Boyd v. Robeson County, Judge Geer wrote an opinion holding in a case of first impression for North Carolina that the office of a county sheriff is a "person" that may be sued under 42 U.S.C. § 1983, allowing an inmate to sue for violation of her Eighth Amendment rights when a jail failed to provide medical treatment after her appendix burst.  In another opinion authored by Judge Geer, Diggs v. Novant Health Inc., the Court held, again in a case of first impression, that a hospital could be liable under an apparent agency theory for the negligence of independent contractor anesthesiologists.  In Mason v. Dwinnell, Judge Geer's opinion held that a trial court had authority, under the federal constitution, to award custody of a child, including visitation, to a same-sex domestic partner who was not a legal parent of the child.   Judge Geer's opinion in Blinson v. State upheld the constitutionality, under the federal and state constitutions, of economic tax incentives granted to corporations in order to bring jobs to the State.

Prior to going on the bench, Judge Geer was a partner with two leading North Carolina plaintiffs' firms and was one of the founders of the second firm.  She was a highly respected trial and appellate litigator known for obtaining cutting-edge and precedent-setting victories in a diverse set of practice areas, including among others, securities litigation, labor and employment law, ERISA, antitrust and trade regulation, commercial litigation, consumer protection, and constitutional and civil rights litigation (including suits against the State, sheriffs, counties, and municipalities).  She was selected for inclusion in Best Lawyers in America, and recognized by the journal Business North Carolina as one of North Carolina's "Legal Elite" – a list of the top 200 lawyers in the State.

Judge Geer began her legal career with Paul Weiss Rifkind Wharton & Garrison where she was taught that a bright, hardworking lawyer, willing to learn, can handle any type of litigation – a philosophy that led to her eclectic practice upon leaving Paul Weiss.  While at Paul Weiss, she had the privilege of working with nationally-respected litigators, including legal icons such as Arthur Liman, on high profile cases including the litigation arising out of the attempt to corner the silver market in 1979-1980.  She also gained experience defending shareholder derivative and corporate takeover litigation.   Judge Geer did substantial pro bono work, including being part of a team that obtained a stay of execution on behalf of a mentally retarded man on death row who was subsequently shown to be innocent by DNA testing, once such testing finally became available.  That work led to her being one of the recipients of the 2004 Dybwad Humanitarian Award, the highest honor of the American Association on Intellectual and Developmental Disabilities.

As both a judge and a lawyer, Judge Geer has worked to improve the quality of legal representation through service on the Appellate Specialization Committee of the North Carolina State Bar, the Appellate Rules Committee of the North Carolina Bar Association, the Board of Governors of the North Carolina Advocates for Justice, and various committees of the American Bar Association and other bar association groups.  She is also a highly sought after teacher of continuing education programs for both other judges and lawyers.

Judge Geer received her B.A. summa cum laude from Bryn Mawr College and her J.D. with high honors from the University of North Carolina School of Law where she was a Morehead Fellow and served as Managing Editor of the North Carolina Law Review.

**Geoffrey Graber**

Geoffrey Graber is a Partner at Cohen Milstein and a member of the Consumer Protection practice group. In this role, Mr. Graber specializes in complex litigation aimed at protecting consumers deceived and harmed by consumer service providers such as banks, insurance and health care companies. In addition, he is a member of the Commercial Contingency practice and also represents whistleblowers under the False Claims Act.

Currently, Mr. Graber is litigating the high-profile lawsuit arising out of the massive data breach at Anthem Inc. that compromised the personal identification and health information of more than 80 million customers of the health care company. The lawsuit alleges the company failed to take adequate measures to ensure its data systems were protected, failed to take available steps to prevent and stop the breach from happening, and failed to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' financial accounts and personal data. Mr. Graber is involved in all aspects of the litigation.

Prior to joining the firm in 2015, Mr. Graber served as Deputy Associate Attorney General and Director of the Residential Mortgage-Backed Securities (RMBS) Working Group at the United States Department of Justice (DOJ).

As Director of the RMBS Working Group, Mr. Graber oversaw the DOJ's nationwide investigation into the packaging and sale of mortgage-backed securities leading up to the financial crisis.  He supervised and coordinated the efforts of over 100 prosecutors, lawyers, investigators and analysts from the DOJ.  Mr. Graber also worked closely with senior officials from the United States Securities & Exchange Commission, the Department of Housing and Urban Development, the Inspector General's Office for the Federal Finance Agency and the offices of more than 10 state attorneys general.

The investigations overseen by Mr. Graber ultimately recovered more than $36 billion.  These recoveries include the record-breaking $16.65 billion settlement reached in August 2014 with Bank of America – the largest settlement with a single entity in U.S. history – as well as settlements with Citigroup ($7 billion) and JP Morgan ($13 billion).

Earlier in his tenure at the DOJ, Mr. Graber served as Counsel in the Civil Division, where he proposed and then led the three-year investigation of Standard & Poor's and its ratings of structured finance products from 2004 to 2007.  As the lead lawyer overseeing the investigation, he supervised a team of over 50 prosecutors, DOJ lawyers, investigators and analysts.  The investigation, which made groundbreaking use of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), resulted in the largest enforcement action filed by the United States concerning the financial crisis (United States v. Standard & Poor's).

Before joining the Department of Justice, Mr. Graber was an associate at a top-tier defense firm, where he defended Fortune 500 companies and their officers and directors in securities and derivative suits, consumer class actions and government investigations.  Mr. Graber also devoted substantial time to pro

bono representation of indigent individuals and families in civil rights actions against local law enforcement.

In 2014, Mr. Graber received the Attorney General's Distinguished Service Award for his work relating to the $13 billion settlement with JP Morgan – including, at the time, the largest FIRREA penalty recovered by the Department of Justice. In October 2015, he again received the Attorney General's Distinguished Service Award for his work on the successful investigation of and litigation against S&P.

Mr. Graber received his undergraduate degree in Philosophy from Vassar College, and earned his law degree from the University of Southern California Law School, where he served as the Managing Articles Editor on Southern California Law Review.

**Leslie M. Kroeger**

Leslie M. Kroeger is a Partner at Cohen Milstein, and a member of the firm's Catastrophic Injury & Wrongful Death, Managed Care Abuse, and Unsafe & Defective Products practice groups. Ms. Kroeger joined Cohen Milstein in January 2014 and is based in the firm's Florida office. She specializes in complex, high-profile product liability, wrongful death, and managed care abuse litigation.

Ms. Kroeger is a highly accomplished civil trial attorney who began her legal career in the courtroom as an Assistant Public Defender and later became an Assistant State Attorney in Miami-Dade County, Florida. She then moved into private practice where she continues to handle a variety of complex civil litigation matters both in the state of Florida and nationwide.

Currently, Ms. Kroeger is litigating the following notable matters:

- HCA: Cohen Milstein is co-lead counsel in a class action lawsuit alleging that two Florida women and others like them were billed inflated and exorbitant fees for emergency radiology services covered in part by their Florida Personal Injury Protection (PIP) insurance. Ms. Kroeger is involved in all aspect of the litigation charging HCA hospitals with gouging patients with PIP coverage. The case is ongoing.
- United States of America, et al. v. AIDS Healthcare Foundation, Inc.: Cohen Milstein represents three former managers of the AHF in a Federal and Florida State Whistleblower Act claims against the nation's largest provider of HIV/AIDS medical care for illegal patient referral kickbacks. Ms. Kroeger has been involved in all aspects of the litigation. The case is ongoing.

Ms. Kroeger has successfully litigated the following lawsuits:

- Mincey v. Takata: Cohen Milstein was lead counsel in a lawsuit brought on behalf of Patricia Mincey and her family, a Florida woman who sustained catastrophic injuries that rendered her a quadriplegic in 2014 when the driver's side airbag in her Honda Civic deployed too aggressively during a collision due to a product defect. Patricia Mincey passed away in early 2016 due to complications from her quadriplegia casued by the problematic airbag. The suit charged that Takata, the manufacturer of the airbag system, knew of the airbag defect and hid the problem from consumers. Evidence uncovered by the firm showed that Takata concealed the defective nature of the airbag system for more than a decade. The case was resolved in July 2016
- Quinlan v. Toyota Motor Corporation: Cohen Milstein was lead counsel in a product liability case filed against Toyota Motor, alleging that manufacturing defects in the defendant's car caused the

car being driven by the plaintiff Quinlan to suddenly accelerate and go out of control, resulting in catastrophic injuries that left him a quadriplegic. The defendant entered into a settlement, which is confidential. Ms. Kroeger was engaged in all aspects of the litigation.

- Love v. Walmart: Ms. Kroeger represented individual female Walmart employees in a lawsuit alleging that the company discriminated against them on the basis of their sex. The defendant reached a confidential settlement with the plaintiffs.
- Caterpillar Antitrust Litigation: Cohen Milstein was co-lead counsel in a nationwide product liability class action lawsuit alleging Caterpillar sold diesel engines with defective exhaust emissions system that resulted in power losses and shutdowns. Ms. Kroeger was involved all aspects of the litigation.

Ms. Kroeger has achieved an AV rating from Martindale-Hubbell, and has been recognized by Best Lawyers in the field of Product Liability Litigation – Plaintiffs. She was recently named to Law360's Product Liability Editorial Advisory Board. She speaks frequently on strategies and tactics for addressing the standards for expert witness testimony in light of the Supreme Court's Daubert ruling.

Ms. Kroeger currently serves as the Secretary on the Executive Committee of the Florida Justice Association and is past Chair of the Women's Caucus. She serves on the Florida Bar Professional Ethics Committee. She is Past President of the Martin County Chapter of the Florida Association for Women Lawyers and is on the Board of Directors of Guardians for New Futures; as well as serving as an active member of The Florida Bar, the American Association for Justice, the Palm Beach County Bar Association, the Martin County Bar Association, the Palm Beach County Justice Association, and the Florida Association for Women Lawyers, Martin County Chapter.

Ms. Kroeger graduated with high honors from the University of Tennessee at Knoxville, and obtained her law degree from the Cumberland School of Law, Samford University. Following law school, she served in a trial clerkship in Miami.

**Victoria S. Nugent**

Victoria S. Nugent is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. She has been with the Firm since 2000 and her work has focused on consumer protection and public health and safety.

Ms. Nugent began at Cohen Milstein in the Firm's Consumer Protection & Unsafe Products Practice, where she focused on consumer protection and public health litigation. Past cases include In re StarLink Product Liability Litigation, in which she represented farmers suing Aventis CropScience after an unapproved variety of genetically modified corn was detected in the U.S. corn supply and drove down prices for all U.S. corn exports. More than $100 million was recovered for the class in a landmark settlement. In 2009 and 2010, Ms. Nugent filed suit on behalf of consumers challenging the post-transaction marketing practices (also sometimes called "negative option marketing") and in two significant rulings persuaded federal courts in California and Washington that these practices run afoul of state consumer protection laws. Ms. Nugent has argued cases before the high courts of Georgia, Nebraska and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals.

Ms. Nugent joined the Firm's Public Client Practice Group in 2011, where she is currently, representing several states in investigations into Medicaid and consumer fraud by numerous for-profit nursing home chains that promised, but failed to provide, basic care to their elderly residents. Ms. Nugent has been

overseeing all aspects of these investigations.

Ms. Nugent has represented public clients on other matters involving consumer and financial fraud.  Some of her successes include:

- Represented the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers and  the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Represented the state of Nevada in investigations into the conduct of Deutsche Bank and the Royal Bank of Scotland, two of the investment banks that encouraged and enabled the predatory lending practices of retail lenders.  Ms. Nugent helped develop the State's legal theories and claims and handled numerous aspects of these investigations.

Prior to joining the Firm, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization. There, she worked on many legislative and regulatory campaigns addressing issues that ranged from automobile safety to international trade policy.  After graduating from law school in 1998, Ms. Nugent received a two-year fellowship sponsored by the National Association for Public Interest Law (NAPIL).  As a NAPIL Fellow, she worked at Trial Lawyers for Public Justice, where she helped develop and prosecute impact litigation in the areas of arbitration, banking, credit and insurance.

Ms. Nugent has served on the D.C. Bar Committee on the Rules of Professional Conduct since 2012.

**Benjamin D. Brown**

Benjamin D. Brown is a Partner at Cohen Milstein, and a member of the Antitrust Practice Group, having joined the firm in 2005. Mr. Brown, who previously served in the Antitrust Division of the United States Department of Justice, brings to his role extensive experience leading complex litigation, particularly antitrust class actions.

Mr. Brown has been appointed by federal courts to serve as co-lead counsel or on steering committees for plaintiffs in numerous important matters, such as In re Plasma-Derivative Protein Therapies Antitrust Litigation (N.D. Ill.); Allen, et al. v. Dairy Farmers of America, Inc. (D. Vt.); and In re Puerto Rican Cabotage Antitrust Litig. (E.D. Ca.). He has led cases through trial and argued appeals and stands ready to take cases through to the finish line.

Mr. Brown is also a leader in the area of takings cases, claims that are brought under the Fifth Amendment of the U.S. Constitution for the unconstitutional taking of property without compensation. He also represents individuals or groups in litigations and confidential arbitrations involving complex commercial disputes, particularly those involving regulated markets.

Currently, Mr. Brown is litigating a number of large, complex antitrust lawsuits, where he plays a prominent role and leads all aspects of the litigation, from deciding on the claims to be brought, the strategy to be pursued and charting the course of the case. Notable matters include:

- Mixed Martial Arts (MMA) Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action on behalf of elite MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting Championship or "UFC" – has unlawfully monopolized the markets for promoting live professional

MMA bouts and for purchasing the services of elite professional MMA fighters. The district court denied the defendant's motion to dismiss the case in September 2015 and discovery is ongoing. Mr. Brown is co-lead in the class action lawsuit.

- Northeastern Dairy Antitrust Litigation: Cohen Milstein is co-lead counsel in a class action lawsuit on behalf of Northeast dairy farmers against Dairy Farmers of America (DFA) and Dean Foods Company charging a conspiracy to reduce competition for raw milk and that DFA monopolized the milk market in the Northeast, forcing dairy farmers to market their milk through DFA or its affiliate Dairy Marketing Services (DMS). Dean has settled its liability and the case against DFA is ongoing.

- People of the State of California v. American Express Unfair Competition Litigation: Cohen Milstein is counsel for the City of San Francisco in litigation alleging that American Express, by prohibiting merchants from steering consumers to less costly payment methods (including debit cards and cash), is responsible for unlawful overcharges borne by retailers and, indirectly, all California consumers. Mr. Brown is lead outside counsel to the city in the ongoing litigation.

Mr. Brown is also currently litigating a number of takings lawsuits, including the following notable matters:

- Ideker Farms, et al. v. the United States of America: Cohen Milstein represents Ideker Farms and more than 400 other plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers without any compensation in violation of the takings clause of the Fifth Amendment. Mr. Brown has been directing and leading all aspects of the litigation for the Cohen Milstein team. The case is set to go to trial in 2017.

- Big Oak Farms, Inc., et al. v. the United States of America: Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land without providing just compensation. Mr. Brown has been directing and leading all aspects of the litigation.

Mr. Brown also represents classes or individual corporations in the following commercial disputes:

- DairyAmerica Antitrust Litigation: Cohen Milstein is sole lead counsel of a putative class of dairy farmers who allege that defendants fraudulently misreported nonfat dry milk prices to the National Agricultural Statistics service, resulting in artificially depressed raw milk prices and unfairly depriving American dairy farmers of tens or hundreds of millions of dollars. Mr. Brown directs and leads all aspects of the litigation.

- Inmate Calling Services Provider Litigation: Cohen Milstein is on the executive committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws. Mr. Brown leads the Cohen Milstein team on these class action lawsuits. The litigation is ongoing.

- College Media Commercial Litigation: Cohen Milstein represents an e-commerce business in a breach of contract action against a former partner business. Mr. Brown leads that litigation, which is now pending in federal bankruptcy court.

The Legal 500 has recognized Mr. Brown as one of the nation's leading class action antitrust attorneys and he has been listed as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators by Benchmark Litigation, recognizing his writing, his depositions and his arguments in court. He is a frequent panelist at legal industry gatherings and is a recognized expert on antitrust litigation whose opinions on the newest

developments and trends in antitrust litigation are often quoted in the media. Mr. Brown is a contributing author of the ABA's Antitrust Class Actions Handbook, and has served as a state editor for the ABA's Survey of State Class Action Law.  He authored several chapters on private antitrust recovery actions for the Global Competition Review's Antitrust Review of the Americas, and co-authored with fellow partner Douglas Richards, "Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard," Rutgers Law Journal (Vol. 41).

Mr. Brown joined Cohen Milstein's Antitrust Practice following four years as a trial attorney with the Antitrust Division of the United States Department of Justice.  At the Department of Justice, Mr. Brown led and assisted in numerous investigations, litigations and trials involving antitrust activity and mergers. Mr. Brown also served as a Special Assistant United States Attorney in the Eastern District of Virginia, where he prosecuted criminal cases. Prior to serving in the U.S. Department of Justice, Mr. Brown was in private practice, where he counseled defendants in antitrust litigation matters. This experience has provided him with insights into defense strategies and has earned him the respect of defendants' counsel.

Mr. Brown attended the University of Wisconsin – Madison, where he graduated Phi Beta Kappa, majoring in Philosophy, and earned his J.D, from Harvard Law School, graduating cum laude. He served as Law Clerk to the Hon. Chief Judge Juan R. Torruella, U.S. Court of Appeals for the First Circuit. The United States District Court for the District of Columbia has honored Mr. Brown for his outstanding commitment to pro bono litigation.

### Manuel J. Dominguez

Manuel J. ("John") Dominguez is a Partner at Cohen Milstein, and a member of the Antitrust practice group. Mr. Dominguez specializes in complex, multi-district antitrust litigation, representing individuals and businesses that have been harmed by anticompetitive business practices. Mr. Dominguez, in addition, plays a significant role in the practice group identifying and investigating potential antitrust violations.

