IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, Yahmi Nundley, and
Katherine Cadeau, individually and on behalf          Case No. 2:15-cv-12838
of all others similarly situated,

v.                                                     Hon. David M. Lawson
Trott Law P.C. and David A. Trott,                     CLASS ACTION

Defendants.

_____/

**OBJECTION**

F I L E D
SEP - 5 2018
CLERK'S OFFICE
DETROIT

NOW COMES TEREES WILLIAMS, a class member in the above referenced case, and

states the following:

This 'Objection' is being filed timely.

1. I OBJECT to the proposed settlement as Trott Law's handling (or lack thereof) of my

   foreclosure has been without an arguable basis and was accompanied by conduct so

   willful and so grossly negligent as to constitute an independent tort.

2. Moreover, the Defendants' wrongful conduct constitutes bad faith and involves such

   willfulness and maliciousness that it rises to the level of an independent tort or torts, thus

   entitling the Plaintiff to recover punitive damages from the Defendant.

3. As a direct and proximate result of the Defendants' wrongful conduct, the class-member

   Terees Williams has suffered, and continues to suffer irreparable harm and damages, the

   (unmerited) loss of her family's home, as a result of Defendant's actions.  A Plaintiff's

   harm is irreparable if "it is not fully compensable by monetary damages " Overstreet v.

POOR QUALITY ORIGINALS

Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002); also see

Basiccomputer Corp. v. Scott, 973 F.2d 507, 511–12 (6th Cir. 1992)

4.  The exact amount of these damages and the harm class-member incurred is irreparable

harm, as the foreclosure proceedings caused class-member Terees Williams to lose her

home.  The loss of one's home is NOT fully compensable by money damages.  See Smith

v. State Farm Fire & Cas. Co., 737 F. Supp. 2d 702, 714 (collecting cases that hold "in

certain circumstances the threat of eviction and the realistic prospect of homelessness

constitute a threat of irreparable harm") (citations omitted) but, the damages are

reasonably believed to exceed $1,000,000.00.

5.  Given the conduct of the Defendant and the pecuniary ability or financial worth of the

Defendant, then $1,000,000.00 (one million dollars) payable to Terees Williams(for the actual

loss of my home) is well within the amount reasonably necessary for punishment of the

wrongdoing, deterring the Defendant from similar conduct, and to make an example of the

Defendant so others may be deterred.

6.  Attached is a letter and supporting documents **(EXHIBIT A)** that I submitted directly to

Timothy J. Mayopoulous President and CEO via "Certified Mail/Return Receipt

w/Restricted Delivery" which gives, by comparison, a "brief" overview of Trott Law's

valiant, successful effort to illegitimately take away my home.  It's simply preposterous.

**WHEREFORE**, this document is my personal Objection to the proposed settlement amount.

Respectfully submitted,

*Terees Williams*

Terees Williams, class-member

Dated August 31, 2018

# EXHIBIT A

Terees Williams
P.O. Box 4096
Muskegon Heights, MI 49444

October 12, 2017

Fannie Mae
c/o Timothy J. Mayopoulous President and CEO
3900 Wisconsin Ave.
Washington DC 20016-2892

**RE: 288 E. Isabella Ave, Muskegon, MI 49442**

Dear Mr. Mayopoulous,

I am writing to you because my family needs your help concerning our family home which is currently (legally) owned by Fannie Mae. In 2012 our family home was foreclosed on as a result of what turned out to be a mistake by my former mortgage servicer, Nationstar Mortgage. I have been badgered through court litigation for several years now in an attempt to prevent my family from being homeless as the result of this fixable mistake. But, what has transpired over the last several years is nothing less than disturbingly atrocious. As of this date, I have deposited $11,242.00 in an escrow account at Muskegon County 60th District Court regarding said home. My family still occupies the home but we are facing the real possibility of becoming homeless in the matter of hours.

As you know, Fannie Mae's mission includes stabilizing neighborhoods while providing the proverbial "American Dream" of homeownership. I am following the professional advice I received instructing me to reach out to you for help. The housing specialist vehemently asserts that Fannie Mae would NOT be in favor of the negative publicity that is being generated by this bizarre and unimaginable situation. I thank you for your attention as I attempt to give you a 'summary' of the situation. Be advised, this nightmare has been in progress since **2012**. So even the "summary" is quite lengthy. I will be happy to provide any additional information that you may need or want regarding this surreal nightmare that my family is enduring. For lack of a better term, I will refer to the attached supporting documents as 'EXHIBITS'.

It all started in 2010 when I suffered a work-related injury that lasted more than six-months in spite of aggressive treatments. The specialist did not believe that surgery would correct the long-term injury. My employer informed me that, according to Worker's Comp Law's, they were required to lay me off as there was no long-term light duty; my job is clerical. Although I would still have stable

income, it would be noticeably reduced. My employer forewarned of the eminent layoff to give me an opportunity to negotiate my financial affairs with my creditors.

I approached Nationstar Mortgage to inquire if there were programs to assist a homeowner in maintaining their home **if** they had a reduction of income due to involuntary job loss. (Fannie Mae's website instruct borrowers to contact their mortgage company **IF** they think there may be an issue making a mortgage payment before the problem arise.) The rep advised that such program did exist. I was **NOT** behind in payments. The rep advised that she would start the approval process right away as I might not income qualify with reduced income.

Nationstar conducted a lengthy application process which lasted several months. In the end, I did not qualify for the initial program as my debt-to-income ratio was less than 31% at that time. But, my home was in an 'underwater' status as a result of the national housing crisis. Nationstar offered multiple mortgage service options; ultimately I was placed in a mortgage modification. It was during the modification that the accidental foreclosure occurred. (In the meantime my physical condition improved. Another specialist recommended a surgery for my injury. My employer approved the surgery which eventually corrected the long-term injury and the job loss never materialized.)

I was making payments to Nationstar as agreed when suddenly and without prior notice there was a notice of a foreclosure sale posted to my home on a Friday evening; the sale was three weeks from that date. I called Nationstar EVERY SINGLE DAY, multiple times a day, trying to find out what was happening and eventually a representative said the sale date was too close for them to intervene. I was informed that Nationstar bought the home at the foreclosure sale and then quit claimed it to Fannie Mae for $1.00 (yes—one-dollar)

I wrote a letter to Nationstar to inquire the reason for the foreclosure. Angel Ramos responded in a writing and advised that they received the required payment for July 2012 but didn't get the next payment and that was the reason for the foreclosure. **(EXHIBIT 1)** I responded with a copy of the cancelled check and asked for the mistake to be corrected. **(EXHIBIT 2)** Nationstar strung me along until the redemption period expired indicating they were 'working on correcting the mistake and thanked me for my patience' but I was served with the Eviction Notice instead.**(EXHIBIT 3)**

The judge assigned to the eviction adjourned the hearing so I could file a lawsuit for wrongful foreclosure as I was NOT given prior notification that Nationstar intended to foreclose. The mistake

would have been detected and could have easily been corrected then. I was unable to get a loan to hire an attorney as the foreclosure ruined my once impeccable credit and I didn't have the money to pay for an attorney. Because my entry-level secretarial position is full-time, I am considered as 'gainfully employed' so Legal Aid could not help me either. So, I obtained the 'limited' legal advice that was available from free consultations and countless hours of research in the law library. As a lay-person with absolutely NO formal legal training, I started the legal battle to maintain my family's home.

Then, I became aware that I could submit a request directly with Fannie Mae to conduct a mortgage fraud investigation. Since Nationstar Mortgage did NOT correct their error even after having proof that they made a foreclosure error, I requested Fannie Mae to do the fraud investigation. Sergio, 2nd level management of Fannie Mae, conducted the fraud investigation. His investigation revealed that Nationstar Mortgage foreclosed on my home because they said I missed a payment in **July of 2012**—the first payment of the Trial Payment Plan. I informed Sergio that I have cancelled checks showing that I did indeed make the payments and asked if I could simply repurchase the home from Fannie Mae. He asked if I were still living in the home and I told him 'yes'. He had absolutely no issue with me repurchasing my home and informed me that Fannie Mae's attorney, Trott and Trott Law would have to execute the purchase agreement.

On March 13, 2014, I wrote a letter to Trott Law requesting them to draft the repurchase agreement. **(EXHIBIT 4)** They completely ignored my request and continued to drag me through the court system for nearly five years now. Trott Law even engaged the assistance of a second law firm, Dykema Gossett, to assist them in trying to illegitimately take my home from me. I, as a layperson, made layperson's mistakes while trying to present my case in court. Dykema capitalized on my extreme disadvantage and secured unrighteous judgments against me. I appealed to the Court of Appeals.

Initially I was not going to be able to speak at the Court of Appeals hearing because of making more layperson's mistakes in submitting court pleadings. But, the judge had questions and Ordered me to come to the hearing and speak. Dykema frantically tried to get me to agree to adjourn so we could settle the lawsuit. But because Dykema had already been dishonest, I couldn't make an off-the-record-deal with them. Then Dykema filed a Motion to adjourn the hearing telling the court that Fannie Mae and I were in negotiations to settle the lawsuit. **(EXHIBIT 5)** During the hearing and before I said all that I would say, the judge asked if I would be willing to negotiate a settlement. Absolutely! Michigan Court of Appeals adjourned the remaining of the hearing to allow a settlement agreement to be executed

for me to buy my home back. Dykema made the proposal to the COA and actually arranged for an appraisal of my home so I could repurchase it at fair market value—they said—and mandated the funds **must** come from Step Forward Michigan—a foreclosure prevention program. **(EXHIBIT 6)** I made all of the provisions to get approved for the $30,000 from Step Forward Michigan and engaged the help of the local HUD approved housing counselor, Nancy Latham, to facilitate the transaction. But, when it came down to it, the lawyer did NOT provide a written purchase agreement proposal or anything in writing, including a copy of the appraisal, that would have allowed me to obtain the funds from Step Forward Michigan or any other place. I was forced to file another lawsuit for breach of contract and again, endure multiple years of litigation and emotional distress which is still ongoing.

Trott Law eventually resurfaced again; Gary Bengston is the assigned attorney. He indicated that he was in contact with Fannie Mae about the buy-back option for me that Dykema offered. During conversation I was thanking Mr. Bengston for his help and mentioned that disadvantage, neglected children that have been placed in my home through the courts would also appreciate continuing to have a place to call home. Mr. Bengston asked me to provide proof that my home served as a licensed children shelter and I did. **(EXHIBIT 7)** As soon as I provided a copy of the court's home study proving my home served these vulnerable children, Mr. Bengston stopped all discussions for me to repurchase my home and even became more aggressive at trying to take my home from me.

