UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division

Brian J. Martin, et al., individually and on
behalf of all others similarly situated,

Case No. 2:15-cv-12838

v.

Hon. David M. Lawson

Trott Law P.C., et al.,

Mag. Judge David R. Grand

Defendants.

_____/

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S. Main St., Suite 118
P.O. Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (*admitted*)
Sally M. Handmaker (*admitted*)
COHEN, MILSTEIN, SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Class*

Kathleen H. Klaus (P67207)
Jesse P. Roth (P78814)
MADDIN, HAUSER, ROTH & HELLER, PC.
28400 Northwestern Hwy, 2nd Floor
Southfield, MI  48034
(248) 359-7520
kklaus@maddinhauser.com
jroth@maddinhauser.com

Charity A. Olson (P68295)
BROCK & SCOTT PLLC
2723 S. State St., Suite 150
Ann Arbor, MI  48104
Phone: (734) 222-5179
Charity.Olson@brockandscott.com

*Counsel for Trott Law, P.C.*

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
HONIGMAN MILLER SCHWARTZ & COHN LLP
39400 Woodward Ave., Suite101
Bloomfield Hills, MI  48304
Phone: (248) 566-8300
javiv@honigman.com
bsegal@honigman.com

*Counsel for David A. Trott*

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT AND BRIEF IN SUPPORT**

Plaintiffs, without opposition by Defendants, move this Court to enter an order finally approving the parties' class action settlement. With the assistance of an experienced Court-appointed mediator, the parties reached the proposed settlement that this Court has preliminarily approved.

WHEREFORE, Plaintiffs move this Honorable Court to enter judgment substantially in the form of Exhibit 1, attached, that:

1. Finally approves the parties' Class Action Settlement Agreement, as modified by the Preliminary Approval Order, as amended;

2. Reaffirms its certification of the Rule 23(b)(2) and (b)(3) Settlement Class;

3. Finds that notice to the Settlement Class was issued in compliance with Rule 23 and due process;

4. Appoints Brian Martin, Yahmi Nundley, and Kathleen Cadeau as Settlement Class representatives;

5. Appoints Andrew J. McGuinness and Andrew N. Friedman as Class Counsel;

6. Overrules all objections;

7. Excludes from the Settlement Class the persons listed on Attachment 5 to Exhibit 2 (the Declaration of Cameron Azari) attached hereto, which is also attached as Exhibit 1-B hereto;

8. Authorizes the payment of all valid claims according to the Settlement Agreement's terms;

9. Grants the Injunctive Relief specified in the Class Settlement Agreement;

10. Reserves the continuing jurisdiction of this Court to preside over any ongoing proceedings relating to the Claims, this Settlement, and the Injunctive Relief; and

11.    In all other respects, dismisses this action with prejudice via entry of Judgment substantially in the form of Exhibit 1, attached (including an award of attorneys' fees to Class Counsel, reimbursement of Class Counsel's expenses, authorization of the payment of additional Claim Administration expenses, and a grant of Service Awards).

In support of this Motion, Plaintiffs submit the attached brief.

Dated: September 6, 2018

Respectfully submitted,

*s/Andrew J. McGuinness*
Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (admitted)
Sally M. Handmaker (admitted)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Ave. NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (admitted)
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Settlement Class*

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT**

**TABLE OF CONTENTS**

Page

Introduction ...................................................................................................1

Background ....................................................................................................2

      A. The Litigation has Been Long and Involved....................................2
      B. Plaintiffs Reached a Thoughtful and Impressive Settlement. ..........5

Argument........................................................................................................7

I.     The Settlement is Fair, Reasonable, and Adequate.............................7
      A.    The Parties Negotiated the Settlement at Arm's Length ...........7
      B.    The Settlement Will Provide Prompt Payment to the
            Settlement Class and Will Avoid Risks Attendant to This
            Complex Litigation. ...............................................................8
      C.    Plaintiffs Obtained Discovery Sufficient to Value the
            Claims. ...................................................................................9
      D.    Success On the Merits Is Not Guaranteed. .............................10
      E.    Class Counsel Believe That the Settlement Is
            Reasonable. ...........................................................................11
      F.    The Settlement Is Fair to Absent Class Members. ..................12
      G.    The Settlement Serves the Public Interest. ..............................12
II.    The Notice Plan Meets the Requirements of Rule 23, and
      Achieved a Remarkable Claims Rate................................................13
III.   The settlement's cy pres recipient is Appropriate.............................17
IV.   The proposed Settlement Class Satisfies Rule 23(b)(2) and
      (b)(3).................................................................................................18
      A.    The Settlement Satisfies Rule 23(a).........................................18
      B.    The Settlement Satisfies Rule 23(b)'s factors. ........................22

Conclusion ...................................................................................................25

## ISSUES PRESENTED

1. Should this Court finally approve the submitted Class Action Settlement Agreement?

2. Should this Court certify a Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3)?

3. Should this Court appoint Brian J. Martin, Yahmi Nundley, and Kathleen Cadeau as class representatives?

4. Should this Court appoint Andrew J. McGuinness and Andrew N. Friedman as Class Counsel?

5. Did the notice issued by Epiq Class Action & Claims Solution (the "Claims Administrator" or Epiq), comply with Rule 23 and due process?