Mr. Dominguez has been litigating complex antitrust and consumer cases for more than 20 years, and has served as lead counsel and handled numerous high-profile, high-stakes cases during that time.  His efforts have enabled aggrieved businesses and consumers to recover hundreds of millions of dollars.  He litigated and resolved cutting-edge litigation against AOL for allegedly unlawfully collecting the Internet search data of millions of users and making their private information available for downloading by the general public.  Earlier in his career, Mr. Dominguez litigated a highly significant securities matter that settled for hundreds of millions of dollars involving Symbol Technologies Inc., a barcode technology maker that intentionally overstated its revenues through premature revenue recognition, improper consignments arrangements and channel stuffing.

Mr. Dominguez, who joined Cohen Milstein in 2011, has assisted the firm in developing its investigatory and case development groups.   He is a hands-on litigator who is currently representing plaintiffs in antitrust litigation involving alleged price-fixing and anticompetitive monopolistic practices in various industries including truck transmissions, medical products, auto industry and finance, among others. Although Mr. Dominguez's practice is focused on antitrust litigation, he continues to be involved in securities and consumer matters.

Mr. Dominguez is currently representing direct purchasers in a series of Auto Parts antitrust class action lawsuits being litigated in the Eastern District of Michigan in Detroit.  These cases stem from the largest

antitrust investigation in the history of the U.S. Department of Justice, with over $1 billion in fines and multiple criminal indictments. Two of the cases, Wire Harnesses and Bearings, are scheduled to be the first cases to be considered for certification by the court.   In these cases, Mr. Dominguez has significant responsibilities, including leading discovery efforts against defendants and assisting experts.

Mr. Dominguez is also co-lead counsel in the Truck Transmissions Antitrust Litigation alleging that Eaton Corp., the largest manufacturer of truck transmissions, and the four major truck manufacturers conspired to create a monopoly for transmissions used in heavy-duty trucks. Mr. Dominguez responsibilities include arguing all the major motions and deposing and defending nearly all the expert depositions in this matter. The case is currently up on appeal in the Third Circuit.

Mr. Dominguez began his career as an Assistant Attorney General serving in the Attorney General of the State of Florida's Department of Economic Crimes.  In that role, he represented the state of Florida in prosecuting corporations and business entities for alleged violations of Florida's RICO, antitrust and Unfair and Deceptive Trade Practices Act statutes.  Following his service as an Assistant Attorney General, Mr. Dominguez entered private practice, litigating and trying numerous cases involving unfair trade practices and other alleged violations of state and federal consumer protection statutes.  In 2000, he joined a premier class action firm focused on antitrust and securities litigation; there, he rose to the head of the firm's antitrust and consumer practice groups.  Mr. Dominguez recently won a significant motion to dismiss in a non-class action antitrust action brought on behalf of Doctors and practice groups against a major insurance company and hospital in Florida in Omni Healthcare, Inc. v. Health First, Inc. The issues presented and argued were issues of first impression for the middle district of Florida.

Mr. Dominguez is also nationally recognized for his knowledge of managing the discovery process in today's increasingly technologically complex business environment.  He has made presentations on topics such as the impact of the new e-discovery amendments to the Federal Rules of Civil Procedure, and has also participated in The Sedona Conference® Working Group 1, an organization at the vanguard of developing standards for electronic discovery.

Mr. Dominguez formerly served as the Chair for the Antitrust, Franchise & Trade Regulation Committee of the Florida Bar's Business Law Section. Mr. Dominguez previously served as the Vice Chair of this committee and was a member of the Executive Council of Florida Bar's Business Law Section. He is also co-author of an article that appeared in the Florida Bar Journal, "The Plausibility Standard as a Double Edge Sword: The application of Twombly and Iqbal to Affirmative Defenses" (Vol. 84, No. 6).

Mr. Dominguez received a B.A. from Florida International University, and earned his J.D. from the Florida State University Law School, graduating with honors. In law school, he was a member of the Transnational Journal of Law and Policy.

### Brent W. Johnson

Brent W. Johnson is a Partner at Cohen Milstein and a member of the Antitrust practice group. Along with Daniel Small, Mr. Johnson leads the group's new case investigations.

Mr. Johnson has considerable expertise in complex antitrust litigation and class actions, representing businesses and individuals as plaintiffs in federal and state civil actions with a focus on multi-district class actions. His class action experience spans multiple industries, such as motion pictures, dairy, building materials, chemicals, automotive parts, processed foods, private equity, adhesives and others. His

practice encompasses a broad variety of antitrust claims, including Sherman Act Section 1 restraints of trade and Section 2 monopoly and monopsony claims. He has argued before federal district courts and state trial and appellate courts and brought cases to trial.

Mr. Johnson's recent successes include the following notable antitrust class actions:

- Northeast Dairy: In Allen vs. Dairy Farmers of America (D. Vt.), Mr. Johnson serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services who fixed the price of raw milk, allocated markets and agreed not to solicit dairy farmers to supply raw milk. Defendant Dean Foods Company settled for $30 million, and the Court has preliminarily approved a $50 million settlement with the remaining defendants, DFA and DMS.
- Bulk Bleach: In Grand Strand v. Oltrin (D. S.C.) Mr. Johnson was personally appointed co-lead Class Counsel and led the CMST team in representing a class of direct purchasers of bulk bleach, including municipal water authorities and others, against that product's manufacturers who engaged in an illegal market allocation agreement. The Court approved a settlement worth nearly all of the class's single damages and remarked that the case had been "skillfully handled."
- Urethanes (Polyether Polyols): Mr. Johnson serves as co-lead counsel in In re Urethane Antitrust Litigation (D. Kan.), on behalf of a certified class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. In the litigation, multiple defendants collectively settled for over $130 million, and a jury verdict of $1.1 billion was secured against Dow Chemical, the final defendant, in 2013. Dow ultimately settled for $835 million while the case was on appeal before the Supreme Court, bringing the total recovery to $974 million – nearly 250% of the damages found by the jury.
- Blue Cross Blue Shield of Michigan: Mr. Johnson serves as co-lead counsel in The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan (E.D. Mich.), representing a class of purchasers of hospital services against Blue Cross Blue Shield of Michigan for agreeing to MFN provisions in its contracts with hospitals throughout Michigan that required those hospitals to charge other insurers as much or considerably more for services provided to class members. The Court has finally approved a settlement with BCBSM for nearly $30 million.

Currently, Mr. Johnson is litigating the following antitrust class actions:

- VFX/Animation Workers: In In re Animation Workers Antitrust Litigation (N.D. Cal.), Mr. Johnson serves as co-lead counsel representing a class of animation and visual effects workers in a lawsuit alleging that the defendants, who include Pixar, Lucasfilm Ltd. and DreamWorks Animation, secretly agreed not to solicit class members and to coordinate on compensation.
- Drywall: Mr. Johnson serves as co-lead counsel in In re Domestic Drywall Antitrust Litigation (E.D. Pa.), representing a class of direct purchasers of drywall against drywall manufacturers for price-fixing. The Court has preliminarily approved a settlement of $40 million with a major defendant, and denied summary judgment to four defendants. The case is ongoing.
- Automotive Parts: In In re Automotive Parts Antitrust Litigation (E.D. Mich.), Mr. Johnson represents direct purchasers of wire harnesses, bearings and other automotive parts who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry.

Prior to joining Cohen Milstein in 2009, Mr. Johnson practiced at one of the world's premier full-service global law firms, where he focused on antitrust litigation. Some of Mr. Johnson's matters included:

- Feesers, Inc. v. Michael Foods, Inc. and Sodexho, Inc. (M.D. Pa.): Mr. Johnson was a member of the successful trial team that represented Michael Foods, a manufacturer of processed egg products and refrigerated potato products, in a three week trial of a Robinson-Patman Act action brought by a broad-line distributor of food products.
- Dahl, et al. v. Bain Capital, et al. (D. Mass.): Mr. Johnson represented The Carlyle Group in a class action where plaintiffs alleged collusion among certain private equity firms and investment banks in specific going-private transactions in violation of Section 1 of the Sherman Act.
- In re Aftermarket Filters Antitrust Litigation (N.D. Ill.): Mr. Johnson represented Champion Laboratories, a manufacturer of aftermarket automotive filters, in a class action where plaintiffs alleged a conspiracy among manufacturers to fix prices in violation of Section 1 of the Sherman Act.
- National Laser Technology, Inc. v. Biolase Technology, Inc. (S.D. Indiana): Mr. Johnson represented Biolase, the country's largest manufacturer of lasers for dental applications, against Sherman Act claims brought by a competitor aftermarket dental laser support company. The matter resulted in a favorable settlement for the client.

Mr. Johnson also advised clients in the insurance, commodities exchange, chemical and energy industries in obtaining clearance of mergers, acquisitions and joint ventures from the Federal Trade Commission and the Antitrust Division of the Department of Justice in connection with premerger notification proceedings under the Hart-Scott-Rodino Antitrust Improvements Act.

Mr. Johnson has significant experience in other complex civil litigation, including mass torts and government contracts.

Mr. Johnson graduated magna cum laude from Duke University, with a B.A. in Political Science and Spanish, and attended Stanford Law School, where he earned his law degree. He is a member of the ABA Section of Antitrust Law. Along with Emmy Levens, he recently published an article on ascertainability in the Spring 2016 issue of the ABA's Antitrust magazine. In his pro bono work, he has represented Covenant House Washington, D.C., Habitat for Humanity International Inc. and the Cystic Fibrosis Foundation.

**Betsy A. Miller**

Betsy A. Miller is a Partner at Cohen Milstein and Co-Chair of the Public Client practice group. Ms. Miller represents state Attorneys General and municipalities in civil law enforcement investigations and enforcement actions involving consumer fraud and false claims. She joined the firm in 2009, helping to launch the Public Client practice and bringing with her a broad legal background that includes government service, private- sector litigation, complex dispute-resolution skills and teaching experience. An accomplished litigator, the National Law Journal named Ms. Miller to its prestigious list of Rising Stars in 2009, an honor bestowed on only 40 attorneys under the age of 40 in Washington, D.C.

Prior to joining Cohen Milstein, Ms. Miller served as the Chief of Staff and Senior Counsel to the Attorney General for the District of Columbia. In that capacity, Ms. Miller managed high-profile legal issues and policy initiatives for the Attorney General, serving as the chief liaison to multiple agencies and members of the D.C. Council. Ms. Miller also served as the Mayor's lead labor and employment lawyer during the historic transition of the D.C. Public Schools from an independent agency to one operating under governmental supervision.

Ms. Miller previously served in the federal government as Counsel on the U.S. Senate Committee on the Judiciary, where she worked for Chairman Patrick J. Leahy (D-VT). Ms. Miller was responsible for handling presidential nominations to the federal judiciary, the Department of Justice, the Federal Bureau of Investigation and to U.S. Attorney's Offices.

Ms. Miller also spent eight years as a litigator for two premier defense firms, where she represented some of the nation's largest companies and individuals in matters including First Amendment issues, complex contract disputes, collective bargaining negotiations and arbitration, employment class actions and challenges to independent contractor classification. Her civil defense experience adds to Ms. Miller's deep and balanced litigation skillset.

Currently, Ms. Miller represents public clients in the following high-profile matters:

- The state of Mississippi's litigation against Moody's for misrepresenting its analytical services related to structured finance securities (such as CDOs, RMBS, and various mortgage-backed securities) as independent and objective. The lawsuit alleges that Moody's deceived the government and citizens of Mississippi because these analytical services were tainted by motives for increased profits and market share at the expense of independence and objectivity.
- A different state in its confidential investigation of a rating agency for misrepresenting its structured finance securities business model as independent and objective.
- The state of Hawaii in its litigation against Living Essentials, Inc., the creator of 5-Hour ENERGY, for misrepresenting the benefits of drinking its so-called "liquid energy shot."

Ms. Miller's investigation and litigation successes include matters in the financial, health care and employment law sectors. Recent examples include:

- Representing the state of Mississippi, a Lead State on the Executive Committee, in the landmark consumer fraud lawsuit against McGraw Hill Financial (a/k/a Standard & Poor's), over the misrepresentation of its structured finance securities business as independent and objective; resulting in a global resolution for 19 states, the District of Columbia and the United States Department of Justice in the amount of $1.375 billion.
- Representing the states of Arizona and Nevada in litigation against Bank of America for deceptive conduct in connection with servicing approximately 500,000 mortgages; resulting in financial payments to consumers  and  the states, commitments to mortgage modifications and other equitable relief valued at nearly $1 billion.
- Representing the state of Montana in an investigation of a Fortune 100 company regarding alleged misclassification of employees as independent contractors; resulting in a multi-million dollar resolution for the state.
- Representing other state attorneys general and municipalities in numerous confidential investigations and settlements.

Earlier in her career, Ms. Miller was a full-time mediator and negotiation consultant. She also was engaged by the Kennedy School of Government to evaluate mediation and arbitration programs across Central America, after which she contributed to a book on the same subject.

Ms. Miller has been a longstanding member of Georgetown University Law Center's adjunct faculty, which she joined in 2001. There, she teaches courses on mediation advocacy and negotiation strategy. She has taught intensive negotiation courses for practitioners attending Harvard Law School's Negotiation

Institute (formerly Harvard's Program of Instruction for Lawyers), as well as for a variety of federal and state government agencies, law firms, corporations and non-profit organizations.

Ms. Miller has authored several articles, including her most recent publication, "Untapped Potential: Creating a Systematic Model for Mediation Preparation," which appears as Chapter 13 in the AAA Handbook on Mediation – Third Edition (2016).

Ms. Miller received her undergraduate degree in Comparative Literature from Dartmouth College, graduating magna cum laude and Phi Beta Kappa, and earned her law degree from Harvard Law School, where she was an editor on the Harvard Human Rights Journal and the Harvard Latino Law Review. She is the recipient of Harvard Law School's post-graduate Heyman Fellowship for government service and academic excellence and Harvard Law School's Kaufman Fellowship for public service. Following law school, she clerked for the Honorable Thomas Penfield Jackson in the U.S. District Court for the District of Columbia.

**Gary L. Azorsky**

Gary L. Azorsky is a Partner at Cohen Milstein, and Co-chair of the Firm's Whistleblower/False Claims Act Practice. Mr. Azorsky joined Cohen Milstein in 2012, establishing the practice. In his role, Mr. Azorsky pursues whistleblower cases under the federal and state false claims act statutes in the health care, pharmaceutical, banking and defense contractor industries and other industries that conduct business with the government. Mr. Azorsky specializes in the complex, highly detailed process for filing and pursuing these cases. In his practice, he has helped right wrongs and to recover nearly $2.5 billion in defrauded funds for federal and state governments, including hundreds of millions of dollars for whistleblower clients.

Most recently, Mr. Azorsky served as co-lead counsel in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states joined to intervene along with the government of the United States than had ever before intervened in a qui tam action. (United States of America et al., ex rel. Lauren Kieff, v. Wyeth, No.1:03-CV-12366-DPW [D.Mass.].) The $784.6 million settlement was the seventh-largest False Claims Act recovery on record and the second-largest recovery in history involving a single class of drugs. Mr. Azorsky worked alongside Department of Justice attorneys and states Attorneys General throughout the 12-year pendency of the case.

Mr. Azorsky was actively involved in precedent-setting cases, such as the series of Ven-A-Care cases, which were among the first large FCA multi-state cases and laid the groundwork for much of the false claims act litigation that goes on today. He has also represented whistleblowers in False Claims Act cases involving defense contractors, off-label marketing and misbranding by pharmaceutical companies and fraud in connection with the banking industry, for-profit colleges and student loan programs. In addition, Mr. Azorsky represents whistleblowers in tax fraud claims against large and small corporations through the IRS Whistleblower Office, as well as whistleblowers alleging violations of the Foreign Corrupt Practices Act and violations of the federal securities laws filed with the SEC Whistleblower Office.

Mr. Azorsky served as co-counsel for the whistleblower on the following representative matters:

- United States of America ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey Laboratories, et al., Civil Action No. 05-11084 (D. Mass) ($280 Million settlement in December 2010)
- United States of America ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp,

et al., Civil Action No. 07-10248 (D. Mass.) ($280 Million settlement in December, 2010)

- Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al., Civil Action No. 98-3-32A (Leon Cty., Fla.) ($6.5 Million settlement with Dey Laboratories, Inc. in March 2010)
- Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al., Civil Action No. 98-3-32A (Leon Cty., Fla.) ($9.57 Million settlement with Schering-Plough in December 2009)
- Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al., Civil Action No. 98-3-32A (Leon Cty., Fla.) ($8.5 Million settlement with Boehringer Ingelheim in December 2009)
- Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories, Inc. and Boehringer Ingelheim Corporation, Civil Action No. GV3-03079 (Travis Cty., Tex.) ($10 Million settlement with Boehringer Ingelheim in November 2005)
- Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Warrick Pharmaceuticals Corporation, Schering Plough Corporation, Schering Corporation, Civil Action No. GV002327 (Travis Cty., Tex.) ($27 Million settlement with Schering-Plough in May 2004)
- Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Dey, Inc., Dey, L.P., Civil Action No. GV002327 (Travis Cty., Tex.) ($18.5 Million settlement with Dey Laboratories, Inc. in June 2003)

Mr. Azorsky is recognized for his expertise. He has served as an expert witness in a legal malpractice case concerning qui tam practice. He has provided expert guidance on the False Claims Act in congressional hearings, as well as before the Vermont Senate Judiciary Committee in support of the passage of a False Claims Act for the state. In addition, he regularly speaks before professional audiences regarding the federal and state False Claims Acts.

Mr. Azorsky is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its qui tam provisions. Prior to joining Cohen Milstein, in addition to his Whistleblower/False Claims Act practice, he was actively involved in groundbreaking civil rights, commercial and intellectual property litigation, including Internet and software industry-related litigation.

Mr. Azorsky is a graduate of the University of Pennsylvania, with a B.A. in English, and received his law degree from Cornell University Law School.

**Jeanne A. Markey**

Jeanne A. Markey, is a Partner at Cohen Milstein and Co-Chair of the firm's Whistleblower/False Claims Act practice group. She has successfully represented whistleblowers in federal and state cases across the country. Ms. Markey has extensive experience in Qui Tam litigation in the health care, defense and education industries, and has represented whistleblower clients in the public housing sector.