Gary Bengston filed a Motion with the court to evict me. I cited Fannie Mae's investigation which clearly shows the foreclosure was a mistake and therefore, my home lawfully belonged to me. I needed written proof of the investigation to present to the court so I contacted Fannie Mae directly. Although Fannie Mae had freely spoken to me throughout this entire litigation ordeal, this time they directed me to speak to their attorney. **(EXHIBIT 8)** I got approval from the court for a subpoena so Mr. Bengston would have to provide the fraud investigation results that Sergio conducted and the repurchase details for me buying my home back from Fannie Mae. **(EXHIBIT 9)** But, Mr. Bengston pulled an 11th hour trick and blocked the subpoena so he didn't have to provide the written report. **(EXHIBIT 10)** I even asked the Attorney General for help getting the fraud investigation report. But Trott Law lied to the AG and said they were unaware that an investigation occurred. **(EXHIBIT 11)** Without the written information from Fannie Mae's investigation, the judge had no choice but to render judgment on behalf of Gary Bengston. Then, after securing a judgment for possession, Gary Bengston willingly provided a statement to me from Fannie Mae's investigation. **(EXHIBIT 12)**

Gary Bengston continued the attempt to evict me so I had to file yet another lawsuit. During a previous litigation the judge set up an escrow account in which I have now deposited **$11,242.00**. Another court issued a 'Stay' which prohibited Trott Law from kicking me out of my home or any other actions while my case goes through court litigation. But, in violation of the 'Stay', Gary Bengston attempted to sell my home on auction.com. (In fact, Gary Bengston has attempted to sell my home on multiple different occasions. The first time the listing price was $5,000 and the other times it was $7,500) **(EXHIBIT 13)**

In an effort to permanently injure me and contrary to the Stay, Mr. Bengston listed my home for sale on auction.com this past August 2017. Since the home was being offered for sale to 'the whole world', I placed a bid which met the Reserve Selling Price, won the bid, met the requirements to purchase the home from auction.com, and my credit union wired the $2,500.00 earnest money deposit. I received a purchase agreement and a closing agent was assigned to me—Elisa Barron. **(EXHIBIT 14)**

A few days later Mr. Bengston realized I was the purchaser and he instructed the auctioneer to cancel my contract, relist the home for nearly twice as much, and offer me the option to re-bid **(EXHIBIT 15).** I contacted my assigned closing agent from auction.com to ask 'how' my sale could be cancelled; she left a voicemail which confirmed Gary Bengston (illegitimately) cancelled my purchase agreement which would have ended this lawsuit and these *y-e-a-r-s* of **extreme** emotional distress. **(EXHIBIT 16)** (Ms. Barron's direct phone number is 949-951-2256.) Mr. Bengston's attempt to commit extortion on me was unsuccessful as I did NOT re-bid in that cycle which ended August 23, 2017. The highest bid, which was super inflated by auction.com counter bidding, was noticeably lower than my legitimate winning bid. **(EXHIBIT 17)** On August 24, 2017, Gary Bengston promptly filed a Motion in court to evict me.

Gary Bengston conniving manipulation confused the issues so severely that the judge required me to make a cash payment of nearly $15,000.00 within ten days as a condition to 'Stay' the Eviction while my case is pending in the appeals court. I do NOT have that kind of money as an entry level secretary neither do I know anyone who does. That judge made an error in judgment as she signed an Order on October 4, 2017 granting Gary Bengston the right to put me out on Saturday October 7, 2017 at 7 a.m. **(EXHIBIT 18)** Once again, as a lay person, I was forced to spend the next day away from work as I figured out how to file a Motion in the appellate court asking for the eviction to be blocked as my legal right to appeal the judgment was being violated and the fraud investigation conducted by

Sergio clearly shows the foreclosure was by mistake. **(EXHIBIT 19)** We are scheduled for a hearing on Friday October 13, 2017. This situation can be compared to a bad, throbbing toothache!

Nationstar Mortgage is no stranger to wrong doings as it relates to handling mortgages. Nationstar Mortgage was required to pay over $12,000,000.00 in a class-action lawsuit for other mortgage-related wrong-doings. (see Wright et al v. Nationstar Mortgage Case No. 14-cv-10457) I actually received monetary compensation for that particular wrongdoing. **(EXHIBIT 20)** **After** the eviction hearing was well underway, Nationstar Mortgage sent me a check to refund my third Trial Payment which was designated to modify my mortgage. **(EXHIBIT 21)**


CONCLUSION

My family's home was foreclosed on as the result of a verifiable mistake. Fannie Mae personally conducted an investigation and confirmed it. Trott Law had the ability to 'fix' the mistake and was even instructed by their client Fannie Mae to do so. But, without any lawful, logical, or any other legitimate reason, Gary Bengston sought an 'easy target' to intimidate and bully—a layperson who protects vulnerable individuals. Trott Law's intentional and recklessly absurd conduct has caused *years* of litigation. It would take at least ten more pages to describe the anxiety, fear, fright, sleepless nights, restless days and physical illness that resulted from Gary Bengston's intentional infliction of emotional distress while trying to (illegitimately) take my family's home.

My home is not a "house on the hill" by any stretch of the imagination—it was built in 1900. In fact, it is located in one of the roughest parts of the inner city situated between two known gangs and open drug activities. My neighborhood is littered with dilapidated structures and high levels of vacant homes emptied by foreclosure. It's in need of significant repair including the need for a roof, electrical update, and better plumbing. I'm certain the appraisal that Dykema ordered in 2015 and that Gary Bengston refuses to disclose will paint a clearer picture. So, Gary Bengston's frenzied attempt to evict me is strictly a personal vendetta which manifested AFTER I provided proof that my family consists of children placed with me from the court system. It appears very obvious that Gary Bengston has a personal prejudice against such family make up and has used the court as his "bully pit".

Not only does my family need to be made whole by the return of legal ownership of 288 E. Isabella Ave. to me, but the State of Michigan needs me too. Various foster care workers continuously pursue me as they need a safe, stable place in which to place abused and neglected children that have been removed from their homes. Muskegon County no longer have a children's shelter to house these most vulnerable individuals and sometimes the need arises in the wee hours of the morning.

Because my home is situated in an area that has tremendous needs, I am able to provide a greater level of assistance. I have experienced an abundant level of what could arguably be considered success: 11 graduates from 2008 to 2015 which includes 9 high school graduates and 2 college graduates. We had zero teen pregnancies, no detentions with the law, and 100% of them have attended college; four of the kids are currently in college right now. All of them are employed and productive citizens; (only three of that group were my biological children.) I have been unable to provide this needed service or have the peace of mind that homeownership affords because of the uncertainty of my home.

Because Fannie Mae is the legal owner, I am asking that you transfer the ownership of 288 E. Isabella Avenue, Muskegon, MI 49442 to me and accept the $11,242.00 that I have deposited in the escrow account at Muskegon County 60th District Court as payment and end the years of turmoil my family has experienced. I once heard a wise person say, "if you are going to make an error, it's better to err on the side of mercy than on the side of judgment."

I'd like to thank you in advance for your anticipated speedy actions in continuing Fannie Mae's mission of neighborhood stabilization through homeownership and returning my home to me and thereby ending this living nightmare. Please and thank-you.

Sincerely,

Terees Williams

Terees Williams

Enclosures

# EXHIBIT 1



February 28, 2013

Teresa Williams
Torrance Williams
P.O. Box 4096
Muskegon Heights, MI 4944

RE:     Nationstar Escalation Reference Number: Williams 0231
        Property address: 282 E. Isabella Ave. Muskegon, MI 45441

Dear Mr. and Ms. Williams,

Thank you for your letter dated January 09, 2013 stating your concerns regarding the processing of your loan modification. We appreciate the effort on your part to bring this matter to our attention.

Please be advised that Nationstar has a variety of foreclosure prevention options. In order for Nationstar Mortgage to consider any assistance that may be available and make an optimal assessment of the situation, we request that you contact the below Single Point of Contact.

Single Point of Contact (SPOC):
Christina Garza
Foreclosure Prevention Specialist
Direct Phone: (972) 316-5824 Ext: 5924
Fax: (469)464-0122

We have reviewed the Modification case on your account and have uncovered the following. Our records indicate that your account was set up for a trial period plan set to end in September of 2012. The first payment was received on July 09, 2012 but the second payment due in August was never received this caused your account to fall out of the HAMP trial period plan. We apologize for the inconvenience this may have caused. A copy of your payment history is enclosed for your records.

At Nationstar, our goal is to address our customer's concerns and to ensure fairness in our transactions. If you have any additional questions, you may contact me directly on:

Customer Service Department:
1-888-480-2432
MON to THU, 8:00 to 8:00 p.m. Central Time
FRI, 8:00 to 5:00 p.m. Central Time

Sincerely,

Angel Ramos
Customer Relations Specialist
350 Highland Drive
Lewisville, TX 75067
P: (972)956-5797
F: (972)353-6776
Angel.Ramos@nationstarmail.com

This is an attempt to collect a debt and any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



www.Nationstarmtg.com

# EXHIBIT 2

ANDERSON GOVERNMENTAL EMP FED CU

DATE...: 06/15/12
PAY TO: NATIONSTAR MORTGAGE
LOCATION......: 01
TELLER ID....: 23
G/L ACCOUNT..: 901.01
CHECK TYPE...: TE
REMITTER......: TERESA L. WILLIAMS

NATIONSTAR MORTGAGE

BATCH # B 400

DOC NO. CI-100045914      12

BATC G/L........: $74.15

AMOUNT.........: 690.03

DESCRIPTION....: SHARE DRAFTS

Check Image Viewer

4/6

2061

74-851/2724

TERREE WILLIAMS
280 EAST SAGELLA AVENUE
MUSKEGON, MI 49442

July 31 20 ___

PAY TO THE
ORDER OF  Nationstar Mortgage    $ 600.00

Six Hundred Dollars 00/100  _____ DOLLARS

MUSKEGON
Governmental Employees
Federal Credit Union
Muskegon, MI 49441

FOR _____

Terree Williams

⑆072412723⑆ ⑈001286810013⑈ 2061

WELLS FARGO BANK DEP TO>121000248<
NATIONSTAR
CR. PAYEE ABS. OF END. GTD
03/02/2012

# EXHIBIT 3

STATE OF MICHIGAN
JUDICIAL DISTRICT
60th DC Muskegon

SUMMONS
Landlord-Tenant / Land Contract

13-0280481T

Court telephone no.
231.724.6329

Court address
990 Terrace St, Muskegon, MI 49442-3395

Plaintiff's name, address, and telephone no.
Fannie Mae A/K/A Federal National Mortgage
Association organized and existing under the laws of
the United States of America

Plaintiff's attorney, bar no., address and telephone no.
Donald J King P55358
Trott & Trott, P.C.
31440 Northwestern Hwy Ste 200
Farmington Hills, MI 48334-5422
248.723.6452

v

Defendant's name, address, and telephone no.
Teraes Williams, Torrance L Williams and all other
occupants
288 E Isabella Ave
Muskegon, MI 49442-3571
T&T #371475E02
File # Not Same as letters

Property situated in City of Muskegon

If you require special accommodations to use the court
because of a disability or if you require a foreign language
interpreter to help you fully participate in court proceedings,
please contact the court immediately to make arrangements

☐ Rental unit eviction

☐ Land contract forfeiture

NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:

1. The plaintiff has filed a complaint against you and wants

☐ to recover possession, after land contract forfeiture, of
☐ a money judgment for
☒ to evict you from

Address or description of premises
288 E Isabella Ave
Muskegon, MI 49442-3571

2. You are summoned to be in the district court on    Thursday, June 13, 2013    at  8:30 AM
                                                      Day and date                 Time

☐ at the address above, ☐ _____    courtroom  2
                            Location

3. You have the right to a jury trial. If you do not demand a jury trial and pay the required jury fee in your first defense response,
you will lose this right.