6. Should this Court award Class Counsel attorneys' fees in the amount of $2,499,750.00; order reimbursement of Class Counsel expenses in the amount of $109,014.79; authorize the payment of up to an additional $166,994.09 to the Claims Administrator in claim administration expenses; and order Service Awards in the amount of $5,000.00 each to Brian Martin, Yahmi Nundley, and Kathleen Cadeau, each to be paid out of the Settlement Common Fund?

Plaintiffs answer "Yes" to all of these questions.

Plaintiffs are informed and believe that Defendants do not oppose this Motion.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................18, 24

*In re American Medical Sys.*,
    75 F.3d 1069 (6th Cir. 1996) .............................................................................20

*Beattie v. CenturyTel., Inc.*,
    511 F.3d 554 (6th Cir. 2007) .............................................................................22

*Bogner v. Masari Invs., LLC*,
    257 F.R.D. 529 (D. Ariz. 2009) ........................................................................23

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ *passim*

*Dallas v. Alcatel-Lucent USA, Inc.*,
    No. 09–14596, 2013 ............................................................................................8

*In re Delphia Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................................14

*Gascho v. Global Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ....................................................................7, 16, 17

*Geary, v. Green Tree Serv., LLC*,
    No. 2:14-CV-00522, 2017 WL 2608691 (S.D. Ohio June 16, 2017)..............24, 25

*General Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)..........................................................................................18

*Glazer v. Chase Home Fin. Llc*,
    704 F.3d 453 (6th Cir. 2013) .............................................................................20

*Gonzalez v. Germaine Law Office PLC*,
    No. CV-15-01427, 2016 WL 5844605 (D. Ariz. Oct. 3, 2016)..........................17

*Gradisher v. Check Enforcement Unit, Inc.*,
    203 F.R.D. 271 (W.D. Mich. 2001) ...................................................................19

*Granada Invest., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir.1992) ........................................................................7

*Herrera v. LCS Fin. Servs. Corp.*,
  274 F.R.D. 666 (N.D. Cal. 2011) ................................................................23

*IUE-CWA v. GMC*,
  238 F.R.D. 583 (E.D. Mich. 2006) ....................................................... *passim*

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ......................................................................16

*Kistner v. Law Offices of Michael Margelesfsky, LLC*,
  518 F.2d 433 (2008).....................................................................................23

*Lewis v. ARS Nat'l Servs., Inc.*,
  2011 WL 3903092 (M.D. Ala. Sept. 6, 2011) ............................................23

*Macy v. GC Servs. Ltd. P'ship*,
  897 F.3d 747 (6th Cir. 2018) ...............................................................19, 23

*Mann v. Acclaim Fin. Servs., Inc.*,
  232 F.R.D. 278 (S.D. Ohio 2003) ...............................................19, 21, 22

*Messineo v. Ocwen Loan Serv., LLC*,
  No. 15-cv-02076, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ...............16

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...........14

*Powers v. Hamilton Cnty. Public Defender Com'n*,
  501 F.3d 592 (6th Cir. 2007) ......................................................................19

*Senter v. GMC*,
  532 F.2d 511 (6th Cir. 1976) ......................................................................21

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010).......................................................................................8

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) (en banc).......................................................16

*In re Telectronics Pacing Sys, Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................8

*UAW v. General Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ................................................................7, 10

iv

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ......................................................................19

*Wilson v. Trott & Trott PC*,
    No. 16-10335 ...........................................................................................3, 9

*Wright v. Finance Service of Norwalk, Inc.*,
    22 F.3d 647 (6th Cir. 1994) .......................................................................23

STATUTES

Class Action Fairness Act.............................................................................9

Fair Debt Collection Practices Act ..................................................... *passim*

OTHER AUTHORITIES

Federal Rule of Civil Procedure 6 ...............................................................16

Federal Rules of Civil Procedure 23 ................................................... passim

*Manual for Complex Litigation § 21.311, § 21.612; 21*
    *(Federal Judicial Center, 2004)* .............................................................14

NEWBERG ON CLASS ACTIONS § 8.32 (4th ed. 2002) ..................................13

## Introduction

Pursuant to the parties' Settlement,[1] Defendants Trott Law PC ("Trott Law") and David A. Trott (collectively, "Defendants") have caused to be paid $7.5 million into a Settlement Common Fund for the benefit of the class. Defendant Trott Law PC will also offer injunctive relief in the form of specific language to be added to its foreclosure ("fair debt") letters to address the attorney letterhead and overshadowing claims.[2]

Trott Law has identified 248,686 Class Members. As of September 5, 2018, the claims administrator, the Claims Administrator had received 54,445 claims (a remarkable 21.9% claims rate for a consumer class action). If this Court grants Plaintiffs' fee petition (filed separately) in full, and substantial numbers of additional claims are not validated in the next few days, each Class Member with a valid claim will receive a check for some $82.10.[3] This compares with up to $50 statutory damages claims that most Class Members have, if the jury were to find a non-willful violation of the Michigan Regulation of Collection Practices Act (RCPA).