Ms. Markey is co-lead counsel in United States of America et al., ex rel. Lauren Kieff, v. Wyeth, a high-profile whistleblower case against pharmaceutical giant Wyeth (recently acquired by Pfizer). The lawsuit alleges that Medicaid, the healthcare program for the poor which is jointly funded by the federal and state governments, was defrauded when Wyeth falsely inflated the price of the acid suppression drug Protonix Oral from 2001 through 2006. Thirty-six states and the District of Columbia have joined with the United States to intervene in the Wyeth case – more states than have ever intervened in any other U.S. Qui Tam case.

She also served as the primary attorney representing the putative class in Benzman v. Whitman, a class action in Manhattan and Brooklyn against the U.S. Environmental Protection Agency. The claims were based on class members' exposure to contaminants contained in World Trade Center interior dust resulting from the 9/11 attacks.

Ms. Markey is admitted to practice law in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania and to the First Circuit Court of Appeals, Second Circuit Court of Appeals, and Eleventh Circuit Court of Appeals. She is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its Qui Tam provisions, the Association of Qui Tam Attorneys, and frequently speaks about developments in the Qui Tam field. She received her B.A. (cum laude) from Colgate University and her J.D. from Cornell University Law School.

### Christopher J. Cormier

Christopher J. Cormier is a Partner at Cohen Milstein and a member of the Antitrust practice group. In this role, he has tried cases and obtained settlements and judgments for his clients in excess of $1 billion. He is a member of the Antitrust practice group's New Case Committee as well as a member of the group's Client Committee.

Currently, Mr. Cormier is litigating the following notable matters:

- Anadarko Basin Oil and Gas Lease Antitrust Litigation: Co-lead counsel for plaintiffs in class actions alleging that Chesapeake Energy, SandRidge Energy and a former executive of both companies conspired to rig bids for leases of land held by private landowners in parts of Oklahoma and Kansas. This litigation follows the U.S. Department of Justice's early 2016 indictment of a co-founder and former CEO of Chesapeake Energy for allegedly participating in this bid-rigging conspiracy. Plaintiffs allege that Defendants illegally conspired to stabilize and depress the price of royalty and bonus payments paid to landowners in the Anadarko Basin oil and gas province — a massive geological formation holding natural gas and oil deposits that includes large parts of Oklahoma and Kansas. Pursuant to this conspiracy, Plaintiffs allege that Defendants communicated about and agreed on prices, allocated particular geographic areas between themselves, and rigged bids for leases of land, lowering acquisition prices across the region and thereby harming the proposed class of landowners.
- Dental Supplies Antitrust Litigation: Cohen Milstein was recently appointed interim co-lead counsel for a proposed class of dental practices and dental laboratories. The case alleges that Defendants Henry Schein, Inc., Patterson Companies, Inc., and Benco Dental Supply Company — the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. As a result of the alleged conspiracy, dental practices and dental laboratories may have paid artificially inflated prices for many kinds of dental supplies and dental equipment, from consumables like gauze and cement to big-ticket equipment like chairs and x-rays. Mr. Cormier is one of the members of the Cohen Milstein team co- leading this case.
- Ductile Iron Pipe Fittings Antitrust Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings — McWane Inc., Sigma Corporation, and Star Pipe Products — and a monopolization case against McWane for excluding significant competition in

the domestic ductile iron pipe fittings market. Settlements of $9 million have been reached with two of the defendants, Sigma and Star. Currently, Mr. Cormier and his team are in the midst of fact discovery and taking depositions of numerous party and non-party witnesses across the country.

- Cast Iron Soil Pipe & Fittings Antitrust Litigation: Cohen Milstein, as co-lead counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they control (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price- fixing conspiracy. Mr. Cormier and his team are concluding fact discovery, and have taken a significant number of depositions of party and non-party witnesses across the country.

His successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam, a basic component of ubiquitous everyday products such as bed mattresses, car seat cushioning and furniture cushioning. Four defendants — Bayer, BASF, Huntsman, and Lyondell — settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Mr. Cormier was a member of the trial team, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. This was the largest verdict in the country in 2013, as reported by the National Law Journal. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment, which is currently on appeal before the United States Supreme Court.
- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein was co-lead counsel for direct purchaser plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin— life-saving therapies derived from blood plasma. Mr. Cormier and his colleagues at Cohen Milstein represented named plaintiff The University of Utah Health Systems as well as the remaining class members in this matter. The defendants were CSL Ltd., CSL Behring, Baxter Healthcare and the Plasma Protein Therapeutics Association (the trade association the manufacturer defendants controlled). Mr. Cormier played an integral role in the investigation and filing of the first complaint in the country in this matter. Following numerous depositions across the globe and the filing of plaintiffs' opening class certification motion and expert report, Mr. Cormier and his team obtained settlements with all defendants totaling $128 million.

Mr. Cormier earned a B.A. at the University of Virginia and attended American University Washington College of Law, graduating magna cum laude. He interned with the Hon. Judge Deborah K. Chasanow, U.S. District Court for the District of Maryland, and with the U.S. Department of Justice, National Criminal Enforcement Section, Antitrust Division. He is the author of numerous scholarly articles on antitrust law. Benchmark Plaintiff has named him an Antitrust Litigation Star three consecutive years, from 2013 to 2015 and Super Lawyers named him a "Rising Star" in 2016.

## Michael B. Eisenkraft

Michael B. Eisenkraft is a Partner at Cohen Milstein and takes a leading role in prosecuting cases relating to the protection of commodity and financial markets for the firm and currently represents investors in the Natural Gas, KOSPI 200, LIBOR, Treasuries, and Interest Rate Swaps markets. He has also helped

investors recover hundreds of millions of dollars in the Firm's mortgage-backed securities cases.  Mr. Eisenkraft serves as the Administrative Partner for Cohen Milstein's New York office and chairs the firm's new business development committee.

His notable successes at Cohen Milstein include:

- HEMT MBS Litigation: $110 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by Credit Suisse (final approval pending) after more than seven years of litigation, which included the first written decision certifying a Securities Act class of mortgage-backed securities in the country.
- RALI MBS Litigation: $335 million in settlements on behalf of investors in mortgage-backed securities issued by Residential Capital and underwritten by various investment banks after seven years of litigation.
- Harborview MBS Litigation: $275 million settlement on behalf of investors in mortgage-backed securities issued and underwritten by the Royal Bank of Scotland and its subsidiaries after more than six years of litigation.
- Dynex: $7.5 million settlement on eve of trial on behalf of investors in asset-backed securities. The decision certifying the class in the case was the first decision within the Second Circuit certifying a class of asset-backed bond purchasers under the 1934 Act.
- China MediaExpress: $12 million settlement with auditor defendant in case involving alleged fraud at Chinese reverse merger company China MediaExpress.  One of the largest settlements with an auditor defendant in a case involving a Chinese reverse merger company.

Mr. Eisenkraft's current cases include:

- Total Gas & Power Antitrust and Commodities Litigation:  Represents putative class in action against the energy company Total in case alleging antitrust violations and violations of the Commodity Exchange Act in connection with manipulation of the market for natural gas.
- NovaStar MBS Litigation: Securities Act litigation involving billions of dollars of mortgage-backed securities underwritten by the Royal Bank of Scotland, Wachovia and Deutsche Bank.
- Tower Research Capital: Commodity Exchange Act class action against a high frequency trading firm alleging manipulation of the market for KOSPI 200 futures contracts (the representative stock market index of South Korea) using spoofing or faked trades.
- LIBOR (Exchange Traded Class): Commodity Exchange Act and antitrust class action representing investors in Eurodollar futures injured by manipulation of LIBOR by world's largest banks.
- Interest Rate Swaps: Represents Public School Teachers' Pension and Retirement Fund of Chicago and putative class in action alleging that major investment banks conspired to prevent an exchange-traded market for interest rate swaps from developing.

Mr. Eisenkraft served as a law clerk to the Honorable Judge Barrington D. Parker of the United States Court of Appeals for the Second Circuit. He is the author or co-author of numerous articles on legal issues in the securities and antitrust fields among other subjects.  Mr. Eisenkraft attended Brown University, where he received a B.A., magna cum laude and Phi Beta Kappa, and graduated cum laude from Harvard Law School.

**Michelle C. Yau**

Michelle C. Yau is a Partner at Cohen Milstein, and a member of the Firm's Employee Benefits (ERISA) Practice Group. In her role, Ms. Yau represents the interests of employees, retirees, plan participants or beneficiaries in ERISA cases. Her practice specializes in ERISA cases involving complex financial transactions or actuarial issues. Ms. Yau brings to her practice government experience enforcing labor statutes and a grasp of complex financial instruments gained from her training as a financial analyst. Drawing on those experiences, she is able to fulfill her passion for protecting pension plan participants.

Ms. Yau litigated some of the most significant ERISA lawsuits to emerge from the Madoff Ponzi scheme. In re Beacon Assoc. Litig., she represented a multi-plan class of participants, beneficiaries and fiduciaries, which settled along with other consolidated cases for $219 million in 2013, representing 70% of the Class members' out-of-pocket losses. The judge praised the settlement, describing the outcome as "extraordinary" and the praising the "hard work" done by plaintiffs' counsel, including Cohen Milstein. In re Austin Capital Mgmt. Litig., which was settled by the Department of Labor on the ERISA class on very favorable terms, Ms. Yau alleged that Madoff's returns, based on his advertised investment strategy, were mathematically impossible, a fact Austin Capital ought to have recognized well before the fraud was revealed.

Prior to joining Cohen Milstein in 2007, Ms. Yau was an Honors Program Attorney at the Department of Labor where she enforced and administered of a variety of labor statutes. Before law school, she worked as a financial analyst at Goldman, Sachs & Co. in the Financial Institutions Group of the Investment Banking Division.

Ms. Yau is presently litigating a series of church plan lawsuits alleging that health care systems wrongfully claim their benefit plans are exempt from ERISA's protection. She oversees the day-to-day management of these cases, including coordinating all the aspects of the litigation.

Currently, Ms. Yau is representing clients in the following notable matters:

- St. Peter's Health care System Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Kaplan v. St. Peter's Healthcare System, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections. In district court, Cohen Milstein succeeded in showing that only a church may establish a church plan and thus St. Peter's Healthcare System is not entitled to exemption from ERISA. Cohen Milstein then prevailed in the Third Circuit, which affirmed the district court's holdings.
- St. Anthony Medical Center Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Owens et al. v. St. Anthony Medical Center et al., which allege that the Medical Center violated numerous provisions of ERISA by improperly operating the plan as exempt from ERISA's protections. As a result the class of participants suffered cutbacks as much as 40% of their promised benefits.
- Trinity Church Plan Litigation: Cohen Milstein is counsel to a class of defined benefit participants in Lann et al. v. Trinity Health, which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections,
- Advocate Health Care Church Plan Litigation: Cohen Milstein, along with Keller Rohrback, is counsel to a class of defined benefit participants in Stapleton et al. v. Advocate Health Care Network and Facilities et al., which allege that the hospital's plan is not a church plan and thus the class is entitled to ERISA's protections. In district court, counsel succeeded in showing that only a church may establish a church plan and thus Advocate is not entitled to exemption from ERISA. Plaintiffs then prevailed in the Seventh Circuit, which affirmed the district court's holdings.

- U.S. Bancorp Pension Plan Litigation: Cohen Milstein is counsel to a class of pension plan participants alleging that the plan's managers engaged in a risky, imprudent investment strategy by investing 100% of its assets in stocks, thus causing the plan to lose more than $1 billion during the collapse of the equities market in 2008. Ms. Yau developed the litigation and is overseeing all aspects of the litigation.

Ms. Yau has litigated the following case successfully:

- Merrill Lynch ERISA Litigation: Cohen Milstein served as interim co-lead counsel in a class action alleging that fiduciaries of the Merrill Lynch retirement plans imprudently purchased and held inflated Merrill employer stock for the retirement accounts of the Companies' employees. The litigation was resolved for $75 million. Ms. Yau was engaged in all aspects of the litigation.
- Madoff Ponzi Scheme Litigation: Cohen Milstein represented a multi-plan class of participants, beneficiaries and fiduciaries in re Beacon Assoc. Litig. The $219 million settlement in 2013 represented 70% of the Class members' out-of-pocket losses. Ms. Yau was engaged in all aspects of the litigation.
- Weyerhauser Pension Plan Litigation: Cohen Milstein was lead counsel in a lawsuit alleging that the Weyerhaeuser Company caused its Defined Benefit Retirement Plans to engage in a risky investment strategy involving alternative investments and derivatives, causing the Plans' master trust to become underfunded. A settlement was reached for injunctive relief on behalf of Plans' participants and beneficiaries. Ms. Yau was engaged in all aspects of the litigation.

Ms. Yau received her law degree from Harvard Law School in 2003, where she was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to federal public service. Ms. Yau graduated Phi Beta Kappa with a B.A. in Mathematics from the University of Virginia. Ms. Yau was also selected as an Echols Scholar and awarded the Student Council Scholarship for leadership, academic achievement and community service. Law360 named Ms. Yau a Rising Star Under 40.

**George F. Farah**

George F. Farah is a Partner at Cohen Milstein, and a member of the Antitrust and Human Rights practice groups. In this role, Mr. Farah represents consumers, farmers, unions and businesses that were injured by antitrust abuses in complex multi-district class action lawsuits.

He has experience in litigating all aspects of cases, from arguing motions in court to engaging in settlement negotiations to obtaining jury trial verdicts. In addition, Mr. Farah facilitates the development of new antitrust cases by investigating potential matters and securing clients to serve as class representatives.

Since joining the Firm in 2005, Mr. Farah has represented small businesses that were overcharged due to price-fixing conspiracies; unions and consumers in actions against pharmaceutical companies that thwarted generic competition; and farmers in lawsuits against processors that artificially depressed their wages. Mr. Farah has also advocated for victims of other tortious conduct. He represented the city of Milwaukee in a public nuisance case against lead paint manufacturers; survivors of the Holocaust in actions against companies who profited from Nazi-era slave labor; and political asylum applicants who were tortured in Nepal.

In addition to litigating, Mr. Farah has worked on electoral reform and income inequality issues.  He

founded the nonprofit Open Debates to improve the presidential debate process. He served as general counsel of The Living Wage Campaign to raise wages in Virginia. He reported on the harms of media concentration and the IMF's austerity programs at The Center for the Study of Responsive Law.

Currently, Mr. Farah is litigating the following notable matters:

- **DairyAmerica Antitrust Litigation:** Cohen Milstein is co-lead counsel in in Carlin v. Dairy America, Inc.(E.D. Cal.), accusing the largest marketer of nonfat dry milk in the U.S. and the California-based milk processing firm of inflating their profits at the expense of U.S. dairy farmers by misreporting data used by the U.S. government to set the price of raw milk. Mr. Farah is managing all aspects of the case. The case is ongoing.
- **Treasury Securities Litigation:** Cohen Milstein is co-lead counsel in a class action lawsuit alleging that major banks and brokerages conspired to drive up futures prices for Treasury securities ahead of announced auctions and then colluded to deflate prices at auction. Mr. Farah is involved in all aspects of the case.
- **In re Nexium Antitrust Litigation (D. Mass.):** Cohen Milstein is co-lead counsel in a pay-for-delay litigation alleging that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers. The case is on appeal.
- **In re Lidoderm Antitrust Litigation (N.D. Cal.):** Cohen Milstein is co-lead counsel in a class action lawsuit alleging that Endo and Teikoku, the manufacturers of the Lidoderm pain patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

Some of his successes include:

- **OSB Antitrust Litigation:** $120 million settlement. Cohen Milstein was co-lead counsel in a case alleging that the nine producers of oriented standard board conspired to reduce the supply of OSB so as to increase prices. Mr. Farah was involved in all aspects of the litigation.
- **Hydrogen Peroxide Litigation:** $100 million settlement. Cohen Milstein was co-lead counsel in In re Hydrogen Peroxide Antitrust Litigation (E.D. Pa.) representing a class of direct purchasers of hydrogen peroxide in alleging a price-rigging conspiracy by manufacturers. The U.S. Third Circuit Court of Appeals opinion in Hydrogen Peroxide has proved important in clarifying the role of expert testimony in Rule 23 analysis. Mr. Farah was engaged in all aspects of the litigation.
- **Northeast Dairy Litigation:** In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two certified subclasses of Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services in a raw milk price-fixing case. Defendant Dean Foods Co. settled for $30 million, and the Court has preliminarily approved a $50 million settlement with DFA and DMS.
- **Nepali Nurse Political Asylum Litigation (Pro Bono):** Mr. Farah acted as lead counsel in successfully securing political asylum in the U.S. for a Nepali nurse who had been persecuted and tortured for her religious beliefs in Nepal.

Mr. Farah is the author of the book "No Debate: How the Republican and Democratic Parties Secretly Control the Presidential Debates" (Seven Stories Press). His articles on legal and electoral issues have appeared in The Washington Post, The Boston Globe, The Philadelphia Inquirer, Antitrust Magazine and other publications.

Mr. Farah has appeared on over 50 television programs to discuss political, electoral and legal matters,

including Nightline, NOW with Bill Moyers, 20/20, CBS Evening News, NBC Nightly News, FOX and Friends, Lester Holt Live and CNN's Market Call.  He has been interviewed on over 100 radio shows and has hosted numerous televised press conferences. He has given several talks on the political process and electoral reform issues at colleges and universities.

Mr. Farah attended Princeton University, graduating with a B.A. from the Woodrow Wilson School of Public and International Affairs, and earned a J.D. at Harvard Law School. Mr. Farah was the recipient of a Paul and Daisy Soros Fellowship.

**Kalpana Kotagal**

Kalpana Kotagal is a Partner at Cohen Milstein, a member of the firm's Civil Rights & Employment practice group, and Chair of the firm's Hiring and Diversity Committee.  Ms. Kotagal also plays an active role in the investigation and development of new potential matters for the Civil Rights & Employment practice group.