4. If you are in district court on time, you will have an opportunity to give the reasons why you feel you should not be evicted.
Bring witnesses, receipts, and other necessary papers with you.

5. If you are not in district court on time, you may be evicted without a trial and a money judgment may be entered against you.

6-4-13
Date issued

Court clerk
This document must be sealed by the seal of the court

## HOW TO GET LEGAL HELP

1. You have the right to an attorney to assist you in answering the complaint filed in this case and in preparing defenses.

2. If you do not have an attorney but have money to retain one, you may locate an attorney through the State Bar of Michigan
Lawyer Referral Service at 1-800-968-0738 or through a local lawyer referral service. Lawyer referral services should be listed
in the yellow pages of your telephone directory or you can find a local lawyer referral service at www.michbar.org.

3. If you do not have an attorney and cannot pay for legal help, you may qualify for assistance through a local legal aid office. Local
aid offices should be listed in the yellow pages of your telephone directory or you can find a local legal aid office at
www.michiganlegalaid.org. If you do not have Internet access at home, you can access the internet at your local library.

4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter
to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

DC 104 (3/08)    SUMMONS, LANDLORD-TENANT / LAND CONTRACT    Tenant

MCL 600.
MCR 2.102, MCR 4.201(C), MCR 4.2

# EXHIBIT 4



Ferres Williams
P.O. Box 4096
Muskegon Heights, MI 49444

TROTT & TROTT PC
Edward A Mahl (P27115)
Farmington Hills, MI 48334

ATTN: ED MAHL

March 13, 2014

RE: RE-PURCHASE AGREEMENT FOR 288 E. ISABELLA AVE

Mr. Mahl,

I am writing to you concerning drafting a re-purchase agreement for my home at 288 E. Isabella Ave. Fannie Mae advised that you are the attorney that has been given the authority to act on their behalf for my specific case and redirected me to you. There has been a tremendous amount of correspondences as a result of the foreclosure and this letter is intended to summarize the particular points for you to execute a repurchase agreement.

A foreclosure sale was completed on my home on November 9, 2012. My first conscious awareness of the impending foreclosure sale came on Friday, October 19, 2012 when the sheriff posted the notice on my home. Although I contacted Nationstar immediately, they advised that the sale date was too close for them to intervene.

I wrote a letter to Nationstar to inquire as to why my home was referred to foreclosure as I was complying with their terms. Angel Ramos from Nationstar responded in a signed letter stating that the payment due in August 2012 was never received and that was the reason for the foreclosure. (copy enclosed) That was an error; I responded and included a copy of the cancelled check that cleared the account on August 2, 2012. (copy of cleared check enclosed).

Additionally, I submitted an application with Step Forward Michigan, a federally funded program, in an effort to prevent my home from being lost to the erroneous foreclosure. Up to $30,000 is available to prevent foreclosure. Because of 'underwater value status' (current SEV of $16,500), I would have been approved for the entire $30,000. Since the foreclosure sale had already occurred, I was denied for the assistance. (copy enclosed) However, the housing counselors advised that the assistance is still available but the title must reflect me as the owner.

There is active ongoing court litigation concerning the foreclosure. In addition to the lawsuit, I filed a complaint with Fannie Mae to investigate the foreclosure. On Wednesday, March 5, 2014 I spoke with Sergio in the level 2 management department from Fannie Mae. He advised that the investigation was complete and it revealed that the specific reason my home was foreclosed upon was because of the August 2012 payment that Nationstar Mortgage reported that I missed. I informed Sergio about the letter I received from Angel Ramos and that I had proof that I made the payment.

Sergio asked if I was still in the home and I told him "yes". He said that since I am still in the house, I should contact you to draft a re-purchase agreement.

## Summary

- My home was referred for foreclosure as a result of the oversight of the August, 2012 during a Trial Payment Period according to Nationstar Mortgage.

- My home's current value is approximately $33,000 according to the Muskegon County Assessors.

- In an effort to stabilize neighborhoods and prevent families such as mine from becoming homeless due to foreclosure, Step Forward Michigan is willing to provide $30,000.

- Additionally, I have been depositing $511.00 each month since August, 2013 in an escrow account at the Muskegon County Hall of Justice under case # 13-022048-LT.

- Fannie Mae has no objections to me maintaining my home under a new purchase agreement.

- Nobody involved, my neighborhood, Fannie Mae, and especially my eight (8) children and me, will benefit from us losing our family home.

I've heard a wise person state that, "It is better to err on the side of mercy than on the side of judgment". Please contact me at the above address or at 231-343-8135 so that the re-purchase agreement can be executed and the $30,000 from Step Forward Michigan can be obtained while the funds are still available.

Sincerely,

Terees Williams
enclosures

# EXHIBIT 5



STATE OF MICHIGAN

IN THE COURT OF APPEALS

TEREES WILLIAMS,

        Plaintiff-Appellant,              Court of Appeals No. 321677

vs.                               Muskegon County Cir. Ct. Case No. 13-
                               49184-CH

FANNIE MAE,

        Defendant-Appellee.

---

Terees Williams
Plaintiff-Appellant
In Pro Per
P.O. Box 4096
Muskegon Heights, MI 49444
(231) 343-8135

Jill M. Wheaton (P49921)
Thomas M. Schehr (P54391)
Elisa J. Lintemuth (P74498)
Attorneys for Defendant-Appellee Fannie Mae
Dykema Gossett PLLC
300 Ottawa Avenue, NW, Suite 700
Grand Rapids, MI 49503
jwheaton@dykema.com
tschehr@dykema.com
elintemuth@dykema.com

---

## PLAINTIFF-APPELLEE'S MOTION TO ADJOURN ORAL ARGUMENT

Defendant-Appellee Fannie Mae, by its attorneys, Dykema Gossett PLLC, hereby moves

pursuant to MCR 7.211 and MCR 7.213(E) for oral argument in this matter to be rescheduled.  In

support of its motion, Defendant-Appellee states as follows:

    1.     This matter is currently scheduled for oral argument on Tuesday, May 5, 2015.

    2.     The parties are actively exploring settlement and request additional time to

evaluate potential avenues of settlement and resolution of this matter, which, if successful, could

result in the voluntary dismissal of this appeal.

3. Defendant-Appellee therefore requests that oral argument in this matter be adjourned to another calendar call so that the parties may evaluate potential avenues of settlement and resolution of this matter.

4. The parties will keep the Court apprised of the situation and submit either a stipulation of dismissal of the appeal or indicate that a new date is required, within 30 days of today.

5. Plaintiff-Appellant is aware Defendant is making this request.

### CONCLUSION

WHEREFORE, for the above stated reasons, Defendant-Appellee requests that oral argument in this matter be adjourned .

DYKEMA GOSSETT PLLC


By: /s/ Jill M. Wheaton
    Jill M. Wheaton (P49921)
    Dykema Gossett PLLC
    Attorneys for Plaintiff-Appellee
    2723 South State Street, Suite 400
    Ann Arbor, MI 48104
    (734) 214-7629
    jwheaton@dykema.com

Date: April 27, 2015.

# EXHIBIT 6

Terees Williams

From:           terees williams <morethanenough@msn.com>
Sent:           Thursday, July 09, 2015 10:48 AM
To:             Terees Williams
Subject:        FW: appraisal of 288 E. Isabella`

From: morethanenough@msn.com
To: elintemuth@dykema.com
Subject: RE: appraisal of 288 E. Isabella`
Date: Wed, 3 Jun 2015 22:32:51 -0400

Can you forward me a copy of that? Step Forward needs the information.

From: ELintemuth@dykema.com
To: morethanenough@msn.com
Subject: RE: appraisal of 288 E. Isabella`
Date: Tue, 2 Jun 2015 17:01:47 +0000

CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO MRE 408

Ms. Williams,

The appraisal came back at $33,000. If you are able to come up with funding to re-purchase the property for $33,000 (using confirmed funds from Step Forward and/or other sources), please let me know. If it is not possible to obtain funding for a fair market value re-purchase, please let me know, and we can discuss other possible settlement options.

Regards,
Elisa

From: terees williams [mailto:morethanenough@msn.com]
Sent: Thursday, May 14, 2015 4:19 PM
To: Lintemuth, Elisa
Subject: RE: appraisal of 288 E. Isabella`

Thank you

From: ELintemuth@dykema.com
To: morethanenough@msn.com
Subject: RE: appraisal of 288 E. Isabella`
Date: Thu, 14 May 2015 20:17:59 +0000
Ms. Williams,

I understand the appraiser is running a few minutes behind but is expected shortly. I apologize for any inconvenience.

1

# EXHIBIT 7

Outlook Mail

terees williams

○ New |      Reply |      Delete      Archive    Junk |   Sweep                                  Undo

RE: 288 E. Isabella

Today's
Mortgage Rates
3.70% APR

GB   Gary Bengtson <gbengtson@trottlaw.com>                              ⌃   ⚑   ⎘   Reply |
      Tue 9/10/2015 2:35 PM
      You

You forwarded this message on 5/13/2016 9:24 PM

$200,000 loan for

$898/mo

Terees,

While I very much appreciate the kind words, you should know I am the attorney for Fannie Mae.