---

[1] Capitalized terms used in this brief are defined herein or in the parties' Class Action Settlement ("Settlement Agreement" or "Agreement"). Exhibit 1-A.

[2] Trott Law has already stopped using "Corporate Advance" in its fair debt letters—the basis of Plaintiffs' third category of claims—making it unnecessary to include injunctive relief for this claim.

[3] This number could increase slightly if the Claims Administrator does not incur the full amount of additional projected expense.

This is the first known class action recovery on behalf of Michigan homeowners against a major foreclosure law firm and its principal for alleged violations of federal and state fair debt laws approaching anywhere close to a $7.5 million common fund on behalf of almost a quarter-million consumers.

As of September 5, 2018, there were 24 Class Member opt-outs and only two objections. The opt-out rate, less than one-hundredth of one percent, is infinitesimal, and appears to have been elevated by solicitations from an out-of-state law firm. In accordance with this Court's Preliminary Approval Order, as amended, Plaintiffs will address all objections in a separate brief to be filed on or before September 20, 2018.

Because the parties' Class Action Settlement is fair, reasonable, and adequate; because the notice protocol satisfies Rule 23 and due process; and because the proposed settlement class meets each of the requirements for certification under the "rigorous analysis" standard, the Court should grant final approval and enter judgment substantially in the form attached.

## Background

### A. The litigation has been long and involved.

On August 11, 2015, Plaintiffs Brian Martin and Yahmi Nundley filed their complaint against Defendants. (ECF 1.) It contained detailed allegations of Trott Law's operations, David Trott's involvement, and Trott Law's practices

2

concerning form foreclosure (fair debt) letters. On November 25, 2015, Plaintiffs filed their First Amended Complaint (FAC), incorporating additional allegations from publicly-available deposition testimony describing Trott Law's review practices for fair debt letters in another class action lawsuit.[4] (ECF 13.)

On August 8, 2016, Plaintiffs filed the operative complaint, the Second Amended Complaint (Corrected) ("Complaint"), adding a third Plaintiff, Kathleen Cadeau. (ECF 41.) The Complaint alleges that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), and the RCPA, M.C.L. 445.251, *et seq.*, based on language in form letters sent to Michigan homeowners to initiate nonjudicial foreclosures of their mortgages.

Plaintiffs allege these letters are misleading by:

- Suggesting to consumers that they were from an attorney when no attorney "meaningfully reviewed" them. These are the "attorney letterhead" claims;
- Referencing an impending sheriff's sale in letters containing solicitation of a request for a reinstatement quote, that "overshadowed" the validation rights of homeowners; and
- Use of the misleading term "Corporate Advance" in a subset of the letters, which was not defined in the underlying mortgage documents.

On December 21, 2015, Defendants moved to dismiss the FAC. On July 26, 2016, the Court partially granted and partially denied these motions.

---

[4] *Wilson v. Trott & Trott PC,* No. 16-10335, E.D. Mich. (Lawson, J.). *Wilson* later was settled and dismissed on a non-class basis, after which Plaintiffs obtained leave to further amend the complaint to add the "Corporate Advance" claim.

3

Plaintiffs' written discovery eventually returned over 22,000 pages.[5] The discovery process, particularly with regard to ESI was hard fought, painful, and expensive. The Court recognized this at the Preliminary Approval hearing, when it observed: "the electronic discovery [that] was swallowing up enormous amounts of time and expense, I think, contributed to the insight that the parties gained in arriving at the wisdom of choosing a settlement over combat."  June 28, 2018 Tr. at p. 18-19 (Exhibit 3, attached). However, prior to reaching the Settlement, the parties had successfully negotiated search terms; and prioritized "core" searches in order to provide an adequate ground for mediation discussions, and production and review of ESI was well underway.

Plaintiffs also deposed multiple witnesses, including Trott Law Executive Committee member Marcy Ford, Trott Law Fair Debt Committee Member Michelle Clark, the two Trott Law attorneys identified as having reviewed Plaintiffs' fair debt letters, and a Pre-Sale Unit Manager of Trott Law's non-attorney processors, responsible for populating Trott Law's proprietary software with the account information received from client referrals.

Plaintiffs also served subpoenas on, resisted motions to quash filed by, reviewed documents produced by, and deposed, two former firm managers. Ellen

---

[5] Declaration of Andrew J. McGuinness, Exh. 2 to Brief in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement ("McGuinness Decl.") at ¶ 6 (ECF 165).

Coon was an equity partner who ran the foreclosure department and supervised processors for many years. Doreen Hoffman is an attorney with a collections law background who briefly served on Trott Law's Fair Debt Committee and was hired by David Trott to build a deficiency-judgment-collection practice

Through discovery, Class Counsel learned many of the facts important to assessing the value of Plaintiffs' claims, including Trott Law's historical and current business practices, its compliance measures, the role of its Fair Debt Committee in approving form fair debt letters, the changes made to those letters over the class period, how the firm was managed, David Trott's involvement, and possible defenses to Plaintiffs' claims. McGuinness Decl. ¶ 9.