Ms. Kotagal has represented victims of discrimination in the workplace and in other settings.  Ms. Kotagal also practiced as a member of the firm's Antitrust practice group. A noted speaker, Ms. Kotagal often is called on to address issues of opportunities and impediments to women's leadership, the ethics of multi-party and class cases, and class arbitration.  She also speaks regularly to law students and new lawyers about their career paths.

Ms. Kotagal represents a class of approximately 44,000 female sales employees nationwide in a Title VII and Equal Pay Act case against one of the nation's largest jewelry chains in Jock, et al. v Sterling Jewelers Inc.  Her clients have alleged a pattern of sex discrimination in compensation and promotions.  This case presents cutting-edge issues regarding the certification of nationwide classes and litigating in arbitration.  Ms. Kotagal also represents transgender beneficiaries of federal health insurance who have challenged the denial of transition-related care as discriminatory.

Ms. Kotagal's past successes include:

- U.S. Postal Service Disabled Veterans Litigation: Ms. Kotagal represented a class of disabled veteran applicants in Hill, et. al v. Donohue, United States Postal Service, alleging illegal pre-offer medical inquiries during the application process against the United States Postal Service. The case, which settled for $9.58 million, resulted in USPS's agreement implement changes in its practices to prevent similar violations in the future.
- Pilgrim's Pride Corporation: Ms. Kotagal represented 8,000 workers in 11 states in a wage and hour lawsuit in Aaron v. Pilgrim's Pride Corp., seeking redress for unpaid overtime.  The $10 million settlement allowed class members to recover about 85% of the back pay owed them.
- Nurse Wages Matters: Cohen Milstein represented nurses in an antitrust case in a case contending that hospitals conspired to suppress and fix wages of nurses.

Ms. Kotagal is a member of the Center for Worklife Law's Working Group on Pregnancy Accommodation of the National Employment Lawyers Association (NELA). She is also the co-author of "Innovation, Economics and the Law: The Health Care Industry's Exposure to Antitrust Liability," published by the ABA Antitrust Law Section in 2007.

Ms. Kotagal brings to her litigation practice her experience as an organizer, having previously served as

field organizer with Green Corps, an Assistant National Field Director of the United States Public Interest Research Group, and as an advisor to a Congressional candidate in 2006. Ms. Kotagal also served as an honorary chair of the National Finance Committee of Young Lawyers for Obama in 2008.

While in law school, Ms. Kotagal served as law clerk in the Chambers of the Honorable J. Curtis Joyner, Eastern District of Pennsylvania. She served as an Articles Editor of the University of Pennsylvania Law Review.

Prior to joining Cohen Milstein, she served as a law clerk to the Honorable Betty Binns Fletcher of United States Court of Appeals for the Ninth Circuit.

Ms. Kotagal attended Stanford University, where she was a Morris K. Udall Scholar, and graduated with honors with an A.B.B.S. She earned her J.D. cum laude from the University of Pennsylvania, where she was a James Wilson Fellow.

**Sharon K. Robertson**

Sharon Robertson is a Partner at the firm and a member of the Antitrust practice group. Ms. Robertson Co- chairs the firm's Professional Development and Mentoring Committee and serves on the firm's Diversity Committee. Ms. Robertson also currently serves as a member of the Executive Committee for the Antitrust Section of the New York State Bar Association.

Ms. Robertson, who joined Cohen Milstein in 2006, has extensive experience in complex antitrust litigation at the pre-trial, trial and appellate levels and has been consistently recognized as a leading and highly regarded attorney. Within a span of two years, Ms. Robertson was a trial team member in two of the largest antitrust cases to be tried to verdict. In 2013, she was a member of the trial team in the Urethanes matter, where the jury returned a $400 million verdict, which was trebled by the Court, as required by antitrust law, to $1.06 billion. The judgment, one of the largest known antitrust verdicts to date, was cited by The Legal 500 in ranking Cohen Milstein a leading class action plaintiff firm in 2015. The following year, Ms. Robertson was a member of the trial team in the Nexium matter, the first pharmaceutical antitrust case to go to trial following the Supreme Court's landmark decision in FTC v. Actavis, 570 U.S. 756 (2013).
Currently, Ms. Robertson leads a series of pay-for-delay pharmaceutical antitrust cases, alleging that the defendant brand manufacturer entered into non-competition agreements with generic pharmaceutical manufacturers in order to delay market entry of generic versions of certain drug products.

Ms. Robertson represents End-Payor Plaintiffs in the following pay-for-delay pharmaceutical antitrust cases in which the firm serves as Co-Lead Counsel:

- In re Nexium Antitrust Litigation (D. Mass.): Plaintiffs allege that AstraZeneca PLC, the brand manufacturer of Nexium, paid generics manufacturers to delay the introduction of a generic version of the drug, thus harming consumers and other end-payors. The case is on appeal.
- In re Lipitor Antitrust Litigation (D.N.J): Plaintiffs allege that Pfizer, the manufacturer of Lipitor, conspired with Ranbaxy, the generic manufacturer, to delay its introduction of a generic Lipitor product. The case is on appeal.
- In re Loestrin Antitrust Litigation (D.R.I.): Plaintiffs allege that Warner Chilcott PLC and three others entered into an agreement to delay the introduction of a generic version of the contraceptive drug Loestrin. Following a dismissal by the District Court, the First Circuit recently

revived all of Plaintiffs' claims and remanded the case for further proceedings consistent with its opinion.

- In re Lidoderm Antitrust Litigation (N.D. Cal.): Plaintiffs allege that Endo and Teikoku, manufacturers of the Lidoderm patch, paid Watson Pharmaceuticals to delay its generic launch. The case is ongoing.

In addition, Ms. Robertson serves as a member of the executive committee in similar pay-for-delay cases in which Cohen Milstein plays a significant role, including: Niaspan (In re Niaspan Antitrust Litigation [E.D. Pa.]), Suboxone (In re Suboxone Antitrust Litigation [E.D. Pa.]), ACTOS (In re ACTOS Antitrust Litigation [S.D.N.Y.]), Aggrenox (In re Aggrenox Antitrust Litigation [D. Conn.]) and Solodyn (In re Solodyn Antitrust Litigation [D. Mass.]).

Ms. Robertson has successfully litigated the following notable matters:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is Co-Lead Counsel in an antitrust class action alleging a nationwide conspiracy to fix the prices of polyether polyols. Ms. Robertson played a leading role in helping obtain settlements with several defendants for $139 million and was a member of the trial team that obtained a $400 million jury verdict (trebled to more than $1 billion), which was affirmed on appeal by the 10th Circuit. The case against Dow ultimately settled for $835 million while Dow's petition for certiorari was pending before the Supreme Court.
- Albany and Detroit Nurses Litigation: Cohen Milstein represented registered nurses employed by hospitals in Albany and Detroit in class actions alleging a wage-fixing conspiracy. Ms. Robertson obtained settlements with five Albany Defendants totaling over $14 million. In the Detroit case, Ms. Robertson helped obtain $98 million in settlements with eight Defendants.
- Indonesian Villagers Litigation: Ms. Robertson represented Indonesian villagers in a lawsuit against Exxon Mobil over torture and extrajudicial killings allegedly committed by the Defendant's security forces (a unit of the Indonesian military).

Ms. Robertson attended the State University of New York at Binghamton, where she graduated magna cum laude with a B.A. in Philosophy, Politics and Law. She earned her J.D. from the Benjamin N. Cardozo School of Law, where she served as Notes Editor of the Cardozo Public Law, Policy and Ethics Journal.

Ms. Robertson has authored "Comparing the U.S. Class Action Mechanism and the Proposed U.K. System: Which Strikes the Right Balance Between Safeguards and Justice," Competition Policy International Antitrust Chronicle. In addition, she assisted the Trial Practice Committee of the American Bar Association in revising the 2005 Edition of the Model Jury Instructions handbook.

Prior to attending law school, Ms. Robertson worked on the campaign committee of Councilman John Liu, the first Asian American to be elected to New York City's City Council. During law school, she was an intern in the Litigation Bureau of the Office of the New York State Attorney General and the United States Court of Appeals for the Second Circuit. Additionally, in law school, Ms. Robertson was selected as an Alexander Fellow and spent a semester serving as a full-time Judicial Intern to the Hon. Shira A. Scheindlin, U.S. District Court for the Southern District of New York.

**S. Douglas Bunch**

S. Douglas Bunch, is a Partner at Cohen Milstein and a litigator in the firm's Securities Fraud & Investor

Protection Practice Group.

Mr. Bunch represents individual and institutional investors in cases brought in violation of state and federal securities laws, including the Securities Act of 1933 and the Securities Exchange Act of 1934. Currently, Mr. Bunch is part of the Cohen Milstein team litigating a class action suit against Harman International Industries, Inc., in which Cohen Milstein was successful in obtaining a ruling by the Court of Appeals for the D.C. Circuit reversing the dismissal of the case and remanding it to the U.S. District Court for further proceedings. The ruling protects investors by limiting the scope of protection afforded by the so-called "safe-harbor" for forward-looking statements in the Private Securities Litigation Reform Act of 1995. Mr. Bunch also recently played a key role in the litigation and settlement of securities class actions against ITT Educational Services, Inc. and Orthofix International N.V., in which the U.S. District Court for the Southern District of New York denied defendants' motions to dismiss.

Mr. Bunch played an important role in successfully litigating the suits that followed in the wake of the 2008 financial crisis. He was instrumental in the $90 million settlement, following an appeal to the U.S. Court of Appeals for the Second Circuit, of Rubin v. MF Global, Ltd. in 2011. The complaint asserted that although MF Global had assured investors in its IPO that the Company had a rigorous, robust system of risk controls in place capable of monitoring risk on a continuous "real time" basis, MF Global in fact had deactivated trading and margin controls on brokers' computers to speed up transaction times. He was also a member of the litigation team that persevered in the $335 million global settlement of a class action lawsuit on behalf of purchasers of mortgage-backed securities (MBS) issued by Residential Accredit Loans, Inc. (RALI), the $275 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Harborview Mortgage Loan Trusts, and the $500 million settlement of a class action lawsuit on behalf of purchasers of MBS issued by Bear Stearns & Co. Inc., among other MBS cases.

A member of Phi Beta Kappa, Mr. Bunch graduated with a B.A., summa cum laude, from the College of William & Mary, earned an Ed. M. from Harvard University, and received his J.D. from William & Mary Law School, where he was a recipient of the Benjamin Rush Medal in 2006. In 2011, he was awarded William & Mary's inaugural W. Taylor Reveley III award, recognizing alumni who have demonstrated a sustained commitment to public service. Mr. Bunch is co-founder and chairman of Global Playground, Inc., a nonprofit that builds schools in the developing world, and serves or has served on the boards of the Northeast Conference on the Teaching of Foreign Languages, Ascanius: The Youth Classics Institute, and Virginia21.

**David Young**

David A. Young is a Partner at Cohen Milstein and is a member of the Antitrust Practice Group, having joined the Firm in 2010. Mr. Young has extensive experience in complex antitrust litigation, class actions, appeals and litigating cases under the federal False Claims Act.

In his role, Mr. Young represents businesses and individuals in federal and state civil actions, with a focus on multi-district class actions and federal False Claims Act litigation. He has worked on antitrust issues in numerous industries, including pharmaceuticals, financial services, financial derivatives and PC microprocessors. Mr. Young also represents qui tam relators in federal False Claims Act litigation.

Prior to joining Cohen Milstein, Mr. Young practiced at two other firms where his litigation practice focused on antitrust, trademark, business, and False Claims Act litigation. He represented the relator in U.S. ex rel. Loughren v. UnumProvident Corp. (D. Mass), where a jury found that UnumProvident violated

the False Claims Act by causing the submission of false claims for Social Security disability benefits. Mr. Young also represented U.S. trademark holders suing to prevent the illegal importation of products bearing their marks in federal court and administrative actions.

Currently, Mr. Young is litigating the following notable matters:

- Automotive Parts Antitrust Litigation: In In re Automotive Parts Antitrust Litigation (E.D. Mich.), Cohen Milstein represents direct purchasers of wire harnesses, bearings and other automotive parts, who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry for more than a decade. The litigation follows upon a U.S. Department of Justice price-fixing case against auto parts manufacturers.
- Domestic Drywall Antitrust Litigation: Cohen Milstein is co-lead counsel in antitrust litigation alleging that the seven major U.S. manufacturers of drywall conspired to manipulate prices and restrain price competition. To date, settlements for $44.5 million have been reached with two of the defendants. Mr. Young has been a core member of the team, involved in all aspects of the litigation. Defendants' motions for summary judgment were recently denied for all but one defendant, and the case is ongoing.
- Google Wiretap Antitrust Litigation: Cohen Milstein is co-lead counsel in a nationwide class action lawsuit alleging Google violated the Wiretap Act when its StreetView vehicles collected data from unencrypted Wi-Fi networks, including the home networks of individuals. The litigation has survived a motion to dismiss, which Google unsuccessfully appealed on an interlocutory basis in the Ninth Circuit. Currently, the firm is in the midst of jurisdictional discovery. The case is ongoing.

His successes include:

- Community Health Care System Litigation: Cohen Milstein was co-counsel representing an emergency room doctor and nurses in a whistleblower lawsuit under the False Claims Act alleging Community Health Care System defrauded the federal government in connection with health care bills. The case was resolved for $94 million.
- Hy-Ko Products Antitrust Litigation: Cohen Milstein represented Hy-Ko Products Co., a manufacturer of replacement keys and key replacement machines, in an antitrust litigation alleging that its competitors, the manufacturer of replacement keys and the manufacturer of key replacement machines, had acted to restrain competition and to monopolize the market. The litigation was resolved to the client's satisfaction.

Mr. Young attended Bridgewater College, where he graduated with a B.A. in Physics, and earned his J.D. from Harvard Law School, where he served as an Executive Editor for the Harvard Civil Rights-Civil Liberties Law Review. While still in law school, he represented clients in disability and discrimination cases as a member of Harvard's clinical programs, worked as a research assistant for Professor Christine Jolls and volunteered as a summer legal intern at the Whitman-Walker Clinic, a community-based center providing a range of health care services in Washington, D.C.

Mr. Young is a member of the ABA Section of Antitrust Law. He has represented pro bono clients in discrimination actions before the D.C. Circuit and D.C. District courts, including successfully arguing for reversal of the district court's dismissal of his client's case in Miller v. Hersman, 594 F.3d 8 (D.C. Cir. 2010).

**Laura Alexander**

Laura Alexander is a Partner in the Antitrust practice at Cohen Milstein. Ms. Alexander joined the firm in 2012, bringing with her extensive experience in complex antitrust litigation, class actions and appeals. Prior to joining Cohen Milstein, Ms. Alexander also was a member of the trial team that successfully represented Charter Communications in what was, at the time, the largest litigated bankruptcy in U.S. history and successfully represented several clients before the United States Supreme Court.

Currently, Ms. Alexander is litigating the following notable matters:

- Ideker Farms, et al. v. the United States of America: Cohen Milstein represents Ideker Farms and another 350 plaintiffs located in six states along the Missouri River in a mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers, violating the takings clause of the Fifth Amendment. Ms. Alexander has been involved in all aspects of the litigation. The case is set to go to trial in 2017.
- Sutter Health Antitrust Litigation: Cohen Milstein is co-lead in a monopolization case alleging Sutter Health, a large hospital chain in Northern California, has used anticompetitive contract terms and contracting practices to drive out competition and raise prices to insurers, self-insured employers and individual consumers to supracompetitive levels. Ms. Alexander has been involved in all aspects of the litigation.
- Big Oak Farms, Inc. v. the United States of America: Cohen Milstein represents a group of farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land, without providing just compensation. Ms. Alexander has been involved in all aspects of the litigation.

Ms. Alexander's past successes include:

- Urethanes (Polyether Polyols) Antitrust Litigation: Cohen Milstein is co-lead counsel for direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam. Four defendants—Bayer, BASF, Huntsman, and Lyondell—settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. Ms. Alexander was a member of the trial team and had significant brief writing and witness preparation responsibilities. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment. Dow has petitioned the United States Supreme Court for review, and that petition is currently pending.

Ms. Alexander attended Reed College, earning a B.A. in Mathematics, and earned her J.D. magna cum laude from Georgetown University Law Center. Following law school, she served as a law clerk to the Honorable Judge M. Margaret McKeown on the United States Court of Appeals for the Ninth Circuit. She has authored or co-authored scholarly articles, including Prominent Market Definition Issues in Pharmaceutical Antitrust Cases, which recently appeared in Antitrust, an American Bar Association publication.

**Emmy Levens**

Emmy L. Levens, a Partner in the Firm's Washington, D.C. office, is a member of the Antitrust Practice Group. With nearly a decade of experience, Ms. Levens has particular expertise in complex antitrust

litigation, class actions, and appellate litigation.  Ms. Levens plays a central role in helping the antitrust group evaluate potential cases and chairs the Firm's Summer Associate Committee.

Currently, Ms. Levens is litigating the following notable matters:

- Flint Water Crisis: Ms. Levens represents a group of residents and businesses in Flint, Michigan, in a suit for damages sustained as a result of their exposure to toxic levels of lead and other bacteria.  This important case is ongoing in the Eastern District of Michigan.
- Resistors Antitrust Litigation: Cohen Milstein serves as interim co-lead counsel in a proposed class action accusing the world's largest manufacturers of resistors of fixing prices.    As a critical member of the team of lawyers representing the proposed class of direct purchasers, Ms. Levens has been involved in every aspect of the case from investigation to prosecution of the class's case which is currently ongoing in the Northern District of California.
- Truck Transmissions Antitrust Litigation: Cohen Milstein serves as co-lead counsel in a putative class action alleging Eaton – the largest manufacturer of Class 8 Transmissions in the United States – conspired with manufacturers of Class 8 Trucks to exclude a rival transmission manufacturer from the market.  Ms. Levens has played an important role on the case from the beginning and has recently returned to the case to assist with the appeal.
- Northeast Dairy: In Allen vs. Dairy Farmers of America (D. Vt.), Cohen Milstein serves as lead counsel for one of two subclasses of dairy farmers challenging anticompetitive conduct in the Northeast which resulted in lower prices paid to farmers.  Ms. Levens has served as one of the principle attorneys litigating this matter since its inception.  To date, the case has recovered a historic settlement with former defendant Dean Foods Company and another settlement for $50 million in addition to industry- changing equitable relief has recently been preliminarily approved by the Court.