$250,000 loan for

$972/mo

I have forwarded your letter to my client contact at Fannie, but in my experience unless you can show (with copies of a bank balance, etc.) that you have actual cash (not including the amount held in escrow) in hand from some source equal to the price set by Fannie Mae, the buyback will not happen.  And even IF you had the total cash in hand right now to complete the FMV buyback, it might already be too late.

$300,000 loan for

$1,166/mo

I have filed, and you should be receiving in the mail soon, a motion and brief for summary disposition asking the court to grant us a Judgment of Possession.

The hearing for that has been set for Thursday, September 24ᵗʰ.  If the court grants that motion, I have been instructed to obtain an order of eviction allowing for a lockout.

$350,000 loan for

$1,499/mo

Terees, do you run a licensed shelter in your home?  How many placed children are living in your home?  Any information you can send me about this would be appreciated.

Sincerely,

Upgrade to ad-free

**GARY C. BENGTSON**
Attorney, Litigation Department

TROTT LAW, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334
(248) 723-5056 (it's through X: 11431)
fax (248) 203-4118
gbengtson@trottlaw.com
trottlaw.com

Supervising Attorney, Charles L. Hu..n
Supervising Attorney's Direct Dial: (248) 593-0459
Supervising Attorney's Email: chahn@trottlaw.com

This firm is a debt collector attempting to collect a debt.  Any information we obtain will be used for that purpose.

To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

**From:** terees williams [mailto:morethanenough@msn.com]
**Sent:** Monday, August 17, 2015 9:35 PM
**To:** Gary Bengtson
**Subject:** RE: 288 E. Isabella

I am very grateful to have a 'real person' in which I can communicate.  For the first time in nearly three years my family and I can finally exhale knowing we have a person working passionately in helping us remain in our home following massive detrimental errors.

I think it is safe to say the children who are removed from abusive homes and find refuge here are also appreciative.  It's even more crucial that our home can serve as a shelter for these most vulnerable individuals

10/13/2017

From: terees williams <morethanenough@msn.com>
Sent: Thursday, August 20, 2015 11:00 AM
To: Gary Bengtson
Subject: RE: 288 E. Isabella

I understand that you are the attorney for Fannie Mae.  And usually the goal of any attorney is to be a 'winner'.  There is not one person on the http://www.mlive.com/news/muskegon/index.ssf/2015/05/child_haven_checkup_shows_new.htmlface of the earth that wouldn't classify you as a winner, who is second to none, by facilitating a family to retain their home and provide a home for others who otherwise would be cast away.

The attached file is the most recent re-certification of our home to house children who would otherwise be in a 'group home facility'.  Except Muskegon County doesn't have a group home facility right now and depend on families such as mine to bridge the gap.

http://www.mlive.com/news/muskegon/index.ssf/2015/05/child_haven_checkup_shows_new.html

Subject: RE: 288 E. Isabella
Date: Tue, 18 Aug 2015 14:15:19 -0400
From: gbengtson@trottlaw.com
To: morethanenough@msn.com

Terees,

While I very much appreciate the kind words, you should know I am the attorney for Fannie Mae.

I have forwarded your letter to my client contact at Fannie, but in my experience unless you can show (with copies of a bank balance, etc.) that you have actual cash (not including the amount held in escrow) in hand from some source equal to the price set by Fannie Mae, the buyback will not happen.  And even IF you had the total cash in hand right now to complete the FMV buyback, it might already be too late.

I have filed, and you should be receiving in the mail soon, a motion and brief for summary disposition asking the court to grant us a Judgment of Possession.

1

JUVENILE GUARDIANSHIP
HOME STUDY
(NOT REQUESTING
GUARDIANSHIP ASSISTANCE)
Michigan Department of Human Services

| | |
|---|---|
| Case #  14-260145-GM | |
| Case Name: Johnson | |
| Worker Load #: | |
| Worker Name: Ruth Frein | |
| Agency Name: Department of Human Services | |
| Agency Address: 2700 Baker St Muskegon MI | |
| Date Child(ren) Entered Care: N/A | |

Child Name(s) and Age(s): Deashia Johnson 7/12/1996 14-260145-GM
Brieanna Johnson 6/04/1997 14-260146-GM

1. Name of prospective guardian: Terees Williams
   Address: 288 Isabella, Muskegon MI 49442
   Phone Number: 231-343-8135

2. Household Members (HHM):

| NAME: | DCB | SS# | RELATIONSHIP TO CHILD | ID CONFIRMED |
|---|---|---|---|---|
| Terees Williams | | | Paternal Aunt | Yes |
| Torrance Williams | | | Paternal Uncle | Yes |
| Tamia Williams | | | cousin | |
| Tayja Williams | | | cousin | |
| Takyra Williams | | | cousin | |
| Deashia Johnson | | | sibling | |
| Brieanna Johnson | | | sibling | |
| Desiree Johnson | | | sibling | |
| Duane Johnson | | | sibling | |



Describe the connections which make up the relationship with the child.

Terees Williams is the paternal aunt of both Deashia and Brieanna Johnson. Duane Johnson Sr, brother to Terees Williams resides in Midlothian Texas. Duane Johnson Sr, is reported to have full physical and legal custody of Deashia and Brieanna Johnson.

Verlean Walker, mother, of both Deashia and Brieanna Johnson resides in Grand Rapids, MI.

* Social Security Numbers must be redacted from all written reports (see policy CFF 722-3)

3. Dates of contact with household members, including on-site visit:

| DATE | WITH WHOM | TYPE OF CONTACT |
|---|---|---|
| 5-29-14 | Terees Williams | Phone contact to schedule home visit. |
| 6-03-14 | Terees Williams | Cancel and reschedule home visit.. |
| 6-12-14 | Terees, Torrance, Tamia, Tayja, Takyra Williams Deashia, Brieanna, Desiree, and Duane Johnson | Face to face home visit with family members to complete the home study. Family members Interviewed and home setting viewed. |
| 6-19-2014 | Duane Johnson Sr. | Attempted telephone contact. Left message requesting a return call. |
| 6-19-2014 | Verlean Walker | Attempted telephone contact. Left message |

|   |   | requesting a return call. |
|---|---|---|
| 6-23-2014 | Duane Johnson Sr. | Attempted telephone contact. Left message requesting a return call. |
| 6-23-2014 | Verlean Walker | Attempted telephone contact. Left message requesting a return call. |
| 6-23-2014 | Duane Johnson Sr. | Telephone call from Mr. Johnson he stated that he was aware of the request guardianship and supported the request. He stated that this guardianship will assist his daughters attend the college of their choice. |
| 6-24-2014 | Verlean Walker | Telephone call with Ms. Walker regarding the guardianship. She stated that she would support the guardianship and would like visitation. |

4. Date Home Study Completed:
   6-12-2014

5. Date of Criminal History Check:  6/19/2014
   Results of Criminal History Check:  Terees and Torrance Williams have no criminal history.
   ☒ N/A: No Criminal History
   a. If there is a criminal history, is the conviction for child abuse/neglect, spousal abuse, a crime against children (including pornography) or crime involving violence, rape, sexual assault or homicide but not including other physical assaults or battery?
      ☐ Yes:  Placement is prohibited; Document reason and rationale for denying the placement.
      ☐ No:   List all other offenses. Describe the length of time since the offense, any services completed that rectified the situation, and any threatened risk of injury or harm to the child placement.

   b. Address any risk factors that might impact the safety of the child and describe what protective interventions are in place currently.
      N/A

6. Date of Central Registry Check:  6/19/2014
   Results of Central Registry Check:  Terees and Torrance Williams are not listed on Central Registry.
   a. If there is a history of abuse or neglect, describe the length of time since the substantiation and any services that have been provided to rectify the problem(s).
      N/A

   b. Address any risk factors that might impact the safety of the child and describe what protective interventions are in place currently.
      N/A

7. Has the child/children lived in the prospective guardian's home for at least 6 consecutive months?

   Deashia has resided with her aunt and uncle for the past three years.
   Brieanna has resided with her aunt and uncle all but 5 months of the past three

long as needed. As reported Terees has lead a stable lifestyle demonstrated by her 25 year relationship and more than 15 years working for the City of Muskegon.

21. Conclusion:
Based on information gathered, summarize the prospective guardian's functioning as it applies to their capacity to care for the child(ren).
Terees Williams appears to care deeply for her nieces. She appears to be acting in their best interest. Currently Duane Williams appears to have legal and physical custody rights on behalf of Deashia and Brieanna Johnson.
This worker repeatedly attempted to contact the mother, Verlean Walker, by telephone, Ms. Walker returned this workers call on 6/24/2014. Ms. Walker stated that she would not want to prevent her daughters from the opportunity of a college education. She then explained that there is a misconception that she is not interested in a relationship with her children. Ms. Walker stated that she would like to visit two weekends a month with her daughters. Ms. Walker stated that she understood that this guardianship and the orders associated with it will only include Deashia and Brieanna.

Mrs. Williams stated that she is not interested in preventing Deashia and Brieanna from knowing or having contact with their parents.

Duane Johnson contacted DHS on 6/23/2014 and stated that he is supportive of the guardianship to aid in his daughters access to a college education.

22. Recommendation:
Guardianship with prospective guardian ___ is ☐ ___ is not ☐ ___ recommended.
This worker did a CPS search on behalf of Terees Williams. Terees Williams did not appear. This worker did a CPS search on behalf of Torrance Williams. Torrance Williams did not appear.

Although Ms. Verlean Walker, mother, has not visited regularly with her daughters, she is requesting two weekend visits a month.

Mr. Duane Johnson stated that he will continue to reside in Texas, and hopes to visit when possible.

At this time the worker feels that Terees's Williams is appropriate if the guardianship is established.

Assigned Worker's Signature: _____   Date: 6/24/2014
Supervisor's Signature: _____   Date: 6/24/14

Department of Human Services (DHS) will not discriminate against any individual or group because of race, religion, age, national origin, color, height, weight, marital status, sex, sexual orientation, gender identity or expression, political beliefs or disability. If you need help with reading, writing, hearing, etc., under the Americans with Disabilities Act, you are invited to make your needs known to a DHS office in your area.

cc: Case File
Court
Parent(s) – (if parental rights have not been terminated.) Redact Central Registry and LEIN information.
Prospective guardian(s)

# EXHIBIT 8

Outlook Mail

○ New |    Reply |    Delete    Archive    Junk |   Sweep                    Undo

Re: FRAUD INVESTIGATION RESULTS--288 E. ISABELLA--ATTN:SERGIO,
09/10/2015 12:18:54 PM

R    resource_center@fanniemae.com                    ⌃  ▣  ▢   Reply |
     Fri 9/11/2015, 3:17 PM
     You

Thank you for your inquiry.