On November 15, 2016, David Trott filed his second dipositive motion, a Motion to Dismiss or for Summary Judgment. The briefing was vigorous, including the filing of a sur-reply brief by Plaintiffs. The Court denied Trott's motion on July 12, 2017, and granted in part Plaintiffs' motion to strike affirmative defenses. On January 4, 2018, Trott Law filed yet another dispositive motion, which David Trott joined. On January 16, 2018, this Court struck that motion.

On December 7, 2017, this Court referred the parties to the Honorable Gerald R. Rosen (ret.) of JAMS/Detroit for mediation. (ECF 153.)

**B. Plaintiffs Reached a Thoughtful and Impressive Settlement.**

The parties attended three mediation sessions before Judge Rosen. As a

result of these sessions, and intensive additional negotiations through counsel, the parties executed the Class Settlement Agreement.

### 1. Settlement Class definition.

All persons to whom Trott Law PC caused to be sent any version of the Trott PC Foreclosure Letter, as defined in the proposed settlement agreement, in connection with mortgages conveyed for residential real property located in Michigan, which was not returned as undelivered by the U.S. Post Office, dated from August 11, 2009, through June 29, 2018.

Preliminary Approval Order at 13. "Trott PC Foreclosure Letter" is defined in ¶ 71 of the Complaint, and includes form letters in addition to those attached thereto.

### 2. The settlement yields substantial Class Member benefits.

Defendants have paid $7.5 million cash into a common fund for the benefit of the class. Approved Claimants will be mailed checks for a pro rata share of the fund after payment of claims-administration expenses, attorneys' fees, service awards, and litigation expenses. As set forth above, the per-claimant amount is anticipated to be approximately $82.10. For checks that remain uncashed after 90 days, half of the uncashed funds will go to the Michigan Advocacy Program, a non-profit organization, targeted for its Michigan Foreclosure Prevention Project (MFPP). The other half will be returned to Defendants.

Trott Law will also include the following text in its fair debt letters for five years: "An attorney has reviewed information supplied by our client in preparation of this letter." If Trott Law includes a reference to "reinstatement" in a fair debt letter, the letter will include the additional text: "No timing requirement relating to

reinstatement alters your rights to dispute the debt or seek validation within the timelines set forth in this letter."

## Argument

I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Before approving a class settlement, a district court must determine whether it is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007). In evaluating a settlement, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id*. at 632.

Seven factors determine whether a settlement is fair, reasonable and adequate:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276–77 (6th Cir. 2016). The district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. GMC*, 238 F.R.D. 583, 594-95 (E.D. Mich. 2006) (citing *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir.1992)).

A.     **The Parties Negotiated the Settlement at Arm's Length.**

7

Courts presume the absence of fraud or collusion in class action settlements absent contrary evidence. *Id.* at 598. Courts also consider whether a mediator assisted. *See, e.g.*, *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09–14596, 2013 LEXIS 71204, at *23 (E.D. Mich. May 20, 2013) (observing that the proposed settlement was "the product of substantial, informed, and non-collusive negotiations . . . facilitated by Judge Rosen who served as a neutral mediator"). The parties negotiated this Settlement at arm's length with Judge Rosen's assistance.

**B.    The Settlement Will Provide Prompt Payment to the Settlement Class and Will Avoid Risks Attendant to This Complex Litigation.**

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This class action is no exception. "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and . . . other problems . . . ." *In re Delphia Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).

Had the parties not settled, they would have had to engage in additional discovery, fought many more motions, engaged in even more expensive ESI negotiations and productions, briefed and argued a renewed class certification motion, and likely litigated another summary judgment motion. McGuinness Decl. ¶ 8. The settlement resolves Plaintiffs' claims now and at a much lower cost.

Defendants vigorously fought the applicability of *Shady Grove Orthopedic*

*Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), to the RCPA class claims in an effort to curtail class recovery. Defendants also fought application of the home-state exception to this Court's original jurisdiction under the Class Action Fairness Act, and resisted Plaintiffs' willful-violation claims under the RCPA in order to avoid civil fines. Though Plaintiffs are confident that this Court properly resolved these issues, its rulings would likely be appealed if Plaintiffs succeeded at trial, presenting additional risks, delay and expense.

**C.   Plaintiffs Obtained Discovery Sufficient to Value the Claims.**

Discovery was well underway when the parties settled. Class Counsel had access to important discovery from which they weighed the advantages and risks of continued litigation and made informed settlement recommendations. Plaintiffs deposed key witnesses, investigated Trott Law's operations and interviewed former employees, and carefully reviewed publicly-available information, including the deposition of Andrew Wayne, a former Trott Law senior title attorney who was deposed in the *Wilson* case. Defendants produced over 22,000 pages of documents including substantial ESI. With respect to ESI, Class Counsel negotiated a change to the protocol to frontload review and production of search terms deemed core in order to obtain such ESI before mediation.