Some of her past successes include:

- Plasma-Derivative Protein Therapies Antitrust Litigation: Cohen Milstein served as co-lead counsel for plaintiffs alleging that the two largest manufacturers of IVIG and Albumin – life-saving therapies derived from blood plasma – conspired to reduce the supply, and increase the prices, of these therapies. Ms. Levens played an active role in the litigation, helping to obtain settlements totaling $128 million for hospitals and other direct purchasers.
- Bulk Bleach Litigation: Ms. Levens served as one of the key attorneys at Cohen Milstein representing a class of municipalities and other direct purchasers of bulk bleach in a case alleging that the two dominant manufacturers of bulk bleach in the Carolina's engaged in an illegal market allocation agreement. After successfully defeating multiple motions to dismiss, class counsel obtained a settlement that satisfied nearly all of the class's damages.    In approving the settlement, Judge Gergel complimented counsel, stating that the, "whole case has been, I think, very professionally handled, skillfully handled."
- Asylum Appeal: Ms. Levens agreed to represent pro bono a Nepalese woman after her initial application for asylum was denied.  The woman had previously advocated for democratic reforms in Nepal but was forced to leave her home country to escape Communist militias.  Ms. Levens appealed the matter through two rounds of briefing to the Board of Immigration Appeals and up to the Fourth Circuit Court of Appeals.  After successfully obtaining a new asylum hearing for her client, Ms. Levens negotiated an agreement that allowed her client to remain safely in the United States.

Ms. Levens was also a member of the Apple price-fixing litigation team recognized as "Legal Lions" by Law360. In addition to her work at the Firm, Ms. Levens has served as an adjunct Professor at Georgetown School of Law and is a Board member and Secretary of Global Playground, a nonprofit that builds schools in the developing world.  She recently co-authored an article entitled, "Heightened Ascertainability Requirement Disregards Rule 23's Plain Language," which appeared in the Spring, 2016 issue of Antitrust magazine.

Prior to joining the firm, Ms. Levens worked as a staff law clerk at the U.S. Court of Appeals for the Seventh Circuit.

Ms. Levens attended the University of Kansas, graduating with honors, and earned her J.D. at UCLA Law School, graduating Order of the Coif.  While at law school, Ms. Levens served as the Managing Editor for the UCLA Journal of Environmental Law and Policy, Director of the Downtown Legal Housing Clinic, and President of Moot Court.

**Laura H. Posner**

Laura H. Posner is a Partner at Cohen Milstein and a member of the firm's Securities Litigation & Investor Protection Practice Group.

Prior to joining the firm, Ms. Posner was appointed by the New Jersey Attorney General to serve as the Bureau Chief for the New Jersey Bureau of Securities – the top Securities Regulator for the State of New Jersey.  In that capacity, Ms. Posner was responsible for administrating and enforcing the New Jersey Uniform Securities Law and regulations thereunder, as well as managing and overseeing the employees who staff the Bureau of Securities.  Cases prosecuted under Ms. Posner's direction as Bureau Chief resulted in hundreds of millions of dollars in recoveries for New Jersey residents, as well as more than 20 criminal convictions.  As Bureau Chief, Ms. Posner collaborated extensively with the Securities and Exchange Commission, the Department of Justice, and other state Attorneys General and securities regulators.

Previous to her appointment as Bureau Chief, Ms. Posner prosecuted securities fraud class actions and derivative actions on behalf of public pension funds, institutional investors, and unions nationwide, successfully recovering billions on behalf of defrauded investors, a role  that she will continue at Cohen Milstein. Her notable successes include:

- In re Schering-Plough Corp./ENHANCE Securities Litigation and In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation: Obtained $688 million for investors on the eve of trial, the third largest recovery ever achieved in the Third Circuit and District of New Jersey, the second largest securities fraud settlement ever against a pharmaceutical company and among the top 25 securities fraud settlements of all time.
- In re The Mills Corporation Securities Litigation: Obtained $202.75 million for investors, the largest recovery ever achieved in a securities class action in Virginia, and the second largest recovery ever in the Fourth Circuit.
- In re WellCare Health Plans, Inc. Securities Litigation: Obtained $200 million for investors, the largest recovery ever achieved in a securities class action in Florida, and the second largest recovery in the Eleventh Circuit.

Ms. Posner is the former Chairwoman of the North American Securities Administrators Association

(NASAA) Enforcement Section Committee, and previously served on NASAA's Multi-Jurisdictional Action Committee, Technology Committee and State Legislation Committee.  She also has served as a member of multiple committees of the Association of the Bar of the City of New York, including currently serving as a member of the Securities Litigation Committee, and previously serving as a member of the Securities Regulation and Consumer Affairs Committees.

Ms. Posner has regularly been named by Super Lawyers as a Rising Star and a Top Woman Attorney.  She regularly speaks at conferences throughout the country, including for events sponsored by PIABA, FINRA, SIFMA, NASAA, SEC, the New York, New Jersey and Philadelphia Bar Associations and the ABA. Ms. Posner has been quoted in The New York Times, The Wall Street Journal, the Star-Ledger, NewJersey.com, Asbury Park Press, the New Jersey Herald, and The Record, and interviews with her appear on various cable news channels and in various publications.

Ms. Posner graduated with a B.A. in Political Science, magna cum laude, from the University of California, Los Angeles in 2001. She received her law degree at Harvard Law School in 2004, where she served on the Executive Editorial Committee for the Harvard Women's Law Journal.

## Attorney Profiles –Associate Assigned to Matter

**Sally Handmaker Guido**

Sally Handmaker Guido is an Associate at Cohen Milstein and a member of the firm's Consumer Protection practice group. She is also a member of the firm's eDiscovery and Summer Associate committees.

Ms. Handmaker Guido litigates class actions to enforce consumer rights under federal and state laws, in particular issues related data privacy, false advertising, breach of warranty and other types of deceptive business practices, as well as defective products.

Previously a Litigation Associate at a top-tier defense firm, Ms. Handmaker Guido brings unique perspective and relevant complex litigation experience to her work, including experience in antitrust, securities, sports, intellectual property, and employment litigation.

Ms. Handmaker Guido is currently litigating the following notable matters:

- In re Equifax, Inc., Customer Data Security Breach Litigation: On September 8, 2017, Cohen Milstein filed a class action against Equifax, a leading credit-reporting company that safeguards some of the most sensitive financial and personal information of over 143 million individuals across the United States, for its failure to inform the public of a massive data breach and theft of client data. Cohen Milstein was appointed to the Plaintiffs' Steering Committee on the consumer side of the litigation and is Co-Chair of the Expert Committee.

- In re Apple Inc. Device Performance Litigation: On January 9, 2018, Cohen Milstein and co-counsel, filed a putative nationwide class action against Apple Inc., on behalf of owners of Apple's iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, and 7 Plus, for unfair and deceptive business practices in violation of California Business & Professions Code § 17200 and making material misrepresentations and failing to disclose material information related to Apple's iOS software operating system updates for Apple iPhones. Cohen Milstein was appointed to the Plaintiffs' Steering Committee and is Co-Chair of the Expert Committee.

- Ariza v. Luxottica Retail North America (LensCrafters): Cohen Milstein represents a putative class of purchasers of LensCrafters' Accufit Digital Measurement System (Accufit) services, who allege that LensCrafters used false, misleading advertising and deceptive sales practices about Accufit being "five times more accurate" in measuring pupillary distance than traditional methods, to induce customers to purchase LensCrafters' higher-priced prescription lens products. Ms. Handmaker Guido is Lead Associate in this litigation.

Some of her past successes include:

- In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Product Liabilities Litigation: Ms. Handmaker Guido is Lead Associate in this class action against Lumber Liquidators alleging that the company falsely labeled its products as meeting or exceeding California Air Resource Board Emission standards with regard to the level of formaldehyde, a carcinogen, contained therein. In June 2018, the Court preliminarily approved a $36 million settlement.

- In re Anthem, Inc. Data Breach Litigation:  Cohen Milstein is Co-Lead Counsel on behalf of a putative class of approximately 80 million insureds involving the massive data breach of Anthem, Inc. in 2015, one of the nation's largest for-profit health care companies, resulting in the theft of personal and health information. In August 2018, the Court granted final approval to a $115 million settlement, making it the largest data breach settlement in history. Ms. Handmaker Guido was involved in all aspects of the litigation.

- In re Home Depot, Inc. Customer Data Security Breach Litigation: Cohen Milstein is a member of the Plaintiffs' Steering Committee in this class action and chair of the Expert Committee, representing financial institutions that issued more than 56 million debit and credit cards to Home Depot patrons. The case arose out of the 2014 Home Depot data breach that affected hundreds of financial institutions and more than 40 million consumers. In September 2017, the Court granted final approval of a $25 million settlement.

- In re Vizio, Inc., Consumer Privacy Litigation: Cohen Milstein is a member of the Plaintiffs' Steering Committee in this closely-watched data privacy class action alleging that Vizio Smart TVs contain a default feature that tracks what viewers watch and then matches this information with other information collected about the customers, allowing Vizio to sell personal information about its customers to third parties for profit without adequately disclosing such collection and dissemination of data. The Court largely denied two rounds of Vizio motions to dismiss, sustaining novel and ground-breaking claims under the Video Privacy Protection Act and the Wiretap Act. Ms. Handmaker Guido was responsible for drafting significant portions of Plaintiffs' opposition to these motions and, in particular, the briefing related to the Wiretap Act claims.  She was also closely involved in the discovery process. A potential settlement has been reached in this matter.

Ms. Handmaker Guido maintains an active pro bono practice involving notable matters, such as:

- Vivian Englund v. World Pawn Exchange, LLC: Representing the estate of a Kristen Gates, who was shot to death by a mentally ill man, Jeffrey Boyce, who came into possession of the firearm through his mother, Diane Boyce, a straw purchaser, who illegally purchased the firearm and other firearms over the internet from two firearms distributors in violation of federal and Oregon state laws. Injunctive relief to halt all online gun sales in Oregon is sought.

She has also been recognized for her pro bono work with the Lawyers Committee for Civil Rights Under Law's Voting Rights Project.

Ms. Handmaker Guido is a member of The Sedona Conference, specifically Working Group 1: Electronic Document Retention & Production, and Working Group 11: Data Security and Privacy Liability. She is also an active member of the American Association for Justice (AAJ), having published several articles for AAJ publications, including "Ethical Concerns and Suggested Approaches to Ghostwritten Class Action Objections," AAJ Class Action Litigation Group Newsletter (Summer 2018), and "Good Counsel: Using Conjoint Analysis to Calculate Damages," AAJ Trial Magazine (June 2018).

Ms. Handmaker Guido attended the University of Southern California, graduating summa cum laude with a B.A. in Psychology and a B.A. in Political Science.  Her undergraduate honors thesis, "'How Did You Feel?': Increasing Child Sexual Abuse Witnesses' Production of Evaluative Information," was published in the American Psychological Association's Law and Human Behavior journal.

Ms. Handmaker Guido received her J.D. from the University of Virginia School of Law. While in law school, she served as an intern at the U.S. Department of Justice's Criminal Division focusing on cases involving child sexual abuse. She also served on the board of The Virginia Innocence Project, the University of Virginia's arm of the national litigation and public policy organization dedicated to exonerating wrongfully convicted people through DNA testing and reforming the criminal justice system. Ms. Handmaker Guido also participated in the University of Virginia School of Law's Moot Court program and served on the Editorial Board of the Journal of Law & Politics.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

| | |
|---|---|
| Andrew J. McGuinness (P42074) | Kathleen H. Klaus (P67207) |
| ANDREW J. MCGUINNESS, ESQ. | Jesse P. Roth (P78814) |
| 122 S Main St, Suite 118 | MADDIN, HAUSER, ROTH & HELLER, PC. |
| P O Box 7711 | 28400 Northwestern Hwy, 2nd Floor |
| Ann Arbor, MI  48107 | Southfield, MI  48034 |
| Phone: (734) 274-9374 | (248) 359-7520 |
| drewmcg@topclasslaw.com | kklaus@maddinhauser.com |
| | jroth@maddinhauser.com |
| Andrew N. Friedman (*admitted*) | |
| Sally M. Handmaker (*admitted*) | Charity A. Olson (P68295) |
| COHEN, MILSTEIN, SELLERS & TOLL PLLC | BROCK & SCOTT PLLC |
| 1100 New York Ave NW, Suite 500 | 2723 S State St, Suite 150 |
| Washington, DC  20005 | Ann Arbor, MI  48104 |
| Phone: (202) 408-4600 | Phone: (734) 222-5179 |
| afriedman@cohenmilstein.com | Charity.Olson@brockandscott.com |
| shandmaker@cohenmilstein.com | |
| | *Counsel for Trott Law, P.C.* |
| Daniel R. Karon (*admitted*) | |
| KARON LLC | Joseph Aviv (P30014) |
| 700 W St Clair Ave, Suite 200 | Bruce L. Segal (P36703) |
| Cleveland, OH  44113 | HONIGMAN MILLER SCHWARTZ & COHN LLP |
| Phone: (216) 622-1851 | 39400 Woodward Ave, Suite101 |
| dkaron@karonllc.com | Bloomfield Hills, MI  48304 |
| | Phone: (248) 566-8300 |
| *Counsel for Plaintiffs and the Class* | javiv@honigman.com |
| | bsegal@honigman.com |
| | |
| | *Counsel for David A. Trott* |

_____/

**DECLARATION OF ANDREW J. MCGUINNESS IN SUPPORT
OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

I, Andrew J. McGuiness, declare:

1.      I am one of the attorneys of record in the above-captioned lawsuit ("Action") against Trott Law P.C. and David A. Trott (collectively, "Defendants").  I have practiced law since 1988.  I am currently a sole practitioner with an office in Ann Arbor, Michigan.  I have been litigating class actions since 1989, after serving as a law clerk to the Hon. Frank Coffin of the U.S. Court of Appeals for the First Circuit. I make this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives (the "Motion").

2.      I acted as lead counsel throughout this Action, and was appointed Co-Lead Counsel for the Class by this Court along with Andrew N. Friedman of Cohen Milstein Sellers & Toll PLLC.  Together our firms carried out the duties of Co-Lead Class Counsel including conducting discovery (including, among other things, review of document production, review of privilege log, and conducting depositions), briefing discovery motions and motions for reconsideration, and, ultimately, undertaking the settlement negotiations that led to the Settlement presently before this Court.

3.      Over the last four years, I have analyzed and developed plaintiffs' legal theories and causes of action; conducted a thorough and ongoing investigation of matters pertinent to this Action; marshalled the legal and technical resources required to pursue an action of this complexity and challenge;

2

orchestrated, strategized, and took discovery essential to the development of the claims (including defending and taking all depositions); interviewed consulting and potential trial experts; coordinated the review of a massive amount of Electronically Stored Information (ESI) produced by Defendant Trott Law, PC; engaged in robust motions practice; and, ultimately, played the key role in resolving this action in a manner favorable to the Class.  I have worked hard to ensure that the class claims would survive the Defendants' five dispositive motions and attempts to limit recovery.  Also, I have worked to resolve several hard-fought discovery disputes with efficiency and effectiveness.  We retained excellent ESI litigation support resources and worked diligently to address, resolve, and lessen the cost of substantial ESI challenges. Additionally, me and my Co-Lead Class Counsel have reviewed—and had access to databases housing—large volumes of documents produced by Defendants and through discovery in this Action.

4.      The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by me and professional support staff who were involved in this Action through August 17, 2018. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates for complex commercial and consumer class actions. Exhibit A was prepared from

contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for myself and professional support staff included in Exhibit A are the usual and customary hourly rates charged for our services in similar complex litigation.[1]  I am familiar with and have reviewed rates routinely charged for complex class actions by attorneys of similar experience in Michigan, in Detroit, and in comparable Midwest cities, and have discounted my rate to those rates to account for my smaller firm size.  *See Shane Grp. v. Blue Cross Blue Shield,* Case No. 2:10-cv-14360, Doc # 170-1 (filed 10/24/14), at Pg 5 of 109, Pg ID 5788 *et seq.* (documenting hourly rates of up to $800 for plaintiffs' class action lawyers in Detroit in 2014.) *See also*, *Id.*, ECF # 213, at 35-39 (03/31/15) (approving 1/3 award backed up by lodestar cross-check using above-referenced rates), *rev'd on other grounds, Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016). My hourly rate as reflected on Exhibit A is comparable to what I currently charge for defense or plaintiff complex class action work on a non-contingent basis.  In this Action, my work has been performed entirely on a contingent fee basis.

---

[1] The "paralegal" rate used for attorney Tiffany Ellis was discounted to reflect the fact that although she was admitted in the Illinois bar at the time, she had not yet been admitted to the Michigan bar at the time I tasked her to perform paralegal duties in support of the Action. She has since been admitted in this jurisdiction, and at all times relating to this Action has been a member of the bar of this Court.

5.     The total number of hours reasonably expended on this litigation by my firm to August 17, 2018 is 2,002.4. The total lodestar for my firm at current rates is $1,433,015.00. I have reviewed time and billing records to confirm that the lodestar submitted is accurate. Expense items are billed separately and are not duplicated in my firm's lodestar.

6.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

7.     For almost 30 years I have worked primarily on complex litigation matters, with an emphasis on class actions. The devotion of much of my time, energy and resources to this Action over the past several years has been in lieu of other cases and opportunities that I would otherwise have devoted my resources to.

8.     My firm incurred a total of $8,532.84 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this Action. A summary of those expenses by category is attached as Exhibit B.

9.     A concise summary of my background and experience is attached as Exhibit C hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28, 2018

_____
Andrew J. McGuinness

# Exhibit A

BRIAN J. MARTIN, ET AL., V. TROTT LAW P.C., ET AL.
Case No. 2:15-cv-12838

## LODESTAR REPORT

FIRM NAME:  ANDREW J. MCGUINNESS, ESQ.