It has been determined that you are a party to a lawsuit pertaining to your mortgage at this time. As a result, we request that you direct
your message to your attorney, and have your attorney (or you if you are representing yourself in the matter, with no attorney) contact
Fannie Mae's attorney for the case

Thank you.

Fannie Mae Resource Center



terces williams

zulily

artsy tunics
from
$16.99

SHOP

Upgrade to ad-free

# EXHIBIT 9

Approved, SCAO

Original - Return
1st copy - Witness
2nd copy - File
3rd copy - Extra

| STATE OF MICHIGAN | | SUBPOENA | CASE NO. |
|---|---|---|---|
| 60th | JUDICIAL DISTRICT | Order to Appear and/or Produce | 15-022048-LT |
| | JUDICIAL CIRCUIT | | |
| | COUNTY PROBATE | | |

Court address: 990 Terrace St., Muskegon, MI 49442

Court telephone no. (231) 724-6294

Police Report No. (if applicable):

| Plaintiff(s)/Petitioner(s) | | Defendant(s)/Respondent(s) |
|---|---|---|
| ☐ People of the State of Michigan | | Terees Williams |
| ☑ Fannie Mae, Trott Law (attorney) 31440 Northwestern | v | P.O. Box 4096 |
| Hwy Ste 200 Farmington Hills, MI 48334 | | Muskegon Heights, MI 49444 |

| ☑ Civil | ☐ Criminal | Charge |
|---|---|---|

☐ Probate   In the matter of

In the Name of the People of the State of Michigan.  TO:

Fannie Mae c/o Gary Bengston of Trott Law, 31440 Northwestern Hwy, Ste 200, Farmington Hills, MI 48334

If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangements.

**YOU ARE ORDERED TO:**

☑ 1. Appear personally at the time and place stated below. You may be required to appear from time to time and day to day until excused.

| ☐ The court address above | ☑ Other: Produce Documents | |
|---|---|---|
| Day | Date | Time |
| Thursday | September 24, 2015 | 9:15 a.m. |

☐ 2. Testify at trial / examination / hearing.

☑ 3. Produce/permit inspection or copying of the following items:  Signed fraud investigation report for 288 E. Isabella, Musk., MI 49442. (NOTE: Terees Williams submitted a fraud investigation for the foreclosure of her home, 288 E. Isabella. Sergio, 2nd level manager, investigated and sent an e-mail request to Terees to call him by phone (see attached). Sergio said the investigation revealed the reason for foreclosure was because Nationstar Mortgage (allegedly) did not receive a payment for August 2012. Please provide a written report of the same. Additionally, provide a copy of the 'repurchase agreement' offered to Terees by Fannie Mae in May 2015.

☐ 4. Testify as to your assets, and bring with you the items listed in line 3 above.

☐ 5. Testify at deposition.

☐ 6. Abide by the attached prohibition against transferring or disposing of property. (MCL 600.6104(2), 600.6116, or 600.6119.)

☑ 7. Other:  Please provide a copy of the info to Terees Williams at above address IMMEDIATELY, prior to court date.

| ☑ 8. | Person requesting subpoena | | Telephone no. |
|---|---|---|---|
| | Terees Williams | | (231) 343-8135 |
| | Address: P.O. Box 4096 | | |
| | City  Muskegon Heights, | State  MI | Zip  49444 |

NOTE: If requesting a debtor's examination under MCL 600.6110, or an injunction under item 6, this subpoena must be issued by a judge.  For a debtor examination, the affidavit of debtor examination on the other side of this form must also be completed.  Debtor's assets can also be discovered through MCR 2.305 without the need for an affidavit of debtor examination or issuance of this subpoena by a judge.

**FAILURE TO OBEY THE COMMANDS OF THE SUBPOENA OR TO APPEAR AT THE STATED TIME AND PLACE MAY SUBJECT YOU TO PENALTY FOR CONTEMPT OF COURT.**

| Date | Judge/Clerk/Attorney | Bar no. |
|---|---|---|

| Court use only |
|---|
| ☐ Served  ☐ Not served |

MC 11  (3/15)  SUBPOENA, Order to Appear and/or Produce

MCL 600.1455, 600.1701, 600.6116, 600.6119, MCR 2.305

# EXHIBIT 10



STATE OF MICHIGAN

IN THE 60th DISTRICT COURT FOR THE COUNTY OF MUSKEGON

---

FANNIE MAE a/k/a FEDERAL NATIONAL
MORTGAGE ASSOCIATION

         Plaintiff                                    Case No. 13-022048-LT

                                                     Hon. Maria Ladas Hoops

v.

TEREES WILLIAMS and
TORRANCE L. WILLIAMS and
ALL OCCUPANTS

         Defendant

---

TROTT LAW, P.C.
By: Gary C. Bengtson (P57250)
Attorney for Plaintiff
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334
(248) 723-5066

Terees Williams
In Pro Per
PO Box 4096
Muskegon Heights, MI 49444
(231) 343-8135

---

<div style="margin-left:0;">

TROTT LAW, P.C.
31440 NORTHWESTERN
HWY.
SUITE 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 205-4118

</div>

## MOTION TO QUASH SUBPOENA

Now Comes the Plaintiff, by and through its attorneys Gary C. Bengtson and Trott Law,

P.C. stating as follows for its Motion to Quash Subpoena:

1.  On September 4, 2015 the Defendant in this action filed a Subpoena with the Court

    Clerk (EXHIBIT A) and on September 11, 2015, the Defendant served said Subpoena

    on Plaintiff's counsel, requesting documents from Plaintiff relative to this matter.

2. Per MCR 2.302(A)(2) "In actions in the district court, no discovery is permitted before entry of judgment except by leave of the court or on the stipulation of all parties." This Court has not ordered discovery in this matter.

3. Per MCR 2.302(H)(1) "...discovery materials may not be filed with the court..." The Defendant has improperly filed the Subpoena with the Court.

4. As indicated in Plaintiff's Motion for Summary Disposition, Defendant has lost all title and interest in the subject property. Further, as indicated in Plaintiff's Motion, to the extent any matters were properly the subject of discovery, Plaintiff had ample opportunity to explore her options for discovery in her stand-alone action she filed in Muskegon County Circuit Court, which action was subsequently dismissed by that court and which dismissal was ultimately upheld by the Michigan Court of Appeals.

5. Plaintiff is also prejudiced by Defendant's extremely dilatory requests for discovery in this matter.

WHEREFORE, Plaintiff respectfully asks that this Honorable Court:

A. Quash Defendant's Subpoena dated Sept 9, 2015 and served on Plaintiff.

B. Grant such other relief as may be appropriate.

TROTT LAW, P.C.
31440 NORTHWESTERN
HWY.
SUITE 200
FARMINGTON HILLS, MI
48334
PHONE (248) 642-2515
FACSIMILE (248) 205-4118

Dated: 9/10/15

Respectfully Submitted,
TROTT LAW, P.C.

Gary C. Bengtson (P57259)
Attorneys for Plaintiff
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
248-723-5066

L:\O\Bengtson\Williams, Teresa (371475L03) - Contested Eviction\Motion to Quash Subpoena.docx

# EXHIBIT 11



 31440 Northwestern Highway, Suite 200 / Farmington Hills, Michigan 48334 / (248) 642-2515 · fax (248) 285-4318 / trottlaw.com

Stephanie Beach
Phone: (248) 341-4775
Fax: (248) 642-4573
sbeach@trottlaw.com

November 13, 2015

Mr. DJ Pascoe
Michigan Department of Attorney General
Corporate Oversight Division

Re:    Terees Williams

Dear Mr. Pascoe:

I am writing in response to your November 7, 2015 email to Mike Hiliebrand regarding the captioned consumer complaint on behalf of this Firm. We deny any claim of wrongdoing relative to this matter.

There are two actions at issue. The first was a Muskegon County Circuit Court case. We were not involved in this action but understand that Ms. Williams was contesting foreclosure and loan modification issues. The Court ruled against Ms. Williams, and the Michigan Court of Appeals confirmed. The second action was an eviction action Trott Law filed in the District Court at the direction of our client, Fannie Mae. It is in connection with the action that Ms. Williams filed a subpoena seeking a fraud investigation report Ms. Williams believed our client, Fannie Mae, had prepared.

We deny that we have blocked Ms. William's access to a fraud investigation report. In fact, we were unaware of any such investigation or report other than as referenced in Ms. Williams' subpoena. We did submit a motion to quash her subpoena, but we did so because it was unpermitted discovery. The motion was not filed, however, because the Court had already ruled that the subpoena was improper. We have no record of any other communication about the purported report.

I trust that this letter will resolve this matter. If that is not the case, please feel free to contact me directly so that we may address any other issues that arise.

If you need any further information, please feel free to contact me.

Very truly yours,

Stephanie Beach
Associate Corporate Counsel

cc: Robert Hotchkiss
cc: Gary Bengston

# EXHIBIT 12

Terees Williams

From:          terees williams <morethanenough@msn.com>
Sent:          Monday, February 01, 2016 2:22 PM
To:            Terees Williams
Subject:       Fw: Fannie Mae

From: Gary Bengtson <gbengtson@trottlaw.com>
Sent: Monday, February 1, 2016 10:26 AM
To: 'terees williams'
Subject: RE: Fannie Mae

Terees,

There is no "Fraud Investigation" report to provide you, other than Fannie's conclusion there was no fraud.

In March 2014, the following information was provided to you by Fannie Mae as a result of your request / inquiry for information to Fannie Mae:

Fannie Mae reviewed the information provided by the servicer regarding modification and workout options. Our research indicates the borrower was reviewed for HAMP beginning 6/9/2011. The borrower was determined to be ineligible for HAMP on 7/23/2011 because the Debt to Income Ratio (DTI) being less than 31% of the gross monthly income. Following the denial of HAMP the account was then reviewed for a Standard FNMA loan modification and was approved for a permanent modification in January 2012, however the borrower did not provide the signed and notarized copy of the modification agreement which caused Nationstar to deny the Fannie Mae Standard Modification on 4/9/2012. Following the denial of the Standard Fannie Mae Modification the account was then approved for a trial plan under an Alternative Modification on 5/25/2012. Unfortunately the Alternative Modification was denied due home owner failing to make the required July 2012 trial period payment. Since Nationstar exhausted all payment assistance options available to the borrower and the borrower was unable to reinstate the delinquent amount the account went to foreclosure sale as scheduled on 11/9/2012. Based upon the information provided, this was a valid foreclosure.