The discovery conducted satisfies the threshold necessary to demonstrate that Class Counsel had information sufficient to evaluate Plaintiffs' claims. *See,*

*e.g., IUE-CWA*, 238 F.R.D. at 598 (collecting cases).

## D.     Success On the Merits Is Not Guaranteed.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. The question presented is whether "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003).

Defendants contest important allegations and insist that their business procedures are consistent with the FDCPA and RCPA. There is relatively little case law applying the requirement for "meaningful review" to foreclosure law firm fair debt letters. Class Counsel's investigation and discovery suggests that Trott Law attorneys perform only a brief review of data supplied by its clients that are included in the letters. Plaintiffs claim that this does not meet the "meaningful review" threshold; Defendants disagree.

As to the RCPA claims, in order to obtain enhanced civil fines, Plaintiffs would need to demonstrate that Defendants' conduct not only violated the statute, but also rose to a level of recklessness, i.e., created a risk of violation that was more than merely careless.[6] Because these are jury questions, there is invariably a

---

[6] Whether willfulness could be proven impacts the amount of RCPA damages recoverable, which provides $50 statutory damages for non-willful violations and up to another $150 for willful violations. Discovery suggests that Trott Law may not be collectible for most of an enhanced RCPA statutory damages award, further

risk that the class could lose on some or all of its claims.

Finally, David Trott contests his classification as a debt collector under the FDCPA due to an asserted lack of personal involvement in the creation or approval of the fair debt letters, or responsibility for the firm policies and procedures that lead to their distribution. If he were successful in establishing this defense, it would diminish the value of the FDCPA class damages claim by more than $400,000.[7] If successfully applied to the RCPA claims, his defense would reduce the amount of insurance coverage and other financial resources available to satisfy a class verdict.

## E.     Class Counsel Believe That the Settlement Is Reasonable.

Courts give substantial weight to the opinions of the attorneys who prosecuted the case and negotiated the settlement. *IUE-CWA*, 238 F.R.D. at 597. *See also In re Cardizem*, 218 F.R.D. 525 ("in approving a proposed settlement, the court also considers the opinion of experienced counsel as to the merits of the settlement").[8]  Class Counsel analyzed the claims and believe the settlement is in the best interest of the class. McGuinness Decl. ¶¶ 4–5, 11. Plaintiffs also participated actively in the mediation and support the settlement. *Id*. at ¶ 11.

---

limiting the class's potential recovery. McGuinness Decl. ¶ 10.

[7] The FDCPA limits class statutory damages to $500,000 or 1% of a defendant's net worth, whichever is less. David Trott admitted to a net worth of more than $50,000,000, thereby establishing his potential exposure to the maximum $500,000 FDCPA class recovery amount. His co-defendant would had far less exposure due to the 1% net worth cap, based on the testimony of Marcy Ford.

[8] McGuinness served as counsel in *In re Cardizem*, for a defendant.

**F.     The Settlement Is Fair to Absent Class Members.**

All Approved Claimants will each receive a pro rata portion of the Net

Settlement Fund, estimated to be approximately $82.10. This amount splits the

difference between the $50 non-willful statutory damages and the $200 maximum

statutory damages available under the RCPA for willful violations, demonstrating

its adequacy.[9] The Settlement is even-handed and does not improperly favor the

class representatives who, aside from any service award this Court awards them

(*see* fee petition), will receive the same pro-rata recovery as other Class Members.

**G.     The Settlement Serves the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex

litigation and class action suits because they are notoriously difficult and

unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218

F.R.D. at 532. Not only will the Settlement prevent prolonged litigation and

conserve resources, it will provide ongoing public benefits.

As provide in Section 4.1.1 of the Settlement Trott PC has agreed to include

the following language in its future fair debt letters:

> An attorney has reviewed information supplied by our client in
> preparation of this letter.

---

[9] On a fully-diluted basis (spread over all 248,686 Class Members), the $7.5 million Settlement Common Fund represents a per-Class Member amount of over $30, which is more than half the core statutory damages for non-willful RCPA violations. Because of the one-year FDCPA statute of limitations (six years for the RCPA), most Class Members would not qualify for FDCPA statutory damages.

12

While Class Counsel attempted to secure more fulsome disclosure of the limited review routinely conducted by Trott Law attorneys before the fair debt letters are sent out, by informing recipients that an attorney has reviewed "the information supplied by our client in the preparation of this letter," a recipient may better understand that an attorney has not necessarily reached an independent professional judgment regarding the foreclosure proceedings. This is a step in the right direction.[10] The Settlement also secures even more complete injunctive relief to address the overshadowing claim. *See* Class Action Settlement § 4.1.2.

Furthermore, by channeling fifty percent of any uncashed claim check funds to the MFPP the Settlement will help Michigan homeowners to avoid foreclosure.[11]

## II.    THE NOTICE PLAN MEETS THE REQUIREMENTS OF RULE 23, AND ACHIEVED A REMARKABLE CLAIMS RATE.

Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement, (3) that complete information is available from court files, and (4) that any class member may appear and be heard at the final

---

[10] Moreover, because Trott Law is regarded as the leading Michigan foreclosure law firm by volume, Class Counsel expects other major Michigan foreclosure firms may adopt similar clarifying language, thereby providing a ripple effect that benefits all Michigan homeowners facing foreclosure. McGuinness Decl. ¶ 20.