REPORTING PERIOD: May 3, 2014, through August 17, 2018

| Legal Professional | | Billing Rate | Number of Hours | Lodestar ($) |
|---|---|---|---|---|
| McGuinness, Andrew | P | $725 | 1,967.4 | $1,426,365.00 |
| | | | | |
| PARALEGALS | | | | |
| Ellis, Tiffany | PL | $190 | 35 | $6,650.00 |
| | | | | |
| **Total** | | | **2,002.4** | **$1,433,015.00** |

P = Partner
A = Associate
OC = Of Counsel
PL = Paralegal

# Exhibit B

BRIAN J. MARTIN, ET AL., V. TROTT LAW P.C., ET AL.
Case No. 2:15-cv-12838

**EXPENSE REPORT**

FIRM NAME: ANDREW J. MCGUINNESS, ESQ.

REPORTING PERIOD: Nov. 18, 2014 through August 28, 2018

| DESCRIPTION | TOTAL |
|---|---|
| Court Filing Fee | $200.00 |
| Legal Consulting Fee | $320.00 |
| Mail: | $170.43 |
| Lexis/Pacer | $5,644.43 |
| Transportation Expenses: | |
| Transportation (mileage) | $1,652.20 |
| Parking Charges | $293.00 |
| Business Meals | $252.78 |
| **TOTAL EXPENSES** | **$8,532.84** |

# Exhibit C

# ANDREW J. MCGUINNESS, ESQ.

## Background

Andrew ("Drew") McGuinness attended the University of Michigan Law School, where he served as Article Editor of the Michigan Law Review and was active in Moot Court and a member of the Campbell Moot Court Board.  He graduated *magna cum laude* and was elected to the Order of the Coif.  After law school he clerked for the Hon. Frank M. Coffin of the United States First Circuit Court of Appeals. He was first admitted to practice in Michigan in 1988, and is admitted to practice in numerous federal courts.

## Experience

Mr. McGuinness has trained and practiced at some of the most respected law firms in the country. He spent several years at Skadden, Arps (Chicago), where he developed a broad range of skills engaging in all aspects of complex commercial litigation, including securities, control contests, and antitrust matters. At Dykema Gossett, where he was an equity member of the firm, he served as head of the Class Action Defense Team and was active in training and mentoring the firm's litigation associates.

In the twenty years Drew worked at these two firms he represented numerous clients in securities, antitrust, and consumer class actions, including claims under various sections of the Securities Act, the Securities Exchange Act, the Williams Act, the Sherman Act, the Clayton Act, and various state "blue sky", antitrust, and consumer protection laws. He has litigated numerous issues under the Private Securities Litigation Reform Act ("PSLRA"), the Securities Litigation Uniform Standards Act ("SLUSA"), the Class Action Fairness Act ("CAFA"), and the Federal Arbitration Act ("FAA").  He has arbitrated and mediated numerous disputes and has negotiated many settlements. His previous clients include Sears, Best Buy, Federal Mogul, Honeywell, Comshare, ProQuest, Abbott Laboratories, and many others. Mr. McGuinness served as lead counsel for Ford Motor Company in In re Speed Control Deactivation Switch Products Liability Litigation, Case No. MDL-1718, in the Eastern District of Michigan (Friedman, C.J.) (believed to be the largest auto recall in history before the Takata Air Bag recall), for over five years.

In 2010 he founded Andrew J. McGuinness, Esq., a litigation boutique centered on class actions, antitrust, and other complex commercial litigation. Since forming his own practice, Mr. McGuinness has been co-lead counsel or played a substantial role in numerous complex litigation matters representing plaintiffs.

Among these are *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Marketing Durabilty Marketing and Sales Practices and Products Liability Litigation,* Case No. 1:15-md-2627 (E.D. Va.); *Gordon, et al., v. Amadeus IT Group, S.A., et al.*, Case No. 1:15-cv-05457 (S.D.N.Y.); *In Re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation,* MDL NO. 2577 (D.N.J.)*; and Solo v. United Parcel Service Co.,* Case No. 2:14-cv-12719 (E.D. Mich.).

## Bar Leadership and Peer Recognition

Mr. McGuinness is a member of the State Bar of Michigan, the Federal Bar Association, and the American Bar Association, where he is a member of its Litigation Section. He has served on the Planning Committee of the ABA National Institute on Class Actions for ten years, where he has moderated numerous panels on class action topics.  Mr. McGuinness teaches the ABA-sponsored course "Class Actions 101," which he developed, annually in conjunction with the Institute. He has served as co-chair of the ABA Class Action Committee Antitrust Subcommittee since 2005. He is past co-editor of the ABA's Securities Litigation News.

Mr. McGuinness has authored numerous publications and presented at many seminars about class actions, including the Impact Fund's Class Action Seminar (Berkeley, CA).  Most recently, he co-authored two chapters for the ABA Litigation Section's new Class Action Strategy and Practice Guide:  Class Certification Strategy, and Trial Plans.

In 2018 the ABA Antitrust Section published a new edition of their book, Antitrust Class Actions Handbook, Second Edition.  Mr. McGuinness authored the chapter: Antitrust Class Certification Standards.  He also edited the chapter The Role of Experts in Antitrust Class Certification for this book

Mr. McGuinness periodically teaches at ethics programs and regularly serves on moot courts at the University of Michigan Law School. He has tried cases on behalf of pro bono clients through the Chicago Lawyer's Committee on Civil Rights, including a landmark familial discrimination case, and through Legal Services for South Central Michigan. He is a member of Public Justice, a social and economic justice non-profit legal advocacy organization headquartered in Washington, D.C.

Additional information regarding Mr. McGuinness' background, experience, recognition and legal writing can be found at  www.topclasslaw.com .

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC
28400 Northwestern Hwy, 2nd Floor
Southfield, MI  48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**DECLARATION OF DANIEL R. KARON IN SUPPORT
OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS,
EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**

I, Daniel R. Karon, declare:

1.      I am an attorney admitted to practice in the Eastern District of Michigan and an attorney of record in the above-captioned lawsuit ("Action") against Trott Law P.C. and David A. Trott (collectively, "Defendants"). I have practiced law since 1991. I am a partner with the firm of Karon LLC ("Karon") in Cleveland, Ohio. I have been litigating class actions since 1992. I make this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives (the "Motion").

2.      My firm acted as Plaintiffs' Co-Counsel in this case along with Andrew J. McGuinness, Esq and Cohen Milstein Sellers & Toll PLLC ("Co-Lead Counsel"). Together with Co-Lead Counsel, my firm conducted and responded to discovery (including, among other things, review of document production, review of privilege log, and assisting with depositions) and briefing dispositive motions.

3.      Over the past three-plus years, we (and Co-Lead Counsel) have analyzed and developed plaintiffs' legal theories and causes of action, conducted discovery, and engaged in robust motion practice. We have worked hard to ensure that numerous claims would survive the Defendants' dispositive motions and attempts to limit recovery on a classwide basis. Also, we have worked to resolve several hard-fought discovery disputes with efficiency and effectiveness.

2

4.      The schedule attached as Exhibit A, and incorporated herein, is a
detailed summary of the amount of time spent by my firm's attorneys and
professional support staff who were involved in this litigation through August 14,
2018. It does not include any time devoted to preparing this declaration or otherwise
pertaining to the Motion. The lodestar calculation is based on my firm's current
billing rates, which are the same as when historically incurred. Exhibit A was
prepared from contemporaneous time records regularly prepared and maintained by
my firm. The hourly rates for my firm's attorneys and professional support staff
included in Exhibit A are the usual and customary hourly rates charged for their
services in similar complex litigation. In addition, my firm has submitted fee petitions
in other cases that have reported hourly rates at amounts identical to those sought
herein, and courts have approved an award of attorneys' fees in these cases. *See, e.g.,*
*Schwartz v. Avis Rent-A-Car System, LLC,* No. 11-cv-04052 (D.N.J.); *Traxler v. PPG*
*Indus., Inc*, No. 15-cv-00912 (N.D. Ohio.).  The total number of hours reasonably
expended on this litigation by my firm to August 14, 2018 is 173.50.  The total
lodestar for my firm at current rates is $101,334.50.  My firm conducted internal
audits to ensure that the lodestar submitted is accurate.  Expense items are billed
separately and are not duplicated in my firm's lodestar.

5.      The expenses my firm incurred in litigating this action are reflected in
the books and records of my firm.  These books and records are prepared from
expense vouchers, receipts, and check records and other source materials and

accurately reflect the expenses incurred.

6.      We at Karon work on a host of complex-litigation matters.  Devotion of our considerable time, energy and resources to this matter has been in lieu of that which might have been devoted to other matters

7.      My firm incurred a total of $519.65 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as Exhibit B.

8.      A copy of my firm's CV is attached as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 23, 2018

Daniel R. Karon

4

# EXHIBIT A

**Martin, et al. v. Trott Law P.C., et al.**

Civil Action No. 2:15-cv-12838 (DML)(DRG)

**LODESTAR REPORT**

FIRM NAME: Karon LLC

REPORTING PERIOD: Inception through August 14, 2018

| LEGAL PROFESSIONAL | BILLING RATE | NUMBER OF HOURS | LODESTAR |
|---|---|---|---|
| Daniel R. Karon (P) | $695 | 98.80 | $ 68,666.00 |
| Beau D. Hollowell (A) | $435 | 74.70 | $ 32,668.50 |
| Totals | | 173.50 | $ 101,334.50 |

P = Partner
SC = Senior Counsel
A = Associate
I = Investigator
PL = Paralegal

# EXHIBIT B

**Martin, et al. v. Trott Law P.C., et al.**

Civil Action No. 2:15-cv-12838 (DML)(DRG)

**EXPENSE REPORT**

FIRM NAME: Karon LLC
REPORTING PERIOD: Inception through August 14, 2018

| DESCRIPTION | TOTAL |
|---|---|
| Filing Fees | $200.00 |
| Postage | $1.17 |
| Lexis/Westlaw | $104.00 |
| Other Computer Services | $9.70 |
| Travel Expenes: | |
|    Mileage | $192.78 |
|    Parking | $12.00 |
| | |
| | |
| **TOTAL EXPENSES** | **$519.65** |

# EXHIBIT C

# Daniel R. Karon

Karon LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113–1998
Telephone: (216) 622–1851
Facsimile: (216) 241–8175
E–mail: dkaron@karonllc.com
Web: www.karonllc.com

## SUMMARY

Mr. Karon is a class-action trial attorney specializing in antitrust, consumer–fraud, and wage-and-hour litigation. He began his class-action career with Much Shelist Freed Denenberg Ament & Rubenstein, P.C. in Chicago. He now manages Karon LLC. He represents individuals in antitrust, consumer–fraud, wage-and-hour, and other class-actions, and he has represented domestic and international corporations in domestic and international antitrust class-action matters. He also defends corporations in consumer-fraud class actions.

Mr. Karon teaches class-action law as a lecturer in law at Columbia Law School. He has also been a lecturer in law at Cleveland State University's Cleveland-Marshall College of Law. He lectures on class-action law at multiple other law schools and serves on Loyola University Chicago School of Law's Institute for Consumer Antitrust Studies' U.S. Advisory Board. He chairs the ABA's National Institute on Class Actions, writes a bimonthly column for Law360, was an editorial board member and contributing author to the ABA's Litigation Section's *Class Actions Today-Jurisdiction to Resolution* magazine, was a member of the Ohio Association of Justice's Board of Trustees, and served as an editorial board member for the Ohio Academy of Justice's *Ohio Trial* magazine. He has published multiple law review and bar journal articles on class-action topics, and he lectures nationally on class actions for the ABA and other bar associations.

In addition to various antitrust and consumer-fraud class actions, Mr. Karon was extensively involved in the *LCD–TFT Indirect Purchaser Antitrust Litigation* (nationwide price-fixing class action that settled for $1.1 billion), *Vitamins Direct Purchaser Antitrust Litigation* (nationwide price-fixing class action that resolved for $2 billion), *NASDAQ Market-Makers Antitrust Litigation* (nationwide price-fixing class action that settled for $1.027 billion), *Cathode Ray Tubes (CRT) Antitrust Litigation* (nationwide price-fixing class action that settled for $586 million), *Monosodium Glutamate Antitrust Litigation* (nationwide price-fixing class action that settled for $130 million), *Methionine Antitrust Litigation* (nationwide price-fixing class action that settled for $101 million), and *Sorbates Direct Purchaser Antitrust Litigation* (nationwide price-fixing class action that settled for $94.5 million). He serves or served as lead counsel in multiple cases, including *Magnesium Oxide Antitrust Litigation, Aftermarket Sheet Metal Indirect Purchaser Antitrust Litigation, City of Lorain v. Medical Mutual Insurance Co., Dairy Indirect-Purchaser Antitrust Litigation, Johnson v. Evangelical Lutheran Church of America, Schwartz v. Avis Rent-A-Car Corp., Klein v. Budget Rent-A-Car Group, Bausch & Lomb Contact Lens Product Liability Litigation* and *Schwartz v. Alltel Corp.* He was discovery co-chair in the *Bulk Graphite Antitrust Litigation,* class-certification co-chair in the *Pressure Sensitive Labelstock Antitrust Litigation,* and briefing co-chair in the *EPDM Antitrust Litigation* and *Carbon Black Antitrust Litigation.*

## EDUCATION

J.D., 1991
    Michael E. Moritz College of Law, The Ohio State University
    Member, *The Ohio State Journal on Dispute Resolution*
    Quarterfinalist, First-Year Moot Court Competition

B.A., Speech Communication, 1988
Certificate, Jewish Studies, 1988
    Indiana University-Bloomington
    Dean's List, 1984–1987

## TEACHING EXPERIENCE

Lecturer in Law, Columbia Law School
Spring 2018
    Complex litigation and class-action law

Lecturer in Law, Cleveland-Marshall College of Law, Cleveland State University
February 2005–2007
    Class-action law

Lecturer, Michael E. Moritz College of Law, The Ohio State University
February 2008–Present
    Class-action law

Lecturer, Columbia Law School
February 2013–2017
    Class-action law

Lecturer, University of Michigan Law School
October 2018
    Class-action law

Lecturer, Vanderbilt Law School
April 2013
    Class-action law

Lecturer, Notre Dame Law School
February 2015
    Class-action law

Lecturer, Tulane Law School
November 2013
    Class-action law

Lecturer, University of Georgia School of Law
November 2015
    Class-action law

Lecturer, Benjamin N. Cardozo School of Law, Yeshiva University
April 2014
    Class-action law

Lecturer, Loyola University Chicago School of Law
November 2013
    Class-action law

## BAR ADMISSIONS

United States Court of Appeals for the Third Circuit 2016

United States District Court for the Eastern District of Michigan, 2015

United States Court of Appeals for the Sixth Circuit 2013

United States District Court for the Southern District of Ohio, 2004

United States District Court for the Northern District of Ohio, 1998

United States Court of Appeals for the Seventh Circuit, 1995

United States District Court for the Northern District of Illinois, 1991

Ohio, 1997

Illinois, 1991

## CLASS-ACTION EXPERIENCE

Karon LLC, Cleveland, OH
Owner, 2014–Present

Goldman Scarlato Karon & Penny, P.C., Cleveland, OH
Owner, 2002–2014

Gallagher Sharp Fulton & Norman, Cleveland, OH
Attorney, 2000–2002

Law Offices of Daniel R. Karon, Cleveland, OH
Owner, 1998–2000

3

Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, IL
Attorney, 1994–1998

## PUBLICATIONS

Editorial, *It's Prime Time for a Dose of Reality on Brett Kavanaugh,* LAW360 (August 2, 2018)

Editorial, *After Trump's Policy Purges, Who Speaks for the Victims?,* LAW360 (May 2, 2018)

Editorial, *Why Contempt for the CFPB Is a Big Business Mistake,* LAW360 (Oct. 28, 2017)

Editorial, *How Plaintiffs and Defense Counsel Misperceive Each Other,* LAW360 (Sept. 25, 2017)

*Why "Class Action Attorney Fees" Are Such Dirty Words,* NATIONAL ASSOCIATION OF LEGAL FEE ANALYSIS (July 18, 2017)

Editorial, *Why "Class Action Attorney Fees" Are Such Dirty Words,* LAW360 (July 14, 2017)

Editorial, *Bundle Up Defense Counsel. Winter's Coming,* LAW360 IN-DEPTH (May 2, 2017)

*Killing Class Actions Means Everybody Loses,* THE CLS BLUE SKY BLOG—COLUMBIA LAW SCHOOL BLOG ON CORPORATIONS AND THE CAPITAL MARKETS, (Apr. 7, 2017)

*The Death of Class Actions?,* ACSBLOG, AMERICAN CONSTITUTION SOCIETY (Mar. 3, 2017)

Editorial, *Killing Class Actions Means Everybody Loses,* LAW360 (Mar. 17, 2017)

*The Class Action Fairness Act: Law and Strategy,* Chapter 9 (2016)

*The "Fairness" in Class Action Litigation Act,* 42:4 LITIGATION 8 (Summer 2016)

Editorial, *Dow Chemical's Post-Scalia Settlement is a Spin Doctor's Delight,* THE NATIONAL LAW JOURNAL, SUPREME COURT BRIEF (Apr. 25, 2016)

Editorial, *Dow Chemical's Post-Scalia Settlement is a Spin Doctor's Delight,* THE NATIONAL LAW JOURNAL (Apr. 25, 2016)

Editorial, *Federal Class-Action Reform Effort Courts Serious Risks,* CLEVELAND PLAIN DEALER (Nov. 20, 2015)

*Is it CAFA or Kafka? Effectively Pleading Multistate Class-action cases after the Class Action Fairness Act,* THE OHIO ASSOCIATION FOR JUSTICE QUARTERLY 21 (Oct. 2014)

*Reflections from the 2013 National Institute on Class Actions,* 24 ABA's CLASS ACTIONS & DERIVATIVE SUITS 1 (Fall 2013)

4

*Suspicionless Strip Searches—What's Next?*, 39:1 Litigation 8 (Winter 2013)

*Ripped from the Headlines—Ten Lawyers Look at the Story*, 38:2 Litigation 25 (Winter 2012)

*"T'was Three Years After Twombly and All Through the Bar, Not a Plaintiff Was Troubled From Near or From Far." The Unremarkable Effect of the U.S. Supreme Court's Re-expressed Pleading Standard in Bell Atlantic Corp. v. Twombly*, 44 U.S.F. L. Rev. 571 (2010)

*The Unremarkable Effect of Bell Atlantic Corp. v. Twombly on Pleading Class–Action Complaints*, 11:2 ABA's Comm'l & Bus. Litig. 6 (Spring 2010)

*Is it CAFA or Kafka*, AAJ's Trial Magazine 24 (July 2009)

*ABA's Consumer Protection Law Developments*, Chapter 5 State Consumer Law, § 36 Ohio (2009).