Sincerely,

----------------------------------------
GARY C. BENGTSON
Attorney, Litigation Department

TROTT LAW, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334
(248) 723-5066 (In-house: X. 11431)
fax (248) 205-4118
gbengtson@trottlaw.com

# EXHIBIT 13



288 E Isabella Ave, Muskegon, MI 49442





# 288 E Isabella Ave,
## Muskegon, MI 49442

4 beds · 3 baths · 1,580 sqft

OFF MARKET

Zestimate®: $82,235
Rent Zestimate®: $825 /mo

Est. Refi Payment
$321/mo

---

### Is this your rental?

Get a monthly local market report with comparable rentals in your area.

○ I own and manage this rental

○ I manage this rental for the owner

Enter email

Subscribe

---

288 E Isabella Ave, Muskegon, MI is a single family home that contains 1,580 sq ft and was built in 1900. It contains 4 bedrooms and 3 bathrooms. This home last sold for $71,070 in January 2007.

The Zestimate for this house is $82,235, which has decreased by $616 in the last 30 days. The Rent Zestimate for this home is $825/mo, which has decreased by $25/mo in the last 30 days. The tax assessment in 2017 was $18,900, an increase of 3.3% over the previous year.

## Facts and Features

 Type
Single Family

Year Built
1900

 Heating
No Data

10/8/2017

INTERIOR FEATURES

Bedrooms

Beds: 4

Flooring

Floor size: 1,580 sqft

CONSTRUCTION

Type and Style

Single Family

Dates

Built in 1900

EXTERIOR FEATURES

Lot

Other Exterior Features

# Home Value

### Rental Zestimate
## $825/mo

| PENT ZESTIMATE RANGE | LAST 30 DAY CHANGE | ZESTIMATE |
|---|---|---|
| $700 - $900/mo | -$25/mo (-2.9%) | $82,235 |

# Price / Tax History

*New listing price*

| DATE | EVENT | PRICE | $/SQFT | SOURCE |
|---|---|---|---|---|
| 08/23/17 | Listing removed | $46,539 -39.4% | $29 | Auction.com |
| 07/15/17 | Listed for sale | -- | -- | Auction.com |
| 06/07/16 | Listing removed | -- | -- | Auction.com |
| 04/26/16 | Listed for sale | -- | -- | Auction.com |
| 02/26/16 | Listing removed | -- | -- | Auction.com |
| 02/09/16 | Listed for sale | -- | -- | Auction.com |
| 11/16/12 | Sold: Foreclosed to lender | $76,744 +8.0% | $48 | Public Record |
| 01/16/07 | Sold | $71,070 +18.4% | $44 | Public Record |
| 01/11/06 | Sold | $60,000 | $37 | Public Record |

# EXHIBIT 14

Buy     Sell     Calendar     Brokers     Help     More     Sign Up     Log In

Search by State, County, City, Zip, Address, or Property ID

## RESERVES DISCLOSED SPECIAL AUCTION EVENT
Sellers reviewing ALL high bids & may accept bids below reserve

VIEW PROPERTIES

Auction Home > Michigan > Muskegon > Muskegon > Muskegon > 288 E Isabella Ave

## 288 E Isabella Ave
Muskegon, MI 49442

SFR, Occupied

| 4 Beds | 3 Baths | 1,580 Sq Feet |

Save     Print     Directions



  

Register for this auction to bid

Starting Bid          $7,500
Bid Deposit           $2,500

Register to Bid

Auction Starts        08/05/2017
Auction Ends          08/08/2017

Auction starts in
7d, 11h, 12m

More Details

**First Look Program**
Only public entity, non-profits and owner-occupants can have offers considered until 08/03/2017
Call (800) 844-7169 for details

**Do Not Disturb Occupant**
It is a criminal offense to trespass on this property

**Broker Commission is Available**
Register here for the co-op

**Cash Only Purchase**
No Financing Available

**Buyer's Premium**
5% of Winning Bid Amount (A minimum of $1,500 will apply)

## Property Details 288 E Isabella Ave, Muskegon, MI 49442

Note: Case Pending. Case Number. 16-3731, Muskegon County

| Asset Type | Residential | Event Item # | CH137-50875 |
| Property Type | SFR | Property ID | 2404454 |
| Bedrooms | 4 | Buyer's Premium | 5% of Winning Bid Amount (A minimum of $1,500 will apply) |
| Bathrooms | 3 | Broker Co-Op | 1% or $400 minimum |
| Year Built | 1960 | Financing Information | Not Available, Cash Financing Only |
| Square Footage | 1,580 | | |
| Occupancy Status | Occupied | | |
| Lot Size (acres) | 0.6 | | |

Be the Oldest Home Value Report

**Listing Agent**
ROBERT RANDS
Flagship Realty Group

Contact Agent

**Open House Information**
There is no open house scheduled for this property. Contact the agent for more information.

Pickup your home's guarantee.

Chat with us

### Transaction Details:

- No Title Insurance offered at closing.
- A Buyer's Premium equal to 5% of the Winning Bid Amount or $1,500 (whichever is greater) will be added to all Winning Bid Amounts to determine the Total Purchase Price.
- If you are the Winning Bidder, an Earnest Money Deposit of 5% of the total purchase price or $2,500 (whichever is greater) is required.
- Buyer will receive a Quit Claim Deed or equivalent.
- This property is reported to be occupied and buyer is responsible for obtaining possession.

Mail - morethanenough@msn.com

https://outlook.live.com/owa/?realm=msn.com&path=/mail/AQMkA...

## Outlook Mail

⟳ New |        Reply |        Delete        Archive    Junk |    Sweep    Move to    Categories

Completed: Auction.com Purchase Agreement for BZ50878; 288 E | AVE

AD    Auction.com via DocuSign <dse@docusign.net>                              ⌄    ▨
       Thu 8/10, 9:37 PM
       You

This message is from a trusted sender.

You replied on 8/25/2017 11:53 AM.

        Terees_Lynn_Williams_O...                    Summary.pdf
        4 MB                                         78 KB

2 attachments (4 MB)    Download all    Save all to OneDrive - Personal





Your document has been completed

VIEW COMPLETED DOCUMENT

Auction.com
online.contracts@auction.com

All parties have completed Auction.com Purchase Agreement for BZ50878; 288 E

DocuSign.
SECURED

## Certificate Of Completion

Envelope Id: 644C3B4584B54BF79615DFBCF329E86C                                                       Status: Completed
Subject: Auction.com Purchase Agreement for BZ50878; 268 E ISABELLA AVE
environment:
Source Envelope:
Document Pages: 49                         Signatures: 5                      Envelope Originator:
Supplemental Document Pages: 0             Initials: 23                       Auction.com
Certificate Pages: 5
AutoNav: Enabled                           Payments: 0                        1301 Shoreway Road
EnvelopeId Stamping: Enabled                                                  Suite 200
Time Zone: (UTC-08:00) Pacific Time (US &                                     Belmont, CA  94002
Canada)                                                                       online.contracts@auction.com
                                                                             IP Address: 128.177.69.5

## Record Tracking

Status: Original                           Holder: Auction.com               Location: DocuSign
        8/9/2017 9:36:32 PM                        online.contracts@auction.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Terees Lynn Williams<br>morethanenough@msn.com<br>Security Level: Email, Account Authentication<br>(None), Authentication | *Terees Lynn Williams*<br>—5E8D16174D94A17<br><br>Using IP Address: 68.48.202.51 | Sent: 8/9/2017 9:36:35 PM<br>Resent: 8/10/2017 10:05:24 AM<br>Viewed: 8/10/2017 6:12:43 AM<br>Signed: 8/10/2017 6:36:39 PM |

**Authentication Details**
ID Check:
    Transaction: 26020883451816
    Result: passed
    Vendor ID: LexisNexis
    Type: iAuth
    Recipient Name Provided by: Recipient
    Information Provided for ID Check: Address,
SSN9, SSN4, DOB
    Performed: 8/10/2017 6:12:16 AM

    Question Details:
    passed  property.city.real
    passed  vehicle.historical.association.real
    passed  corporate.association.fake
    passed  person.age.real
    passed  property.association.single.real
    failed   vehicle.historical.association.real

ID Check:
    Transaction: 26020883319397
    Result: passed
    Vendor ID: LexisNexis
    Type: iAuth
    Recipient Name Provided by: Recipient
    Information Provided for ID Check: Address,
SSN9, SSN4, DOB
    Performed: 8/10/2017 6:09:01 PM

    Question Details:
    passed  vehicle.historical.association.real
    passed  property.city.real
    passed  person.city.real
    failed   vehicle.historical.association.real
    passed  corporate.association.fake
    passed  property.association.single.real

Electronic Record and Signature Disclosure:
    Accepted: 8/10/2017 6:12:43 AM
    ID: fa5ccbbe-8e97-4f5c-ad30-1f8d53ee3fb7

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| FANNIEMAE CLOSING TEAM<br>SL-REOFMNAAUCCNTR@SERVICELINKFNF.CO<br>M<br><br>Security Level: Email, Account Authentication<br>(None)<br><br>Electronic Record and Signature Disclosure:<br>    Not Offered via DocuSign | **COPIED** | Sent: 8/10/2017 6:36:41 PM |

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/10/2017 6:36:41 PM |
| Certified Delivered | Security Checked | 8/10/2017 6:36:41 PM |
| Signing Complete | Security Checked | 8/10/2017 6:36:41 PM |
| Completed | Security Checked | 8/10/2017 6:36:41 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

DocuSign Envelope ID: 644C3B45-84B5-4BF7-9615-DFBCF329E86C

# Wire Instructions

## Closing Company Information

Closing Company Name:       SERVICELINK

Closing Company Address:    1400 CHERRINGTON PARKWAY
                            MOON TOWNSHIP, PA 15108

Closing Company Contact Person:  -

Closing Company Email Address:   -

Closing Company Phone No.:       -

## Wire Information

Bank Name:        Citibank N.A.

ABA / Routing #:  021-272-655

Account Name:     Service Link, LLC

Account No.:      759697931

Bank Address:     1760 Market Street, Philadelphia, PA, 19103-4143,

Phone:

Please reference the Auction.com ID and property address:

BZ50878    288 E ISABELLA AVE        MUSKEGON      MI  49442

Additional Notes:

Reference: SL File Number/Property Address being purchased. If you receive NEW wiring instructions on a closing, Notify your closing coordinator IMMEDIATELY by the Phone to Confirm. Servicelink DOES NOT alter its wiring instructions.