[11] *See* Argument section III, *infra*.

approval hearing. Fed. R. Civ. P. 23(e); NEWBERG ON CLASS ACTIONS § 8.32 (4th ed. 2002). *Accord*, *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *5 (E.D. Mich. Feb. 22, 2011). The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B). Post Card Notice and the Long Form Notice meet each of these requirements.

The notice should include individual notice to all members who can be identified with reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) *See also Manual for Complex Litigation* § 21.311, n. 882. The Claims Administrator sent notice by first-class direct mail, consisting of a "double" postcard, with a simple, tear-away claim form with pre-paid postage applied, so that Class Members could simply fill in their current name and address, sign the form, and pop it in the mailbox. Class Members using the unique ID number on their postcard were not required to supply proof of class membership. Considering the age and context of the Class Member addresses provided by Trott Law (foreclosed properties up to eight-plus years old), the Claims Administrator ran each Class Member's address through the U.S. Post Office change of address service, and then through a second, third-party update address service, prior to mailing. Azari Decl. ¶¶ 4-6. In this way, the Claims Administrator was able to

achieve a 93.4% success rate for mailed class notice. Azari Decl. ¶ 8.

For the relatively few Class Members who did not receive a postcard, the Claims Administrator published internet banner notices and implemented a campaign to achieve at least eight million impressions in Michigan and four million additional impressions nationally. The banner notices were clickable and directed potential class members to the settlement website. *Id.* at ¶¶ 10. Combined, the banner notices generated approximately 15.8 million impressions in Michigan and approximately 9 million impressions nationally.

The Claims Administrator established a settlement website at www.TrottFairDebtSettlement.com, that provided Class Members additional information about the Settlement, including the Long Form Notice, answers to FAQs, and important case documents, including downloadable Adobe formatted pleadings such as the Complaint, the Settlement Agreement, and the fee petition. *Id.* at ¶ 14. To facilitate locating the settlement website on the three most highly visited Internet search engines, *Google*, *Yahoo!* and *Bing*, the Claims Administrator acquired sponsored search listings that it geotargeted throughout Michigan. *Id.* at ¶ 12. The sponsored search listings were displayed 2,337 times, resulting in 1,270 clicks that displayed the settlement website. *Id.* at ¶ 13. As of September 5, 2018, there had been 35,719 unique visitors to the settlement website and 125,172 website page views. *Id.*

The Claims Administrator also established a toll-free telephone number that Class Members could call for information, including answers to FAQs, and to request a copy of the Long Form Notice. The automated system was available 24/7. As of September 5, 2018, Epiq had received 2,969 calls to this toll-free line.

As of September 5, 2018, Epiq had received 54,445 Claim Forms—37,078 Claim Forms via mail and 17,367 via the settlement website, *id.* at ¶ 16. This total yields a remarkable 21.9% claims rate (54,445 ÷ 248,686 = 21.9%). This is *more than two-and-a-half times* an 8.2% "acceptable" claims rate in consumer class actions. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (an "8.2% response rate was well within the acceptable range of responses in a consumer class action [based on testimony] that response rates in consumer class actions generally range from 1 to 12 percent.").[12] *Id.* at 276. Plaintiffs submit that the high claims rate achieved here is a reflection not only of the excellent work of the Claims Administrator, but also a measure of the adequacy of the Settlement.

As of September 5, 2018[13], Epiq had received only 24 Class Member opt-

---

[12] Compare, *Keil v. Lopez,* 862 F.3d 685 (8th Cir. 2017) ("claim rate as low as 3 percent is hardly unusual in consumer class actions"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 n. 60 (3d Cir. 2011) (en banc)) ("consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Messineo v. Ocwen Loan Serv., LLC*, No. 15-cv-02076, 2017 WL 733219, *6 (N.D. Cal. Feb. 24, 2017) (claims rate of 9.26 percent of 9,000 potential class members was "higher than average" for consumer class settlements).

[13] Per § 1.2(e) of the Settlement Agreement and Federal Rule of Civil Procedure 6,

outs. *Id.* at ¶ 17 & Azari Decl. Exh. 2. This represents less than one-hundredth of one percent (24 ÷ 248,686 = .0000965) of Class Members.[14] As of September 5, 2018, only 2 Class Members had objected. *Id.* at ¶ 18.

## III.  THE SETTLEMENT'S CY PRES RECIPIENT IS APPROPRIATE.

"A *cy pres* award is used to distribute unclaimed portions of a class-action judgment or settlement funds to a charity that will advance the interests of the class." *Gascho*, 822 F.3d at 278 n. 3 (omitting quotation marks). In FDCPA cases, courts often approve *cy pres* recipients who work to protect underserved consumers against unfair debt collection practices. *See, e.g.*, *Gonzalez v. Germaine Law Office PLC*, No. CV-15-01427, 2016 WL 5844605, at *2 (D. Ariz. Oct. 3, 2016) (final approval in class action settlement in FDCPA case in which "any funds . . . from uncashed checks or otherwise . . . will be distributed to The Arizona Foundation for Legal Services & Education as the *cy pres* recipient.").