*"When Congress Gives You Lemons . . ." Plaintiffs' Attorneys are Forced by the Class Action Fairness Act to Devise Innovative New Ways to Prosecute Interstate Class Actions*, Plaintiff Magazine 1 (Feb. 2008)

*Multi–State Class Actions After CAFA—Preserving Consumers' Rights by Pleading Creatively*, ABA's Class Actions Today 9 (2007)

*"How Do You Take Your Multi–State, Class action Litigation? One Lump or Two?" Infusing State Class action Jurisprudence into Federal, Multi-State Class-Certification Analyses in a "CAFA-nated" World*, 46 Santa Clara L. Rev. 567 (2006)

*Unjust Enrichment's Application to Consumer Price fixing, Class action Claims*, 16 ABA's Class Actions & Derivative Suits 1 (Winter 2006)

*Undoing the Otherwise Perfect Crime. Applying Unjust Enrichment to Consumer Price fixing Claims*, 108 W. Va. L. Rev. 395 (2005)

*A Non-Class-action lawyer's Guide to Ohio Consumer Class Actions—Understanding the Basics and Recognizing Opportunities*, 14:3 Ohio Trial 26 (2005)

*Price Fixing and Market Allocation—What to Avoid, What to Watch For*, 2.2 ABA's Antitrust Counselor 1 (2005)

*"Your Honor, Tear Down that Illinois Brick Wall!" The National Movement Toward Indirect Purchaser Antitrust Standing and Consumer Justice*, 30 Wm. Mitchell L. Rev. 1351 (2004)

*Price Fixing, Market Allocation and Bid Rigging Conspiracies: How to Counsel Your Clients to Detect Violations and Inform You of Potential Claims*, 25 Amer. J. Trial Advoc. 241 (2002)

*Collusion Central. Helping Your Clients Deal with Price Fixers*, 11:3 ABA's Bus. L. Today 9 (2002)

*A Practitioner's Primer on Securities Fraud Class Action Litigation*, 69:6 Clev. Bar J. 8 (1998)

*Kicking Our Gift Horse in the Mouth—Arbitration and Arbitrator Bias: Its Source, Symptoms and Solutions,* 7 OHIO ST. J. ON DISP. RESOL. 315 (1992)

*Winning Isn't Everything, It's the Only Thing. Violence in Professional Sports: The Need for Federal Regulation and Criminal Sanctions,* 25 IND. L. REV. 147 (1991)

## SPEAKING ENGAGEMENTS

Program Chair and Moderator, ABA's 22nd Annual National Institute on Class Actions, "Second to None. Class Actions 101," "Write to the Point. Class Actions 201," Chicago, IL, October 18–19, 2018, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, GMA Legal Conference, "What in the World was He Thinking?  A Look Inside the Mind of a Plaintiff's Attorney, and How to Respond," February 26–27, 2018, sponsored by the Grocery Manufacturers Association

Plenary Moderator, ABA's Corporate Counsel Seminar, "Class Actions Scared Straight: Real Class-Action Stories, Strategies, and Solutions from Both Sides of the 'v.,'" La Quinta, CA, February 17, 2018, sponsored by the ABA's Corporate Counsel Section

Panelist, ABA Environmental & Energy, Mass Torts, and Products Liability Litigation Committees' Joint CLE Seminar, "Brave New World: Perspectives on the Regulatory and Legal Landscape One Year into Trump's Administration," January 27, 2018, Whistler, BC, sponsored by the ABA's Environmental & Energy, Mass Torts, and Products Liability Litigation Committees

Panelist, Harris Martin Plaintiff Opioid MDL Conference, "Third-Party Payor, Class, and Hospital Claims," January 8, 2018, sponsored by Harris Martin

Program Chair and Moderator, ABA's 21st Annual National Institute on Class Actions, "Debating the Language. Class Actions 101," "Let's Vote on It. Class Actions 201," "Join the Writing Revolution. Class Actions 301," "Build That Wall . . . or Maybe Not. H.R. 985 and the End of Class Actions?" Washington, DC, October 26–27, 2017, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Speaker, AAJ's 2017 Annual Convention, "How to Grow Your Practice by Recognizing Antitrust Cases" and "The Art of Beautiful Legal Writing," Boston, MA, July 22, 2017, sponsored by American Association for Justice

Speaker, AAJ Continuing Legal Education Conference, "The Future of Class Actions: Teamwork, Savvy Defense, and Smart Offense," Nashville, TN, May 11, 2017, sponsored by American Association for Justice

Panelist, GMA 2017 Legal Conference, "Fighting Back Against Class Action Litigation," San Diego, CA, February 27–28, 2017, sponsored by the Grocery Manufacturers Association

Panelist, OSBA Federal Courts & Practice Committee Bench Bar Conference, "Class Certification Analysis after *Duke* & *Comcast*, October 27–28, 2016, sponsored by the Ohio State Bar Association

Program Chair and Moderator, ABA's 20th Annual National Institute on Class Actions, "'Coming Out?' It's Class Actions 101," "'Box the Trifecta.' Let's Play Class Actions 301," "'From Mirage to Immense.' The Genesis, Creation, and Evolution of Rule 23 with Professor Arthur Miller," and "'Hitting the Jackpot!' A One-on-One Class-Action Conversation with Judge Richard Posner," Las Vegas, NV, October 19–20, 2016, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "No BigLaw? No Problem! How Small-Firm Plaintiff and Defense Lawyers Are Managing Some of the Largest Class-Action Litigation Matters," May 27, 2016, sponsored by the ABA

Panelist, "Cross-Industry Interdisciplinary Summit on Class Actions," New York, NY, April 11–12, 2016, sponsored by American Conference Institute

Panelist, "Is this CAFA or Kafka?  Multi-State Actions in a Time of Metamorphosis," Litigation Section Annual Conference, Chicago, IL, April 14, 2016, sponsored by the ABA

Program Chair and Moderator, ABA's 19th Annual National Institute on Class Actions, "'Who Dat?!' It's the Return of Class Actions 101 and Class Actions 201" and "You Have a Choice, *Picayune*—'Economic Loss' or 'No-Injury' Class Actions. Either Way, Does a Legal Claim Exist?" New Orleans, LA, October 22–23, 2015, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Program Chair, "Antitrust for Non-Antitrust Lawyers: How to Grow Your Business by Recognizing New Opportunities," National Teleseminar, January 15, 2015, sponsored by American Association for Justice

Program Chair and Moderator, ABA's 18th Annual National Institute on Class Actions, "Second to None. Class Actions 101" and "Who Needs *The Second City*?" Class Certification from A(kroyd) to (Lovit)Z: A Three-Act Play," Chicago, IL, October 23–24, 2014, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, Ohio Association of Justice's Annual Convention, "Class Actions for Non-Class Action Attorneys. How to Grow Your Business by Recognizing New Opportunities," Columbus, OH, May 8, 2014, sponsored by Ohio Association for Justice

Panelist, Article III Standing and Rule 23(b)(3) Certification: Emerging Litigation Trends, December 3, 2013, National Teleseminar, sponsored by Strafford Publications

Program Chair and Moderator, ABA's 17th Annual National Institute on Class Actions, "Listen Co-Counsel, You'll Learn a Ton, It's Time for Class Actions 101" and "'Show Me the Money!!! . . . or Don't.' *Cy Pres* Recoveries, Requests for Attorneys' Fees, and Does This Amount to a Hill of Beans?" Boston, MA, October 23–24, 2013, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, Ohio State Bar Association's 2012 Great Lakes Antitrust Institute, "New Developments in Antitrust Law," Columbus, OH, November 2, 2012, sponsored by the Ohio State Bar Association

Program Chair and Moderator, ABA's 16th Annual National Institute on Class Actions, "'The Class Definition that Works . . . or Does It?' Strategies for Pleading and Attacking Class Definitions—The Most Basic and Most Ignored Step in a Class-action lawsuit's Success or Failure," Chicago, IL October 25, 2012, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Program Chair and Moderator, "Reexamining the Class Action Practice and Considering Where it—Indeed, *We*—Go From Here," Chicago, IL, August 3, 2012, sponsored by the ABA

Moderator and Panelist, "Everything MDL. First-Hand Perspectives from MDL Panel Judges, MDL District Court Judges, and MDL Lawyers," Cleveland, OH, July 25, 2012, sponsored by the Cleveland Metropolitan Bar Association and the Federal Bar Association, Northern District of Ohio Chapter

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, January 31, 2012, sponsored by Strafford Publications

Panelist, "Trends in Federal Circuit Class Certification Rulings," National Teleseminar, January 19, 2012, Law Seminars International

Program Chair and Moderator, ABA's 15th Annual National Institute on Class Actions, "The Practice that Never Sleeps: Reexamining the Class action Practice and Considering Where it—Indeed, *We*—Go From Here," New York, NY, October 14, 2011, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, *Wal–Mart v. Dukes,* Practical Implications of the Supreme Court's Landmark Class Action Ruling, National Teleseminar, June 30, 2011, sponsored by Law Seminars International

Panelist, ABA's 59th Annual Antitrust Law Spring Meeting, "Guilt by Association? Trade Associations, Cartel Investigations, and *Twombly,*" Washington, D.C., March 30, 2011, sponsored by the ABA's Antitrust Law Section

Panelist, "Pleading and Defending Class Actions: Leveraging the Latest Developments in CAFA Removal Jurisdiction," National Teleseminar, December 8, 2010, sponsored by Strafford Publications

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, November 2, 2010, sponsored by Strafford Publications

Program Chair and Moderator, ABA's 14th Annual National Institute on Class Actions, "'The Standard that Works . . . or Does It?' Deciding Choice–of–Law and Reliance/Causation/Deception Standards in Multistate, Consumer fraud Class actions After CAFA," Chicago, IL, October 14, 2010, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "Consumer Class action Litigation: Leveraging New Developments in Class Certification, Causation, and Reliance," National Teleseminar, April 20, 2010, sponsored by Strafford Publications

Panelist and Moderator, ABA's 13th Annual National Institute on Class Actions, "A Funny Thing Happened on the Way to the Courthouse . . . I Had to Litigate an Arbitration Clause! Crafting, Opposing, and Arguing Arbitration Clauses and Class action Waivers in Three Scenes," Washington DC, November 20, 2009, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist and Moderator, ABA's 13th Annual National Institute on Class Actions, A Funny Thing Happened on the Way to the Courthouse . . . I Had to Litigate an Arbitration Clause! Crafting, Opposing, and Arguing Arbitration Clauses and Class action Waivers in Three Scenes, San Francisco, CA, October 30, 2009, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panelist, "Litigating Class Actions Between Class Certification and Trial," National Teleseminar, August 11, 2009, sponsored by Strafford Publications

Panelist, "It Ain't Over Till it's Over: Litigating Class Actions After Class Certification and Before Trial," National Teleseminar, May 27, 2009, sponsored by ABA Litigation Section

Panelist, "Antitrust 101: Understanding, Pleading, and Defending Price fixing Claims," ABA Brown Bag Teleseminar, February 18, 2009, sponsored by the ABA's Section on Litigation

Panelist, "Pleading, Defending, and Settling Class Actions. Emerging Trends," National Teleseminar, December 9, 2008, sponsored by Strafford Publications

Panelist, Ohio State Bar Association's 2008 Antitrust Program, "When Opportunity Knocks . . . . Growing Your Business or Company's Bottom Line by Recognizing When, Whether, and How to Pursue Class action, Price fixing Claims," Columbus, OH, November 14, 2008, sponsored by the Ohio State Bar Association

Panelist and Moderator, ABA's 12th Annual National Institute on Class Actions, "'I Could Have Sworn It was CAFA, *not Kafka*!' The Metamorphosis of Pleading, Defending, and Settling Multi-State Class Actions—A Surreal-Life, Three-Act Play," New York, NY, November 7, 2008, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, "Class Actions: Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, October 31, 2008, sponsored by the Cleveland Bar Association

Panelist, "Pleading, Defending, and Settling Class Actions. Emerging Trends," National Teleseminar, May 13, 2008, sponsored by Strafford Publications

Panelist, Ohio Association for Justice's 2008 Annual Convention, "New Developments in Plaintiffs' Antitrust Law," Columbus, OH, May 9, 2008, sponsored by the Ohio Association for Justice

Lecturer, "Class Actions for Non-Class-action lawyers. Growing Your Business by Understanding the Basics and Recognizing Opportunities," Los Angeles, CA, February 21, 2008, sponsored by the Los Angeles County Bar Association

Panelist, "Class Action Removal Standards in Flux. New Litigation Strategies for Plaintiff and Defense Counsel," National Teleseminar, February 19, 2008, sponsored by Strafford Publications

Panelist and Moderator, ABA's 11th Annual National Institute on Class Actions, "The Nationwide Class: White Elephant, Endangered Species, or Alive and Well?" Chicago, IL, October 19, 2007, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Panel Co-Chair, ABA's 2007 Annual Meeting, "'Is this CAFA or Kafka?' Multi–State Class Actions in a Time of Metamorphosis—A Surreal-Life, Three-Act Play," San Francisco, CA, August 9–12, 2007, sponsored by the ABA

Panelist, ABA's 2007 Litigation Section Annual Conference, "The Last Laugh-Perspectives on CAFA," San Antonio, TX, April 11–14, 2007, sponsored by the ABA

Lecturer, "Class Actions for Non–Class-action lawyers," Los Angeles, CA, February 23, 2007, sponsored by the Los Angeles County Bar Association

Moderator, ABA's 10th Annual National Institute on Class Actions, Chicago, IL, October 27, 2006, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Lecturer, "The Business Litigation Seminar," Cleveland, OH, June 21, 2006, sponsored by the Cleveland Bar Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business—How to Avoid Being a Victim," Cleveland, OH, June 16, 2006, sponsored by the Cleveland Chemical Association

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, June 6, 2006, sponsored by the Cleveland Bar Association

Lecturer/Panelist, "Civil Practice and Litigation Techniques in Federal and State Courts," Charleston, SC, May 31, 2006, sponsored by ALI-ABA

Lecturer, "Class Actions for Non–Class-action lawyers," Los Angeles, CA, February 25, 2006, sponsored by the Los Angeles County Bar Association

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, December 6, 2005, sponsored by the Cleveland Bar Association

Lecturer, "Class Actions:  Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, November 18, 2005, sponsored by the Cuyahoga County Bar Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business-How to Avoid Being a Victim," Pittsburgh, PA, November 11, 2005, sponsored by the Pittsburgh Chemical Association

Moderator, "ABA's 9[th] Annual National Institute on Class Actions," Chicago, IL, September 23, 2005, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business-How to Avoid Being a Victim," Cleveland, OH, September 16, 2005, sponsored by the Cleveland Chemical Association

Featured Speaker, "Price Fixing and Market Allocation Schemes in the Commodity Chemicals Business–How to Avoid Being a Victim," Vail, CO, July 26, 2005, sponsored by the OC Chemical Dealers' Association

Lecturer, "Class Actions: Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, May 20, 2005, sponsored by the Cleveland Bar Association

Lecturer, "Class Actions for Non-Class-action lawyers," Miami, FL, May 13, 2005, sponsored by Lighthouse Seminar Group, Dallas, TX

Lecturer, "Class Actions for Non-Class-action lawyers: Understanding the Basics and Recognizing Opportunities," Phoenix, AZ, March 25, 2005, sponsored by the Maricopa County Bar Association

Lecturer, "Class Actions for Non-Class-action lawyers," Chicago, IL, January 21, 2005, sponsored by Lighthouse Seminar Group, Dallas, TX

Lecturer, "Recognizing Class Action Opportunities," Columbus, OH, December 12, 2004, sponsored by the Columbus Bar Association

Lecturer, "Class Actions: Understanding the Basics and Recognizing Opportunities," Cleveland, OH, May 28, 2004, sponsored by the Cleveland Bar Association

Lecturer, "Select Topics for Trial Lawyers, A Primer on Class Actions for the Non–Class Action Litigator in New York," New York, NY, August 11, 2004, sponsored by Lorman Educational Services, Eau Claire, WI

Lecturer, "The Business Litigation Seminar—Advanced Tactics and Motions," Cleveland, OH, December 12, 2003, sponsored by the Cleveland Bar Association

Lecturer, "Community Litigation Workshop," Detroit, MI, June 5, 1998, sponsored by the Firearms Litigation Clearinghouse, Washington D.C.