DocuSign Envelope ID: 644C3B45-84B5-4BF7-9615-DFBCF329E86C

 **auction.com**

1 MAUCHLY · IRVINE · CA 92618
CUSTOMER SERVICE · (800)-793-6107

| | | | |
|---|---|---|---|
| **Auction Event ID** | O-1137 | **Auction Date** | 08-09-2017 |

### IMPORTANT CONTACT INFORMATION

| | | |
|---|---|---|
| **Auction Item No.** | BZ50878 | **Loan No. (REO ID)** C121MK7 |
| **Property Address** | 288 E ISABELLA AVE MUSKEGON MI 49442 | |

| | | |
|---|---|---|
| AUCTION.COM Contact: | Customer Service | Tel: 800-793-6107 |
| Property Managing Agent | ROBERT RANDS | |
| Agent Telephone: | 231-557-8025 | Agent's Email ROBERT@PLATINUMLAKESHORE.COM |

| | | | |
|---|---|---|---|
| Owner Occupied? | ☑ YES ☐ NO | Are you a licensed Agent: ☐ YES ☑ NO | |
| Subject To Confirmation? | ☑ YES ☐ NO | Cash or Financed Sale? ☑ CASH ☐ FINANCE | |
| Winning Bid Amount | $ 24,022.00 | **Total EMD Required** $ | 2,500.00 |
| Buyer's Premium | $ 1,500.00 | | |
| **TOTAL Purchase Price** | $ 25,522.00 | **Closing Date :** | 09/13/2017 |

| | |
|---|---|
| **Buyer's Name** | Terees Lynn Williams |
| **Co-Buyer Name** | |
| Buyer's Mailing Address | 288 E. Isabella Avenue       Muskegon, Michigan, 49442 |
| Buyer's Telephone | 231-343-8135      Buyer's Email: morethanenough@msn.com |
| **Buyer's Broker/Agent:** | None |
| Agent's Broker Company | |
| Agent Telephone | Agent Email: |

| | |
|---|---|
| **Escrow/Closing Agent** | SERVICELINK |
| Escrow/Closing Agent | FANNIEMAE CLOSING TEAM      Email: SL-REOFMNAAUCCNTR@SERVICELINKFNF.COM |
| Office Telephone | 855-264-4932      Secondary Contact |

| | |
|---|---|
| **Lender Institution** | Cash |
| Lending Officer | Lender Email: |

(Tel: fields blank for Lender Institution and Office Telephone's Secondary Contact)

## PROPERTY SOLD AT AUCTION

1.  **CASH.** The seller executed purchase documentation shall be sent to you as soon as available. If you are able to close early, please contact the Escrow/Closing Agent to make arrangements. Obtain from the Escrow/Closing Agent and be prepared to wire the balance due for closing the transaction to the Escrow/Closing Agent as soon as possible. Documents not provided on auction day, for transactions entered into by a legal entity (anything other than a natural person) must be provided to the Escrow/Closing Agent as soon as possible and prior to closing of the transaction.

2.  **FINANCING.\*** The seller executed purchase documentation shall be sent to you as soon as available. Contact your lender for details to arrange for your financing and provide all the necessary supporting documents (Proof of Income and Assets – W2, pay stubs, etc). Contact the Escrow/Closing agent to confirm the closing date and confirm receipt of all necessary documents required for closing. Maintain constant contact with your Escrow/Closing Agent and lender; advise Escrow/Closing Agent, lender and auctioneer of any details that would prevent a timely closing and provide your best contact number. **PROMPTLY COMPLY WITH ALL OF THE INSTRUCTIONS FROM YOUR LENDER OR CLOSER. \*FINANCING IS NOT A CONTINGENCY TO YOUR OBLIGATION TO CLOSE.**

**PROPERTY SOLD "SUBJECT TO CONFIRMATION"** - The Escrow/Closing Agent or Auctioneer shall notify you of the acceptance of your winning bid. If accepted, the procedure set forth in the Addendum "Subject To" shall be sent to the address that was provided in the Purchase Agreement with Joint Escrow Instructions.

1.  **ACCEPTED BIDS** - see above "Property Sold at Auction" for the next steps. You should call the Escrow/Closing Agent and confirm the closing date.
2.  **REJECTED BIDS** – Please see the Addendum "Subject To."

DocuSign Envelope ID: 644C3B45-54B5-4BF7-9615-DFBCF329E86C



Q. What do you mean by e-Sign?

A. e-Sign is a process by which someone electronically signs a document. In 2000, the Electronic Signatures in Global and National Commerce Act, also known as the E-Sign Act, was signed into law. This law states that any document accepted, executed or agreed to in conformity with such laws will be binding on the parties the same as if it were physically executed. The E-Sign Act, in conjunction with the Uniform Electronic Transaction Act (the "UETA"), was intended to smooth the way for conducting business electronically by giving validity to electronic records and signatures – it is a legally recognized means of entering into a contract.

Q. Why do you want to use an e-Sign process?

A. Auction.com is committed to innovative technologies and processes to better not only its own business activities, but to better the experience for its customers and its clients. Utilizing an e-Sign process continues with this commitment by utilizing technology in ongoing business activities, by minimizing the use materials and products which end up in our landfills and increasing environmental awareness and by utilizing technology which is increasingly becoming part of our everyday lives.

Q. What is the process to e-Sign?

A. We use the DocuSign process for our auctions. DocuSign is the market leader and global standard for electronic signature services. DocuSign's Electronic Signature Platform allows us to complete transactions quickly and securely online while reducing processing costs. It is utilized by Fortune 500 companies worldwide and the choice of Auction.com.

Q. Why do you need a formal e-Sign process?

A. Both federal and state law impose requirements for the use of e-signatures. DocuSign's platform is in full compliance with these laws, establishing the intent to sign and ensuring all legal elements of proof. The comprehensive e-signing process is fully compliant with all relevant legislation and guidelines including the E-Sign Act, the UETA, state laws modeled after the UETA and Gramm-Leach-Bliley. Electronic signatures have the same legal effect as pen-and-ink, as long as they're executed through a process—like DocuSign—that clearly establishes intent to sign and ensures all legal elements of proof.

Q. Why is Auction.com doing this now?

A. The Company, with its commitment to innovative technologies, believes utilizing the e-Sign process helps us do to our part in avoiding the ecological impact of printing, faxing, mailing, and using copier or courier services. Every paperless signature has an environmental impact in saving trees, reducing greenhouse gases and preventing pollution.

Q. How does it work?

A. Upon becoming the winning bidder, you will provide certain information which will be input into the purchase agreement documentation package. Once processed, you will be asked to proceed to a computer and "electronically execute" the documentation. The process is simple and straightforward. At the conclusion of the signing, the documents you executed will be downloaded electronically for you to take with you today. No waiting for copies, no hassle with carrying papers around, no need to remember to organize your documents, and, best of all, good for the environment.

DocuSign Envelope ID: 644C3B45-84B5-4BF7-9615-DFBCF329E86C

AUCTION ITEM NO. <u>BZ50878 / C121MK7</u>

# PURCHASE AGREEMENT– FANNIE MAE

    This Purchase Agreement with Joint Escrow Instructions (this *"Agreement"*) is executed by and between the Buyer and Seller, who agree as follows:

1. <u>KEY TERMS</u>:

    A.  SELLER:    <u>FANNIE MAE</u>

    B.  BUYER:    <u>Terees Lynn Williams</u>
                        BUYER PRINTED NAME

                        CO-BUYER PRINTED NAME, IF ANY

                        <u>288 E. Isabella Avenue</u>
                        ADDRESS

                        <u>Muskegon, Michigan, 49442</u>
                        CITY, STATE, ZIP

| | |
|---|---|
| Home Phone No.: | 231-343-8135 |
| Cell Phone No.: | 231-343-8135 |
| Work Phone No.: | 231-343-8135 |
| Fax Phone No.: | |
| Email Address: | morethanenough@msn.com |

    C.  PURCHASE PRICE:

        Total Purchase Price Calculation:

| | |
|---|---|
| Winning Bid Amount: | $ 24,022.00 |
| <u>plus</u> Buyer's Premium: | $ 1,500.00 |
| <u>equals</u> TOTAL PURCHASE PRICE: | $ 25,522.00 |
| Earnest Money Deposit* from Buyer: | $ 2,500.00 |

        *Earnest Money Deposit Components:

        ☑  CHECK BOX if first property acquired at auction (*Earnest Money Deposit to be 5% of Total Purchase Price or $2,500, whichever is greater. First $2,500 of Earnest Money Deposit shall be in the form of a cashier's check or cash.)

        ☐  CHECK BOX if <u>NOT</u> first property acquired at auction (*Earnest Money Deposit to be 15% of Total Purchase Price or $5,000, whichever is greater. First $5,000 of Earnest Money Deposit shall be in the form of a cashier's check or cash.)

    D.  PROPERTY:

        Property Address:    <u>288 E ISABELLA AVE</u>

                        <u>MUSKEGON</u>    , MI <u>49442</u>

DocuSign Envelope ID: 644C3B45-84B5-4BF7-9615-DFBCF329E86C

Legal Description of Property:    See Exhibit A, the title commitment or preliminary title report (if the legal description of the Property is not attached, is incomplete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of the title company issuing the owner's title policy prior to the closing of the transaction).

E.  CLOSING DATE:                                                      09/13/2017

F.  ESCROW/CLOSING AGENT:    SERVICELINK / FANNIEMAE CLOSING TEAM

1400 CHERRINGTON PARKWAY

MOON TOWNSHIP, PA, 15108

Telephone:  855-264-4932

Facsimile:    SL-REOFMNAAUCCNTR@SERVICELINKFNF.COM

2.  PAYMENT OF PURCHASE PRICE.  Buyer shall pay Seller the Total Purchase Price as follows:

A.  Buyer will deposit with Escrow/Closing Agent identified in *Section 1* above (the *"Escrow/Closing Agent"*) (or cause to be deposited with Escrow/Closing Agent) the Earnest Money Deposit described above in *Section 1* (the *"Earnest Money Deposit"*) on the date Buyer signs this Agreement.  The Earnest Money Deposit is to be comprised of (1) a cashier's check or cash in the amount of Two Thousand Five Hundred Dollars ($2,500) (or Five Thousand Dollars ($5,000) as may be required by Seller) plus (2) a cashier's check, cash or personal check equal to the difference between the total Earnest Money Deposit minus the value of the cashier's check or cash set forth above.

B.  Prior to the Closing Date as determined under *Section 4* below, Buyer shall deposit with the Escrow/Closing Agent in immediately available funds an amount equal to the balance of the Total Purchase Price, plus Buyer's share of closing costs and pro rations, plus Buyer's expenses provided herein.