The MFPP is a project of the Michigan Poverty Law Program. It is "a collaborative statewide project involving several legal services programs."[15] Comprised of attorneys from seven major legal services programs, "[t]he goal of

---

as confirmed through correspondence with counsel for the parties, because September 3, 2018, was Labor Day, the claims, opt-out, and objection deadlines were implemented as September 4, 2018. Azari Decl. ¶ 16.

[14] A review of the opt-out forms submitted to the Claims Administrator reveals that a number of the opt-outs appear to have submitted using an identical form returned to the address of a Florida law firm.

[15] http://miforeclosure.mplp.org/homeowner/about.

the Project is to provide comprehensive and coordinated foreclosure prevention advocacy throughout Michigan by 1) providing direct legal representation to homeowners facing foreclosure, 2) providing support to housing counseling organizations, 3) coordinating policy advocacy on a statewide basis, and 4) providing training and technical support." *Id*. In 2017 alone, the Michigan Advocacy Program and its partners completed foreclosure cases for 3,123 households, saving 2,057 homes.[16] MFPP furthers the Settlement's goals by advocating for consumers facing residential mortgage foreclosures.

## IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23(B)(2) AND (B)(3).

Before granting class certification, the district court must rigorously analyze the prerequisites for class certification. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *In re Cardizem*, 218 F.R.D. at 517 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).

## A.   The Settlement Satisfies Rule 23(a).

### 1.   Numerosity exists.

The Settlement Class consists of almost a quarter million consumers. Azari

---

[16] Exhibit 4, attached (MFPP Narrative Report Final Report June 28, 2018).

Decl. ¶ 4. Joinder of so many consumers would plainly be impractical.

### 2. Settlement Class Members' claims present common factual and legal issues.

Rule 23(a)(2)'s commonality requirement requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." A single common question of law or fact will suffice. *Powers v. Hamilton Cnty. Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). The commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). Not only do the class claims in the instant case raise common questions (e.g., whether Trott Law's practices constitute "meaningful review" of the fair debt letters before they are distributed), these common questions drive common *answers*. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 374-75 (2011) ("What matters, the Court asserts, is not the raising of common questions, but whether there are [d]issimilarities within the proposed class that have the potential to impede the generation of common answers." (internal quotation marks omitted)).

Courts frequently find commonality in FDCPA class actions involving form dunning letters. *Macy v. GC Servs. Ltd. P'ship,* 897 F.3d 747 (6th Cir. 2018) (citing cases); *Mann v. Acclaim Fin. Servs., Inc.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) (same); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D.

Mich. 2001) ("The commonality requirement is generally met where the defendant has engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."). This action focuses on form letters sent by Trott Law as initial communications in foreclosure proceedings that the Sixth Circuit has held are a form of debt collection. *Glazer v. Chase Home Fin. Llc*, 704 F.3d 453 (6th Cir. 2013). Whether these form letters violate the FDCPA or the RCPA present questions capable of common answers.

### 3.    Plaintiffs' claims are typical of Settlement Class Members' claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re American Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (footnote and quotation omitted). Plaintiffs' individual claims arise out of the form fair debt letters whose receipt define class membership.

Plaintiff Martin had RCPA claims against both Defendants based on the attorney letterhead, overshadowing, and Corporate Advance allegations. Plaintiff Nundley had FDCPA and RCPA claims against both Defendants based on the attorney letterhead allegations. And Plaintiff Cadeau had both FDCPA and RCPA claims against Trott Law based on the attorney letterhead and Corporate Advance

allegations. Together, Plaintiffs covered all of the class claims, rendering their claims typical.

Typicality also focuses on the type of injury suffered by the class and the class members' interests. *Mann*, 232 F.R.D. at 284. Plaintiffs and Class Members are all seeking solely statutory damages.

### 4. Plaintiffs and Class Counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This means "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted).

Plaintiffs' interests are consistent with Class Members' interests. Plaintiffs "received the allegedly defective initial communication . . . and all members of the class have an equal interest in preventing [defendants'] alleged illegal acts." *Mann*, 232 F.R.D. at 285. Plaintiffs' active pursuit of this case and participation in discovery and mediation demonstrate their steadfast engagement.

Class Counsel, Andrew J. McGuinness and Andrew N. Friedman, have extensive experience in complex class action litigation, McGuinness Decl. ¶¶ 4-5, and have zealously represented Plaintiffs and the class.

**B.** **The Settlement Satisfies Rule 23(b)'s factors.**

      **1.** **Defendants acted in a manner generally applicable to the Settlement Class, thus satisfying Rule 23(b)(2).**

Rule 23(b)(2) permits class certification where defendant has acted in a manner generally applicable to the class such that the entry of final injunctive relief is appropriate. Defendants acted in a manner generally applicable to the entire class by sending the form Trott Law PC Foreclosure Letters to all Class Members. *See Mann*, 232 F.R.D. at 285 (certifying a class of consumers who received letters allegedly in violation of the FDCPA under Rule 23(b)(2)). Therefore, certification under Rule 23(b)(2) is appropriate.