## PROFESSIONAL ACTIVITIES

American Bar Association, 2003–Present
  Chairperson, National Institute on Class Actions, 2010–Present
  Litigation Section, Co-Chair, Class Action and Derivative Suits Committee's Antitrust
  Subcommittee, 2007–2008
  Antitrust Section, 2008–2010

Contributor, A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)

Law360, Columnist, 2017–Present

American Society of Writers on Legal Subjects, 2004–Present
  Law Review Award Committee, 2004–2009
  Brief-Writing Committee, 2004–2009

American Association for Justice, 1998–Present
  Co-Chair, Class Action Litigation Group, 2018–Present
  Co-Vice Chair, Class Action Litigation Group, 2016–2018
  Secretary, Class Action Litigation Group, 2015–2016
  Co-Chair, Antitrust Subcommittee, 2016–Present
  Vice Co-Chair, Antitrust Subcommittee, 2015–2016
  ABA Liaison Committee, 2014–Present
  Rule 23 Subcommittee, 2014–Present

Class Action Trial Lawyers' Association, 2011–Present
  Executive Committee, 2011–Present

Cleveland Bar Association, 1997–2009

National Association for Consumer Advocates, 2003–2013

## BOARD MEMBERSHIPS AND CIVIC ACTIVITIES

Ohio Association for Justice, 2003–Present
  Board of Trustees, 2012–2016
  Chair, Consumer Law Section, 2014–2016

Cleveland Metropolitan Bar Association, Multidistrict Litigation Task Force, 2010–2012

Consumer-law correspondent, Your Legal Minute with the Lovable Lawyer, The Weekly Pulse,
WKYC-Cleveland, 2018–Present

Loyola University Chicago School of Law, Institute for Consumer Antitrust Studies' U.S.
Advisory Board, 2004–Present

IUvisors Student Advisors, Indiana University Alumni Foundation, 2014–Present

Antitrust Section Council Member, Ohio State Bar Association, 2007–Present
    Great Lakes Antitrust Institute Planning Committee, 2013

Cleveland Legal Aid Society
    Volunteer Attorney, 2014–2016

Public Justice, 2011–Present

Editorial Board, Ohio Academy of Trial Lawyers' *Ohio Trial* Magazine, 2004–2010

Class Action Advisory Board, Strafford Legal Publications, 2008–Present

Editorial Board, American Bar Association, Litigation Section's *Class Actions Today. Jurisdiction to Resolution* (special publication), 2007–2008

Assistant Coach, Northern Ohio Warriors Traveling Youth Baseball Club, 2014–2016

Fellow, Litigation Counsel of America Trial Lawyer Honorary Society, 2008–2010

Women's Community Foundation, Men's Executive Committee, 2004–2010

Judge, Landskroner Foundation for Children's 9th Annual Law Student Closing Argument Competition, 2007

Anti-Defamation League's Steinberg Leadership Institute, 1998–2000

Associate Attorney's Committee Co-Chair, Lawyers' Division, Jewish Federation of Metropolitan Chicago, 1995–1997

DePaul University College of Law, Moot Court Judge, 1993–1994

Sigma Alpha Mu, Sigma Zeta Housing Corporation, 2004–2009

Young Leadership Board, Jewish Federation of Metropolitan Chicago, 1993–1997

Young Leadership Board, Jewish Community Federation of Cleveland, 1997–2000

## HONORS AND AWARDS

Norvelle Scholarship for Academic Excellence, Indiana University, 1986

Ohio Super Lawyer, 2012–Present

Global Directory of Who's Who (Top Lawyer), 2015–Present

ABA Center for Professional Development Partner Appreciation Award Winner for Most Innovative Presentation, 2015

ABA Award for Outstanding Subcommittee Chair for the Class Actions & Derivative Suits Committee 2010–2011

Top Attorneys of North America, 2017–Present

Best Lawyers in America, Mass Tort Litigation/Class Actions—Plaintiffs, 2018–Present

Martindale-Hubbell AV Preeminent® Peer-Review Rating (reflecting combination of very high general ethical standards and legal ability and measuring legal knowledge, analytical capabilities, judgment, communication ability, and legal experience), 2012–Present

AcademicKeys Who's Who in Law Higher Education, 2017–Present

US News Best Lawyers–Best Law Firms, 2019

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| BRIAN J. MARTIN, YAHMI NUNDLEY, and KATHLEEN CADEAU, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>                         v.<br><br>TROTT LAW P.C., and DAVID A. TROTT,<br><br>                    Defendants. | Case No. 2:15-cv-12838<br><br>Hon. David M. Lawson<br><br>**DECLARATION OF SANFORD P. DUMAIN IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

I, Sanford P. Dumain, declare as follows:

1.      I am of counsel with the law firm, Milberg Tadler Phillips Grossman LLP, in New York, New York, and was a partner of Milberg LLP.[1] I am a member of the bar of this Court, and I submit this declaration in support of the Motion for Attorneys' Fees and Reimbursement of Expenses (the "Motion") in connection with services rendered in this litigation (the "Action"), as well as the reimbursement of expenses incurred by Milberg LLP in connection with this Action.

2.      My firm, primarily through Paul F. Novak, Diana Gjonaj, Elizabeth McKenna and others, participated in the Action until January 2017.

3.      Milberg acted as co-counsel in this Action and worked in coordination with other counsel. Work assignments in this Action were regularly made by co-counsel to avoid duplicative efforts. Among the tasks undertaken by Milberg LLP include the following:

- Assisted in drafting a comprehensive complaint, defending hard-fought motions to dismiss the complaint;

---

[1] Milberg Tadler Phillips Grossman LLP was established in 2018 by members of Milberg LLP and Sanders Phillips Grossman LLC. As of January 1, 2018, Milberg LLP's lawyers are now prosecuting new and active cases out of Milberg Tadler Grossman Phillips Grossman LLP.

- Propounded discovery that, following extensive research, negotiations with Defendants, and motion practice, resulted in the production of thousands of pages of documents;

- Reviewed and analyzed those documents;

- Propounded several sets of document requests and interrogatories on Defendants and issued deposition notices;

- Assisted in conducting depositions of employees of Defendants and third parties;

- Contended with discovery disputes and motions to compel; and

- Responded to Defendants' discovery requests of Class Representatives and prepared and defended the depositions of same.

**TIME AND EFFORT DEDICATED TO THE CASE**

4.     The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation into January 2017. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for my firm's partners, attorneys, and professional support staff included in Exhibit A are the usual and customary hourly rates at amounts comparable to those sought herein, and courts have approved an award of attorneys; fees in such cases.

5.     The total number of hours reasonably expended on this litigation by my firm from inception to January 2017 is 1,334.30. The total lodestar for my firm at current rates is $553,185.00.  Expense items are billed separately and are not duplicated in my firm's lodestar.

6.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

7.      My firm incurred a total of $39,185.40 in unreimbursed expenses, all of which are reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on August 26, 2018.


_____
                Sanford P. Dumain

# EXHIBIT A

**Martin, et al. v. Trott Law P.C., et al.**

Civil Action No. 2:15-cv-12838 (DML)(DRG)

**LODESTAR REPORT**

FIRM NAME: Milberg Tadler Phillips Grossman LLP

REPORTING PERIOD: Inception through January 2017

| LEGAL PROFESSIONAL | BILLING RATE | NUMBER OF HOURS | LODESTAR |
|---|---|---|---|
| Paul Novak (P) | $800.00 | 74.50 | $59,600.00 |
| Andrei Rado (P) | $625.00 | 4.50 | $2,812.50 |
| Elizabeth McKenna (SC) | $600.00 | 194.50 | $116,700.00 |
| Charles Slidders (SC) | $550.00 | 18.20 | $10,010.00 |
| W.S. Bursey (I) | $550.00 | 24.00 | $13,200.00 |
| Michelle Petrick (I) | $475.00 | 78.00 | $37,050.00 |
| John Hughes (A) | $375.00 | 3.9 | $1,462.50 |
| Diana Gjonaj (A) | $350.00 | 650.30 | $227,605.00 |
| Halene Bricker (PL) | $325.00 | 95.2 | $30,940.00 |
| Jason Joseph (PL) | $325.00 | 21.00 | $6,825.00 |
| Cindy Bomzer (PL) | $325.00 | 3.50 | $1,137.50 |
| Mark Andrews (PL) | $275.00 | 166.70 | $45,842.50 |
| **TOTAL** | | 1,334.30 | $553,185.00 |

P = Partner
SC = Senior Counsel
A = Associate
I = Investigator
PL = Paralegal

# EXHIBIT B

**Martin, et al. v. Trott Law P.C., et al.**

Civil Action No. 2:15-cv-12838 (DML)(DRG)

**EXPENSE REPORT**

FIRM NAME: Milberg Tadler Phillips Grossman LLP

REPORTING PERIOD: Inception through January 2017

| DESCRIPTION | TOTAL |
|---|---|
| Filing Fees | $7.99 |
| Court Reporting/Transcripts | $14,179.07 |
| Legal Courier | $0.00 |
| Other Court Fees | $909.16 |
| Expert Witness/Consultant | $5.00 |
| Other Publications | $327.47 |
| In-House Duplicating | $2,228.06 |
| Long Distance Telephone (Internal) | $0.00 |
| Long Distance (Third Party) | $11.95 |
| Postage: | |
|     Air Courier | $14.00 |
| Lexis/Westlaw | $21,202.25 |
| Other Computer Services | $0.00 |
| Travel Expenses: | $0.00 |
|     Transportation | $0.00 |
|     Hotel | $0.00 |
|     Long Distance Telephone | $0.00 |
|     Taxis, Tips | $23.90 |
|     Meals | $276.55 |
|     Parking Charges | $0.00 |
|     Internet | $0.00 |
| Secretarial Overtime | $0.00 |
| **TOTAL EXPENSES** | $39,185.40 |

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

## DECLARATION OF BRIAN MARTIN IN SUPPORT OF PLAINTIFFS' MOTIONS (1) FOR AWWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES AND (2) FOR FINAL APPROVAL OF CLASS SETTLEMENT

1.      I am one of the named plaintiffs in the Second Amended Complaint (Corrected) filed in this matter in August 8, 2016. I make this declaration based upon personal knowledge, and I am otherwise competent to be a witness in this matter.

2.      I received a letter from Trott PC informing me that Trott PC had been retained by Bank of America to foreclose on the home I owned in Trenton, Michigan and attempting to collect a debt allegedly owed by me on a note secured by a mortgage on my home.

3.      Since I first contacted my attorneys in connection with this matter, I have remained actively involved in this matter and have worked with my attorneys and with class counsel as follows:

- Worked with counsel in the investigation of my claims and plaintiffs' claims generally;

- Conferred with counsel regarding factual issues, including with respect to the original Complaint, First Amended Complaint, and the Second Amended Complaint;

- Worked with counsel to prepare plaintiffs' initial disclosures to Defendants;

- Worked with counsel on matters related to potential evidence in this case, including preservation issues;

- Consulted with counsel regarding discovery, both to Defendants, and that

2

Defendants sent to me—this included responding to Defendants' interrogatories and requests for production to me;

- Prepared and sat for Defendants' deposition of me, including travel from Trenton, MI to Bloomfield Hills, MI, and reviewed my deposition transcript for errors;

- Participated in three full day mediation sessions (two of which I attended on behalf of the other two class representatives, as permitted by Mediator Rosen);

- Reviewed and approved the settlement agreement; and

- Consulted with counsel regarding the status and progress of the litigation.

4.      In total, my work as a Class Representative involved approximately 130 hours of my time.

5.      I understand that per the settlement agreement, we as plaintiffs are asking the Court to award attorneys' fees. I support the attorneys' fee request in this matter and believe that our lawyers have worked hard and effectively on this case for my benefit and the benefit of the class. I also support plaintiffs' request for the reasonable costs and expenses incurred by the firms representing us. I understand that these sums will be paid from the gross settlement fund if approved by the Court.

6.      I also am, respectfully, requesting that the Court approve my service award in the amount of $5,000, as contemplated by the settlement agreement. This would be in recognition of the service I rendered to our fellow settlement class members throughout this case, as discussed above. As my lawyers have advised,

this sum was negotiated with Defendants following negotiation of class benefits. I submit the information in this declaration in support of my request.

7.      Finally, I support final approval of the settlement agreement in this matter. I understand that the Court has granted preliminary approval to it, and that the Court will hold a final approval hearing on September 27, 2018, per the current schedule. I believe that all things considered, the settlement here, which provides for a gross settlement fund consisting of $7.5 million, is fair and reasonable to me and fellow class members.

8.      I have submitted a claim for benefits in connection with the settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this **22** day of **AUGUST**, 2018, at **WYANDOTTE, MI**.

_____
BRIAN MARTIN

4

# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**DECLARATION OF YAHMI NUNDLEY IN SUPPORT OF PLAINTIFFS'
MOTIONS (1) FOR AWWARD OF ATTORNEYS' FEES, COSTS,
EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES
AND (2) FOR FINAL APPROVAL OF CLASS SETTLEMENT**

1.      I am one of the named plaintiffs in the Second Amended Complaint

(Corrected) filed in this matter in August 8, 2016.  I make this declaration based

upon personal knowledge, and I am otherwise competent to be a witness in this

matter.

2.      I received a letter from Trott PC informing me that Trott PC had been

retained by 21st Mortgage Corporation to foreclose on the home I owned in

Inkster, Michigan and attempting to collect a debt allegedly owed by me on a note

secured by a mortgage on my home.

3.      Since I first contacted my attorneys in connection with this matter, I

have remained actively involved in this matter and have worked with my attorneys

and with class counsel as follows:

- Worked with counsel in the investigation of my claims and plaintiffs' claims generally;

- Conferred with counsel regarding factual issues, including with respect to the original Complaint, First Amended Complaint, and the Second Amended Complaint;

- Worked with counsel to prepare plaintiffs' initial disclosures to Defendants;

- Worked with counsel on matters related to potential evidence in this case, including preservation issues;

- Consulted with counsel regarding discovery, both to Defendants, and that

Defendants sent to me—this included responding to Defendants' interrogatories and requests for production to me;

- Prepared and sat for Defendants' deposition of me, including travel from Westland, MI to Bloomfield Hills, MI, and reviewed my deposition transcript for errors;

- Participated in a full day mediation session with my newborn child and toddler-aged child;

- Reviewed and approved the settlement agreement; and

- Consulted with counsel regarding the status and progress of the litigation.

4.      In total, my work as a Class Representative involved approximately 150 hours of my time.

5.      I note that I agreed to compensation equal to all other class members, despite having a claim under the Fair Debt Collection Practices Act that entitled me up to $1,000 (if successful) as a class representative.

6.      I understand that per the settlement agreement, we as plaintiffs are asking the Court to award attorneys' fees. I support the attorneys' fee request in this matter and believe that our lawyers have worked hard and effectively on this case for my benefit and the benefit of the class. I also support plaintiffs' request for the reasonable costs and expenses incurred by the firms representing us. I understand that these sums will be paid from the gross settlement fund if approved by the Court.

7.      I also am, respectfully, requesting that the Court approve my service award in the amount of $5,000, as contemplated by the settlement agreement. This

3

would be in recognition of the service I rendered to our fellow settlement class members throughout this case, as discussed above.  As my lawyers have advised, this sum was negotiated with Defendants following negotiation of class benefits.  I submit the information in this declaration in support of my request.

8.     Finally, I support final approval of the settlement agreement in this matter.  I understand that the Court has granted preliminary approval to it, and that the Court will hold a final approval hearing on September 27, 2018, per the current schedule.  I believe that all things considered, the settlement here, which provides for a gross settlement fund consisting of $7.5 million, is fair and reasonable to me and fellow class members.

9.     I have submitted a claim for benefits in connection with the settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 day of August, 2018, at ____, _____.

_____
YAHMI NUNDLEY

4

t'd

# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
Andrew J. McGuinness, Esq.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI 48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
Cohen, Milstein, Sellers & Toll PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
Karon LLC
700 W St Clair Ave, Suite 200
Cleveland, OH 44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Proposed Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
Maddin, Hauser, Roth & Heller, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
Brock & Scott PLLC
2723 S State St, Suite 150
Ann Arbor, MI 48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
Honigman Miller Schwartz & Cohn LLP
39400 Woodward Ave, Suite101
Bloomfield Hills, MI 48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

1

**DECLARATION OF KATHLEEN CADEAU-MARICK IN SUPPORT OF PLAINTIFFS' MOTIONS (1) FOR AWWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES AND (2) FOR FINAL APPROVAL OF CLASS SETTLEMENT**

- I am one of the named plaintiffs in the Second Amended Complaint (Corrected) filed in this matter in August 8, 2016.  I make this declaration based upon personal knowledge, and I am otherwise competent to be a witness in this matter.

- I received a letter from Trott PC informing me that Trott PC had been retained by Fifth Third Bank to foreclose on the home I owned in Redford, Michigan and attempting to collect a debt allegedly owed by me on a note secured by a mortgage on my home.

- Since I first contacted my attorneys in connection with this matter, I have remained actively involved in this matter and have worked with my attorneys and with class counsel as follows:

- Worked with counsel in the investigation of my claims and plaintiffs' claims generally;

- Conferred with counsel regarding factual issues, including with respect to the Second Amended Complaint;

- Worked with counsel to prepare plaintiffs' initial disclosures to Defendants;

- Worked with counsel on matters related to potential evidence in this

case, including preservation issues;

- Consulted with counsel regarding discovery, both to Defendants, and that Defendants sent to me—this included responding to Defendants' interrogatories and requests for production to me;

- Prepared and sat for Defendants' deposition of me, including travel from Redford, MI to Bloomfield Hills, MI, and reviewed my deposition transcript for errors;

- Participated in a full day mediation session;

- Reviewed and approved the settlement agreement; and

- Consulted with counsel regarding the status and progress of the litigation.

- In total, my work as a Class Representative involved approximately __45_ hours of my time.

- I note that I agreed to compensation equal to all other class members, despite having a claim under the Fair Debt Collection Practices Act that entitled me up to $1,000 (if successful) as a class representative.

- I understand that per the settlement agreement, we as plaintiffs are asking the Court to award attorneys' fees. I support the attorneys' fee request in this matter and believe that our lawyers have worked hard and effectively on this case for my benefit and the benefit of the class. I also support plaintiffs' request for the reasonable costs and expenses incurred by the firms representing us. I understand that these sums will be paid from the

3

gross settlement fund if approved by the Court.

- I also am, respectfully, requesting that the Court approve my service award in the amount of $5,000, as contemplated by the settlement agreement. This would be in recognition of the service I rendered to our fellow settlement class members throughout this case, as discussed above. As my lawyers have advised, this sum was negotiated with Defendants following negotiation of class benefits. I submit the information in this declaration in support of my request.

- Finally, I support final approval of the settlement agreement in this matter. I understand that the Court has granted preliminary approval to it, and that the Court will hold a final approval hearing on September 27, 2018, per the current schedule. I believe that all things considered, the settlement here, which provides for a gross settlement fund consisting of $7.5 million, is fair and reasonable to me and fellow class members.

- I have submitted a claim for benefits in connection with the settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

Executed this _23__ day of _August_____, 2018, at __9:00 am__, _____.

*Kathleen Cadeau Marick*

KATHLEEN CADEAU-MARICK

5