3.  OPENING OF ESCROW.  In consideration of Seller paying for and providing the Owner's Policy of Title Insurance, Seller and Buyer shall open an escrow account related to this Agreement for the sale of the Property with the Escrow/Closing Agent designated in *Section 1* above (this *"Escrow"*) immediately upon execution of this Agreement by the Buyer by depositing a copy of this Agreement with the Escrow/Closing Agent.  This Agreement shall constitute joint Closing instructions to the Escrow/Closing Agent who shall handle and close this transaction as set forth herein.  Escrow shall be "open" upon the occurrence of the following: (A) Escrow/Closing Agent has received this Agreement and Real Estate Purchase Addendum (Auction) executed by Buyer; and (B) Escrow/Closing Agent has received the Earnest Money Deposit from Buyer.

BUYER'S INITIALS _____/_____

4.  CLOSE OF TRANSACTION.

A.  CLOSING DATE.  The closing shall take place on or before the date set forth in *Section 1E* above.  In the event Seller is unable to conduct the Closing on or before the original Closing Date, then such Closing Date shall be automatically extended for thirty (30) days; provided, however, that Seller, Seller's agent, or the Escrow/Closing Agent may give Buyer written notice during such thirty (30) day period that it is ready to close and such closing shall occur within five (5) days following the written notice.  Escrow/Closing Agent is instructed to close Escrow on such dates set forth subject to each of the following:

# EXHIBIT 15

Mail - morethanenough@msn.com

https://outlook.live.com/owa/?realm=msn.com&path=/mail/AQMkA

## Outlook Mail

New |    Reply |    Delete    Archive   Junk |   Sweep   Move to   Categories         Undo

### Subject to Rejection Notification 08/15/2017

DR    Do Not Reply <SubjectToDesk@auction.com>                    Reply |
      Tue 8/15, 11:58 AM
      You

[August 15, 2017]

Terees Williams

*RE: Purchase Agreement for*
*Auction Item No. BZ50876*

Dear Terees Williams,

Recently, you had the **winning bid** on the above-mentioned property. However, as stated in our *Participation Terms* of the auction event, as well as the specific terms of the *Purchase Agreement* dated 8/9/2017, the acceptance of your winning bid and purchase of the property was subject to – and contingent upon – the Seller approving the purchase and executing the purchase documentation.

Unfortunately, **the Seller has rejected the bid and this transaction has been cancelled.** This letter shall serve as your written notice.

Regarding your earnest money deposit, according to the terms of the auction and the *Purchase Agreement*, any earnest money deposited by you shall be returned by the Escrow/Closing Agent upon confirmation that the funds have cleared the trust account and within a reasonable period of time to receive the confirmation.

We have already notified the Escrow/Closing Agent that the transaction has been cancelled.

**This property will likely go back into an online event; at which time you will have the option to re-bid on the asset.** Please visit Auction.com to find similar properties or contact our Buyer Engagement team at customerservice@auction.com

If you have any other questions – including the release of your earnest money deposit – you can reach our customer service team directly at (800) 793-6107 or customerservice@auction.com.

We appreciate your loyalty and we look forward to working with you again soon.

Best Regards,
Auction.com LLC

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act (18 USC 2510) and it is intended to be received and read only by certain individuals for their sole use and benefit. It may contain information that is privileged or protected from disclosure by law. Receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If it has been misdirected, or if you suspect you have received this in error, please notify me by replying and then delete both the message and reply. Thank you.

# EXHIBIT 16



●●○○○ Sprint 📶      1:05 PM      ✈ 🔵 82% 🔋

# Voicemail

## Auction.com Elisa Barron

 

work
August 29, 2017 at 6:27 PM

Transcription Beta

"Hello this is Alisa calling from option com regarding the property 288 East Isabela Ave. following up with you here for the issue for  a property being rejected uh we received an answer it looks like the seller fortune rejected your offer due to the fact that you had been the previous Fannie Mae Margie in unfortunately that loan was defaulted on so it looks like the seller a rejected offer because of that so um if you have any questions you could always give me a call back my number is

Was this transcription useful or not useful?

 0:00 |         -1:18

# EXHIBIT 17



●●○○○ Sprint  LTE          11:51 AM          ⌁ ☀ 94% ▉▉▶

auction.com



Register for this auction to bid.

Current Bid                          $17,500

| Counter Bid                    ▼ |

Bid Deposit                          $2,500
Bid Increment                        $2,500

Reserve Not Met

**Register to Bid**

Auction Starts            08/19/2017
Auction Ends              08/23/2017

Bidding ends in:
Finalizing!

# EXHIBIT 18

Approved, SCAO

Original – Officer return
1st copy – Court

2nd copy – Defendant
3rd copy – Plaintiff

| STATE OF MICHIGAN | APPLICATION AND ORDER OF EVICTION | CASE NO. |
|---|---|---|
| 60th JUDICIAL DISTRICT | Landlord-Tenant / Land Contract | 13-022046-LT |

Court address

990 Terrace St., Muskegon, Michigan 49442-395

Court telephon

(231) 724-6329

Plaintiff's name, address, and telephone no.

FANNIE MAE a/k/a Federal National Mortgage
Association

v

Defendant's name(s) and address(es)

TEREES WILLIAMS
TORRANCE L. WILLIAMS and
ALL OTHER OCCUPANTS

Plaintiff's attorney, bar no., address, and telephone no.

TROTT LAW, PC - Gary C. Sengston (P57250)
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
248-723-5066          T#371475L03

NOTE: An application may be required even though a
request for an order of eviction is granted in the judgment.

**APPLICATION**

1. On 08/24/2015 judgment was entered against the defendant(s) and the plaintiff was awarded
   Date
   possession of the following described property: 263 E. Isabella Ave., Muskegon, MI 49442

2. No payment has been made on the judgment or no rent has been received since the date of judgment, except the sum o
   $ 0.00 received under the following conditions: _____

3. The plaintiff has complied with the terms of the judgment.

4. The time stated in the judgment before an order of eviction can be issued has elapsed.

5. Defendant must post Cash bond with this court of $14,970 and Ct-app
   I declare that the statements above are true to the best of my information, knowledge, and belief.

Date 9/29/17          Defendant Complies          Plaintiff attorney signature          Gary C Sengston

(with full payment by Ct App of Stay can enter if present)          County)

**ORDER OF EVICTION**

IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN:

To the Court Officer: You are ordered to restore the plaintiff to, and put the plaintiff in, full possession of the premises.

Date issued  10-4-17

Judge _____

NOTE: In tenancy cases, this order must be executed within 56 days of the issuance date.

MCL 600.5744, MCR 4

# COURT NOTICE

In re: _Fannie Mae v Teres Williams, Torance Willie_

Case no: _13-022048-LT_

In accordance with MCL 600.5744, MCR 4.201(L) and MCR 4.202(K) an Order of Eviction has been issued on this property. It is hereby ordered that ALL occupants must vacate the premises in its entirety no later than _7:00_ (A.M) / P.M. on _This Saturday 10/07/17_

Failure to vacate the premises by ordered date/time (stated above) shall result in your removal from the premises.

Signed: _Regan Higgs_  Date: _10/0__/17_
Regan Higgs, Court Officer
_(231) - 571 - 0829_

# EXHIBIT 19

19

## STATE OF MICHIGAN
## IN THE 14TH CIRCUIT COURT

FANNIE MAE, aka Federal National
Mortgage Association,
          Plaintiff

Case No: 17-005015-AV

HON. TIMOTHY G. HICKS

v

TEREES WILLIAMS,
          Defendant

---

TROTT & TROTT PC
Gary C. Bengston  P 57250
Attorney for Plaintiff
31440 Northwestern Hwy, Ste 200
Farmington Hills, MI  48334
(248)341-4950

TEREES WILLIAMS
In Pro Persona
P.O. Box 4096
Muskegon, MI  49444
(231)343-8135

---

## ORDER

At a session of said Court held in the Courthouse,
County of Muskegon, State of Michigan, on
October 6th, 2017.

PRESENT:  HONORABLE TIMOTHY G. HICKS
Circuit Court Judge

The court grants the motion for reconsideration and grants the ex parte motion for a stay of the eviction currently scheduled for October 7 at 7:00 am.  The court delays the eviction for one week, until October 14 at 7:00 am.

This court will hold a hearing on this matter at 12:00 on Friday, October 13. The court will reschedule the hearing to a different time if Fannie Mae makes a timely request. Defendant must make timely service of all documents on the plaintiff.  The court will send a copy of this order to Fannie Mae's counsel immediately.

**IT IS SO ORDERED.**

Hon, Timothy Hicks, P5198
14th Circuit Court

# EXHIBIT 20

WRIGHT V. NATIONSTAR MORTGAGE LLC
SETTLEMENT ADMINISTRATOR
PO BOX 4199
PORTLAND OR 97208-4199





TEREES WILLIAMS
PO BOX 4096
MUSKEGON HEIGHTS MI 49444-0096

| CHECK DATE: | JANUARY 6, 2017 |
| CHECK NUMBER: | 154931 |
| CHECK AMOUNT: | $76.38 |
| TRACKING NUMBER: | 2016616 |
| CLAIM NUMBER: | 800050117 |

This check is issued pursuant to the terms of the class action settlement *Wright et al. v. Nationstar Mortgage LLC*, Case No. 1:14-cv-10457. The enclosed check constitutes full satisfaction of your claim.

If you have any questions pertaining to your award, please contact the Settlement Administrator at 1-877-683-9363 or PO Box 3660, Portland, OR 97208-3660.

P9451 v.02 12.16.2015

---

WRIGHT V. NATIONSTAR MORTGAGE LLC
PO BOX 4199
PORTLAND OR 97208-4199

The Huntington National Bank

25-2
480

| CHECK NUMBER | DATE |
| 154931 | 01/06/2017 |

Void if not cashed within ninety (90) days of issuance

AMOUNT
$76.38

PAY EXACTLY ********* Seventy Six DOLLARS and 38 CENTS

This check may not be cashed at a check cashing agency or money service business.

PAY TO THE ORDER OF:
TEREES WILLIAMS

Authorized Signature

⑈154931⑈ ⑆044000024⑆ 018932930239⑈

# EXHIBIT 21



Nationstar Mortgage LLC
350 Highland Dr.
Lewisville, Texas 75067

00015

| DATE | LOAN NUMBER NAME | POLICY NUMBER OR TAX ID | AMOUNT |
| 08/13/13 | 0506/38251 WILLIAMS  T | | 600.00 |

Exhibit
20

THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED ABOVE. IF NOT CORRECT PLEASE NOTIFY US PROMPTLY. NO RECEIPT REQUIRED