      **2.** **The Settlement Class satisfies Rule 23(b)(3)'s predominance and superiority requirements.**

Rule 23(b)(3) requires that questions of law or fact predominate over individualized questions. "To satisfy the predominance requirement, a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). "[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (internal quotation marks omitted).

Class Members were all sent Trott Law PC Foreclosure Letters alleged to

have violated the FDCPA and RCPA as described, such that adjudicating the liability and damages of Plaintiffs' case would resolve all of their claims.[17] In FDCPA class cases involving a form letter alleged to be misleading, the standard is an objective one: whether the letter is misleading to the least sophisticated consumer. *Kistner v. Law Offices of Michael Margelesfsky, LLC,* 518 F.2d 433, 438 (2008). In this context, courts readily find predominance. *See, e.g., Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 680 (N.D. Cal. 2011) (FDCP form letter case finding predominance); *Lewis v. ARS Nat'l Servs., Inc.*, 2011 WL 3903092 (M.D. Ala. Sept. 6, 2011) (same re. privacy notice in routine collection letters). *See, also, Macy v. GC Servs. Ltd. P'ship,* 897 F.3d 747 (6th Cir. 2018) (affirming class certification of § 1692g dunning letter claim); *Bogner v. Masari Invs., LLC,* 257 F.R.D. 529 (D. Ariz. 2009) (finding predominance for § 1692g(a) claim arising from form letter).[18]

---

[17] Each Class Member is limited to one statutory damage recovery per FDCPA proceeding. *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 651 (6th Cir. 1994). This means that the number of violations in each individual letter does not raise an individualized issue.

[18] Class Counsel at the preliminary approval hearing underscored the predominance of the key issues based on discovery:

> MR. McGUINNESS: So we -- all those [deponents] told us that this system has been in place for many years and it's consistent and this is how they always do it. And even though there were minor changes to the foreclosure letters, we think predominance is a strong argument here. We think we have got adequate basis for that. The individual issues are frankly not very significant in the case.

> THE COURT: Well, I don't think they even exist, do they? You have --

For Rule 23(b)(3) class certification, a class action must be "superior to available methods for fairly and efficiently adjudicating the controversy." Normally courts consider the (i) alternatives to a class action and whether members have an interest in controlling their own cases and (ii) whether the case will be manageable as a class. But when settling, plaintiff need not establish manageability because no trial is contemplated. *Amchem*, 521 U.S. at 620. (1997).

Damages attributable to Defendants' alleged violations are so small on an individual basis so as to not justify the expense of individual litigation. *See Geary, v. Green Tree Serv., LLC*, No. 2:14-CV-00522, 2017 WL 2608691, at *10 (S.D. Ohio June 16, 2017) ("The reality is that few individual plaintiffs would sue or receive any redress at all in individual actions."). Moreover, "[i]n this inquiry, it is also proper for the court to consider the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members

---

MR. McGUINNESS: I'm not aware of any.

THE COURT: You have essentially a claim with no actual damages and statutory damages only.

MR. McGUINNESS: Yeah.

THE COURT: So they all stand or fall on the same determination.

MR. McGUINNESS: And then superiority --

THE COURT: Do you agree?

MR. McGUINNESS: I agree.

THE COURT: Okay.

June 28, 2018 Tr. at p. 16-17 (Exhibit 3, attached).

would possess the initiative to litigate individually." *Id*. Plus, even if individual suits were likely, that a quarter million Class Members have claims demonstrates the superiority of a class action. *See id*. ("The alternative . . . is for the Court to handle . . . perhaps tens of thousands of individual cases.").

Finally, Class Members are likely to have little interest in controlling their individual cases. As this Court understands, the damage issues in connection with David Trott's motion to dismiss challenging Plaintiffs' Article III standing and the types of harms associated with the fair debt violations tend to be intangible and are best suited for statutory damages. This settlement achieves a large percentage of what Class Members who submit valid claims could have received in individual litigation—perhaps more.

## Conclusion

For the foregoing reasons, Plaintiffs respectively request this Court grant their Motion for Final Approval.

Dated**:** September 6, 2018          Respectfully submitted,

Andrew J. McGuinness (P42074)
ANDREW J. MCGUINNESS, ESQ.
122 S Main St, Suite 118
P O Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
drewmcg@topclasslaw.com

Andrew N. Friedman (admitted)
Sally M. Handmaker (admitted)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Ave. NW, Suite 500
Washington, DC  20005
Phone: (202) 408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Daniel R. Karon (*admitted*)
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH  44113
Phone: (216) 622-1851
dkaron@karonllc.com

*Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the above date a copy of the foregoing was filed with the Court using the ECF system, which will send notification of such filing to all parties who have appeared through their attorneys of record.


*/s/Andrew J. McGuinness*
Andrew J. McGuinness